Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
David Shein (SBN 230870)
david@donigerlawfirm.com
Frank Trechsel (SBN 312199)
ftrechsel@donigerlawfim.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, an individual; THE ESTATE OF WYCLIFFE JOHNSON; and STEELY & CLEVIE PRODUCTIONS LTD., <br><br>Plaintiffs,<br><br>v.<br><br>RODNEY SEBASTIAN CLARK DONALDS, an individual; CAROLINA GIRALDO NAVARRO, an individual; ARMANDO CHRISTIAN PÉREZ, an individual; GIORDANO ASHRUF, an individual; SHAREEF BADLOE, an individual; RASHID BADLOE, an individual; JUSTON RECORDS, a French private limited company; SONY MUSIC ENTERTAINMENT, a Delaware general partnership d/b/a ULTRA MUSIC; UNIVERSAL MUSIC PUBLISHING, INC., a California corporation; BMG RIGHTS MANAGEMENT, LLC, a Delaware limited liability company; WARNER CHAPPELL MUSIC, a | Case No.: 2:21-cv-02840-AB-AFM<br>*Hon. André Birotte Presiding*<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. COPYRIGHT INFRINGEMENT<br><br>2. VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT<br><br><u>JURY TRIAL DEMANDED</u> |

Delaware corporation; KOBALT MUSIC PUBLISHING LTD, a Delaware corporation; WE ALL NEED 1 LLC, a limited liability company,

Defendants.

Plaintiffs Cleveland Constantine Browne, the Estate of Wycliffe Johnson, and Steely & Clevie Productions Ltd., by and through their undersigned attorneys, hereby pray to this honorable Court for relief based on the following:

## Jurisdiction & Venue

1. This action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), & 1367(a).

3. Venue in this judicial district is proper under 28 U.S.C. § 1391 (c) and § 1400(a).

## Parties

4. At all times mentioned herein, Plaintiff Cleveland Constantine Browne was and is an individual residing in Kingston, Jamaica.

5. At all times mentioned herein, Plaintiff the Estate of Wycliffe Johnson was and is the successor in interest to the intellectual property rights of Mr. Johnson.

6. At all times mentioned herein, Plaintiff Steely & Clevie Productions Ltd. was and is a limited company organized and existing under the laws of Jamaica.

7. At all times mentioned herein Defendant Rodney Sebastian Clark Donalds p/k/a El Chombo ("El Chombo") was and is an individual residing in Panama and doing business in and with the state of California, including in this judicial district.

8. At all times mentioned herein Carolina Giraldo Navarro p/k/a Karol G ("Karol G") was and is an individual residing in Medellin, Colombia and doing business in and with the state of California, including in this judicial district.

9. At all times mentioned herein Defendant Armando Christian Pérez p/k/a Pitbull ("Pitbull") was and is an individual residing in Miami, Florida and doing business in and with the state of California, including in this judicial district.

10. At all times mentioned herein Defendant Giordano Ashruf was and is an individual residing in Arnhem, Netherlands and doing business in and with the state of California, including in this judicial district.

11. At all times mentioned herein Defendant Shareef Badloe was and is an individual residing in Arnhem, Netherlands and doing business in and with the state of California, including in this judicial district.

12. At all times mentioned herein Defendant Rashid Badloe was and is an individual residing in Arnhem, Netherlands and doing business in and with the state of California, including in this judicial district.

13. At all times mentioned herein Defendants Giordano Ashruf, Shareef Badloe and Rashid Badloe collectively p/k/a Afro Bros ("Afro Bros") were and are a DJ and record production entity of form unknown from Arnhem, Netherlands and doing business in and with the state of California, including in this judicial district.

14. At all times mentioned herein Defendant Juston Records, individually (collectively "Juston") was and is a French private limited company and doing business in and with the state of California, including in this judicial district.

15. At all times mentioned herein Sony Music Entertainment, individually and doing business as "Ultra Music" (collectively "Sony") was and is an American record label/music industry conglomerate and a Delaware general partnership with offices in Santa Monica, California.

16. At all times mentioned herein Universal Music Publishing, Inc. ("UMP") was and is a Delaware corporation with a principal place of business at 2100 Colorado Avenue, Santa Monica, California.

17. At all times mentioned herein BMG Rights Management, LLC ("BMG"), was and is a Delaware limited liability company with a principal place of business at 5670 Wilshire Blvd, Suite 1400, Los Angeles, California 90036.

18. At all times mentioned herein Warner Chappell Music, Inc. ("Warner"), was and is a Delaware Corporation, with a principal place of business at 777 S. Santa Fe Ave, Los Angeles, CA 90021.

19. At all times mentioned herein Kobalt Music Publishing America Inc. ("Kobalt"), was and is a Delaware Corporation with a principal place of business at 2 Gansevoort Street 6th Floor, New York, New York 10014, that has registered to do business and conduct business in the state of California.

20. At all times mentioned herein We All Need 1 LLC, was and is limited liability company doing business in and with the state of California, including in this judicial district.

21. Defendants Does 1 through 20, inclusive, are other parties not yet identified who have infringed Plaintiffs' copyrights, have contributed to the infringement of Plaintiffs' copyrights, or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of Defendants 1 through 20, inclusive, are presently unknown to Plaintiff, which therefore sue said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

22. Plaintiffs are informed and believes and thereon alleges that at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was

at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiffs' rights and the damages to Plaintiffs proximately caused thereby.

## Factual Background

23. Plaintiff Cleveland Constantine Browne, p/k/a Clevie ("Mr. Browne"), is a world-renowned influential and innovative composer, musician and producer known for, inter alia, pioneering the use of drum machines in reggae.

24. Wycliffe Anthony Johnson, p/k/a Steely ("Mr. Johnson"), was a visionary and innovative composer, musician, and producer.

25. Together, Mr. Browne and Mr. Johnson formed the writing, musical and producing duo Steely & Clevie, and worked on numerous genre-defining projects. Mr. Browne and Mr. Johnson worked with such artists as reggae legends Bob Marley, Bunny Wailer, Jimmy Cliff, Gregory Isaacs, Ziggy Marley, and Lee Scratch Perry.

26. Plaintiff the Estate of Wycliffe Johnson is the successor-in-interest to Mr. Johnson's intellectual property rights.

27. Plaintiff, Steely & Clevie Productions Ltd. is the production company of Mr. Browne and Mr. Johnson.

28. In 1989 Mr. Browne and Mr. Johnson wrote and recorded the instrumental song entitled *Fish Market* (the "Song"). The recording and composition for the Song are registered with the United States Copyright Office under Registration Number SR0000893268 with an effective date of March 12, 2021.

29. *Fish Market* is an original work including an original drum pattern that gives it a unique sound as compared to prior works. The combination of instruments in *Fish Market* includes a drumset incorporating kick, snare, and hi hat. These instruments are playing a one bar pattern. *Fish Market* also includes percussion instruments – tambourine and synthesizer 'tom'- playing a one bar pattern. A timbale phrase occurs at the end of every second bar. Timbales also play a free improvisation over the pattern for the duration of the song.

30. In 1990, Mr. Browne and Mr. Johnson co-authored the song titled *Dem Bow* with Shabba Ranks. *Dem Bow* was a massive club hit and garnered worldwide acclaim in the international reggae dancehall scene. *Dem Bow's* instrumental (which is an alternative mix of *Fish Market*, based on the same multi-track recording) is iconic and has been acknowledged as foundational to reggaeton music.

31. On April 2, 2018, Sony and Juston released the single *Dame tu Cosita* by El Chombo (sometimes referred to as the "*Single*").

32. In or about August 2018, Sony and Juston released an alternative mix of *Dame tu Cosita* by El Chombo, Pitbull, and Karol G (sometimes referred to as the "*Remix*").

33. Both recordings, the *Single* and *Remix* (hereinafter the "Infringing Works"), were hit songs garnering millions (if not billions) of plays and streams around the world resulting in significant revenue and profits to Defendants.

34. The Infringing Works consist of rhythmic speech, drums, and percussion. The primary rhythm and drum sections of the *Single* are comprised of an unauthorized sample and/or a verbatim copy of elements from the Song.

35. The primary rhythm and drum sections of the *Remix* are comprised of an unauthorized sample and/or a verbatim copy of elements from the Song.

36. The composition of the *Single* substantially comprises the composition of *Fish Market*. The drum pattern of the *Single* is the drum pattern of *Fish Market*.

1  Two versions of the drum pattern are played. The first is one with a 'stop' (i.e., a cut)
2  on the 3rd beat and silence on the 4th beat. The second is like the first but with a
3  continuous beat (i.e., with no stop). As in *Fish Market*, the low drum, or bass sound
4  in the rhythm track of the *Single* that plays on beats 1 and 3, is pitched at a flat (or
5  low) B (B-flat or Bb). The main riffs of *Fish Market* are also included in the *Single*.
6  These include the kick and snare pattern, the reinforcing of beats 1 and 3 on a low-
7  pitched drum, and the sixteenth notes on the 'and' of beat 1 from a snare sound. The
8  kick and snare drums are prominent in the mix of each of the *Single* in the same
9  manner that the kick and snare drums are found in *Fish Market*.

10       37.    The composition of the *Remix* substantially comprises the composition
11  of *Fish Market*. The drum pattern of the *Remix* is the drum pattern of *Fish Market*.
12  Two versions of the drum pattern are played. The first is one with a 'stop' (i.e., a cut)
13  on the 3rd beat and silence on the 4th beat. The second is like the first but with a
14  continuous beat (i.e., with no stop). As in *Fish Market*, the low drum, or bass sound
15  in the rhythm track of the *Remix* that plays on beats 1 and 3, is pitched at a flat (or
16  low) B (B-flat or Bb). The main riffs of *Fish Market* are also included in the *Remix*.
17  These include the kick and snare pattern, the reinforcing of beats 1 and 3 on a low-
18  pitched drum, and the sixteenth notes on the 'and' of beat 1 from a snare sound. The
19  kick and snare drums are prominent in the mix of each of the *Remix* in the same
20  manner that the kick and snare drums are found in *Fish Market*.

21       38.    A sample of audio from the recording of *Fish Market* is incorporated
22  throughout the *Single*. Particularly, percussive elements mixed in the background of
23  the *Single* correspond to the pattern and frequency bandwidth of sounds in *Fish*
24  *Market*. These include the timbales and tambourine which are identifiable and
25  notable key components in the Song.

26       39.    A sample of audio from the recording of *Fish Market* is incorporated
27  throughout the *Remix*. Particularly, percussive elements mixed in the background of
28

the *Remix* correspond to the pattern and frequency bandwidth of sounds in *Fish Market*. These include the timbales and tambourine which are identifiable and notable key components in the Song.

40. At no point did Defendants seek or obtain authorization from Plaintiffs to use *Fish Market* in connection with the Infringing Works.

41. Defendants continue to exploit and receive monies from the Infringing Works, respectively, in violation of Plaintiffs' rights in the Song. Defendants' wrongful copying and/or exploitation of Plaintiffs' copyrighted material has also allowed for further infringement abroad.

## First Claim for Relief

*(For Copyright Infringement—Against all Defendants, and Each)*

42. Plaintiffs repeat, re-allege, and incorporate by reference all preceding paragraphs of this Complaint.

43. Plaintiffs are the sole and exclusive owners of the Song.

44. The Song is registered with the U.S. Copyright Office.

45. The Song is an original composition and recording.

46. Defendants had access to the Song because the Song was widely distributed throughout the world since 1989 on vinyl and CD. Defendants also had access to the Song through distribution of *Dem Bow* on vinyl and CD which was a worldwide hit within the global reggae dancehall scene and remains a reggae dancehall classic. Both the Song and *Dem Bow* were widely distributed on vinyl and CD, which were the dominant media formats at the time of release, and together sold tens of thousands copies on singles and albums within the global reggae dancehall scene. Both the Song and *Dem Bow* are also available on streaming platforms, including Spotify, Apple Music, Amazon, Pandora, and YouTube.

47. In addition, Defendants' "sampling" (direct extraction and reproduction of the Song) establishes access by way of striking similarity, if not virtual identity.

48. Defendants, and each of them, infringed Plaintiffs' rights in the Song by sampling the recording of the Song and reproducing it in one or both of the Infringing Works without Plaintiffs' authorization or consent.

49. Alternatively, Defendants, and each of them, infringed Plaintiffs' rights by making a direct copy of the composition of the Song and using that copy in one or both of the Infringing Works without Plaintiffs' authorization or consent.

50. Plaintiff is informed and believes and thereon alleges that Juston and Sony have infringed Plaintiffs' rights in the Song by, without limitation, (a) authorizing the reproduction, distribution and sale of records and digital downloads of the *Single* and the *Remix*, through the execution of licenses, and/or actually reproducing, and/or selling and distributing physical or digital or electronic copies of the *Single* and the *Remix* through various physical and online sources and applications, including without limitation, through Amazon.com, Walmart, Target and iTunes; (b) streaming and/or publicly performing or authorizing the streaming and/or public performance of the *Single* and the *Remix* through, without limitation, Spotify, YouTube, and Apple Music; and (c) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of *Fish Market* in and as part of the Infringing Songs, packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including, but not limited to, audio and video.

51. Plaintiff is informed and believes and thereon alleges that Sony, UMP, BMG, Warner, and Kobalt have infringed Plaintiffs' rights in the Song by, without limitation, exploiting it for profit by licensing, or otherwise authorizing third parties to use, reproduce and/or perform the *Single* and/or the *Remix* for profit.

52. Plaintiff is informed and believes and thereon alleges that Defendant El Chombo has infringed Plaintiffs' rights in the Song by copying the composition in

the Song and/or sampling the recording of the Song in the production of the *Single* without Plaintiffs' authorization.

53. Plaintiff is informed and believes and thereon alleges that Defendants El Chombo, and Afro Bros have infringed Plaintiffs' rights in the Song by copying the composition in the Song and/or sampling the recording of the Song in the production of the *Remix* without Plaintiffs' authorization.

54. Plaintiff is informed and believes and thereon alleges that Defendants El Chombo, Pitbull, Karol G and Afro Bros, have infringed Plaintiffs' rights in the Song by, without limitation, (a) authorizing the reproduction, distribution and sale of records and digital downloads of the *Single* and/or the *Remix*, through the execution of licenses, and/or actually reproducing, and/or selling and distributing physical or digital or electronic copies of the *Single* and/or the *Remix* through various physical and online sources and applications, including without limitation, through Amazon.com, Walmart, Target and iTunes; (b) streaming and/or publicly performing or authorizing the streaming and/or public performance of the *Single* and/or the *Remix* through, without limitation, Spotify, YouTube, and Apple Music; and (c) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of *Fish Market* in and as part of the Infringing Songs, packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including, but not limited to, audio and video.

55. Defendants, and each of them, have engaged and continue to engage in the unauthorized reproduction, distribution, public performance, licensing, display, and creation of one or both Infringing Works. The foregoing acts infringe Plaintiffs' rights under the Copyright Act. Such exploitation includes, without limitation, Defendants', and each of them, distributing and broadcasting the Infringing Works on

streaming platforms, including Spotify, Apple Music, Amazon, Pandora, and YouTube.

56. Due to Defendants', and each of their, acts of infringement, Plaintiffs' have suffered actual, general and special damages in an amount to be established at trial, including but not limited a reasonable license fee for Defendants' use of the sample.

57. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiffs' rights in Plaintiffs' copyrighted sound recordings. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringements of their rights in the sound recordings in an amount to be established at trial.

58. Plaintiffs are informed and believe and now allege that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

## Second Claim for Relief

*(For Vicarious and/or Contributory Copyright Infringement—Against all Defendants, and Each)*

59. Plaintiffs repeat, re-allege, and incorporate by reference all preceding paragraphs of this Complaint.

60. Plaintiffs are informed and believe and now allege that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction, distribution, and publication of one or both of the Infringing Works as alleged above. Specifically, the producers (including Sony and Juston) underwrote,

facilitated, and participated in El Chombo, Pitbull, and Karol G's respective illegal copying during the creation of the Infringing Works and realized profits through their respective distribution, and publication of the Infringing Works.

61. Plaintiffs are informed and believe and now allege that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, each Defendant in the involved in the infringement had the ability to oversee the publication and distribution of one or both Infringing Works. And, Defendants, and each of them, realized profits through their respective obtainment, distribution, and publication of one or both Infringing Works.

62. By reason of Defendants', and each of their, acts of contributory and vicarious infringement as alleged above, Plaintiffs have suffered and will continue to suffer substantial damages in an amount to be established at trial, as well as additional actual, general, and special damages in an amount to be established at trial.

63. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiffs' rights. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in their copyrighted sound recordings in an amount to be established at trial.

64. Plaintiffs are informed and believe and now allege that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

## Prayer for Relief

*(Against All Defendants)*

65. With Respect to Each Claim for Relief, Plaintiffs demand judgment against Defendants as follows:

    a. That Defendants, their affiliates, agents, and employees be enjoined from infringing Plaintiffs' copyrights in and to Plaintiffs' copyrighted sound recordings;

    b. Granting an injunction permanently restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them, or any of them, from further infringing Plaintiff's copyrights in and to Plaintiffs' copyrighted sound recordings;

    c. For a constructive trust to be entered over any recordings, videos reproductions, files, online programs, and other material in connection with both recordings of *Dame tu Cosita*, and all revenues resulting from the exploitation of same, for the benefit of Plaintiffs;

    d. That Plaintiffs be awarded all profits of Defendants, and each, plus all losses of Plaintiff, plus any other monetary advantage gained by the Defendants through their infringement, the exact sum to be proven at the time of trial;

    e. That Defendants pay damages equal to Plaintiffs' actual damages and lost profits;

    f. That Plaintiffs be awarded statutory damages and attorneys' fees as available under 17 U.S.C. § 505 or other statutory or common law;

    g. That Plaintiffs be awarded pre-judgment interest as allowed by law;

    h. That Plaintiffs be awarded the costs of this action; and

i. That Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully submitted,

Dated: August 23, 2021   By:   */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
David Shein, Esq.
Frank Trechsel, Esq.
DONIGER / BURROUGHS
Attorneys for Plaintiffs