UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, an individual; ANIKA JOHNSON as personal representative of the Estate of WYCLIFFE JOHNSON, deceased; and STEELY & CLEVIE PRODUCTIONS LTD., <br><br> Plaintiffs, <br><br> v. <br><br> RODNEY SEBASTIAN CLARK DONALDS, *et al.*, <br><br> Defendants. | Case No.: 2:21-cv-02840-AB (AFMx) <br><br> **ORDER GRANTING PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE, WITHHOLDING JUDGMENT ON DEFENDANT JUSTON RECORDS' MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2), AND GRANTING PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY** |

Before the Court is Defendant Juston Records' ("Defendant" or "Juston Records" or "Juston") Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) ("Motion"). (Dkt. No. 70). Plaintiffs Cleveland Constantine Browne, Anika Johnson, and Steely and Clevie Productions Ltd. ("Plaintiffs," collectively) filed an Opposition ("Opp'n"), (Dkt. No. 71), and Defendant filed a

Reply ("Reply"), (Dkt. No. 77). In support of their Opp'n, Plaintiffs filed a Request for Judicial Notice ("RJN"), (Dkt. No. 72). In their Opp'n, Plaintiffs stated that if the Court is inclined to grant Defendant's Motion, that the Court first allow Plaintiffs to conduct jurisdictional discovery. The Court deemed this matter fit for resolution without oral argument and therefore took it under submission on March 17, 2022. For the following reasons, the Court now **GRANTS** Plaintiffs' RJN, **WITHHOLDS JUDGMENT** on Defendant's Motion, and **GRANTS** Plaintiffs' request for jurisdictional discovery, on a limited basis.

## I. BACKGROUND

### a. Factual Background

The following factual allegations are taken from Plaintiffs' Third Amended Complaint ("TAC"). (Dkt. No. 64). Plaintiffs allege that they wrote and recorded a song entitled *Fish Market* in 1989 and that this song "is an original work including an original drum pattern that gives it a unique sound as compared to prior works." (TAC, ¶ 30). They allege that they later co-authored a song with Shabba Ranks entitled *Dem Bow*, which includes an alternative mix of *Fish Market* as its instrumental and became "a massive club hit and garnered worldwide acclaim in the international reggae dancehall scene." (*Id.*, ¶ 31). They claim that *Dem Bow* "is iconic and has been acknowledged as foundational to reggaeton music." (*Id.*).

This lawsuit is based on the allegation that a more recent song (as well as a remix of this song and an accompanying music video) include rhythm and drum elements involving "an unauthorized sample and/or a verbatim copy of elements from *Fish Market*). (*Id.*, ¶¶ 35–6). The more recent song is *Dame Tu Cosita* by El Chombo ("Song"), released as a single by Sony Music Entertainment, Ultra Music, and Juston Records on April 2, 2018. (*Id.*, ¶ 32). The remix of El Chombo's *Dame Tu Cosita* ("Remix"), featuring Pitbull and Karol G, was released by Sony Music Entertainment, Ultra Music, and Juston Records in August of 2018, and they also released an

accompanying music video ("Music Video").[1] (*Id.*, ¶ 33). Plaintiffs allege that Defendants never sought or obtained authorization for their alleged use of *Fish Market* in the production of the Allegedly Infringing Works. (*Id.*, ¶ 41). Moreover, they allege that Defendants continue to exploit and receive monies from these Works, in a way that violates Plaintiffs' rights in *Fish Market*. (*Id.*, ¶ 42). Finally, they allege that the alleged infringement "has also allowed for further infringement abroad." (*Id.*)

      Defendant Juston Records is "a French company located in France that does not have any employees [or] offices . . . in California or the United States." (Motion at 1). Juston grants that it recorded a version of *Dame Tu Cosita* as a new version of an earlier song entitled *El Cosita Mix*. (*Id.* at 3). *El Cosita Mix* was created and released by another Defendant in the case, Rodney Sebastian Clark ("Clark") p/k/a "El Chombo." (*Id.*). Plaintiffs claim that "[t]he primary rhythm and drum sections of *El Cosita Mix* [are] comprised of an unauthorized sample and/or verbatim copy of elements from *Fish Market*." (Opp'n at 1–2).

      Juston grants that in order to record its version of *Dame Tu Cosita*, it "entered into several agreements with Clark and his company [D]efendant Energy Music Corp. (a Florida entity) to acquire the rights to [*El Cosita Mix*] and to exploit the recording of and publish *Dame Tu Cosita*." (Motion at 3). Juston grants that it "entered into . . . featured artist agreements with defendants . . . Karol G (a resident of New York) and . . . Pitbull (a resident of Florida)." (*Id.*).

      Juston also grants that it entered into a "co-exploitation agreement with French record label and publisher Play Two," in order to exploit both the original and remixed versions of *Dame Tu Cosita*. (*Id.*). Juston claims that Play Two licensed both versions of the song to US distributors and that Juston "never entered into any agreements with [D]efendants Sony Music Entertainment . . . and Ultra Records, LLC

---

[1] Collectively, the Court refers to the Song, the Remix, and the Music Video as the "Allegedly Infringing Works" or the "Works."

. . . . or any of the other [D]efendants in this action concerning the exploitation" of these songs in the United States or anywhere else. (*Id.*). By contrast, Plaintiffs claim that "Juston and [Play Two] licensed the songs to U.S. distributors and the U.S. Market via an agreement with Ultra Records, Inc. . . . ." (Opp'n at 3).

### b. Procedural Background

On April 1, 2021, Plaintiffs filed their Complaint against a number of Defendants, including Defendant Juston Records. (Dkt. No. 1). Plaintiffs then filed their First Amended Complaint, (Dkt. No. 12), Second Amended Complaint, (Dkt. No. 30), and TAC. Plaintiffs' TAC includes two causes of actions: (i) Copyright Infringement, and (ii) Vicarious and/or Contributory Copyright Infringement. (*Id.* at 8–13). While many of the other Defendants responded to the TAC by filing an Answer, (Dkt. No. 69), Defendant Juston Records responded to the TAC by filing the instant Motion.

## II. JUDICIAL NOTICE

In support of their Opposition, Plaintiffs have filed a Request for Judicial Notice ("Request"), (Dkt. No. 72), in which they request judicial notice of the following public records: (i) Copyright Registration Number PA0002270771 for Dame Tu Cosita / by Pitbull x El Chombo x Karol G, (ii) Copyright Registration Number SR0000830611 for Dame Tu Cosita (Radio Version), (iii) Copyright Registration Number PA0002273510 for Dame Tu Cosita Radio Version, (iv) Copyright Registration Number PA0002273532 for Dame Tu Cosita, (v) Google, LLC's Statement of Information, filed with the California Secretary of State on March 24, 2021, (vi) Apple Inc.'s Statement of Information, filed with the California Secretary of State on January 27, 2022. Copies or printouts of each are attached as exhibits to the Declaration of David Shein ("Shein Declaration" or "Shein Decl."). (Dkt. No. 71-1).

According to Fed. R. of Evid. 201, a court may take judicial notice of an

4.

adjudicative fact that is not subject to reasonable dispute, because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, the court "*must* take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis added).

The Court now takes judicial notice of the above six public records under Fed. R. Evid. 201, because they can be accurately and readily determined by reference to the websites of the U.S. Copyright Office and the California Secretary of State, on portions of these websites that cannot reasonably be questioned for accuracy. Therefore, the Court **GRANTS** Plaintiffs' Request. To the extent necessary to rule on the pending Motion, the Court takes judicial notice of these public records.

### III.     LEGAL STANDARD

When a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003)). When the motion is based on pleadings and affidavits instead of an evidentiary hearing, the plaintiff must make a prima facie showing that the court has personal jurisdiction. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127–28 (9th Cir. 1995). To establish a prima facie showing, the plaintiff must show some evidentiary basis supporting the complaint's allegations of jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show that jurisdiction is unreasonable. *Burger King v. Rudkewicz*, 471 U.S. 462, 477 (1985). "[U]ncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin*

*Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

To establish personal jurisdiction over a defendant, the plaintiff must show that the forum state's long arm statute is satisfied and that the exercise of jurisdiction over the nonresident defendant comports with due process. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under [California] state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01.

Due process requires that the nonresident defendant have minimum contacts with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A court may exercise personal jurisdiction over a nonresident defendant on two bases. First, general jurisdiction exists if defendant's activities in the forum state are so substantial or continuous and systematic that the defendant is essentially at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Second, there is specific jurisdiction if the defendant's specific activity in the forum gives rise to the plaintiff's claim at issue. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780 (2017).

For claims that arise under federal law, if a defendant is not subject to personal jurisdiction in any state's courts of general jurisdiction but if the defendant still has contacts with the United States, a federal court may sometimes assert jurisdiction over that defendant under Fed. R. Civ. P. 4(k)(2), i.e. the federal long-arm statute. Fed. R. Civ. P. 4(k)(2)(A). Federal courts may assert personal jurisdiction over a defendant under Rule 2(k)(2) as long as doing so would be consistent with the Constitution and laws of the United States. Fed R. Civ. P. 4(k)(2)(B). In particular, jurisdiction must be consistent with the Constitution's due process requirements. *See Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). Under Rule 4(k)(2),

this means a defendant must have "minimum contacts" with the United States as a whole. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant meets the minimum contacts requirement by satisfying the following three-prong test: (i) the defendant purposefully directed activities to the United States or to its residents, (ii) the claim in question arises out of or relates to the defendant's forum-related activities, with the forum in this case being the United States as a whole, and (iii) the exercise of jurisdiction would comport with fair play and substantial justice, i.e. would be reasonable. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011).

## IV. DISCUSSION

If the Court has personal jurisdiction over Defendant, it is either because Defendant is subject to general personal jurisdiction in California, subject to specific personal jurisdiction in California, or subject to personal jurisdiction under the federal long-arm statute, i.e. Fed. R. Civ. P. 4(k)(2). The Court will consider each of these possibilities in succession.

### a. General Personal Jurisdiction

In its Motion, Defendant argues that it is not subject to general personal jurisdiction in California because it "has no offices, employees, accounts, agents, or licenses or incorporations in California, and does not do anything else in or with California such that it could even remotely be deemed 'at home' in the state." (Motion at 6). The Court counts Plaintiffs' failure to address this issue as a concession that the Court does not have general personal jurisdiction over Defendant. The Court therefore accepts Defendant's argument on this point.

### b. Specific Personal Jurisdiction

Even though Defendant is not subject to general personal jurisdiction in California, it may be subject to specific personal jurisdiction if Plaintiffs' claims against Defendant arise from Defendant's California-related activities. *See Haisten v.*

*Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986). The Ninth Circuit employs a three-part test to determine whether specific jurisdiction may be exercised over Defendant: (i) Defendant must have intentionally availed itself of the privilege of conducting activities in California, in a way that invoked the benefits and protections of California's laws, (ii) Plaintiffs' claims against Defendant must arise out of or result from Defendant's California-related activities, and (iii) the Court's exercise of jurisdiction over Defendant must be reasonable. *See id.* (citing *Pacific Atlantic Trading Co. v. M.V. Main Express*, 758 F.2d 1325, 1327 (9th Cir. 1985)).

      As noted above, Plaintiffs must first make a prima facie showing that the Court has specific personal jurisdiction over Defendant. *See Caruth*, 59 F.3d at 127–28. To establish a prima facie showing, Plaintiffs must show some evidentiary basis supporting its allegations of jurisdiction. *See Ballard*, 65 F.3d at 1498. Only if Plaintiffs establish a prima facie case will the burden shift to Defendant to show that jurisdiction of this kind is unreasonable. *See Burger King*, 471 U.S. at 477.

      Plaintiffs claim that Defendant intentionally availed itself of the privilege of conducting activities in California, on the basis that it "took advantage of California corporations such as Google, LLC and its YouTube website to market, display, and distribute *Dame Tu Cosita* in California . . . ." (Opp'n at 22). Plaintiffs also note that Defendant streamed *Dame Tu Cosita* on Apple Music, which is owned by California-based Apple Inc. (*Id.* at 16, 23). Plaintiffs argue that Defendant, in these ways, expressly aimed its conduct at California. (*Id.* at 22–23).

      As Defendant points out, the Ninth Circuit has clearly rejected Plaintiffs' argument: "Uploading a video to YouTube—which has its headquarters in San Bruno, California—is not an act expressly aimed at California simply because the company is based in the state." *Werner v. Dowlatsingh*, 818 F. App'x 671, 673 n. 1 (9th Cir. 2020). (Reply at 13). Although this statement appears in one of the Ninth Circuit's

unpublished opinions and therefore does not constitute binding precedent, the Court nevertheless cites the statement as persuasive authority and affirms the view it expresses. *See* Fed. R. App. P. 32.1; U.S. Ct. of App. 9th Cir. R. 36-3. Moreover, the same reasoning applies to the conduct of uploading a song or music video to Apple Music.

Since Plaintiffs point to no other conduct to establish that Defendant intentionally availed itself of the privilege of conducting activities in California, they have failed to make a prima facie showing that there is specific personal jurisdiction over Defendant in California.

### c. Personal Jurisdiction Under the Federal Long-Arm Statute

The Court now turns to the only remaining basis for personal jurisdiction over Defendant, namely the federal long-arm statute (Fed R. Civ. P. 4(k)(2)). Plaintiffs devote most of their personal jurisdiction argument to the federal long-arm statute; by doing so, they effectively hang the parties' dispute on this one issue. (*See* Opp'n at 7–21). As a starting point, the Court notes that this strategy has a low probability of success: Rule 4(k)(2) is only applied in the Ninth Circuit in "limited circumstances." *See Pebble Beach v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Indeed, the Ninth Circuit has noted that applications of this rule in other circuits have typically required "extensive contacts to this country," such as (a) engaging in numerous conspiracies to bomb highly-visible and densely-populated US targets, or (b) directly insuring hundreds of claims in the US. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007). Therefore, the Court will not be quick to exercise jurisdiction over Defendant under Rule 4(k)(2).

That said, if the Court *is* to exercise personal jurisdiction under the federal long-arm statute, three requirements must be met: (i) Plaintiffs' claim(s) against Defendant must arise under federal law, (ii) Defendant "must not be subject to the personal jurisdiction of any state court of general jurisdiction," and (iii) this exercise of

jurisdiction "must comport with due process." *Holland*, 485 F.3d at 461 (citing *Pebble Beach*, 453 F.3d at 1159). In its Motion, Defendant concedes that the first two of these requirements are met in this case: Plaintiffs' claims arise under the Copyright Act, and Defendant is not subject to general personal jurisdiction in any state court. (Motion at 14). The Court agrees. *See Holland*, 485 F.3d at 462 ("absent any statement from [the defendant] that it is subject to the courts of general jurisdiction of another state, the second requirement of Rule 4(k)(2) is met"). Defendant's argument against personal jurisdiction under the federal long-arm statute is that such jurisdiction would not comport with due process. (Motion at 14–15).

The due process analysis under Rule 4(k)(2) involves the same three-part test that is used to establish specific personal jurisdiction, except that the relevant forum is the entire United States, instead of just California. *See Pebble Beach*, 453 F.3d at 1159. In other words, jurisdiction over Defendant will only comport with due process if the following three conditions are met: (i) Defendant must have intentionally availed itself of the privilege of conducting activities in the United States (or "purposefully directed" conduct at US residents), in a way that invoked the benefits and protections of US laws, (ii) Plaintiffs' claims against Defendant must arise out of or result from Defendant's US-related activities, and (iii) the Court's exercise of jurisdiction over Defendant must be reasonable. *See id.* at 1155, 1159.

The Court will now evaluate whether Defendant purposefully directed conduct at the United States, in a way that invoked the benefits and protections of US laws. Again, Plaintiffs must first make a prima facie showing that the Court has jurisdiction over Defendant. *See Caruth*, 59 F.3d at 127–28. To establish a prima facie showing, Plaintiffs must show some evidentiary basis supporting its allegations of jurisdiction. *See Ballard*, 65 F.3d at 1498.

In order to establish purposeful direction, Plaintiffs must show, among other things, that Defendant expressly aimed its conduct at the forum, which, in this case, is

the United States. *See Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Plaintiffs argue that Defendant expressly aimed conduct at the United States in three ways: (i) acquiring rights from US individuals and entities, (ii) creating various versions of *Dame Tu Cosita* in the United States, and (iii) exploiting and marketing these Works in the United States. (Opp'n at 10). More specifically, Plaintiffs claim that there was purposeful direction in Defendant's following decisions: (a) contracting with Energy Music Corp., which is a Florida entity, to acquire the rights to *El Cosita Mix*, (b) entering into featured artist agreements with US-based artists Karol G and Pitbull, (c) recording and/or producing portions of the Remix and the Music Video in the US, (d) registering copyrights for both versions of the song and the Remix music video in the US, (e) licensing the Song and the Remix to US distributors, and (f) marketing the Works within the US. (Motion at 9–11).

With respect to each of these alleged acts by Defendant, Plaintiffs must show some evidentiary basis for the allegation. Next, the allegations that have a sufficient evidentiary basis must together constitute "extensive contacts" with the US, as required by the Ninth Circuit's standard for exercising jurisdiction under Rule 4(k)(2). *See Holland*, 485 F.3d at 462.

Plaintiff provides a sufficient evidentiary basis for allegation (a), namely that Defendant contracted with the Florida entity Energy Music Corp., in order to acquire the rights to *El Cosita Mix*. The "Exclusive License Agreement" between Defendant and Energy Music Corp. makes clear (i) that Energy Music Corp. has its main office in Florida, and (ii) that Energy Music Corp. would give Defendant exclusive rights to *El Cosita Mix* for a period of ten years, in exchange for, among other things, 30% of Defendant's net revenues from its exploitation of these rights. (Dkt. No. 74-1 at 2, 5–6). Additionally, a later agreement between these same parties makes clear that the agreement applies throughout the world. (Dkt. No. 74-2 at 3). Moreover, Defendant

grants that allegation (a) is true. (Motion at 3).

There is also a sufficient evidentiary basis for allegation (b), namely that Defendant entered into featured artist agreements with US-based artists Karol G and Pitbull. Defendant grants that these artists are based in the US and that it entered into featured artist agreements with them for the purpose of recording the Remix. (*Id.*). The Court has not been provided with copies of these agreements, but their existence is not in dispute. However, the mere existence of these agreements does not establish that any disputes with respect to them are to be litigated in US courts and under US law, despite Plaintiffs' claim that it is "highly likely" the agreements include provisions to this effect. (Opp'n at 11).

Allegation (c), according to which Defendant recorded and/or produced portions of the Remix and the Music Video in the US, is not supported by a sufficient evidentiary basis. Plaintiffs claim that "discovery is likely to reveal that the [Music Video] . . . was shot in Miami," and add that the mansion featured in the Music Video "appears to be in Miami." (*Id.* at 6). The Court has reviewed the Music Video and finds that none of its content clearly indicates it was shot in the United States.

Plaintiffs also claim that the Remix was "likely partially recorded in the United States," apparently on the basis that it features the US-based artists Karol G and Pitbull. (*Id.* at 3, 15). Plaintiffs also note that Defendant "fails to assert that Pitbull, Karol G[,] or El Chombo recorded their vocals or provided any production input to the [Remix] outside of the [US] or that the [*Dame Tu Cosita*] single was recorded outside the [US]." (*Id.* at 3). Plaintiffs add: "[T]hose [US] based artists more likely than not recorded their vocals and other contributions in the [US]." (*Id.*). Plaintiffs' speculation concerning the location of the recording sessions does not constitute a sufficient evidentiary basis for allegation (c). Therefore, the Court will not consider allegation (c) in its evaluation of Defendant's US contacts.

Allegation (d), namely that Defendant registered US copyrights for the Alleged

12.

Infringing Works, is supported by a sufficient evidentiary basis, given that the Court has already taken judicial notice of these copyrights above.

Plaintiffs are unable to provide a sufficient evidentiary basis for allegation (e), according to which Defendant licensed both the Song and the Remix to US distributors. Plaintiffs argue that "Juston did not merely license [the Song] to [Play Two] but instead [was] an active participant with [Play Two] in connection with the exploitation of [the Song], including in the United States via Ultra Records." (Opp'n at 12–13). Notwithstanding Plaintiffs' argument to the contrary, this view is not supported by the content of an agreement signed by the head of Energy Music Corp., Rodney Sebastian Clark, in which Clark makes certain representations to Ultra Records, in order to induce Ultra Records to enter into an "exclusive licensing agreement" with Play Two. (Dkt. No. 74-3 at 2). That agreement mentions Defendant Juston Records, though only in Clark's acknowledgement that he will not seek payments related to the exploitation of *El Cosita Mix* or the Works from Ultra, but will instead seek any and all such payments from Juston. (*Id.*). Nothing about this particular acknowledgement and nothing else in this agreement suggests that Juston Records had an agreement with Ultra Records. Rather, the evidence provided by Plaintiffs in this document (and in the other documents Plaintiffs provide), (Dkt Nos. 74-1–74-4), is consistent with Defendant's representations, namely that "the distribution of the [songs] in the United States was through a third party (Ultra via Play Two)." (Reply at 6).

Plaintiffs also offer an alternative argument concerning allegation (d), namely that even if Defendant was not actively involved in US distribution, "a non-forum middleman does not protect a foreign defendant from personal jurisdiction." (Opp'n at 13). This argument fails because the supporting authority Plaintiffs cite, *Plant Food Co-Op v. Wolfkill Feed and Fertilizer*, 633 F.2d 155 (9th Cir. 1980), is distinguishable. In *Plant Food*, a dealer in Montana ordered a product from a

13.

Washington corporation, and the Washington corporation purchased the product from a Canadian supplier. *Id.* at 156. The supplier then shipped the product to Montana. *Id.* at 156–57. The court in *Plant Food* found that there was personal jurisdiction over the Canadian supplier, in part because the supplier "engaged in affirmative conduct to deliver its product into Montana," by shipping an item to Montana. *Id.* at 159. There are no analogous facts concerning Defendant in this case. Plaintiffs have provided no evidence indicating that Defendant engaged in affirmative conduct to effect distribution of the Alleged Infringing Works in the United States.

According to allegation (e), Defendant licensed the Song and the Remix to US distributors. The Court finds that Defendant attained exclusive rights to Clark's work and then entered into a co-exploitation agreement concerning these rights with Play Two. Based on the evidence available to the Court, Defendant likely did not enter into a licensing agreement with Ultra, by which Ultra was given the right to distribute the Song and the Remix in the United States. Rather, Play Two appears to be the party that entered into a licensing agreements with Ultra. In making the determination, the Court would have ideally had access to an English translation of the March 28, 2018 co-exploitation agreement between Defendant and Play Two (referred to in Dkt. No. 74-4), as well as to the licensing agreement entered into between Play Two and Ultra Records (referred to in Dkt. No. 74-3). However, given the evidence before the Court, there is insufficient support for the allegation that Defendant licensed the Song and the Remix to US distributors.

Finally, Plaintiffs are unable to provide a sufficient evidentiary basis for allegation (f), namely that Defendant has marketed and/or markets these works within the United States. Plaintiffs are not entirely clear with respect to this allegation: in some instances, they say Defendant was directly involved in marketing the Works in the US, (Opp'n at 2, 3, 10, 24), and in other instances, they say Defendant "provided marketing and promotional materials to be used by Ultra Records in the U.S.," (Opp'n

14.

at 6, 14). However, Plaintiffs' evidence for these allegations is highly limited: they merely point to the fact that the "Exclusive Licensing Agreement" between Defendant and Energy Music Corp. gave Defendant the right to market and distribute new recordings in the United States. (Opp'n at 2). Having a right to market materials in the United States is not the same as taking steps to *actually* market materials in the United States. The arguments presented to the Court do not provide sufficient evidentiary support for allegation (e).

For the above reasons, in assessing whether Defendant expressly aimed its conduct at the United States, the Court considers the following set of acts by Defendant: (i) contracting with Energy Music Corp., a Florida entity, to acquire the rights to *El Cosita Mix*, (ii) entering into featured artist agreements with US-based artists Karol G and Pitbull, and (iii) registering US copyrights for the Works. If the Court is to exercise jurisdiction over Defendant, these three acts must together constitute "extensive contacts" with the US, as required by the Ninth Circuit's standard for exercising jurisdiction under Rule 4(k)(2). *See Holland*, 485 F.3d at 462.

Plaintiffs fall short of this standard. First, in the Court's judgment, these acts, considered together, do not constitute "extensive contacts to this country," especially in light of the numerous and substantial contacts required for jurisdiction under Rule 4(k)(2). *See Holland*, 485 F.3d at 462. Additionally, precedent supports the view that none of these acts clearly count as instances of express aiming.

In *Hit Bound Music, Ltd. v. BBC Films*, the BBC acquired rights to a film and entered into agreements with some third parties, permitting these third parties to distribute the film in various parts of the world. 2017 WL 564053, at *1 (C.D. Cal. June 28, 2017). One of these third parties distributed the film in California. *Id.* at *3. Moreover, a Los Angeles-based attorney was involved in the negotiations concerning the film rights. *Id.* at *1. The *Hit Bound* court concluded that a third party's decision to distribute the film in California was not enough to show that the BBC had expressly

15.

aimed its conduct at California. *Id.* at *3. Additionally, the *Hit Bound* court found that the following facts supported its conclusion with respect to the express aiming issue: the BBC never traveled to California for any business related to the film, and the BBC's agreements with third parties included venue clauses giving exclusive jurisdiction to courts in the United Kingdom. *Id.*

The facts in the instant case are similar. Defendant acquired the right to distribute the Works from an entity, Energy Music Corp., and entered into an agreement with a third party, Play Two. The latter agreement gave Play Two permission to distribute the Works. Play Two then arranged for distribution of the Works in the United States with the help of another party, Ultra Records.

Play Two's decision to pursue distribution in the United States is not enough to show that Defendant expressly aimed its conduct at the United States. Moreover, there is no evidence that Defendant traveled to the United States for any business related to the Works, and Defendant's agreements with Play Two contain French choice of law and venue provisions. (*See* Reply at 6; Ouillani Decl., Dkt. No. 70-1, ¶¶ 15–23). Finally, though US-based artists were involved with Defendant's exploitation of its rights, their involvement is insufficient to establish express aiming, just as the involvement of the Los Angeles-based attorney was insufficient to establish express aiming in *Hit Bound*. The featured artist agreements have not been presented to the Court, and the mere fact that these agreements involved US-based artists is not enough to establish that Defendant, by means of these agreements, aimed its conduct at US residents.

As to the registering of US copyrights, such actions represent Defendant's effort to protect its intellectual property rights, rather than an intent to appeal to American consumers, target US residents, or conduct activities within the United States. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 982 (9th Cir. 2021); *Pebble Beach*, 453 F.3d at 1159. (Reply at 7). It is possible that a decision to register such

16.

copyrights could justify an exercise of jurisdiction under Rule 4(k)(2) if joined together with other contacts to meet the "extensive contacts" threshold. On their own, however, they are insufficient. *See Fumoto Giken Co. Ltd. v. Mistuoka*, No. CV 14-9797 DMG (MRWx), WL 12766167, at *5 ("given the Ninth Circuit's cautious application of Rule 4(k)(2), this Court is not persuaded that the mere registration of trademarks with the PTO, without more, amounts to the type of minimum contacts which would justify haling a foreign defendant into federal court").

Finally, Plaintiffs' citation to *Mattel, Inc. v. MCA Records, Inc.*, 28 F.Supp.2d 1120 (C.D. Cal. 1998) is unavailing. (*See* Opp'n at 13–14). In its affirmance, the Ninth Circuit found that the defendants "developed a coordinated plan to distribute [the allegedly infringing intellectual property] in the United States . . ." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (9th Cir. 2002). This important factual difference distinguishes *Mattel* from the case at bar.

Plaintiffs cannot establish jurisdiction under Rule 4(k)(2) without establishing that such jurisdiction would comport with due process, and they cannot establish due process without showing there was purposeful direction by Defendant. Since purposeful direction requires express aiming, and since Plaintiffs have failed to make a sufficient case for express aiming by Defendant, Plaintiffs' argument for jurisdiction under Rule 4(k)(2) fails.

### d. Defendant's Evidentiary Objections and Plaintiffs' Request for Jurisdictional Discovery

Defendant has filed evidentiary objections to the Shein Declaration, (Dkt. No. 77-1), in which it requests (i) that the Court rule on its objections and (ii) that the Court strike any part of the Shein Declaration concerning which the Court sustains an objection. (*Id.* at 1). To the extent that the Court relied on the evidence presented in the Shein Declaration, Defendant's evidentiary objections are **OVERRULED**. All other objections are **OVERRULED as moot**.

In their Opposition, Plaintiffs state that the Court, if inclined to grant Defendant's Motion, should proceed by first allowing Plaintiffs to conduct jurisdictional discovery. (Opp'n at 24–25). District courts have broad discretion either to permit or deny jurisdictional discovery. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Where claims of personal jurisdiction are "attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988).

The Court is strongly inclined to grant Defendant's Motion. However, it will give Plaintiffs a final opportunity to meet their burden of establishing that this Court has personal jurisdiction over Defendant. If Plaintiffs can demonstrate that (i) the Remix was recorded in the United States, (ii) the Music Video was recorded in the United States, and (iii) the artist agreements with Pitbull and Karol G contain American choice of law and venue provisions, then it would be appropriate for the Court to reconsider the question of personal jurisdiction. For this reason, the Court **GRANTS** Plaintiffs' request to conduct jurisdictional discovery, on a limited basis. <u>Plaintiffs must limit their jurisdictional discovery to the three points discussed in this paragraph</u>. If discovery on these points does not uncover new evidence of substantial contacts with the United States, the Court will grant Defendant's Motion.

Plaintiffs have **sixty (60) days** from the issuance of this Order to complete jurisdictional discovery, as well as to meet and confer with Defendant about the results of such discovery. If the parties reach an agreement with respect to the issue of personal jurisdiction, they must file a stipulation resolving the issue. If the parties do not reach an agreement, they must file a joint status report with the Court, including an explanation of their disagreement and a proposal for how to proceed.

If the parties would like to provide the Court with supplemental briefing and/or

exhibits on the question of personal jurisdiction, they must inform the Court about this in their joint status report and propose a briefing schedule, a hearing date, and page limits for any anticipated filings. Moreover, <u>throughout the period of jurisdictional discovery, the parties are expected to cooperate with one another, making discovery requests and responding to discovery requests in good faith</u>.

## V. CONCLUSION

The Court is inclined to grant Defendant's Motion to Dismiss Plaintiffs' TAC. However, it will give Plaintiffs a final opportunity to meet their burden of establishing that this Court has personal jurisdiction over Defendant. Therefore, the Court now **WITHHOLDS JUDGMENT** on Defendant's Motion to Dismiss Plaintiffs' TAC and **GRANTS** Plaintiffs' request to conduct jurisdictional discovery, on a limited basis. Defendant's Motion to Dismiss Plaintiffs' TAC will remain on the docket, and the Court will rule on the Motion after jurisdictional discovery has closed.

**IT IS SO ORDERED.**

Dated: April 6, 2022

                                          HONORABLE ANDRÉ BIROTTE JR.
                                        UNITED STATES DISTRICT JUDGE

19.