Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Frank Trechsel (SBN 312199)
ftrechsel@donigerlawfim.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CLEVELAND CONSTANTINE BROWNE, an individual; ANIKA JOHNSON, as personal representative of the Estate of WYCLIFFE JOHNSON, deceased; and STEELY & CLEVIE PRODUCTIONS LTD.,

Plaintiffs,

v.

RODNEY SEBASTIAN CLARK DONALDS, an individual; CAROLINA GIRALDO NAVARRO, an individual; ARMANDO CHRISTIAN PÉREZ, an individual; GIORDANO ASHRUF, an individual; SHAREEF BADLOE, an individual; RASHID BADLOE, an individual; JUSTON RECORDS, a French private limited company; SONY MUSIC ENTERTAINMENT, a Delaware general partnership d/b/a ULTRA MUSIC; UNIVERSAL MUSIC PUBLISHING, INC., a California corporation; BMG RIGHTS MANAGEMENT, LLC, a

Case No.: 2:21-cv-02840-AB-AFM
*Hon. André Birotte Presiding*

**CONSOLIDATED COMPLAINT FOR:**

1. COPYRIGHT INFRINGEMENT
2. VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT

JURY TRIAL DEMANDED

Delaware limited liability company; WARNER CHAPPELL MUSIC, Inc., a Delaware corporation; WE ALL NEED 1 LLC, a limited liability company; ULTRA RECORDS, LLC, a Delaware limited liability company; ENERGY MUSIC CORP, a Florida corporation, LUIS ALFONSO RODRÍGUEZ LÓPEZ-CEPERO, an individual; MAURICIO RENGIFO, an individual; ANDRÉS TORRES, an individual; MICHAEL ANTHONY TORRES MONGE, an individual; JUAN CARLOS OZUNA ROSADO, an individual; ERIKA MARÍA ENDER SIMOES, an individual; RAMÓN LUIS AYALA RODRÍGUEZ, an individual; OLADAYO OLATUNJI, an individual; STEPHANIE VICTORIA ALLEN, an individual; NICK RIVERA CAMINERO, an individual; SEBASTIÁN OBANDO GIRALDO, an individual; PABLO AREVALO LLANO, an individual; CARLOS EFRÉN REYES ROSADO, an individual; RAÚL ALEJANDRO OCASIO RUIZ, an individual; JUSTIN BIEBER, an individual; JASON PAUL DOUGLAS BOYD, an individual; UMG RECORDINGS, INC., a Delaware corporation individually and doing business as “Universal Music Latin Entertainment”; WARNER CHAPPELL OVERSEAS HOLDINGS LIMITED, an English private limited company; KOBALT MUSIC PUBLISHING LIMITED, an English private limited company; KOBALT MUSIC PUBLISHING AMERICA, INC., a Delaware corporation; LUIS ENRIQUE ORTIZ RIVERA, an individual; JUAN G

RIVERA VASQUEZ, an individual; EMMANUEL GAZMEY SANTIAGO, an individual; LLANDEL VEGUILLA MALAVÉ, an individual; JUAN CARLOS SALINAS JR., an individual; OSCAR EDWARD SALINAS, an individual; DAVID ALBERTO MACIAS, an individual; FRANCISCO SALDAÑA, an individual; VÍCTOR B CABRERA, an individual; CARLOS ISAÍAS MORALES WILLIAMS, an individual; RAFAEL ANTONIO PINA NIEVES, an individual; URBANI MOTA CEDEÑO, an individual; LUIS JORGE ROMERO, an individual; MARCOS MASIS, an individual; JUAN LUIS MORERA LUNA, an individual; SONY/ATV MUSIC PUBLISHING (UK) LIMITED, an English private limited company; EL CARTEL RECORDS, INC., a Puerto Rican Corporation; GASOLINA PUBLISHING CO, a Puerto Rican Corporation; SONY MUSIC ENTERTAINMENT US LATIN, LLC, a Delaware Limited Liability Company; UNIVERSAL MUSIC GROUP, INC., a California Corporation; and DOES 1 through 10,

Defendants.

Plaintiffs Cleveland Constantine Browne, Anika Johnson as personal representative of the Estate of Wycliffe Johnson, and Steely & Clevie Productions Ltd., through counsel, hereby pray to this honorable Court for relief based on the following:

## Jurisdiction and Venue

1. This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b), and 1367(a).

3. Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c), 1400(a).

## Parties

4. Plaintiff Cleveland Constantine Browne is a resident of Kingston, Jamaica.

5. Plaintiff Anika Johnson is a resident of Jamaica, and joins in the action not individually, but solely in her capacity as the personal representative of the Estate of Wycliffe Johnson, pursuant to the grant of administration by the Supreme Court of Judicature of Jamaica, Case No. 2015-P-00576. Mr. Johnson died on September 1, 2009, and was a resident of Kingston, Jamaica. As such, Ms. Johnson is a successor-in-interest to all personal property of Wycliffe Johnson, including his intellectual property rights.

6. Plaintiff Steely & Clevie Productions Ltd. is a Jamaican limited company.

7. Upon information and belief, Plaintiffs allege that Defendant Rodney Sebastian Clark Donalds p/k/a El Chombo ("El Chombo") is an individual residing in Panama and doing business in and with the state of California, including in this judicial district.

8. Upon information and belief, Plaintiffs allege that Defendant Carolina Giraldo Navarro p/k/a Karol G ("Karol G") is an individual residing in Medellin, Colombia and doing business in and with the state of California, including in this judicial district.

9. Upon information and belief, Plaintiffs allege that Defendant Armando Christian Pérez p/k/a Pitbull ("Pitbull") is an individual residing in Miami, Florida and doing business in and with the state of California, including in this judicial district.

10. Upon information and belief, Plaintiffs allege that Defendant Giordano Ashruf is an individual residing in Arnhem, Netherlands and doing business in and with the state of California, including in this judicial district.

11. Upon information and belief, Plaintiffs allege that Defendant Shareef Badloe is an individual residing in Arnhem, Netherlands and doing business in and with the state of California, including in this judicial district.

12. Upon information and belief, Plaintiffs allege that Defendant Rashid Badloe is an individual residing in Arnhem, Netherlands and doing business in and with the state of California, including in this judicial district.

13. Upon information and belief, Plaintiffs allege that Defendants Giordano Ashruf, Shareef Badloe, and Rashid Badloe—collectively p/k/a Afro Bros ("Afro Bros")—are a DJ and record production entity of form unknown from Arnhem, Netherlands and doing business in and with the state of California, including in this judicial district.

14. Upon information and belief, Plaintiffs allege that Defendant Juston Records is a French private limited company doing business in and with the United States and the state of California, including in this judicial district.

15. Upon information and belief, Plaintiffs allege that Defendant Sony Music Entertainment, individually and doing business as "Ultra Music" (collectively "Sony"), is an American record label/music industry conglomerate and a Delaware general partnership with offices in Santa Monica, CA.

16. Upon information and belief, Plaintiffs allege that Defendant Universal Music Publishing, Inc. ("UMP") is a Delaware corporation with a principal place of business at 2100 Colorado Avenue, Santa Monica, CA 90404.

17. Upon information and belief, Plaintiffs allege that Defendant BMG Rights Management, LLC ("BMG") is a Delaware limited liability company with a principal place of business at 5670 Wilshire Blvd, Suite 1400, Los Angeles, CA 90036.

18. Upon information and belief, Plaintiffs allege that Defendant Warner Chappell Music, Inc. ("Warner") is a Delaware Corporation with a principal place of business at 777 S. Santa Fe Ave., Los Angeles, CA 90021.

19. Upon information and belief, Plaintiffs allege that Defendant We All Need 1 LLC is a limited liability company doing business in and with the state of California, including in this judicial district.

20. Upon information and belief, Plaintiffs allege that Defendant Ultra Records, LLC ("Ultra") is a Delaware limited liability company doing business in and with the state of California, including in this judicial district.

21. Upon information and belief, Plaintiffs allege that Defendant Energy Music Corp. is a Florida corporation doing business in and with the state of California, including in this judicial district.

22. Upon information and belief, Plaintiffs allege that Defendant Luis Alfonso Rodríguez López-Cepero p/k/a Luis Fonsi ("Luis Fonsi") is an individual residing in Miami, Florida and doing business in and with the state of California, including in this judicial district.

23. Upon information and belief, Plaintiffs allege that Defendant Mauricio Rengifo p/k/a El Dandee ("El Dandee") is an individual residing in Cali, Colombia and doing business in and with the state of California, including in this judicial district.

24. Upon information and belief, Plaintiffs allege that Defendant Andrés Torres ("Torres") is an individual residing in Bogotá, Colombia and doing business in and with the state of California, including in this judicial district.

25. Upon information and belief, Plaintiffs allege that Defendant Michael Anthony Torres Monge p/k/a Myke Towers ("Myke Towers") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

26. Upon information and belief, Plaintiffs allege that Defendant Juan Carlos Ozuna Rosado p/k/a Ozuna ("Ozuna") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

27. Upon information and belief, Plaintiffs allege that Defendant Erika María Ender Simoes ("Simoes") is an individual residing in Miami, Florida and doing business in and with the state of California, including in this judicial district.

28. Upon information and belief, Plaintiffs allege that Defendant Ramón Luis Ayala Rodríguez p/k/a Daddy Yankee ("Daddy Yankee") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

29. Upon information and belief, Plaintiffs allege that Defendant Justin Bieber ("Bieber") is an individual residing in Los Angeles, California.

30. Upon information and belief, Plaintiffs allege that Defendant Jason Paul Douglas Boyd p/k/a Poo Bear ("Boyd") is an individual residing in Los Angeles, California, and/or doing business in and with the state of California, including in this judicial district.

31. Upon information and belief, Plaintiffs allege that Defendant Oladayo Olatunji p/k/a Dyo ("Dyo") is an individual residing in London, England and doing business in and with the state of California, including in this judicial district.

32. Upon information and belief, Plaintiffs allege that Defendant Stephanie Victoria Allen p/k/a Stefflon Don ("Stefflon Don") is an individual residing in London, England and doing business in and with the state of California, including in this judicial district.

33. Upon information and belief, Plaintiffs allege that Defendant Nick Rivera Caminero p/k/a Nicky Jam ("Nicky Jam") is an individual residing in Miami, Florida and doing business in and with the state of California, including in this judicial district.

34. Upon information and belief, Plaintiffs allege that Defendant Sebastián Obando Giraldo p/k/a Sebastian Yatra ("Sebastian Yatra") is an individual residing in Colombia and doing business in and with the state of California, including in this judicial district.

35. Upon information and belief, Plaintiffs allege that Defendant Pablo Arevalo Llano ("Llano") is an individual residing in Miami, Florida and doing business in and with the state of California, including in this judicial district.

36. Upon information and belief, Plaintiffs allege that Defendant Carlos Efrén Reyes Rosado p/k/a Farruko ("Farruko") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

37. Upon information and belief, Plaintiffs allege that Defendant Raúl Alejandro Ocasio Ruiz p/k/a Rauw Alejandro ("Rauw Alejandro") is an individual residing in Miami, Florida and doing business in and with the state of California, including in this judicial district.

38. Upon information and belief, Plaintiffs allege that Defendant Kobalt Music Publishing Ltd. is an English private limited company doing business in and with the state of California, including in this judicial district.

39. Upon information and belief, Plaintiffs allege that Kobalt Music Publishing America Inc. is a Delaware Corporation with a principal place of business at 2 Gansevoort Street 6th Floor, New York, NY 10014, and registered to do business in the state of California.

40. Upon information and belief, Plaintiffs allege that Kobalt Music Publishing America Inc. operates as a wholly owned subsidiary of Kobalt Music Publishing Ltd. (collectively, "Kobalt").

41. Upon information and belief, Plaintiffs allege that Defendant Warner Chappell Overseas Holdings Limited ("WCOH") is an English private limited company and maintains offices in this judicial district.

42. Upon information and belief, Plaintiffs allege that Defendant Luis Enrique Ortiz Rivera p/k/a Chris Jeday ("Chris Jeday") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

43. Upon information and belief, Plaintiffs allege that Defendant Juan G Rivera Vasquez p/k/a Gaby Music ("Gaby Music") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

44. Upon information and belief, Plaintiffs allege that Defendant Emmanuel Gazmey Santiago p/k/a Anuel AA ("Anuel AA") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

45. Upon information and belief, Plaintiffs allege Defendant Llandel Veguilla Malavé p/k/a Yandel ("Yandel") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

46. Upon information and belief, Plaintiffs allege that Defendant Juan Carlos Salinas Jr. p/k/a Play ("Play") is an individual residing in Dallas, Texas and doing business in and with the state of California, including in this judicial district.

47. Upon information and belief, Plaintiffs allege that Defendant Oscar Edward Salinas p/k/a Skillz ("Skillz") is an individual residing in Dallas, Texas and doing business in and with the state of California, including in this judicial district.

48. Upon information and belief, Plaintiffs allege that Defendant David Alberto Macias p/k/a Scott Summers ("Scott Summers") is an individual residing in Houston, Texas and doing business in and with the state of California, including in this judicial district.

49. Upon information and belief, Plaintiffs allege that Defendant Francisco Saldaña p/k/a Luny ("Luny") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

50. Upon information and belief, Plaintiffs allege that Defendant Víctor B Cabrera p/k/a Tunes ("Tunes") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

51. Upon information and belief, Plaintiffs allege that Defendant Carlos Isaías Morales Williams, p/k/a Sech ("Sech") is an individual residing in Panama City, Panama and doing business in and with the state of California, including in this judicial district.

52. Upon information and belief, Plaintiffs allege that Defendant Rafael Antonio Pina Nieves p/k/a Raphy Pina ("Raphy Pina") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

53. Upon information and belief, Plaintiffs allege that Defendant Urbani Mota Cedeño p/k/a DJ Urba ("DJ Urba") is an individual residing in San Juan, Puerto

Rico and doing business in and with the state of California, including in this judicial district.

54. Upon information and belief, Plaintiffs allege that Defendant Luis Jorge Romero p/k/a Rome ("Rome") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

55. Upon information and belief, Plaintiffs allege that Defendant Marcos Masis p/k/a Tainy ("Tainy") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

56. Upon information and belief, Plaintiffs allege that Defendant Juan Carlos Ozuna Rosado p/k/a Ozuna ("Ozuna") was an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

57. Upon information and belief, Plaintiffs allege that Defendant Juan Luis Morera Luna p/k/a Wisin ("Wisin") is an individual residing in San Juan, Puerto Rico and doing business in and with the state of California, including in this judicial district.

58. Upon information and belief, Plaintiffs allege that Defendant Sony/ATV Music Publishing (UK) Limited ("Sony/ATV") is an English private limited company with offices in Santa Monica, California.

59. Upon information and belief, Plaintiffs allege that Defendant Sony Music Entertainment US Latin LLC ("Sony Latin") is a Delaware limited liability company registered to do business in California.

60. Upon information and belief, Plaintiffs allege that Defendants Universal Music Group, Inc. and UMG Recordings, Inc., individually and doing business as "Universal Music Latin Entertainment" (collectively, "UMG"), are California corporations.

61. Upon information and belief, Plaintiffs allege that Defendant El Cartel Records, Inc. ("El Cartel") is a corporation owned and/or operated, in whole or in part, by UMG from UMG's California offices, and does business in and with the state of California and with this district.

62. Upon information and belief, Plaintiffs allege that Defendant Gasolina Publishing Co., ("GPC") is a publishing company registered with ASCAP and doing business in and with the state of California, including in this judicial district.

63. Defendants Does 1 through 20 (collectively, "Doe Defendants") (altogether with the above-referenced parties, "Defendants") are other parties not yet identified who have infringed Plaintiffs' copyrights, have contributed to the infringement of Plaintiffs' copyrights, and/or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual, or otherwise, of Doe Defendants are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when the same have been ascertained.

64. Upon information and belief, Plaintiffs allege that each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants, and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, and/or employment; and actively participated in, subsequently ratified, and/or adopted the acts or conduct alleged herein, with full knowledge of all the facts and circumstances of the alleged violations of Plaintiffs' rights and the damages to Plaintiffs proximately caused thereby.

//

//

## **Factual Background**

65. Plaintiff Cleveland Constantine Browne, p/k/a Clevie ("Mr. Browne"), is a world-renowned influential and innovative composer, musician, and producer known for, *inter alia*, pioneering the use of drum machines in reggae.

66. Wycliffe Anthony Johnson, p/k/a Steely ("Mr. Johnson"), was a likewise influential and innovative composer, musician, and producer.

67. Together, Mr. Browne and Mr. Johnson formed the duo "Steely & Clevie," and worked on numerous genre-defining projects. Mr. Browne and Mr. Johnson worked with such legendary artists as Bob Marley, Bunny Wailer, Jimmy Cliff, Gregory Isaacs, Ziggy Marley, and Lee Scratch Perry.

68. Plaintiff Steely & Clevie Productions Ltd. is the production company of Mr. Browne and Mr. Johnson.

69. In 1989, Mr. Browne and Mr. Johnson wrote and recorded the instrumental song *Fish Market* (the "Song"). The recording and composition for the Song are registered with the U.S. Copyright Office under Reg. No. SR0000893268.

70. *Fish Market* is an original work, including an original drum pattern that differentiates it from prior works. *Fish Market* features, *inter alia*, a programmed kick, snare, and hi-hat playing a one bar pattern; percussion instruments, including a tambourine playing through the entire bar, a synthesized 'tom' playing on beats one and three, and timbales that play a roll at the end of every second bar and free improvisation over the pattern for the duration of the song; and a synthesized Bb (b-flat) bass note on beats one and three of each bar, which follows the aforementioned synthesized 'tom' pattern. The foregoing combination of elements is original to Mr. Browne and Mr. Johnson and was groundbreaking upon its creation.

71. Mr. Browne and Mr. Johnson co-authored the song titled *Dem Bow* (roughly "They Bow" in English) with Shabba Ranks. The composition for *Dem Bow* is registered with the U.S. Copyright Office. *Dem Bow* was a massive hit, and a

critical and commercial success, in the international reggae dancehall scene. Indeed, *Dem Bow's* instrumental (an alternative mix of *Fish Market*, based on the same multi-track recording) is so iconic that it has been acknowledged as widely sampled and/or copied in reggaeton music.[1]

72. In 1990, after *Dem Bow*'s release and success, Denis Halliburton p/k/a "Dennis the Menace" recreated a nearly verbatim version of *Dem Bow*'s instrumental that was used to record *Ellos Benia*, a Spanish Language cover version of *Dem Bow* (the title is a rough Spanish translation of *Dem Bow*), by Fernando Brown p/k/a "Nando Boom"; and *Pounder*, by the duo Patrick Bernard p/k/a "Bobo General" and Wayne Archer p/k/a "Sleepy Wonder."

73. Both *Ellos Benia* and *Pounder* were released on vinyl, 12-inch singles on the Shelly's Records label in New York. The "B Side" to *Pounder* featured an instrumental mix of Mr. Halliburton's sound recording entitled *Dub Mix II* and attributed to Dennis The Menace. This instrumental has been so widely sampled in reggaeton[2] that has become commonly known as the "*Pounder* riddim."[3] The *Pounder* riddim is substantially similar, if not virtually identical, to *Fish Market.* Transcripts of portions of *Fish Market* and the *Pounder* riddim are shown below.

---

[1] *See, e.g.*, Wayne Marshall, "Reggaeton", Pages 36-48, Raquel Z. Rivera, Duke University Press (2009).

[2] The prolific sampling of the *Pounder* riddim in reggaeton is described in the acclaimed documentary *LOUD: The history of Reggaeton*, from Spotify and Futuro Media and narrated by Martha Ivelisse Pesante Rodríguez p/k/a Ivy Queen, https://www.latinousa.org/loudthehistoryofreggaeton/ (last accessed July 29, 2022).

[3] The term riddim in Reggae Dancehall refers to an instrumental track that can be used to record multiple different songs. The term riddim in dancehall, similar to the term beat in hip hop, encompasses the entire track without vocals.

## Fish Market

Steely & Clevie




## Pounder Rhythm

As played by Denis Halliburton



74. Defendants, and each of them, are responsible for the creation and exploitation of the following works: *Dame tu Cosita*, *Dame tu Cosita Remix, Bésame, Calypso, Date La Vuelta, Despacito, Despacito Remix, Échame La Culpa, Imposible, Perfecta, Sola, Vacio, After Party*, *Alerta Roja*, *Camuflash*, *Cuéntame*, *Dale Caliente*, *Desafio*, *Dos Mujeres*, *El Empuje*, *Gangsta Zone*, *Guaya*, *King Daddy*, *La Rompe Carros*, *Latigazo*, *Llegamos a la Disco*, *Machete*, *Nada Ha Cambiado*, *No Me Dejes Solo*, *Perros Salvajes*, *Po' Encima*, *¿Que Vas Hacer?*, *Quiero Decirte*, *Rompe*, *Te Ves Bien, Adictiva*, *Con Calma*, *Definitivamente*, *Don Don*, *Dura*, *El Pony*, *Gasolina*, *Hula Hoop*, *La Rompe Corazones*, *Lo Que Pasó, Pasó*, *Métele Al Perreo*, *Muévelo*, *Problema*, *Que Tire Pa' 'Lante*, *Shaky Shaky*, *Si Supieras*, *Sígueme y Te Sigo*, *Zum Zum, Golpe de Estado*, and *Calenton* (collectively, the "Infringing Works") are each hit songs that have garnered millions (and, for some, billions) of plays and streams, respectively, and resulted in significant revenue and profits to the Defendants, and each of them.

75. Defendants never sought or obtained a license, authorization, or consent from Plaintiffs to use or copy *Fish Market* in connection with any of the Infringing Works.

76. Each of the Infringing Works, as described below, infringes on Plaintiffs' copyrights in *Fish Market*. And Defendants respectively continue to exploit, and generate revenue and profits from, the Infringing Works, in violation of Plaintiffs' rights in their Song.

77. As set forth below, the Infringing Works can be divided into three groups—(1) works written, recorded, and performed by the artist El Chombo; (2) works written, recorded, and performed by Luis Fonsi; and (3) works written, recorded, and performed by Daddy Yankee—along with a myriad of additional performers and featured artists on each of the respective works.

78. As set forth below, the entity defendants were involved in the exploitation, distribution, and publishing of each of the Infringing Works.

**El Chombo Allegations**

79. On April 2, 2018, Sony, Ultra, and Juston released the single *Dame tu Cosita* by El Chombo.

80. On or about August 2018, Sony, Ultra, and Juston released an alternative mix of *Dame tu Cosita* by El Chombo, Pitbull, and Karol G.

81. Both recordings, the *Dame tu Cosita* and/or the *Dame Tu Cosita Remix,* were hit songs garnering millions (if not billions) of plays and streams, resulting in significant revenue and profits to Defendants.

82. The Infringing Works consist of rhythmic speech, drums, and percussion. The primary rhythm and drum sections of *Dame tu Cosita* and *Dame Tu Cosita Remix* consist of an unauthorized sample and/or a verbatim copy of elements from the Song.

83. Moreover, the composition of *Dame tu Cosita* substantially comprises the composition of *Fish Market*. The drum pattern of the *Dame tu Cosita* is the drum pattern of *Fish Market* set forth above. Two versions of the drum pattern are played. The first is one with a "stop" (i.e., a cut) on the third beat and silence on the fourth beat. The second is like the first, but with a continuous beat (i.e., with no stop). Among other things, as in *Fish Market*, the low drum (or bass) sound in the rhythm track of *Dame tu Cosita* plays on beats 1 and 3, is pitched at a Bb (B-flat). The main riffs of *Fish Market* are also included in the *Dame tu Cosita*, including the kick and snare pattern, the reinforcing of beats 1 and 3 on a low-pitched drum, and the sixteenth notes on the 'and' of beat 1 on the snare. The kick and snare drums are prominent in the *Dame tu Cosita* mix, just as in *Fish Market*.

84. For the same reasons, the composition of the *Dame Tu Cosita Remix* substantially comprises the composition of *Fish Market*.

85. A sample of audio from the recording of *Fish Market* is incorporated throughout *Dame Tu Cosita* and the *Dame Tu Cosita Remix*. Particularly, percussive elements mixed in the background of *Dame Tu Cosita* and the *Dame Tu Cosita Remix* correspond to the pattern and frequency bandwidth of sounds in *Fish Market*, including the timbales and tambourine—identifiable, key components of the Song.

**Luis Fonsi Allegations**

86. On or about June 3, 2021, UMG released the Luis Fonsi single entitled *Bésame*. Upon information and belief, Plaintiffs allege that *Bésame* was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Warner, Luis Fonsi, Myke Towers, Cali, and Torres.

87. On or about June 14, 2018, UMG released the Luis Fonsi single entitled *Calypso*. Upon information and belief, Plaintiffs allege that *Calypso* was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Warner, Sony, Luis Fonsi, Cali, Torres, Dyo, and Stefflon Don.

88. On or about April 23, 2019, UMG released the single *Date La Vuelta*. Upon information and belief, Plaintiffs allege that *Date La Vuelta* was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Warner, Sony, UMP, Luis Fonsi, Cali, Torres, Llano, Nicky Jam, and Sebastian Yatra.

89. On or about January 12, 2017, UMG released the Luis Fonsi single *Despacito*. Upon information and belief, Plaintiffs allege that *Despacito* was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Sony, Luis Fonsi, Simoes, and Daddy Yankee.

90. On or about April 2017, UMG released a remix of *Despacito* featuring Justin Bieber (the "*Despacito Remix*"). Upon information and belief, Plaintiffs allege that the *Despacito Remix* was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Sony, Luis Fonsi, Simoes, Daddy Yankee, Bieber, and Boyd.

91. On or about November 17, 2017, UMG released the Luis Fonsi single entitled *Échame La Culpa*. Upon information and belief, Plaintiffs allege that *Échame La Culpa* was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Warner. Sony, Luis Fonsi, El Dandee, Cali, and Torres.

92. On or about October 19, 2018, UMG released the Luis Fonsi single entitled *Imposible*. Upon information and belief, Plaintiffs allege that *Imposible* was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Sony, Luis Fonsi, El Dandee, Torres, and Ozuna.

93. On or about September 23, 2020, UMG released the Luis Fonsi single entitled *Perfecta*. Upon information and belief, Plaintiffs allege that *Perfecta* was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Warner, Sony, Luis Fonsi, El Dandee, Torres, and Farruko.

94. On or about February 6, 2019, UMG released the Luis Fonsi single entitled *Sola*. Upon information and belief, Plaintiffs allege that Sola was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Warner, Sony, Luis Fonsi, El Dandee, and Torres.

95. On or about February 18, 2021, UMG released the Luis Fonsi single entitled *Vacio*. Upon information and belief, Plaintiffs allege that *Vacio* was written, recorded, produced, distributed, and/or exploited by Defendants UMG, Sony, Luis Fonsi, El Dandee, Torres, and Rauw Alejandro.

96. *Bésame, Calypso, Date La Vuelta, Despacito, Despacito Remix, Échame La Culpa, Imposible, Perfecta, Sola*, and *Vacio* (collectively, the "Luis Fonsi Works") were each hit songs garnering millions (if not billions) of plays and streams, resulting in significant revenue and profits to the respective Defendants.

97. Each of the Luis Fonsi Works incorporates an unauthorized sample of the *Fish Market* recording and/or a verbatim copy of the *Fish Market* composition as the primary rhythm / drum section of each work.

98. A comparison of *Fish Market* and each of the Luis Fonsi Works establishes that each of the Luis Fonsi Works incorporates both qualitatively and quantitatively significant sections of the *Fish Market* recording and/or composition.

99. The rhythm section of *Bésame* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*—among other things, the kick, snare, and hi-hat patterns and the sixteenth notes on the 'and' of beat one (from a hi-hat sound substituted for the corresponding snare in *Fish Market*); the kick drum, which plays four crotchets per bar beginning on the first beat of each bar, as in *Fish Market*; and bongos, which are substituted for the corresponding timbales pattern in *Fish Market*, playing a rapid burst phrase ending the fourth bar. The drum and bass tracks, together and independently, are substantially similar in rhythmic structures and texture to the same tracks in *Fish Market*. The kick, snare, hi-hat, and bass are prominent in the mix of *Bésame*, which emulates the sonic texture of *Fish Market*. And the bassline anchors beats one and three, as in *Fish Market*. Because these copied elements form the backbone of *Bésame*, significant portions of *Bésame* are substantially similar, if not virtually identical, to significant portions of *Fish Market*, as set forth in the transcripts below.

//

//

//

//

## Fish Market

Steely & Clevie




## Besame

DRUM & BASS EXCERPT - BARS 1 & 2



100. The rhythm section of *Calypso* copies original elements of the *Fish Market* rhythm section, including the original combination of drum and bass patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, snare, and hi-hat patterns, and the sixteenth notes on the 'and' of beat one from a snare sound. The kick, snare, hi-hat and bass are prominent in the mix of *Calypso*, which emulates the sonic texture of *Fish Market*. Because these copied elements form the backbone of *Calypso*, *Calypso* is substantially similar, if not virtually identical, to *Fish Market*, as set forth in the transcripts of portions of each below.



Calypso

**DRUM & BASS EXCERPT AT APPROX. 1:08**




101. The rhythm section of *Date La Vuelta* copies original elements of the *Fish Market* rhythm section, including the original combination of drum and bass patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, snare, and hi-hat patterns, and the sixteenth notes on the 'and' of beat one from a snare sound. The kick drum of *Date La Vuelta* plays four crotchets per bar beginning on the first beat of each bar, as in *Fish Market*. The hi-hat plays a similar pattern, as shown on bar 2, 4, 6, and 7 (below). The snare largely mimics the snare pattern as played in *Fish Market*, with a minor variation on alternating bars. The kick, snare, hi-hat, and bass are prominent in the mix of *Date La Vuelta*, which emulates the sonic texture of *Fish Market*. The tom in *Date La Vuelta* plays the exact down beat pattern as *Fish Market*, with emphasis on beats 1 and 3, and shares the unique sonic character of the tom sound found in the *Pounder* riddim, indicating that the tom sound was sampled from the *Pounder* riddim. The drum and bass tracks, together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. And the bassline anchors beats one and three, as in *Fish Market*. Because these copied elements form the backbone of *Date La Vuelta*, *Date La Vuelta* is substantially similar, if not virtually identical, to significant portions of *Fish Market*, as set forth below.







102. The rhythm section of *Despacito* and the *Despacito Remix* copies original elements of the *Fish Market* rhythm section, including the original combination of drum and bass patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, snare, and bass patterns. The kick drum of *Despacito* plays four crotchets per bar beginning on the first beat of each bar, as in *Fish Market*. The snare mimics the snare pattern played in *Fish Market*. As in

*Fish Market*, the bass pattern in *Despacito* is primarily played on beats one and three. In addition, the kick, snare, and bass are prominent in the mix of *Despacito*, as in *Fish Market. Despacito* also emulates the texture of *Fish Market*. The drum and bass tracks, together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. The *Despacito Remix* includes the same elements. The musical backbones of *Despacito* and the *Despacito Remix* are substantially similar, if not virtually identical, to *Fish Market*, as set forth below.






103. The rhythm section of *Échame La Culpa* copies original elements of the *Fish Market* rhythm section, including the original combination of drum and bass patterns featured in *Fish Market*. These copied elements include, without limitation, the kick, snare, and bass patterns. The *Échame La Culpa* bass pattern is predominantly played on beats one and three of every bar, as in *Fish Market*. Both the kick drum and the hi-hat play four crotchets per bar beginning on the first beat of each bar. The snare also mimics the snare in *Fish Market*. The kick, snare, and bass are prominent in the mix of *Échame La Culpa*, as in *Fish Market*. Further, *Échame La Culpa* includes a timbale roll/phrase occurring at the end of every second bar, which mimics the structure of *Fish Market*. In sum, the musical backbone of *Échame La Culpa* is substantially similar, if not virtually identical, to *Fish Market*, as set forth below.

Fish Market

Steely & Clevie




ECHAME LA CULPA

DRUM & BASS EXCERPT FROM CHORUS AT BAR 29

START TIME APPROXIMATELY 1:26




104. *Imposible* copies *Fish Market* by using a sample of the *Pounder* riddim as its rhythm section. The bass has a similar texture, and the bassline anchors beats one and three, as in *Fish Market*. The drum and bass tracks combined are substantially similar to the rhythmic structures and texture of the *Fish Market*. Because the *Pounder* riddim sample provides the musical backbone for *Imposible*,

*Imposible* is substantially similar, if not virtually identical, to *Fish Market*, as set forth below.







105. The rhythm section of *Perfecta* copies original elements of the *Fish Market* rhythm section, including the original combination of drum and bass patterns featured in *Fish Market*. The kick drum plays four crotchets per bar beginning on the first beat of each bar. The hi-hat plays a similar pattern. The snare mimics the snare

pattern in *Fish Market*, with the third sixteenth note filled in or substituted by a percussion or timbale, resulting in the same rhythmic effect as in *Fish Market*. Perfecta also copies *Fish Market* by using a sample of the *Pounder* riddim as its rhythm section. Thus, the copied elements of *Fish Market* provide the musical backbone for *Perfecta*, as set forth below.






106. The rhythm section of *Sola* copies original elements of the *Fish Market* rhythm section, including the original combination of drum and bass patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick and snare patterns. The kick drum plays two crotchets per bar on beats 1 and 3 of each bar, and beats 2 and 4 are played with a percussive substitute, thus formulating the full kick drum pattern of *Fish Market*. The bass maintains a similar texture with the deep tone timbre found in *Fish Market*. The bassline anchors beats one and three, as in *Fish Market*. And the kick, snare, and bass are prominent in the mix of *Sola*, as in *Fish Market*. Accordingly, the musical backbone of *Sola* is substantially similar, if not virtually identical, to a significant portion of *Fish Market*, as set forth below.






107. The rhythm section of *Vacio* copies original elements of the *Fish Market* rhythm section, including the original combination of drum and bass patterns featured in *Fish Market*. The kick drum and hi-hat play four crotchets per bar beginning on the first beat of each bar, as in *Fish Market*. The snare mimics the snare pattern played in *Fish Market*. Tom 1 (below) is played on beats 1 and 3, as in *Fish Market*. The rhythmic structures and texture of the drum and bass tracks are substantially similar to those of *Fish Market*. And the bassline emphasizes beats 1 and 3, as in *Fish Market*. *Vacio* also uses a sample of the *Pounder* riddim as its rhythm section. Because the copied elements of *Fish Market* provide the musical backbone for *Vacio*, *Vacio* is substantially similar, if not virtually identical to, significant portions of *Fish Market*, as set forth below.







**<u>Daddy Yankee Claims</u>**

108. On or about September 12, 1995, the mixtape *Playero 39* by Pedro Gerardo Torruellas Brito p/k/a DJ Playero ("DJ Playero"),[4] which included the

[4] DJ Playero is credited as one of the originators of reggaeton with the mixtapes Playero 37 from 1993 (which featured reggae dancehall riddims released subsequent to *Poco Man Jam*, such as *Armshouse Riddim* (1993), *Pitch Riddim* (1992), *Make Hay Riddim* (1993), *Bam Bam Riddim* (1992) (on which Defendant Daddy Yankee was recorded), *Big Up Riddim* (1992) and *Hot This Year Riddim* (1992), etc.) and

Daddy Yankee song *Te Ves Bien*, was released. Upon information and belief, Plaintiffs allege that *Te Ves Bien* was written, recorded, produced, distributed, and/or exploited by Defendants GPC and Daddy Yankee. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Te Ves Bien*. Accordingly, significant portions of *Te Ves Bien* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

109. On or about March 5, 1996, the mixtape *Playero 40: New Era*, which included the Daddy Yankee song *Camuflash*, was released. Upon information and belief, Plaintiffs allege that *Camuflash* was written, recorded, produced, distributed, and/or exploited by Defendants GPC and Daddy Yankee. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Camuflash*. Accordingly, significant portions of *Camuflash* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

110. On or about June 20, 2002, El Cartel released the song *Latigazo*. Upon information and belief, Plaintiffs allege that *Latigazo* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, and Daddy Yankee. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of

---

*Playero 38* (also from 1993), on which Daddy Yankee was featured on the song *No Te Canses* (which includes multiple different hip-hop and dancehall samples).

*Latigazo*. Accordingly, significant portions of *Latigazo* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

111. On or about July 13, 2004, El Cartel released the song *Cuéntame*. Upon information and belief, Plaintiffs allege that *Cuéntame* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, and Luny Tunes. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Cuéntame*. Accordingly, significant portions of *Cuéntame* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

112. On or about July 13, 2004, El Cartel released the song *Dale Caliente*. Upon information and belief, Plaintiffs allege that *Dale Caliente* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, and DJ Urba. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Dale Caliente*. Accordingly, significant portions of *Dale Caliente* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

113. On or about July 13, 2004, El Cartel released the song *El Empuje*. Upon information and belief, Plaintiffs allege that *El Empuje* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, and DJ Urba. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *El Empuje*. Accordingly, significant portions of *El Empuje* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

114. On or about July 13, 2004, El Cartel released the song *Dos Mujeres*. Upon information and belief, Plaintiffs allege that *Dos Mujeres* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, and Luny Tunes. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Dos Mujeres*. Accordingly, significant portions of *Dos Mujeres* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

115. On or about July 13, 2004, El Cartel released the song *King Daddy*. Upon information and belief, Plaintiffs allege that *King Daddy* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, and Luny Tunes. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *King Daddy*. Accordingly, significant portions of *King Daddy* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

116. On or about July 13, 2004, El Cartel released the song *No Me Dejes Solo*. Upon information and belief, Plaintiffs allege that *No Me Dejes Solo* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, Wisin, Yandel, and DJ Urba. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *No Me Dejes Solo*. Accordingly, significant portions of *No Me Dejes Solo* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

117. On or about July 13, 2004, El Cartel released the song *¿Que Vas Hacer?*. Upon information and belief, Plaintiffs allege that *¿Que Vas Hacer?* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, Daddy Yankee and DJ Urba. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *¿Que Vas Hacer?*. Accordingly, significant portions of *¿Que Vas Hacer?* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

118. On or about December 21, 2004, El Cartel released the song *Machete*. Upon information and belief, Plaintiffs allege that *Machete* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, and DJ Urba. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Machete*. Accordingly, significant portions of *Machete* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

119. On or about September 20, 2005, El Cartel released the song *Rompe*. Upon information and belief, Plaintiffs allege that *Rompe* was written, recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, and DJ Urba. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Rompe*. Accordingly, significant portions of *Rompe* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

120. On or about September 30, 2005, El Cartel released the song *Gangsta Zone*. Upon information and belief, Plaintiffs allege that *Gangsta Zone* was written,

recorded, produced, distributed, and/or exploited by Defendants El Cartel, GPC, and Daddy Yankee. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Gangsta Zone*. Accordingly, significant portions of *Gangsta Zone* are substantially similar, if not virtually identical, to significant portions of *Fish Market*.

121. On or about August 30, 2009, El Cartel released the single "*Desafio*", with William Omar Landrón Rivera p/k/a Don Omar ("Don Omar"). Upon information and belief, Plaintiffs allege that *Desafio* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, Luny, and Tunes. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Desafio* and accordingly, significant portions of *Desafio* are substantially similar if not virtually identical to significant portions of *Fish Market*.

122. On or about July 6, 2011, El Cartel released the single "*Llegamos a la Disco*". Upon information and belief, Plaintiffs allege that *Llegamos a la Disco* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, and Daddy Yankee. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Llegamos a la Disco* and accordingly, significant portions of *Llegamos a la Disco* are substantially similar if not virtually identical to significant portions of *Fish Market*.

123. On or about January 28, 2012, El Cartel released the single "*Guaya*". Upon information and belief, Plaintiffs allege that *Guaya* was written, recorded,

produced, distributed and/or exploited by Defendants El Cartel, GPC, and Daddy Yankee. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Guaya* and accordingly, significant portions of *Guaya* are substantially similar if not virtually identical to significant portions of *Fish Market*.

124. On or about September 11, 2012, El Cartel released the single "*Perros Salvajes*". Upon information and belief, Plaintiffs allege that *Perros Salvajes* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, and Daddy Yankee. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Perros Salvajes* and accordingly, significant portions of *Perros Salvajes* are substantially similar if not virtually identical to significant portions of *Fish Market*.

125. On or about October 15, 2012, El Cartel released the single "*After Party*". Upon information and belief, Plaintiffs allege that *After Party* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, and Daddy Yankee. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *After Party* and accordingly, significant portions of *After Party* are substantially similar if not virtually identical to significant portions of *Fish Market*.

126. On or about October 29, 2013, El Cartel released the single "*La Rompe Carros*". Upon information and belief, Plaintiffs allege that *La Rompe Carros* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel,

GPC, Daddy Yankee, Luny, and Tunes. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that appear to be at least partially provided by an audio sample of the *Pounder* Riddim), form the backbone of *La Rompe Carros* and accordingly, significant portions of *La Rompe Carros* are substantially similar if not virtually identical to significant portions of *Fish Market*.

127. On or about September 7, 2012, El Cartel released the single "*Po' Encima*". Upon information and belief, Plaintiffs allege that *Po' Encima* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, and Daddy Yankee. Copied elements from *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*) form the backbone of *Po' Encima* and accordingly, significant portions of *Po' Encima* are substantially similar if not virtually identical to significant portions of *Fish Market*.

128. On or about September 7, 2012, El Cartel released the single "*Quiero Decirte*". Upon information and belief, Plaintiffs allege that *Quiero Decirte* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, and Daddy Yankee. Copied elements from *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*) form the backbone of *Quiero Decirte* and accordingly, significant portions of *Quiero Decirte* are substantially similar if not virtually identical to significant portions of *Fish Market*.

129. On or about October 13, 2013, El Cartel released the single "*Nada Ha Cambiado*". Upon information and belief, Plaintiffs allege that *Nada Ha Cambiado* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, and Daddy Yankee. Copied elements from *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*) form the backbone of *Nada Ha Cambiado* and accordingly, significant portions of

*Nada Ha Cambiado* are substantially similar if not virtually identical to significant portions of *Fish Market*.

130. On or about February 3, 2016, El Cartel released the single "*Alerta Roja*". Upon information and belief, Plaintiffs allege that *Alerta Roja* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, Chris Jeday, and Gaby Music. Copied elements from *Fish Market*, including the original combination of drum and bass patterns featured in *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*), form the backbone of *Alerta Roja* and accordingly, significant portions of *Alerta Roja* are substantially similar if not virtually identical to significant portions of *Fish Market*.

131. *After Party*, *Alerta Roja*, *Camuflash*, *Cuéntame*, *Dale Caliente*, *Desafio*, *Dos Mujeres*, *El Empuje*, *Gangsta Zone*, *Guaya*, *King Daddy*, *La Rompe Carros*, *Latigazo*, *Llegamos a la Disco*, *Machete*, *Nada Ha Cambiado*, *No Me Dejes Solo*, *Perros Salvajes*, *Po' Encima*, *¿Que Vas Hacer?*, *Quiero Decirte*, *Rompe*, and *Te Ves Bien* all copied elements from *Fish Market* (that, upon information and belief, are audio samples of the *Pounder* riddim and/or *Fish Market*). Each of these identified Infringing Works were each hit songs, garnering at least millions of plays and streams and resulting in significant revenue and profits to the respective Defendants.

132. On or about November 8, 2018, UMG and El Cartel released the single *"Adictiva"*. Upon information and belief, Plaintiffs allege that *Adictiva* was written, recorded, produced, distributed and/or exploited by Defendants UMG, UMP, El Cartel, Warner, Kobalt, GPC, Daddy Yankee, Chris Jeday, Gaby Music, and Anuel AA.

133. On or about January 24, 2019, UMG and El Cartel released the single *"Con Calma"*. Upon information and belief, Plaintiffs allege that *Con Calma* was

written, recorded, produced, distributed and/or exploited by Defendants UMG, El Cartel, GPC, Warner, Daddy Yankee, Play, Skillz, and Scott Summers.

134. On or about January 31, 2020, UMG and El Cartel released the single *"Definitivamente"*. Upon information and belief, Plaintiffs allege that *Definitivamente* was written, recorded, produced, distributed and/or exploited by Defendants UMG, UMP, El Cartel, GPC, SME, Daddy Yankee, Sech, and Luny.

135. On or about September 11, 2020, UMG and El Cartel released the single *"Don Don"*. Upon information and belief, Plaintiffs allege that *Don Don* was written, recorded, produced, distributed and/or exploited by Defendants UMG, UMP, Warner, El Cartel, GPC, Sony, Daddy Yankee, Raphy Pina, and Anuel AA.

136. On or about January 18, 2018, UMG and El Cartel released the single *"Dura"*. Upon information and belief, Plaintiffs allege that *Dura* was written, recorded, produced, distributed and/or exploited by Defendants UMG, Kobalt, El Cartel, GPC, Daddy Yankee, Warner, DJ Urba, Rome and Gaby Music.

137. On or about April 23, 2021, UMG and El Cartel released the single *"El Pony"*. Upon information and belief, Plaintiffs allege that *El Pony* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, Warner, Chris Jeday, and Gaby Music.

138. On or about November 1, 2004, El Cartel released the single *"Gasolina"*. Upon information and belief, Plaintiffs allege that *Gasolina* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, SME, Luny, and Tunes.

139. On or about March 3, 2017, El Cartel released the single *"Hula Hoop"*. Upon information and belief, Plaintiffs allege that *Hula Hoop* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, Kobalt, Sony, SME, DJ Urba, and Rome.

140. On or about January 6, 2017, Sony and El Cartel released the single *"La Rompe Corazones"*. Upon information and belief, Plaintiffs allege that *La Rompe Corazones* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, SME, Warner, Ozuna, Chris Jeday, and Gaby Music.

141. On or about May 16, 2004, Sony and El Cartel released the single *"Lo Que Pasó, Pasó"*. Upon information and belief, Plaintiffs allege that *Lo Que Pasó, Pasó* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, Sony, SME, Luny, and Tunes.

142. On or about September 21, 2021, Sony and El Cartel released the single *"Métele Al Perreo"*. Upon information and belief, Plaintiffs allege that *Métele Al Perreo* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, Raphy Pina, SME, Luny, and Tunes.

143. On or about January 8, 2020, Sony and Epic released the single *"Muévelo"*. Upon information and belief, Plaintiffs allege that *Muévelo* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, Warner, Sony, Kobalt, Nicky Jam, Play-n-Skillz, SME, and Scott Summers.

144. On or about February 25, 2021, Sony and El Cartel released the single *"Problema"*. Upon information and belief, Plaintiffs allege that *Problema* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, UMP, SME, and Sony.

145. On or about October 18, 2019, Sony and El Cartel released the single *"Que Tire Pa' 'Lante"*. Upon information and belief, Plaintiffs allege that *Que Tire Pa' 'Lante* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, SME, Warner, Kobalt, DJ Urba and Rome.

146. On or about December 11, 2015, UMG and El Cartel released the single *"Shaky Shaky"*. Upon information and belief, Plaintiffs allege that *Shaky Shaky* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, SME, Daddy Yankee, UMG, Sony, Kobalt, Gaby Music, DJ Urba, and Rome.

147. On or about June 28, 2019, El Cartel released the single *"Si Supieras"*. Upon information and belief, Plaintiffs allege that *Si Supieras* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, Warner, Sony, Tainy, Luny, SME, Raphy Pina, Wisin, and Yandel.

148. On or about March 12, 2015, UMG and El Cartel released the single "*Sígueme y Te Sigo"*. Upon information and belief, Plaintiffs allege that *Sígueme y Te Sigo* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, SME, Sony, Warner, Chris Jeday, and Gaby Music.

149. On or about June 15, 2018, Sony Music and Pina Records released the single *"Zum Zum"*. Upon information and belief, Plaintiffs allege that *Zum Zum* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, Warner, Sony, Kobalt, Luny, Tunes, and Raphy Pina.

150. *Adictiva*, *Con Calma*, *Definitivamente*, *Don Don*, *Dura*, *El Pony*, *Gasolina*, *Hula Hoop*, *La Rompe Corazones*, *Lo Que Pasó, Pasó*, *Métele Al Perreo*, *Muévelo*, *Problema*, *Que Tire Pa' 'Lante*, *Shaky Shaky*, *Si Supieras*, *Sígueme y Te Sigo*, and *Zum Zum* were each hit songs garnering at least millions of plays and streams and resulting in significant revenue and profits to the respective Defendants.

151. On or about July 13, 2004, UMG and El Cartel released the single "*Golpe de Estado*". Upon information and belief, Plaintiffs allege that *Golpe de Estado* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, UMG, Yandel, Luny, and Tunes. *Golpe de Estado* includes elements that are substantially similar if not virtually identical to significant

portions of *Dem Bow,* including the lyrical portions of *Dem Bow*. Additionally, copied elements from *Fish Market* (that appear to be at least partially provided by an audio sample of the "Pounder" Riddim) form the backbone of *Golpe de Estado* and accordingly, significant portions of *Golpe de Estado* are substantially similar if not virtually identical to significant portions of *Fish Market*.

152. On or about October 29, 2013, El Cartel released the single "*Calenton*". Upon information and belief, Plaintiffs allege that *Calenton* was written, recorded, produced, distributed and/or exploited by Defendants El Cartel, GPC, Daddy Yankee, and Yandel. *Calenton* includes elements that are substantially similar if not virtually identical to significant portions of *Dem Bow,* including the lyrical portions of *Dem Bow*. Additionally, copied elements from *Fish Market* (that appear to be at least partially provided by an audio sample of the "Pounder" Riddim) form the backbone of *Calenton* and accordingly, significant portions of *Calenton* are substantially similar if not virtually identical to significant portions of *Fish Market*.

153. *Golpe de Estado*, and *Calenton* each contain substantially similar if not virtually identical portions of *Dem Bow,* including the lyrical portions of *Dem Bow.* *Golpe de Estado*, and *Calenton* were each hit songs garnering at least millions of plays and streams around the world resulting in significant revenue and profits to the respective Defendants.

154. *Adictiva*, *Con Calma*, *Definitivamente*, *Don Don*, *Dura*, *El Pony*, *Gasolina*, *Hula Hoop*, *La Rompe Corazones*, *Lo Que Pasó, Pasó*, *Métele Al Perreo*, *Muévelo*, *Problema*, *Que Tire Pa' 'Lante*, *Shaky Shaky*, *Si Supieras*, *Sígueme y Te Sigo*, *Zum Zum, After Party*, *Alerta Roja*, *Camuflash*, *Cuéntame*, *Dale Caliente*, *Desafio*, *Dos Mujeres*, *El Empuje*, *Gangsta Zone*, *Guaya*, *King Daddy*, *La Rompe Carros*, *Latigazo*, *Llegamos a la Disco*, *Machete*, *Nada Ha Cambiado*, *No Me Dejes Solo*, *Perros Salvajes*, *Po' Encima*, *¿Que Vas Hacer?*, *Quiero Decirte*, *Rompe*, *Te Ves Bien, Golpe de Estado*, and *Calenton* (collectively the "Daddy Yankee Works")

incorporates an unauthorized sample of the *Fish Market* recording and/or a verbatim copy of the *Fish Market* composition as the primary rhythm / drum section of the Daddy Yankee Work.

155. A comparison of *Fish Market* and each of the Daddy Yankee Works establishes that each of the Daddy Yankee Works incorporates both qualitatively and quantitatively significant sections of the *Fish Market* recording and/or composition.

156. Specific analysis of *Adictiva*, *Con Calma*, *Definitivamente*, *Don Don*, *Dura*, *El Pony*, *Gasolina*, *Hula Hoop*, *La Rompe Corazones*, *Lo Que Pasó, Pasó*, *Métele Al Perreo*, *Muévelo*, *Problema*, *Que Tire Pa' 'Lante*, *Shaky Shaky*, *Si Supieras*, *Sígueme y Te Sigo*, and *Zum Zum* illustrates the substantial similarity between the *Fish Market* and the identified Daddy Yankee Works.

157. The rhythm section of *Adictiva* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum of *Adictiva* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The rim/snare pattern also replicates that of *Fish Market*. *Adictiva* features a percussive 32nd beats pulse at the end of the second bar. This serves to replicate the 32nd timbale roll played at the end of the second bar in *Fish Market*. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. The kick, snare, hi-hat and bass in *Adictiva* are at least substantially similar to those elements in *Fish Market*. Further, despite note deviations to match the song's chord structure, the bassline most commonly anchors on beats one and three as in *Fish Market*. The bass line also copies the tone and minimalist structure of that played in *Fish Market*. These copied elements form the backbone of *Adictiva* and accordingly, significant portions of *Adictiva* are substantially similar if not virtually

identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.







158. The rhythm section of *Con Calma* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, snare and hi-hat patterns of *Fish Market*. The kick drum of *Con Calma* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The rim/snare pattern also replicates that of *Fish Market*. The hi-hat copies the pattern as played on beats one, two, three and four of each bar in *Fish Market*. The timbale of *Con Calma*

replicates the portions of the *Fish Market* pattern and sonic characteristics found in the "Pounder" riddim and could be an audio sample taken from the same. The tom copies the Fish Market tom pattern which is played on the down beats one and three. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. Further, despite note deviations to match the song's chord structure, the bassline most commonly anchors on beats one and three as in *Fish Market*. The bass line also copies the tone and minimalist structure of that played in *Fish Market*. These copied elements form the backbone of *Con Calma* and accordingly, significant portions of *Con Calma* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown in the transcripts of portions of each below.






159. The rhythm The rhythm section of *Definitivamente* copies original elements of the *Fish Market* rhythm section, including the original combination of drum and bass patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, snare and hi-hat patterns of *Fish Market*. The kick drum of *Definitivamente* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The rim/snare pattern also replicates that of *Fish Market*. The maracas copy excerpts of the tambourine pattern played in *Fish Market*. Further, despite note deviations to match the song's chord structure, the bassline most commonly anchors on beats one and three as in *Fish Market*. The bass line also copies the tone and minimalist structure of that played in *Fish Market*. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. As compared to *Fish Market*, the tempo of *Definitivamente* is approximately the same at 100 bpm. These copied elements form the backbone of *Definitivamente* and accordingly, significant portions of *Definitivamente* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown in the transcripts of portions of each below.

## Fish Market

Steely & Clevie







## Definitivamente

Excerpt as at approx.1:57



160. The rhythm section of *Don Don* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum of *Don Don* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The rim copies the snare pattern played in *Fish Market* with the exception of omitting the second eighth note, synonymous with the Fish Market snare pattern. The hi-hat copies the pattern as played on beats one, two, three and four of each bar in *Fish Market* with an additional second eighth note beat on each bar replacing the second eighth note beat omitted from the snare thus completing the original *Fish Market* snare pattern. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. Further, despite note deviations to match the song's chord structure, the bassline most commonly anchors on beats one and three as in *Fish Market*. The bass line also copies the tone and minimalist structure of that played in *Fish Market*. These copied elements form the backbone of *Don Don* and accordingly, significant portions of *Don Don* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.

//

//

//

Fish Market

Steely & Clevie




Don Don

Excerpt as at approx.0:39




161. The rhythm section of *Dura* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum of *Dura* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The rim/snare pattern also replicates that of *Fish Market*. Synth tom is played on beats one and three as in *Fish*

*Market*. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. Further, despite note deviations to match the song's chord structure, the bassline most commonly anchors on beats one and three as in *Fish Market*. The bass line also copies the tone and minimalist structure of that played in *Fish Market*. These copied elements form the backbone of *Dura* and accordingly, significant portions of *Dura* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.

Fish Market




Dura

Excerpt as at approx.0:41



162. The rhythm section of *El Pony* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum of *El Pony* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The hi-hat cymbals play a similar pattern to that of *Fish Market* with a slight variation at the end of the second bar. The rim/snare pattern also replicates that of *Fish Market*. Synth tom is played on beats one and three throughout *El Pony* as in *Fish Market*. However, the synth tom is taken out at 1:19 (the captioned excerpt) and the pattern introduces a 32nd timbale roll at the end of bar two which mimics the timbale roll in *Fish Market*. Further, despite note deviations to match the song's chord structure, the bassline most commonly anchors on beats one and three as in *Fish Market*. The bass line also copies the tone and minimalist structure of that played in *Fish Market*. These copied elements form the backbone of *El Pony* and accordingly, significant portions of *El Pony* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.






163. The rhythm section of *Gasolina* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum of *Gasolina* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The hi-hat maintains the main accents of the *Fish Market* hi-hat pattern played on beats one, two, three and four of each bar, with additional 8th notes replacing the missing 8th notes as played on the Fish Market snare pattern. Despite the substitution of hi-hat for snare drum on the 2nd and 6th 8th notes of each bar, the rhythm of the combined elements result is the same as *Fish Market*. The combination of the snare drum and hi-hat pattern as played in *Gasolina* gives the same snare and hi-hat audio overlay effect as the pattern played in Fish Market. The arrows in the *Gasolina* notation, emanates from the hi-hat substitution note and points to the location where the snare is played in *Fish Market*. The bongos in *Gasolina* serves to substitute the timbales played in *Fish Market* with a slight variation to the pattern. However, despite the substitution of sound, the bongo drum serves well at capturing the overall feel and sonic characteristics found in *Fish Market*. Synth tom is played on beats one and three at various points throughout *Gasolina*, copying the ‘Fish Market’ tom pattern. *Example 0:20 - 0:28, 0:40 - 0:48,

1:00 -1:08, 1:20 - 1:28, etc. (These can be clearly heard at the locations identified in the *examples at the timestamp locations shown above.) The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. Further, despite note deviations to match the song's chord structure, the bassline most commonly anchors on beats one and three as in *Fish Market*. The bass line also copies the tone and minimalist structure of that played in *Fish Market*. These copied elements form the backbone of *Gasolina* and accordingly, significant portions of *Gasolina* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.






164. The rhythm section of *Hula Hoop* copies original elements of the *Fish Market* rhythm section, including the original combination of drum and bass patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. As compared to *Fish Market*, the rhythm section of *Hula Hoop* plays the exact pattern with exclusion of the timbales. The kick drum and hi-hat cymbals play on beats one, two, three and four of each bar, while the tom and bass plays on beats one and three. The snare drum is also a copy of the *Fish Market* snare pattern. The bass line on *Hula Hoop*, anchors on beats one and three and plays a Bb (B flat) note as in *Fish Market*. *Hula Hoop* also emulates the sonic characteristics of Fish Market with use of similar instrumentation. These include programming utilizing kick, snare, hi-hat and electric tom drums. The bass is synthesized with emphasis on sub frequency tonations. Further, despite note deviations to match the song's chord structure, the bassline most commonly anchors on beats one and three as in *Fish Market*. The bass line also copies the tone and minimalist structure of that played in *Fish Market*. These copied elements form the backbone of *Hula Hoop* and accordingly, significant portions of *Hula Hoop* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.







165. The rhythm section of *La Rompe Corazones* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum of *La Rompe Corazones* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The rim/snare pattern also replicates that of *Fish Market*. The snare copies the pattern played in *Fish Market*. The hi-hat of *La Rompe Corazones* copies the pattern as played on beats one, two, three and four of each bar in *Fish Market*. The tom copies

the *Fish Market* tom pattern which is played on the down beats one and three. The bass line copies the minimalist structure of the bass line played in Fish Market. However, despite note deviations to match the song's chord structure, the bassline most commonly anchors on beats one and three as in *Fish Market*. These copied elements form the backbone of *La Rompe Corazones* and accordingly, significant portions of *La Rompe Corazones* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.

Fish Market




La Rompe Corazones



166. The rhythm section of *Lo Que Pasó, Pasó* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick drum, snare drum, hi-hat, timbales and synth tom patterns of *Fish Market*, replicating the same combined patterns as contained in *Fish Market*, with the exception of a maracas replacing the tambourine in *Fish Market*. *Lo Que Pasó, Pasó* is composed of layered elements of drums which includes programmed drums and sampled drum loops. The kick drum plays on beats one, two, three and four of each bar complemented by the original *Fish Market* snare pattern as shown in the attached notation excerpt. The hi-hat and maracas in combination, seems aimed at capturing the hi-hat and tambourine pattern in *Fish Market*. However, the instrument interplay in *Lo Que Pasó, Pasó* is not definitively clear, therefore the notation excerpt combines both patterns on a single line of the score; here notated as a combined pattern on the hi-hat line. The timbale pattern is the same unique original pattern contained in *Fish Market*. Synth tom is played on beats one and three as in *Fish Market*. The bass plays on all four beats of each bar with notes in line with the new chord structure. However, the track also features a 'mid-range frequency' second bass track playing on beats one and three as in *Fish Market*. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. The kick, snare, hi-hat and bass are prominent in the mix of *Lo Que Pasó, Pasó* which emulates the sonic texture of *Fish Market*, giving the song a similar feel. The sonic elements as contained in the looped drum samples, are indicative of a frequency manipulated audio sample in which the low frequencies are reduced. This procedure may have been applied to allow for masking of bass note clashes. This can be beneficial to musical outcomes particularly in cases in which the key of a 'bass heavy' sample is different from that of the new work in which the sample is applied. In this case, the key is Eb as opposed to Bb in the case of *Fish*

*Market*. Based on the combined identifiable factors of drum pattern, drum sound and instrumentation, the sample contained in *Lo Que Pasó, Pasó* is consistent with the "Pounder" riddim; a re-recorded version of *Fish Market*. These copied elements form the backbone of *Lo Que Pasó, Pasó* and accordingly, significant portions of *Lo Que Pasó, Pasó* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below. Further, sampling of the sound recording of the "Pounder" riddim provides direct evidence of copying of the *Fish Market* composition.






167. The rhythm section of *Métele Al Perreo* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum and hi-hat of *Métele Al Perreo* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The rim/snare pattern also replicates that of *Fish Market*. Synth tom is played on beats one and three which is the same pattern as *Fish Market*. The bass line played on *Métele Al Perreo* copies the tone and minimalist structure of the bass line played in *Fish Market*, with emphasis placed on beats 1 and 3 of each bar to direct the chord movements. However, there are minor note deviations to match the *Métele Al Perreo* key and chord structure. The *Métele Al Perreo* drum and bass tracks deliver retains the rhythmic structures and texture of *Fish Market*. These copied elements form the backbone of *Métele Al Perreo* and accordingly, significant portions of *Métele Al Perreo* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.

Fish Market

Steely & Clevie




Metele Al Perreo

Excerpt as at approx. 2:13




168. The rhythm section of *Muévelo* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. As compared to *Fish Market*, the rhythm section contained in *Muévelo*, features similar drum parts as contained in *Fish Market*, namely, kick drum, snare drums, hi-hat, timbales and tom. These parts are structured/performed so as to replicate the drum patterns as contained in *Fish Market*. *Muévelo* appears to be comprised of layered elements of drums which may include programmed drums and/or looped drum samples. The kick drum plays on the down

beats one, two, three and four of each bar as performed in *Fish Market*. The snare pattern is the same as the snare pattern in *Fish Market*. The hi-hat is also a copy of the *Fish Market* minimalistic hi-hat pattern with four crochets played on down beats one, two, three and four. The timbale pattern is the same as contained in *Fish Market*. However, the timbre of the instrument is in line with the *Fish Market* cover version, the "Pounder" riddim. Synth tom is played on beats one and three as in *Fish Market*. The bass in this work, plays on all four beats of each bar. However, it anchors heavily on the song's root note 'D' which is played on beats 1 and 3 thus accentuating and copying the rhythmic pattern of the *Fish Market* bass. The sonic elements as contained in the looped drum samples are indicative of a frequency manipulated audio sample in which the low frequencies are reduced. This procedure may have been applied to allow for masking of bass note clashes. This can be beneficial to musical outcomes particularly in cases in which the key of a 'bass heavy' sample is different from that of the new work in which the sample is applied. In this case, the key is D as opposed to Bb in the case of *Fish Market*. Based on the combined identifiable factors of drum pattern, drum sound and instrumentation, an audio sample infringement is suspected and is sonically consistent with the "Pounder" riddim. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. These copied elements form the backbone of *Muévelo* and accordingly, significant portions of *Muévelo* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.

//

//







169. The rhythm section of *Problema* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. As in *Fish Market*, the kick drum and hi-hat of *Problema* play four crotchets per bar beginning on the first beat of each bar. The snare drum copies the snare drum pattern played in *Fish Market*. Synth tom is played on beats one and three which is the same pattern as *Fish Market*. The bass line played on *Problema* copies the tone and minimalist structure of the bass line played in *Fish Market*, with emphasis placed on beats 1 and 3 of each bar. The drum and bass tracks

both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. These copied elements form the backbone of *Problema* and accordingly, significant portions of *Problema* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.

Fish Market




Problema

Excerpt as at approx. 0:32




170. The rhythm section of *Que Tire Pa' 'Lante* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*, which form the main rhythm section of *Que Tire Pa' 'Lante.* In addition, *Que Tire Pa' 'Lante* appears to intersperse samples of other dancehall

tracks of the era following *Fish Market* including "A Who Seh Me Done" by Phillip Anthony Thomas p/k/a Cutty Ranks, released 1992, and "Hot This Year" by Patrick Thompson p/k/a Dirtsman, released 1992. The purloined elements of *Fish Market* include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum and hi-hat play four crotchets per bar beginning on the first beat of each bar. The snare drum copies the snare drum pattern played in *Fish Market*. A timbale 32nd beats roll can be heard at approximately 2:35 in *Que Tire Pa' 'Lante*. This is a significant musical element original to *Fish Market* and occurs at the same bar location point in *Que Tire Pa' 'Lante* as in *Fish Market*. See below for *Fish Market* timbale 2 notation excerpt. The synth tom of *Que Tire Pa' 'Lante* is played on beats one and three which is the same pattern as *Fish Market*. The bass line played on *Que Tire Pa' 'Lante* copies the tone and minimalist structure of the bass line played in *Fish Market*. This pattern can be heard at approximately 2:56 in the *Que Tire Pa' 'Lante* (in which the bass is played on beats 1 and 3). Based on the combined identifiable factors of drum pattern, drum sound and instrumentation, an audio sample infringement is suspected and is sonically consistent with the "Pounder" riddim. In addition, *Que Tire Pa' 'Lante* appears to include audio samples from the sound recording of *Fish Market*, for example from the intro phrase of *Fish Market* at approximately 3:03-3:07 and truncated at 0:12, 0:20, and 0:25. These copied elements form the backbone of *Que Tire Pa' 'Lante* and accordingly, significant portions of *Que Tire Pa' 'Lante* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.










171. The rhythm section of *Shaky Shaky* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, hi-hat and snare patterns of *Fish Market*. As compared to *Fish Market*, the drum and bass tracks feature similar patterns as follows: The kick drum copies that of *Fish Market*

playing four crotchets per bar beginning on the first beat of each bar. The hi-hat plays the same pattern as *Fish Market* with the addition of 2 16th beats at the end of each bar. The snare 1 pattern is the same as *Fish Market*'s. Snare 2 has a minor deviation with the addition of a single 16th beat on the 6th sixteenth note of each bar. Snare 3 adds another beat being the 8th sixteenth beat of each bar. These changes have very little impact on the outcome as it relates to the overall rhythmic similarity as compared to *Fish Market*. This is so as the combination of all the snares and additional hi-hat elements, results in a copy of the snare and timbale 1 patterns as composed in *Fish Market*. See comparative notation below. The colored lines show the *Shaky Shaky* connecting beats which formulates the timbale pattern played on *Fish Market*. These beats have been distributed around various drums recreating the same rhythmic elements found in *Fish Market*. The timbale 32nd beats roll played on *Fish Market*, is substituted by a pick guitar on *Shaky Shaky* similarly filling the space. A tom is played on beats one and three, copying the tom pattern in *Fish Market*. The bass line played on *Shaky Shaky* copies the tone and minimalist structure of that played in *Fish Market*. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. These copied elements form the backbone of *Shaky Shaky* and accordingly, significant portions of *Shaky Shaky* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.


Shaky Shaky
♩ = 88
hi hat
snare 3
snare 2
snare 1
Fish Market
Timbales
Timbale 1
Timbale 2


Fish Market
Steely & Clevie
hi hat
tambourine
timbale 1
timbale 2
tom
snare
kick




172. The rhythm section of *Si Supieras* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum of *Si Supieras* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The snare copies the pattern played in *Fish Market*. The hi-hat copies the pattern as played on beats one, two, three and four of each bar in *Fish Market*. The tom copies the *Fish Market* tom pattern which is played on the down beats one and three. The bass line copies the minimalist structure of the bass line played in *Fish Market*, with emphasis placed on beats 1 and 3 of each bar. However, there are note deviations to match the new chord structure. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. These copied elements form the backbone of *Si Supieras* and accordingly, significant portions of *Si Supieras* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.







173. The rhythm section of *Sígueme y Te Sigo* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum and hi-hat of *Sígueme y Te Sigo* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. The snare pattern also replicates that of *Fish Market* with the timbale filling in the missing lead in snare drum on the third 16th beat of each bar, thus completing the original snare pattern. The timbale also helps to capture the timbre associated with the *Fish Market* sound. The tom is played on beats one and three, copying the tom pattern in *Fish Market*. The bass line anchors heavily on beats one and three and

copies the tone and minimalist structure of that played in *Fish Market*. The drum and bass tracks both together and independently, are substantially similar in rhythmic structures and texture to those of *Fish Market*. These copied elements form the backbone of *Sígueme y Te Sigo* and accordingly, significant portions of *Sígueme y Te Sigo* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.






174. The rhythm section of *Zum Zum* copies original elements of the *Fish Market* rhythm section, including the original combination of drum patterns featured in *Fish Market*. These purloined elements include, without limitation, the kick, and snare patterns of *Fish Market*. The kick drum of *Zum Zum* plays four crotchets per bar beginning on the first beat of each bar as in *Fish Market*. Snare 1 and snare 2 together formulate the snare pattern played in *Fish Market*. The hi-hat (in bar 1) copies the pattern as played on the down beats one, two, three and four in *Fish Market*. The timbale copies the 32nd beat (timbale 2) roll as at the end of bar two in *Fish Market*. The high percussion replaces the tambourine in *Fish Market* and fills in the rhythmic component and frequency bandwidth synonyms with *Fish Market*. The bass drum copies the bass as played in *Fish Market*, this being on beats one and three. The drum and bass tracks deliver strong retention of the rhythmic structures and timbre of *Fish Market*. The bass line also copies the tone and minimalist structure of that played in *Fish Market*. These copied elements form the backbone of *Zum Zum* and accordingly, significant portions of *Zum Zum* are substantially similar if not virtually identical to significant portions of *Fish Market*, as shown by comparison of the transcripts of portions of each below.

//

//

//

## Fish Market

Steely & Clevie




## Zum Zum

Excerpt as at approx.0:44



175. At no point did Defendants seek or obtain authorization from Plaintiffs to use *Fish Market* in connection with the Infringing Works and/or the Further Infringing Works.

176. At no point did Defendants seek or obtain authorization from Plaintiffs to use *Dem Bow* in connection with the *Dem Bow* Infringing Works.

177. Defendants continue to exploit and receive monies from the Infringing Works, the *Dem Bow* Infringing Works and/or the Pounder Infringing Works, respectively, in violation of Plaintiffs' rights in their Song. Defendants' wrongful copying and/or exploitation of Plaintiffs' copyrighted material has also allowed for further infringement abroad. Defendants, and each of their, exploitation of Plaintiffs' work, as detailed herein, constitutes infringement.

178. Upon information and belief, Plaintiffs allege that UMG, Sony, and/or Sony Latin, from its offices in New York city and/or Santa Monica, California released, distributed, promoted, broadcast, licensed, and/or exploited for profit the songs and music at issue in this case.

179. Upon information and belief, Plaintiffs allege that one of more of the Defendants and their publishing companies received monies in connection with the songs and music at issue in this case from ASCAP and other companies based in New York City.

## First Claim for Relief

*(For Copyright Infringement - Against all Defendants)*

180. Plaintiffs repeat, re-allege, and incorporate by reference all preceding paragraphs of this Complaint.

181. Plaintiffs are the sole and exclusive owners of the *Fish Market*.

182. *Fish Market* is an original composition and recording.

183. Plaintiffs are joint owners of the composition of *Dem Bow* with Rexton Ralston Gordon.

184. *Dem Bow* is an original composition.

185. Defendants had access to *Fish Market* because *Fish Market* was widely distributed throughout the world since 1989 on vinyl and CD. Defendants also had access to the *Fish Market* through distribution of *Dem Bow* on vinyl and CD which was a worldwide hit within the global reggae dancehall scene and remains a reggae dancehall classic. *Fish Market* and *Dem Bow* were widely distributed on vinyl and CD, which were the dominant media formats at the time of release, and together sold tens of thousands copies on singles and albums within the global reggae dancehall scene. Both *Fish Market* and *Dem Bow* are also available on streaming platforms, including Spotify, Apple Music, Amazon, Pandora, and YouTube prior to the creation of each of the Infringing Works.

186. Defendants, and each of them, also had access via *Ellos Benia* and the *Pounder* riddim which were widely distributed in hard copy and via the aforementioned streaming platforms prior to the creation of each of the Infringing Works.

187. The access to *Fish Market* by the Defendants associated with the Daddy Yankee Works is demonstrated in the *Dem Bow* infringing Daddy Yankee songs *Golpe de Estado* and *Calenton*, which include elements that are substantially similar if not virtually identical to significant portions of *Dem Bow,* including the lyrical portions of *Dem Bow*.

188. The access to *Fish Market* by the Defendants associated with the Daddy Yankee Works is also demonstrated in the lyrics of the Daddy Yankee song *Zum Zum,* and additional infringing Daddy Yankee songs *Camuflash*, *Desafio*, *La Rompe Carros*, *Nada Ha Cambiado*, *Po' Encima*, and *Quiero Decirte*, which are all based on the *Pounder* Riddim, and which refer to the underlying rhythmic composition as *Dembow.*

189. The access to *Fish Market* by the Defendants associated with the Daddy Yankee Works is also demonstrated in the lyrics of the Daddy Yankee songs *Desafio*, and *El Empuje*, which refer to the underlying rhythmic composition as "Dembow".

190. In addition, Defendants' "sampling" (direct extraction and reproduction) of *Fish Market* and/or the *Pounder* riddim establishes access by way of striking similarity, if not virtual identity.

191. Defendants, and each of them, infringed Plaintiffs' rights in *Fish Market* by sampling the recording *Fish Market* and/or the *Pounder* riddim and reproducing such sample in one or all of the Infringing Works without Plaintiffs' authorization or consent.

192. Alternatively, Defendants, and each of them, infringed Plaintiffs' rights in *Fish Market* by making a direct copy of the composition of *Fish Market* and using that copy in one or all of the Infringing Works without Plaintiffs' authorization or consent.

193. Upon information and belief, Plaintiffs allege that Juston, Ultra and Sony have infringed Plaintiffs' rights in the Song by, without limitation, (a) authorizing the reproduction, distribution and sale of records and digital downloads of *Dame tu Cosita* and the *Dame Tu Cosita Remix*, through the execution of licenses, and/or actually reproducing, and/or selling and distributing physical or digital or electronic copies of *Dame tu Cosita* and the *Dame Tu Cosita Remix* through various physical and online sources and applications, including without limitation, through Amazon.com, Walmart, Target and iTunes; (b) streaming and/or publicly performing or authorizing the streaming and/or public performance of *Dame tu Cosita* and the *Dame Tu Cosita Remix* through, without limitation, Spotify, YouTube, and Apple Music; and (c) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of *Fish Market* in and as part of the Infringing Songs, packaged in a variety of configurations and

digital downloads, mixes and versions, and performed in a variety of ways including, but not limited to, audio and video.

194. Plaintiffs are informed and believes and thereon alleges that Sony, Ultra, Energy Music Corp, UMP, BMG, Warner, and Kobalt have infringed Plaintiffs' rights in *Fish Market* by, without limitation, exploiting it for profit by licensing, or otherwise authorizing third parties to use, reproduce and/or perform the *Dame tu Cosita* and the *Dame Tu Cosita Remix* for profit.

195. Plaintiffs are informed and believes and thereon allege that Defendants Ultra, El Chombo and Energy Music Corp have infringed Plaintiffs' rights in *Fish Market* by copying the composition in the Song and/or sampling the recording of *Fish Market* in the production of the *Dame tu Cosita* without Plaintiffs' authorization.

196. Upon information and belief, Plaintiffs allege that Defendants Ultra, El Chombo, Energy Music Corp, and Afro Bros have infringed Plaintiffs' rights in *Fish Market* by copying the composition in the Song and/or sampling the recording of the Song in the production of the *Dame Tu Cosita Remix* without Plaintiffs' authorization.

197. Upon information and belief, Plaintiffs allege that Defendants El Chombo, Energy Music Corp, Pitbull, Karol G and Afro Bros, have infringed Plaintiffs' rights in the Song by, without limitation, (a) authorizing the reproduction, distribution and sale of records and digital downloads of *Dame tu Cosita* and/or the *Dame Tu Cosita Remix*, through the execution of licenses, and/or actually reproducing, and/or selling and distributing physical or digital or electronic copies of the *Dame tu Cosita* and/or the *Dame Tu Cosita Remix* through various physical and online sources and applications, including without limitation, through Amazon.com, Walmart, Target and iTunes; (b) streaming and/or publicly performing or authorizing the streaming and/or public performance of the *Dame tu Cosita* and/or the *Dame Tu*

*Cosita Remix* through, without limitation, Spotify, YouTube, and Apple Music; and (c) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of *Fish Market* in and as part of the *Dame tu Cosita* and/or the *Dame Tu Cosita Remix*, packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including, but not limited to, audio and video.

198. Defendants, and each of them, have engaged and continue to engage in the unauthorized reproduction, distribution, public performance, licensing, display, and creation of one or both Infringing Works. The foregoing acts infringe Plaintiffs' rights under the Copyright Act. Such exploitation includes, without limitation, Defendants', and each of them, distributing and broadcasting the Infringing Works on streaming platforms, including Spotify, Apple Music, Amazon, Pandora, and YouTube.

199. Due to Defendants', and each of their, acts of infringement, Plaintiffs' have suffered actual, general and special damages in an amount to be established at trial, including but not limited a reasonable license fee for Defendants' use of the *Fish Market* and/or *Dem Bow*.

200. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiffs' rights in Plaintiffs' copyrighted composition and sound recording. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringements of their rights in the composition and sound recording in an amount to be established at trial.

201. Plaintiffs are informed and believe and now allege that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for

costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

**Second Claim for Relief**

*(For Vicarious and/or Contributory Copyright Infringement - Against all Defendants)*

202. Plaintiffs repeat, re-allege, and incorporate by reference all preceding paragraphs of this Complaint.

203. Plaintiffs are informed and believe and now allege that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction, distribution, and publication of one or both of the Infringing Works as alleged above. Specifically, the producers (including Sony, Ultra, UMG, and Juston) underwrote, facilitated, and participated in El Chombo, Energy Music Corp, Pitbull, Luis Fonsi, Daddy Yankee, Karol G, and the other infringing individual musician Defendants' respective illegal copying during the creation of the Infringing Works and realized profits through their respective distribution, and publication of the respective Infringing Works.

204. Plaintiffs are informed and believe and now allege that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, each Defendant involved in the infringement had the ability to oversee the publication and distribution of one or both Infringing Works. And, Defendants, and each of them, realized profits through their respective obtainment, distribution, and publication of one or both Infringing Works.

205. By reason of Defendants', and each of their, acts of contributory and vicarious infringement as alleged above, Plaintiffs have suffered and will continue to

suffer substantial damages in an amount to be established at trial, as well as additional actual, general, and special damages in an amount to be established at trial.

206. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiffs' rights. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in their copyrighted composition and sound recording in an amount to be established at trial.

207. Plaintiffs are informed and believe and now allege that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

## **Prayer for Relief**

*(Against All Defendants)*

WHEREFORE, Plaintiffs pray for relief as follows:

a. That Defendants, their affiliates, agents, and employees be enjoined from infringing Plaintiffs' copyrights in and to Plaintiffs' copyrighted composition and sound recording;

b. Granting an injunction permanently restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them, or any of them, from further infringing Plaintiff's copyrights in and to Plaintiffs' copyrighted composition and sound recording;

c. For a constructive trust to be entered over any recordings, videos reproductions, files, online programs, and other material in connection with

both recordings of *Dame tu Cosita*, and all revenues resulting from the exploitation of same, for the benefit of Plaintiffs;

d. That Plaintiffs be awarded all profits of Defendants, and each, plus all losses of Plaintiffs, plus any other monetary advantage gained by the Defendants through their infringement, the exact sum to be proven at the time of trial;

e. That Defendants pay damages equal to Plaintiffs' actual damages and lost profits;

f. That Plaintiffs be awarded statutory damages and attorneys' fees as available under 17 U.S.C. § 505 or other statutory or common law;

g. That Plaintiffs be awarded pre-judgment interest as allowed by law;

h. That Plaintiffs be awarded the costs of this action; and

i. That Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully submitted,

Dated: July 29, 2022 By: <u>*/s/ Scott Alan Burroughs*</u>

Scott Alan Burroughs, Esq.
Frank F. Trechsel, Esq.
Benjamin F. Tookey, Esq.
DONIGER / BURROUGHS
Attorneys for Plaintiffs