1

JEAN G. VIDAL-FONT, State Bar No. 266475
jvidal@ferraiuoli.com
FERRAIUOLI LLC
221 Ponce de León
5th Floor
San Juan, PR 00917
Telephone: 787-766-7000
Facsimile: 787-766-7001

2

3

4

Counsel for Defendant Vladimir Felix p/k/a Dj Blass

5

6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

7

8

**CLEVELAND CONSTANTINE BROWNE; ANIKA JOHNSON as personal representative of THE ESTATE OF WYCLIFFE JOHNSON; and STEELY & CLEVIE PRODUCTIONS, LTD.**

9

10

11

Plaintiffs

12

v.

13

**RODNEY SEBASTIAN CLARK DONALDS et al.**

14

Defendants

15

16

**CASE NO.: 2:21-cv-02840-AB-AFM**

**VLADIMIR FELIX'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Filed concurrently with Supporting Declaration and Proposed Order]

17

## <u>MOTION TO DISMISS</u>

18

19

20

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 22nd, 2023, at 10:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7B of the Court, located at the First Street U.S. Courthouse, 350 W 1st Street, Suite 4311 Los Angeles, CA 90012-4565, especially appearing defendant Vladimir Felix p/k/a Dj Blass ("Mr. Felix" or "Defendant"), by and through his attorney of record, will and hereby moves for dismissal of the Second Amended Complaint, Dkt. 305 (the "Complaint") filed by plaintiffs Cleveland Constantine Browne, the Estate of Wycliffe Johnson, and Steely & Clevie Productions Ltd. ("Plaintiffs") with prejudice pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

Mr. Felix moves to dismiss Plaintiffs' Complaint on the following grounds: (1) Pursuant to FRCP 12(b)(2), for lack of personal jurisdiction. Plaintiffs cannot establish either general jurisdiction or specific jurisdiction over Mr. Felix. Mr. Felix is not subject to general jurisdiction because it is neither incorporated, nor has its principal place of business in California, and no "exceptional" circumstances warrant the exercise of general jurisdiction. Plaintiffs likewise cannot establish specific jurisdiction over Mr. Felix because: (a) Plaintiffs' claims do not arise out of any contacts that Mr. Felix may have with California; (b) Plaintiffs fail to establish

1   that Mr. Felix purposefully directed any activities towards California; and (c) It

2   would be unreasonable, and inconsistent with traditional notions of fair play and

3   substantial justice, for the Court to exercise jurisdiction over Mr. Felix here.

4         (2) The Central District of California is an improper venue for Mr. Felix.

5         (3) Plaintiffs failed to plead sufficient facts regarding conduct giving rise to

6   liability in part of Mr. Felix. *First*, Plaintiffs allege, through an imprecise and

7   circular argument, that every defendant in this matter is subject to liability without

8   specifying the alleged conduct in which each individual engaged or their specific

9   contribution to the alleged violation, purportedly giving way to liability. The only

10  allegation against Mr. Felix in the Complaint is mentioned in the "Parties" section.

11  It states that Mr. Felix "is an individual residing in Miami, Florida, and doing

12  business in and with the state of California." *See* Complaint ⁋ 91. Nothing more and

13  nothing less is said about Mr. Felix. *Second*, Plaintiffs fail to establish in what way,

14  if any, Mr. Felix infringed Plaintiffs' copyright. *Third*, this action is vague regarding

15  every element to establish copyright and contributory infringement. *Fourth*, even

16  taking this action at face value, Plaintiffs cannot have a monopoly over a sound

17  common to the reggaeton genre.

18        In sum, no legitimate grounds exist for Mr. Felix to be held as a party to this

19  action.

20

1    The Motion to Dismiss is based upon this Notice of Motion, the

2 accompanying Memorandum of Points and Authorities, the pleadings and records

3 on file in this action, the declaration of Mr. Felix, and such other evidence and

4 argument as may be presented to the Court at or before the filing of this Motion.

5    This Motion is made following a conference of counsel pursuant to L.R. 7-3,

6 which took place on June 5th, 2023.

7    Respectfully submitted,

8    DATED:  June 15th, 2023

9                                                                  Respectfully submitted,

10                                                                **FERRAIUOLI LLC**

11                                                      By:/s/ Jean G Vidal-Font
                                                        JEAN G. VIDAL-FONT
12                                                      State Bar No. 266475
                                                        jvidal@ferraiuoli.com
13                                                      221 Ponce de León
                                                        5th Floor
14                                                      San Juan, PR 00917
                                                        Telephone: 787-766-7000
                                                        Facsimile: 787-766-7001

15                                            **Attorney for Defendant Vladimir Felix p/k/a Dj Blass**

16

17

18

19

20

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ........................................................1

II.   STATEMENT OF RELEVANT FACTS ........................................2

III.  LACK OF PERSONAL JURISDICTION RULE(B)(2).............................4

A. Legal Standard……….…….…..……….....................................5

B. Arguments ........................................................6

    1.   This Court does not have general jurisdiction over Mr. Felix………………………………………………………...6

    2.   Plaintiffs have not established and could not establish specific jurisdiction over Mr. Felix…………………………………………8

        i.    Plaintiffs did not allege how Mr. Felix purposely directed any conduct to this forum………………………………....8

        ii.   Plaintiffs' claims against Mr. Felix do not arise from or relate to Mr. Felix's forum-related activities because there are none……………………………………………….……..9

        iii.  Because the first two prongs are not satisfied, it would be unfair and unreasonable for this court to exert jurisdiction over Mr. Felix………………………………………….11

    3.   Venue is Improper Under 28 U.S.C. sec. 1404………………………………..…………………….....11

IV.   FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, RULE 12(B)(6) …………………………..…………..……...15

A. Standard of Review ...…………………………………………...…………...15

B.   The Complaint fails to meet even the most generous of pleading standards…………………………………………………………...16

1.   By grouping all defendants into interchangeable "Defendants," the Complaint fails to state a claim against Mr. Felix for which relief can be granted, as such, it must be dismissed …………………….………16

2.   Plaintiffs have not, and cannot, allege sufficient facts to support a copyright infringement claim against Mr. Felix …………………..18

i.   The Complaint should be dismissed because it does not plausibly allege actual copying…………………….……..19

a.   Plaintiffs did not plausibly allege access…………19

b.   The Complaint should be dismissed because it does not plausibly allege that the Fish Market is substantially similar to any work related to Mr. Felix……………………………………………22

3.   Even if this Court were to find that Plaintiffs alleged a plausible copyright infringement claim, the elements that Plaintiffs alleged were copied in Fish Market are common and unprotectable elements of an entire music genre and thus not subject to protection………..24

4.   Plaintiffs fail to state a claim for contributory infringement against Mr. Felix……………………………………………………...29

V.   CONCLUSION ……………………………………………………....32

# TABLE OF AUTHORITIES

**Cases**                                                                 <u>Pages(s)</u>

*Adobe Sys. Inc., v. Blue Source Group, Inc.,*
  125 F. Supp. 3d 945 (N.D. Cal. 2015)……………………………………………8, 12

*Amini Innovation Corp., v. JS Imports, Inc.,*
  497 F. Supp. 2d 1093 (C.D. Cal. 2007)……………..……………………..…....6

*Amoco Egypt Oil Co. v. Leonis Navigation Co.,*
  1 F.3d 848 (9th Cir. 1993)…………..…………………………………………..…6

*Anderson v. District Board of Trustees,*
  77 F.3d 364 (11th Cir.1996)..……………………………………………….........17

*Apple Comput., Inc. v. Microsoft Corp.,*
  35 F.3d 1435 (9th Cir. 1994)………………………………………………22, 23

*Art Attacks Ink, LLC v. MGA Entm't Inc.,*
  581 F.3d 1138 (9th Cir. 2009)……………….……………………………...19

*Asahi Metal Indus. Co. v. Super. Ct.,*
  480 U.S. 102 (1987)………………………………...…………………………11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)……...…………….……………………….………....15, 16

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
  874 F.3d 1064 (9th Cir. 2017)………………...……………………………8, 9

*Ballard v. Savage,*
  65 F.3d 1495 (9th Cir. 1995)………………...………………………………..9

*Bancroft v. Masters, Inc.,*
  223 F.3d 1082 (9th Cir. 2000)……………………………………...……....6

*Batts v. Adams,*
  No. 10-cv-8123 (JFW), 2011 WL 13217923 (C.D. Cal. Feb. 8,
  2011)…………………………………………………………20, 21, 23

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                          Pages(s)

3

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)……………….…………………...…………….7, 15, 16

4

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S. F. Cty.,*
   137 S. Ct. 1773 (2017)……………………...……………………...6

5

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)………………………...………………..9

6

*Cavalier v. Random House, Inc.,*
   297 F.3d 815 (9th Cir. 2002)…...………………………..19, 22

7

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,*
   106 F.3d 284 (9th Cir. 1997)………………………...……………….12

8

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)…………...……………………………...7

9

*Decker Coal Co. v. Commonwealth Edison Co.,*
   805 F.2d 834 (9th Cir. 1986)………………………...…………13

10

*Dist. No. 1, Pac. Coast Dist. v. Alaska,*
   682 F.2d 797 (9th Cir. 1982)………………………...…………12

11

*Dole Food Co., Inc. v. Watts,*
   303 F.3d 1104 (9th Cir. 2002)………….…………………...…………8

12

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004)……………………………...…………..30

13

*Epikhin v. Game Insight N. Am.,*
   No. 14-CV-04383-LHK, 2015 WL 2412357 (N.D. Cal. May 20, 2015)…..30, 31

14

*Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.,*
   499 U.S. 340 (1991)………………...…………………….........19

15

*Feltner v. Columbia Pictures Television, Inc.,*
   523 U.S. 340 (1998)………………...………………………….12

16

17

18

19

20

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                                   Pages(s)

*Gaste v. Kaiserman,*
    863 F.2d 1061 (2d Cir. 1988)…………………………………………..28

*Gray v. Perry,*
    No. 15-cv-5642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020)………..29

*Helicopteros v. Hall,*
    466 U.S. 408 (1984)……………………...………………………………..6

*Ho v. Nationstar Mortg., LLC,*
    No. 219CV10532ODWJPRX, 2020 WL 7714700 (C.D. Cal. Dec. 29, 2020)...17

*Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.,*
    485 F.3d 450 (9th Cir. 2007)……………...……………………….........10

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)……………...……………………………………..5

*Intersong-USA v. CBS, Inc.,*
    757 F. Supp. 274 (S.D.N.Y. 1991)…………………...…………………..28

*Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000)…………………………...…………………13

*Kellman v. WFM Private Label, L.P.,*
    No. 17-cv-06584-LB, 2019 WL 1429576 (N.D. Cal. Mar. 29, 2019)…...........9

*Lang v. Morris,*
    823 F. Supp. 2d 966 (N.D. Cal. 2011)………………………………………..5

*Luvdarts, LLC v. AT&T Mobility, LLC,*
    710 F.3d 1068 (9th Cir. 2013)……………………………...………..29, 30

*Mason v. County of Orange,*
    251 F.R.D. 562 (C.D.Cal. 2008)………...…………………………....17

18

19

20

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                   Pages(s)

3

*Mattel, Inc. v. MGA Entm't, Inc.,*
   616 F.3d 904 (9th Cir. 2010)………………………………...……………23

4

*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*
   647 F.3d 1218 (9th Cir. 2011)…………………………………………..5

5

*McIntyre v. Double-A Music Corp.,*
   166 F. Supp. 681 (S.D. Cal. 1958)…………………………...………...…..27

6

*Morrill v. Scott Fin. Corp.,*
   873 F.3d 1136 (9th Cir. 2017)……………………...……………………9

7

*Myers v. Salad Kings, Inc.,*
   No. EDCV 08-1071-VAP (OPx), 2010 WL 11515311 (C.D. Cal. Oct. 1,
   2010)…………………………………………………………..………10

8

9

*Perfect 10, Inc. v. Giganews, Inc.,*
   847 F.3d 657 (9th Cir. 2017)…………………………...………………32

10

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
   494 F.3d 788 (9th Cir. 2007)………...…………………………………29

11

*Premier Fabrics, Inc. v. Walters and Mason Retail, Inc.,*
   2018 WL 6164766 (C.D. Cal. 2018)…………………………...………12

12

13

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004)……………………………...……..5, 6, 8

14

*Selle v. Gibb,*
   741 F.2d 896 (7th Cir. 1984)……………………………...……………28

15

*Shaheed-Edwards v. Syco Entm't, Inc.,*
   No. 17-cv-6579 (SJO), 2017 WL 6403091 (C.D. Cal. Dec. 14, 2017).........19, 21

16

17

*Skidmore v. Led Zeppelin,*
   106 F. Supp. 3d 581 (E.D. Pa. 2015)…………………………………...11

18

19

20

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                 Pages(s)

3

*Sollberger v. Wachovia Secs., LLC,*
   No. SACV 09-0766 AG (ANx), 2010 WL 2674456 (C.D. Cal. June 30, 2010).17

4

*Sorensen v. Daimler Chrysler AG,*
   2003 U.S. Dist. LEXIS 6294 (N.D. Cal. April 11, 2003)…………………………14

5

*Swirsky v. Carey,*
   376 F.3d 841 (9th Cir. 2004)……………………………………..……………..23, 27

6

*Tate-Robertson v. Walmart, Inc.,*
   No. 19-cv-27 (JGB), 2019 WL 6448960 (C.D. Cal. May 16, 2019)…………...21

7

*United States v. HBSC Bank USA, No. CV1400210TJHDFMX, 2017 WL 11651180 (C.D. Cal. Apr. 14, 2017)*…………………………………………………………………7

8

*Walden v. Fiore,*
   571 U.S. 277 (2014)……………………………………...………………………11

9

*Walker v. Time Life Films, Inc.,*
   615 F.Supp. 430 (S.D.N.Y. 1985)……………………………...………………28

10

*YZ Productions, Inc. v. Redbubble, Inc.,*
   545 F. Supp. 3d 756 (N.D. Cal. 2021)……………………………………………30

11

*Zella v. E.W. Scripps Co.,*
   529 F.Supp.2d 1124 (C.D. Cal. 2007)……………………………………..……22

12

**Statutes**

13

28 U.S.C. § 1400(a)…………………..………..……………………………………12

14

28 U.S.C. § 1404……………………………………………………………………11, 13

15

28 U.S.C. § 1406(a)……………………………………………………..………...11

16

**Rules**

17

Fed. R. Civ. P. 8…………………………………………………...…………………16

18

Fed. R. Civ. P. 8(a)…………………………………………………...…..…………2

19

Fed. R. Civ. P. 12(b)(2)……………………………………………………………1

20

# TABLE OF AUTHORITIES

<u>Pages(s)</u>

Fed. R. Civ. P. 12(b)(6)………………………………………………...1, 15

**Secondary References**

Jorge L. Giovannetti, Popular Music and Culture in Puerto Rico: Jamaican and Rap Music as Cross-Cultural Symbols, in MUSICAL MIGRATIONS: TRANSNATIONALISM AND CULTURAL HYBRIDITY IN LATIN/O AMERICA 81, 81 (Frances R. Aparicio & Cándida F. Jáquez eds., 2003).….24, 25

Melinda Sommers Molina, Calle 13: Reggaeton, Politics, And Protest, 46 Wash. U. J.L. & Pol'y 117, 125-126 (2014)………………………………………….....................................25

Nimmer on Copyright § 2.05……………………………………………...29

Patry on Copyright § 4:25…...……………………….…………………...27

Raquel Z. Rivera et al., Introduction, in REGGAETON, 1–16, 10 (2009)………….…...…………………………………………..…24, 25, 26

Wayne Marshall, From Música Negra to Reggaeton Latino, The Cultural Politics of Nation, Migration, and Commercialization, in REGGAETON, 19-75 (Raquel Z. Rivera et al. eds., 2009)……………………………………………26, 32

Wayne Marshall, The rise of reggaeton: From Daddy Yankee to Tego Calderón and beyond, THE PHOENIX  (Jan. 19, 2000)……………….…………….…25

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), especially appearing defendant Vladimir Felix p/k/a Dj Blass ("Mr. Felix") hereby submits this brief in support of its Motion to Dismiss the Second Consolidated Amended Complaint (Dkt. 305) ("Complaint") of plaintiffs Cleveland Constantine Browne, the Estate of Wycliffe Johnson, and Steely & Clevie Productions Ltd., ("Plaintiffs") for Lack of Personal Jurisdiction, improper venue, and failure to state a claim (the "Motion").

## I.     INTRODUCTION

Plaintiffs, filed a suit in California against a musician who lives, breathes, composes, produces, and otherwise works across the country in Puerto Rico. Mr. Felix has nothing to do with the forum he was brought into, he has no business in California and does not produce music in California. Mr. Felix's music may be listened to in California, like in Bogota, Colombia, or Istanbul, Turkey. Nothing Mr. Felix does makes it proper, legal, or fair to have to litigate in California. Accordingly, Mr. Felix is moving this Court to dismiss the claims against him for lack of jurisdiction, or in the alternative, for improper venue (with the U.S. District for the District Court of Puerto Rico being the proper venue). As if the improper venue was not enough, Mr. Felix cannot properly defend himself, given the absolute

1  lack of concrete allegations against him. He can only guess or surmise what he is

2  being accused of.

3      As this Court can attest, Plaintiffs fail to clearly and adequately plead a

4  copyright and contributory infringement claim as required by FRCP 8(a). Instead,

5  Plaintiffs wrongly instituted a shotgun pleading that overwhelmed defendants with

6  an unclear mass of allegations. In addition, Plaintiffs failed to state a claim clearly

7  and adequately against Mr. Felix on the alleged copyright infringement –sound

8  recording and lyrics– of Fish Market, *Dem Bow,* and Pounder Dub Mix II. Plaintiffs

9  repeatedly incorporate the Exhibit A of the Complaint "by reference" in each cause

10 of action, rendering it impossible to discern what is alleged. Fatally to Plaintiffs, they

11 fail to allege any facts supporting the secondary liability claim.

12      In short, this Action is ripe for dismissal because the Complaint lacks any

13 statutory basis or plausible facts setting forth the basis of copyright infringement. In

14 other words, even if Mr. Felix wanted to defend himself, he has no way of knowing

15 **what** he is defending himself against. Dismissal is the only logical outcome.

16         **II.    <u>STATEMENTS OF RELEVANT FACTS</u>**

17      Plaintiffs operative complaint is the Second Consolidated Amended

18 Complaint ("Complaint") (Dkt. 305) purporting to state a claim for (i) copyright

19 infringement and (vii) vicarious and/or contributory copyright infringement (jointly,

20

1    "Claims") against literally hundreds of artists and companies, including Mr. Felix

2    (and collectively with all defendants "Defendants").[1]   The key allegations can be

3    summed as follows.

4         Plaintiffs allege that in 1989 the Jamaican band duo *Steely and Clevie* wrote

5    and recorded a song called *Fish Market*, registered at the Copyright Office ("Fish

6    Market"). *See* Complaint ⁋ 179. Allegedly the musical elements of Fish Market are:

7         programmed kick, snare, and hi-hat playing a one bar pattern;
          percussion instruments, including a tambourine playing through the
8         entire bar, a synthesized 'tom' playing on beats one and three, and
          timbales that play a roll at the end of every second bar and free
9         improvisation over the pattern for the duration of the song; and a
          synthesized Bb (b-flat) bass note on beats one and three of each bar,
10        which follows the aforementioned synthesized 'tom' pattern. *Id.* ⁋ 180

11   (for the purposes of Mr. Felix's Motion, defined as the "Sound").

          Plaintiffs allege that in 1990 *Steely and Clevie* coauthored the song *Dem Bow*.
12
     *Id.* ⁋ 181. *Dem Bow* was, apparently, an alternative mix that incorporated the
13
     composition of Fish Market. *Id.* ⁋⁋ 181-182. That same year, Mr. Ephraim Barrett
14
     and Mr. Denis Halliburton recreated Fish Market's instrumental elements to create
15
     the work *Pounder Riddim*.[2] *Id. Pounder Riddim* was used to create the sound
16

17   _____

     [1] Pursuant to the Case Management Order of January 11, 2023 (Dkt. 143), Plaintiffs
18   had until April 14th, 2023, to process service on every defendant. Thus, on April 21st,
     2023, Plaintiffs filed a Second Consolidated Amended Complaint in which it
19   included as the defendant party only the defendants who were properly served with
     summons by April 14th, 2023.
20   [2] Mr. Denis Halliburton – a third party – allegedly copied Dem Bow's instrumental
     sound. Complaint ⁋ 183. Plaintiffs claim that Mr. Halliburton's composition,

recording of another work known as Pounder Dub Mix II, "Pounder Dub Mix II." *Id.*[3]

Plaintiffs claim that Defendants, and each of them, are responsible for creating and exploiting the works listed on Exhibit A of the Complaint ("Infringing Works"), which copied and/or interpolated the works Fish Market, *Dem Bow,* and Pounder Dub Mix II without a license, authorization, or consent from Plaintiffs. *Id*. ₱₱ 190-191. Notably, not a single concrete allegation is levied against Mr. Felix.

Plaintiffs sustain that Defendants continue to exploit and generate revenue and profits from the Infringing Works, violating Plaintiffs' rights in Fish Market. *Id.*

## III.   LACK OF PERSONAL JURISDICTION RULE(B)(2)

---

"Pounder Riddim," is "virtually identical" to Fish Market. Id.  Notwithstanding, Plaintiffs did include the authors of Pounder Riddim in this Complaint as an infringement party. Plaintiffs have never claimed they owned "Pounder Riddim" or that Halliburton infringed Fish Market. They also failed to provide a comparison of the two works. Complaint ₱ 188.

[3] Plaintiffs allege that they possess copyright registration for the: composition and sound recording for Fish Market; composition of *Dem Bow*, and sound recording for Pounder Dub Mix II. *See* Complaint ₱ 189. Notwithstanding, Plaintiffs only evidenced authorship of Fish Market. As to "Pounder Riddim," Plaintiffs claim it was used to create the sound recording for Pounder Riddim, and that Pounder Dub Mix II "has been sampled by numerous Defendants". Complaint ₱ 184. Pounder Dub Mix II was registered on March 15, 2023 – months **after** initiating this action. Thus, any claim as to Pounder Dub Mix II must be dismissed. 17 U.S.C. 411(a) "bars a copyright owner from suing for infringement until 'registration . . . has been made'" and registration is not "made" until the Copyright Office grants the registration. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,* 139 S. Ct. 881, 888 (2019).

**A. Legal Standard**

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff must demonstrate that jurisdiction is appropriate. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When a defendant's motion is based on written materials rather than an evidentiary hearing, as is the case here, the Court will "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (cleaned up). Uncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.* However, courts do not assume the truthfulness of allegations challenged and contradicted by a defendant's declarations. *Lang v. Morris*, 823 F. Supp. 2d 966, 969 (N.D. Cal. 2011) (citing *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

The Court's analysis is confined to federal due process standards because California's long-arm statute's jurisdictional powers are limited to federal due process requirements. *Schwarzenegger*, 374 F.3d at 800-801. Thus, to establish jurisdiction, a defendant must have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

1    There are two types of personal jurisdiction: general and specific. *Bristol-Myers*

2    *Squibb Co. v. Sup. Ct. of Cal., S. F. Cty.*, 137 S. Ct. 1773, 1779-80 (2017).

3    **B. Arguments**

4    **1.  This Court does not have general jurisdiction over Mr. Felix.**

5    General jurisdiction only exists where the defendant has "continuous and

6    systematic general business contacts" with the forum state. *Helicopteros v. Hall*, 466

7    U.S. 408, 416 (1984). "The standard for establishing general jurisdiction is fairly

8    high." *Bancroft v. Masters, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). *See also*

9    *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993)

10   (the Court has "regularly . . . declined to find general jurisdiction even where the

11   contacts were quite extensive."). To determine whether general jurisdiction is

12   proper, courts examine all of the defendant's activities that impact the state,

13   including whether the defendant makes sales, solicits or engages in business, serves

14   the state's markets as they relate to the defendant's business, designates agents, holds

15   a license, or has employees in the forum state. *See Amini Innovation Corp., v. JS*

16   *Imports, Inc.*, 497 F. Supp. 2d 1093, 1101 (C.D. Cal. 2007). The Ninth Circuit

17   distinguishes between "'doing business in California, which may support general

18   jurisdiction [and] doing business with California, which will not support such a

19   finding.'" *Schwarzenegger*, 374 F.3d at 801 (cleaned up).

20

Mr. Felix resides and does business **in** San Juan, Puerto Rico. Mr. Felix is not a resident or has ever conducted business in California. *See* Ex. 1. As a result, to establish general jurisdiction, Plaintiffs must allege facts making it plausible that Mr. Felix's contacts with California are "so constant and pervasive as to render [them] essentially at home in" California. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (cleaned up). But Plaintiffs do not plead any facts to support the standard set out by *Daimler*. The truth is, **there are no allegations that arguably relate to general personal jurisdiction over Mr. Felix**. The only allegation that mentions Mr. Felix falls far, far shy of the showing necessary to demonstrate the kind of California business activities that could establish general jurisdiction. For instance, generally asserting that "Vladimir Felix p/k/a DJ Blass ("DJ Blass") is an individual residing in Miami, Florida and doing business in and with the state of California, including in this judicial district," and simply mentioning Mr. Felix's name in Exhibit A of the Complaint **does not meet the standard**. *See* Complaint ¶ 91. *See also United States v. HBSC Bank USA*, No. CV1400210TJHDFMX, 2017 WL 11651180 (C.D. Cal. Apr. 14, 2017) (dismissing claim for failing to properly plead when the bulk of the allegations were not included in the complaint but in an exhibit that failed to meet the *Twombly* standard). Thus, Plaintiffs did not satisfy the general jurisdiction requirements.

**2. Plaintiffs have not established and could not establish specific jurisdiction over Mr. Felix.**

**i.     Plaintiffs did not allege how Mr. Felix purposely directed any conduct to this forum.**

Normally, a plaintiff must show that (i) the defendant must either "purposefully direct their activities" toward the forum or "purposefully avail [ ] himself of the privileges of conducting activities in the forum;" (ii) the claim must arise out of or relate to the defendant's forum-related activities, and (iii) the exercise of jurisdiction must be reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). In copyright infringement cases, the test is even narrower. Specifically, the Ninth Circuit has narrowed the test for specific jurisdiction by requiring the plaintiff to show that the defendant purposefully directed its activities to the forum and that the claim arose from or resulted from the defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802; *Adobe Sys. Inc., v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015). Accordingly, only if the plaintiff satisfies its burden does the burden shift to defendant to "present a compelling case" that the exercise of jurisdiction is not reasonable. *Id*.

To establish purposeful direction, the plaintiff must show that: (1) the defendant committed an intentional act; (2) the defendant's act was expressly aimed at the forum state; and (3) the defendant knew the harm was likely to be suffered in

the forum state. *Axiom Foods, Inc.*, 874 F.3d at 1069. This purposeful availment requirement protects defendants from having to litigate in a forum only because of "random," fortuitous," and "attenuated" contacts or the unilateral activity of another entity. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Mr. Felix did not "purposefully direct" its activities towards California or engage in a transaction with a Californian. The Claims at issue (copyright infringement for Fish Market) do not arise from any interaction between Mr. Felix and a Californian. Note that the Plaintiffs are all Jamaican residents and nationals, and Fish Market was created and probably exploited within the limits of Jamaica.

Plaintiffs did not allege, and cannot establish, that Mr. Felix (1) committed an intentional act, (2) that was expressly aimed at this forum, and (3) that he knew that any damage was to be caused in California.

### ii. Plaintiffs' claims against Mr. Felix do not arise from or relate to Mr. Felix's forum-related activities because there are none.

To establish specific jurisdiction, a plaintiff's claims must also "arise out" of defendant's contacts with California. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142, 1143 (9th Cir. 2017). The Ninth Circuit uses the "but for" test to determine whether claims arise from the contacts. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995); *See also Kellman v. WFM Private Label, L.P.*, No. 17-cv-06584-LB, 2019 WL 1429576, at *10 (N.D. Cal. Mar. 29, 2019) (granting motion to dismiss

1    where the plaintiff had "not established that any forum-related activity by [the

2    defendant] was the but-for cause of her claims"); *Myers v. Salad Kings, Inc.*, No.

3    EDCV 08-1071-VAP (OPx), 2010 WL 11515311, at *2 (C.D. Cal. Oct. 1, 2010)

4    ("The Court must determine whether, but for Defendant's contacts with California,

5    Plaintiffs' claims would have arisen.").

6         Plaintiffs do not plausibly allege that its claim against Mr. Felix "arises out

7    of" Mr. Felix's forum-related activities, much less that any such activities are the

8    "but for" cause of Plaintiffs' Claims. There is no single allegation against Mr. Felix

9    to which he has to respond. No fair reading of the Complaint could lead to the

10   conclusion that Mr. Felix has any relation with this forum or even with the Claims.

11        Even assuming Plaintiffs intended to allege that because Mr. Felix's creation

12   or selling of music and products containing the Sound in this District, which Mr.

13   Felix denies, are not a regular or systematic contact by Mr. Felix. *See Holland Am.*

14   *Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("Even a

15   defendant's awareness that the stream of commerce may or will sweep the product

16   into the forum state does not convert the mere act of placing the product into the

17   stream of commerce into an act purposefully directed toward the forum state.")

18        Moreover, Plaintiffs have not alleged any facts suggesting that Mr. Felix

19   exercised control over how the Infringing Works are sold or marketed, much less

20

contacts that denote availment of the forum. "Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State," *Walden v. Fiore*, 571 U.S. 277, 286 (2014), and the corporate Defendants' alleged contacts with a district cannot be imputed to the individual Defendants. *See Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 588 (E.D. Pa. 2015).

### iii.   Because the first two prongs are not satisfied, it would be unfair and unreasonable for this court to exert jurisdiction over Mr. Felix.

Since Plaintiffs did not allege any actions whatsoever in California, they should not be permitted to strategically drag Mr. Felix to California and hamper Mr. Felix's ability to defend. In short, the exercise of personal jurisdiction would be unreasonable. *See Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102 (1987) (finding that the exercise of jurisdiction by a Californian court was unreasonable where plaintiff rested on the assertion that the defendant knew its products would be sold in the state but did not provide the necessary minimum contacts for the state to exercise personal jurisdiction over petitioner).

Absent any facts to prove Mr. Felix's minimum contacts with the state of California, it would be unreasonable for this Court to exercise its jurisdiction. Thus, the Claims against Mr. Felix should be dismissed.

### 3.  Venue is Improper Under 28 U.S.C. sec. 1404.

1     The venue is proper "in the district in which the defendant or his agent resides

2 or may be found." 28 U.S.C. § 1400(a). "The Ninth Circuit interprets this statutory

3 provision to allow venue 'in any judicial district in which the defendant would be

4 amenable to personal jurisdiction if the district were a separate state.'" *Columbia*

5 *Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 288 (9th

6 Cir. 1997), rev'd on other grounds sub nom. *Feltner v. Columbia Pictures*

7 *Television, Inc.*, 523 U.S. 340 (1998).

8     If the Court determines that the venue is improper, it may dismiss the case or

9 transfer it to any district where it could have been brought properly if it is in the

10 interest of justice. 28 U.S.C. § 1406(a); *Dist. No. 1, Pac. Coast Dist. v. Alaska*, 682

11 F.2d 797, 799 (9th Cir. 1982).

12     Given the Court's lack of personal jurisdiction over Mr. Felix, the Central

13 District of California is an improper venue for Mr. Felix. *See Adobe Sys. Inc. v. Blue*

14 *Source Grp., Inc.*, 125 F. Supp. 3d 945, 959 (N.D. Cal. 2015) (explaining that the

15 analysis on a motion to dismiss for improper venue is the same as the analysis on a

16 motion to dismiss for lack of personal jurisdiction); *Premier Fabrics, Inc. v. Walters*

17 *and Mason Retail, Inc.*, 2018 WL 6164766, at * 8 (C.D. Cal. 2018) (concluding that

18 the venue is not proper because the court lacks personal jurisdiction over the

19 defendant).

20

1      This Court lacks jurisdiction over Mr. Felix. Thus, the venue is improper, and

2  the Claims against Mr. Felix must be dismissed.

3      Mr. Felix alternatively requests that the Court transfer the case to the District

4  of Puerto Rico on convenience grounds under 28 U.S.C. section 1404. To obtain a

5  convenience transfer under section 1404, a defendant must "make a strong showing

6  of inconvenience to warrant upsetting the plaintiff's choice of forum." *See Decker*

7  *Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In

8  considering whether to transfer a case, courts examine both private and public

9  factors, including:

10         (1) the location where the relevant agreements were negotiated and
           executed, (2) the state that is most familiar with the governing law, (3)

11         the plaintiff's choice of forum, (4) the respective parties' contacts with
           the forum, (5) the contacts relating to the plaintiff's cause of action in

12         the chosen forum, (6) the differences in the costs of litigation in the two
           forums, (7) the availability of compulsory process to compel the

13         attendance of unwilling non-party witnesses, and (8) the ease of access
           to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-

14         499 (9th Cir. 2000).

15      The first factor is neutral, given that no agreements exist between the parties

16  in this case. The second factor is also neutral because the federal court in the District

17  of Puerto Rico undoubtedly has enough familiarity with federal copyright law to

18  oversee this action effectively. Regarding the third factor, a plaintiff's choice of

19  venue is given little deference where, as here, the "center of the accused activity" is

20

outside the current forum. *See Sorensen v. Daimler Chrysler AG*, 2003 U.S. Dist. LEXIS 6294, at *11-12 (N.D. Cal. April 11, 2003) (cleaned up). The "center of the accused activity" is in the district in which the defendant "is alleged to have developed . . . marketed, and made sales decisions concerning the accused product." *Sorensen*, 2003 U.S. Dist. LEXIS 6294, at *12. As demonstrated above, the epicenter of the alleged conduct is centered in Puerto Rico, where Mr. Felix and many co-defendants lumped together, conduct business; where transactions were negotiated; and where the relevant evidence and witnesses are located. Further, taking into consideration that Plaintiffs are from Jamaica and not residents of California, the District of Puerto Rico could be the forum to see this case as to the Claims against Mr. Felix since the change of venue wouldn't harm Plaintiffs because they are not residents, nor the action took place in California. Regarding the fourth and fifth factors, there are no allegations nor conduct that Defendants, nor Mr. Felix in his individual capacity, directly conducted any activity to California considering the alleged Claims: copyright violation and contributory liability.

As for the sixth through eighth factors—those about the cost of litigation, access to evidence, and ability to compel witnesses to appear—it appears that litigating in the District of Puerto Rico would be more economical and convenient for the parties, as the witnesses (producers, singers, songwriters, mixers, recording

director, recording staff, and music industry personnel) of Mr. Felix are residents of

Puerto Rico. Also, several of the Infringing Works related to Mr. Felix were recorded

**in** Puerto Rico. Thus, the District of Puerto Rico is better suited to hear this case.

## IV.   <u>FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, RULE 12(B)(6)</u>

Even assuming this Court finds that it has jurisdiction over Mr. Felix and that

the venue in the Central District of California is proper, the Claims against Mr. Felix

should be dismissed because the Plaintiffs fail to adequately plead sufficient facts to

show that they have a plausible entitlement to relief against Mr. Felix.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for

"failure to state a claim upon which relief can be granted." "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The question presented by a motion to dismiss is not whether the plaintiff will

ultimately prevail but whether the plaintiff **has alleged sufficient factual grounds**

**to support a plausible claim to relief**, thereby entitling the plaintiff to offer

evidence supporting its claim. *Id*. A plaintiff must provide more than "labels and

conclusions" or "a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555 (cleaned up).

**B. The Complaint fails to meet even the most generous of pleading standards**

**1. By grouping all defendants into interchangeable "Defendants," the Complaint fails to state a claim against Mr. Felix for which relief can be granted, as such, it must be dismissed.**

Throughout the Complaint, Plaintiffs continuously fail to place the Court, and Mr. Felix, in a position to ascertain which, if any, illicit conduct Mr. Felix allegedly engaged in. The Complaint's allegations group the hundreds of defendants without specifying how each defendant plays a different role in the infringement scheme.

Even taking the Complaint at face value, Plaintiffs failed to plead any facts regarding Mr. Felix's contribution to the alleged illegal activity. On the contrary, it seems that Plaintiffs tried to accumulate the entire reggaeton music industry in the Complaint just to accumulate them into one lawsuit without specifying how each of the Defendants responds to Plaintiffs. Accordingly, Mr. Felix's participation in the Complaint is limited to the context of his profession and involvement in the reggaeton music industry.

This type of litigation is known as the "shotgun" style of pleading and does not meet the requirements established by Iqbal, Twombly, or Rule 8 of the FRCP. "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass

of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Ho v. Nationstar Mortg., LLC*, No. 219CV10532ODWJPRX, 2020 WL 7714700, at *4 (C.D. Cal. Dec. 29, 2020) (cleaned up). Plaintiffs must give the defendants a clear statement about what the defendants allegedly did wrong. *See Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (dismissing the complaint because the plaintiff grouped the defendants in an omnibus term "Defendants" without identifying what the particular defendants specifically did wrong). Many courts have recognized that allowing shotgun pleadings would have many negative consequences. *See Mason v. County of Orange*, 251 F.R.D. 562, 563–64 (C.D.Cal.2008) (quoting *Anderson v. District Board of Trustees*, 77 F.3d 364, 366–67 (11th Cir.1996)) ("[E]xperience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.")

Here, Plaintiffs group every defendant in an omnibus term "Defendants" without identifying what particular conduct the Defendants specifically did wrong. Additionally, Plaintiffs recite a collection of general allegations toward the beginning of the Complaint, and then each count incorporates every antecedent

1   allegation and Exhibit A by reference. This is also a shotgun pleading that deprives

2   Mr. Felix and every one of the Defendants of knowing precisely what they are

3   accused of doing wrong.

4          In sum, a plaintiff must do more than just group several defendants in an

5   allegation where it is evident that different actors must have taken distinct

6   actions/omissions to make a claim feasible. Plaintiffs assert that "[e]ach party listed

7   in the "Involved Defendants" column of Exhibit A is responsible for the creation

8   and/or exploitation of the listed Infringing Work[s]." Complaint ¶ 190. Incorporating

9   by reference Exhibit A does not magically corrects the deficiency of the pleadings.

10  Exhibit A lists thousands of creative works without explaining how they infringe on

11  Fish Market or even describing the role the defendants listed in the third column

12  play. For all that matters, any person could have been mentioned in the third column

13  since no explanation is given for how the person is involved in the alleged

14  infringement.

15         Therefore, considering the corresponding legal framework, an evaluation of

16  the allegations in the Complaint, or the lack thereof, indicates that the Claims against

17  Mr. Felix must be dismissed.

18      **2. Plaintiffs have not, and cannot, allege sufficient facts to support a copyright infringement claim against Mr. Felix.**

19

20

To maintain a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 361 (1991). In connection to the second prong, the copying may be established by demonstrating (a) "that the [defendant] had access to plaintiff's copyrighted work" and (b) "that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). Because in a motion to dismiss, the Court must take the allegations contained in a complaint as true, Mr. Felix will not contest, for purposes of this motion, Plaintiffs' copyright to Fish Market.  Thus, we refer to the second prong.

### i. The Complaint should be dismissed because it does not plausibly allege actual copying.

### a. Plaintiffs did not plausibly allege access.

"To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view [or listen to] the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). As a general matter, "circumstantial evidence that meets this standard comes in two forms: (1) evidence of a chain of events linking the plaintiff's work with defendants' access to that work, and (2) evidence that a plaintiff's work has been widely disseminated." *Shaheed-Edwards v. Syco Entm't, Inc.*, No. 17-cv-6579

1   (SJO), 2017 WL 6403091, at *2 (C.D. Cal. Dec. 14, 2017) (cleaned up); *see also*

2   *Batts v. Adams*, No. 10-cv-8123 (JFW), 2011 WL 13217923, at *2 (C.D. Cal. Feb.

3   8, 2011).

4          Here, Plaintiffs fail to allege specific facts to link Mr. Felix to having access

5   to Fish Market. No factual allegations show any linkage of Mr. Felix to Fish Market.

6   Instead, the Complaint includes a single conclusory allegation of access directed to

7   all Defendants regarding *Dem Bow's* work: "*Dem Bow* was a massive hit, and a

8   critical and commercial success, in the international reggae dancehall scene."

9   Complaint ⁋ 181. Plaintiffs' only allegation of access revolves around the work of

10  *Dem Bow* and not Fish Market. Put simply, Plaintiffs allege access to Fish Market

11  **through another work** that allegedly captured the core basis of Fish Market.[4] *Id.* ⁋⁋

12  181-188. Plaintiffs are not the authors of the sound recording of *Dem Bow*.

13  Complaint ⁋ 189. Thus, Plaintiffs **lack standing to allege any copyright**

14  **infringement to *Dem Bow* other than its lyrics**. Any allegation of copyright

15  _____

16  [4] Plaintiffs alleged copyright infringement to Fish Market through a chain of
    connections between several creative works that have no relation to the original work
    and no comparison between them is established. Thus, since Plaintiffs fail to allege

17  which **original elements** from Fish Market the derivative works (e.g. *Dem Bow*,
    Pounder Riddim, and Pounder Dub Mix II) copied, a direct copyright infringement

18  claim for Fish Market must be dismissed. *Johnson v. Gordon*, 409 F.3d 12, 19 (1st
    Cir. 2005) (a "plaintiff cannot, as a matter of law, stretch the carapace of [its]

19  ownership [or one registered copyrighted work] to garner copyright protection for
    elements unique to [an unregistered derivative] long version" of that work).

20

1   infringement on the Sound within Fish Market through *Dem Bow* is baseless and

2   careless since Plaintiffs can only claim the right to the lyrics. Plaintiffs needed to

3   assert that Mr. Felix had access to Fish Market to allege access. There was none.

4     Even if sustaining *arguendo* that Plaintiffs did plausibly allege access through

5   *Dem Bow*, a mere "massive hit" is not enough to sustain "access" as a matter of law

6   for a composition released in the 1990s. Courts have even rejected access allegations

7   on the sole basis of "wide distribution" or "massive hit" allegations. *See  Shaheed-*

8   *Edwards*, No. 17-cv-6579  at *3 (granting motion to dismiss and finding allegation

9   that song had been "uploaded to YouTube … does not imply it was disseminated

10  widely") (cleaned up); *Batts v. Adams*, No. 10-cv-8123 (JFW), 2011 WL 13217923,

11  at *4 (C.D. Cal. Feb. 8, 2011) (the fact that song had been uploaded to iTunes,

12  YouTube, and Amazon.com did not suffice to demonstrate the "widespread"

13  dissemination required to show access); *Tate-Robertson v. Walmart, Inc.*, No. 19-

14  cv-27 (JGB), 2019 WL 6448960, at *4 (C.D. Cal. May 16, 2019) ("Simply because

15  a work is available for sale does not mean that the work has been 'widely

16  disseminated'"). The cases above demonstrate how an insufficient allegation cannot

17  circumvent the "access" element, even in the digital era.[5]

18

---

19  [5] A careful search on the music platforms reveals that Fish Market has yet to be
    widely disseminated. For instance, Fish Market has 21,184 plays on Spotify and

20  approximately 1 million plays in all YouTube videos.

1    The Complaint's bare assertion—wholly bereft of any corresponding factual

2    detail showing Mr. Felix accessed Fish Market (which he did not)—does not

3    plausibly plead access.

4            **b. The Complaint should be dismissed because it does not**
        **plausibly allege that the Fish Market is substantially similar to**

5            **any work related to Mr. Felix.**

6    The Ninth Circuit employs a two-part test to determine if works are

7    substantially similar: an intrinsic test and an extrinsic test. *Cavalier v. Random*

8    *House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "The 'intrinsic test' is a subjective

9    comparison that focuses on 'whether the ordinary, reasonable audience' would find

10   the works substantially similar in the 'total concept and feel of the works.'" *Id*.

11   (cleaned up).

12   The court, however, must apply an extrinsic test to determine substantial

13   similarity as a matter of law. *Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1133

14   (C.D. Cal. 2007). Because Mr. Felix seeks dismissal based on the Complaint's

15   failure to allege plausible facts showing unlawful appropriation, this Motion is

16   predicated solely on the "extrinsic test."

17   To satisfy the extrinsic test, the plaintiff must first identify the sources of the

18   alleged similarity **between the two-subject works**. *Apple Comput., Inc. v. Microsoft*

19   *Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). When analyzing musical compositions,

20

a "variety of compositional elements may be considered, including melody, harmony, rhythm, timbre, structure, instrumentation, meter, tempo, and lyrics." *Batts v. Adams*, No. CV 10-8-8123-JWF (RZx), 2011 WL 13217923, at *5 (C.D. Cal. Feb. 8, 2011) (citing *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004)). Then, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright." *Apple Comput., Inc.*, 35 F.3d at 1443. "[A] finding of substantial similarity between two works can't be based on similarities in **unprotectable elements**." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 916 (9th Cir. 2010), as amended on denial of reh'g (Oct. 21, 2010) (emphasis added).

Here, the Complaint does not, and could not, even allege similarity between Fish Market and any of the Infringing Works related to Mr. Felix. There are no allegations regarding similarities between Fish Market and any work associated with Mr. Felix because the Complaint falls far shy of mentioning in what way Mr. Felix contributed to such similarities or even if the similarities are attributed to him. Moreover, Plaintiffs could not plausibly, and in good faith, allege similarity because the only part of Fish Market alleged to have been copied, the Sound, is common to the reggaeton music genre and is not remotely unique or complex.

1    Accordingly, Plaintiffs have not pleaded similarity and cannot do so if they

2   were to seek leave to replead since the Sound at issue shares only commonplace and

3   unprotectable elements. Hence, not original.

4   **3. Even if this Court were to find that Plaintiffs alleged a plausible copyright**
      **infringement claim, the elements that Plaintiffs alleged were copied in**

5   **Fish Market are common and unprotectable elements of an entire music**
      **genre and thus not subject to protection.**

6    "The genre known today as reggaeton is the product of multiple and

7   overlapping musical circuits that do not comply with geographic, national, or

8   language boundaries, nor with ethnic or pan-ethnic expectations. And yet,

9   reggaeton's history is most often explained in linear fashion, abiding by and

10  affirming these very boundaries." Raquel Z. Rivera et al., *Introduction*, *in*

11  REGGAETON, 1–16, 10 (2009) [hereinafter, Introduction in Reggaeton].

12   There are many critics and experts of the reggaeton genre that situates its

13  origin in either one of two Spanish-speaking countries: in the 1980s in Panama with

14  the *reggae en español* or in the 1990s in Puerto Rico with the *underground* music.

15  *Id.* at 11. "One thing is true, reggaeton consisted of 'versioning dancehall reggae

16  coming out of Jamaica in the 1980s and 1990s". *Id.*

17   The Jamaican reggae spread in the 1960s and 1970s through the diaspora who

18  settled in Panama. Jorge L. Giovannetti, *Popular Music and Culture in Puerto Rico:*

19  *Jamaican and Rap Music as Cross-Cultural Symbols, in* MUSICAL

20

MIGRATIONS: TRANSNATIONALISM AND CULTURAL HYBRIDITY IN LATIN/O AMERICA 81, 81 (Frances R. Aparicio & Cándida F. Jáquez eds., 2003). By the 1980s, the Afro-Panamanian artists refashioned Jamaica's dancehall hits for Latino audiences into *reggae en español*. Wayne Marshall, The rise of reggaeton: From Daddy Yankee to Tego Calderón and beyond, THE PHOENIX (Jan. 19, 2006). Parallelly, in Puerto Rico, the Latino migration between New York and Puerto Rico created pathways for rap groups to develop the *underground* style of music.[6]

The *reggae en español*, *underground*, and reggaeton are best described as trans-Caribbean genres whose history and aesthetics do not abide by nation, person, and language as chief organizing principles. *See* Introduction in Reggaeton. Note

---

[6] Note that:

> This pathway eventually led to the development of "Underground" rap music. In Puerto Rico, Underground referred to both the genre's lyrical content and market position. Underground was produced, marketed, and circulated through informal and decentralized networks via cassette. It was produced in *marquesinas* --home recording studios--at a low cost. The *marquesinas* were often located in *caseríos*--public housing projects--throughout Puerto Rico's urban centers. Underground spoke directly to the social conditions prevalent in the *caseríos*: high unemployment, failing schools, government corruption, and widespread drug violence. The lyrical content and style of Underground later merged with the sound of *Reggae en Español*. This new musical hybrid would eventually become Reggaeton, rising in popularity throughout Latin America and crossing over socio-economic barriers to reach all sectors of Latin American society. Melinda Sommers Molina, *Calle 13: Reggaeton, Politics, And Protest*, 46 Wash. U. J.L. & Pol'y 117, 125-126 (2014).

that, notwithstanding the presence and influence of the Jamaican *dancehall* of the 1960s-1990s, "reggaeton is neither hip-hop nor dancehall nor Latin nor tropical in the traditional sense, **yet it draws from all of these (and forges imagined connections with them) in projecting a distinctive, resonant sound**." *Id*. at 8 (emphasis added).

The evolution of the reggaeton genre, for which many –if not all– Defendants fall in, is a result of the social, economic, and cultural developments of the poor, the working class, and the immigrants in Panama, Jamaica, Puerto Rico, and New York. *See* Wayne Marshall, *From Música Negra to Reggaeton Latino, The Cultural Politics of Nation, Migration, and Commercialization*, in REGGAETON, 19-75 (Raquel Z. Rivera et al. eds., 2009) [hereinafter Música Negra].

To attribute a sound that can be traced back from the Jamaican *dancehall* of the **1960s** –well before Plaintiffs' Fish Market was released– and the Panamanian style of *reggae en español* and that is now the core of a whole genre is frivolous, ludicrous, and anti-competitive.

Even if taking as true the fact that the Sound was Plaintiffs' creation, which Mr. Felix rejects, the Sound is so common that it has developed into a **building block** for the reggaeton genre. *See* Música Negra, supra, at 40.

1    It is a well-established copyright infringement defense that a copyright owner

2  can't prove infringement by pointing to features of his work that are found in the

3  defendant's work as well but that are so rudimentary, commonplace, standard, or

4  unavoidable that they do not serve to distinguish one work within a class of works

5  from another, this is known a *scènes à faire*. *See* 2 Patry on Copyright § 4:25.

6    Considering the reggaeton genre's evolution and progression, the Sound

7  constitutes a common building block. What better evidence than this instant lawsuit?

8  Plaintiffs sued hundreds of artists from the reggaeton and rap genre, many of which

9  vary wildly in how they sound. If the Sound was not that common, how come

10  hundreds of artists have used, and continue to use, the Sound? Plaintiffs'

11  contribution to the genre, if any, cannot be highlighted by the invention of such

12  rhythm.[7] *See McIntyre v. Double-A Music Corp.*, 166 F. Supp. 681, 683 (S.D. Cal.

13  1958) (A "contribution" of "several bars of harmony" or the "addition" of "harmonic

14  embellishments" are "technical improvisations which are common in the vocabulary

15  of music . . . are de minimis contributions and do not qualify for copyright

16

17  _____

17  [7] Note that when evaluating a *scènes à faire* defense, the Court must analyze the
alleged infringement within the reggaeton genre and not the entire music industry
18  (with dozens of music genres). *See Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir.
2004) (a contested element from a "hip hop" song cannot be considered as *scènes à*
19  *faire* in a country or folk song. That element may be unprotectable because of some
other doctrine, such as fair use, but it is not *scènes à faire* within its genre). Thus,
20  this Court must analyze *scénes á faire* within the context of the reggaeton genre.

1   protection."); *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988) (The court

2   must be "mindful of the limited number of notes and chords available to composers

3   and the resulting fact that common themes frequently reappear in various

4   compositions, especially in popular music. . . . Thus, the striking similarity between

5   pieces of popular music must extend beyond themes that could have been derived

6   from a common source or themes that are so trite as to be likely to reappear in many

7   compositions."); *Selle v. Gibb*, 741 F.2d 896, 905 (7th Cir. 1984) ("[I]n a field such

8   as that of popular music . . . all songs are relatively short and tend to build on or

9   repeat a basic theme."); *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282

10  (S.D.N.Y. 1991) (finding a certain harmonic progression unprotectable because it

11  appears in many songs). Thus, Plaintiffs cannot claim ownership of such Sound.

12          Further, Plaintiffs cannot demonstrate that the similarity in sound, or even the

13  copying of the Sound, is a result of direct copying from Fish Market. As mentioned,

14  reggaeton is highly influenced by the Jamaican *dancehall* of the 1980s and the New

15  York rap. Thus, Mr. Felix alleged infringement, or lack thereof, may have come

16  from multiple other artists of the time who were part of the *dancehall* and rap genre.

17  There is no infringement when the similarities between two works are traceable to a

18  common source, such as a pre-existing musical work or genre. *See Walker v. Time*

19  *Life Films, Inc.*, 615 F.Supp. 430, 435 (S.D.N.Y. 1985). The Sound used in

20

reggaeton may have come from a different source than by Plaintiffs. Thus, there is no such base for an infringement argument. "Many if not most of the elements that appear in popular music are not individually protectable." *Gray v. Perry*, No. 15-cv-5642 (CAS), 2020 WL 1275221, at *4 (C.D. Cal. Mar. 16, 2020), aff'd, 28 F.4th 87 (9th Cir. 2022) (citing 1 *Nimmer on Copyright* § 2.05 (2019)). Consequently, "courts in musical copyright cases have a significant obligation … to encourage others to build freely upon the ideas and information conveyed by a work, and at the same time motivate creative activity, by carefully limiting the scope of copyright protection to truly original expression only." *Id*. (cleaned up).

### 4. Plaintiffs fail to state a claim for contributory infringement against Mr. Felix.

To state a claim for contributory copyright infringement, a plaintiff must allege that a defendant "(1) has knowledge of a third party's infringing activity, and (2) induces, causes or materially contributes to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (cleaned up). "To establish liability, the first prong requires **more than a generalized knowledge** by [a defendant] of the possibility of infringement" by a third party. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (emphasis added). Instead, "actual knowledge of specific acts of [third party] infringement is required for contributory infringement liability." *Id.* (cleaned up).

1    A defendant who has "reason to know" also has the requisite knowledge for

2 contributory copyright infringement. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th

3 Cir. 2004). However, the defendant **must** have "reason to know" of specific acts of

4 infringement. *Id*. Accordingly, Plaintiffs must allege that Mr. Felix knew or had

5 reason to know of specific acts of infringement. Moreover, mere "conclusory

6 allegations that [Mr. Felix] had the required knowledge of infringement are plainly

7 insufficient." *Luvdarts, LLC*, 710 F.3d at 1071. Rather, Plaintiffs must allege facts

8 to support the conclusion that Mr. Felix had "knowledge of specific acts of [co-

9 defendants] infringement." *Luvdarts, LLC*, 710 F.3d at 1071; accord \*764 *Epikhin*

10 *v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2015 WL 2412357, at \*4 (N.D.

11 Cal. May 20, 2015) (granting motion to dismiss contributory copyright infringement

12 claims because "Plaintiffs do not allege any facts in support of the threadbare

13 assertion that [Defendants] 'had knowledge of the infringing acts'"). *See also YZ*

14 *Productions, Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 763–64 (N.D. Cal. 2021).

15    Here, Plaintiffs claim that "Defendants, and each of them, collaborated with

16 other artists to create the Infringing Works, and, in doing so, knowingly

17 incorporated ma[t]erial elements from the compositions and sound recordings of

18 Fish Market and Pounder and the composition of Dem Bow, with knowledge that

19 they did not have the requisite consent." Complaint ¶ 679. Plaintiffs further noted

20

that they "are informed and believe" that the Defendants are vicariously liable for the infringement alleged, "because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct." *Id*. ¶ 680. Nowhere in these allegations did Plaintiffs allege facts to support the conclusion that Mr. Felix knew specific acts of co-defendants. The allegations cited above are merely conclusory because Plaintiffs do "not allege any facts in support of the threadbare assertion that [Mr. Felix] 'had knowledge of the infringing acts.'" *Epikhin*, 2015 WL 2412357, at *4.

Here, Mr. Felix did not know of any of the co-defendants' infringement because, first and foremost, Mr. Felix did not know that such a copyright of the Sound existed. Further, Mr. Felix did not have "reason to know" of specific acts of infringement because the Sound Plaintiffs alleged as theirs is common to an entire music genre. Thus, Mr. Felix had no reason to know that a common sound was monopolized.

Furthermore, Plaintiffs failed to address in what capacity Mr. Felix is contributory liable (either as producer, composer, mixer, recorder, singer, director, publisher, or any other capacity)—fatally dooming the Complaint.

But even if the Court accepts that conclusory statement as true (which it should not), it is still insufficient to allege contributory liability because Plaintiffs do

1    not allege (because it is not true) that Mr. Felix provided access to any co-defendant

2    to the Infringing Works. *See App. E.g., Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d

3    657, 671 (9th Cir. 2017) (once knowledge of direct infringement is established, a

4    plaintiff seeking to show contributory infringement must establish either that the

5    defendant materially contributed by "continu[ing] to provide access to infringing

6    works" or induced the infringement by "promoting its use to infringe copyright").

7    On the contrary, Mr. Felix is credited with developing new "futuristic, tactile synths

8    and bombast of rave era techno and contemporary trance" that distinguishes it from

9    the Sound. *See* Música Negra, *supra*, at 54.

10                        **V.    CONCLUSION**

11          This is a ludicrous complaint in plain sight. The fact that hundreds of

12   defendants have to defend themselves from a frivolous lawsuit is beyond the basic

13   principle of justice. The Sound is just as common to the reggaeton genre as the piano

14   rhythms are for jazz or the guitar building blocks are for country music. Simply put,

15   this Court lacks personal jurisdiction over Mr. Felix given his lack of contacts with

16   the state of California. Assuming there was jurisdiction, the proper venue is not

17   California, but Puerto Rico, and as such, the case should be severed and transferred

18   to Puerto Rico.

19

20

1        But the Court need not transfer the case since the Claims are dead on arrival

2   given that they lack any plausible allegation or narrative against Mr. Felix. An

3   allegation through an exhibit like the one at hand is indefensible and fails any

4   possible pleading standard.

5        There is no concrete allegation of access, direct copying, substantial

6   similarity, or of any act that would constitute copyright infringement. Taking the

7   Complaint as a whole, the Court can readily see that the Plaintiffs intend on claiming

8   ownership over an entire genre of music. Simply said, there is no way this Complaint

9   can survive, as drafted. Respectfully, Mr. Felix thus moves to dismiss the Claims

10  against him.

11       WHEREFORE, Defendant Mr. Felix respectfully prays for this Court to

12  dismiss the Complaint with prejudice, and award Mr. Felix a reasonable amount of

13  attorney fees and costs.

14       DATED:  June 15th, 2023

15                        Respectfully submitted,

16                      **FERRAIUOLI LLC**

17                     By:/s/ Jean G Vidal-Font
                            JEAN G. VIDAL-FONT

18                          State Bar No. 266475
                          jvidal@ferraiuoli.com

19

20         **Attorney for Defendant Vladimir Felix p/ka Dj Blass**