1

JEAN G. VIDAL-FONT, State Bar No. 266475
jvidal@ferraiuoli.com

2

FERRAIUOLI LLC
221 Ponce de León
5th Floor

3

San Juan, PR 00917
Telephone: 787-766-7000
Facsimile: 787-766-7001

4

Counsel for Defendant Camilo Echeverri p/k/a Camilo

5

6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

7

8
9
10
11
12
13
14
15
16

| | |
|---|---|
| **CLEVELAND CONSTANTINE BROWNE; ANIKA JOHNSON as personal representative of THE ESTATE OF WYCLIFFE JOHNSON; and STEELY & CLEVIE PRODUCTIONS, LTD.**<br><br>    Plaintiffs<br><br>    v.<br><br>**RODNEY SEBASTIAN CLARK DONALDS et al.**<br><br>    Defendants | **CASE NO.: 2:21-cv-02840-AB-AFM**<br><br>**CAMILO ECHEVERRI'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Supporting Declaration and Proposed Order] |

17

**<u>MOTION TO DISMISS</u>**

18

19

20

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 22nd, 2023, at 5:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7B of the Court, located at the First Street U.S. Courthouse, 350 W 1st Street, Suite 4311 Los Angeles, CA 90012-4565, especially appearing defendant Camilo Echeverri p/k/a Camilo[1] ("Mr. Echeverri" or "Defendant"), by and through his attorney of record, will and hereby moves for dismissal of the Second Amended Complaint, Dkt. 305 (the "Complaint") filed by plaintiffs Cleveland Constantine Browne, the Estate of Wycliffe Johnson, and Steely & Clevie Productions Ltd. ("Plaintiffs") with prejudice pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

Mr. Echeverri moves to dismiss Plaintiffs' Complaint on the following grounds: (1) Pursuant to FRCP 12(b)(2), for lack of personal jurisdiction. Plaintiffs cannot establish either general jurisdiction or specific jurisdiction over Mr. Echeverri. Mr. Echeverri is not subject to general jurisdiction because it is neither incorporated, nor has its principal place of business in California, and no "exceptional" circumstances warrant the exercise of general jurisdiction. Plaintiffs likewise cannot establish specific jurisdiction over Mr. Echeverri because: (a)

---

[1] Incorrectly named in this Complaint as Camilo Echeverría.

Plaintiffs' claims do not arise out of any contacts that Mr. Echeverri may have with California; (b) Plaintiffs fail to establish that Mr. Echeverri purposefully directed any activities towards California; and (c) It would be unreasonable, and inconsistent with traditional notions of fair play and substantial justice, for the Court to exercise jurisdiction over Mr. Echeverri here.

(2) The Central District of California is an improper venue for Mr. Echeverri.

(3) Plaintiffs failed to plead sufficient facts regarding conduct giving rise to liability in part of Mr. Echeverri. *First*, Plaintiffs allege, through an imprecise and circular argument, that every defendant in this matter is subject to liability without specifying the alleged conduct in which each individual engaged or their specific contribution to the alleged violation, purportedly giving way to liability. *Second*, Plaintiffs fail to establish in what way, if any, Mr. Echeverri infringed Plaintiffs' copyright. *Third*, this action is vague regarding every element to establish copyright and contributory infringement. *Fourth*, even taking this action at face value, Plaintiffs cannot have a monopoly over a sound common to the reggaeton genre.

In sum, no legitimate grounds exist for Mr. Echeverri to be held as a party to this action.

The Motion to Dismiss is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records

1   on file in this action, the declaration of Mr. Echeverri, and such other evidence and

2   argument as may be presented to the Court at or before the filing of this Motion.

3       This Motion is made following a conference of counsel pursuant to L.R. 7-3,

4   which took place on June 5th, 2023.

5       Respectfully submitted,

6   DATED:  June 15th, 2023

7                                                                   Respectfully submitted,

8                                                                   **FERRAIUOLI LLC**

9                                                                   By:/s/ Jean G Vidal-Font
                                                                    JEAN G. VIDAL-FONT
10                                                                  State Bar No. 266475
                                                                    jvidal@ferraiuoli.com

11

12                                          **Attorney for Defendant Camilo Echeverri p/k/a Camilo**

13

14

15

16

17

18

19

20

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ................................................................1

II.   STATEMENT OF RELEVANT FACTS ........................................2

III.  LACK OF PERSONAL JURISDICTION RULE(B)(2)............................5

   A. Legal Standard………….…….……….....................................5

   B. Arguments ................................................................6

      1.   This Court does not have general jurisdiction over Mr. Echeverri…6

      2.   Plaintiffs have not established and could not establish specific jurisdiction over Mr. Echeverri……………………………………8

         i.     Plaintiffs did not allege how Mr. Echeverri purposely directed any conduct to this forum ..………..……….....8

         ii.    Plaintiffs' claims against Mr. Echeverri do not arise from or relate to Mr. Echeverri's forum-related activities because there are none…………..…………….………..9

         iii.   Because the first two prongs are not satisfied, it would be unfair and unreasonable for this court to exert jurisdiction over Mr. Echeverri …..………………………………12

      3.   Venue is Improper Under 28 U.S.C. sec. 1404………..…………....12

IV.   FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, RULE 12(B)(6) …………………………...………..……....16

   A. Standard of Review ...………………………………...………...16

**B.** The Complaint fails to meet even the most generous of pleading standards…………………………………………………………..17

    1. By grouping all defendants into interchangeable "Defendants," the Complaint fails to state a claim against Mr. Echeverri for which relief can be granted, as such, it must be dismissed ………………..………17

    2. Plaintiffs have not, and cannot, allege sufficient facts to support a copyright infringement claim against Mr. Echeverri…………..……..20

        i. The Complaint should be dismissed because it does not plausibly allege actual copying………………….……..20

            a. Plaintiffs did not plausibly allege access…………20

            b. The Complaint should be dismissed because it does not plausibly allege that the Fish Market is substantially similar to any work related to Mr. Echeverri…………………………………………23

    3. Even if this Court were to find that Plaintiffs alleged a plausible copyright infringement claim, the elements that Plaintiffs alleged were copied in Fish Market are common and unprotectable elements of an entire music genre and thus not subject to protection………..25

    4. Plaintiffs fail to state a claim for contributory infringement against Mr. Echeverri…..……………………………………………...30

**V.** **CONCLUSION** ………………………………………………....33

# TABLE OF AUTHORITIES

**Cases**                                                                    Pages(s)

*Adobe Sys. Inc., v. Blue Source Group, Inc.,*
   125 F. Supp. 3d 945 (N.D. Cal. 2015)……………………………………………8, 13

*Amini Innovation Corp., v. JS Imports, Inc.,*
   497 F. Supp. 2d 1093 (C.D. Cal. 2007)……………..………………….…....6

*Amoco Egypt Oil Co. v. Leonis Navigation Co.,*
   1 F.3d 848 (9th Cir. 1993)……….…..………………………………...…..6

*Anderson v. District Board of Trustees,*
   77 F.3d 364 (11th Cir.1996)..………………………………………........18

*Apple Comput., Inc. v. Microsoft Corp.,*
   35 F.3d 1435 (9th Cir. 1994)……………………………………...……24

*Art Attacks Ink, LLC v. MGA Entm't Inc.,*
   581 F.3d 1138 (9th Cir. 2009)……………….………………………...20

*Asahi Metal Indus. Co. v. Super. Ct.,*
   480 U.S. 102 (1987)……………………………...……………………12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)……...……………….…………….……….....16, 17

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
   874 F.3d 1064 (9th Cir. 2017)……………...………………………8, 9

*Ballard v. Savage,*
   65 F.3d 1495 (9th Cir. 1995)……………….....…………………………10

*Bancroft v. Masters, Inc.,*
   223 F.3d 1082 (9th Cir. 2000)…………………………………...…....6

*Batts v. Adams,*
   No. 10-cv-8123 (JFW), 2011 WL 13217923 (C.D. Cal. Feb. 8,
   2011)……………………………………………………………21, 22, 24

1

## TABLE OF AUTHORITIES

2

**Cases** <u>Pages(s)</u>

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)…………………..…………...……………8, 16, 17

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S. F. Cty.,*
   137 S. Ct. 1773 (2017)…………………………..…………………......6

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)…………………………..………………….…..9

*Cavalier v. Random House, Inc.,*
   297 F.3d 815 (9th Cir. 2002)…..……………………………..20, 23

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,*
   106 F.3d 284 (9th Cir. 1997)…………………..……………………13

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)…………...…………………………………...7

*Decker Coal Co. v. Commonwealth Edison Co.,*
   805 F.2d 834 (9th Cir. 1986)…………………………...……………14

*Dist. No. 1, Pac. Coast Dist. v. Alaska,*
   682 F.2d 797 (9th Cir. 1982)………………………...……………13

*Dole Food Co., Inc. v. Watts,*
   303 F.3d 1104 (9th Cir. 2002)…………..…………………...……..8

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004)……………………………...……………..31

*Epikhin v. Game Insight N. Am.,*
   No. 14-CV-04383-LHK, 2015 WL 2412357 (N.D. Cal. May 20, 2015)…..31, 32

*Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.,*
   499 U.S. 340 (1991)…………………...…………………….........20

*Feltner v. Columbia Pictures Television, Inc.,*
   523 U.S. 340 (1998)…………………...……………………………13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

   

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                  Pages(s)

3

*Gaste v. Kaiserman,*
     863 F.2d 1061 (2d Cir. 1988)……………………………………………………..29

4

*Gray v. Perry,*
5     No. 15-cv-5642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020)………..30

*Helicopteros v. Hall,*
6     466 U.S. 408 (1984)…………………………...……………………………..6

7

*Ho v. Nationstar Mortg., LLC,*
     No. 219CV10532ODWJPRX, 2020 WL 7714700 (C.D. Cal. Dec. 29, 2020)...18

8

*Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.,*
     485 F.3d 450 ⁹9th Cir. 2007)…………………...…………………….........11

9

*Int'l Shoe Co. v. Washington,*
10     326 U.S. 310 (1945)………………...……………..….……………………..5

*Intersong-USA v. CBS, Inc.,*
11     757 F. Supp. 274 (S.D.N.Y. 1991)………………………...…………………...29

12

*Jones v. GNC Franchising, Inc.,*
     211 F.3d 495 ⁹9th Cir. 2000)…………………………...………………………14

13

*Kellman v. WFM Private Label, L.P.,*
     No. 17-cv-06584-LB, 2019 WL 1429576 (N.D. Cal. Mar. 29, 2019)…...........10

14

*Lang v. Morris,*
15     823 F. Supp. 2d 966 (N.D. Cal. 2011)……………………………………..5

*Luvdarts, LLC v. AT&T Mobility, LLC,*
16     710 F.3d 1068 ⁹9th Cir. 2013)…………………………...…………..31

17

*Mason v. County of Orange,*
     251 F.R.D. 562 (C.D.Cal. 2008)………...……………………………...18

18

19

20

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                     Pages(s)

3

*Mattel, Inc. v. MGA Entm't, Inc.,*
   616 F.3d 904 (9th Cir. 2010)…………………………………...…………….24

4

*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*
   647 F.3d 1218 (9th Cir. 2011)……………………………………………..5

5

*McIntyre v. Double-A Music Corp.,*
   166 F. Supp. 681 (S.D. Cal. 1958)……………………...………….…..28

6

*Morrill v. Scott Fin. Corp.,*
   873 F.3d 1136 (9th Cir. 2017)………………...…………………………9

7

*Myers v. Salad Kings, Inc.,*
   No. EDCV 08-1071-VAP (OPx), 2010 WL 11515311 (C.D. Cal. Oct. 1,
   2010)…………………………………………………………….………10

*Perfect 10, Inc. v. Giganews, Inc.,*
   847 F.3d 657 (9th Cir. 2017)……………………...……………………33

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
   494 F.3d 788 (9th Cir. 2007)…...……………………………...……….30,31

*Premier Fabrics, Inc. v. Walters and Mason Retail, Inc.,*
   2018 WL 6164766 (C.D. Cal. 2018)…………………………...……….13

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004)…………………………………...……..5, 7, 8

*Selle v. Gibb,*
   741 F.2d 896 (7th Cir. 1984)……………………………………...……29

*Shaheed-Edwards v. Syco Entm't, Inc.,*
   No. 17-cv-6579 (SJO), 2017 WL 6403091 (C.D. Cal. Dec. 14, 2017)………21, 22

*Skidmore v. Led Zeppelin,*
   106 F. Supp. 3d 581 (E.D. Pa. 2015)…………………………………...12

8

9

10

11

12

13

14

15

16

17

18

19

20

# TABLE OF AUTHORITIES

**Cases**                                                                                                          <u>Pages(s)</u>

*Sollberger v. Wachovia Secs., LLC,*
    No. SACV 09-0766 AG (ANx), 2010 WL 2674456 (C.D. Cal. June 30, 2010).18

*Sorensen v. Daimler Chrysler AG,*
    2003 U.S. Dist. LEXIS 6294 (N.D. Cal. April 11, 2003)…………………..14, 15

*Swirsky v. Carey,*
    376 F.3d 841 (9th Cir. 2004)……………………………...……………..24, 29

*Tate-Robertson v. Walmart, Inc.,*
    No. 19-cv-27 (JGB), 2019 WL 6448960 (C.D. Cal. May 16, 2019)…………...22

*United States v. HBSC Bank USA,*

No. CV1400210TJHDFMX, 2017 WL 11651180 (C.D. Cal. Apr. 14, 2017)…….7

*Walden v. Fiore,*
    571 U.S. 277 (2014)…………………………...……………………...11, 12

*Walker v. Time Life Films, Inc.,*
    615 F.Supp. 430 (S.D.N.Y. 1985)……………………………...…………30

*YZ Productions, Inc. v. Redbubble, Inc.,*
    545 F. Supp. 3d 756 (N.D. Cal. 2021)……………………………….31, 32

*Zella v. E.W. Scripps Co.,*
    529 F.Supp.2d 1124 (C.D. Cal. 2007)…………………………………..23

**Statutes**

28 U.S.C. § 1400(a)…………….…………..…………………………………12

28 U.S.C. § 1404……………...…………………………………………12, 14

28 U.S.C. § 1406(a)………………..…………………………..………...13

**Rules**

Fed. R. Civ. P. 8…………………………………………...…………17

Fed. R. Civ. P. 8(a)…………………………………………………...…..2

Fed. R. Civ. P. 12(b)(2)………………………………………………1

# TABLE OF AUTHORITIES

Pages(s)

Fed. R. Civ. P. 12(b)(6)……………………………………………………...1, 16

**Secondary References**

Jorge L. Giovannetti, Popular Music and Culture in Puerto Rico: Jamaican and Rap Music as Cross-Cultural Symbols, in MUSICAL MIGRATIONS: TRANSNATIONALISM AND CULTURAL HYBRIDITY IN LATIN/O AMERICA 81, 81 (Frances R. Aparicio & Cándida F. Jáquez eds., 2003)………26

Melinda Sommers Molina, Calle 13: Reggaeton, Politics, And Protest, 46 Wash. U. J.L. & Pol'y 117, 125-126 (2014)……………………………………….....................................27, 28

Nimmer on Copyright § 2.05………………………………………………...30

Patry on Copyright § 4:25…...……………………….…………….………...28

Raquel Z. Rivera et al., Introduction, in REGGAETON, 1–16, 10 (2009)……………...………………………………………..…….. 25, 27

Wayne Marshall, From Música Negra to Reggaeton Latino, The Cultural Politics of Nation, Migration, and Commercialization, in REGGAETON, 19-75 (Raquel Z. Rivera et al. eds., 2009)……………………………………………27, 28

Wayne Marshall, The rise of reggaeton: From Daddy Yankee to Tego Calderón and beyond, THE PHOENIX  (Jan. 19, 2000)……………..…………….…….26

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), especially appearing defendant Camilo Echeverri p/k/a Camilo ("Mr. Echeverri")[2] hereby submits this brief in support of its Motion to Dismiss the Second Consolidated Amended Complaint (Dkt. 305) ("Complaint") for Lack of Personal Jurisdiction, improper venue, and failure to state a claim (the "Motion").

## I.   INTRODUCTION

Plaintiffs filed a suit in California against a musician who lives, breathes, composes, produces, and otherwise works across the country in Miami, Florida. Mr. Echeverri has nothing to do with the forum he was brought into, he has no business in California and does not purposely avail his activities in California. Mr. Echeverri's music may be listened to in California, like in São Paulo, Brazil, or Athens, Greece. Nothing Mr. Echeverri does makes it proper, legal, or fair to litigate in California. Accordingly, Mr. Echeverri is moving this Court to dismiss the claims against him for lack of jurisdiction, or in the alternative, for improper venue (with the U.S. District for the Southern District Court of Florida being the proper venue). As if the improper venue was not enough, Mr. Echeverri cannot properly defend

---

[2] Incorrectly named in the Complaint as Camilo Echeverría.

1    himself, given the absolute lack of concrete allegations against him. He can only

2    guess or surmise what he is being accused of.

3         As this Court can attest, Plaintiffs fail to plead a copyright and contributory

4    infringement claim clearly and adequately as required by FRCP 8(a). Instead,

5    Plaintiffs wrongly instituted a shotgun pleading that overwhelmed defendants with

6    an unclear mass of allegations. In addition, Plaintiffs failed to state a claim clearly

7    and adequately against Mr. Echeverri on the alleged copyright infringement –sound

8    recording and lyrics– of Fish Market, *Dem Bow,* and Pounder Dub Mix II. Plaintiffs

9    repeatedly incorporate the Exhibit A of the Complaint "by reference" in each cause

10   of action, rendering it impossible to discern what is alleged. Fatally to Plaintiffs, they

11   fail to allege any facts supporting the secondary liability claim.

12        In short, this Action is ripe for dismissal because the Complaint lacks any

13   statutory basis or plausible facts setting forth the basis of copyright infringement. In

14   other words, even if Mr. Echeverri wanted to defend himself, he has no way of

15   knowing **what** he is defending himself against. Dismissal is the only logical

16   outcome.

17        **II.   <u>STATEMENTS OF RELEVANT FACTS</u>**

18        Plaintiffs' operative complaint is the Second Consolidated Amended

19   Complaint ("Complaint") (Dkt. 305) purporting to state a claim for (i) copyright

20

infringement and (vii) vicarious and/or contributory copyright infringement (jointly, "Claims") against literally hundreds of artists and companies, including Mr. Echeverri (and collectively with all defendants "Defendants").[3] The key allegations can be summed as follows.

Plaintiffs allege that in 1989 the Jamaican band duo *Steely and Clevie* wrote and recorded a song called *Fish Market*, registered at the Copyright Office ("Fish Market"). *See* Complaint ¶ 179. Allegedly the musical elements of Fish Market are:

> programmed kick, snare, and hi-hat playing a one bar pattern; percussion instruments, including a tambourine playing through the entire bar, a synthesized 'tom' playing on beats one and three, and timbales that play a roll at the end of every second bar and free improvisation over the pattern for the duration of the song; and a synthesized Bb (b-flat) bass note on beats one and three of each bar, which follows the aforementioned synthesized 'tom' pattern. *Id.* ¶ 180

(for the purposes of Mr. Echeverri's Motion, defined as the "Sound").

Plaintiffs allege that in 1990 *Steely and Clevie* coauthored the song *Dem Bow*. *Id.* ¶ 181. *Dem Bow* was, apparently, an alternative mix that incorporated the composition of Fish Market. *Id.* ¶¶ 181-182. That same year, Mr. Ephraim Barrett and Mr. Denis Halliburton recreated Fish Market's instrumental elements to create

---

[3] Pursuant to the Case Management Order of January 11, 2023 (Dkt. 143), Plaintiffs had until April 14th, 2023, to process service on every defendant. Thus, on April 21st, 2023, Plaintiffs filed a Second Consolidated Amended Complaint in which it included as the defendant party only the defendants who were properly served with summons by April 14th, 2023.

1    *Pounder Riddim*.[4] *Id*. *Pounder Riddim* was used to create the sound recording of

2    another work known as Pounder Dub Mix II, "Pounder Dub Mix II." *Id*.[5]

3        Plaintiffs claim that Defendants, and each of them, are responsible for creating

4    and exploiting the works listed on Exhibit A of the Complaint ("Infringing Works"),

5    which copied and/or interpolated the works Fish Market, *Dem Bow,* and Pounder

6    Dub Mix II without a license, authorization, or consent from Plaintiffs. *Id*. ¶¶ 190-

7    191. Notably, not a single concrete allegation is levied against Mr. Echeverri.

8        Plaintiffs sustain that Defendants continue to exploit and generate revenue and

9    profits from the Infringing Works, violating Plaintiffs' rights in Fish Market. *Id*.

10

_____

11   [4] Mr. Denis Halliburton – a third party – allegedly copied Dem Bow's instrumental
     sound. Complaint ¶ 183. Plaintiffs claim that Mr. Halliburton's composition,
12   "Pounder Riddim," is "virtually identical" to Fish Market. *Id.*  Notwithstanding,
     Plaintiffs did not include the authors of Pounder Riddim in this Complaint as an
13   infringement party. Plaintiffs have never claimed they owned "Pounder Riddim" or
     that Halliburton infringed Fish Market. They also failed to provide a comparison of
14   the two works. Complaint ¶ 188.
     [5] Plaintiffs allege that they possess copyright registration for the: composition and
15   sound recording for Fish Market; composition of *Dem Bow*, and sound recording for
     Pounder Dub Mix II. *See* Complaint ¶ 189. Notwithstanding, Plaintiffs only
16   evidenced authorship of Fish Market. As to "Pounder Riddim," Plaintiffs claim it
     was used to create the sound recording for Pounder Dub Mix II, and that Pounder
17   Dub Mix II "has been sampled by numerous Defendants". Complaint ¶ 184. Pounder
     Dub Mix II was registered on March 15, 2023 – months **after** initiating this action.
18   Thus, any claim as to Pounder Dub Mix II must be dismissed. 17 U.S.C. 411(a) "bars
     a copyright owner from suing for infringement until 'registration . . . has been
19   made'" and registration is not "made" until the Copyright Office grants the
     registration. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,* 139 S.
20   Ct. 881, 888 (2019).

## III.   **LACK OF PERSONAL JURISDICTION – FRCP RULE(B)(2)**

**A. Legal Standard**

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff must demonstrate that jurisdiction is appropriate. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When a defendant's motion is based on written materials rather than an evidentiary hearing, as is the case here, the Court will "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (cleaned up). Uncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.* However, courts do not assume the truthfulness of allegations challenged and contradicted by a defendant's declarations. *Lang v. Morris*, 823 F. Supp. 2d 966, 969 (N.D. Cal. 2011) (citing *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

The Court's analysis is confined to federal due process standards because California's long-arm statute's jurisdictional powers are limited to federal due process requirements. *Schwarzenegger*, 374 F.3d at 800-801. Thus, to establish jurisdiction, a defendant must have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play

and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S. F. Cty.*, 137 S. Ct. 1773, 1779-80 (2017).

**B. Arguments**

**1. This Court does not have general jurisdiction over Mr. Echeverri.**

General jurisdiction only exists where the defendant has "continuous and systematic general business contacts" with the forum state. *Helicopteros v. Hall*, 466 U.S. 408, 416 (1984). "The standard for establishing general jurisdiction is fairly high." *Bancroft v. Masters, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). *See also Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) (the Court has "regularly . . . declined to find general jurisdiction even where the contacts were quite extensive."). To determine whether general jurisdiction is proper, courts examine all of the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets as they relate to the defendant's business, designates agents, holds a license, or has employees in the forum state. *See Amini Innovation Corp., v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1101 (C.D. Cal. 2007). The Ninth Circuit distinguishes between "'doing business in California, which may support general

1   jurisdiction [and] doing business with California, which will not support such a

2   finding.'" *Schwarzenegger*, 374 F.3d at 801 (cleaned up).

3           Mr. Echeverri resides and does business **in** Miami, Florida. Mr. Echeverri is

4   not a resident or has ever conducted business in California. *See* Ex. 1. As a result, to

5   establish general jurisdiction, Plaintiffs must allege facts making it plausible that Mr.

6   Echeverri's contacts with California are "so constant and pervasive as to render

7   [them] essentially at home in" California. *Daimler AG v. Bauman*, 571 U.S. 117,

8   122 (2014) (cleaned up). But Plaintiffs do not plead any facts to support the standard

9   set out by *Daimler*. The truth is, **there are no allegations that arguably relate to**

10  **general personal jurisdiction over Mr. Echeverri**. The only allegation that

11  mentions Mr. Echeverri falls far, far shy of the showing necessary to demonstrate

12  the kind of California business activities that could establish general jurisdiction. For

13  instance, generally asserting that "Camilo Echeverri p/k/a Camilo ("Camilo") is an

14  individual residing in Miami, Florida and doing business in and with the state of

15  California, including in this judicial district," and simply mentioning Mr.

16  Echeverri's name in Exhibit A of the Complaint **does not meet the standard**. *See*

17  Complaint ⁋ 91. *See also   United States v. HBSC Bank USA*, No.

18  CV1400210TJHDFMX, 2017 WL 11651180 (C.D. Cal. Apr. 14, 2017) (dismissing

19  claim for failing to properly plead when the bulk of the allegations were not included

20

1   in the complaint but in an exhibit that failed to meet the *Twombly* standard). Thus,

2   Plaintiffs did not satisfy the general jurisdiction requirements.

3         **2.  Plaintiffs have not established and could not establish specific jurisdiction over Mr. Echeverri.**

4

5         **i.    Plaintiffs did not allege how Mr. Echeverri purposely directed any conduct to this forum.**

6         Normally, a plaintiff must show that (i) the defendant must either

7   "purposefully direct their activities" toward the forum or "purposefully avail [ ]

8   himself of the privileges of conducting activities in the forum;" (ii) the claim must

9   arise out of or relate to the defendant's forum-related activities, and (iii) the exercise

10  of jurisdiction must be reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874

11  F.3d 1064, 1068 (9th Cir. 2017) (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,

12  1111 (9th Cir. 2002). In copyright infringement cases, the test is even narrower.

13  Specifically, the Ninth Circuit has narrowed the test for specific jurisdiction by

14  requiring the plaintiff to show that the defendant purposefully directed its activities

15  to the forum and that the claim arose from or resulted from the defendant's forum-

16  related activities. *Schwarzenegger*, 374 F.3d at 802; *Adobe Sys. Inc., v. Blue Source*

17  *Group, Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015). Accordingly, only if the

18  plaintiff satisfies its burden does the burden shift to defendant to "present a

19  compelling case" that the exercise of jurisdiction is not reasonable. *Id.*

20

To establish purposeful direction, the plaintiff must show that: (1) the defendant committed an intentional act; (2) the defendant's act was expressly aimed at the forum state; and (3) the defendant knew the harm was likely to be suffered in the forum state. *Axiom Foods, Inc.*, 874 F.3d at 1069. This purposeful availment requirement protects defendants from having to litigate in a forum only because of "random," fortuitous," and "attenuated" contacts or the unilateral activity of another entity. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Mr. Echeverri did not "purposefully direct" its activities towards California or engage in a transaction with a Californian. The Claims at issue (copyright infringement for Fish Market) do not arise from any interaction between Mr. Echeverri and a Californian. Note that the Plaintiffs are all Jamaican residents and nationals, and Fish Market was created and probably exploited within the limits of Jamaica.

Plaintiffs did not allege, and cannot establish, that Mr. Echeverri (1) committed an intentional act, (2) that was expressly aimed at this forum, and (3) that he knew that any damage was to be caused in California.

ii.   **Plaintiffs' claims against Mr. Echeverri do not arise from or relate to Mr. Echeverri's forum-related activities because there are none.**

To establish specific jurisdiction, a plaintiff's claims must also "arise out" of defendant's contacts with California. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136,

1142, 1143 (9th Cir. 2017). The Ninth Circuit uses the "but for" test to determine whether claims arise from the contacts. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995); *See also Kellman v. WFM Private Label, L.P.*, No. 17-cv-06584-LB, 2019 WL 1429576, at *10 (N.D. Cal. Mar. 29, 2019) (granting motion to dismiss where the plaintiff had "not established that any forum-related activity by [the defendant] was the but-for cause of her claims"); *Myers v. Salad Kings, Inc.*, No. EDCV 08-1071-VAP (OPx), 2010 WL 11515311, at *2 (C.D. Cal. Oct. 1, 2010) ("The Court must determine whether, but for Defendant's contacts with California, Plaintiffs' claims would have arisen.").

Plaintiffs do not plausibly allege that its claim against Mr. Echeverri "arises out of" Mr. Echeverri's forum-related activities, much less that any such activities are the "but for" cause of Plaintiffs' Claims. The few conclusory allegations against Mr. Echeverri are not sufficient.

### Camilo Allegations

385. As shown in the accompanying Exhibit A, Camilo and a plurality of the defendants, the corresponding defendants for each song named therein, have released the songs entitled *El Mismo Aire*, *Favorito*, *Machu Picchu*, *Mareado*, *Millones*, *NoTe Vayas*, *Por Primera Vez*, *Rolex*, *Ropa Cara*, *Si Estoy Contigo*, and *Tutu*.

386. Each of *El Mismo Aire*, *Favorito*, *Machu Picchu*, *Mareado*, *Millones*, *No Te Vayas*, *Por Primera Vez*, *Rolex*, *Ropa Cara*, *Si Estoy Contigo*, and *Tutu* (collectively, the "Camilo Works") were separately released at different times subsequent to the 1989 release of *Fish Market*.

387. Each of the Camilo Works incorporates an unauthorized sample of the *Fish Market* recording and a verbatim copy of the *Fish Market* composition as the primary rhythm / drum section of each work.

388. A comparison of *Fish Market* and each of the Camilo Works establishes that each of the Camilo Works incorporates both qualitatively and quantitatively significant sections of the *Fish Market* recording and composition. The various defendants responsible for each of the identified works and the manner of copying are described in the accompanying Exhibit A.

Complaint ¶¶ 385-388.

No fair reading of the Complaint could lead to the conclusion that Mr. Echeverri has any relation with this forum or even with the Claims. Even assuming Plaintiffs intended to allege that because Mr. Echeverri's creation or selling of music and products containing the Sound in this District, which Mr. Echeverri denies, are not a regular or systematic contact by Mr. Echeverri. *See Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state.")

Moreover, Plaintiffs have not alleged any facts suggesting that Mr. Echeverri exercised control over how the Infringing Works are sold or marketed, much less contacts that denote availment of the forum. "Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State,"

1  *Walden v. Fiore*, 571 U.S. 277, 286 (2014), and the corporate Defendants' alleged

2  contacts with a district cannot be imputed to the individual Defendants. *See*

3  *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 588 (E.D. Pa. 2015).

4         **iii.   Because the first two prongs are not satisfied, it would be unfair**
           **and unreasonable for this court to exert jurisdiction over Mr.**
5          **Echeverri.**

6         Since Plaintiffs did not allege any actions whatsoever in California, they

7  should not be permitted to strategically drag Mr. Echeverri to California and hamper

8  Mr. Echeverri's ability to defend. In short, the exercise of personal jurisdiction

9  would be unreasonable. *See Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102

10  (1987) (finding that the exercise of jurisdiction by a Californian court was

11  unreasonable where plaintiff rested on the assertion that the defendant knew its

12  products would be sold in the state but did not provide the necessary minimum

13  contacts for the state to exercise personal jurisdiction over petitioner).

14        Without any facts proving Mr. Echeverri's minimum contacts with the state

15  of California, it would be unreasonable for this Court to exercise its jurisdiction.

16  Thus, the Claims against Mr. Echeverri should be dismissed.

17        **3.  Venue is Improper Under 28 U.S.C. sec. 1404.**

18        The venue is proper "in the district in which the defendant or his agent resides

19  or may be found." 28 U.S.C. § 1400(a). "The Ninth Circuit interprets this statutory

20

provision to allow venue 'in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state.'" *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 288 (9th Cir. 1997), rev'd on other grounds sub nom. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

If the Court determines that the venue is improper, it may dismiss the case or transfer it to any district where it could have been brought properly if it is in the interest of justice. 28 U.S.C. § 1406(a); *Dist. No. 1, Pac. Coast Dist. v. Alaska*, 682 F.2d 797, 799 (9th Cir. 1982).

Given the Court's lack of personal jurisdiction over Mr. Echeverri, the Central District of California is an improper venue for Mr. Echeverri. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 959 (N.D. Cal. 2015) (explaining that the analysis on a motion to dismiss for improper venue is the same as the analysis on a motion to dismiss for lack of personal jurisdiction); *Premier Fabrics, Inc. v. Walters and Mason Retail, Inc.*, 2018 WL 6164766, at * 8 (C.D. Cal. 2018) (concluding that the venue is not proper because the court lacks personal jurisdiction over the defendant).

This Court lacks jurisdiction over Mr. Echeverri. Thus, the venue is improper, and the Claims against Mr. Echeverri must be dismissed.

1    Mr. Echeverri alternatively requests that the Court transfer the case to the

2  Southern District of Florida on convenience grounds under 28 U.S.C. section 1404.

3  To obtain a convenience transfer under section 1404, a defendant must "make a

4  strong showing of inconvenience to warrant upsetting the plaintiff's choice of

5  forum." *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th

6  Cir. 1986). In considering whether to transfer a case, courts examine both private

7  and public factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel the attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000).

13    The first factor is neutral, given that no agreements exist between the parties

14  in this case. The second factor is also neutral because the federal court in the

15  Southern District of Florida undoubtedly has enough familiarity with federal

16  copyright law to oversee this action effectively. Regarding the third factor, a

17  plaintiff's choice of venue is given little deference where, as here, the "center of the

18  accused activity" is outside the current forum. *See Sorensen v. Daimler Chrysler AG*,

19  2003 U.S. Dist. LEXIS 6294, at *11-12 (N.D. Cal. April 11, 2003) (cleaned up). The

20

"center of the accused activity" is in the district in which the defendant "is alleged to have developed . . . marketed, and made sales decisions concerning the accused product." *Sorensen*, 2003 U.S. Dist. LEXIS 6294, at *12. The epicenter of the alleged conduct of Mr. Echeverri, if any, is centered in Miami, Florida, and Medellín, Colombia, where Mr. Echeverri and many co-defendants lumped together, conduct business; where transactions were negotiated; and where the relevant evidence and witnesses are located. Further, taking into consideration that Plaintiffs are from Jamaica and not residents of California, the Southern District of Florida could be the forum to see this case as to the Claims against Mr. Echeverri since the change of venue wouldn't harm Plaintiffs because they are not residents, nor the action took place in California. Regarding the fourth and fifth factors, there are no allegations nor conduct that Defendants, nor Mr. Echeverri in his individual capacity, directly conducted any activity to California considering the alleged Claims: copyright violation and contributory liability.

As for the sixth through eighth factors—those about the cost of litigation, access to evidence, and ability to compel witnesses to appear—it appears that litigating in the Southern District of Florida would be more economical and convenient for the parties, as the witnesses (producers, singers, songwriters, mixers, recording director, recording staff, and music industry personnel) of Mr. Echeverri

1   are citizens of Colombia residing in Miami, Florida. Also, several of the Infringing

2   Works related to Mr. Echeverri were recorded **in** Miami, Florida. Thus, the Southern

3   District of Florida is better suited to hear this case.

4   ## IV.   FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, FRCP RULE 12(B)(6)

5

6   Even assuming this Court finds that it has jurisdiction over Mr. Echeverri and

7   that the venue in the Central District of California is proper, the Claims against Mr.

8   Echeverri should be dismissed because the Plaintiffs fail to adequately plead

9   sufficient facts to show that they have a plausible entitlement to relief against Mr.

10  Echeverri.

11  **A. Standard of Review**

12  Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for

13  "failure to state a claim upon which relief can be granted." "To survive a motion to

14  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

15  a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

16  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

17  The question presented by a motion to dismiss is not whether the plaintiff will

18  ultimately prevail but whether the plaintiff **has alleged sufficient factual grounds**

19  **to support a plausible claim to relief**, thereby entitling the plaintiff to offer

20  evidence supporting its claim. *Id*. A plaintiff must provide more than "labels and

conclusions" or "a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555 (cleaned up).

**B. The Complaint fails to meet even the most generous of pleading standards.**

**1. By grouping all defendants into interchangeable "Defendants," the Complaint fails to state a claim against Mr. Echeverri for which relief can be granted, as such, it must be dismissed.**

Throughout the Complaint, Plaintiffs continuously fail to place the Court, and Mr. Echeverri, in a position to ascertain which, if any, illicit conduct Mr. Echeverri allegedly engaged in. The Complaint's allegations group the hundreds of defendants without specifying how each defendant plays a different role in the infringement scheme.

Even taking the Complaint at face value, Plaintiffs failed to plead any facts regarding Mr. Echeverri's contribution to the alleged illegal activity. On the contrary, it seems that Plaintiffs tried to accumulate the entire reggaeton music industry in the Complaint just to accumulate them into one lawsuit without specifying how each of the Defendants responds to Plaintiffs. Accordingly, Mr. Echeverri's participation in the Complaint is limited to the context of his profession and involvement in the reggaeton music industry.

This type of litigation is known as the "shotgun" style of pleading and does not meet the requirements established by Iqbal, Twombly, or Rule 8 of the FRCP.

"Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Ho v. Nationstar Mortg., LLC*, No. 219CV10532ODWJPRX, 2020 WL 7714700, at *4 (C.D. Cal. Dec. 29, 2020) (cleaned up). Plaintiffs must give the defendants a clear statement about what the defendants allegedly did wrong. *See Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (dismissing the complaint because the plaintiff grouped the defendants in an omnibus term "Defendants" without identifying what the particular defendants specifically did wrong). Many courts have recognized that allowing shotgun pleadings would have many negative consequences. *See Mason v. County of Orange*, 251 F.R.D. 562, 563–64 (C.D.Cal.2008) (quoting *Anderson v. District Board of Trustees*, 77 F.3d 364, 366–67 (11th Cir.1996)) ("[E]xperience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.")

    Here, Plaintiffs group every defendant in an omnibus term "Defendants" without identifying what particular conduct the Defendants specifically did wrong. Additionally, Plaintiffs recite a collection of general allegations toward the

beginning of the Complaint, and then each count incorporates every antecedent allegation and Exhibit A by reference. This is also a shotgun pleading that deprives Mr. Echeverri and every one of the Defendants of knowing precisely what they are accused of doing wrong.

In sum, a plaintiff must do more than just group several defendants in an allegation where it is evident that different actors must have taken distinct actions/omissions to make a claim feasible. Plaintiffs assert "[t]he various defendants responsible for each of the identified works and the manner of copying are described in the accompanying Exhibit A." Complaint ¶ 388. The term "defendants" does not plausibly identify or distinguish which defendant is responsible for what. Incorporating by reference Exhibit A does not magically corrects the deficiency of the pleadings. Exhibit A lists thousands of creative works without explaining how they infringe on Fish Market or even describing the role the defendants listed in the third column play. For all that matters, any person could have been listed in the third column since no explanation is given for how the person is involved in the alleged infringement.

Therefore, considering the corresponding legal framework, an evaluation of the allegations in the Complaint, or the lack thereof, indicates that the Claims against Mr. Echeverri must be dismissed.

**2. Plaintiffs have not, and cannot, allege sufficient facts to support a copyright infringement claim against Mr. Echeverri.**

To maintain a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 361 (1991). In connection to the second prong, the copying may be established by demonstrating (a) "that the [defendant] had access to plaintiff's copyrighted work" and (b) "that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). Because in a motion to dismiss, the Court must take the allegations contained in a complaint as true, Mr. Echeverri will not contest, for purposes of this motion, Plaintiffs' copyright to Fish Market. Thus, we refer to the second prong.

**i.   The Complaint should be dismissed because it does not plausibly allege actual copying.**

**a. Plaintiffs did not plausibly allege access.**

"To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view [or listen to] the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). As a general matter, "circumstantial evidence that meets this standard comes in two forms: (1) evidence of a chain of events linking the plaintiff's work

with defendants' access to that work, and (2) evidence that a plaintiff's work has been widely disseminated." *Shaheed-Edwards v. Syco Entm't, Inc.*, No. 17-cv-6579 (SJO), 2017 WL 6403091, at *2 (C.D. Cal. Dec. 14, 2017) (cleaned up); *see also Batts v. Adams*, No. 10-cv-8123 (JFW), 2011 WL 13217923, at *2 (C.D. Cal. Feb. 8, 2011).

Here, Plaintiffs fail to allege specific facts to link Mr. Echeverri to having access to Fish Market. No factual allegations show any linkage of Mr. Echeverri to Fish Market. Instead, the Complaint includes a single conclusory allegation of access directed to all Defendants regarding *Dem Bow's* work: "*Dem Bow* was a massive hit, and a critical and commercial success, in the international reggae dancehall scene." Complaint ¶ 181. Plaintiffs' only allegation of access revolves around the work of *Dem Bow* and not Fish Market. Put simply, Plaintiffs allege access to Fish Market **through another work** that allegedly captured the core basis of Fish Market.[6] *Id.* ¶¶ 181-188. Plaintiffs are not the authors of the sound recording of *Dem*

---

[6] Plaintiffs alleged copyright infringement to Fish Market through a chain of connections between several creative works that have no relation to the original work and no comparison between them is established. Thus, since Plaintiffs fail to allege which **original elements** from Fish Market the derivative works (e.g. *Dem Bow*, Pounder Riddim, and Pounder Dub Mix II) copied, a direct copyright infringement claim for Fish Market must be dismissed. *Johnson v. Gordon*, 409 F.3d 12, 19 (1st Cir. 2005) (a "plaintiff cannot, as a matter of law, stretch the carapace of [its] ownership [or one registered copyrighted work] to garner copyright protection for elements unique to [an unregistered derivative] long version" of that work).

*Bow*. Complaint ¶ 189. Thus, Plaintiffs **lack standing to allege any copyright infringement to *Dem Bow* other than its lyrics**. Any allegation of copyright infringement on the Sound within Fish Market through *Dem Bow* is baseless and careless since Plaintiffs can only claim the right to the lyrics. Plaintiffs needed to assert that Mr. Echeverri had access to Fish Market to allege access. There was none.

Even if sustaining *arguendo* that Plaintiffs did plausibly allege access through *Dem Bow*, a mere "massive hit" is not enough to sustain "access" as a matter of law for a composition released in the 1990s. Courts have even rejected access allegations on the sole basis of "wide distribution" or "massive hit" allegations. *See Shaheed-Edwards*, No. 17-cv-6579  at *3 (granting motion to dismiss and finding allegation that song had been "uploaded to YouTube … does not imply it was disseminated widely") (cleaned up); *Batts v. Adams*, No. 10-cv-8123 (JFW), 2011 WL 13217923, at *4 (C.D. Cal. Feb. 8, 2011) (the fact that song had been uploaded to iTunes, YouTube, and Amazon.com did not suffice to demonstrate the "widespread" dissemination required to show access); *Tate-Robertson v. Walmart, Inc.*, No. 19-cv-27 (JGB), 2019 WL 6448960, at *4 (C.D. Cal. May 16, 2019) ("Simply because a work is available for sale does not mean that the work has been 'widely

1    disseminated'"). The cases above demonstrate how an insufficient allegation cannot

2    circumvent the "access" element, even in the digital era.[7]

3        The Complaint's bare assertion—wholly bereft of any corresponding factual

4    detail showing Mr. Echeverri accessed Fish Market (which he did not)—does not

5    plausibly plead access.

6        **b. The Complaint should be dismissed because it does not**
       **plausibly allege that the Fish Market is substantially similar to**
7       **any work related to Mr. Echeverri.**

8        The Ninth Circuit employs a two-part test to determine if works are

9    substantially similar: an intrinsic test and an extrinsic test. *Cavalier v. Random*

10   *House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "The 'intrinsic test' is a subjective

11   comparison that focuses on 'whether the ordinary, reasonable audience' would find

12   the works substantially similar in the 'total concept and feel of the works.'" *Id.*

13   (cleaned up).

14       The court, however, must apply an extrinsic test to determine substantial

15   similarity as a matter of law. *Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1133

16   (C.D. Cal. 2007). Because Mr. Echeverri seeks dismissal based on the Complaint's

17

18

19   _____
     [7] A careful search on the music platforms reveals that Fish Market has yet to be
20   widely disseminated. For instance, Fish Market has 21,184 plays on Spotify and
     approximately 1 million plays in all YouTube videos.

failure to allege plausible facts showing unlawful appropriation, this Motion is predicated solely on the "extrinsic test."

To satisfy the extrinsic test, the plaintiff must first identify the sources of the alleged similarity **between the two-subject works**. *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). When analyzing musical compositions, a "variety of compositional elements may be considered, including melody, harmony, rhythm, timbre, structure, instrumentation, meter, tempo, and lyrics." *Batts v. Adams*, No. CV 10-8-8123-JWF (RZx), 2011 WL 13217923, at *5 (C.D. Cal. Feb. 8, 2011) (citing *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004)). Then, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright." *Apple Comput., Inc.*, 35 F.3d at 1443. "[A] finding of substantial similarity between two works can't be based on similarities in **unprotectable elements**." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 916 (9th Cir. 2010), as amended on denial of reh'g (Oct. 21, 2010) (emphasis added).

Here, the Complaint does not, and could not, even allege similarity between Fish Market and any of the Infringing Works related to Mr. Echeverri. There are no allegations regarding similarities between Fish Market and any work associated with Mr. Echeverri because the Complaint falls far shy of mentioning how Mr. Echeverri

contributed to such similarities or if the similarities are attributed to him. Moreover, Plaintiffs could not plausibly, and in good faith, allege similarity because the only part of Fish Market alleged to have been copied, the Sound, is common to the reggaeton music genre and is not remotely unique or complex.

Accordingly, Plaintiffs have not pleaded similarity and cannot do so if they were to seek leave to replead since the Sound at issue shares only commonplace and unprotectable elements. Hence, not original.

**3. Even if this Court were to find that Plaintiffs alleged a plausible copyright infringement claim, the elements that Plaintiffs alleged were copied in Fish Market are common and unprotectable elements of an entire music genre and thus not subject to protection.**

"The genre known today as reggaeton is the product of multiple and overlapping musical circuits that do not comply with geographic, national, or language boundaries, nor with ethnic or pan-ethnic expectations. And yet, reggaeton's history is most often explained in linear fashion, abiding by and affirming these very boundaries." Raquel Z. Rivera et al., *Introduction*, *in* REGGAETON, 1–16, 10 (2009) [hereinafter, Introduction in Reggaeton].

There are many critics and experts of the reggaeton genre that situates its origin in either one of two Spanish-speaking countries: in the 1980s in Panama with the *reggae en español* or in the 1990s in Puerto Rico with the *underground* music.

*Id.* at 11. "One thing is true, reggaeton consisted of 'versioning dancehall reggae coming out of Jamaica in the 1980s and 1990s". *Id.*

The Jamaican reggae spread in the 1960s and 1970s through the diaspora who settled in Panama. Jorge L. Giovannetti, *Popular Music and Culture in Puerto Rico: Jamaican and Rap Music as Cross-Cultural Symbols, in* MUSICAL MIGRATIONS: TRANSNATIONALISM AND CULTURAL HYBRIDITY IN LATIN/O AMERICA 81, 81 (Frances R. Aparicio & Cándida F. Jáquez eds., 2003). By the 1980s, the Afro-Panamanian artists refashioned Jamaica's dancehall hits for Latino audiences into *reggae en español*. Wayne Marshall, The rise of reggaeton: From Daddy Yankee to Tego Calderón and beyond, THE PHOENIX (Jan. 19, 2006). Parallelly, in Puerto Rico, the Latino migration between New York and Puerto Rico created pathways for rap groups to develop the *underground* style of music.[8]

---

[8] Note that:

> This pathway eventually led to the development of "Underground" rap music. In Puerto Rico, Underground referred to both the genre's lyrical content and market position. Underground was produced, marketed, and circulated through informal and decentralized networks via cassette. It was produced in *marquesinas* --home recording studios--at a low cost. The *marquesinas* were often located in *caseríos*--public housing projects--throughout Puerto Rico's urban centers. Underground spoke directly to the social conditions prevalent in the *caseríos*: high unemployment, failing schools, government corruption, and widespread drug violence. The lyrical content and style of Underground later merged with the sound of *Reggae en Español*. This new musical hybrid would eventually become Reggaeton, rising in

The *reggae en español*, *underground*, and reggaeton are best described as trans-Caribbean genres whose history and aesthetics do not abide by nation, person, and language as chief organizing principles. *See* Introduction in Reggaeton. Note that, notwithstanding the presence and influence of the Jamaican *dancehall* of the 1960s-1990s, "reggaeton is neither hip-hop nor dancehall nor Latin nor tropical in the traditional sense, **yet it draws from all of these (and forges imagined connections with them) in projecting a distinctive, resonant sound**." *Id*. at 8 (emphasis added).

The evolution of the reggaeton genre, for which many –if not all– Defendants fall in, is a result of the social, economic, and cultural developments of the poor, the working class, and the immigrants in Panama, Jamaica, Puerto Rico, and New York. *See* Wayne Marshall, *From Música Negra to Reggaeton Latino, The Cultural Politics of Nation, Migration, and Commercialization*, in REGGAETON, 19-75 (Raquel Z. Rivera et al. eds., 2009) [hereinafter Música Negra].

To attribute a sound that can be traced back from the Jamaican *dancehall* of the **1960s** –well before Plaintiffs' Fish Market was released– and the Panamanian

popularity throughout Latin America and crossing over socio-economic barriers to reach all sectors of Latin American society. Melinda Sommers Molina, *Calle 13: Reggaeton, Politics, And Protest*, 46 Wash. U. J.L. & Pol'y 117, 125-126 (2014).

style of *reggae en español* and that is now the core of a whole genre is frivolous, ludicrous, and anti-competitive.

Even if taking as true the fact that the Sound was Plaintiffs' creation, which Mr. Echeverri rejects, the Sound is so common that it has developed into a **building block** for the reggaeton genre. *See* Música Negra, supra, at 40.

It is a well-established copyright infringement defense that a copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another, this is known a *scènes à faire*. *See* 2 Patry on Copyright § 4:25.

Considering the reggaeton genre's evolution and progression, the Sound constitutes a common building block. What better evidence than this instant lawsuit? Plaintiffs sued hundreds of artists from the reggaeton and rap genre, many of which vary wildly in how they sound (Mr. Echeverri, for example, sounds nothing like the music of other codefendants, such as Pitbull, Shakira, or even Daddy Yankee). If the Sound was not that common, how come hundreds of artists have used, and continue to use, the Sound? Plaintiffs' contribution to the genre, if any, cannot be highlighted by the invention of such rhythm.[9] *See McIntyre v. Double-A Music Corp.*, 166 F.

---

[9] Note that when evaluating a *scènes à faire* defense, the Court must analyze the alleged infringement within the reggaeton genre and not the entire music industry

Supp. 681, 683 (S.D. Cal. 1958) (A "contribution" of "several bars of harmony" or

the "addition" of "harmonic embellishments" are "technical improvisations which

are common in the vocabulary of music . . . are de minimis contributions and do not

qualify for copyright protection."); *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d

Cir. 1988) (The court must be "mindful of the limited number of notes and chords

available to composers and the resulting fact that common themes frequently

reappear in various compositions, especially in popular music. . . . Thus, the striking

similarity between pieces of popular music must extend beyond themes that could

have been derived from a common source or themes that are so trite as to be likely

to reappear in many compositions."); *Selle v. Gibb*, 741 F.2d 896, 905 (7th Cir. 1984)

("[I]n a field such as that of popular music . . . all songs are relatively short and tend

to build on or repeat a basic theme."); *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274,

282 (S.D.N.Y. 1991) (finding a certain harmonic progression unprotectable because

it appears in many songs). Thus, Plaintiffs cannot claim ownership of such Sound.

Further, Plaintiffs cannot demonstrate that the similarity in sound, or even the

copying of the Sound, is a result of direct copying from Fish Market. As mentioned,

---

(with dozens of music genres). *See Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir.
2004) (a contested element from a "hip hop" song cannot be considered as *scènes à
faire* in a country or folk song. That element may be unprotectable because of some
other doctrine, such as fair use, but it is not *scènes à faire* within its genre). Thus,
this Court must analyze *scénes á faire* within the context of the reggaeton genre.

reggaeton is highly influenced by the Jamaican *dancehall* of the 1980s and the New York rap. Thus, Mr. Echeverri alleged infringement, or lack thereof, may have come from multiple other artists of the time who were part of the *dancehall* and rap genre. There is no infringement when the similarities between two works are traceable to a common source, such as a pre-existing musical work or genre. *See Walker v. Time Life Films, Inc.*, 615 F.Supp. 430, 435 (S.D.N.Y. 1985). The Sound used in reggaeton may have come from a different source than by Plaintiffs. Thus, there is no such base for an infringement argument. "Many if not most of the elements that appear in popular music are not individually protectable." *Gray v. Perry*, No. 15-cv-5642 (CAS), 2020 WL 1275221, at *4 (C.D. Cal. Mar. 16, 2020), aff'd, 28 F.4th 87 (9th Cir. 2022) (citing 1 *Nimmer on Copyright* § 2.05 (2019)). Consequently, "courts in musical copyright cases have a significant obligation … to encourage others to build freely upon the ideas and information conveyed by a work, and at the same time motivate creative activity, by carefully limiting the scope of copyright protection to truly original expression only." *Id*. (cleaned up).

### 4. Plaintiffs fail to state a claim for contributory infringement against Mr. Echeverri.

To state a claim for contributory copyright infringement, a plaintiff must allege that a defendant "(1) has knowledge of a third party's infringing activity, and (2) induces, causes or materially contributes to the infringing conduct." *Perfect 10,*

*Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (cleaned up). "To establish liability, the first prong requires **more than a generalized knowledge** by [a defendant] of the possibility of infringement" by a third party. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (emphasis added). Instead, "actual knowledge of specific acts of [third party] infringement is required for contributory infringement liability." *Id.* (cleaned up).

A defendant who has "reason to know" also has the requisite knowledge for contributory copyright infringement. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). However, the defendant **must** have "reason to know" of specific acts of infringement. *Id.* Accordingly, Plaintiffs must allege that Mr. Echeverri knew or had reason to know of specific acts of infringement. Moreover, mere "conclusory allegations that [Mr. Echeverri] had the required knowledge of infringement are plainly insufficient." *Luvdarts, LLC*, 710 F.3d at 1071. Rather, Plaintiffs must allege facts to support the conclusion that Mr. Echeverri had "knowledge of specific acts of [co-defendants] infringement." *Luvdarts, LLC*, 710 F.3d at 1071; accord *764 Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2015 WL 2412357, at *4 (N.D. Cal. May 20, 2015) (granting motion to dismiss contributory copyright infringement claims because "Plaintiffs do not allege any facts in support of the threadbare assertion that [Defendants] 'had knowledge of the infringing acts'"). *See*

*also YZ Productions, Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 763–64 (N.D. Cal. 2021).

Here, Plaintiffs claim that "Defendants, and each of them, collaborated with other artists to create the Infringing Works, and, in doing so, knowingly incorporated ma[t]erial elements from the compositions and sound recordings of Fish Market and Pounder and the composition of Dem Bow, with knowledge that they did not have the requisite consent." Complaint ⁋ 679. Plaintiffs further noted that they "are informed and believe" that the Defendants are vicariously liable for the infringement alleged, "because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct." *Id.* ⁋ 680. Nowhere in these allegations did Plaintiffs allege facts to support the conclusion that Mr. Echeverri knew specific acts of co-defendants. The allegations cited above are merely conclusory because Plaintiffs do "not allege any facts in support of the threadbare assertion that [Mr. Echeverri] 'had knowledge of the infringing acts.'" *Epikhin*, 2015 WL 2412357, at *4.

Here, Mr. Echeverri did not know of any of the co-defendants' infringement because, first and foremost, Mr. Echeverri did not know that such a copyright of the Sound existed. Further, Mr. Echeverri did not have "reason to know" of specific acts of infringement because the Sound Plaintiffs alleged as theirs is common to an

entire music genre. Thus, Mr. Echeverri had no reason to know that a common sound was monopolized.

Furthermore, Plaintiffs failed to address in what capacity Mr. Echeverri is contributory liable (either as producer, composer, mixer, recorder, singer, director, publisher, or any other capacity)—fatally dooming the Complaint.

But even if the Court accepts that conclusory statement as true (which it should not), it is still insufficient to allege contributory liability because Plaintiffs do not allege (because it is not true) that Mr. Echeverri provided access to any co-defendant to the Infringing Works. *See App. E.g., Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017) (once knowledge of direct infringement is established, a plaintiff seeking to show contributory infringement must establish either that the defendant materially contributed by "continu[ing] to provide access to infringing works" or induced the infringement by "promoting its use to infringe copyright").

## V.   CONCLUSION

This is a ludicrous complaint in plain sight. The fact that hundreds of defendants have to defend themselves from a frivolous lawsuit is beyond the basic principle of justice. The Sound is just as common to the reggaeton genre as the piano rhythms are for jazz or the guitar building blocks are for country music. Simply put,

1   this Court lacks personal jurisdiction over Mr. Echeverri given his lack of contacts

2   with the state of California. Assuming there was jurisdiction, the proper venue is not

3   California, but Florida, and as such, the case should be severed and transferred to

4   Florida.

5         But the Court need not transfer the case since the Claims are dead on arrival

6   given that they lack any plausible allegation or narrative against Mr. Echeverri. An

7   allegation through an exhibit like the one at hand is indefensible and fails any

8   possible pleading standard.

9         There is no concrete allegation of access, direct copying, substantial

10   similarity, or of any act that would constitute copyright infringement. Taking the

11   Complaint as a whole, the Court can readily see that the Plaintiffs' intend on

12   claiming ownership over an entire genre of music. Simply said, there is no way this

13   Complaint can survive, as drafted. Respectfully, Mr. Echeverri thus moves to

14   dismiss the Claims against him.

15         WHEREFORE, Defendant Mr. Echeverri respectfully prays for this Court to

16   dismiss with prejudice the Complaint, and award Mr. Echeverri a reasonable amount

17   of attorney fees and costs.

18         DATED: June 15th, 2023

19

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Respectfully submitted,

**FERRAIUOLI LLC**

By:/s/ Jean G Vidal-Font
JEAN G. VIDAL-FONT
State Bar No. 266475
jvidal@ferraiuoli.com
221 Ponce de León
5th Floor
San Juan, PR 00917
Telephone: 787-766-7000
Facsimile: 787-766-7001

**Attorney for Defendant Camilo Echeverri p/k/a Camilo**