Kenneth D. Freundlich (SBN 119806)
Michael J. Kaiser (SBN: 258717)
FREUNDLICH LAW
16133 Ventura Boulevard, Suite 645
Encino, CA 91436
P: (310) 275-5350
F: (310) 275-5351
E-Mail: ken@freundlichlaw.com
         mkaiser@freundlichlaw.com

Attorneys for Defendants RIMAS MUSIC, LLC
and BENITO ANTONIO MARTINEZ OCASIO
P/K/A BAD BUNNY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE., an individual, et al.<br><br>Plaintiffs,<br><br>v.<br><br>RODNEY SEBASTIAN CLARK DONALDS, an individual, et al.,<br><br>Defendants. | **CASE NO. 2:21-cv-02840-AB-AFM**<br><br>***Assigned To: Hon. Andre Birotte Jr.***<br><br>**BAD BUNNY AND RIMAS MUSIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**Hearing Date: September 22, 2023**<br>**Hearing Time: 10:00 a.m.**<br>**Courtroom: 7B**<br><br>**Declaration of Kenneth D. Freundlich, Esq., Notice of Manual Lodging, and [Proposed] Order Filed Concurrently Herewith** |

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

Please take notice that on September 22, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 7B of the Honorable Andre

Birotte Jr. of the United States District Court for the Central District of California, First Street U.S. Courthouse, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendants Rimas Music, LLC ("Rimas") and Benito Antonio Martinez Ocasio p/k/a Bad Bunny ("Bad Bunny") will, and hereby do, move the Court for an order pursuant to Fed. R. Civ. P. 12(b)(6)[1]:

1.  Dismissing Plaintiffs' operative Second Consolidated Amended Complaint (the "SCAC") as to Bad Bunny and Rimas with respect to the SCAC's claims that Bad Bunny and Rimas allegedly infringed the copyrights in Plaintiffs' purported musical compositional material.  The bases for such dismissal are that: (i)  Plaintiffs do not and cannot plausibly allege that any of the elements purportedly appropriated by Bad Bunny and Rimas (the "Subject Elements") are musical composition elements that are entitled to copyright protection; and/or (ii) the allegations in the SCAC, as well as excerpts from a book incorporated by reference therein, establish as a matter of law that the rhythm of Plaintiffs' alleged works (*i.e.,* the only compositionally relevant element of the Subject Elements) is unprotectable *scenes a faire*; and/or

2.  Dismissing Plaintiffs' SCAC in whole or in part due to various pleading defects.

Bad Bunny and Rimas pray that such dismissal be with prejudice and without leave to amend on the grounds of legal insufficiency and/or the otherwise futility in any further amendment.

This Motion is based upon the following Memorandum of Points and Authorities incorporated herein by reference, the Declaration of Kenneth D.

---

[1] Given the briefing schedule set forth in the Court's Case Management Order (Doc. No. 143), September 22, 2023 is the earliest open hearing date that works with all Defendants' counsel's schedules.  Declaration of Kenneth D. Freundlich, Esq. ¶2.

Freundlich, Esq. ("Freundlich Decl.") (and exhibits thereto) filed concurrently herewith, the Notice of Manual Lodging (and the audio files referenced thereby) concurrently filed herewith, any Reply Brief (including other papers filed in in further support of the Motion), the pleadings and papers filed in this action, and on such oral argument as may be presented at the hearing of this Motion.

On November 23, 2022, Bad Bunny and Rimas formally initiated the L.R. 7-3 meet-and-confer process via letter expressing Bad Bunny and Rimas' intent to bring the instant motion and specifying grounds for such motion.  *See* Freundlich Decl. ¶3. On November 30, 2022 and again on June 5, 2023, counsel for the parties telephonically/via Zoom met-and-conferred pursuant to L.R. 7-3.  *Id.*

Dated:  June 15, 2023

FREUNDLICH LAW

BY: /s/ Kenneth D. Freundlich
Kenneth D. Freundlich
Michael J. Kaiser
Attorneys for Defendants
RIMAS MUSIC, LLC and BENITO
ANTONIO MARTINEZ OCASIO P/K/A
BAD BUNNY

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES ........................................7

**I.**   INTRODUCTION ........................................................................................7

**II.**   BRIEF SUMMARY OF PLAINTIFFS' ALLEGATIONS ...........................9

**III.**   LEGAL STANDARDS ...............................................................................11

   A.   The Governing Substantive Standard of Substantial Similarity and Plaintiffs' Concomitant Burden as to the Dispositive Extrinsic Test Component Thereof.................................11

   B.   Under Controlling Ninth Circuit Precedent, Dismissing Plaintiffs' Musical Composition Infringement Claims at the Pleading Stage is Appropriate.................................................12

**IV.**   LEGAL ARGUMENT ................................................................................14

   A.   The Court Should Dismiss the SCAC's Claims as to any Copyright Infringement of Plaintiffs' Musical Compositional Material Because the Allegedly Appropriated Subject Elements Are Not Compositionally Relevant or Protectable ........................................................14

      1.   Plaintiffs' Musical Composition Infringement Claims Must Be Dismissed Because Plaintiffs Do Not (and Cannot) Plausibly Allege Infringement of Any Protectable Compositional Material ..................................15

      2.   Plaintiffs' Musical Composition Infringement Claims Also Fail Because Such Claims Rely Upon Unprotectable *Scenes a Faire* ......................................17

   B.   The SCAC is Also Subject to Dismissal in Whole or in Part Due to Certain Pleading Defects ..........................................20

      1.   Impermissible Shotgun Pleading ..............................20

      2.   Inadequate Pleading of Which Portions of Plaintiffs' Songs Have Purportedly Been Infringed ....................20

      3.   Inadequate Pleading of Secondary Liability............20

**V.**   CONCLUSION ..........................................................................................21

CERTIFICATE OF COMPLIANCE (L.R. 11-6.2) ..............................................22

**BAD BUNNY AND RIMAS MUSIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
SECOND CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*YZ Prods., Inc. v. Redbubble, Inc.*,
 545 F.Supp.3d 756 (N.D. Cal. 2021)...................................................20

*A&M Records v. Napster, Inc.*,
 239 F.3d 1004 (9th Cir. 2000) ............................................................21

*Batiste v. Najm*,
 28 F. Supp. 3d 595 (E.D. La. 2014) ................................................8, 16

*Campbell v. Walt Disney Co.*,
 718 F. Supp. 2d 1108 (N.D. Cal. 2010)...............................................20

*Christianson v. W. Pub. Co.*,
 149 F.2d 202 (9th Cir. 1945) ...............................................................13

*Erickson v. Blake*,
 839 F. Supp. 2d 1132 (D. Or. 2012)...............................................12, 13

*Gray v. Perry*,
 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020), *affirmed by Gray v.
 Hudson*, 28 F.4th 87 (9th Cir. 2022) ...........................................*passim*

*Henley v. DeVore*,
 733 F. Supp. 2d 1144 (C.D. Cal. 2010)................................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
 498 F. Supp. 3d 1296 (S.D. Cal. 2020) .................................................9

*Leadsinger, Inc. v. BMG Music Pub.*,
 512 F.3d 522 (9th Cir. 2008) ...............................................................15

*Masterson v. Walt Disney Co.*,
 821 F. App'x 779 (9th Cir. 2020) .........................................................12

*McDonald v. West*,
 138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir.
 2016)................................................................................................13, 17

*Morrill v. Stefani*,
 338 F. Supp. 3d 1051 (C.D. Cal. 2018)...........................................11, 17

**BAD BUNNY AND RIMAS MUSIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
SECOND CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*Newton v. Diamond*,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002) ................................................................ 16

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir.2014) ................................................................................. 8

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by*
   *Skidmore* ............................................................................................................. 12

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) (*en banc*) .................................... 11, 17, 18, 19

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) ............................................................................... 18

*Tartan Films USA v. U2 Home Entm't, Inc.*,
   2006 WL 8434411 (C.D. Cal. May 17, 2006) ..................................................... 21

*Weisbuch v. Cnty. of Los Angeles*,
   119 F.3d 778 (9th Cir. 1997) ............................................................................... 14

*YZ Prods., Inc. v. Redbubble, Inc.*,
   545 F.Supp.3d 756 (N.D. Cal. 2021) ................................................................... 20

**Other Authorities**

Fed. R. Civ. P. 8(a) ................................................................................................... 20

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 13, 20

L.R. 11-5.1 ............................................................................................................... 13

https://www.collinsdictionary.com/us/dictionary/english/rhythm-section ............. 16

https://www.merriam-webster.com/dictionary/drum .............................................. 16

https://www.merriam-webster.com/dictionary/reggaeton (last accessed
   on June 8, 2023) ................................................................................................... 7

3 *Patry on Copyright* § 9:86.50 .............................................................................. 12

Unlicensed Sampling Disputes, 83 UMKC L. Rev. 339, 339 (2014) ...................... 7

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    Plaintiffs'[2] operative Second Consolidated Amended Complaint ("SCAC")—

4   their third attempt at a consolidated complaint in this action—impermissibly seeks to

5   monopolize practically the entire reggaeton musical genre[3] for themselves by

6   claiming copyright ownership of certain legally irrelevant and/or unprotectable,

7   purported musical composition elements that Plaintiffs allege have been interpolated

8   and/or sampled by over 100 artists/songwriters in over 1,600 songs[4].

9    As to their musical composition infringement claims, Plaintiffs assert that

10   Steely and Clevie—through their songs "Fish Market" and "Dem Bow" (which itself

11   allegedly interpolates "Fish Market")—are the progenitors and owners of certain

12   allegedly appropriated elements thereof—namely rhythm (referred to herein as the

13   "Dem Bow Rhythm"), the choice of instruments to play the Dem Bow Rhythm, the

14

15

_____

16   [2] "Plaintiffs" refers individually and collectively to Plaintiffs Cleveland Constantine
Browne p/k/a Clevie; Anika Johnson, as personal representative and executor of the

17   Estate of Wycliff Johnson p/ka Steely; Steely & Clevie Productions Ltd; and Carl
Gibson, as personal representative and executor of the Estate of Ephraim Barrett.  In

18   this brief, the late Mr. Johnson (or his successors, as applicable) and Mr. Browne are

19   referred to by their duo p/k/a of "Steely and Clevie."

20   [3] The reggaeton genre can be simply defined as "popular music of Puerto Rican
origin that combines rap with Caribbean rhythms."  https://www.merriam-

21   webster.com/dictionary/reggaeton (last accessed on June 8, 2023).

22   [4] "'Sampling' involves the incorporation of copies of a portion of a sound recording
in a new work and must be distinguished from 'interpolation' or re-performance of a

23   musical [composition] passage from an earlier work."  Alexander Stewart, Been
Caught Stealing: A Musicologist's Perspective on Unlicensed Sampling Disputes, 83

24   UMKC L. Rev. 339, 339 (2014).  Although Plaintiffs appear to assert that
Defendants Rimas Music, LLC ("Rimas") and musical artist/songwriter Benito

25   Antonio Martinez Ocasio p/k/a Bad Bunny ("Bad Bunny") are liable for interpolating

26   musical composition elements into a number of songs, a small subset of which are
alleged to contain samples, Section IV.A. of this Motion is not directed at the

27   sampling claims, but rather is specifically directed at the lack of protectability as to
the musical composition elements that Plaintiffs assert have been interpolated.  That

28   being said, Rimas and Bad Bunny deny any sampling on their part.

**BAD BUNNY AND RIMAS MUSIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
SECOND CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

synthesized sound of parts of the Dem Bow Rhythm, and the "timbre" of the Dem Bow Rhythm[5].

Ostensibly recognizing the lack of compositional protectability of the Subject Elements, Plaintiffs erect a façade of protectability by including within the Subject Elements elements that are compositionally irrelevant under Ninth Circuit law, namely the choice of instruments, any synthesized sounds, and the timbre of the Dem Bow Rhythm.  Once that veneer is stripped off, all that remains is the Dem Bow Rhythm (including its allegedly "minimalistic pattern" of a bass line[6])[7].   However, the Dem Bow Rhythm is unprotectable as "courts have been consistent in finding rhythm to be unprotectable."  *Batiste v. Najm,* 28 F. Supp. 3d 595, 616 (E.D. La. 2014) (collecting authorities).  And, given that the unprotectable Dem Bow Rhythm is the single remaining compositional element within the Subject Elements, that lack of numerosity precludes any "selection and arrangement" protectability argument that Plaintiffs may try to conjure up[8].

Additionally, the Dem Bow Rhythm lacks protectability as a matter of law because as admitted by allegations in the SCAC and excerpts from a book, entitled *Reggaeton*, incorporated by reference therein[9], the Dem Bow Rhythm is a basic

---

[5] These elements are referred to herein individually and collectively (*i.e.,* in whole or in part) as the "Subject Elements."

[6] *See, e.g.,* SCAC ¶331.

[7] For purposes of this Motion only, Rimas and Bad Bunny accept as true the allegations in the SCAC that Steely and Clevie are the creators of the rhythm referred herein as the "Dem Bow Rhythm."  However, Rimas and Bad Bunny contend that the true facts are that such rhythm predates Steely and Clevie by many years.

[8] The result is the same even if *arguendo* the "minimalistic pattern" of a bass line were deemed a second, unprotectable element. *See* Section IV.A.1, *infra.*

[9] *See* SCAC ¶¶181, 181 n.3 (citing Wayne Marshall, *et al.*, *Reggaeton*, pp. 36-48, Duke University Press (2009)).  Copies of the cover of *Reggaeton* and the pages cited by the SCAC are attached to the Freundlich Decl. as Exh. A.  *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n. 10 (9th Cir.2014) ("Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to

**BAD BUNNY AND RIMAS MUSIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'**
**SECOND CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

building block of the reggaeton genre.  Thus, the Dem Bow Rhythm constitutes unprotectable *scenes a faire*.

Because Plaintiffs cannot meet their burden to identify (despite this being their third attempt at a consolidated complaint) any plausibly protectable compositional elements that have been appropriated and/or because Plaintiffs' only compositionally relevant element—the Dem Bow Rhythm—is unprotectable *scenes a faire* as a matter of law, the musical composition infringement claims in the SCAC should be dismissed with prejudice and without leave to amend[10].

In sum, the compositional irrelevance and unprotectability of the Subject Elements bar as a matter of law Plaintiffs' musical composition infringement claims against moving Defendants Bad Bunny and Rimas, and more broadly, Plaintiffs' transparent efforts to stake monopolistic control over the reggaeton genre.

## II.    BRIEF SUMMARY OF PLAINTIFFS' ALLEGATIONS

The SCAC alleges that in 1989, Steely and Clevie co-wrote an instrumental song, called "Fish Market," for which they allegedly own the copyrights in the musical composition and sound recording thereof. SCAC ¶179.  Plaintiffs further allege that the following Subject Elements are original to "Fish Market":

> *"Fish Market* [features] an original drum pattern that
> differentiates it from prior works. *Fish Market* features, *inter*
> *alia*, a programmed kick, snare, and hi-hat playing a one bar
> pattern; percussion instruments, including a tambourine playing
> through the entire bar, a synthesized 'tom' playing on beats one
> and three, and timbales that play a roll at the end of every

---

any of its contents."); *see also Khoja v. Orexigen Therapeutics, Inc.*, 498 F. Supp. 3d 1296, 1308 (S.D. Cal. 2020) (on motion to dismiss, proper for Court to consider a single reference if such reference "'is relatively lengthy'") (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018)).

[10] In Section IV.B., *infra*, Bad Bunny and Rimas also argue that the SCAC should be dismissed in whole or in part due to certain pleading deficiencies.

**BAD BUNNY AND RIMAS MUSIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'**
**SECOND CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

second bar and free improvisation over the pattern for the
duration of the song; and a synthesized Bb (b-flat) bass note on
beats one and three of each bar, which follows the
aforementioned synthesized 'tom' pattern."

SCAC ¶180.

Additionally, Plaintiffs bootstrap within the Subject Elements the bass line of
the rhythm (which is described by Plaintiffs as a "minimalistic pattern") and the
"timbre." *See, e.g.,* SCAC ¶¶329-369.

Plaintiffs allege that Steely and Clevie subsequently co-authored with Shabba
Ranks a song entitled, "Dem Bow," the copyright in which Plaintiffs claim to co-own
with Shabba Ranks.  SCAC ¶181.  Plaintiffs further allege that the "instrumental of
the song 'Dem Bow'…incorporates the 'Fish Market' composition" and "is iconic
and has been widely copied in songs in the reggaeton genre."  SCAC ¶¶181 n. 3
(citing *Reggaeton* book at pp. 36-48); 181-182.

Plaintiffs assert that over 1,600 songs—created by over 100 artist/songwriter
Defendants and purportedly exploited by additional music publisher and record label
Defendants—infringe Plaintiffs' copyrights by interpolating and/or sampling the
Subject Elements. *See generally* SCAC; SCAC, Exh. A.

Bad Bunny and Rimas are two of these Defendants and are alleged to have
interpolated, caused to be interpolated[11], and/or exploited the interpolations of the
Subject Elements in a total of 77 songs, of which 13 songs (*i.e.,* the recordings
thereof) are alleged to contain samples of the Subject Elements.  *See generally*
SCAC, Exh. A.

---

[11] It is worth noting, however, that the SCAC's claim for secondary liability is
nevertheless inadequately pled and thus subject to dismissal for this reason as well.
*See* Section IV.B.3., *infra.*

**BAD BUNNY AND RIMAS MUSIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
SECOND CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## III.   LEGAL STANDARDS

### A.   The Governing Substantive Standard of Substantial Similarity and Plaintiffs' Concomitant Burden as to the Dispositive Extrinsic Test Component Thereof

Under governing copyright law principles, the "hallmark of unlawful appropriation is that the works share **substantial** similarity." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (*en banc*) (emphasis in original)[12].

In order to demonstrate substantial similarity, a plaintiff must satisfy both the so-called "extrinsic test"—which is at issue by this Motion and "which presents questions of law to be resolved by the Court"—and the so-called "intrinsic test"— "which presents a question of fact" and is not at issue by this Motion. *Gray v. Perry*, 2020 WL 1275221, at *4 (C.D. Cal. Mar. 16, 2020) ("*Gray I*"), *affirmed by Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022) ("*Gray II*"). Notably, "[i]f plaintiffs cannot satisfy the extrinsic test, for any reason, the inquiry ends and defendants will be entitled to judgment as a matter of law." *Id.*; *see also Gray II*, 28 F.4th at 97 ("Crucially, …the extrinsic test is objective and is often resolved as a matter of law.").

Under the extrinsic test, Plaintiffs "must…demonstrate the copying of protected expression." *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1058 n. 8 (C.D. Cal. 2018); *see also Gray II*, 28 F.4th at 97 (extrinsic test "focuses on 'the protectible elements, standing alone, ... and disregard[s] the non-protectible elements'") (quoting *Skidmore*, 952 F.3d at 1070) (cleaned up).

Most germane for this Motion, "[i]t remains a copyright plaintiff's burden to establish which elements of its work are protected." *Gray I*, 2020 WL 1275221, at *5 n. 3. This is particularly so in musical copyright cases because "[m]usic, perhaps

---

[12] *See also id.* ("[A] copyright infringement [claim] requires [a plaintiff] to show that (1) he owns a valid copyright in [the subject works]; and (2) that [the defendant(s)] copied **protected expression** of the work[s].") (emphasis added).

1   more than any other work of art, 'borrows, and must necessarily borrow, and use

2   much which was well known and used before.'" *Id.* at *4 (quoting *Campbell v.*

3   *Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994)).  "For this reason, courts in

4   musical copyright cases have a significant obligation to strike a 'balance between the

5   First Amendment and the Copyright Act'—to 'encourage[ ] others to build freely

6   upon the ideas and information conveyed by a work,' and at the same time motivate

7   creative activity—by carefully limiting the scope of copyright protection to truly

8   original expression only." *Id.* (internal citation omitted) (quoting *Feist Publications,*

9   *Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 349-50 (1991)) (citing also *Bikram's Yoga*

10  *Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1037 (9th Cir. 2015)).

11      "If the only concrete similarities between the two works relate to elements not

12  protected by copyright…, then there can be no infringement." *Erickson v. Blake*, 839

13  F. Supp. 2d 1132, 1136 n. 4 (D. Or. 2012).

14  **B.**   **Under Controlling Ninth Circuit Precedent, Dismissing Plaintiffs'**

15          **Musical Composition Infringement Claims at the Pleading Stage is**

16          **Appropriate**

17      The Ninth Circuit has endorsed pleading-stage dismissals in copyright cases

18  where, as here, "[n]othing disclosed during discovery could alter the fact that the

19  allegedly infringing works are as a matter of law not substantially similar [to

20  plaintiffs' works.]" *Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1123 (9th Cir. 2018),

21  *overruled on other grounds by Skidmore*.  For example, dismissal is appropriate

22  where, as here, "as a matter of law the [alleged] similarities between the two works

23  are only in uncopyrightable material….," 3 *Patry on Copyright* § 9:86.50, and thus

24  Plaintiffs do not state a plausible claim for relief, *see Masterson v. Walt Disney Co.*,

25  821 F. App'x 779, 781 (9th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679

26

27

28

1 (2009)).[13]  And, Courts within and outside the Ninth Circuit have granted Rule

2 12(b)(6) motions to dismiss in music copyright cases.  *See, e.g., Erickson*, 839 F.

3 Supp. 2d at 1133-1140; *McDonald v. West*, 138 F. Supp. 3d 448 (S.D.N.Y. 2015),

4 *aff'd*, 669 F. App'x 59 (2d Cir. 2016).

5      In *Gray II*, the Ninth Circuit recently articulated that discovery (specifically,

6 expert testimony) is not required to determine lack of protectability as to musical

7 composition elements, but rather it can be determined with reference to "precedents

8 and other persuasive decisions."  *See Gray II*, 28 F.4th at 98 ("Even leaving aside

9 these admissions [by plaintiffs' expert], our precedents and other persuasive

10 decisions make clear that no element identified by plaintiffs…is individually

11 copyrightable.").  As demonstrated hereinbelow (Section IV.A.1), dismissal as to

12 Plaintiffs' musical composition infringement claims is warranted here because case

13 law makes clear that Plaintiffs have not and cannot plausibly allege appropriation of

14 copyrightable musical composition elements.

15      Dismissal at the pleading stage is also mandated here under Ninth Circuit case

16 law because—as discussed further hereinbelow (Section IV.A.2)—the allegations of

17 the SCAC and the *Reggaeton* excerpts incorporated by reference therein[14] "establish

18

19 [13] Although the lack of plausible substantial similarity here due to the non-

20 protectability of the Subject Elements can be determined by scrutinizing the SCAC against the backdrop of applicable case law, Bad Bunny and Rimas nevertheless are

21 lodging with the Court audio files of Plaintiffs' alleged songs ("Fish Market" and "Dem Bow") and the allegedly infringing songs (except for "Tusa" and "Un

22 Bellaqueo," which could not be located by the time of filing this Motion) for which Bad Bunny is alleged to be the "Primary Artist" and/or for which Rimas and/or Bad

23 Bunny are listed as "Involved Defendants."  *See* SCAC Exh. A and Notice of Manual

24 Lodging filed concurrently herewith (listing these songs, which are being lodged with the Court on a flash drive pursuant to L.R. 11-5.1 and which will be served on

25 counsel for the parties via e-mailed download link); *see also* Freundlich Decl. ¶5. Bad Bunny and Rimas are doing this out of an abundance of caution, just in case

26 *arguendo* it were a *per se* requirement for all Rule 12(b)(6) substantial similarity

27 determinations that the works be "before the court, capable of examination and comparison."  *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).

28 [14] *See* footnote 9, *supra*.

facts compelling a decision" that the only compositionally relevant element—the Dem Bow Rhythm—constitutes unprotectable *scenes a faire*. *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 (9th Cir. 1997) ("Whether the case can be dismissed on the pleadings depends on what the pleadings say. A plaintiff may plead herself out of court. If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts.") (citation, quotation marks, and brackets omitted); *see also* Fed. R. Civ. P. 1 (The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court…to secure the just, speedy, and inexpensive determination of every action and proceeding.").

## IV.   LEGAL ARGUMENT

### A.   The Court Should Dismiss the SCAC's Claims as to any Copyright Infringement of Plaintiffs' Musical Compositional Material Because the Allegedly Appropriated Subject Elements Are Not Compositionally Relevant or Protectable

Plaintiffs' claims that Bad Bunny and Rimas infringed the copyright in Plaintiffs' musical compositional material fail for at least two reasons, discussed briefly immediately below and in more detail in the subsections below.

***First***, attempting to cloak the compositionally unprotectable nature of the Subject Elements, Plaintiffs include within the Subject Elements multiple performance and/or recording elements (*i.e.,* choice of instrument used to play certain notes, synthesized sounds, and timbre) that under controlling Ninth Circuit authority are completely irrelevant when analyzing the protectability of musical compositional material.  Once the Subject Elements are defrocked of these compositionally irrelevant elements, what remains is rhythm (*i.e.,* the Dem Bow Rhythm) (including the purported bass line thereof consisting of "a minimalistic

pattern").  Courts within and outside the Ninth Circuit have found the element of rhythm to be a non-copyrightable element.[15]

*Second*, even if *arguendo* rhythm were otherwise potentially protectable, the Dem Bow Rhythm (*i.e.,* the only compositionally relevant element of the Subject Elements) is unprotectable *scenes a faire* as admitted by Plaintiffs' own pleadings. Plaintiffs have sued over 100 artists/songs for over 1,600 songs that allegedly contain the Dem Bow Rhythm.  The broad metes and bounds of this lawsuit, combined with admissions made by the SCAC's allegations and the *Reggaeton* book excerpts incorporated by reference therein, demonstrate that the Dem Bow Rhythm is a genre-defining building block of the reggaeton genre—*i.e.,* unprotectable *scenes a faire*.

            1.    Plaintiffs' Musical Composition Infringement Claims Must Be Dismissed Because Plaintiffs Do Not (and Cannot) Plausibly Allege Infringement of Any Protectable Compositional Material

Unable to identify any musical composition elements among the Subject Elements potentially protectable by copyright law —such as melody or lyrics[16]—Plaintiffs attempt in vain to meet their pleading burden by, in a smoke and mirrors approach, pointing to elements within the Subject Elements that are neither considered compositional elements nor are protected under the applicable case law.

Reflecting the paucity of compositionally protectable elements here, Plaintiffs' enumeration of the Subject Elements is replete with "choice[s] of particular instrument[s]" to play various portion of the rhythm—such as "a programmed kick, snare, and hi-hat playing a one bar pattern," "percussion instruments, including a

---

[15] And, even assuming *arguendo* a "minimalistic pattern" of a bass line constituted its own additional element, that too is an unprotectable element according to case law.  With one or *arguendo* maybe two unprotectable compositional elements in play, there is as a matter of law a lack of numerosity of those elements and thus there cannot be any "selection and arrangement" protectability.

[16] *See, e.g., Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 527 (9th Cir. 2008) (infringement of lyrics); *Henley v. DeVore*, 733 F. Supp. 2d 1144, 1163 (C.D. Cal. 2010) (infringement of melody and lyrics).

1  tambourine playing through the entire bar," etc.  SCAC ¶180.  Under governing

2  Ninth Circuit law, such instrumental "choices" are wholly irrelevant as to the

3  copyright in a musical composition and thus are not protectable elements thereof.

4  *See Gray II*, 28 F.4th at 99 ("[T]he choice of a particular instrument to play a tune

5  relates to the performance or recording of a work" and not to the musical

6  composition underlying such performance or recording.) (citing, *inter alia*, *Newton v.*

7  *Diamond*, 204 F. Supp. 2d 1244, 1258 (C.D. Cal. 2002)), *aff'd*, 388 F.3d 1189 (9th

8  Cir. 2004) (distinguishing between "elements protected by [the plaintiff's] copyright

9  over the musical composition" at issue and "those attributable to his performance of

10  the piece or the sound recording")).

11      Likewise, the use of synthesized sounds is similarly compositionally

12  irrelevant.  *See Gray II*, 28 F.4th at 99 ("But a copyright to a musical work does not

13  give one the right to assert ownership over the sound of a synthesizer any more than

14  the sound of a trombone or a banjo.").   So is "timbre."  *See id.* (noting that "timbre" is

15  a way of describing a sound's quality" and is thus compositionally irrelevant).

16      Once those compositionally irrelevant elements of the Subject Elements are

17  filtered out, all that remains is the Dem Bow Rhythm resulting from the drum (*i.e.,*

18  the "drum pattern") and bass (*i.e.,* the "minimalistic pattern" bass line).[17]  *See, e.g.,*

19  SCAC ¶¶180, 329-369.  However, "courts have been consistent in finding rhythm to

20  be unprotectable."  *Batiste v. Najm,* 28 F. Supp. 3d 595, 616 (E.D. La. 2014)

21  (collecting authorities); *accord Gray I*, 2020 WL 1275221, at *7 (citing, *inter alia*,

22  *Najm* and holding that an "evenly-syncopated rhythm…is…not a protectable

23  element").  While Plaintiffs might try to argue that "bass line" is an additional

24  element—even though it is plainly part of unprotectable rhythm—that would be of

25  _____

26  [17] *See, e.g.,* https://www.merriam-webster.com/dictionary/drum (defining
   "drumming" as "to throb or sound rhythmically") (last accessed on June 6, 2023);

27  https://www.collinsdictionary.com/us/dictionary/english/rhythm-section (defining
   "rhythm section" as "usually consist[ing] of bass and drums) (last accessed on June

28  6, 2023).

no help to them since a bass line consisting of a "minimalistic pattern" is unprotectable in any event.  *See McDonald*, 138 F. Supp. 3d at 458 ("The fourth allegation cannot be the basis for substantial similarity because musical compositions without a strong bass line are common. Plaintiff cannot own the absence of bass."); *see also Gray II*, 28 F.4th at 99 (abstract similarities not "legally cognizable").

Finally, without any protectable, compositionally relevant elements within the Subject Elements, Plaintiffs will undoubtedly assert protectability based upon a "selection and arrangement" theory.  *See Morrill*, 338 F. Supp. 3d at 1061 ("But 'a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'") (quoting *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003)).  Plaintiffs' efforts, however, will be fruitless.  Here, whether Plaintiffs are deemed to have identified one or two compositionally relevant non-protectable elements, such lack of numerosity is fatal to Plaintiffs' expected "selection and arrangement" argument.  *See, e.g., id.* (finding three non-protectable musical composition elements to lack requisite numerosity for protectable "selection and arrangement") (citing *Satava*, 323 F.3d at 811 (holding similarity of six different elements "lacks the quantum of originality needed to merit copyright protection")).

2.     Plaintiffs' Musical Composition Infringement Claims Also Fail Because Such Claims Rely Upon Unprotectable *Scenes a Faire*

Plaintiffs' lawsuit—which seeks musical composition copyright protection for the Dem Bow Rhythm, which is allegedly found in over 1,600 purportedly infringing songs (*see generally* SCAC and Exh. A thereto)—runs afoul of a cardinal principle that copyright protection does not extend to "'commonplace elements that are firmly rooted in the genre's tradition.'" *Skidmore*, 952 F.3d at 1069 (quoting *Williams v. Gaye*, 895 F.3d 1106, 1140-41 (9th Cir. 2018) (Nguyen, J., dissenting)). "Under the *scenes a faire* doctrine, when certain commonplace expressions are indispensable

1  and naturally associated with the treatment of a given idea, those expressions are

2  treated like ideas and therefore not protected by copyright." *Swirsky v. Carey*, 376

3  F.3d 841, 850 (9th Cir. 2004).

4       Here, the Dem Bow Rhythm's status as *scenes a faire* is established by the

5  allegations of the SCAC and the *Reggaeton* book excerpts incorporated by reference

6  therein.  With the following allegations from the SCAC, Plaintiffs have expressly

7  pled themselves out of Court vis-à-vis their compositional infringement claims[18]:

8       (1)  Suing over 100 artists/songwriters (as well as their alleged publishers

9            and record labels) for allegedly interpolating the Dem Bow Rhythm in

10           over 1,600 songs.  *See, e.g.,* SCAC ¶¶173-677;

11      (2)  Alleging that Steely and Clevie "worked on numerous genre-defining

12           projects." SCAC ¶175; and

13      (3)  Alleging that the instrumental of "Dem Bow"—which was purportedly

14           co-authored by Steely and Clevie and non-party Shabba Ranks and

15           allegedly "incorporates the 'Fish Market' composition"—"is iconic and

16           has been widely copied in songs in the reggaeton music genre."[19]

17           SCAC ¶¶181-182.

18

19

---

20  [18] *See* p. 13, *supra* (citing, *inter alia*, *Weisbuch*, 119 F.3d at 783 ("A plaintiff may
    plead herself out of court. If the pleadings establish facts compelling a decision one
21  way, that is as good as if depositions and other expensively obtained evidence on
    summary judgment establishes the identical facts.")) (citation, quotation marks, and
22  brackets omitted).

23  [19] Plaintiffs also allege that the Dem Bow Rhythm is "original," consisting of an
    "original drum pattern that differentiates it from prior works."  SCAC ¶180.  Rimas
24  and Bad Bunny dispute that the rhythm referred to as the Dem Bow Rhythm was
    created by Steely and Clevie.  But, even assuming *arguendo*—for purposes of this
25  Motion only—that the Dem Bow Rhythm were first authored by Steely and Clevie,
    that would not change the legal reality that the Dem Bow Rhythm constitutes *scenes
26  a faire*.  *See Skidmore*, 952 F.3d at 1069 ("Authors borrow from predecessors' works
    to create new ones, so giving exclusive rights to the first author who incorporated an
27  idea, concept, or common element would frustrate the purpose of the copyright law
    and curtail the creation of new work.") (citing, *inter alia*, 1 Nimmer § 2.05[B] ("In
28

---

**BAD BUNNY AND RIMAS MUSIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'**
**SECOND CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

The Dem Bow Rhythm's unquestionable *scenes a faire* status is further reinforced by the *Reggaeton* book that the SCAC expressly incorporates by reference.  *See* SCAC ¶¶181, 181 n.3; Freundlich Decl. Exh. A at 38 and 40.  In particular, the following excerpts from *Reggaeton* are demonstrative:

(1)　"A minimal drum track with a hint of Latinesque percussion and a unique timbral profile, Bobby 'Digital' Dixon's *Dem Bow* riddim—i.e., the instrumental underlying Shabba Ranks's 'Dem Bow' (1991), performed and recorded by the production duo Steely and Clevie— became such a ubiquitous feature of *underground* mixes that, especially in the mid- to late 1990s, one of the most common terms used to describe the genre was simply *dembow*.  Before long, at least for some, the term came to refer more generally to the music's prevailing rhythmic structure, the *boom-ch-boom-chick* that has defined Puerto Rican reggaeton since the early '90s."  Freundlich Decl. Exh. A at 38 (italics in original); and

(2)　"Indeed, the creation of reggaeton's foundational style and its veritable canon of samples, including **the elevation of *Dem Bow* to basic building block**, can largely be attributed to the long shadows cast by [two early reggaeton DJs.]"  *Id.* at 40 (bold supplied for emphasis); *see Skidmore*, 952 F.3d at 1069 ("**[B]uilding blocks belong in the public domain** and cannot be exclusively appropriated by any particular author.") (emphasis added).

---

the field of popular songs, many, if not most, compositions bear some similarity to prior songs.")).

**B.** **The SCAC is Also Subject to Dismissal in Whole or in Part Due to Certain Pleading Defects**

1. Impermissible Shotgun Pleading

The SCAC is subject to dismissal because it engages in "shotgun pleading" by lumping together multiple defendants without alleging specific facts as to each defendant purportedly demonstrating liability for that defendant. *See, e.g.,* SCAC ¶¶661-683. As articulated in 6 Patry on Copyright § 19:9: "Because liability must be established separately for each defendant, Fed. R. Civ. P. 8(a) requires adequate pleading for each defendant: lumping all defendants together with only general allegations is insufficient."

2. Inadequate Pleading of Which Portions of Plaintiffs' Songs Have Purportedly Been Infringed

While for some of the songs through which Rimas and Bad Bunny are alleged to have infringed the Subject Elements Plaintiffs have provided musical charts comparing those songs to the "Fish Market" musical composition, they have not done so for many other allegedly infringing songs associated with Rimas and Bad Bunny. *See, e.g.,* SCAC ¶¶329-369. Such generic pleading as to the purported infringement by these latter songs is insufficient to survive a Rule 12(b)(6) motion. *See, e.g., Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1113–14 (N.D. Cal. 2010) (dismissing copyright Complaint where "general allegation" regarding similarity in dialogue "does not plead sufficient facts to support a finding of substantially similar dialogue").

3. Inadequate Pleading of Secondary Liability

The SCAC's Second Claim for Relief for Vicarious and/or Contributory Copyright Infringement (*i.e.,* SCAC ¶¶678-683) is also subject to dismissal because, *inter alia*, Plaintiffs fail to "allege facts to support the conclusion that [Bad Bunny and Rimas] had knowledge of specific acts of third-party infringement*." YZ Prods.,*

**BAD BUNNY AND RIMAS MUSIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1  *Inc. v. Redbubble, Inc.*, 545 F.Supp.3d 756, 763 (N.D. Cal. 2021) (quotation marks

2  and set of brackets omitted).

3       The SCAC's Second for Relief for Vicarious and/or Contributory Copyright

4  Infringement is also subject to dismissal insofar as the Court dismisses any of

5  Plaintiffs' claims of primary infringement, whether for the reasons hereinabove or

6  otherwise.  *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2000)

7  ("Secondary liability for copyright infringement does not exist in the absence of

8  direct infringement by a third party.").

9  **V.   CONCLUSION**

10       For the foregoing reasons, Bad Bunny and Rimas respectfully submit that the

11  instant Motion to Dismiss should be granted and that the SCAC—which is Plaintiffs'

12  third attempt at a consolidated complaint—should be dismissed, in whole or in part,

13  with prejudice and without leave to amend.  *See Tartan Films USA v. U2 Home*

14  *Entm't, Inc.*, 2006 WL 8434411, at *2 (C.D. Cal. May 17, 2006) ("'[L]eave to amend

15  may be denied if it appears to be futile or legally insufficient.'") (quoting *Miller v.*

16  *Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988)).

17  Dated:  June 15, 2023

18                              FREUNDLICH LAW

19

20                              BY: /s/ Kenneth D. Freundlich
21                              Kenneth D. Freundlich
                                Michael J. Kaiser
22                              Attorneys for Defendants
                                RIMAS MUSIC, LLC and BENITO
23                              ANTONIO MARTINEZ OCASIO P/K/A
24                              BAD BUNNY

25

26

27

28

1

**<u>CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)</u>**

2       The undersigned, counsel of record for Defendants Rimas Music, LLC and

3  Benito Antonio Martinez Ocasio p/k/a Bad Bunny, certifies that this brief contains

4  4,676 words, which complies with the limit of L.R. 11-6.1.

5

6  Dated:  June 15, 2023

7                                  FREUNDLICH LAW

8

9                                  BY: /s/ Kenneth D. Freundlich
10                                 Kenneth D. Freundlich
                                   Michael J. Kaiser
11                                 Attorneys for Defendants
12                                 RIMAS MUSIC, LLC and BENITO
                                   ANTONIO MARTINEZ OCASIO P/K/A
13                                 BAD BUNNY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28