**PRYOR CASHMAN LLP**
Benjamin S. Akley (State Bar No. 278506)
*bakley@pryorcashman.com*
Shamar Toms-Anthony (State Bar No. 323246)
*stoms-anthony@pryorcashman.com*
1801 Century Park East, 24th Floor, Los Angeles, California 90067
Telephone: (310) 683-6900

Donald S. Zakarin (admitted *pro hac vice*)
*dzakarin@pryorcashman.com*
Frank P. Scibilia (admitted *pro hac vice*)
*fscibilia@pryorcashman.com*
Alexandra Nasar (*pro hac vice* application forthcoming)
*anasar@pryorcashman.com*
7 Times Square, 40th Floor, New York, New York 10036
Telephone: (212) 421-4100

James G. Sammataro (State Bar No. 204882)
*jsammataro@pryorcashman.com*
255 Alhambra Circle, 8th Floor, Miami, Florida 33134
Telephone: (786) 582-3003

*Attorneys for the Pryor Cashman-Represented Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *ET AL.*,<br><br>         Plaintiffs,<br><br>   v.<br><br>RODNEY SEBASTIAN CLARK, an individual, *ET AL.*,<br><br>   Defendants. | Case No.: 2:21-cv-02840-AB-AFM<br><br>**NOTICE AND MOTION TO DISMISS PURSUANT TO FRCP 8 AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br>*(Declaration of Benjamin S. Akley and Request for Judicial Notice Filed Concurrently)*<br><br>Date: September 22, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 7B |

1    TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on September 22, 2023 at 10:00 a.m., or as soon

3    thereafter as the matter may be heard in Courtroom 7B of this Court, located at 350 W.

4    1st Street, Los Angeles, CA 90012, the defendants represented by Pryor Cashman, LLP,

5    as set forth on Appendix A attached to this Notice (collectively, "Pryor Cashman-

6    Represented Defendants") will and hereby do move the Court for an order dismissing

7    the Second Consolidated Amended Complaint, which was filed in this action on April

8    21, 2023 ("SCAC") by plaintiffs Cleveland Constantine Browne, Anika Johnson, as

9    personal representative and executor of the Estate of Wycliffe Johnson, deceased, Steely

10   & Clevie Productions Ltd., and Carl Gibson, as personal representative and executor of

11   the Estate of Ephraim Barrett ("Plaintiffs") pursuant to Federal Rules of Civil Procedure

12   8 and 12(b)(6).

13   Defendants' Motion is based upon this Notice, the accompanying Memorandum

14   of Points and Authorities, Declaration of Benjamin S. Akley, and Request for Judicial

15   Notice, any reply memorandum, the pleadings and files in this action, and such other

16   matters as may be presented at or before the hearing.

17   This motion is made following a telephonic conference of counsel pursuant to

18   L.R. 7-3 which took place on June 5, 2023.

19   Dated: June 15, 2023

20   **PRYOR CASHMAN LLP**

21

22   By:    */s/ Donald S. Zakarin*

23   Donald S. Zakarin (*dzakarin@pryorcashman.com*)
     Frank P. Scibilia (*fscibilia@pryorcashman.com*)
24   James G. Sammataro (*jsammataro@pryorcashman.com*)
     Benjamin S. Akley (*bakley@pryorcashman.com*)
25   Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)
26   Alexandra Nasar (*anasar@pryorcashman.com*)

27

28

1

## <u>APPENDIX A TO NOTICE OF MOTION</u>

2

***Pryor Cashman-Represented Defendants:***

3
 1.  Alejandro Rengifo p/k/a Cali

4
 2.  Alexander Delgado Hernandez p/k/a Gente De Zona

5
 3.  Andrés Torres

6
 4.  Andy Clay Cruz p/k/a Andy Clay

7
 5.  Antón Álvarez Alfaro p/k/a C. Tangana

8
 6.  Armando Christian Pérez p/k/a Pitbull

9
 7.  Aura Music LLC

10
 8.  BMG Rights Management, LLC

11
 9.  Carbon Fiber Music, Inc.

12
 10. Carlos Efrén Reyes Rosado p/k/a Farruko

13
 11. Carlos Isaías Morales Williams p/k/a Sech

14
 12. Carlos Ortiz Rivera p/k/a Chris Jeday a/k/a Chris Jedi

15
 13. Carolina Giraldo Navarro p/k/a Karol G

16
 14. Christian Mena p/k/a Saga WhiteBlack

17
 15. Concord Music Group, LLC

18
 16. Danna Paola Rivera Munguía p/k/a Danna Paola

19
 17. Daniel Alejandro Morales Reyes p/k/a Danny Ocean

20
 18. Dimelo Vi, LLC

21
 19. Duars Entertainment Corp.

22
 20. Edgar Semper (collectively p/k/a Mambo Kingz)

23
 21. Edwin Vázquez Vega p/k/a Maldy (erroneously named as "Edwin Vasquez

24
   Vega p/k/a Maldy" within the Second Consolidated Amended Complaint

25
   ("SCAC"))

26
 22. El Cartel Records, Inc.

27
 23. Energy Music Corp.

28
 24. Enrique Iglesias p/k/a Enrique Iglesias

25. Enrique Martin-Morales p/k/a Ricky Martin

26. Eric Alberto-Lopez p/k/a Ape Drums

27. Eric Pérez Rovira p/k/a Eric Duars

28. Erika María Ender Simões p/k/a Erica Ender

29. Flow La Movie, Inc.

30. Gasolina Publishing Co.

31. Glad Empire Live, LLC

32. Hear This Music, LLC

33. Hipgnosis Songs Group, LLC

34. Jason Joel Desrouleaux p/k/a Jason Derulo

35. Javier Alexander Salazar p/k/a Alex Sensation

36. Jorge Valdes Vasquez p/k/a Dimelo Flow

37. José Álvaro Osorio Balvín p/k/a J Balvin

38. Juan Carlos Ozuna Rosado p/k/a Ozuna

39. Juan Carlos Salinas Jr. p/k/a Play (a/k/a "Play-N-Skillz")

40. Juan G. Rivera Vásquez p/k/a Gaby Music

41. Julio Alberto Cruz García p/k/a Casper Mágico

42. Julio Manuel González Tavárez p/k/a Lenny Tavárez

43. Justin Bieber

44. Justin Rafael Quiles Rivera p/k/a Justin Quiles a/k/a J Quiles

45. Kobalt Music Publishing America, Inc.

46. Kobalt Music Publishing Ltd.

47. Larissa de Macedo Machado p/k/a Anitta (erroneously named as "Larissa de Marcedo Machado p/k/a Anitta" within the Second Consolidated Amended Complaint ("SCAC"))

48. Luian Malavé Nieves p/k/a DJ Luian (erroneously named as "Luian Malave p/k/a DJ Luian" within the Second Consolidated Amended Complaint ("SCAC"))

49. Luis Alfonso Rodríguez López-Cepero p/k/a Luis Fonsi

50. Luis Angel O'Neill Laureano p/k/a O'Neill

51. Luis Antonio Quiñones García p/k/a Nio Garcia

52. Mad Decent Protocol LLC

53. Mad Decent Publishing, LLC

54. Manuel Turizo Zapata p/k/a Manuel Turizo

55. Marcos D. Pérez p/k/a Sharo Towers a/k/a Sharo Torres

56. Marcos Masis p/k/a Tainy

57. Mauricio Alberto Reglero Rodríguez p/k/a Mau a/k/a Mau y Ricky

58. Mauricio Rengifo p/k/a El Dandee (erroneously named as "Maurivio Rengifo p/k/a El Dandee" within the SCAC)

59. Miguel Andrés Martínez Perea p/k/a Slow Mike

60. Natalia Amapola Alexandra Gutiérrez Batista p/k/a Natti Natasha

61. Nick Rivera Caminero p/k/a Nicky Jam

62. Oscar Edward Salinas p/k/a Skillz (a/k/a "Play-N-Skillz")

63. Paulo Ezequiel Londra Farías p/k/a Paulo Londra

64. Peermusic III, Ltd.

65. Pulse 2.0, LLC (erroneously named as "Pulse Records, Inc." on the SCAC)

66. Randy Malcom Martinez p/k/a Gente De Zona

67. Ramón Luis Ayala Rodríguez p/k/a Daddy Yankee

68. Raúl Alejandro Ocasio Ruiz p/k/a Rauw Alejandro

69. Rebbeca Marie Gomez p/k/a Becky G

70. Ricardo Andres Reglero Rodriguez p/k/a Ricky (Mau y Ricky)

71. Rodney Sebastián Clark Donalds p/k/a El Chombo

72. Rosalía Vila Tobella p/k/a Rosalía (erroneously named as "Rosalia Vila I Tobella p/k/a Rosalia" on the SCAC)

73. Salomón Villada Hoyos p/k/a Feid

74. Sebastián Obando Giraldo p/k/a Sebastián Yatra

75.     Silvestre Francisco Dangond Corrales p/k/a Silvestre Dangond

76.     Solar Music Rights Management Limited

77.     Sony Music Entertainment d/b/a Ultra Music

78.     Sony Music Entertainment US Latin, LLC

79.     Sony Music Publishing, LLC

80.     Sony/ATV Music Publishing Ltd.

81.     Stephanie Victoria Allen p/k/a Stefflon Don

82.     The Royalty Network, Inc.

83.     Thomas Wesley Pentz p/k/a Diplo

84.     Ultra Records, LLC

85.     Universal Music Publishing, Inc.

86.     UMG Recordings, Inc.

87.     Vydia, Inc.

88.     Warner Chappell Music Inc

89.     Xavier Semper (collectively p/k/a Mambo Kingz)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 1

I.    PRELIMINARY STATEMENT ........................................................ 1

II.    RELEVANT BACKGROUND ......................................................... 4

    A.    Plaintiffs' Alleged Creation Of *Fish Market* And Claimed Ownership Of Four Works ........................................ 4

    B.    The Allegedly Infringing Works And Defendants ............................ 5

    C.    The Prior Iterations Of *Dem Bow* Litigation .............................. 5

    D.    Plaintiffs' Copyright Registrations ........................................... 7

III.    LEGAL STANDARDS .................................................................... 8

    A.    FRCP 8 And FRCP 12 Pleading Standards .................................. 8

    B.    Pleading Standards Applied To Infringement Actions .................. 9

IV.    ARGUMENT ................................................................................. 10

    A.    Plaintiffs Improperly Claim Infringement Of Works They Do Not Own And For Which They Have No Standing To Sue ...................................................... 10

        1.    All Claims Based On The Belated Registration For *Pounder Dub Mix II* Should Be Dismissed ........................ 11

        2.    Plaintiffs' Claims Based On The Music (Not The Lyrics) Of *Dem Bow* Must Be Dismissed ........................ 12

    B.    Plaintiffs' Transitive Infringement "By Extension" Theory Does Not Satisfy FRCP 12(b)(6) ................................ 12

    C.    The SCAC Fails To Distinguish Between Sound Recordings And Musical Compositions .................................. 15

    D.    Even For Works Alleged To Infringe Timely-Registered Copyrights, Plaintiffs Fail To Satisfy The Relevant Pleading Standards .................................................... 18

        1.    Pleading By Exhibit ....................................................... 18

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.   Deficient Allegations Of The Infringement Of The *Fish Market* Composition .......................................................... 20

3.   Deficient Allegations Of The Infringement Of The *Fish Market* Sound Recording .......................................................... 21

4.   Deficient Allegations Of The Infringement Of The Lyrics Of The *Dem Bow* Composition ........................................... 21

E.   The SCAC Is The Quintessential "Shotgun Pleading" .......................... 22

F.   In The Few Instances Where Plaintiffs Identify Alleged "Similarities" Between A Defendant's Work And *Fish Market*, The Allegations Concern Non-Protectable Elements And Demonstrate No Similarity ............................................ 23

G.   Plaintiffs' Inaction For Thirty Years Bars Their Claims And Remedies ........................................................................................ 26

H.   Plaintiffs Fail To State A Claim For Secondary Liability ..................... 27

V.   Conclusion .................................................................................................... 30

ii

# **TABLE OF AUTHORITIES**

**PAGE(s)**

## **CASES**

*A&M Recs. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2000) .......................................................................... 28, 29

*Anthony v. Pro Custom Solar, LLC*,
   No. ED CV 20-01968 JAK, 2022 WL 1634870 (C.D. Cal. Jan. 21, 2022) ............. 16

*Arikat v. JP Morgan Chase & Co.*,
   430 F. Supp. 2d 1013 (N.D. Cal. 2006).................................................................. 29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 8, 9, 18

*Batiste v. Najm*,
   28 F. Supp. 3d 595 (E.D. La. 2014) ...................................................................... 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................. 9, 19, 21, 28

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
   No. 15-cv-04084-CRB, 2018 WL 1242053 (N.D. Cal. Mar. 8, 2018) ............. 10, 14

*BWP Media USA, Inc. v. Linkbucks.com, LLC*,
   CV 14-689-JFW, 2014 WL 12596429 (C.D. Cal. Aug. 8, 2014) ........................... 28

*Chestang v. Yahoo Inc.*,
   No. 2:11-cv-00989-MCE-KJN PS, 2012 WL 3915957 (C.D. Cal. Sept.
   7, 2012)............................................................................................................... 22

*Christianson v. West Pub. Co.*,
   149 F.2d 202 (9th Cir. 1945)................................................................................ 26

*Culinary Studios, Inc. v. Newsom*,
   517 F. Supp. 3d 1042 (E.D. Cal. 2021) ................................................................. 29

*Currin v. Arista Recs., Inc.*,
   724 F. Supp. 2d 286................................................................................................ 24

*Drive-In Music Co., Inc. v. Sony Music Ent.*,
   No. CV 10-5613 CAS, 2011 WL 13217236 (C.D. Cal. Apr. 18, 2011) .................. 17

*Elohim EPF USA, Inc. v. Total Music Connection, Inc.*,
   No. CV 14-02496-BRO (Ex), 2015 WL 12655556 (C.D. Cal. Oct. 1, 2015) .......... 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340 (1991) ........................................................................... 9, 10

*Fharmacy Recs. v. Nassar*,
   248 F.R.D. 507 (E.D. Mich. 2008), *aff'd*, 379 F. App'x 522 (6th Cir. 2010) .......... 16

*Field v. Google*,
   412 F. Supp. 2d 1106 (D. Nev. 2006) ....................................................... 26

*Fournerat v. Veterans Admin.*,
   No. EDCV 19-0961 AB (AS), 2020 WL 541839 (C.D. Cal. Apr. 22,
   2020) (Birotte, J.)............................................................................. 2, 22, 29

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019)............................................................................. 11

*Gray v. Hudson*,
   28 F.4th 87 (9th Cir. 2022) ........................................................... 14, 23, 24

*Gray v. Perry*,
   No. 2:15-CV-05642-CAS-JCx, 2020 WL 1275221 (C.D. Cal. Mar. 16,
   2020) ....................................................................................... 10, 25

*Hayes v. Minaj*,
   No. 2:12-cv-07972-SVW-SH, 2012 WL 12887393 (C.D. Cal. Dec. 18,
   2012) ..................................................................................... 9, 14, 21

*Hayes v. West*,
   No. CV 12-7974-GW, 2013 WL 12218468 (C.D. Cal. May 13, 2013).................. 10

*Interscope Recs. v. Time Warner, Inc.*,
   CV 10-1662 SVW (PJWx), 2010 WL 11505708 (C.D. Cal. June 28, 2010) .......... 26

*Izmo, Inc. v. Roadster, Inc.*,
   No. 18-cv-06092-NC, 2019 WL 2359228 (N.D. Cal. June 4, 2019) ...................... 11

*Johnson v. Gordon*,
   409 F.3d 12 (1st Cir. 2005) ................................................................... 15

*Kabbaj v. Obama*,
   568 F. App'x 875 (11th Cir. 2014)............................................................ 29

iv

*Kifle v. YouTube LLC*,
    No. 21-cv-01752-CRB, 2021 WL 1530942 (N.D. Cal. April 19, 2021) ................ 11

*Kilina Am., Inc. v. SA & PW, Inc*,.
    CV 19-03786-CJC, 2019 WL 8685066 (C.D. Cal. Aug. 27, 2019) ........................ 29

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................ 9

*Lafarga v. Lowrider Arte Mag.*,
    No. SACV 11-1501-DOC, 2014 WL 12573551 (C.D. Cal. July 18, 2018) ............ 18

*Lane v. Knowles-Carter*,
    14 CIV. 6798 PAE, 2015 WL 6395940 (S.D.N.Y. Oct. 21, 2015) ......................... 24

*Lynwood Invs. CY Ltd. v. Konovalov*,
    No. 20-cv-03778-MMC, 2022 WL 3370795 (N.D. Cal. Aug. 16, 2022) ............... 20

*Malibu Media, LLC v. Doe*,
    18-CV-10956 (JMF), 2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019) ........................ 11

*Marshall v. Huffman*,
    No. C 10-1665 SI, 2010 WL 5115418 (N.D. Cal. Dec. 9, 2010) ...................... 17, 18

*Martinez v. Robinhood Crypto, LLC*,
    No. 2:22-cv-2651-AB-KS, 2023 WL 2836792 (C.D. Cal. Feb. 28,
    2023) (Birotte, J.) .......................................................................................... 20, 22

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 Fed. Appx. 59 (2d
    Cir. 2016) ............................................................................................................. 24

*Merchant Transaction Sys., Inc. v. Nelcela, Inc*.,
    No. CV 02-1954-PHX-MHM, 2009 WL 2355807 (D. Ariz., July 28,
    2009) .................................................................................................................... 15

*Newton v. Diamond*,
    204 F. Supp. 2d 1244 (C.D. Cal. 2002).......................................................... 14, 17

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004), *cert. denied*, 545 U.S. 1114 (2005) ...................... 16

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ............................................................................... 27

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014)........................................................................ 26, 27

*Plakhova v. Hood*,
    No. CV 16-08245 TJH, 2017 WL 10592315 (C.D. Cal. June 20, 2017)................ 20

*Rice v. Fox Broadcasting Co.*,
    148 F. Supp. 2d 1029 (C.D. Cal. 2001), *aff'd in part, rev'd in part*, 330
    F.3d 1170 (9th Cir. 2003) ........................................................................ 9

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
    No. C 09-05659 WHA, 2011 WL 166198 (N.D. Cal. Jan. 18, 2011)..................... 20

*Ricketts v. Haah*,
    No. 2:13-CV-00521-ODW, 2013 WL 3242947 (C.D. Cal. June 26, 2013) ............. 9

*Rose v Hewson*,
    No. 17-cv-1471, 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ............................... 24

*Shaheed-Edwards v. Syco Ent., Inc.*,
    CV 17-06579 SJO (SS), 2017 WL 6403091 (C.D. Cal. Dec. 14, 2017)........... 10, 14

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ............................................................... 10, 24

*Sound & Color, LLC v. Smith*,
    No 2:22-cv-01508-AB, 2023 WL 2821881 (C.D. Cal. Feb. 28, 2023)
    (Birotte, J.)........................................................................... 28, 29, 30

*Steel Warehouse Cleveland, LLC v. Velocity Outdoor, Inc.*,
    No. 1:22-cv-01900, 2023 WL 2264257 (N.D. Ohio Feb. 28, 2023)....................... 16

*Steward v. West*,
    CV13-02449 BRO (JCx), 2014 WL 12591933 (C.D. Cal Aug. 14, 2014) ............. 26

*Sybersound Recs., Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ................................................................ 9

*Synopsys, Inc. v. AtopTech, Inc.*,
    No. C 13-cv-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)................... 20

*Tavory v. NTP, Inc.*,
    495 F. Supp. 2d 531 (E.D. Va. 2007), *aff'd*, 297 F. App'x 976 (Fed.
    Cir. 2008)........................................................................................ 26

vi

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................. 9

*Weber v. Dep't of Veterans Affairs*,
    521 F.3d 1061 (9th Cir. 2008) ........................................................... 8

*Zany Toys*, *LLC v. Pearl Enters., LLC*,
    No. 13-5262 (JAP)(TJB), 2014 WL 2168415 (D. N.J. May 23, 2014) ............ 17, 18

*Zeleny v. Burge*,
    No. 2:21-CV-05103-AB, 2022 WL 3013138 (C.D. Cal. July 1, 2022)
    (Birotte, J.) .................................................................................... 11, 30

## STATUTES AND RULES

17 U.S.C. § 104(b) .................................................................................. 8

17 U.S.C. § 114(b) ................................................................................ 17

17 U.S.C. § 410(c) .................................................................................. 7

17 U.S.C. § 411(a) ................................................................................ 11

FRCP 8 ...................................................................................... *passim*

FRCP 12(b)(6) ........................................................................... *passim*

## OTHER AUTHORITIES

5 Wright and Miller, *Federal Practice and Procedure* § 1285 (3d Ed.
    2004) ............................................................................................ 16

Copyright Office, *Circular 50: Copyright Registration for Musical
    Compositions* (Mar. 2023), *available at*
    https://www.copyright.gov/circs/circ50.pdf ......................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

The defendants represented by Pryor Cashman LLP, as enumerated within Appendix A herein (collectively, "Pryor Cashman-Represented Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. ("FRCP") Rules 8 and 12(b)(6), to dismiss the Complaint filed in this action ("Complaint") by plaintiffs Cleveland Constantine Browne, Anika Johnson, as the alleged personal representative and executor of the Estate of Wycliffe Johnson,  Steely & Clevie Productions Ltd., and Carl Gibson, as the alleged personal representative and executor of the Estate of Ephraim Barrett ("Plaintiffs").[1]

## I.   PRELIMINARY STATEMENT

Plaintiffs' Second Consolidated Amended Complaint ("SCAC") is the sixth complaint that they have filed in this action.  In this iteration Plaintiffs have massively expanded the number of allegedly infringing works[2] and the number of defendants, effectively claiming ownership of an entire genre of music by claiming exclusive rights to the rhythm and other unprotectable musical elements common to all "reggaeton"-style songs.  Yet, Plaintiffs' 228-page, 683-paragraph SCAC fails to plead the most fundamental elements of a copyright infringement claim: it fails to plead facts showing what works Plaintiffs actually own and on which they have standing to sue; it fails to identify what protectable elements in which musical compositions or sound recordings have allegedly been infringed; and, it fails to allege what elements in each of the

---

[1] "Defendants" refers to all of the named defendants in this action, whether or not they are party to this motion.  Unless otherwise noted, all emphases herein are supplied, and all internal citations and quotations are omitted or "cleaned up."

[2]   It is impossible to determine from the SCAC whether the number of allegedly infringing works is over 1,800 or nearly 4,000 or more because the SCAC fails to specify whether Plaintiffs' claims concern musical compositions, sound recordings, or both.  Defendants' best-guess estimate ranges from 1,821 to around 4,000 because there are irreconcilable differences between the works mentioned in the SCAC and the accompanying Exhibit A and because sound recordings and compositions are separate works.

1

Defendants' works are allegedly infringing or even, at its most basic, whether what is allegedly infringing is a musical composition, sound recording or both.

The complete lack of clarity is no accident. Rather, it is designed to obscure, *inter alia,* what works and rights Plaintiffs own and what it is that is allegedly infringing, by whom and how. This Court has made clear that a complaint that lacks "clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Fournerat v. Veterans Admin.*, No. EDCV 19-0961 AB (AS), 2020 WL 541839, at \*3 (C.D. Cal. Apr. 22, 2020) (Birotte, J.).

The SCAC fails to satisfy FRCP 8 and 12(b)(6) for at least ten reasons:

(1)     Plaintiffs do not own and have no standing to assert claims for infringement of the music of *Dem Bow*, the *Pounder Riddim*, or *Pounder Dub Mix II*. Yet, the SCAC repeatedly alleges infringement of those works, and infringement of *Fish Market* (a work that Plaintiffs may own) "***by extension***" through copying unspecified portions of one or more of those works (as to which Plaintiffs never registered any claimed interest).

(2)     The SCAC does not identify what elements in the *Fish Market* composition have been infringed and Plaintiffs have provided transcriptions identifying alleged similarities for only 33 of the 1,821-4,000 allegedly infringing works. By providing 33 transcriptions, Plaintiffs show both that they know what the pleading requirements are and also that none of the Defendants' works copied protectable elements from the *Fish Market* composition.

(3)     Where the SCAC purports to allege that some of the allegedly infringing works incorporate a sample of the *Fish Market* sound recording, it offers only conclusory allegations without pleading any facts or identifying the sample.

(4)     The SCAC improperly uses the disjunctive "and/or" and the undefined word "Songs" on an Exhibit to the SCAC to obscure whether the infringement claim relates to the *Fish Market* composition or the *Fish Market* sound recording and whether the infringing work is a musical composition, sound recording or both. Musical

compositions and sound recordings involve different Defendants and have different infringement requirements.

(5)    The SCAC does not identify a single lyrical similarity between *Dem Bow* and any allegedly infringing composition.

(6)    The SCAC does not have any factual allegations at all as to 42 Defendants.

(7)    The SCAC impermissibly "pleads infringement by exhibit" (Exhibit A), but the Exhibit does not identify what protectable elements in Plaintiffs' works have been infringed and what in Defendants' works is infringing.

(8)    The SCAC is a "shotgun pleading" filled with conclusory allegations that lump Defendants together, making it impossible for Defendants to determine what each is alleged to have done, what works are at issue and what in those works is allegedly infringing.

(9)    Plaintiffs' inaction for thirty years, both in registering or asserting any claim to the works they now claim to own, or in seeking to enforce their purported rights with respect to the alleged use of such works in *Pounder Riddim*, bars their claims or remedies.

(10)   The SCAC fails to state a claim for secondary liability, conclusorily asserting that all Defendants – competitors who created, released or otherwise exploited thousands of separate works over thirty years – acted "in concert" with each other, an implausible allegation.  It also lacks any viable direct infringement claim, a prerequisite to a claim for vicarious infringement.

Having had six opportunities to plead properly, and failing, Plaintiffs' SCAC should be dismissed with prejudice.

**II.    RELEVANT BACKGROUND**[3]

**A.    Plaintiffs' Alleged Creation Of _Fish Market_ And**

**Claimed Ownership Of Four Works**.

Plaintiffs claim to own rights in four works: (i) the _Fish Market_ musical composition; (ii) the _Fish Market_ sound recording; (iii) the _Dem Bow_ musical composition; and (iv) the _Pounder Dub Mix II_ sound recording. (SCAC ¶¶ 4-7; 179-184.)

Browne and Johnson allegedly wrote and recorded _Fish Market_ in Jamaica in 1989. (_Id._ ¶¶ 175, 179, 185.) _Fish Market_ is an instrumental work consisting of:

> an original drum pattern . . . a programmed kick, snare, and hi-hat playing a one bar pattern[,] percussion instruments, including a tambourine playing through the entire bar, a synthesized 'tom' playing on beats one and three, and timbales that play a roll at the end of every second bar and free improvisation over the pattern for the duration of the song[,] and a synthesized Bb (b-flat) bass note on beats one and three of each bar, which follows the aforementioned synthesized 'tom' pattern." (_Id._ ¶ 180.)

Browne and Johnson also allegedly co-authored a different musical composition, _Dem Bow_.[4] (_Id._ ¶ 181.) After _Dem Bow's_ release, Denis Halliburton – who is neither a plaintiff nor a defendant in this action – allegedly "copied _Dem Bow's_ instrumental, sound, arrangement, and composition, including the drum pattern, the drum components, including the kick, snare, hi-hat, tom and timbales as well as the full bassline." (_Id._ ¶ 183.) Plaintiffs claim that Halliburton's composition, _Pounder Riddim_, is "virtually identical" to, and in the SCAC, claim it as a "derivative work" of _Fish Market._ (_Id._.)

---

[3]  The Relevant Background "facts" set forth below are taken from the SCAC and are assumed to be true solely for the purpose of this motion.

[4] As discussed below, Plaintiff's copyright in _Dem Bow_ is limited only to the lyrics in the work, _i.e._, Plaintiffs cannot state any claims to the extent they are based any copying of _Dem Bow's_ instrumental (music).

But Plaintiffs' claim that *Pounder Riddim* is a derivative work is contrary to undisputed facts: it is not registered as a derivative work and in over 30 years, Plaintiffs never claimed they owned *Pounder Riddim* or that Halliburton infringed *Fish Market.* Indeed, Plaintiffs do not assert in this case that *Pounder Riddim* infringes their works. (*See id.* ¶¶ 182-189; see also *id.* Ex. A.)  And, while Plaintiffs make the conclusory allegation that *Pounder Riddim* is "virtually identical" to *Fish Market*, they provide no comparison of the two works (despite pleading that "Transcripts of portions of *Fish Market* and the *Pounder Riddim* are shown below," no such transcripts are provided). (*Id.* ¶ 188.)

Despite not possessing any interest in *Pounder Riddim*, Plaintiffs nevertheless use it as a stepping stone, claiming it was used to create the sound recording for *Pounder Dub Mix II,* and that *Pounder Dub Mix II* "has been sampled by numerous Defendants" since its release in 1990.  (*Id.* ¶ 184.)  But Plaintiffs never claimed nor registered any interest in *Pounder Dub Mix II* until March 23, 2023 – long after initiating this action and 33 years after *Pounder Dub Mix II* was released.

**B.    The Allegedly Infringing Works And Defendants.**

The SCAC alleges that anywhere from some 1,821 to 4,000 compositions "and/or" recordings infringe one or more of the four works identified above.  But in virtually all instances, the SCAC does not identify ***which*** work was infringed or whether the infringing work is a composition or recording (or both).  (*See, e.g., id.* ¶¶ 197-199.)

Beyond the massive number of allegedly infringing works, there are also some 163 Defendants, including world-famous artists, music producers, award-winning songwriters, record labels and music publishing companies. Without any clarity as to who did what, the SCAC alleges that each Defendant had some alleged involvement in the creation or exploitation of the allegedly "Infringing Works." (*Id.* ¶ 190.)

**C.    The Prior Iterations Of *Dem Bow* Litigation.**

Since this action was commenced on April 1, 2021, through six complaints, it has grown by leaps and bounds.  The original complaint was against 13 defendants and

involved two works that allegedly infringed the *Fish Market* composition and recording: *Dame tu Cosita*, created by El Chombo, as well as the *Dame tu Cosita* remix, featuring Karol G and Pitbull.  (*See* Central District of California, Case No. 2:21-cv-02840-AB-AFM ("Dem Bow I").)

 A second action was commenced on October 19, 2021 (*See* Central District of California, Case No. 2:21-cv-08295-AB-AFM ("Dem Bow II").)  In Dem Bow II, Plaintiffs alleged that 10 Luis Fonsi works (again it is unclear if compositions, recordings or both), including works featuring performances from Justin Bieber, Rauw Alejandro, Daddy Yankee and Nicky Jam, infringed *Fish Market*.  A third action was filed on May 16, 2022 in the Southern District of New York (transferred by the Court *sua sponte* on June 6, 2022 and reassigned to this Court as a related case), alleging that an additional 44 works infringed *Fish Market*.  (*See* Central District of California, Case No. 2:22-cv-03827-AB-AFM ("Dem Bow III").)

This Court granted the motion (Dkt. 89) of Defendants Sony Music Entertainment, Universal Music Publishing Group  and Warner Chappell Music, Inc. to consolidate the three Dem Bow actions and ordered Plaintiffs to file a consolidated complaint by July 29, 2022.  (Dkt. 93.)

Plaintiffs' consolidated complaint was limited solely to *Fish Market*, and alleged infringement claims against 53 defendants.   (Dkt. 99.) The Court subsequently authorized Plaintiff to file an amended consolidated complaint by September 23, 2022. (Dkts. 112, 115.)

Plaintiffs' First Consolidated Amended Complaint ("FCAC") was their fifth complaint.  The FCAC dramatically expanded the number of defendants to 163 and the number of allegedly infringing works to some 1,800 and 4,000 (Dkt. 116), but still only claimed infringement of *Fish Market*.  (*See generally id*.)  Given the number of defendants and number of works, as well as the existence of common "gating" issues (such as protectability and originality), the parties stipulated to, and the Court ordered, a phased case administration plan to promote judicial efficiency. (*See* Dkts. 142, 143.)

6

On April 21, 2023, Plaintiffs filed their currently-operative sixth complaint, the SCAC, dismissing a few defendants but still claiming some 1,800 to 4,000 infringing works. (Dkt. 305.)  For the *first time*, however, the SCAC advanced a new theory: infringement of *Fish Market* "by extension" through copying of some unspecified portion of *Pounder Dub Mix II*, for which a copyright registration belatedly was obtained by Plaintiffs' litigation counsel only a month before the SCAC was filed (in March 2023).[5]

**D.    Plaintiffs' Copyright Registrations.**

With respect to the late-filed registration for *Pounder Dub Mix II*, "[t]he only parties who are eligible to be the copyright claimant are (i) the author of the work, or (ii) a copyright owner who owns all of the exclusive rights in the work. . . .  A person or entity who owns one or more – but less than all – of the exclusive rights in a work is not eligible to be a claimant."  U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 404 (3d ed. 2021).  The registration identifies Steely & Clevie Productions Ltd. as a claimant pursuant to a "Transfer: By written agreement" but the SCAC identifies no agreement by which such entity acquired any rights nor any relationship between that entity (or Browne or Johnson) and *Pounder Dub Mix II*, which the SCAC alleges was created by Denis Halliburton and Ephraim Barrett. (SCAC ¶ 182.)  The registration identifies the Estate of Ephraim Barrett as the other claimant pursuant to a "Transfer: By inheritance and written agreement" but again, does not identify the agreement.  Plaintiffs allege only that Barrett was a "producer" on some unidentified recording (*id*. ¶ 177), and that Denis Halliburton performed a ***different***

---

[5] Under 17 U.S.C. § 410(c), a certificate of a registration is "prima facie evidence of the validity of the copyright and of the facts stated within the certificate" ***only*** if the certificate is "made ***before or within five years after first publication*** of the work," which is not the case for any of Plaintiffs' registrations.  Here, the validity of Plaintiffs' registrations, including for *Pounder Dub Mix II* – ***all filed by one of Plaintiffs' attorneys over 30 years after each work was purportedly created*** – is highly suspect.

*work* – an instrumental version of *Dem Bow* – "*at the direction of Barrett*," to create **another, different work** in which Plaintiffs do not claim a copyright interest – the *Pounder Riddim*. (*Id.* ¶ 182)  The SCAC does not plead that Barrett made **any** contribution to the *Pounder Dub Mix II* sound recording. (*See id.*)  In any event, without Halliburton, the registration was not filed by the owner of all rights.

As to the *Fish Market* composition, the SCAC conspicuously fails to state that the composition was first published in the U.S. and suggests that it was first published in Jamaica (SCAC ¶ 185).  The location of publication must be specifically alleged, as Jamaica was not a treaty party with the U.S., making it ineligible for U.S. copyright registration or protection. 17 U.S.C. § 104(b).  Without an allegation that the *Fish Market* composition was, in fact, first published in the U.S., this Court's jurisdiction cannot be established.[6]

## III. LEGAL STANDARDS

### A. FRCP 8 And FRCP 12 Pleading Standards

FRCP 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  FRCP 8(a)(2).  A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under FRCP 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  "[B]lanket assertions," "labels and conclusions," and a "formulaic recitation of the

---

[6] As to the sound recording, Plaintiffs admit it was recorded in Jamaica but claim it was first released in the U.S. (SCAC ¶ 185).  Defendants believe that is untrue.  If this case is not dismissed, Defendants intend to demonstrate that the sound recording was not first released in the U.S.

elements of a cause of action" fail to satisfy this threshold. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678.

In ruling on a FRCP 12(b)(6) motion, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. On such a motion, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). This includes copyright registration certificates and information from the U.S. Copyright Office's online public catalog. *See, e.g., Sybersound Recs., Inc. v. UAV Corp.,* 517 F.3d 1137, 1146 (9th Cir. 2008) (considering "copies of copyright registration records from the United States Copyright Office" on a motion to dismiss); *Elohim EPF USA, Inc. v. Total Music Connection, Inc.,* No. CV 14-02496-BRO (Ex), 2015 WL 12655556, at *8 (C.D. Cal. Oct. 1, 2015); *Ricketts v. Haah,* No. 2:13-CV-00521-ODW, 2013 WL 3242947, at *2 (C.D. Cal. June 26, 2013).

The Court may also consider exhibits attached to a motion to dismiss if the attached documents are: (1) central to the plaintiff's claim; and (2) undisputed. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**B.      Pleading Standards Applied To Infringement Actions**

In infringement actions, Plaintiffs must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

"[A]bsent direct evidence of copying" a plaintiff may satisfy the copying elements with "fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Rice v. Fox Broadcasting Co.,* 148 F. Supp. 2d 1029, 1048 (C.D. Cal. 2001), *aff'd in part, rev'd in part,* 330 F.3d 1170 (9th Cir. 2003). In a copyright infringement action, the *Twombly* standard "demands more than listing elements in [a] vague and conclusory fashion; it requires a plaintiff to '***compar[e] those elements for proof of copying***.'" *Hayes v. Minaj*, No. 2:12-cv-07972-

9

SVW-SH, 2012 WL 12887393, at *4 (C.D. Cal. Dec. 18, 2012).  A plaintiff must plead "*which portions, aspects, lyrics or other elements of the two works are substantially similar*."  *Hayes v. West*, No. CV 12-7974-GW (MANx), 2013 WL 12218468, at *5 (C.D. Cal. May 13, 2013); *Shaheed-Edwards v. Syco Ent., Inc.*, CV 17-06579 SJO (SS), 2017 WL 6403091 (C.D. Cal. Dec. 14, 2017); *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, No. 15-cv-04084-CRB, 2018 WL 1242053, at *3-5 (N.D. Cal. Mar. 8, 2018) (dismissing claims where plaintiff did not sufficiently allege which elements of allegedly infringed work were substantially similar to protectable elements in plaintiff's works).

Moreover, copyright protection only protects the plaintiff's protected *original expression*.  *See Feist*, 499 U.S. at 348 ("copyright protection may extend only to those components of a work that are original to the author"); *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) ("[O]nly substantial similarity in protectable expression may constitute actionable copying that results in infringement liability. . ."); *Gray v. Perry,* No. 2:15-CV-05642-CAS-JCx, 2020 WL 1275221, at *6 (C.D. Cal. Mar. 16, 2020).  The critical inquiry is whether the defendant copied any original element of the plaintiff's work that is protected by copyright law.  *Feist*, 499 U.S. at 348, 361.

## IV.   ARGUMENT

### A.   Plaintiffs Improperly Claim Infringement Of Works They Do Not Own And For Which They Have No Standing To Sue

The SCAC alleges that Plaintiffs "possess copyright ownership and U.S. [copyright] registration" in four works: the *Fish Market* sound recording, the *Fish Market* musical composition, the *Dem Bow* musical composition, and the *Pounder Dub Mix II* sound recording.  (SCAC ¶¶ 179, 189, 200.)  Yet, no copyright registration is identified or attached for *any* of the four works.  The failure is no accident because Plaintiffs lack standing to sue for infringement of anything other than *Fish Market* and the *lyrics* of *Dem Bow*.

1      **1.     All Claims Based On The Belated Registration**

2            **For *Pounder Dub Mix II* Should Be Dismissed**

3            *Pounder Dub Mix II* was not registered ***until March 15, 2023 – nearly two years***

4      ***after*** Plaintiffs instituted this action.  (*See* Exhibit 1 to the accompanying declaration of

5      Benjamin Akley ("Akley Decl.").)  17 U.S.C. § 411(a) "bars a copyright owner from

6      suing for infringement until 'registration . . . has been made,'" and registration is not

7      "made" until the Copyright Office grants the registration. *See Fourth Est. Pub. Benefit*

8      *Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019).

9            Consistent with *Fourth Estate*, this Court and others have dismissed copyright

10     actions, without leave to amend, where the action was initiated before the operative

11     copyright was registered. *See, e.g.*, *Zeleny v. Burge*, No. 2:21-CV-05103-AB (AGRx),

12     2022 WL 3013138, at *5 (C.D. Cal. July 1, 2022) ("Because the lack of registration

13     cannot be cured, leave to amend would be futile.") (Birotte, J.); *Izmo, Inc. v. Roadster*,

14     *Inc.*, No. 18-cv-06092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019)

15     (dismissing copyright infringement claim with prejudice where the plaintiff failed to

16     comply with § 411(a)).

17           This rule applies equally to a claim added by amendment after registration.

18     Section 411(a) requires registration ***before a suit is commenced***.  Plaintiffs are not

19     permitted to amend to add a new claim based on a post-complaint registration as the

20     claim could not have been asserted in the original complaint and cannot relate back.

21     *See Izmo, Inc.* 2019 WL 2359228, at *2 ("The fact that [the plaintiff] properly

22     'commenced' this lawsuit as to ***some*** of its copyrights does not excuse its failure to

23     comply with § 411(a) as to its other copyrights." (Emphasis in original)); *Kifle v.*

24     *YouTube LLC*, No. 21-cv-01752-CRB, 2021 WL 1530942, at *6 (N.D. Cal. April 19,

25     2021); *Malibu Media, LLC v. Doe*, 18-CV-10956 (JMF), 2019 WL 1454317, at *2-3

26     (S.D.N.Y. Apr. 2, 2019) (plaintiff "cannot rely on the relation-back doctrine to

27     retroactively bestow administrative compliance that did not exist when the plaintiff filed

28     the initial complaint.").

Accordingly, claims against 85 Defendants as to 126 works based on *Pounder Dub Mix II* must be dismissed.  (*See* Akley Decl., Ex. 4, ("§IV.A.1 – Lack of Standing – Pounder Dub Mix II").)[7]

> **2.    Plaintiffs' Claims Based On The Music (Not The Lyrics) Of *Dem Bow* Must Be Dismissed**

There are two copyright registrations for the *Dem Bow* composition: PA 2264496 and PA 2281747 (*see* Akley Decl., Ex. 2), neither of which is attached or identified in the SCAC. (*Compare* SCAC ¶ 181.)  These registrations **expressly limit Plaintiffs' ownership claim to the "lyrics" and "new lyrics"** of the *Dem Bow* composition and identify the "music" of *Dem Bow* as **"pre-existing material."**  As such, Plaintiffs interest, if any, in the *Dem Bow* composition is limited solely to the lyrics.

Accordingly, all claims against 22 Defendants as to 8 works alleging infringement of any music of *Dem Bow* should be dismissed for lack of standing . (*See* Akley Decl., Ex. 4, ("§ IV.A.2 – Lack of Standing – *Dem Bow* Music").)

**B.    Plaintiffs' Transitive Infringement "By Extension" Theory Does Not Satisfy FRCP 12(b)(6)**

To expand their claims, Plaintiffs manufactured a chain of alleged connections between *Fish Market* and subsequent works in which they have no apparent interest. According to Plaintiffs, an "alternative mix" of the *Fish Market* musical composition (work A) was incorporated in "*Dem Bow*'s instrumental" (work B).  (*See* SCAC ¶ 181.) The *Dem Bow* instrumental is purportedly "based on" the *Fish Market* composition, although the SCAC does not show how the *Dem Bow* composition is similar to the *Fish Market* composition or which original elements of *Fish Market* are incorporated into

---

[7] As an aid to the Court, the Akley Declaration contains Exhibit 4, a "Schedule of 'Songs' At Issue and Bases for Dismissal," as a roadmap linking specific works and specific defendants to each basis for dismissal set forth in this Memorandum.  Exhibit 4 is derived primarily from SCAC Ex. A, supplemented to reflect additional "songs" named in the SCAC but not included on SCAC Ex. A.

*Dem Bow*.  (*See id.*)  They also do not mention that their registration on *Dem Bow* is limited to lyrics.

Plaintiffs then extend their chain, alleging that the *Dem Bow* instrumental was included in the *Pounder Dub Mix II* (work D) by virtue of Halliburton's work, *Pounder Riddim* (work C).   (*See id.* ¶ 182 ("The *Pounder Riddim* was then used to create the sound recordings of *Ellos Benia*, a Spanish language version of 'Dem Bow,' and *Pounder Dub Mix II* ('Pounder').")   *Pounder Riddim* (work C) is allegedly an "instrumental version" of the *Dem Bow* instrumental (work B) that allegedly incorporates *Fish Market* (work A).  (*See id.* ¶¶ 182-183.)  While Plaintiffs claim the *Pounder Riddim* composition is "virtually identical" to *Fish Market* (*id.* ¶ 184), they offer no comparison of the two works, despite purporting to do so (*id.* ¶ 188).  Moreover, they have never claimed any interest in *Pounder Riddim* (or in *Pounder Dub Mix II*) in the last 33 years.

Plaintiffs do not own *Pounder Riddim,* never claimed it was a derivative work nor sued Halliburton for infringement.  (*Id.* ¶¶ 182, 200.)  Yet they now claim that any copying of any portion of work C (*Pounder Riddim*) also necessarily infringes either work A (*Fish Market*) or work D (*Pounder Dub Mix II*).  (*Id.* ¶¶ 184, 188 ("Any copying, interpolating, or sampling of the *Pounder Riddim* is a copying or interpolation of *Fish Market's* composition"), ¶ 188, n. 5, ¶ 226.)

Through their linkage of works – *i.e.*, an "alternative mix" of work A was incorporated in an "instrumental version" of work B, which was performed in work C, which was then included in work D – Plaintiffs, despite having no interest in B, C or D (other than lyrics in B), now claim ownership of all "reggaeton" music created over the last 30 years.  Ignoring the estoppel and implied license problems created by Plaintiffs' 30 years of inaction (*see* Section III.G, *infra*), Plaintiffs' transitive infringement theory is legally deficient.

First, Plaintiffs do not even purport to own and therefore cannot sue for infringement of work C (*Pounder Riddim*).  (*Id.* ¶¶ 226-227.)  Plaintiffs also lack

standing to sue on work D (*Pounder Dub Mix II*), and cannot claim ownership for anything but the lyrics of work B (*Dem Bow*).   That leaves Plaintiffs with only *Fish Market* and the lyrics of *Dem Bow*.

Second, Plaintiffs' linkage theory obscures what is protectable in the works they do own and which works copy what elements in those works.  In many instances, the claimed infringement is based on mixing and matching different elements of works A, B and D.[8]  But the SCAC fails to identify what element of what work Plaintiffs do own is being infringed (and how).

To satisfy FRCP 8 and FRCP 12(b)(6), Plaintiffs must plead infringement of their protected ***original expression***.  (*See* Section II.B, *supra* and cases cited.)  In music cases, the courts recognize the "limited number of expressive choices available" to composers, *Gray v. Hudson*, 28 F.4th 87, 102 (9th Cir. 2022), and "the resulting fact that common themes frequently appear in various compositions, especially in popular music." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002). Moreover, as noted above, plaintiffs are also required to plead ***which portions of each allegedly infringing work includes protectable (i.e., original) elements of their copyrighted works***.  *See Hayes*, 2012 WL 12887393, at *5; *Shaheed-Edwards,* 2017 WL 6403091, at *3; *Blizzard Ent., Inc.*, 2018 WL 1242053, at *3-5.

Plaintiffs cannot satisfy the pleading requirements by simply presuming that the alleged copying of a work on which they have no standing to sue (*Pounder Dub Mix II*), which allegedly copies a work they do not own (*Pounder Riddim*), somehow infringes a work they do own (*Fish Market*).  Put differently, Plaintiffs cannot claim infringement based on the alleged copying of work C (*Pounder Riddim*) or D (*Pounder Dub Mix II*) without pleading and proving either ownership of those works or that those

---

[8] For example, Luis Fonsi's *Impossible* is alleged to infringe Plaintiffs' works by either sampling or interpolating *Pounder Dub Mix II*'s rhythm section, and using a bass "with a similar texture" to the beats used in the *Fish Market* composition. (*See* SCAC ¶ 226.)

works copied protected original expression of *Fish Market* or *Dem Bow*'s lyrics. Plaintiffs cannot claim that any sound recording that sampled *Pounder Dub Mix II* – which they cannot sue on – also infringes *Fish Market* **"by extension."**[9]  Rather, they have to identify what in each of the allegedly infringing works copies what protectable elements of *Pounder Dub Mix II*, and what in *Pounder Dub Mix II* copies what protectable elements in *Fish Market* and how they have rights in each work.  Merely conclusorily claiming rights and infringement through a daisy chain of alleged "derivative" works is not sufficient.  *See, e.g., Johnson v. Gordon*, 409 F.3d 12, 19-20 (1st Cir. 2005) (a plaintiff "may bring a suit for unauthorized distribution of an unregistered derivative work" only if "the suit is ***based on elements 'borrowed' from a registered underlying work and not on elements original to the derivative work***"); *Merchant Transaction Sys., Inc. v. Nelcela, Inc*., No. CV 02-1954-PHX-MHM, 2009 WL 2355807, at *3 (D. Ariz., July 28, 2009).

Accordingly, beyond the impropriety of Plaintiffs' disjunctive assertion that one or more Defendants sampled or copied from either "*Pounder* and/or *Fish Market*," the SCAC's claims that *Fish Market* was infringed through alleged copying of *Pounder Dub Mix II,* or *Pounder Riddim*, or the music of *Dem Bow* fails to satisfy pleading requirements.  This pleading deficiency compels the dismissal of claims against 83 Defendants as to 127 works under FRCP 12(b)(6). (*See* Akley Decl., Ex. 4, ("§IV.B – Chain Infringement Theory").)

**C.   The SCAC Fails To Distinguish Between Sound Recordings And Musical Compositions**

To the extent that Plaintiffs are alleging infringement of a sound recording, such claims should be dismissed.

---

[9] *See e.g.*, SCAC ¶ 311 ("Specifically, [the allegedly infringing work] incorporates a sample taken directly from *Pounder* and, ***by extension***, *Fish Market."*); ¶ 312 (same); ¶¶ 316-19 (same); ¶¶ 321-22 (same); ¶ 361 (same); ¶ 372 (same); ¶¶ 492-495 (same); ¶ 497 (same); ¶ 559 (same).)

First, Plaintiffs do not claim to own the sound recordings for either *Dem Bow* or *Pounder Riddim*, only *Fish Market*, and the belated registration of *Pounder Dub Mix II* requires the dismissal of all claims based thereon.  Thus, all sound recording claims except as to *Fish Market* should be dismissed.

Second, as to the *Fish Market* sound recording, Plaintiffs improperly plead that either the *Fish Market* musical composition "***and/or***" the *Fish Market* sound recording have been infringed.  (*See, e.g.*, SCAC ¶¶ 204, 219, 277, 299, 300.)  *See, e.g.*, *Anthony v. Pro Custom Solar, LLC*, No. ED CV 20-01968 JAK (KKx), 2022 WL 1634870, at *4 (C.D. Cal. Jan. 21, 2022) (finding "and/or" allegations insufficient because it alleged one of two possibilities); *Steel Warehouse Cleveland, LLC v. Velocity Outdoor, Inc.*, No. 1:22-cv-01900, 2023 WL 2264257, at *2 (N.D. Ohio Feb. 28, 2023).

Third, contrary to the allegations of the SCAC (*i.e.*, SCAC ¶ 194), Exhibit A provides no information as to whether the Defendants' "songs"[10] infringed Plaintiffs' musical compositions or sound recordings.  Column four of Exhibit A confusingly says that the "Basis of Infringement" is a "Sample that copies composition and copied composition."[11]

The SCAC's failure to specify whether Plaintiffs' works were infringed by sound recordings or musical compositions fails to comply with FRCP 8.[12]  "Sound recordings and their underlying musical compositions are separate works with their own distinct

---

[10] The term "songs" refers to musical compositions, not sound recordings.  However, the "Involved Defendants" listed in column three of Exhibit A include both record labels – which own sound recordings – and music publishers – which own musical compositions.

[11] A "sample" refers to the exact duplication of a portion of one sound recording in another sound recording.  *See generally Newton v. Diamond*, 388 F.3d 1189, 1190 (9th Cir. 2004), *cert. denied*, 545 U.S. 1114 (2005); *Fharmacy Recs. v. Nassar*, 248 F.R.D. 507 (E.D. Mich. 2008), *aff'd*, 379 F. App'x 522 (6th Cir. 2010).

[12] 5 Wright and Miller, *Federal Practice and Procedure* § 1285 (3d Ed. 2004) ("A party should not set forth inconsistent, or alternative, or hypothetical statements in the pleadings unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting [his] claims …").

16

copyrights." *Drive-In Music Co., Inc. v. Sony Music Ent.*, No. CV 10-5613 CAS (JCGx), 2011 WL 13217236, at *3 (C.D. Cal. Apr. 18, 2011); *see also Newton*, 204 F. Supp. 2d at 1248-49 (same).[13]

Sound recordings and musical compositions are also owned by separate Defendants and the rights protected are totally different. "The exclusive right of the owner of a copyright in a sound recording . . . is limited to the right to duplicate the sound in the form of phonorecords or copies that directly or indirectly ***recapture the actual sounds fixed in the recording***." 17 U.S.C. § 114(b). "The exclusive rights of the owner of copyright in a sound recording . . . do not extend to the making or duplication of another sound recording that consists of an entirely independent fixation of other sounds, ***even though such sounds imitate or simulate those in the copyrighted sound recording***." *Id.*; *accord* 2 Nimmer on Copyright, § 8.05[A] (2021) (explaining that "mere similarity due to imitation will not suffice to establish infringement"). Thus, where the complaint does not allege that the actual sounds fixed in the sound recording were duplicated, the complaint will be dismissed. *See Marshall v. Huffman*, No. C 10-1665 SI, 2010 WL 5115418, at *4 (N.D. Cal. Dec. 9, 2010); *see also, e.g.*, *Drive-In Music*, 2011 WL 13217236, at *4; *Zany Toys, LLC v. Pearl Enters., LLC*, No. 13-5262 (JAP)(TJB), 2014 WL 2168415, at *12 (D. N.J. May 23, 2014).

Even where the SCAC alleges that the *Fish Market* sound recording has been sampled or reproduced, Plaintiffs' allegations consist solely of a conclusory assertion that the allegedly infringing work "incorporates an unauthorized sample of the *Fish*

---

[13] *See* U.S. Copyright Office, *Circular 50: Copyright Registration for Musical Compositions*, at 1-2 (Mar. 2023), *available at* https://www.copyright.gov/circs/circ50.pdf ("A musical composition and a sound recording are two separate works. A registration for a musical composition covers the music and lyrics, if any, embodied in that composition, but it does not cover a recorded performance of that composition. For example, the song 'Rolling in the Deep' and a recording of Aretha Franklin singing 'Rolling in the Deep' are two distinct works. The song itself (*i.e.*, the music and the lyrics) is a musical composition, and a recording of an artist performing that song is a sound recording.").

*Market* recording." (*See, e.g.,* SCAC ¶¶ 299, 303, 307, 323, 327, 368, 379, 383, 387, 391, 395, 399, 403, 407, 411, 415, 419, 423, 427, 431, 448, 452, 464, 468, 472, 476, 480, 488, 502, 506, 510, 534, 538, 580, 584, 588, 592, 596, 600, 604, 608, 612, 616, 633, 637, and 641.)  Plaintiffs must identify, but have not, specific, protectable portions of the *Fish Market* recording that they claim were duplicated in each specific allegedly infringing recording.  *See, e.g.*, *Zany Toys, LLC*, 2014 WL 2168415, at *12; *Marshall*, 2010 WL 5115418, at *4; *Lafarga v. Lowrider Arte Mag.*, No. SACV 11-1501-DOC (MLGx), 2014 WL 12573551, at * 3 (C.D. Cal. July 18, 2018) (complaint must plead "what specific material is copyrighted and what of defendants' work infringes").

The SCAC's failure to sufficiently plead a claim for infringement of a sound recording Plaintiffs own requires the dismissal of claims against 46 Defendants as to 59 works.  (*See* Akley Decl., Ex. 4, ("§IV.C – Failure to Allege Duplication of Owned or Timely-Registered Sound Recording").)

**D.     Even For Works Alleged To Infringe Timely-Registered Copyrights, Plaintiffs Fail To Satisfy The Relevant Pleading Standards**

Even where Plaintiffs plead ownership and standing – *e.g.*, the *Fish Market* composition, the *Fish Market* sound recording, and the lyrics of the *Dem Bow* composition – they fail to plead any claim for infringement.

**1.     Pleading By Exhibit**.

For 42 Defendants, ***there are no factual allegations setting forth how any of these Defendants allegedly infringed any of Plaintiffs' copyrighted works***.  Instead, Plaintiffs merely name these Defendants in Exhibit A and in the caption and allege their residency "upon information and belief."  But Exhibit A lacks any factual allegations of infringement, failing to satisfy the pleading standards.  *See Iqbal*, 556 U.S. at 678. Plaintiffs' claims against these 42 Defendants should be dismissed.  (*See* Akley Decl., Ex. 4, ("§IV.D.1A –Involving At Least One Defendant for Which The SCAC Contains No Factual Allegations").)

For other works, Plaintiffs either only list the allegedly infringing work on Exhibit A (*see, e.g.,* SCAC ¶¶ 470-473; 478-481; 582-585), or claim "the various defendants responsible for each of the identified works and the manner of copying are described in the accompanying Exhibit A." (*See, e.g., id.* at ¶¶ 473; 481; 585.)  But Exhibit A fails to describe any manner of copying nor does it identify what was copied in the infringed or allegedly infringing work, as required by *Twombly* and the authorities cited at Section II, *supra*.[14]  The deficiency and unintelligibility of the information set forth in Exhibit A is exemplified by the following excerpt:

| Primary Artist | Song | Involved Defendants | Basis of Infringement |
|---|---|---|---|
| Pitbull | Borracha (Pero Buena Muchacha) | SONY, Mr 305, Pitbull | Copied Composition |
| Pitbull | Chi Chi Bon Bon | SML, MR 305, SMP, SonyATV | Copied Composition |
| Pitbull | Como Yo Le Doy | SML, Mr 305, PeerMusic, Sony ATV, Pitbull | Sample that copies composition and copied composition |
| Pitbull | El Party | SML, Mr 305, SMP, SonyATV, Pitbull | Sample that copies composition and copied composition |

(SCAC, Ex. A at 23.)

As this excerpt illustrates, Exhibit A names multiple Defendants and disjunctively lists the "Basis of Infringement" as "Copied Composition," or "Sample that copies composition and copied composition" (itself incomprehensible).  It does not identify **which** of Plaintiffs' copyrighted works (if any) were allegedly infringed by **which Defendant** or what protectable elements were infringed by each Defendant.  *See*

---

[14] Exhibit A also fails to specify whether the infringing work is a sound recording or musical composition and what work was infringed.

*Martinez v. Robinhood Crypto, LLC*, No. 2:22-cv-2651-AB-KS, 2023 WL 2836792, at *4 (C.D. Cal. Feb. 28, 2023) (Birotte, J.) (dismissing complaint that grouped together defendants without identifying what the particular defendants specifically did wrong).

Exhibit A fails to provide Defendants with notice of which works are infringed; what elements were infringed; and what parts of Defendants' works (and whether sound recordings or compositions) are infringing, instead concealing whether claims are based on a work Plaintiffs do not own (*i.e.*, the *Dem Bow* sound recording, the *Pounder Riddim* sound recording, or any portion of the *Dem Bow* musical composition other than the lyrics) or a work that Plaintiffs have no standing to pursue (*Pounder Dub Mix II*).

Pleading by exhibit fails to satisfy FRCP 8 and 12(b)(6).  *See* Sections II and III, *supra*, and cases cited; *see also Lynwood Invs. CY Ltd. v. Konovalov*, No. 20-cv-03778-MMC, 2022 WL 3370795, at *19-20 (N.D. Cal. Aug. 16, 2022); *Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. C 09-05659 WHA, 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011); *Synopsys, Inc. v. AtopTech, Inc.*, No. C 13-cv-02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013); *Plakhova v. Hood*, No. CV 16-08245 TJH (FFMx), 2017 WL 10592315, at *1 (C.D. Cal. June 20, 2017) (in the context of copyright infringement, "specificity requires the complaint to identify the exact works copied, and list the identifiable instances of copying").

Plaintiffs' pleading by exhibit is deficient and requires the dismissal of claims against 266 Defendants as to 1,528 works.  (*See* Akley Decl., Ex. 4, ("§IV.D.1B – Improper Pleading by Exhibit").)

## 2.    Deficient Allegations Of The Infringement Of The *Fish Market* Composition.

The SCAC provides transcriptions showing alleged similarities for only **33 of the 1,821 to 4,000** allegedly infringing works.  (*See, e.g.*, SCAC ¶¶ 221-229; 279-296; 336-344.)  Plaintiffs thus deliberately did not properly plead for virtually all of the allegedly infringing works.

For over 1,600 works, the SCAC lacks any non-conclusory allegations of infringement.  Instead, often using the improper "and/or" allegation, Plaintiffs conclusorily state those works "incorporate . . . a verbatim copy of the Fish Market Composition as the primary rhythm/drum section."  *See, e.g.,* SCAC ¶ 379 ("Each of the Becky G Works incorporates an unauthorized sample of *Fish Market* and/or a verbatim copy of the *Fish Market* composition as the primary rhythm / drum section of each work.").

Such conclusory allegations do not satisfy *Twombly*, which requires a plaintiff to identify in its pleading "***which portions, aspects, lyrics or other elements of the two works are substantially similar***," and to "***compar[e] those elements for proof of copying***.'"  *Hayes*, 2012 WL 12887393, at *5; *see also* Section II, *supra*, and cases cited.

The SCAC's failure to identify the alleged similarities of Defendants' works to the *Fish Market* composition requires the dismissal of claims against 271 Defendants as to 1,685 works.  (*See* Akley Decl., Ex. 4 ("§IV.D.2 – No Similarity to *Fish Market* Composition Identified").)

### 3. Deficient Allegations Of The Infringement Of The *Fish Market* Sound Recording

Defendants have already explained above why Plaintiffs' sound recording claim does not satisfy the *Twombly* standard, requiring the dismissal of claims against 264 Defendants as to 1,687  works.  (*See* Akley Decl., Ex. 4 ("§IV.D.3 – Deficient Allegations of Infringement of the *Fish Market* Sound Recording").)

### 4. Deficient Allegations Of The Infringement Of The Lyrics Of The *Dem Bow* Composition

Plaintiffs' registration is only for the *Dem Bow* lyrics and while the SCAC claims that certain works have copied *Dem Bow*'s lyrics (SCAC ¶¶ 665-666), not a single lyrical similarity is identified, requiring the dismissal of these claims.  For example, Plaintiffs assert that the songs "Calenton" and "Golpe de Estado" "include[] elements

1   that are substantially similar if not virtually identical to significant portions of *Dem*

2   *Bow*." (*See* SCAC. ¶¶ 273-275) But no lyrical similarities are identified. *See Chestang*

3   *v. Yahoo Inc.*, No. 2:11-cv-00989-MCE-KJN PS, 2012 WL 3915957, at *4 (C.D. Cal.

4   Sept. 7, 2012) (dismissing lyric infringement claim where complaint did "not identify

5   ***which*** particular lyrics were allegedly used" (emphasis in original)).

6       Plaintiffs' failure to identify the supposed lyrical similarities in Defendants'

7   works requires the dismissal of claims against 23 Defendants as to 12 works. (*See*

8   Akley Decl., Ex. 4 ("§IV.D.4 – No Similarity to *Dem Bow* Lyrics Identified").)

9   **E.     The SCAC Is The Quintessential "Shotgun Pleading."**

10      The SCAC is replete with confusing, inconsistent, and conclusory allegations,

11  making it impossible for Defendants to respond to the claims against them. Such

12  "shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of

13  allegations that make it difficult or impossible for defendants to make informed

14  responses to the plaintiff's allegations. They are unacceptable." *Martinez*, 2023 WL

15  2836792, at *4 (Birotte, J.); *see also Fournerat*, 2020 WL 541838, at *3 (Birotte, J.)

16  ("Prolix, confusing complaints … impose unfair burdens on litigants and judges . . ."

17  (*quoting McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996))).

18      Here, the shotgun pleading masks which works Plaintiffs do not own, which

19  elements are protectable, and what works infringe such elements. To illustrate, 24 of

20  Juan Carlos Ozuna Rosado's works are identified in the SCAC, but none are listed in

21  Exhibit A. (*Compare* SCAC ¶¶ 556-577, *with* SCAC Ex. A at 21-22; *see also, e.g.*,

22  "Nicky Jam Allegations" SCAC ¶¶ 545-555 (34 songs alleged in SCAC excluded from

23  Ex. A); "Zion & Lennox Allegations" SCAC ¶¶ 643-647 (27 works alleged in SCAC

24  excluded from Exhibit A); "Zion Allegations" SCAC ¶¶ 639-642 (entirely excluded

25  from Ex. A).

26      Conversely, as noted above, numerous Defendants are mentioned in Exhibit A,

27  without any accompanying allegations of infringement in the SCAC. The SCAC makes

28  it impossible to know what protectable elements in works owned by Plaintiffs are

1   allegedly infringed and what it is in Defendants works, whether compositions or sound

2   recordings, that is infringing.  In short, the SCAC generally violates Rule 8 and is

3   defective for that reason as well. [15]

4   **F.   In The Few Instances Where Plaintiffs Identify Alleged "Similarities"**

5   **Between A Defendant's Work And *Fish Market*, The Allegations Concern**

6   **Non-Protectable Elements And Demonstrate No Similarity**

7   For the 33 works for which Plaintiff provided transcriptions (*see* SCAC ¶¶ 221-

8   229; 280-296; 336-344), the alleged similarities are not protectable under copyright.

9   For these works, Plaintiffs point to alleged similarities in the particular type of

10   ***instrument*** being played, or the "sonic characteristics" of the instrumentation.  (*See,*

11   *e.g.*, SCAC ¶ 180 (referring to use in *Fish Market* of "percussion instruments"); ¶ 648

12   (same); ¶ 221 (alleging that "kick, snare, hi-hat, and bass are prominent in the mix of

13   [the allegedly infringing work], which emulates the sonic texture of *Fish Market*");

14   ¶ 222 (same): ¶ 223 (same); ¶ 288 (same, and referring also to "identifiable factors of

15   drum pattern, drum sound and instrumentation"); ¶ 292 (same); ¶ 285 ("the bongo drum

16   serves well at capturing the overall feel and sonic characteristics found in *Fish*

17   *Market*"); ¶ 286 (work "emulates the sonic characteristics of *Fish Market* with use of

18   similar instruments").)

19   The instrumental choices are not part of the musical composition copyright.  *See*

20   *Gray*, 28 F.4th at 99 ("[T]he choice of a particular instrument . . . to play a tune relates

21   to the performance or recording of a work" and not to the musical composition

22   underlying such performance or recording, "which are protected by distinct

23   copyrights"); *id*. ("[A] copyright to a musical work does not give one the right to assert

24   ownership over the sound of a synthesizer any more than the sound of a trombone or a

25   banjo.").  So-called "sonic characteristics" of a work are also not protectable elements

26

27   _____

    [15] Because this argument applies to Plaintiffs' entire SCAC, Exhibit 4 to the Akley Decl.

28   does not specify the works or Defendants because it applies to all.

of a musical composition.  *See Gray*, 28 F.4th at 99 ("timbre is a way of describing a sound's quality" and is thus compositionally irrelevant).  And absent duplication of the recording, emulating the sound is not infringement.  (*See* Section III.C, *supra* and cases cited.)

With respect to these 33 works, Plaintiffs also point to purported similarities in drum patterns.  But the transcribed drum beats purportedly contained in *Fish Market* and *Besame* show that the only "similarities" are that the kick drum in both works are playing a basic quarter note pattern in 4/4 time.  (*See* SCAC ¶ 221).  Similarly, the transcribed drum beats purportedly contained in *Fish Market* and *Calypso* show that the only "similarities" are that the kick drum in both works are playing a basic quarter note pattern in 4/4 time.  (*See* SCAC ¶ 222).

But rhythm and tempo, as a matter of law, are commonplace and unprotectable. *See, e.g., Lane v. Knowles-Carter*, 14 CIV. 6798 PAE, 2015 WL 6395940, at *5 (S.D.N.Y. Oct. 21, 2015) ("meter and tempo" and "common rhythms [and] song structures" not protectable); *Currin v. Arista Recs., Inc.*, 724 F. Supp. 2d 286, 291 (S.D.N.Y. Apr. 15, 2010 ("courts have held that certain commonly-used elements such as . . . the use of the eight-measure phrase, or the use of 4/4 rhythm, are not, in themselves, protectable"); *Rose v Hewson,* No. 17-cv-1471, 2018 WL 626350, at *7 (S.D.N.Y. Jan. 30, 2018) ("general rhythmic style" not protectable); *McDonald v. West*, 138 F. Supp. 3d 448, 458 (S.D.N.Y. 2015), *aff'd*, 669 Fed. Appx. 59 (2d Cir. 2016) (neither tempo nor a "rhythm's style or general feel" are copyrightable); *Batiste v. Najm*, 28 F. Supp. 3d 595, 616 (E.D. La. 2014) ("courts have been consistent on finding rhythm to be unprotectable."); *see also Skidmore*, 952 F.3d at 1070 ("'[A] musical building block . . . is something that no one can possibly own.'").

In *Gray v. Perry*, No. 2:15-CV-05642-CAS-JCx, 2020 WL 1275221, at *4-5 (C.D. Cal. Mar. 16, 2020), *aff'd*, 28 F.4th 87 (9th Cir. 2002), the court noted that "many if not most of the elements that appear in popular music are not individually protectable," and stated that "[m]usical elements that are 'common or trite' – such as

24

the '*use of a long-short-long rhythm*' . . . certain '***tempos***,' . . . the ***alternating*** ***'emphasis of strong and weak beats*,' '*syncopation*,' . . . or the use of 'basic musical devices in different manners,' . . . *are, accordingly, not protectable*." *Id.* (citing cases). "***Nor are other elements*** 'ubiquitous in popular music' *like* '*rhythms*,' 'glissando[s],' 'chants,' 'the use of horns,' or 'jingling or pulsing synthesizer element[s]' ***entitled to*** ***protection***. *Id.* (citing cases).

In addition to having no claim to the instruments used to play a musical work, or to tempo or rhythm, the comparative transcriptions show that the alleged similarities between the allegedly infringing works and *Fish Market* are non-existent. For example, the rhythmic pattern being played by the tom, snare, hi hat and bass in *Besame* are materially different than the pattern being played by those instruments in *Fish Market*. Further, there are no tambourine or timbale rhythms in *Besame*. The transcriptions reveal that the *Besame* drum beats are not similar (let alone substantially similar) to the *Fish Market* drum beat. The rhythmic pattern being played by the snare, hi hat and bass in *Calypso* are different than the pattern being played by those instruments in *Fish Market*. There are no hi hat, tom, tambourine or timbale rhythms in *Calypso*. The transcriptions reveal that the drum beats are not even similar (let alone substantially similar) to the transcribed *Fish Market* drum beat. A review of the other comparative transcription pairs (SCAC ¶¶ 223-229; 280-296; 336-344) shows the same lack of similarity to any protectable element of *Fish Market*.

Here, based on Plaintiffs' own transcriptions, no reasonable juror could find any actionable similarity between any protectable element of *Fish Market* and any of the 33 works for which transcriptions were provided in the SCAC.[16] Plaintiffs' claims

---

[16] *See, e.g., Christianson v. West Pub. Co*., 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *Steward v. West*, CV13-02449 BRO (JCx), 2014 WL 12591933, at *10 (C.D. Cal Aug. 14, 2014) (granting 12(c) motion because "it is clear from the recordings that 'the average audience, or ordinary observer,' would

1  concerning these 33 works should also be dismissed.  (*See* Akley Decl., Ex. 4 ("§IV.F

2  –No Substantial Similarity to Protectable Elements of *Fish Market* Composition").)

3  **G.    Plaintiffs' Inaction For Thirty Years Bars Their Claims And Remedies**

4        Plaintiffs neither filed any action nor registered any copyrights until 2020 – at

5  least ***thirty years*** after the creation of the works.    That failure raises estoppel and

6  implied license issues.

7        The doctrine of equitable estoppel bars Plaintiffs' claims for infringement.  "The

8  gravamen of estoppel . . . is misleading and consequent loss."  *Petrella v. Metro-*

9  *Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1977 (2014); *see also Interscope Recs. v. Time*

10 *Warner, Inc.*, CV 10-1662 SVW (PJWx), 2010 WL 11505708, at *12 (C.D. Cal. June

11 28, 2010) ("A copyright holders' silence or inaction in the face of an infringement can

12 give rise to an estoppel defense, particularly where such inaction is prolonged.");

13 *Tavory v. NTP, Inc*., 495 F. Supp. 2d 531, 537 (E.D. Va. 2007) (precluding infringement

14 claim on equitable estoppel grounds where "Plaintiff's delay in asserting his authorship

15 has been excessive and unreasonable"), *aff'd*, 297 F. App'x 976 (Fed. Cir. 2008); *Field*

16 *v. Google*, 412 F. Supp. 2d 1106, 1117 (D. Nev. 2006) ("A plaintiff is estopped from

17 asserting a copyright claim if he has aided the defendant in infringing or otherwise

18 induced it to infringe or has committed overt acts such as holding out . . . by silence or

19 inaction").

20       Beyond their failure to register any claim to the *Fish Market* composition, sound

21 recording and lyrics of *Dem Bow*, Plaintiffs never sued Halliburton over *Pounder*

22 *Riddim*, which Plaintiffs now claim is a "derivative work" of either *Fish Market* or *Dem*

23 *Bow* (SCAC ¶ 182) and which Plaintiffs allege they knew of at creation (Plaintiff Barrett

24 is alleged to have "directed" its creation) (*id*.).  And as noted above, they had no right

25 to register *Pounder Dub Mix II* in March 2023.

26

27

28 not recognize these works as the same.").

1    These failures constitute misleading inaction, during which an entire genre of

2    reggaeton music developed, which Plaintiffs now claim to own. At the least, this

3    inaction should bar Plaintiffs' claims with respect to works created prior to 2020 or that

4    include *Pounder Riddim,* or bar Plaintiffs' claims to injunctive relief or limit

5    profits. *See Petrella,* 134 S. Ct. at 1978-79 ("in awarding profits, account may be taken

6    of copyright owner's inaction until infringer had spent large sums exploiting the work

7    at issue," *citing Haas* v. *Leo Feist, Inc.*, 234 F. 105, 107–108 (S.D.N.Y. 1916)).[17]

8    Moreover, Section 412 precludes an award of statutory damages or attorneys'

9    fees for any alleged infringement of copyright "commenced after first publication of the

10    work, and before the effective date of its registration, unless such registration is made

11    within three months after the first publication of the work." Plaintiffs did not register

12    any claim to any work until over ***thirty years after the work's creation***. (Akley Decl.

13    Exs. 1-3; SCAC ¶¶ 179-182). And nowhere in the SCAC do Plaintiffs identify ***when***

14    any act of infringement is alleged to have occurred.

15    **H.    Plaintiffs Fail To State A Claim For Secondary Liability.**

16    Plaintiffs' secondary liability claims for vicarious and contributory copyright

17    infringement are at least as defective as their direct infringement claims.

18    A claim for contributory infringement must plead that a defendant "(1) has

19    knowledge of a third party's infringing activity, and (2) induces, causes, or materially

20    contributes to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494

21    F.3d 788, 794 (9th Cir. 2007). Alternatively, to show that a defendant is vicariously

22    liable for copyright infringement, the plaintiff must allege that "(1) the defendant

23    controls the underlying infringement, and has a right and the ability to supervise the

24    conduct and (2) the defendant has a direct financial interest in the infringing activity."

25

26

27    _____

28    [17] Laches remains applicable to bar requests for injunctive relief (SCAC, "Prayer for Relief," at p. 227.) *See Petrella*, 134 S. Ct. at 1968.

27

*Sound & Color, LLC v. Smith*, No 2:22-cv-01508-AB (ASx), 2023 WL 2821881, at *15 (C.D. Cal. Feb. 28, 2023) (Birotte, J.) (quoting *Perfect 10, Inc.*, 494 F.3d at 795)).

Without particularization and on information and belief, Plaintiffs allege that "Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction, distribution and publication of the Infringing Works." (SCAC ¶ 679.) Plaintiffs further allege that an amorphous group of "producers (including, but not limited to Sony, Ultra, UMG) underwrote, facilitated, and participated in the illegal copying and infring[ement]." (*Id.*) Plaintiffs further allege, on information and belief, that "Defendants and each of them, are vicariously liable for the infringement" because "they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct." (SCAC ¶ 680.)

These conclusory allegations do not state a claim for secondary liability. First, one must plead an underlying infringement. "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Recs. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2000). As shown above, because Plaintiffs have not pleaded any viable claim of direct infringement, their vicarious infringement claim fails. *See BWP Media USA, Inc. v. Linkbucks.com, LLC*, CV 14-689-JFW (SHx), 2014 WL 12596429, at *3 (C.D. Cal. Aug. 8, 2014) ("[A]ll theories of secondary liability for copyright . . . infringement require some underlying direct infringement by a third party.").

Plaintiffs' conclusory omnibus-style allegations are also implausible under *Twombly*. Plaintiffs allege that over more than 30 years, hundreds of competing Defendants, scattered around the world, acted in concert to create sound recordings or musical compositions, in which most of them have no interest. Plaintiffs merely recite the elements of a claim without any facts linking any Defendants or showing that any Defendant knew about infringing conduct, induced, caused, or materially contributed to such conduct, or that any Defendant had the right and ability to supervise any allegedly infringing conduct. (*See id.* at ¶¶ 678-683.) Such pleading cannot survive a motion to

28

dismiss.  *See, e.g.*, *Kilina Am., Inc. v. SA & PW, Inc*,. CV 19-03786-CJC (KSx), 2019 WL 8685066, at *3 (C.D. Cal. Aug. 27, 2019); *see also Sound & Color, LLC*, 2023 WL 2821881, at *15 (dismissing secondary liability claims for failure to allege specific facts regarding knowledge, material contribution, inducement, or the right and ability to supervise the infringing conduct).

Plaintiffs generically refer to "Defendants" without pleading who did what and with respect to whom.  Claims for vicarious and contributory liability must be dismissed where, as here, Plaintiffs assert all of their claims "against all [D]efendants and allege[]that all [D]efendants engaged in the same broad conduct, without providing sufficient non-conclusory facts that would assist each [D]efendant in deciphering" the basis for Plaintiffs' claims against each of Defendants.  *See Sound & Color*, 2023 WL 2821881, at *16; *Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1074 (E.D. Cal. 2021) ("A plaintiff who sues multiple defendants must allege the basis of [its] claims against each defendant."); *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006) (finding that "plaintiffs' allegations [were] insufficient in that they [were] ascribed to defendants collectively rather than to individual defendants"); *Fournerat*, 2020 WL 541838, at *3 (Birotte, J.) (dismissing complaint that did not "clearly and concisely identify the nature of each of Plaintiff's legal claims, the specific facts giving rise to each claim, and the specific conduct of each Defendant or Defendants against whom each claim is brought"); *see also Kabbaj v. Obama*, 568 F. App'x 875, 880 (11th Cir. 2014).

Plaintiffs are required to, and have not, identified some ***third party*** direct infringer before alleging that Defendants are liable for vicarious and contributory infringement.  *See A&M Recs.*, 239 F.3d at 1013 n.2.  As this Court has explained, "a defendant cannot be secondarily liable for their own direct infringement" and a

plaintiff's claims for secondary liability must be based on some other infringing conduct. *Sounds & Color*, 2023 WL 2821881, at *16.[18]

## V.   CONCLUSION

Plaintiffs have had **six opportunities** to properly plead claims of infringement and have failed to do so.  For all of the reasons set forth above the SCAC should be dismissed without leave to further amend.  *See, e.g., Zeleny*, 2022 WL 3013138, at *3 (leave to amend may be denied where plaintiff repeatedly failed to cure deficiencies by amendments previously allowed) (Birotte, J.).

Alternatively, and at a minimum, the SCAC should be dismissed and Plaintiffs should be ordered to replead claims for ***direct*** infringement ***solely*** of *Fish Market* and, if any such claim exists, the lyrical elements of *Dem Bow*, and to plead such claims with the requisite particularity and specificity.  That would include pleading whether each allegedly infringing work is a sound recording or a musical composition, whether the infringement is of the *Fish Market* sound recording (*i.e.,* is a "sample" claim) or musical composition, what protectable elements of the *Fish Market* composition or sound recording are substantially similar to or reproduced in what portions of each allegedly infringing work, and which defendants engaged in what infringing conduct concerning each such work.

Dated: June 15, 2023          **PRYOR CASHMAN LLP**


                          By:    */s/ Donald S. Zakarin*

                          Donald S. Zakarin (*dzakarin@pryorcashman.com*)
                          Frank P. Scibilia (*fscibilia@pryorcashman.com*)
                          James G. Sammataro (*jsammataro@pryorcashman.com*)
                          Benjamin S. Akley (*bakley@pryorcashman.com*)
                          Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)
                          Alexandra Nasar (*anasar@pryorcashman.com*)

---

[18] Because this argument should result in the dismissal of <u>all</u> secondary liability claims, the Pryor Cashman-Represented Defendants do not refer to the schedule attached as Exhibit 4 to the Akley Decl. for the specific works and/or defendants affected.

1

## <u>**LOCAL RULE 11.6.2 CERTIFICATION**</u>

2

The undersigned, counsel of record for Pryor Cashman-Represented Defendants,

3

certifies that this brief contains 9896 words and 30 pages, which complies with the word

4

limit set by court order dated June 8, 2023.

5

6

Dated: June 15, 2023

7

**PRYOR CASHMAN LLP**

8

9

By:   */s/ Donald S. Zakarin*

10

Donald S. Zakarin (*dzakarin@pryorcashman.com*)
Frank P. Scibilia (*fscibilia@pryorcashman.com*)

11

James G. Sammataro (*jsammataro@pryorcashman.com*)
Benjamin S. Akley (*bakley@pryorcashman.com*)

12

Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)

13

Alexandra Nasar (*anasar@pryorcashman.com*)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31