UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:21-cv-02840-AB-AJR | Date: | May 28, 2024 |
|---|---|---|---|

| Title: | *Cleveland Constantine Browne et al v. Rodney Sebastian Clark Donalds et al* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**  **[In Chambers] ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT**

Before the Court are five Motions to Dismiss (collectively, "Motions to Dismiss") filed by:

- 19 Defendants represented by the law firm Chassman & Seelig, LLP ("MTD 1," Dkt. No. 322);
- Defendant Vladimir Felix p/k/a DJ Bass ("MTD 2," Dkt. No. 324);
- Defendant Camilo Echeverri p/k/a Camilo ("MTD 3," Dkt. No. 327);
- Defendants Benito Antonio Martinez Ocasio p/k/a Bad Bunny and Rimas Music, LLC ("MTD 4," Dkt. No. 330); and
- 89 Defendants represented by the law firm Pryor Cashman LLP ("MTD 5," Dkt. No. 331) (collectively, "Moving Defendants").[1]

---

[1]  Because the Motions to Dismiss raise similar or overlapping arguments, the Court addresses the motions collectively for efficiency purposes.

Plaintiffs filed Oppositions to the Motions to Dismiss ("MTD 1 Opp'n," Dkt. No. 377; "MTD 2 Opp'n," Dkt. No. 378; "MTD 3 Opp'n," Dkt. No. 376; "MTD 4 Opp'n," Dkt. No. 375; "MTD 5 Opp'n," Dkt. No. 374). Moving Defendants filed Replies ("MTD 1 Reply," Dkt. No. 393; "MTD 4 Reply," Dkt. No. 395; "MTD 5 Reply," Dkt. No. 396).[2]

Several defendants filed motions for joinder in MTD 4 and/or MTD 5 ("Motions for Joinder").[3] Defendants Empire Distribution, Inc. and William Sami Etienne Grigahcine filed a Motion for Joinder in MTD 5 ("MFJ 1") and a Motion for More Definite Statement ("MDS"). (Dkt. No. 332.) Defendants Cinq Music Group, LLC and Cinq Music Publishing, LLC filed a Motion for Joinder in MTD 5 ("MFJ 2," Dkt. No. 333). Defendants Aubrey Drake Graham and Ovo Sound, LLC (erroneously sued as Sound 1.0 Catalogue LP) filed a Motion for Joinder in MTD 5 ("MFJ 3," Dkt. No. 336). Defendant Rich Music, Inc. filed a Motion for Joinder in MTD 4 and MTD 5 ("MFJ 4," Dkt. No. 337). Defendants Nelson Díaz Martinez and José Ángel López Martínez filed a Motion for Joinder in MTD 4 and MTD 5 ("MFJ 5," Dkt. No. 341). Defendant Isolation Network, Inc. filed a Motion for Joinder in MTD 5 ("MFJ 6," Dkt. No. 362). Defendant Kemosabe Records filed a Motion for Joinder in MTD 5 ("MFJ 7," Dkt. No. 370). Plaintiffs filed Oppositions to the Motions for Joinder ("MFJ 1 Opp'n," Dkt. No. 380; "MFJ 2 Opp'n," Dkt. No. 381; "MFJ 3 Opp'n," Dkt. No. 379; "MFJ 4 Opp'n," Dkt. No. 385; "MFJ 5 Opp'n," Dkt. No. 384; "MFJ 6 Opp'n," Dkt. No. 382; "MFJ 7 Opp'n," Dkt. No. 383). Defendants filed respective Replies ("MFJ 1 & MDS Reply," Dkt. No. 400; "MFJ 2 Reply," Dkt. No. 398; "MFJ 3 Reply," Dkt. No. 399; "MFJ 5 Reply," Dkt. No. 401; "MFJ 6 & MFJ 7 Reply," Dkt. No. 397).[4] The Motions for Joinder (Dkt. Nos. 332, 333, 336, 337, 341, 362, 370) are **GRANTED**.

The Court heard oral argument on October 20, 2023, and took the matter under submission. Plaintiffs filed a Notice of New Case Law on November 3, 2023 (Dkt. No. 413), and several Defendants filed responses to the Notice or joined the responses (Dkt. Nos. 414–416).

For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** the five Motions to Dismiss and **DENIES** the Motion for More Definite Statement.

---

[2]  No replies were filed for MTD 2 and MTD 3.

[3]  MTD 1 Defendants also join the motions filed by other Defendants. *See* MTD 1 at 22.

[4]  No reply was filed for MFJ 4.

## I.    BACKGROUND

### A.    Factual Background

This action involves a copyright dispute. Plaintiffs are suing over 100 defendants for direct and secondary copyright infringement. The following allegations are taken from Plaintiffs' Second Consolidated Amended Complaint ("SCAC"). (Dkt. No. 305.)

Plaintiff Cleveland Constantine Brown p/k/a Clevie ("Mr. Browne") is a composer, musician, and producer known for, *inter alia*, pioneering the use of drum machines in reggae. SCAC ¶ 173. Wycliffe Anthony Johnson p/k/a/ Steely ("Mr. Johnson") was a composer, musician, and producer. *Id*. ¶ 174. Together, Mr. Browne and Mr. Johnson formed the duo "Steely & Clevie," and worked on numerous "genre-defining projects." *Id*. ¶ 175. Plaintiff Steely & Clevie Productions Ltd. is the production company of Mr. Browne and Mr. Johnson. *Id*. ¶ 176. Ephraim Barrett p/k/a Count Shelly ("Mr. Barrett") was a producer. *Id*. ¶ 177.

In 1989, Mr. Browne and Mr. Johnson wrote and recorded the instrumental song *Fish Market*. *Id*. ¶ 179. They own registered copyrights in the *Fish Market* sound recording and composition. *Id*. *Fish Market* includes a drum pattern that "differentiates it from prior works." *Id*. ¶ 180. *Fish Market* features, *inter alia*, a programmed kick, snare, and hi-hat playing a one bar pattern; percussion instruments, including a tambourine playing through the entire bar, a synthesized 'tom' playing on beats one and three, and timbales that play a roll at the end of every second bar and free improvisation over the pattern for the duration of the song; and a synthesized Bb (b-flat) bass note on beats one and three of each bar, which follows the synthesized 'tom' pattern. *Id.* The combination of these elements is "original" to Mr. Browne and Mr. Johnson and was "groundbreaking upon its creation." *Id.* The *Fish Market* sound recording was recorded in Jamaica and originally released in the United States through VP Records before its release in Jamaica. *Id*. ¶ 185.

Mr. Browne and Mr. Johnson co-authored the song *Dem Bow* with the artist Shabba Ranks and co-own the song's copyrights. *Id*. ¶ 181. They have registered the copyright in the *Dem Bow* composition. *Id*. *Dem Bow*'s instrumental is an alternative mix of *Fish Market*, based on the same multi-track recording. *Id*. *Dem Bow* was originally released in the United States through VP Records before its release in Jamaica. *Id*. ¶ 186. *Dem Bow* was a massive hit and a critical commercial success in the international reggae dancehall scene. *Id*. ¶ 181. *Dem Bow*'s

instrumental is "iconic" and has been "widely copied in songs in the reggaeton music genre." *Id.*

In 1990, the musician Denis Halliburton p/k/a Dennis the Menace ("Mr. Halliburton"), at the direction of Mr. Barrett, performed the instrumental of *Dem Bow* and created a derivative work referred to as the "*Pounder Riddim*."[5] *Id.* ¶¶ 178, 182. The composition played by Mr. Halliburton is "virtually identical" to *Fish Market*. *Id.* ¶ 183. The *Pounder Riddim* "copied" *Dem Bow*'s "instrumental, sound, arrangement, and composition—including the drum pattern, the drum components, including the kick, snare, hi-hat, tom, timbales[, and] the full baseline." *Id.*

The *Pounder Riddim* was then used to create the sound recording of *Ellos Benia*, a Spanish-language version of *Dem Bow*, and the sound recording of *Pounder Dub Mix II*. *Id.* ¶ 182. The *Pounder Riddim* sound recording and *Pounder Dub Mix II* sound recording both feature the *Fish Market* composition. *Id.* ¶ 184. The *Pounder Riddim* and *Pounder Dub Mix II* sound recordings were both created in the United States and released in the United States in 1990 on vinyl by the label Shelly's Records. *Id.* ¶ 187. The *Pounder Dub Mix II* sound recording has been "widely copied and/or sampled" by Defendants. *Id.* ¶ 188.

Plaintiffs bring this action against Defendants for infringement of their copyrights in the *Fish Market* composition, *Fish Market* sound recording, *Dem Bow* composition, and *Pounder Dub Mix II* sound recording (collectively, "the Subject Works"). *Id.* ¶ 189. Plaintiffs claim that "[a]ny copying, interpolating, or sampling of the *Pounder Riddim* is a copying or interpolation of *Fish Market*'s composition." *Id.* ¶ 188.

Defendants are responsible for the creation and exploitation of the allegedly infringing works which are described in the SCAC or listed in the separate exhibit attached to the SCAC. *Id.* ¶ 190; *see* SCAC Ex. A (Dkt. No. 305-1). The allegedly infringing works are each commercial songs that have garnered millions, if not billions, of plays and streams, and resulted in significant revenue and profits for each respective Defendant. *Id.* ¶ 190. Defendants never sought or obtained a license, authorization, or consent from Plaintiffs to use or copy any elements, portions, or versions of *Fish Market*, *Dem Bow*, or *Pounder Dub Mix II* in

---

[5] The term "riddim" in the reggae dancehall genre refers to an instrumental track that can be used to record multiple different songs. SCAC ¶ 183 n.4. The term "riddim" in dancehall, like the term "beat" in hip hop, encompasses the entire track without vocals. *Id.*

connection with any of the allegedly infringing works. *See id*. ¶ 191–92. Despite notice of the infringement, each Defendant continues "to exploit" and generate revenue and profits from the allegedly infringing works, in violation of Plaintiffs' rights in the Subject Works. *Id.* ¶ 192.

The allegedly infringing works are divided into 58 groups.[6] *See id*. ¶ 193. The groups of allegedly infringing works are itemized as "works written, recorded, and performed" by: (1) El Chombo, (2) Luis Fonsi, (3) Daddy Yankee, (4) Abraham Mateo, (5) Alex Sensation, (6) Anitta, (7) Anuel AA, (8) Anuel AA & Ozuna, (9) Bad Bunny, (10) Becky G, (11) Cali & El Dandee, (12) Camilo, (13) Carlos Vives, (14) Casper Magico, (15) CNCO, (16) Dalex, (17) Danna Paola, (18) Danny Ocean, (19) De La Ghetto, (20) Dimelo Flow, (21) DJ Snake, (22) Drake, (23) Enrique Iglesias, (24) Farruko, (25) Feid, (26) Gente De La Zona, (27) Greeicy, (28) Ivy Queen, (29) J Balvin, (30) Jason Derulo, (31) Jawsh 685, (32) Jay Wheeler, (33) Jhay Cortez, (34) Justin Quiles, (35) Karol G, (36) Lenny Tavarez, (37) Los Legendarios, (38) Major Lazer, (39) Maluma, (40) Manuel Turizo, (41) Myke Towers, (42) Natti Natasha, (43) Nicky Jam, (44) Ozuna, (45) Paulo Londra, (46) Pitbull, (47) Rauw Alejandro, (48) Reik, (49) Ricky Martin, (50) Rosalia, (51) Sech, (52) Silvestre Dangond, (53) Sky, (54) Wisin, (55) Wisen & Yandel, (56) Wolfine, (57) Yandel, and (58) Zion & Lennox. *See id.* The allegedly infringing works in groups (3)-(58) involve "a myriad of additional performers and featured artists on each of the respective works." *See id*. The entity Defendants were involved in the "exploitation, distribution, and publishing" of the allegedly infringing works. *See id*. ¶ 194.

The SCAC goes on to provide specific allegations of infringement for "notice and illustrative purposes," setting out a selection of allegedly infringing songs, Defendants involved in the songs, and elements of the Subject Works incorporated in the songs. *See* SCAC ¶¶ 201–647. The exhibit attached to the SCAC contains a chart which provides a list of the allegedly infringing songs, Defendants responsible for each song, and the manner of copying alleged. *See* SCAC Ex. A.

---

[6] The SCAC states that "the Infringing Works can be divided into 59 groups," but lists only 58 groups.

## B.     Procedural Background

Plaintiffs initially brought three separate actions: *Cleveland Constantine Browne et al. v. Rodney Sebastian Clark Donalds et al.*, No. 2:21-cv-02840-AB-AFM; *Cleveland Constantine Browne et al. v. Luis Alfonso Rodriguez Lopez-Cepero et al.*, No. 2:21-cv-08295-AB-AFM; and *Cleveland Constantine Browne et al. v. Ramon Luis Ayala Rodriguez et al.*, No. 2:22-cv-03827-AB-AFM (transferred from the Southern District of New York). (*See* Dkt. No. 93.) On July 15, 2022, the three cases were consolidated. (*Id.*) Plaintiffs filed a Consolidated Complaint on July 29, 2022. (Dkt. Nos. 99.) On September 23, 2022, Plaintiffs filed a First Consolidated Amended Complaint, expanding the scope of Plaintiffs' claims to include additional subject works, additional defendants, and additional allegedly infringing works. (*See* Dkt. No. 116.) On April 21, 2023, Plaintiffs filed a Second Consolidated Amended Complaint.[7] (Dkt. No. 305.)

---

[7] The SCAC asserts claims against Defendants Eric Alberto-Lopez, Stephanie Victoria Allen, Anton Alvarez, Jose Aponte Santi, Pablo Arevalo Llano, Giordano Ashruf, BMG Rights Management, LLC, Baby Records, Inc., Rashid Badloe, Shareef Badloe, Edgar Barrera, Justin Bieber, Victor B Cabrera, Richard Camacho, Carbon Fiber Music, Inc., Rafael Castillo Torres, Andres Castro, Abraham Mateo Chamorro, Cinq Music Group, LLC, Cinq Music Publishing, LLC, Erick Brian Colon, Concord Music Group, LLC, Manuel Enrique Cortes Cleghorn, Andy Clay Cruz, Jose Cruz, Julio Alberto Cruz Garcia, Pedro David Daleccio Torres, Silvestre Francisco Dangond Corrales, Zabdiel De Jesus, Larissa De Marcedo Machado, Alexander Delgao Hernandez, Jason Joel Desrouleaux, Nelson Diaz Martinez, Dimelo VI, LLC, Rodney Sebastian Clark Donalds, Jason Paul Douglas Boyd, Duars Entertainment, Corp., Camilo Echeverria, Michael Egred Mejia, El Cartel Records Inc, Empire Distribution, Inc., Erika Maria Ender Simoes, Energy Music Corp, William Sami Etienne Grigahcine, Vladimir Felix, Flow La Movie, Inc., Gasolina Publishing Co., Emmanuel Gazmey Santiago, Sebastian Obando Giraldo, Glad Empire Live, LLC, Rebbeca Marie Gomez, Julio Manuel Gonzalez Tavarez, Aubrey Drake Graham, Natalia Amapola Alexand Gutierrez Batista, Hear This Music, LLC, Hipgnosis Songs Group, LLC, Enrique Iglesias, Isolation Network, Inc., Kevin Mauricio Jimenez Londono, Juston Records(a French private limited company), Kemosabe Records, LLC, Kobalt Music Publishing America Inc, Kobalt Music Publishing Limited, LA Base Music Group, LLC, Bryan Lezcano Chaverra, Juan Luis Londono Arias, Paulo Ezequiel Londra Farias, Jose Angel Lopez Martinez, David Alberto Macias, Mad Decent Protocol, LLC, Mad Decent Publishing, LLC, Luian Malave, Gilberto Marin Espinoza, Randy Malcom Martinez, Benito Antonio Martinez Ocasio, Miguel Andres Martinez Perea, Marcos Masis, Maybach Music Group, LLC, Christian Mena, Freddy Montalvo Jr., Enrique Martin Morales, Daniel Alejandro Morales Reyes, Juan Luis Morera Luna, Urbani Mota Cedeno, Mr. 305, Inc., Joshua Christian Nanai, Carolina Giraldo Navarro, Jesus Alberto Navarro, Jesus Manuel Nieves Cortez, Raul Alejandro Ocasio Ruiz, Oladayo Olatunji, Luis Angel Oneill Laureano, Carlos Ortiz Rivera, Luis Enrique Ortiz Rivera, Felix Ortiz Torres, Jose Alvaro Osorio Balvin, Daniel Oviedo, Ovo Sound, LLC, Juan Carlos Ozuna Rosado, Ernesto Fidel Padilla, Peermusic III, Ltd., Thomas Wesley Pentz, Armando Christian Perez, Marcos D. Perez, Eric Perez Rovir, Martha Ivelisse Pesante Rodriguez, Gabriel Pizarro,

Defendants now move to dismiss the case in five separate Motions to Dismiss for failure to state a claim. (Dkt. Nos. 322, 324, 327, 330, 331.) Defendants Mr. Felix and Mr. Echeverri (collectively, "the 12(b)(2) Defendants") also move to dismiss the SCAC for lack of personal jurisdiction and improper venue. (Dkt. Nos. 324, 327.)

The Court will address the threshold issue of whether it has personal jurisdiction over Defendants Mr. Felix and Mr. Echeverri and will then address whether Plaintiffs have stated a claim for direct and secondary copyright infringement.

## II.   REQUESTS FOR JUDICIAL NOTICE

In support of their Motion to Dismiss, the MTD 5 Defendants filed unopposed requests for judicial notice of the following documents:

1.   A copy of the "detailed record view" of the United States Copyright Office ("Copyright Office") Certificate of Registration for Copyright Number SR 0000957068 as obtained from the U.S. Copyright Records Online Public Catalog, attached as Exhibit 1 to the Declaration of Benjamin S. Akley ("Akley Decl.", Dkt. No. 331-1).

---

Pulse Records, Inc., Justin Rafael Quiles Rivera, Luis Antonia Quinones Garcia, Marcos Ramirez, Julio Ramirez Eguia, Alejandro Ramirez Suarez, Real Hasta La Meurte, LLC, Mauricio Alberto Regiero Rodriguez, Ricardo Andres Regiero Rodriguez, Greeicy Yeliana Rendon Ceballos, Alejandro Rengifo, Mauricio Rengifo, Carlos Efren Reyes Rosado, Rich Music, Inc., Rimas Music, LLC, Giencarlos Rivera, Jonathan Rivera, Nick Rivera Caminero, Danna Paola Rivera Munguia, Juan G Rivera Vasquez, Luis Alfonso Rodriguez Lopez-Cepero, Geoffrey Royce Rojas, Edgar Rosa Cintron, Javier Alexander Salazar, Francisco Saldana, Oscar Edward Salinas, Juan Carlos Salinas Jr, Austin Agustin Santos, Xavier Semper, Edgar Simper, Solar Music Rights Management Limited, Sony ATV Music Publishing, Sony ATV Music Publishing UK Limited, Sony Music Entertainment, Sony Music Entertainment US Latin LLC, Sony Music Publishing, LLC, The Royalty Network, Inc., Andres Torres, Victor R. Torres, Michael Anthony Torres Monge, Manuel Turizo Zapata, UMG Recordings Inc, Ultra Records, LLC, Universal Music Group Inc, Universal Music Latin Entertainment, Universal Music Publishing, Inc., VP Records Corporation, Jorge Valdes, Orlando Javier Valle Vega, Edwin Vasquez Vega, Llandel Veguilla Malave, Christopher Velez, Rosalia Vila I Tobella, Salomon Villada Hoyos, Carlos Alberto Vives Restrepo, Vydia, Inc., WK Records, LLC, Leighton Paul Walsh, Warner Chappell Music, Inc., Andres Felipe Zapata Gaviria, Aura Music Collective. (Dkt. No. 305.)

2. A copy of the "detailed record view" of the Copyright Office Certificate of Registration for Copyright Number PA 0002264496 as obtained from the U.S. Copyright Records Online Public Catalog, attached as Exhibit 2 to the Akley Decl.

3. A copy of the "detailed record view" of the Copyright Office Certificate of Registration for Copyright Number PA 0002281747 as obtained from the U.S. Copyright Records Online Public Catalog, attached as Exhibit 2 to the Akley Decl.

4. A copy of the "detailed record view" of the Copyright Office Certificate of Registration for Copyright Number SR 0000884348 as obtained from the U.S. Copyright Records Online Public Catalog, attached as Exhibit 3 to the Akley Decl.

5. A copy of the "detailed record view" of the Copyright Office Certificate of Registration for Copyright Number SR 0000893268 as obtained from the U.S. Copyright Records Online Public Catalog, attached as Exhibit 3 to the Akley Decl.

("MTD 5 RJN," Dkt. No. 331-2.)

Plaintiffs filed unopposed requests for judicial notice of the following documents in support of their Opposition to MTD 2 ("MTD 2 Opp'n RJN," Dkt. No. 386) and their Opposition to MTD 3 ("MTD 3 Opp'n RJN," Dkt. No. 387):

1. Screenshots of Defendant Mr. Felix's Instagram and Facebook pages, accessed on August 2, 2023, attached as Exhibits 2–4 to the Declaration of Frank R. Trechsel ("Trechsel RJN 2 Decl.", Dkt. No. 378-1).

2. Screenshots of the California Secretary of State pages for Apple, Inc. and Walt Disney Company, attached as Exhibits 6–7 to the Trechsel RJN 2 Decl.

3. A screenshot of Defendant Camilo's official *De Adentro Pa Afuera* tour website, attached as Exhibits 2 to the Declaration of Frank R. Trechsel ("Trechsel RJN 3 Decl.", Dkt. No. 376-1).

4. Screenshots of Defendant Camilo's verified Instagram pages and related posts, attached as Exhibits 8–10 to the Trechsel RJN 3 Decl.

A court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute." Fed. R. Evid. 201. A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of matters of public record, but not "disputed facts contained in such public records." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). The records of administrative bodies are appropriate subjects for judicial notice because they constitute matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Similarly, a court can take judicial notice of a government's website. *Daniels–Hall v. National Education Association*, 629 F.3d 992, 999 (9th Cir. 2010); *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381–82 (C.D. Cal. 2014) (taking judicial notice of documents from the FDA's website).

The Court takes judicial notice of the documents from the websites of the U.S. Copyright Office and the California Secretary of State, as these documents are public records and not subject to a reasonable dispute as to their authenticity. The Court takes judicial notice of the documents from Defendants Mr. Felix's and Mr. Echeverri's social media webpages and Mr. Echeverri's tour website for the fact that they made certain statements online or took certain actions.

## III.   MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.   Legal Standard

When a defendant moves to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). When the motion is based on pleadings and affidavits instead of an evidentiary hearing, the plaintiff must make a prima facie showing that the court has personal jurisdiction. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006); *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001). To establish a prima facie showing, the plaintiff must show some evidentiary basis supporting the complaint's allegations of jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show that jurisdiction is unreasonable. *Burger King v. Rudkewicz*, 471 U.S. 462, 477–78 (1985). The

"uncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

To establish personal jurisdiction over a defendant, the plaintiff must show the forum state's long arm statute is satisfied and that the exercise of jurisdiction over the nonresident defendant comports with due process. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 801. Due process requires that the nonresident defendant have minimum contacts with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A court may exercise personal jurisdiction over a nonresident defendant on two bases. First, general jurisdiction exists if a defendant's activities in the forum state are so substantial or continuous and systematic that the defendant is essentially at home in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Second, there is specific jurisdiction if the defendant's specific activity in the forum gives rise to the claim at issue. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780 (2017).

## B.   Personal Jurisdiction Over Mr. Felix and Mr. Echeverri

Defendants Vladimir Felix ("Mr. Felix") and Camilo Echeverri ("Mr. Echeverri") (collectively, "the 12(b)(2) Defendants") both move to dismiss the SCAC under Rule 12(b)(2) for lack of personal jurisdiction. *See generally* MTD 2 and MTD 3 (Dkt. Nos. 324, 327). The 12(b)(2) Defendants argue that the Court lacks general jurisdiction over them, Plaintiffs have not established specific jurisdiction over them, and venue is improper. Plaintiffs invoke only specific jurisdiction. Therefore, the Court analyzes only whether the 12(b)(2) Defendants' suit-related conduct creates a substantial connection with California. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 184 S. Ct. 1115, 1121 (2014)).

The Ninth Circuit employs a three-part test to determine whether specific jurisdiction may be exercised: (1) the defendant purposefully directed its activities toward the forum or purposefully availed itself of the privilege of doing business in the forum, (2) the plaintiff's claims against the defendant must arise out of or relate

to the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant must be reasonable. *See Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

### i.      Purposeful Direction

Because this is a copyright infringement case, the Court applies the purposeful direction test. *See Axiom Foods*, 874 F.3d at 1069. Under this test, "[t]he defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)).

### 1.      Intentional Act

Under the first prong, Plaintiffs must show that the 12(b)(2) Defendants committed an intentional act. Plaintiffs allege that the 12(b)(2) Defendants both "acted intentionally in creating, performing, distributing, and selling their works." *See* MTD 2 Opp'n at 7; MTD 3 Opp'n at 7. These are indisputably intentional acts, so the first prong of the test is met. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015) ("In the Ninth Circuit, an 'intentional act' includes selling an allegedly infringing product, even if such sales occur outside the forum.") (citing *Wash. Shoe Co. v. A–Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012)).

### 2.      Express Aiming

The second prong requires Plaintiffs to show that the 12(b)(2) Defendants expressly aimed their intentional acts towards California.

Plaintiffs argue that the "express aiming" requirement is satisfied because (1) the 12(b)(2) Defendants are "aware of [their] fans in California" and repeatedly "exploit" their California base "for commercial gain and to achieve a substantial viewer base in [California];" (2) "[their] publishing companies received monies in connection with the songs and music at issue in this case from ASCAP and other companies based in California;" (3) "the reproduction, distribution and sale of records and digital downloads of the Infringing Works, through the execution of licenses, and/or selling and distributing physical or digital copies of the Infringing

Works through various physical and online sources including … through Amazon.com, Walmart, Target and iTunes;" (4) "the unauthorized reproduction, distribution, public performance, licensing, display, and creation of the Infringing Works, including … distributing and broadcasting the Infringing Works on streaming platforms, including Spotify, Apple Music, Amazon, Pandora, and YouTube" in and with the state of California; and (5) committing the alleged infringement with co-defendants that are California entities. *See* MTD 2 Opp'n at 7–8; MTD 3 Opp'n at 7–8.

Plaintiffs further argue that the 12(b)(2) Defendants have "expressly aimed the distribution of [their] music at California" and been paid to perform the allegedly infringing music at California-based venues, including frequent stops in Los Angeles, California. *See* MTD 2 Opp'n at 8–9; Trechsel RJN 2 Decl. Exs. 2–7; MTD 3 Opp'n at 8; Trechsel RJN 3 Decl. Exs. 3, 4. As to Mr. Felix, Plaintiffs argue that he also advertised those shows to California residents to "induce more California residents to buy, stream, and download" his allegedly infringing music, and further claim that a Facebook post by Mr. Felix includes the hashtag "#DembowMusicLA" which Plaintiffs contend means "hear Dem Bow music in Los Angeles." *See* MTD 2 Opp'n at 9; Trechsel RJN 2 Decl. ¶ 2. As to Mr. Echeverri, Plaintiffs argue that he has also produced physical advertisements in California "designed to achieve a substantial fan base in [California], including [] for his Disney+ show *The Montaners* and an HBO Max documentary of his world tour which are distributed to California residents," and both Disney+ and HBO are California companies. *See* MTD 3 Opp'n at 8; Trechsel RJN 3 Decl. ¶¶ 4, 7–8.

It is proper to exercise jurisdiction "over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State [] or by circulating magazines to 'deliberately exploi[t]' a market in the forum State." *Walden*, 134 S. Ct. at 1122. By contrast, a "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.*

Here, the 12(b)(2) Defendants' purported contacts with a resident of California, standing alone, are inadequate to establish sufficient minimum contacts with California. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (*Walden* "reinforced the traditional understanding that our personal jurisdiction analysis

must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum."). Nor would the conduct of distributing music through Walmart, Target, iTunes, Spotify, Apple Music, Amazon, Pandora, or YouTube be sufficient. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir.2010) ("[M]aintenance of a passive website alone cannot satisfy the express aiming prong."). However, the 12(b)(2) Defendants' performing music shows and promoting the shows demonstrate that they have directed their activities towards California. *See Wake Up & Ball LLC v. Sony Music Ent. Inc.*, 119 F. Supp. 3d 944, 950 (D. Ariz. 2015). The "promotion of live performances in [California] would tend to show the "something more" required for express aiming under the *Calder* effects test." *Wake Up & Ball LLC*, 119 F. Supp. 3d at 950.

### 3.     Knowledge of Harm

The final prong requires Plaintiffs to show that the 12(b)(2) Defendants' conduct caused harm that they knew was likely to be suffered in California. "This element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum" and it "may be established even if 'the bulk of the harm' occurs outside of the forum." *Brayton Purcell*, 606 F.3d at 1131. Here, Plaintiffs argue that "[g]iven the significant and intentional popularity of [the 12(b)(2) Defendants'] work in California and the success of [their] multiple, sold-out world tour performances of the Infringing Works in this state, [the 12(b)(2) Defendants'] infringement of the Subject Works has undeniably and foreseeably reduced the value of the Subject Works in [California]." *See* MTD 2 Opp'n at 9–10; MTD 3 Opp'n at 9. The Court finds that Plaintiffs have made a prima facie showing that the 12(b)(2) Defendants knew they were causing harm likely to be suffered in California. It was foreseeable the copyright infringement would result in harm to their goodwill and decreased business and profits. *See Brayton Purcell*, 606 F.3d at 1131.

Therefore, the Court finds that Plaintiffs have satisfied all three prongs of the purposeful direction test.

### ii.     Claims Arising Out of California-Related Activities

The second part of the specific jurisdiction test is met if the plaintiff would not have been injured "but for" the defendant's forum-related activities. *Panavision v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). "The Ninth Circuit has recognized that, in … copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, this element is satisfied. *Adobe Sys.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015) (citing *Panavision*, 141 F.3d at

1322). Here, the suit stems from the 12(b)(2) Defendants' using Plaintiffs' musical works in connection with the creation and distribution of their allegedly infringing songs, including through the exploitation of the California market. Plaintiffs alleges that they suffered harm in this district, and the but-for cause of this harm is Defendants' alleged infringement. This is sufficient to show that Plaintiffs' claims arise out of Defendants' forum-related activities. *See CollegeSource*, 653 F.3d at 1079.

### iii.      Reasonableness

As Plaintiffs have made a prima facie case that specific jurisdiction over the 12(b)(2) Defendants is proper, the burden shifts to the 12(b)(2) Defendants to show why the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802. Generally, a defendant must present a compelling case that the exercise of jurisdiction would not be reasonable. *Id.* (internal quotation marks and citations omitted). Here, the 12(b)(2) Defendants fail to substantively address the reasonableness of this Court exercising jurisdiction over them, and have not filed replies to rebut Plaintiffs' claims in their opposition. *See* MTD 2 at 11; MTD 3 at 12.

Accordingly, the Court finds that it has specific personal jurisdiction over Mr. Felix and Mr. Echeverri. The Court **denies as moot** Plaintiffs' request for jurisdictional discovery.

### iv.      Venue

The 12(b)(2) Defendants argue that venue is improper. *See* MTD 2 at 12; MTD 3 at 13. The Ninth Circuit interprets 28 U.S.C. § 1400(a) "to allow venue in any judicial district where ... the defendant would be subject to personal jurisdiction." *Brayton*, 606 F.3d at 1126. Because personal jurisdiction exists in California, venue is proper here. Alternatively, the 12(b)(2) Defendants seek a transfer of venue based on convenience under 28 U.S.C. § 1404. Mr. Felix seeks to transfer this case to the District of Puerto Rico and Mr. Echeverri seeks to transfer this case to the Southern District of Florida. *See* MTD 2 at 13–15; MTD 3 at 14–16.

Under Section 1404(a), "the district court has discretion 'to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)

(internal quotation marks omitted)). In making this determination, courts may consider factors including: (1) the location where [any] relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Id.* at 498–99.

Courts in the Ninth Circuit commonly consider also (1) the convenience of the parties and witnesses, (2) the feasibility of consolidation with other claims, (3) any local interest in the controversy, and (4) the relative court congestion and time of trial in each forum. *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). "[T]he moving party must establish ... that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice." *Id.* at 1155–56.

As discussed, venue is proper in this district. The 12(b)(2) Defendants however insist that this action should be transferred for convenience. As Plaintiffs point out, a transfer will disrupt consolidation and judicial economy. Transferring Plaintiffs' claims against Mr. Felix or Mr. Echeverri will create parallel streams of litigation, each involving the same Subject Works and allegedly infringing songs. The inefficiencies that would be created by granting such transfer are significant. This sort of duplication would generate exactly the sort of inefficiencies that § 1404(a) was designed and adopted to prevent. *See Jolly v. Purdue Pharma L.P.*, No. 05-CV-1452H, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid duplicitous litigation and inconsistent results.") (quoting *Durham Prods, Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982)) (cleaned up). Furthermore, the Court has invested a substantial amount of time and resources managing this action. Accordingly, the 12(b)(2) Defendants have failed to make the strong showing of inconvenience necessary to upset Plaintiffs' choice of forum.

## IV.    MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

The Court now turns to the five motions to dismiss for failure to state a claim under Rule 12(b)(6). Plaintiffs assert claims for direct copyright infringement and vicarious and/or contributory copyright infringement against all Defendants, arising from Defendants allegedly copying the *Fish Market* composition, *Fish Market* sound recording, *Dem Bow* composition, or *Pounder Dub Mix II* sound recording. Moving Defendants raise numerous grounds for dismissal. However, the Court will not dissect and discuss exhaustively every issue raised in the five motions to dismiss and attendant responses. With few exceptions, the Court's analysis is limited to the issues and facts necessary for decision.

### A.    Legal Standard

Rule 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face." *Id.* That is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a), leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations and quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (quotation marks omitted). Leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## B.    Copyright Infringement (Claim One)

To establish a claim for copyright infringement, Plaintiffs must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

### i.    Plaintiffs Have Sufficiently Alleged Ownership of Valid Copyrights

Plaintiffs allege that they own and registered copyrights in the *Fish Market* sound recording, *Fish Market* musical composition, *Dem Bow* musical composition, and *Pounder Dub Mix II* sound recording. *See* SCAC ¶ 200. Moving Defendants challenge ownership and standing with respect to *Pounder Riddim*, *Pounder Dub Mix II*, and the music of *Dem Bow*.[8] First, Moving Defendants argue that Plaintiffs cannot sue for infringement with respect to *Pounder Riddim* when they do not claim to own this work, nor sue for infringement of the *Fish Market* copyright "by extension" for copying of unspecified portions of *Dem Bow*, *Pounder Riddim*, or *Pounder Dub Mix II*. *See* MTD 1 at 11; MTD 2 at 3–4 n.2, 20 n.4; MTD 3 at 4 n.4, 21 n.6; MTD 5 at 14–15. Second, Moving Defendants argue that Plaintiffs do not have standing to sue for infringement of the *Pounder Dub Mix II* copyright because it was not registered prior to the initiation of this suit, as required by the Copyright Act. *See* MTD 2 at 4 n.3, 20–21; MTD 3 at 4 n.5, 21–22;

---

[8] MTD 4 does not challenge ownership. *See generally* MTD 4 (Dkt. No. 330).

MTD 5 at 11–12. Third, Moving Defendants argue that the *Dem Bow* copyright registration is limited to the lyrics. *See* MTD 1 at 5; MTD 2 at 20–21; MTD 3 at 21–22; MTD 5 at 12. The Court addresses these arguments in turn.

As a preliminary matter, a subset of Moving Defendants also argue that Plaintiffs fail to identify or attach copyright registrations for the Subject Works. *See* MTD 1 at 11; MTD 5 at 10. However, it is not necessary at this stage for Plaintiffs to provide copyright registration numbers or registration certificates to plausibly allege copyright ownership. *See, e.g., Kuhmstedt v. Enttech Media Grp., LLC*, No. 2:21-cv-10032-S-VW-JEM, 2022 WL 1769126, at *3 (C.D. Cal. Apr. 11, 2022) ("Defendant's formalistic contention that Plaintiff was further required to plead the specific registration number … is unfounded."); *Hybrid Promotions, LLC v. Zaslavsky*, No. CV 16-02227-RAO, 2016 WL 10988656, at *10 (C.D. Cal. Oct. 5, 2016) ("While it may be helpful for claimants to identify by number their copyright registrations in their initial pleadings, and indeed necessary to do so at later stages in litigation, the failure to do so is not fatal at the FRCP 12(b)(6) stage."). Thus, the SCAC properly alleges ownership of valid copyrights in stating that the subject copyrights are owned by Plaintiffs and have been registered with the U.S. Copyright Office. *See* SCAC ¶¶ 179, 181, 200.

## 1.    "By Extension" *Fish Market* Claims

Plaintiffs allege that "[a]ny copying, interpolating, or sampling of the *Pounder Riddim* is a copying or interpolation of *Fish Market*'s composition" and that multiple Defendants' works incorporate "a sample taken directly from [*Pounder Dub Mix II*], and by extension, *Fish Market*." *See* SCAC ¶¶ 188, 311–313, 316–319, 321–322, 361, 372, 492–495, 497, 559. Moving Defendants argue that Plaintiffs cannot sue for infringement with respect to *Pounder Riddim* when they do not claim to own this work or sue for infringement of the *Fish Market* copyright "by extension" for copying of unspecified portions of derivative works. *See* MTD 1 at 11; MTD 2 at 3–4 n.2, 20 n.4; MTD 3 at 4 n.4, 21 n.6; MTD 5 at 14–15. However, Plaintiffs have made no claim to *Pounder Riddim* and do not assert an infringement claim with respect to *Pounder Riddim* or other works that they have not claimed to own. *See, e.g.*, MTD 1 Opp'n at 5 n.5. Rather, Plaintiffs are suing for material copied from *Pounder Riddim* or other derivative works to the extent the material was derived from *Fish Market*. *See* MTD 5 Opp'n at 14; *DC Comics v. Towle*, 802 F.3d 1012, 1024 (9th Cir. 2015).

A copyright owner has the exclusive right to prepare derivative works based on its original work of authorship and the exclusive right to "authorize others to

prepare derivative works based on their copyrighted works." 17 U.S.C. § 106; *see DC Comics*, 802 F.3d at 1023 (internal citations omitted). "A copyright in a derivative work 'must not in any way affect the scope of any copyright protection in that preexisting material.'" *DC Comics*, 802 F.3d at 1023 (citing 17 U.S.C. § 103 ("The copyright in a ... derivative work ... is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.")). "Logically, therefore, if a third party copies a derivative work without authorization, it infringes the original copyright owner's copyright in the underlying work to the extent the unauthorized copy of the derivative work also copies the underlying work." *Id.*

Here, Plaintiffs allege that *Dem Bow*, *Pounder Riddim*, and *Pounder Dub Mix II* are derivative works that include original elements of *Fish Market*. *See* SCAC ¶¶ 181–184. Specifically, *Dem Bow* is "an alternative mix" of *Fish Market* "based on the same multi-track recording; *Pounder Riddim* "copied" *Dem Bow*'s "instrumental, sound, arrangement, and composition, including the drum pattern, the drum components, including the kick, snare, hi-hat, tom and timbales as well as the full bassline" and its composition is "virtually identical" to *Fish Market*; and *Pounder Dub Mix II*'s sound recording was created from *Pounder Riddim* and the *Fish Market* composition "is captured in the sound recording." *See id.* ¶¶ 181–184, 189. Drawing all reasonable inferences in Plaintiffs' favor, it is plausible that *Fish Market* is the progenitor of these derivative works and these works all capture original elements of the *Fish Market* composition that Plaintiffs have specified in the SCAC. While it does not follow that a defendant inevitably infringes the *Fish Market* copyright because the defendant allegedly copied *Dem Bow*, *Pounder Riddim*, or *Pounder Dub Mix II*, the copying of material derived from protected elements of *Fish Market* will constitute an infringement of the *Fish Market* copyright regardless of whether the defendant copied directly from *Fish Market* or indirectly through a derivative work. *See* 17 U.S.C. § 103; *DC Comics*, 802 F.3d at 1024 (quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 3.05, at 3–34.31 (Matthew Bender, Rev. Ed.) (hereafter *Nimmer on Copyright*)). Plaintiffs can therefore sue for infringement of such copying regardless of owning a copyright in *Dem Bow*, *Pounder Riddim*, or *Pounder Dub Mix II*. In other words, Plaintiffs' ownership of copyrights in *Fish Market* entitles them to sue for copying of *Dem Bow*, *Pounder Riddim*, or *Pounder Dub Mix II* to the extent that the material copied from those works derived from protected elements of *Fish Market*. *See DC Comics*, 802 F.3d at 1024.

### 2.   Timeliness of *Pounder Dub Mix II*'s Registration

Next, it is undisputed that the *Pounder Dub Mix II* sound recording copyright was registered on March 15, 2023, after the initiation of this action and before the filing of the SCAC. *See* Ackley Decl. Ex. 1 (Dkt. No. 331-1) (the "Detailed record view" for the sound recording titled "The Pounder (Dub Mix II) a.k.a. Dub Mix II" bearing the Registration Number SR 0000957068). The parties rather dispute whether Plaintiffs' copyright claim for *Pounder Dub Mix II* is barred by its later-obtained registration or whether it can be "added" to this action by amendment.

The owner of an original work has a copyright "immediately upon the work's creation." *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (citing 17 U.S.C. § 106). Subject to exceptions that are not applicable here, the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made…" 17 U.S.C. § 411(a); *see id.* ("§ 411(a) bars a copyright owner from suing for infringement until "registration ... has been made."). Thus, copyright registration is generally a prerequisite to asserting a copyright infringement claim. "[A]lthough an owner's rights exist apart from registration, registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate*, 139 S. Ct. at 887.

MTD 5 Defendants argue that the pre-suit registration requirement applies equally to a claim added by amendment after registration and Plaintiffs are not permitted to "amend to add a new claim based on a post-complaint registration." *See* MTD 5 at 11 (citing *Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-06092-NC, 2019 WL 2359228 (N.D. Cal. June 4, 2019); *Kifle v. YouTube LLC*, No. 21-cv-01752-CRB, 2021 WL 1530942, at *5 (N.D. Cal. Apr. 19, 2021); and *Malibu Media, LLC v. Doe*, 18-CV-10956 (JMF), 2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019)). While there is no clear answer to "whether a copyright claimant may amend its complaint to include subsequently registered material[,] … [c]ourts have found … an amendment to be improper … when the plaintiff attempted to cure an already premature filing, which undermined the *Fourth Estate* reasoning." *See Izmo Inc.*, 2019 WL 2359228, at *2. Plaintiffs argue that they are not attempting to cure a defect and should not be required to file a separate suit for *Pounder Dub Mix II* which they contend would likely be consolidated with this action. *See* MTD 5 Opp'n at 7. Plaintiffs assert that courts "often allow amendment for efficiency's sake and to avoid multiple actions" and that the Court should follow that approach

here since the *Pounder Dub Mix II* copyright "was not initially alleged to be infringed in the original complaint." *See id.* (relying on three cases: *Lickerish Ltd. v. Maven Coal., Inc.*, No. CV 20-5621 FMO (Ex), 2021 WL 3494638 (C.D. Cal. Jan. 29, 2021); *Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*, No. 18 C 5369, 2019 WL 6034116 (N.D. Ill. Nov. 14, 2019); and *Philips N. Am. LLC v. KPI Healthcare, Inc.*, No. SACV19-1765 JVS (JDEx), 2020 WL 3032765, at *3 (C.D. Cal. Jan. 24, 2020), where a copyright claim not asserted in the original complaint was later registered and added to the suit by amendment).

However, as MTD 5 points out, it appears that Plaintiffs prematurely asserted copyright infringement claims for *Pounder Dub Mix II* in the FCAC.[9] *See* MTD 5 Reply at 10 (quoting FCAC ¶ 202 (Dkt. No. 116)). Defendants contend that "Plaintiffs altered their definitions from the FCAC and SCAC to conceal [that] the FCAC alleged a claim relating to [*Pounder Dub Mix II*] prior to its registration. What the SCAC refers to as *Pounder Dub Mix II* was previously defined as "*Pounder riddim*" in the FCAC." *See* MTD 5 Reply at 10 (citing FCAC ¶¶ 201– 202), 10 n.7. Defendants argue that "[c]hanging definitions cannot erase the FCAC's claims based on [*Pounder Dub Mix II*]." *Id.* at 10. Plaintiffs insist that *Pounder Dub Mix II* was not "at issue" prior to the filing of SCAC. The Court is unpersuaded that this is the case.

The Court has reviewed the FCAC and generally finds it difficult to ascertain from the FCAC's descriptions how exactly the works described therein as "*Pounder*", "*Dub Mix II*", and "*Pounder* riddim" are connected and correspond to the Subject Works described in the SCAC. The derivative nature of these works further compounds the ambiguity of the FCAC's descriptions. However, a footnote and a defendant-specific allegation common to the FCAC and SCAC support Moving Defendants' argument.

The SCAC defines *Pounder Dub Mix II* as "*Pounder*" and refers to the instrumental of *Dem Bow* created by Mr. Halliburton as the "*Pounder Riddim*", (s*ee* SCAC ¶¶ 178, 182); and the FCAC references works described as "*Pounder*",

---

[9] MTD 5 implies that the Court should review the FCAC to analyze whether Plaintiffs prematurely asserted a copyright claim based on *Dub Mix II*, (*see* MTD 5 Reply at 9-10), but also raise that the *Pounder Dub Mix II* copyright was not registered "until March 15, 2023— nearly two years after Plaintiffs instituted this action," (*see* MTD 5 at 11). Plaintiffs vaguely refer to "earlier complaints" and "an initial filing." *See* MTD 5 Opp'n at 8. Neither side offers authority or argument regarding which pleading anchors the pre-filing registration issue. Because the Court can adjudicate this issue on other grounds, it declines to decide which pleading governs the issue.

"*Dub Mix II*", and "*Pounder* riddim", (s*ee* FCAC ¶¶ 201–202). Specifically, the FCAC alleges that Mr. Halliburton "recreated a nearly verbatim version of *Dem Bow*'s instrumental that was used to record … *Pounder* … [and that] [t]he "B Side" to *Pounder* featured an instrumental mix of Mr. Halliburton's sound recording entitled *Dub Mix II* and … [this] instrumental has been so widely sampled in reggaeton that [it] has become commonly known as the "*Pounder riddim*." *See* FCAC ¶¶ 201–202. In other words, according to the FCAC's allegations, the work defined as "*Pounder*" in the FCAC is *also* "commonly known as the *Pounder riddim*" and these terms are thus plausibly interchangeable in the FCAC. *See* FCAC ¶ 202.

Next, footnote 2 in the FCAC reads: "The prolific sampling of the **Pounder riddim** in reggaeton is described in the acclaimed documentary *LOUD: The history of Reggaeton*…," (FCAC ¶ 202 n.2) (emphasis added); while footnote 5 in the SCAC states the same allegation but with a different term, as follows: "The prolific sampling of the **Pounder** in reggaeton is described in the acclaimed documentary *LOUD: The history of Reggaeton*…," (SCAC ¶ 188 n.5) (emphasis added). The substance of the footnotes demonstrates that the work defined as "*Pounder*" in the SCAC and the work defined as "*Pounder riddim*" in the FCAC are the same.

Lastly, and most telling, a comparison of the FCAC and the SCAC reveals that *Pounder Dub Mix II* may have been "at issue" in the FCAC because the claims relating to the work defined as "*Pounder*" in the SCAC are substantively the same as the work defined as "*Pounder Riddim*" in the FCAC. *Compare* SCAC ¶ 223 ("The tom in *Date La Vuelta* plays the exact down beat pattern as *Fish Market*, with emphasis on beats 1 and 3, and shares the unique sonic character of the tom sound found in the **Pounder**, indicating that the tom sound was sampled from the **Pounder**.") (emphasis added) *with* FCAC ¶ 230 ("The tom in *Date La Vuelta* plays the exact down beat pattern as *Fish Market*, with emphasis on beats 1 and 3, and shares the unique sonic character of the tom sound found in the **Pounder riddim**, indicating that the tom sound was sampled from the **Pounder riddim**.") (emphasis added).[10] Thus, the Court cannot conclude that the *Pounder Dub Mix II* copyright was timely registered, or allow the *Pounder Dub Mix II* copyright claims to be "added" to this action by amendment when the SCAC appears to improperly cure a defect in the FCAC. *See Izmo Inc.*, 2019 WL 2359228, at *2.

---

[10] The Court further notes that this allegation also appears in the original consolidated complaint, filed on July 29, 2022. *See, e.g.,* Consol. Compl. ¶ 101 (Dkt. No. 99).

The question now becomes whether Plaintiffs' *Pounder Dub Mix II* claims must be dismissed. Plaintiffs contend that "the consolidated nature of this action … militates in favor of allowing the case to include this additional recording" for efficiency purposes. *See* MTD 5 Opp'n at 9. Plaintiffs argue that "the driving intent behind consolidation was to resolve as fully as possible all claims related to *Fish Market* in a single action" and refiling a new action for *Pounder Dub Mix II* claims "would mean two cases addressing the same infringement in the same songs – one for the composition and one for the recording." *Id.* MTD 5 Defendants, in turn, argue that consolidation does not provide a basis to "ignore" Supreme Court precedent or Section 411, and all *Pounder Dub Mix II* claims should be dismissed. *See* MTD 5 Reply at 11.

As discussed, the registration requirement is "akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate*, 139 S. Ct. at 887. However, the Supreme Court has made clear that the registration requirement under Section 411(a) is non-jurisdictional. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). The Supreme Court has noted that "Section 411(a) imposes a precondition to filing a claim that is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions." *See id.* (citing §§ 411(a)–(c)). "Section 411(a) thus imposes a type of precondition to suit that supports nonjurisdictional treatment under our precedents." *Id.* While the parties have not provided any authority directly on this point, the Ninth Circuit has affirmed a sister court's excusal of a plaintiff's failure to exhaust the registration requirement under Section 411(a). *See VHT, Inc. v. Zillow Grp., Inc.* ("*Zillow II*"), 69 F.4th 983 (9th Cir. 2023), *aff'g*, *VHT, Inc. v. Zillow Grp., Inc.*, 461 F. Supp. 3d 1025 (W.D. Wash. 2020).

In *VHT, Inc. v. Zillow Grp., Inc.*, the parties litigated the case for five years through dispositive motions, trial, post-trial motions, an appeal, and a remand. 461 F. Supp. 3d at 1039. The defendant raised for the first time on remand that the plaintiff failed to comply with Section 411(a)'s pre-suit registration requirement and its claims must be dismissed. *See id.* at 1033. The Western District of Washington determined that the court was not precluded from excusing the plaintiff's failure to comply with the registration requirement because the requirement is non-jurisdictional. *See VHT, Inc.*, 461 F. Supp. 3d at 1037, 1039 ("Because § 411(a)'s registration requirement is not jurisdictional, the court rejects [the defendant's] arguments that the court 'must' dismiss [the plaintiff's] claims and 'cannot excuse' a failure to comply."). The court excused the plaintiff's failure to exhaust under Section 411(a) after determining, among other things, that "in this

narrow instance" the purposes of the statutory registration requirement would not be served by dismissal because the plaintiff had already obtained copyright registrations and "dismissal would result in a massive waste of judicial resources" given the advanced stage of the proceedings. *Id.* at 1039. On appeal, the Ninth Circuit agreed that dismissal was not required and held that the district court did not err in excusing the plaintiff's failure to exhaust under Section 411(a). *See Zillow II*, 69 F.4th at 987–988 (affirming excusal of the plaintiff's noncompliance with Section 411(a) registration requirement because the claim was "wholly collateral" to the substantive claim of entitlement, there was a colorable showing of irreparable harm, and exhaustion would be futile). The Ninth Circuit concluded, in relevant part, that excusal in this instance did not undermine the purpose of administrative exhaustion, as excusal "would not prematurely interfere with the agency process, nor would it deprive the Copyright Office of providing its experience and expertise." *Id.* at 987.

While the instant case is not nearly as far in proceedings as *VHT, Inc.*, the Court finds that the unique procedural posture of this case presents a narrow circumstance that warrants excusing noncompliance with the pre-suit registration requirement for *Pounder Dub Mix II* (and any other copyright claim in the SCAC that may be premature). Plaintiffs originally brought three separate cases: the first case filed on April 1, 2021 against 13 defendants; the second case filed on October 19, 2021 against 21 defendants; and the third case filed on May 16, 2022 against 24 defendants and later transferred to this court from the Southern District of New York. The Court consolidated the three cases on July 15, 2022. As Plaintiffs state, on August 25, 2022, the counsel for "the then named and served Defendants" and Plaintiffs met and conferred regarding Plaintiffs' intent to file an amended consolidated complaint "to expand the scope of Plaintiffs' claims to include additional works and additional defendants because the case could not progress if Plaintiffs were forced to consolidate new actions involving the Subject Works each time they filed a new suit, which was their intent." *See, e.g.,* MTD 3 Opp'n at 2. Plaintiffs then filed the FCAC on September 23, 2022, expanding the scope of the case, and filed the SCAC on April 21, 2023, adding the Barrett Estate as a plaintiff. *See* MTD 5 Opp'n at 2, 3 n.2. This action now involves over 100 defendants and at least 1,000 allegedly infringing works. *See generally* SCAC Ex. A. The parties have been engaged in intensive motion practice and proceedings throughout the history of this action. Plaintiffs have already obtained copyright registrations for the Subject Works; thus, it is plausible that dismissal of a subset of their claims would not require Plaintiffs to interact with the Copyright Office, but merely only force Plaintiffs to refile a separate case based on the *Pounder Dub Mix II* sound recording copyright and move to consolidate that case with this action. The Court

has also invested a substantial amount of time and resources managing this action. At this juncture, dismissing the *Pounder Dub Mix II* claims would be "a judicial travesty and waste of resources." *See Zillow II*, 69 F.4th at 987. Accordingly, the Court declines to dismiss the *Pounder Dub Mix II* claims.

### 3.    Scope of the *Dem Bow* Registration

The Court now turns to the copyright registration for *Dem Bow*. Moving Defendants argue that Plaintiffs' copyright registration for *Dem Bow* is limited to the lyrics. *See* MTD 1 at 5; MTD 2 at 20–21; MTD 3 at 21–22; MTD 5 at 12. MTD 5 provides copyright registrations for the *Dem Bow* composition and argues that the "registrations expressly limit Plaintiffs' ownership claim to the "lyrics" and "new lyrics" of the *Dem Bow* composition and identify the "music" of *Dem Bow* as "pre-existing material." *See* Ackley Decl. Ex. 2 (Dkt. No. 333-1) (Copyright Registrations: PA 2264496 and PA 2281747); MTD 5 at 12.

Plaintiffs argue that the *Dem Bow* registration is not limited to the lyrics and assert that the copyright registration does not define the scope of copyright protection. *See* MTD 5 Opp'n at 9–10. Plaintiffs claim that there were errors in the copyright registrations and direct the Court to their registration applications for *Dem Bow*. *See* MTD 5 Opp'n at 10–11; Trechsel Decl. ¶ 5 (Dkt. Nos. 384-1). Plaintiffs have lodged what they present as a "corrected version of the *Dem Bow* registration covering the entirety of the musical composition other than the elements from the *Fish Market* musical composition," which Plaintiffs received on August 4, 2023. Trechsel Decl. ¶ 5, Ex. 1 (Dkt. Nos. 388; 388-1) (Supplementary Registration to PA 2264496). In their Reply, Defendants argue that Plaintiffs' registration application attempts to extend Plaintiffs' copyright interests in *Dem Bow* to elements of *Dem Bow* never before claimed, *i.e.*, the 'music' and 'musical arrangement';" and therefore, the "corrected version" of the *Dem Bow* copyright registration is a "belatedly-filed registration … [in] an attempt to cure an already premature filing." *See* MTD 5 Reply at 11–12. Defendants further assert that the registration "does not identify what is 'new' and not in *Fish Market*." *Id* at 12.

Because the parties' arguments fall on disputed contents contained in the *Dem Bow* copyright registrations, the Court finds these issues inappropriate for resolution at this stage.

In light of the foregoing, the Court finds that the SCAC sufficiently alleges Plaintiffs' ownership of valid copyrights in the Subject Works.

###### ii.      Plaintiffs Have Sufficiently Alleged Copying of Constituent Elements of the Subject Works that Are Original

The Court now turns to whether Plaintiffs have sufficiently alleged copying of protected aspects of the Subject Works. The second prong of the infringement analysis contains two separate components: "copying" and "unlawful appropriation." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018) (citing *Feist*, 499 U.S. at 361). "Although these requirements are too often referred to in shorthand lingo as the need to prove 'substantial similarity,' they are distinct concepts." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (citing *Rentmeester*, 883 F.3d at 1117). In the absence of direct evidence of copying, Plaintiffs can show that Defendants had access to Plaintiffs' work and that the two works share similarities probative of copying. *Id.*

"On the other hand, the hallmark of unlawful appropriation is that the works share substantial similarities." *Id.* The Ninth Circuit uses a two-part test to determine whether a defendant's work is substantially similar to the plaintiff's copyrighted work. *Id.* "The first part, the extrinsic test, compares the objective similarities of specific expressive elements in the two works. Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Id.* (citations omitted). In other words, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). Notably, "the extrinsic test's application may be decided by the court as a matter of law." *Rentmeester*, 883 F.3d at 1118. "The second part, the intrinsic test, test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance." *Skidmore*, 952 F.3d at 1064. Only the extrinsic test is relevant on a motion to dismiss, as the intrinsic test is reserved exclusively for the trier of fact. *Rentmeester*, 883 F.3d at 1117.

Moving Defendants argue that the SCAC fails to (1) show access to the Subject Works, (2) specify how Defendants' works allegedly infringed the copyrights in the Subject Works, (3) identify original elements of the Subject Works, (4) demonstrate substantial similarity between the two works, or (5) show similarities in protectable elements. The Court addresses these arguments in turn.

### 1.    Access

MTD 2 and MTD 3 argue that the SCAC fails to allege facts showing Mr. Felix and Mr. Echeverri had access to *Fish Market*, and instead the SCAC "includes a single conclusory allegation of access" regarding *Dem Bow*. *See* MTD 2 at 19–22; MTD 3 at 20–23. MTD 2 and MTD 3 thus assert that "Plaintiffs allege access to *Fish Market* through another work that allegedly captured the core basis of *Fish Market*;" which they contend is insufficient because Plaintiffs do not have standing to sue for infringement with respect to *Dem Bow*'s sound recording. *See id.* Mr. Felix and Mr. Echeverri further argue that even if access through *Dem Bow* is sufficient, the SCAC's allegations of *Dem Bow* being a "massive hit" is "not enough to sustain 'access' as a matter of law for a composition released in the 1990s." *See* MTD 2 at 21; MTD 3 at 22.

"To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work. *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). "Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Id.*

The SCAC alleges that *Fish Market* was "widely distributed on vinyl and CD, which were the dominant media formats at the time of release, and together sold tens of thousands copies on singles and albums within the global reggae dancehall scene." *See* SCAC ¶ 661. As discussed, Plaintiffs are not suing for infringement with respect to *Dem Bow*'s sound recording. Drawing all reasonable inferences in Plaintiffs' favor, the success and popularity of *Fish Market* in the reggae dancehall scene supports a "reasonable possibility" that Defendants had the opportunity to hear *Fish Market*. *See Gray v. Perry*, No. 2:15-cv-05642-CAS (JCx), 2018 WL 3954008, at *5 (C.D. Cal. Aug. 13, 2018). The Court therefore finds that the SCAC sufficiently alleges access to *Fish Market* through its widespread dissemination.

### 2.    Identification of Infringing Conduct

Moving Defendants argue that Plaintiffs fail to plead sufficient factual allegations to provide them with notice of which copyrights were infringed, what protected elements of the Subject Works were copied, which Defendant copied the Subject Works, whether Defendants' allegedly infringing works are either a sound

recording or musical composition, and what portions of Defendants' works copied the Subject Works. *See, e.g.*, MTD 5 at 18–23. Moving Defendants characterize the SCAC as a shotgun pleading and argue that Plaintiffs' "pleading by exhibit" is deficient under Rule 8(a). Plaintiffs assert that they do not need to plead with particularity and specify every act and instance of infringement and that "[g]iven the 'unwieldiness' engendered by the massive scope of the infringement and the request to consolidate, the 'representative acts' in the SCAC are sufficient." *See* MTD 5 Opp'n at 24–30 (relying, in part, on *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001)).

As Plaintiffs point out, courts do not require plaintiffs to plead copyright claims with particularity. *See Hale v. Atl. Recording Corp.*, No. CV 13-3500 PSG (RZx), 2013 WL 12138708, at *3 (C.D. Cal. Sept. 3, 2013) (explaining that "allegations of copyright infringement need only satisfy the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8") (citing *Mid America Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993)). A "short and plain statement" will suffice. Fed. R. Civ. P. 8(a)(2).

The Court is also unconvinced that the SCAC is a shotgun pleading that "overwhelm[s] defendants with an unclear mass of allegations that make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *See* MTD 5 at 22 (quoting *Martinez v. Robinhood Crypto, LLC*, No. 2:22-cv-2651-AB-KS, 2023 WL 2836792, at *4 (C.D. Cal. Feb. 28, 2023)). Plaintiffs have not merely grouped Defendants together without identifying what they each did wrong. The Court recognizes that Plaintiffs' invocation of *Perfect 10* is not directly on point, as Plaintiffs here have sued multiple defendants for allegedly infringing copyrights in one or more of four works, as opposed to the plaintiff in *Perfect 10* who sued a single defendant who allegedly infringed copyrights in hundreds, if not thousands, of plaintiff's works and thus was permitted to provide a "sample" of the single defendant's infringements. *See Perfect 10*, 167 F. Supp. 2d at 1120. However, the notice-pleading standard does not require Plaintiffs to plead specific details about every instance of infringement. A complaint can identify representative acts of infringement instead of providing an exhaustive list. *See Paramount Pictures Corp. Axanar Prods., Inc.*, No. CV 15-09938, 2016 WL 2967959, at *3 (C.D. Cal. May 9, 2016) ("Courts do not require copyright claims to be pled with such particularity; rather, courts find a complaint sufficiently pled if it "alleges representative acts of infringement rather than a comprehensive listing.") (quoting *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 3:15-cv-04084-CRB, 2015 WL 8178826, at *6 (N.D. Cal. Dec. 8, 2015)).

Moving Defendants cite to *Hayes v. Minaj*, No. 2:12-cv-07972-SVW-SH, 2012 WL 12887393 (C.D. Cal. Dec. 18, 2012) for the proposition that the "*Twombly* standard demands more than listing elements in a vague and conclusory fashion …; it requires a plaintiff to compare those elements for proof of copying …. A plaintiff must plead which portions, aspects, lyrics or other elements of the two works are substantially similar." *See, e.g.*, MTD 1 at 10 (citation omitted and cleaned up). However, there, the *pro se* plaintiff asserted three copyright infringement claims based on three songs and two books. In relevant part, the plaintiff claimed that the song "Moment for Life" by the artist Nicki Minaj infringed the copyright in plaintiff's song entitled "In My Life" by allegedly containing the "'same song, jingle, Hook, title' as 'In My Life'" and copying "all Style, image, Bran [sic], Hart of All Song, Jingle, Lyric[,] content, lyric, Brand, Songs[,] Titles, Video's content, sub titles, ec [sic]." *See id.* at *1, 4 (quoting allegations as pleaded in the plaintiff's complaint). The court noted that the extrinsic test requires more than the plaintiff merely listing vague, conclusory elements of two works, and rather requires the plaintiff to compare the elements of the two works for proof of copying. *See id.* at *4. Therefore, the court "had no factual basis" to infer substantial similarity between protected elements of the songs. Here, the allegations are certainly more robust.

Plaintiffs identify the copyrighted works at issue in this case. *See* SCAC ¶ 200. Plaintiffs also attach an exhibit ("Exhibit A") to the SCAC which contains a chart outlining Defendants' works at issue. The Court therefore considers whether the SCAC and Exhibit A, taken together, provide Defendants with notice of the allegations against them. The SCAC provides specific allegations of infringement for "notice and illustrative purposes," describing a selection of allegedly infringing songs, Defendants involved in the songs, and elements of the Subject Works incorporated in the songs. *See* SCAC ¶¶ 201–647. The allegedly infringing works are divided into 58 groups. *See id.* ¶ 193. The groups of allegedly infringing works are itemized as "works written, recorded, and performed" by Defendants and collaborators specified. *See id.* Exhibit A provides a list of the allegedly infringing songs, Defendants responsible for each song, and the manner of copying alleged. *See* SCAC Ex. A. Exhibit A provides a column for the "basis of infringement" which identifies one of the following bases for infringement: "sample that copies composition and copied composition;" "copied composition;" or "sample that copies composition and copied composition and interpolates *Dem Bow*." *See generally* SCAC Ex. A. "This is sufficient to notify [Defendants] as to the type of infringing conduct and the source of the claims." *Perfect 10, Inc.*, 167 F. Supp. 2d at 1121. Additional details can be elicited during the discovery stage. *Id.*

Moving Defendants argue that Exhibit A fails to specify whether Defendants' works infringed Plaintiffs' copyrights in musical compositions or sound recordings. *See, e.g.,* MTD 5 at 16. In their Opposition, Plaintiffs explain that Exhibit A "states that an Infringing Work either 'copied composition' meaning it infringed the [copyright in the] *Fish Market* composition or contains a 'sample that copies composition and copied composition' meaning it contains a sample infringing the [copyright in the] sound recording of *Fish Market* containing the composition of *Fish Market*, and copied the composition of *Fish Market*." *See* MTD 5 Opp'n at 15 n.10. While the Court recognizes the confusion with Exhibit A, this seems to be an instance of inartful pleading rather than a failure to distinguish between the infringement of a musical composition copyright and a sound recording copyright. Plaintiffs have alleged that *Fish Market* is the progenitor of the derivative works *Dem Bow*, *Pounder Riddim*, and *Pounder Dub Mix II* and, in turn, trace all the allegedly infringing songs to *Fish Market*— particularly rhythmic elements from the *Fish Market* composition—and generally claim that "the primary rhythm or drum section" of Defendants' songs copies *Fish Market*. *See* MTD 5 Opp'n at 15–16. Construing the allegations in Plaintiffs' favor, the Court finds that Exhibit A, at the very least, provides that a Defendant either copied a derivative work and thus indirectly copied the *Fish Market* composition, or directly copied the *Fish Market* composition, or interpolated *Dem Bow*.

### 3.  Substantial Similarity

Moving Defendants challenge the Subject Works as insufficiently original and thus unprotectable. Moving Defendants argue that Plaintiffs point to the "particular type of instrument being played, or the 'sonic characteristics' of the instrumentation" and assert that these elements "are not part of the musical composition copyright." *See* MTD 5 at 23. They cite to *Gray v. Hudson* ("*Gray II*"), 28 F.4th 87, 96 (9th Cir. 2022) for the proposition that "[t]he choice of a particular instrument . . . to play a tune relates to the performance or recording of a work and not to the musical composition underlying such performance or recording, "which are protected by distinct copyrights." *See id.* MTD 4 specifically challenges the *Dem Bow* musical composition as consisting of elements that are compositionally irrelevant. *See* MTD 4 at 14–15. They categorize the musical elements of *Dem Bow* and argue that instrument choices, synthesized sounds, and timbre are all compositionally irrelevant elements, and once these elements are filtered out, all that remains is the *Dem Bow* rhythm resulting from the drum (the drum pattern) and bass (the "minimalistic pattern" bass line). *See id.* at 15–17. MTD 4 then asserts that the rhythm is unprotectable. *See id.* at 15–16.

Moving Defendants therefore insist that dismissal is appropriate at this stage because the alleged similarities between Plaintiffs' works and Defendants' works are only in unprotectable elements. *See, e.g.,* MTD 4 at 12. MTD 4 asserts that the Ninth Circuit in *Gray II* held that discovery, specifically expert testimony, is not required to determine protectability of musical elements, and rather protectability can be determined with reference to "precedents and other persuasive decisions." *See id.* at 13 (citing *Gray II*, 28 F.4th at 87).

"Because the requirement is one of substantial similarity to protected elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018). "Any copyrighted expression must be 'original.'" *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (*citing Feist*, 499 U.S. at 345). "Original, as the term is used in copyright, means only that the work was independently created by the author ... and that it possesses at least some minimal degree of creativity." *Gray II*, 28 F.4th at 96 (citation and quotation marks omitted). "[I]t is not difficult to meet the famously low bar for originality." *Skidmore*, 952 F.3d at 1069. "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Feist*, 499 U.S. at 345 (internal citation and quotation marks omitted).

As noted, Plaintiffs allege that *Fish Market* has a drum pattern that differentiates it from prior works, and features, *inter alia*, "a programmed kick, snare, and hi-hat playing a one bar pattern; percussion instruments, including a tambourine playing through the entire bar, a synthesized 'tom' playing on beats one and three, and timbales that play a roll at the end of every second bar and free improvisation over the pattern for the duration of the song; and a synthesized Bb (b-flat) bass note on beats one and three of each bar, which follows the aforementioned synthesized 'tom' pattern." SCAC ¶ 180. Plaintiffs contend that the combination of these elements is original. *Id.* Plaintiffs further allege that *Dem Bow*'s instrumental is "an alternative mix of *Fish Market*." *Id.* ¶ 181. *Pounder Riddim* is a derivative work created from *Dem Bow*'s instrumental, "copied *Dem Bow*'s instrumental, sound, arrangement, and composition, including the drum pattern, the drum components, including the kick, snare, hi-hat, tom and timbales as well as the full bassline," and the composition is "virtually identical to *Fish Market*." *See id.* ¶¶ 182–83. *Pounder Riddim* "was then used to create the sound recording" of *Pounder Dub Mix II*. *See id.* ¶ 182.

The Ninth Circuit has held that "[m]usical compositions are not confined to a narrow range of expression." *Gaye*, 895 F.3d at 1120. "[M]usic is not capable of ready classification into only five or six constituent elements, but is instead comprised of a large array of elements, some combination of which is protectable by copyright." *Id.* (quoting *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004)) (cleaned up). When analyzing musical compositions, a "variety of compositional elements may be considered, including melody, harmony, rhythm, timbre, structure, instrumentation, meter, tempo, and lyrics." *Batts v. Adams*, No. CV 10-8123-JFW (RZx), 2011 WL 13217923, at *5 (C.D. Cal. Feb. 8, 2011) (citing *Swirsky*, 376 F.3d at 849). Moving Defendants generally rely on cases decided on summary judgment or later stages where the court had the benefit of the parties' evidence and expert testimony to conduct the extrinsic test. The Court finds that further discovery and expert testimony in this case would shed more light on the compositional elements at issue. *See Swirsky*, 376 F.3d at 849 ("[C]ommentators have opined that timbre, tone, spatial organization, consonance, dissonance, accents, note choice, combinations, interplay of instruments, basslines, and new technological sounds can all be elements of a musical composition."). Therefore, it is premature at this stage to find that the musical elements alleged are insufficiently original or indeed unprotectable as a matter of law. *See id.* ("So long as the plaintiff can demonstrate, through expert testimony that addresses some or all of these elements and supports its employment of them, that the similarity was "substantial" and to "protected elements" of the copyrighted work, the extrinsic test is satisfied."); *Gaye*, 895 F.3d at 1137 ("It is unrealistic to expect district courts to possess even a baseline fluency in musicology, much less to conduct an independent musicological analysis …. After all, we require parties to present expert testimony in musical infringement cases for a reason.").

Next, Moving Defendants argue that the portions of Defendants' works that Plaintiffs point to constitute rhythm, rhythm and tempo, or drum beats. They argue that such elements are commonplace or *scènes à* faire and therefore unprotectable. *See, e.g.,* MTD 4 at 17; MTD 5 at 24–25 "Under the *scenes a faire* doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright." *Swirsky*, 376 F.3d at 850; *Gray II*, 28 F.4th at 97–98 ("Nor does copyright extend to common or trite musical elements, or commonplace elements that are firmly rooted in the genre's tradition. These building blocks belong in the public domain and cannot be exclusively appropriated by any particular author.") (citing *Skidmore*, 952 F.3d at 1069 and *Swirsky*, 376 F.3d at 850).

MTD 4 goes on to cite several allegations from the SCAC and excerpts from the book *Reggaeton* referenced in the SCAC, both of which, Defendants contend establish that the *Dem Bow* rhythm constitutes *scenes a faire*. *See* MTD 4 at 18–19. Moving Defendants argue that "when evaluating a scènes à faire defense, the Court must analyze the alleged infringement within the reggaeton genre and not the entire music industry." *See, e.g.*, MTD 2 at 28–29 n.9. MTD 4 further directs the Court to several allegations which they contend call into question the protectability of the *Dem Bow* rhythm; however, these allegations compel the Court the other way. Drawing such an inference would be akin to viewing Plaintiffs' success as a double-edged sword that moved their work into the public domain. The Court rejects this interpretation. The Court recognizes the practice of musical borrowing, and in doing so, cannot merely conclude that because the reggaeton genre (or artists) have purportedly borrowed significantly from attributes of Plaintiffs' work that those attributes are now in effect commonplace elements. Furthermore, Moving Defendants claim that the musical elements are commonplace in a genre in which the Subject Works do not belong to. Genre or "a genre's tradition" may be relevant in determining the compositional significance or protectability of the alleged musical elements at issue here. *See Swirsky*, 376 F.3d at 850 ("The evidence does not support the district court's ruling that the first measure of *One* is a *scene a faire* as a matter of law. The songs *One* and *Jolly Good* are not in the same relevant "field" of music; *One* is in the hip-hop/R & B genre and *Jolly Good* is in the folk music genre."). The Court is unprepared at this stage to examine the history of the reggaeton and dancehall genres and dissect the genres' features to determine whether the elements common between the allegedly infringing works and the Subject Works are commonplace, and thus unprotectable, as a matter of law.

Moreover, as Plaintiffs point out, even if the individual elements of *Fish Market* are ultimately unprotectable, they have alleged that the *combination* of the elements is protectable. *See* MTD 4 Opp'n at 9–13; *see also Gaye*, 895 F.3d at 1119–20 ("[S]ubstantial similarity can be found in a combination of elements, even if those elements are individually unprotected.") (internal citation and quotation marks omitted). MTD 4 however asserts that Plaintiffs' allegations would also fail under a selection and arrangement theory for lack of numerosity. *See* MTD 4 at 17. "[A] combination of unprotectable elements may qualify for copyright protection." *Satava*, 323 F.3d at 811 (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) and *United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir.1978) (Kennedy, J.) ("[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement.")). Copyright protection extends to "a combination of unprotectable elements ... only if those

elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Smith v. Weeknd*, No. CV 19-2507 PA (MRWx), 2020 WL 4932074, at *7 (C.D. Cal. July 22, 2020). However, "the proper inquiry does not turn on the mere length of the copied material." *See Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 946 (9th Cir. 2023) (citing 4 Nimmer on Copyright § 13.03 (2023)). A selection and arrangement copyright protects "the particular way in which the artistic elements form a coherent pattern, synthesis, or design." *Weeknd*, 2020 WL 4932074, at *7. "The question in each case is whether the similarity relates to matter that constitutes a substantial portion of plaintiff's work," which is an "evaluation [that] must occur in the context of each case, both qualitatively and quantitatively." *Hanagami*, 85 F.4th at 946.

Moving Defendants also raise that the musical elements at issue exist in prior art. However, this argument is premature at this stage. *See Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir.1970) ("[T]he originality necessary to support a copyright merely calls for independent creation, not novelty.").

The Court finds that Plaintiffs have sufficiently alleged the protectability of the drum pattern, interplay of compositional elements, or the combination of these elements. *See Swirsky*, 376 F.3d at 849 (9th Cir. 2004). It is plausible that these elements are "qualitatively significant" to their works. *See, e.g., New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 97 (S.D.N.Y. 2015) ("Qualitatively, Plaintiff argues that the drum part is the 'defining musical element of Zimba Ku' and is the song's 'heart'… Indeed, listening to the song, the breakbeat can be reasonably be described as the driving groove, or backbone, of the song."). "Whether or not a jury would ultimately find the copied portion to be qualitatively significant is a question for another day." *Hanagami*, 85 F.4th at 946; *see also New Old Music Grp.*, 122 F. Supp. 3d at 97 ("A reasonable juror could thus find that Defendants took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.") (citation omitted and cleaned up). Accordingly, Plaintiffs have sufficiently alleged copying of protectable elements.

### C.      Vicarious and/or Contributory Infringement (Claim Two)

Since Plaintiffs have sufficiently alleged direct infringement, the Court now turns to Plaintiffs' claim for secondary infringement. Moving Defendants all argue that Plaintiffs fail to state a claim for contributory infringement and vicarious infringement.

"[I]n general, contributory liability is based on the defendant's failure to stop its own actions which facilitate third-party infringement, while vicarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities." "Whereas contributory infringement is based on tort-law principles of enterprise liability and imputed intent, vicarious infringement's roots lie in the agency principles of *respondeat superior*." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n* ("Visa"), 494 F.3d 788, 802 (9th Cir. 2007). To allege contributory infringement, a plaintiff must show that a defendant "(1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Visa*, 494 F.3d at 795. While vicarious infringement requires a plaintiff to show that a defendant "enjoys a direct financial benefit from another's infringing activity and 'has the right and ability to supervise' the infringing activity." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (internal citations omitted).

Moving Defendants argue that "Plaintiffs generically refer to 'Defendants' without pleading who did what and with respect to whom." *See* MTD 5 at 28–29. They assert that "Plaintiffs merely recite the elements of a claim without any facts linking any Defendants or showing that any Defendant knew about infringing conduct, induced, caused, or materially contributed to such conduct, or that any Defendant had the right and ability to supervise any allegedly infringing conduct." *See id.* at 28.

First, Plaintiffs allege the direct predicate acts of copying their Subject Works. *See* MTD 5 Opp'n at 22. Therefore, Plaintiffs' claims for contributory and vicarious infringement must be based on some *other* directly infringing conduct. *See Sound & Color, LLC v. Smith*, No. 2:22-cv-01508-AB (ASx), 2023 WL 2821881, at *16 (C.D. Cal. Feb. 28, 2023) (emphasis in original). Plaintiffs argue that the SCAC "specifically identif[ies] record label and publishing Defendants involved in the licensing and authorization of third party distributors['] exploitation of the Infringing Works by both physical and online sources." *See*

MTD 5 Opp'n at 24; SCAC ¶ 671 (listing Defendants).[11]  Plaintiffs, however, assert all their claims against all Defendants and allege that all Defendants engaged in the same broad conduct, without providing sufficient non-conclusory facts that would assist each Defendant in deciphering what grounds Plaintiffs are basing their secondary infringement claims against them. *Sound & Color*, 2023 WL 2821881, at *16. As Moving Defendants point out, "a defendant cannot be secondarily liable for their own direct infringement." *Id.*; *see also A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party."). Plaintiffs have not distinguished which Defendants took what specific actions, such that Plaintiffs plausibly allege a claim that another defendant had knowledge of or materially contributed to or induced the underlying infringing conduct or had the right and ability to supervise the underlying infringing conduct. *Sound & Color*, 2023 WL 2821881, at *16; *see also Weeknd*, 2019 WL 6998666, at *3 (rejecting the plaintiffs' secondary infringement claims as duplicative of their direct infringement claims).

Second, as to the control element of vicarious copyright infringement, Plaintiffs claim that each Defendant involved in the infringement "had the ability to oversee the publication and distribution of the Infringing Works" and each Defendant "realized profits through their respective obtainment, distribution, and publication of the Infringing Works." SCAC ¶ 680. Plaintiffs contend that "to the extent that any Defendant collaborated with another artist to create one or more of the Infringing Works, that Defendant is vicariously liable for that other artist's infringement because Defendants were able to supervise and or control the infringing conduct and profited from the infringement." *See id.*

---

[11]  Specifically, Plaintiffs have alleged that Defendants "Sony, Ultra, Energy Music Corp, UMP, BMG, Warner, Peermusic III, Ltd, Pulse Records, Sony Music Publishing, LLC, Maybach Music Group, LLC, Cinq Music Group, LLC Cinq Music Publishing, LLC, Real Hasta la Muerte, LLC, Aura Music, LLC, Hipgnosis Songs Group, LLC, Kemosabe Records, LLC, Concord Music Group, LLC, Vydia, Inc., Solar Music Rights Management Limited, Glad Empire Live, LLC, Hear This Music, LLC, Mad Decent Publishing, LLC, Mad Decent Protocol, LLC, Rich Music Inc., Dimelo Vi LLC, VP Records Corporation, Mr. 305, Inc., Duars Entertainment, Corp., Ingrooves Music Group, Empire Distribution, Inc., OVO Sound, LLC, Flow La Movie, Inc., The Royalty Network, Inc., WK Records, LLC, La Base Music Group, LLC and Kobalt have infringed Plaintiffs' rights in Fish Market, Pounder [Dub Mix II], and Dem Bow by, without limitation, exploiting [the Subject Works] for profit by licensing, or otherwise authorizing third parties to use, reproduce and/or perform the Infringing Works for profit." SCAC ¶ 671.

A party has control over a direct infringer when it has "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). In other words, vicarious liability is based on the "defendant's failure to cause a third party to stop its directly infringing activities." *Id.* at 1175.

Plaintiffs point to *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) in support of their argument that Plaintiffs "need not further plead" facts about control because "information regarding the total scope of control and contribution by one defendant on behalf of the other is 'particularly within' the possession of Defendants." *See e.g.*, MTD 1 Opp'n at 18. However, *Friedman* is inapposite as it concerns direct state of mind evidence. *Friedman*, 833 F.3d at 1189 (9th Cir. 2016). Plaintiffs' failure to plead sufficient facts showing a Defendant's alleged relationship with the direct infringer is "fatal" to Plaintiffs' vicarious infringement claim. *See Unicolors, Inc. v. H&M Hennes & Mauritz LP*, No. CV 16-02322-AB (SKx), 2016 WL 10646311, at *6 (C.D. Cal. Aug. 12, 2016). The Court therefore finds that Plaintiffs have failed to allege sufficient facts showing control to draw a reasonable inference of vicarious liability. *See id.* ("Plaintiff's bare pronouncement that Defendant 'had the right and ability to supervise the infringing conduct' merely parrots the element and, without more, provides no basis for the Court to conclude that the allegation of supervisory authority is plausible.").

In sum, the Court finds that Plaintiffs have failed to allege contributory infringement and vicarious infringement. Plaintiffs may be able to allege viable claims for contributory or vicarious copyright infringement within the strictures of Rules 8(a), but it will require more specific factual allegations than were provided in the SCAC. Accordingly, the Court **GRANTS** the five Motions to Dismiss as to Plaintiffs' claim for vicarious and/or contributory copyright infringement **with leave to amend**.

If Plaintiffs elect to file an amended complaint asserting claims for contributory infringement and vicarious infringement, the Court **ORDERS** Plaintiffs to separate the two claims into separate causes of action. *See Klauber Bros., Inc. v. Roma Costumes, Inc.*, No. 2:22-cv-04425-MEMF (MARx), 2023 WL 3903908, at *8 (C.D. Cal. June 7, 2023) (internal citations omitted); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1103 n.6 (N.D. Cal. 2008) ("[C]ontributory and vicarious infringement are distinct theories of secondary liability."); *Bautista v. Los Angeles County*, 216 F.3d 837, 840–41 (9th Cir. 2000) ("Separate counts may be required if necessary to enable the defendant

to frame a responsive pleading or to enable the court and other parties to understand the claims.").

### D.    Other Defenses

Defendants assert that Plaintiffs' failure to register any copyrights and file any action for at least thirty years after the creation of the works raises estoppel and implied license issues. *See* MTD 5 at 26–27. Defendants argue that "[t]hese failures constitute misleading inaction, during which an entire genre of reggaeton music developed, which Plaintiffs now claim to own" and "this inaction should bar Plaintiffs' claims with respect to works created prior to 2020 or that include *Pounder Riddim*, or bar Plaintiffs' claims to injunctive relief or limit profits." *Id.* at 27.

"[W]hen a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception, the doctrine of estoppel may bar the copyright owner's claims completely, eliminating all potential remedies." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014). "To prevail on an estoppel defense, the following four elements must be established: (1) the plaintiff knew of the defendant's allegedly infringing conduct; (2) the plaintiff intended that the defendant rely upon his conduct or act so that the defendant has a right to believe it is so intended; (3) the defendant is ignorant of the true facts; and (4) the defendant detrimentally relied upon the plaintiff's conduct." *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1115 (C.D. Cal. 2010) (internal citations omitted). "Though, equitable estoppel is disfavored and should only be applied as needed to avoid injustice." *Id.*

Because the elements of estoppel turn on disputed facts, it is improper for the Court to resolve this issue at this stage. The Court therefore rejects Defendants' assertion that Plaintiffs' claims are barred by the doctrine of estoppel.

## V.    MOTION FOR A MORE DEFINITE STATEMENT

Defendants Empire and DJ Snake join MTD 5, and in the alternative, move for a more definite statement ("MDS") pursuant to Rule 12(e). *See generally* MFJ 1 (Dkt. No. 332). Because MTD 5 is denied in part, the Court addresses the parties' Motion for More Definite Statement.

The Motion for More Definite Statement argues that DJ Snake and Empire cannot ascertain from the SCAC the nature of the claims against them. *See* MDS at 7–8. Specifically, DJ Snake and Empire argue that there are discrepancies between the SCAC and Exhibit A regarding the number of allegedly infringing works DJ Snake and Empire are involved in, as well as ambiguity regarding their specific involvement, which makes them unable to ascertain whether Plaintiffs are alleging that DJ Snake and Empire copied compositions or sampled sound recordings, or both; and how DJ Snake and Empire allegedly infringed the copyrights in Plaintiffs' works. *See* MDS at 7–9. DJ Snake and Empire move to order Plaintiffs to specify: (1) which of Plaintiffs' copyrights DJ Snake and Empire allegedly infringed, and whether Plaintiffs' copyrights that are allegedly infringed by them are in sound recordings, compositions, or both; (2) which of DJ Snake's and Empire's works allegedly infringe Plaintiffs' copyrights, and whether DJ Snake's and Empire's allegedly infringing works are sound recordings, compositions, or both; and (3) what DJ Snake and Empire did with respect to the allegedly infringing works which give rise to their inclusion in this suit. *See* MDS at 2.

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Motions for a more definite statement are disfavored, and ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail." *Phillips v. Specialized Loan Servicing LLC*, No. EDCV 20-1819 JGB (SPx), 2021 WL 936016, at *5 (C.D. Cal. Jan. 29, 2021) (quoting *Medrano v. Kern Cty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1013 (E.D. Cal. 2013)).

Here, the SCAC lists allegedly infringing works by DJ Snake, claims that those works are an unauthorized sample or verbatim copy of *Fish Market* and incorporate both qualitatively and quantitively significant sections of *Fish Market* as the primary rhythm or drum section of each work, and points to the SCAC exhibit ("Exhibit A") for a chart that lists the various Defendants allegedly responsible for each of the works and the manner of copying alleged. *See* SCAC ¶¶ 421–424; SCAC Ex. A. Exhibit A lists these works and additional works that DJ

Snake was involved in with other Defendants. *See* SCAC Ex. A at 8, 11, 16, 21. The body of the SCAC does not contain specific allegations of infringement against Empire. Exhibit A, however, specifies at least 32 works that Empire was involved in which allegedly copied the *Fish Market* composition. *See* SCAC Ex. A at 13, 31–33. Several of those works are described in the body of the SCAC. *See, e.g.,* SCAC ¶¶ 421–424. The Court finds that the SCAC is "specific enough" to notify DJ Snake and Empire of the substance of Plaintiffs' claims. *See id.*; *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (A motion for a more definite statement is "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted") (citation omitted). The additional details sought by Defendants could be obtained through discovery. Accordingly, the Court **DENIES** the Motion for More Definite Statement (Dkt. No. 332).

## VI.    CONCLUSION

For the foregoing reasons, the seven Motions for Joinder (Dkt. Nos. 332, 333, 336, 337, 341, 362, 370) are **GRANTED**. The two 12(b)(2) Motions to Dismiss (Dkt. Nos. 324, 327) are **DENIED**. The five 12(b)(6) Motions to Dismiss (Dkt. Nos. 322, 324, 327, 330, 331) are **DENIED as to Claim One** and **GRANTED as to Claim Two with leave to amend**. The Motion for More Definite Statement (Dkt. No. 332) is **DENIED.**

Plaintiffs may file a Third Consolidated Amended Complaint within 30 days of the issuance of this Order, otherwise the dismissed claims herein will be dismissed with prejudice. If Plaintiffs elect to assert claims for contributory infringement and vicarious infringement, the amended complaint must separate the two claims into separate causes of action.

**IT IS SO ORDERED**.