**PRYOR CASHMAN LLP**
Benjamin S. Akley (State Bar No. 278506)
*bakley@pryorcashman.com*
Shamar Toms-Anthony (State Bar No. 323246)
*stoms-anthony@pryorcashman.com*
1901 Avenue of the Stars, Suite 900, Los Angeles, California 90067
Telephone: (310) 683-6900

Donald S. Zakarin (admitted *pro hac vice*)
*dzakarin@pryorcashman.com*
Frank P. Scibilia (admitted *pro hac vice*)
*fscibilia@pryorcashman.com*
7 Times Square, 40th Floor, New York, New York 10036
Telephone: (212) 421-4100

James G. Sammataro (State Bar No. 204882)
*jsammataro@pryorcashman.com*
Sophia Sofferman (admitted *pro hac vice*)
*ssofferman@pryorcashman.com*
255 Alhambra Circle, 8th Floor, Miami, Florida 33134
Telephone: (786) 582-3003

*Attorneys for the Pryor Cashman-Represented Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *ET AL.*,<br><br>Plaintiffs,<br><br>v.<br><br>RODNEY SEBASTIAN CLARK, an individual, *ET AL.*,<br><br>Defendants. | Case No.: 2:21-cv-02840-AB-AJR<br><br>**REPLY IN FURTHER SUPPORT OF MOTION FOR PROTECTIVE ORDER** |

1

The vast majority of Plaintiffs' Discovery Demands are in patent violation and contempt of the Court's Administration Order (which was intended to enable the orderly progression of this case) and violate the Federal Rules of Civil Procedure. Plaintiffs grudgingly admit as much, <u>withdrawing</u> 22 demands and belatedly <u>revising</u> 11 more.[1] But these withdrawals and revisions merely scratch the surface because virtually all Plaintiffs' Discovery Demands remain defective. They should be precluded for the reasons outlined in the Pryor Cashman-Represented Defendants' moving papers.

### A. **<u>Plaintiffs' Discovery Demands Largely Exceed This Phase's Scope</u>**

101 RFAs, RFPs, and ROGs[2] lie completely outside of the very specifically defined scope of discovery authorized by the Administration Order during *this* phase of the case. In attempting to justify their purposeful violation of the Administration Order, Plaintiffs offer nonsensical gibberish, claiming that "the originality and protectability inquiries involve looking at works within the implicated musical landscapes in relation to other works within those landscapes to see how the expression at issue is treated." (Dkt. 609 at 14.) Thus, even though the Administration Order expressly bars such inquiry, Plaintiffs claim they are entitled to discovery concerning "the dancehall and reggaeton genres" because such discovery will purportedly determine "whether the allegedly common material at issue is original and protectable." (*Id*. at 14-15.) It will not.

Plaintiffs' *ex post facto* invented rationalization is an attempt to fit a square peg into a round hole. It fails legally, logically, and chronologically. The allegedly infringing works, by definition, were created <u>after</u> Plaintiffs' claimed works. They could not be part of the "musical landscapes" of the "dancehall and reggaeton genres" that <u>preceded</u> Plaintiffs' alleged creation of their works in 1989, which is all that is

---

[1] Plaintiffs bury these changes to their Demands in Exhibit 8 to the Tookey Declaration. (Dkt. 609-9.) Plaintiffs offer no explanation for the changes.

[2] The specific requests are specified in Exhibit C to the Akley Decl. (Dkt. 596-4.)

relevant. There is thus no basis on which those Defendants' testimony, information, or documents can be relevant to the limited questions at issue during this phase: are the Plaintiffs' works original to Plaintiffs and protectable?

Plaintiffs also offer a non-serious "tit for tat" argument: they are entitled to discovery concerning the creation of Defendants' works because Defendants are seeking discovery concerning the creation of Plaintiffs' claimed works. The Administration Order intentionally tiered discovery into distinct phases in part because the burden on Plaintiffs and over 160 Defendants is not symmetrical. The Administration Order reflects that the first phase is focused solely on a common "gating" issue, which is whether <u>Plaintiffs</u> have a viable copyright capable of being enforced.[3] The influences on and "musical landscapes" of works preceding <u>Plaintiffs'</u> claimed works are obviously relevant to that issue, but works created thereafter – including Defendants' allegedly infringing works – are not. This is what Plaintiffs agreed to (after extensive negotiation); it is what Judge Birotte ordered in the Administration Order; and it is what this Court should enforce. Plaintiffs' nonsensical *post hoc* justification only underscores that their violation of the Administration Order was unjustifiable and intentional.

Plaintiffs also advance an equally frivolous argument that stands the law on its head: "how Defendants have used the expression at issue can bear on the scope of protection afforded to Plaintiffs' works." It does not. The scope of protection is determined solely by what elements in Plaintiffs' works are original and protectable, and it is Plaintiffs' burden to identify the "copyrightable subject matter" that they purportedly own. In their SCAC, (Dkt. 306 ¶¶ 180, 188, 648), Plaintiffs' claim to own the "Fish Market Riddim" and the "Fish Market Elements" (as those terms are defined and used in Plaintiffs' Discovery Demands). They now bear the burden of proving that

---

[3] This is a "gating" issue because, if resolved in Defendants' favor, the parties and Court never need to address individual issues of access and actionable similarity for some 160+ defendants and 1800+ works alleged to be infringing.

material is in fact original and protectable. This is <u>*the sole issue*</u> on which discovery is presently permitted.

### B. **Plaintiffs' Remaining 35 Discovery Demands Are Also Defective**[4]

Defendants should also be excused from responding to the few Discovery Demands that are arguably within the scope of the Administration Order, but otherwise violate the Federal Rules, or are based on self-serving definitions, and/or demand legal opinions or expert analysis months before expert disclosures are due.

<u>First</u>, Plaintiffs' ROGs vastly exceed the 25-question limitation set forth in FRCP 33. Plaintiffs' response is to misrepresent that the numerosity objection "is based solely on purporting to count as discrete subparts 'the number of individual works with which each responding Defendant is involved.'" No, as detailed in the moving papers, (Dkt. 596 at 10), even without counting the number of works addressed in each ROG, they consist of multiple subparts. For example, ROG No. 3 contains – without accounting for the multiple works implicated – at least two separate subparts:

**INTERROGATORY NO. 3**

[**1st**] Identify any and all musical compositions and/or sound recordings that You contend contain and/or embody the Fish Market Riddim (including the Fish Market Elements) and predate the 1989 release of Fish Market; and **[2nd]** Identify all facts (including any and all Communications and Documents corroborating and/or demonstrating those facts) showing that the portion(s) of those musical compositions and/or sound recordings contained and/or embodied the Fish Market Riddim (including the Fish Market Elements) before the release of Fish Market.

---

[4] Plaintiffs claim that Defendants "conceded and/or waived" objections to certain requests by failing to include them in the illustrative chart provided voluntarily during the meet and confer process. Defendants timely and properly reserved all objections. Indeed, the email transmitting the chart expressly stated "[t]o be clear, by providing the attached <u>we are not waiving any other objections</u> and, again, <u>we do not concede</u> that providing you this level of detail is necessary." In any case, Defendants' written responses and objections to Plaintiffs' Discovery Demands are not yet due so no objections could have been waived.

4

Even without counting that ROG 1 alone calls for up to 84 separate responses, there are no less than 124 interrogatories in each set (*i.e.*, 99 more than the 25 permitted by FRCP 33).

Second, Plaintiffs are improperly attempting to obtain premature expert discovery through fact Discovery Demands on Defendants. The SCAC does not allege that any Defendant was present during or prior to the creation of Plaintiffs' claimed works. That Defendants possess varying levels of experience as musicians does not mean they have any personal knowledge of the originality or protectability of Plaintiffs' claimed works. The key to admissible lay opinion is that the opinion be "predicated on facts perceived with the witness's own senses" or based on their "sensory perception." *Plush Lounge Las Vegas LLC v. Hotspur Resorts Nevada Inc.*, 371 F. App'x 719, 721 (9th Cir. 2010). Plaintiffs' Discovery Demands asking Defendants to admit whether "Fish Market Riddim possesses at least some minimal degree of creativity," (RFA No. 7), and requesting that Defendants "Identify all facts…supporting [their] contention" that the "Fish Market Riddim was not independently created" plainly require expert testimony. (*See* ROG No. 2; *see also* Akley Decl. Ex. D).

Third, Plaintiffs' ambiguous language and self-serving definitions render many of the Discovery Demands unanswerable. Rather than forcing Defendants to respond to nonsensical and loaded questions, Plaintiffs should be required to serve appropriate, intelligible, and – most importantly – properly-relevant new requests, cabined by the Administration Order.

## C. Conclusion

The Court should excuse Defendants from answering the improper Discovery Demands and/or require Plaintiffs to propound new discovery demands consistent with the Administration Order and other applicable rules. The Court should further preclude or limit the scope of Plaintiffs' noticed depositions and award the Pryor Cashman-Represented Defendants their attorneys' fees and costs incurred in making this motion.

1 | Dated: October 15, 2024

2 | **PRYOR CASHMAN LLP**

4 | By: */s/ Donald S. Zakarin*_____
Donald S. Zakarin (*dzakarin@pryorcashman.com*)
5 | Frank P. Scibilia (*fscibilia@pryorcashman.com*)
6 | James G. Sammataro (*jsammataro@pryorcashman.com*)
Benjamin S. Akley (*bakley@pryorcashman.com*)
7 | Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)
8 | Sophia Sofferman (*ssofferman@pryorcashman.com*)