**PRYOR CASHMAN LLP**
Benjamin S. Akley (State Bar No. 278506)
*bakley@pryorcashman.com*
Shamar Toms-Anthony (State Bar No. 323246)
*stoms-anthony@pryorcashman.com*
1901 Avenue of the Stars, Ste. 900, Los Angeles, California 90067
Telephone: (310) 683-6900

Donald S. Zakarin (admitted *pro hac vice*)
*dzakarin@pryorcashman.com*
Frank P. Scibilia (admitted *pro hac vice*)
*fscibilia@pryorcashman.com*
7 Times Square, 40th Floor, New York, New York 10036
Telephone: (212) 421-4100

James G. Sammataro (State Bar No. 204882)
*jsammataro@pryorcashman.com*
Sophia Sofferman (admitted *pro hac vice*)
*ssofferman@pryorcashman.com*
255 Alhambra Circle, 8th Floor, Miami, Florida 33134
Telephone: (786) 582-3003

*Attorneys for the Pryor Cashman-Represented Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *ET AL.*,<br><br>Plaintiffs,<br><br>v.<br><br>RODNEY SEBASTIAN CLARK, an individual, *ET AL.*,<br><br>Defendants. | Case No.: 2:21-cv-02840-AB-AJR<br><br>**NOTICE OF MOTION AND MOTION TO DISQUALIFY ATTORNEY GARTH A. CLARKE**<br>*[Declaration of Benjamin S. Akley, Request for Judicial Notice, and [Proposed] Order filed concurrently]*<br><br>Date: January 10, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom: 7B |

## NOTICE OF MOTION AND MOTION TO DISQUALIFY

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 10, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 7B of this Court, located at 350 W. 1st Street, Los Angeles, CA 90012, the Pryor Cashman-Represented Defendants will and hereby do move the Court for an order disqualifying *pro hac vice* attorney Garth A. Clarke ("Clarke") from representing Plaintiffs in this action.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, Declaration of Benjamin S. Akley ("Akley Decl."), and Request for Judicial Notice ("RJN"), any reply memorandum, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.

### C.D. Cal. L.R. 7-3 Statement of Compliance

This motion is made following a telephonic conference of counsel pursuant to L.R. 7-3 which took place on November 14, 2024.

Respectfully submitted on November 21, 2024

**PRYOR CASHMAN LLP**

By: */s/ Benjamin S. Akley*
Donald S. Zakarin (*dzakarin@pryorcashman.com*)
Frank P. Scibilia (*fscibilia@pryorcashman.com*)
James G. Sammataro (*jsammataro@pryorcashman.com*)
Benjamin S. Akley (*bakley@pryorcashman.com*)
Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)
Sophia S. Sofferman (*ssofferman@pryorcashman.com*)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND BACKGROUND

In May 2020 – over three decades after "Fish Market" (the work Plaintiffs allege has been infringed by the entire reggaeton genre) was allegedly created by Plaintiffs or their predecessors-in-interest – Plaintiffs sought to register "Fish Market" with the U.S. Copyright Office ("U.S.C.O.") through their agent, a person by the name of Garth A. Clarke ("Clarke"). (Declaration of Benjamin S. Akley ("Akley Decl.") ¶ 3.)

In his application to register the work, presumably based on information he obtained from the authors or their representatives, Clarke represented to the U.S.C.O. that "Fish Market" was first published in Jamaica on November 15, 1989. (Akley Decl. ¶ 4, Ex. A.) As a result of that assertion, the U.S.C.O. sent an e-mail to Clarke stating that it intended to reject Plaintiffs' application "due to the lack of copyright relations between Jamaica and the U.S. at the time of first publication, based on the facts stated in the application." (*Id.*)

The U.S.C.O. thereafter asked Clarke whether "Fish Market" "was published anywhere outside of Jamaica within 30 days of its publication there on 11/15/89." (Akley Decl. ¶ 5.) Clarke confirmed "there was no publication of the Fish Market outside of Jamaica by 12/15/89." (*Id.*) The U.S.C.O. then asked whether "Poco Man Jam" – which Clarke had claimed was an alternative version of "Fish Market" – was published outside of Jamaica before 12/15/89. (Akley Decl. ¶ 6.) Clarke again confirmed: "No, it was not – the very first release was in November 1989 by 45 single in Jamaica"; it "was not released outside of Jamaica before 12/15/89. (*Id.*)

As a result of its correspondence with Clarke, the U.S.C.O. formally rejected the (decades-belated) application to register "Fish Market" on June 12, 2020. (Akley Decl. ¶ 7.) But upon receiving that rejection, Clarke abruptly made a 180

degree change to his story, claiming that notwithstanding what he had previously said (three times), "Fish Market" was not first released in Jamaica but was instead first released in the United States, in New York, in 1989. (Akley Decl. ¶ 8.) The U.S.C.O. (which generally takes at face value the facts alleged in an application for registration) – leaving it to litigants to pursue claims of fraud on the Copyright Office in registrations – granted the application. (Akley Decl. ¶ 9.)

Based on Clarke's representations to the U.S.C.O., "Fish Market" has sound recording Registration Numbers SR 884-348 and SR 893-268, (Akley Decl. ¶ 10, Ex. C the "Purported Fish Market Registrations"),[1] which were respectively effective as of June 8, 2020 and March 12, 2021 (over 30 years after "Fish Market" was purportedly published).[2]

After their motion to dismiss was granted in part and denied in part, Defendants answered the Second Consolidated Amended Complaint on July 25, 2024. (Akley Decl. ¶ 11.) In light of Clarke's correspondence with the U.S.C.O., Defendants asserted as affirmative defenses both that Plaintiffs' registration is invalid, and that Plaintiffs had committed fraud on the U.S.C.O. (*Id.*; *see, e.g.*, Dkt. 512, Def. Justin Bieber's Affirmative Defenses Nos. 16 and 18.) Clarke is, of course, a key fact witness concerning the facts and circumstances of Plaintiffs'

---

[1] The Court can take judicial notice of these registrations, *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001), which in any event Plaintiffs produced with "STEELY&CLEVIE"-prefixed Bates numbers during discovery before this action was consolidated. (*See* Request for Judicial Notice ISO Motion to Disqualify.)

[2] Notably, because Plaintiffs waited decades after purportedly publishing "Fish Market" before obtaining the Purported Fish Market Registrations, the registrations do not "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate" in these proceedings under 17 U.S.C § 410(c) (which by its terms applies only where the "registration [was] made before or within five years after first publication of the work").

2

1 purported decades-belated registration of their allegedly-infringed works with the
2 U.S.C.O. His statements to the U.S.C.O. raise serious issues concerning the
3 validity of Plaintiffs' copyright registration, and make him a percipient witness –
4 perhaps the most important witness with respect to whether Plaintiffs' registration
5 was fraudulent and what the actual facts are. (Akley Decl. ¶ 12.)

6 In furtherance of these affirmative defenses (and because this phase of this
7 case is focused on the originality and protectability of Plaintiffs' claimed
8 copyrights and hence on their validity), on August 14, 2024, Defendants served
9 discovery on Plaintiffs that included requests concerning the registration issue.[3]
10 (Akley Decl. ¶ 13.) But cognizant of Defendants' affirmative defenses and having
11 received the discovery demands, having not identified any prior need in over three
12 years to include Clarke as a counsel, Plaintiffs implemented a gambit by which they
13 hoped to immunize Clarke from having to provide information to the Defendants
14 concerning the validity of their registrations. (Akley Decl. ¶ 14.)

15 First, over three years into this case, they belatedly rushed to have Clarke
16 admitted *pro hac vice* as "counsel" for Plaintiffs. (Akley Decl. ¶ 15.) Then, when
17 the Defendants served Clarke with a subpoena to obtain the discoverable facts
18 surrounding his registrations, Plaintiffs implemented their immunization strategy,
19 claiming that Clarke cannot be subject to discovery because he is "counsel of
20 record," even though Doniger / Burroughs had not found it necessary to include
21 Clarke as co-counsel at any time since inception of this case. And, oddly, Clarke

---

[3] *See, e.g.*, Def. Sony Ent.'s Interrogatory No. 21 ("Identify the specific date on which Fish Market was first released in the United States."); Def. UMG's RFP No. 36 ("All documents supporting any statements you made to the United States Copyright Office concerning the copyright application and/or copyright registration for Fish Market.").

3

does not appear to have any litigation experience.[4]  Indeed, in the few conferences and court appearances since he was identified as co-counsel, Clarke has not uttered a single word.  (Akley Decl. ¶ 16, Ex. B.)

Underscoring that the sole reason Plaintiffs belatedly found it necessary to make Clarke co-counsel, Plaintiffs audaciously demanded that the Defendants withdraw the subpoena, confirming that they added Clarke as counsel solely as a pretext for protecting and immunizing him from testifying.  (Akley Decl. ¶ 17.)

Clarke's representation of Plaintiffs in this action is a patent violation of the advocate/witness rule and would be prejudicial to Defendants (in that Defendants would be hindered from obtaining all of the information Clarke possesses in connection with his communications with the U.S.C.O., and Clarke's ability and willingness to testify truthfully would be hindered).  Defendants further believe that Clarke's continuance in this case would be in conflict with his ethical obligations to Plaintiffs (in that his testimony could be severely damaging to their case).

On the other hand, given the current procedural posture of this case and the circumstances of Clarke's admission as additional *pro hac vice* counsel, Plaintiffs will not be prejudiced by his removal.  Clarke should be disqualified from representing Plaintiffs in this action to maintain the ethical standards of professional responsibility, to avoid any confusion about Clarke's role and to bar any violation of the advocate/witness rule.

**II.   ARGUMENT**

District courts have the inherent power and discretion to disqualify counsel in order to maintain the ethical standards of professional responsibility.  *See*

---

[4] A Westlaw search reveals only a single litigation document mentioning Clarke's name, filed in a 2018 Southern District of New York case in which Clarke never actually appeared.  (Akley Decl. ¶ 16.).

4

*Certain Underwriters at Lloyd's v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Motions to disqualify counsel are governed by state law. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Here, the Pryor Cashman-Represented Defendants seek Clarke's disqualification pursuant to California's "advocate-witness rule," "which prohibits an attorney from acting both as an advocate and a witness in the same proceeding, has long been a tenet of legal ethics in the American legal system, and traces its roots back to Roman Law." *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1208 (Cal. Ct. App. 2011) (citation omitted). "The policy rationale for prohibiting representation [when an attorney is a witness] is to avoid placing the advocate in the unseemly and ineffective position of arguing his own credibility...." *In re Johnston Hawks Ltd.*, 885 F. 2d 875, 1989 WL 107841, at *3 (9th Cir. Sept. 12, 1989) (citation omitted).

Pursuant to ABA Model Rule 3.7: "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." The basis for Rule 3.7 is that "[t]he roles of an advocate and of a witness are inconsistent." *Kennedy*, 201 Cal. App. 4th at 1209. As the California Court of Appeal has held:

> The prohibition against a lawyer's serving as an advocate and testifying as a witness in the same matter is essentially aimed at eliminating confusion over the lawyer's role. This confusion could prejudice one or more of the parties or call into question the impartiality of the judicial process itself. As an advocate, the lawyer's task is to present the client's case and to test the evidence and arguments put forth by the opposing side. A witness, however, provides sworn testimony concerning facts about which he or she has personal knowledge or expertise. The very fact of a lawyer taking on both roles will affect the way in which a jury evaluates the lawyer's testimony, the lawyer's advocacy, and the proceedings themselves.

*People v. Donaldson*, 93 Cal. App. 4th 916, 928 (Cal. Ct. App. 2001).

Unlike ABA Model Rule 3.7, Rule 3.7 of the California Rules of Professional Conduct provides an exception to the "advocate-witness" rule where an attorney obtains "informed written consent" from his or her client. However, Comment 3 to Rule 3.7 specifically acknowledges that "courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced." (citing *Lyle v. Superior Court*, 122 Cal. App. 3d 470 (1981)).[5]

In exercising its discretion the Court should consider "(1) the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case; (2) the possibility counsel is using the motion to disqualify for purely tactical reasons; and (3) whether counsel's testimony is, in fact, genuinely needed." *Miguel Solorio v. CareCo, LLC*, No. 24-CV-00663-JVS-JDE, 2024 WL 3915234, at *9 (C.D. Cal. July 2, 2024) (quoting *Smith, Smith & Kring v. Superior Ct.*, 60 Cal. App. 4th 573, 580-81 (1997)). "In determining the necessity of counsel's testimony, the court should consider 'the significance of the matters to which [s]he might testify, the weight [her] testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established.'" *Id*. (quoting *Smith, Smith & Kring*, 60 Cal. App. 4th at 581).

---

[5] Notwithstanding this distinction, California state and federal courts regularly look to and rely upon the ABA Model Rules for guidance on "advocate-witness" disqualification. *See, e.g., Donaldson*, 93 Cal. App. 4th at 928; *Kennedy*, 201 Cal. App. 4th at 1208; *Caluori v. One World Technologies, Inc.*, No. 07-CV-2035-CAS-VBKx, 2012 WL 2004173, at *4-5 (C.D. Cal. June 4, 2012).

*First*, Plaintiffs have been represented (presumably to their satisfaction) by Doniger / Burroughs for well-over three years, and Plaintiffs only added Clarke (via a *pro hac vice* application, because Clarke is not admitted to practice in California) to their attorney team on August 29, 2024. They did so only after the Pryor Cashman-Represented Defendants asserted defenses and issued discovery requests that Plaintiffs knew directly implicated Clarke. There is no concern about "duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case." *See U.S. Equal Emp. Opportunity Comm'n v. Bay Club Fairbanks Ranch, LLC*, 437 F. Supp. 3d 802, 806 (S.D. Cal. 2019) (granting motion to disqualify where the attorney at issue "has had an extremely limited role as an attorney in this litigation and, therefore, [the client] would not incur the duplicative costs and time-consuming effort that clients usually incur when counsel is disqualified").

*Second*, the Pryor Cashman-Represented Defendants are not using this motion to disqualify for tactical reasons. The Pryor Cashman-Represented Defendants filed their answers and sought discovery directly addressed to Clarke and his role in procuring the copyright registrations over 30 years after "Fish Market" was created before Clarke sought to appear in this action. Further, the Pryor Cashman-Represented Defendants bring this motion directly after Plaintiffs and Clarke made clear that their strategy in having him become co-counsel was to try to immunize him from providing relevant testimony. The case is not in a position whereby Plaintiffs will be prejudiced or disadvantaged by Clarke's unavailability as counsel. Indeed, given that Clarke is plainly a key fact witness in this case, appears to have little if any litigation experience, and Plaintiffs have been capably represented in this action by the Doniger / Burroughs firm in this action for several years, it would appear that Plaintiffs are the ones with "tactical reasons" for now seeking to name Clarke as a "trial counsel" in this action.

***Third***, there can be no question that Clarke's testimony is "genuinely needed." The validity of, and circumstances under which Plaintiffs obtained, the Purported Fish Market Registrations are highly relevant to the existence and scope of Plaintiffs' rights in (and remedies for alleged infringement of) "Fish Market," and Clarke is the person who obtained those registrations for Plaintiffs and—most importantly—is the person who made the inconsistent statements to the Copyright Office concerning the place and time of first publication of "Fish Market." Given the inherent credibility issues raised by Clarke's inconsistent statements – and the prospect that there was a fraud on the Copyright Office – it is crucial that Defendants have adequate and fair opportunity to cross-examine him and obtain complete document production and deposition testimony from him (reflecting his sources of information and how he came to completely reverse course on the facts concerning publication) concerning the Purported Fish Market Registrations, and no other person can adequately provide information or testify as to the circumstances of Clarke's statements and the registrations.

Judge Snyder's 2012 disqualification of an attorney in *Caluori v. One World Technologies, Inc.* is instructive. One of the plaintiff's attorneys in that patent litigation also "represented plaintiff in prosecuting" (*i.e.*, applying for and obtaining) the underlying patent at issue, and the defendant sought disqualification because it intended to raise defenses "that plaintiff failed to name the correct inventors when prosecuting the . . . patent and that plaintiff engaged in inequitable conduct by failing to disclose his own highly relevant prior art," making the attorney a necessary witness "given his intimate knowledge of the . . . patent and its prosecution history." 2012 WL 2004173, at *4. The plaintiff argued that disqualification was inappropriate because (i) it is disfavored, (ii) the plaintiff consented to the witness's role as advocate, (iii) the disqualification would cause "undue hardship," and (iv) the attorney's "role as a witness would be narrow." *Id*.

8

Recognizing "that disqualification motions are disfavored due to the risk that they can be used for tactical advantage," Judge Snyder "nevertheless [found] that [the attorney] should be precluded from serving as plaintiff's trial counsel," specifically overriding the plaintiff's consent and holding that the attorney's involvement in the patent prosecution process made him necessary:

> [T]he Court finds that [the attorney] is a necessary witness in this case. 'A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere.' Here, [the attorney] was responsible for drafting the application for the '727 patent as well as for the '757 patent. Given his familiarity with the '727 patent and its prosecution history, his testimony is relevant and material at least to the issues of inventorship and enforceability. Further, [the attorney's] testimony is not cumulative or obtainable by other means.

*Id.* at *5-6 (quoting *Carta v. Lumbermens Mut. Cas. Ins. Co.*, 419 F. Supp. 2d 23, 29 (D. Mass. 2006)). Judge Snyder also noted that the plaintiff would not suffer undue hardship because, in part, "plaintiff has capable counsel in [their other attorney]," who "has signed every paper that has been filed with the Court, has taken or defended every fact witness and expert witness deposition in this case, and has successfully argued several motions." *Id.*

The same result in *Caluori* is equally warranted here (indeed, even more so as no depositions of any witnesses have yet been taken). Like the attorney in that case, Clarke was responsible for and involved in obtaining Plaintiffs' registrations for "Fish Market" and has "familiarity with" the Purported Fish Market Registrations and their application "history," and Clarke's "testimony is not cumulative or obtainable by other means." And like the plaintiff in *Caluori*, Plaintiffs in this case "have capable counsel" (Doniger / Burroughs) who has done everything in this case for the last three-plus years.

9

1  In sum, Clarke's "continued roles as counsel, client representative and witness" in this case is virtually certain to "create the appearance of impropriety and threaten the integrity of these proceedings," *Bay Club Fairbanks Ranch*, 437 F. Supp. 3d at 806, and this Court should not put Clarke "in the position of arguing his own credibility," which is "precisely what [the ethical rule] seeks to avoid." *Mannhalt v. Reed*, 847 F.2d 576, 582 (9th Cir. 1988).

## IV.  CONCLUSION

For all the reasons set forth herein, the Pryor Cashman-Represented Defendant respectfully request that Clarke be disqualified from acting as Plaintiffs' attorney in this case and that the Court grant such other and further relief as may be just and proper.

Dated: November 21, 2024

**PRYOR CASHMAN LLP**

By: */s/ Benjamin S. Akley*
Donald S. Zakarin (*dzakarin@pryorcashman.com*)
Frank P. Scibilia (*fscibilia@pryorcashman.com*)
James G. Sammataro (*jsammataro@pryorcashman.com*)
Benjamin S. Akley (*bakley@pryorcashman.com*)
Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)
Sophia Sofferman (*ssofferman@pryorcashman.com*)