**PRYOR CASHMAN LLP**
Benjamin S. Akley (State Bar No. 278506)
*bakley@pryorcashman.com*
Shamar Toms-Anthony (State Bar No. 323246)
*stoms-anthony@pryorcashman.com*
1901 Avenue of the Stars, Suite 900, Los Angeles, California 90067
Telephone:  (310) 683-6900

Donald S. Zakarin (admitted *pro hac vice*)
*dzakarin@pryorcashman.com*
Frank P. Scibilia (admitted *pro hac vice*)
*fscibilia@pryorcashman.com*
7 Times Square, 40th Floor, New York, New York 10036
Telephone:  (212) 421-4100

James G. Sammataro (State Bar No. 204882)
*jsammataro@pryorcashman.com*
Sophia Sofferman (admitted *pro hac vice*)
*ssofferman@pryorcashman.com*
255 Alhambra Circle, 8th Floor, Miami, Florida 33134
Telephone:  (786) 582-3003

*Attorneys for the Pryor Cashman-Represented Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *ET AL.*,<br><br>        Plaintiffs,<br><br>      v.<br><br>RODNEY SEBASTIAN CLARK, an individual, *ET AL.*,<br><br>    Defendants. | Case No.:  2:21-cv-02840-AB-AJR<br><br>**REPLY IN FURTHER SUPPORT OF MOTION TO DISQUALIFY ATTORNEY GARTH A. CLARKE**<br><br>Date:  January 10, 2025<br>Time:  10:00 a.m.<br>Place:  Courtroom: 7B |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiffs' opposition to the motion to disqualify Clarke carefully omits a critical undisputed fact: while Clarke professes to have represented Plaintiffs for five years, ***Clarke only appeared as "counsel of record" in this case after the Pryor Cashman-Represented Defendants served answers and discovery requests implicating and inquiring into Clarke's abrupt volte face in registering Plaintiffs' copyrights***. The true purpose of Plaintiffs' belated addition of Clarke as "counsel of record" is to preclude discovery into the conflicting factual statements that Clarke made to the U.S.C.O. Plaintiffs' motive was made obvious when Plaintiffs sought to quash the subpoena served on Clarke concerning the facts underlying his registration communications "as violating *Shelton v. American Motors Corp*., 805 F.2d 1323 (8th Cir. 1986)," an Eighth Circuit case Plaintiffs claim is "the leading case on the issue of depositions of counsel of record." (Dkts. 635-3 at 6 of 8, 635-4 at 2 of 5).

In other words, this motion to disqualify Clarke was necessitated by Plaintiffs' own improper and tactical behavior.

As detailed in the moving papers, Clarke's August 29, 2024 appearance in this action for Plaintiffs was in addition to Plaintiffs' representation by their actual trial counsel, Doniger / Burroughs; was *pro hac vice*, since Clarke is a non-resident attorney (with no apparent litigation experience); occurred over three years after Doniger / Burroughs commenced this action on Plaintiffs' behalf; and, most significantly, came only two weeks after the Pryor Cashman-Represented Defendants served discovery on Plaintiffs regarding Clarke's inconsistent statements to the U.S.C.O. during the "Fish Market" registration process (in response to which Plaintiffs have effectively refused to provide any meaningful information). It is transparent that Plaintiffs' naming Clarke as counsel is a tactical gambit designed to immunize him from any discovery with respect to the "facts" underlying his communications with the U.S.C.O. The Pryor Cashman-

Represented Defendants had no choice but to oppose Plaintiff's immunization scheme by challenging Clarke's right to remain as counsel in this case. Only through Clarke's testimony (and documentary evidence) can Defendants get the critical registration-related information to which they are entitled and which is indisputably relevant to this phase of the case (given that it bears directly on "whether Plaintiffs' claimed works and/or portions thereof…are otherwise protectable under copyright law" (Dkt. 143)).

Ignoring that their immunization scheme undergirds this entire motion, Plaintiffs have the temerity to request that this Court sanction the Pryor Cashman-Represented Defendants for seeking disqualification so that they can pursue proper discovery. But none of Plaintiffs' cases on the sanctions point (or otherwise) involve a transparent attempt to insulate a percipient witness from discovery by belatedly purporting to make the witness a superfluous counsel of record in the case over three years after the case was commenced. This motion was necessitated by Plaintiffs' gambit, not by any improper action on the part of the Pryor Cashman-Represented Defendants.

While Clarke now purports to justify his belated, fortuitously-timed, and otherwise inexplicable appearance through a declaration submitted in opposition to this motion (Dkt. 635-1 ¶8), since becoming "counsel of record" Clarke's sole function has been to silently observe a handful of hearings (as could any member of the public).[1]  Indeed, **_Clarke did not even personally oppose the disqualification motion directed to him_**, instead relying

---

[1] Clarke declares: "I filed my pro hac vice application in this case so I can appear at and participate in judicial conferences and hearings, review any discovery responses produced by Defendants marked "attorneys' eyes only" and participate with the rest of Plaintiffs' attorney team in evaluating the same, and attend and potentially take or defend party, non-party, or expert depositions."  But Clarke can review discovery materials—even AEO materials—in his capacity as an attorney for Plaintiffs regardless of whether he has appeared in the action, and Clarke has not propounded any deposition notices or any other discovery requests, responses, or objections (all of which, like everything else filed or served by Plaintiffs in this case, have come from Doniger / Burroughs).

on Plaintiffs' real counsel Doniger / Burroughs to do so on his behalf.  To be clear,
Clarke's appearance as counsel is linked solely to trying to foreclose discovery.

Having purposefully omitted any mention of any of the foregoing facts, Plaintiffs
advance a series of factually inapposite arguments why disqualification supposedly is not
appropriate in this instance.  For example, Plaintiffs try to invoke the attorney/client
privilege, ignoring that it protects confidential communications, not facts, and it is the
"facts" that are addressed to Clarke's about-face in responding to the U.S.C.O.'s rejection
of his first attempted registration of "Fish Market" that are at issue.  It is also false that the
Pryor Cashman-Represented Defendants are seeking any "privileged information,
protected attorney impressions, [or] case strategy" about Plaintiffs' litigation of this
action.  Rather, the Pryor Cashman-Represented Defendants seek only to inquire into the
***factual bases*** for the diametrically contrary assertions made by Clarke to the U.S.C.O. in
order to obtain U.S. registration of "Fish Market."

Clarke originally insisted that "Fish Market" was first published in Jamaica.  After
the U.S.C.O. advised that a work first published in Jamaica was ineligible for copyright
protection, Clarke advised that "Fish Market" was first published in the U.S.  None of this
information can be privileged because it concerns facts reported to a U.S. governmental
entity (and certified to that entity to be true and correct).  Clarke obtained and provided
certain "facts" to U.S.C.O., and Defendants are entitled to know the bases for those
"facts," as well as what other facts and evidence he is aware of that either support or refute
his initial assertions or his diametrically opposite subsequent assertions to the U.S.C.O.
(regardless of whether he provided those facts to the U.S.C.O.).

Plaintiffs have insisted that Clarke cannot be subjected to discovery because he is
counsel in this case.  To the contrary, he should be disqualified precisely so that necessary

4

and appropriate discovery of a significant issue of copyright protectability can be addressed and presented to this Court.[2]

## II.    ARGUMENT

### A.    This Court Has Discretion To, And Should, Disqualify Clarke

The Pryor Cashman-Represented Defendants demonstrated in their moving papers that Clarke's disqualification under the advocate-witness rule is appropriate because:  (i) it would not prejudice or otherwise harm Plaintiffs (who for over three years have been and remain represented by Doniger / Burroughs, including with respect to this present motion); (ii) this motion is not "purely tactical" but, to the contrary, was necessitated by Plaintiffs' improper effort to shield Clarke from critical discovery; and (iii) Clarke's testimony is genuinely necessary.

In opposition, Plaintiffs present a number of arguments against disqualification, all of which ignore that it was Plaintiffs' own conduct (i.e. manufacturing Clarke's appearance to avoid discovery into Clarke's copyright registration of "Fish Market") that led to the present dispute and the need for disqualification.  Nevertheless, each of Plaintiffs' arguments is addressed and refuted below:

- Plaintiffs contend that the advocate-witness rule only disqualifies an attorney from acting as an advocate at trial (Dkt. 635 at 3-4), but multiple of Plaintiffs' own cases (including the case that Plaintiffs cite in support of this point) acknowledge that pre-trial discovery should be permitted from witness or potential-witness attorneys specifically for the purpose of determining whether disqualification at trial is necessary.  *See DHR Int'l Inc. v. Charlson*, No. C 14-1899 PJH, 2014 WL 4808752, at *10-11 (N.D. Cal. Sept. 26, 2014)

---

[2] Alternatively, Clarke should be required to sit for a deposition and to otherwise respond to relevant discovery (and to testify, if called as a witness) concerning the copyright registrations he filed for the works that Plaintiffs claim to own, notwithstanding his alleged new role as "trial counsel."

(acknowledging that the movant seeking disqualification should have opportunity to discover the nature of witness attorney's testimony and denying disqualification without prejudice); *Luck v. OTX Acquisition Corp.*, No. CV101671SVWPJWX, 2010 WL 11595723, at *6 (C.D. Cal. July 20, 2010) (denying disqualification where, "to the Court's knowledge, Plaintiff has not taken a deposition of Coulson to determine whether she has any non-privileged information relevant to the facts of Plaintiff's case."). Because Plaintiffs are misusing Clarke's status as counsel to preclude ***any*** discovery from him, this motion is not premature but, rather, ripe and urgent.

- Plaintiffs further contend that the advocate-witness rule only applies where the party represented by the conflicted attorney intends to call the attorney as a witness (Dkt. 635 at 4), but courts regularly disqualify counsel where, as here, the conflicted attorney is an important witness for the party seeking disqualification. For example, in Judge Snyder's 2012 decision in *Caluori v. One World Technologies, Inc.*, it was the party seeking disqualification who intended to call the attorney as a witness (aptly, regarding the attorney's drafting and submitting two patent applications), yet the court nevertheless granted the motion and disqualified the attorney. *See Caluori v. One World Techs., Inc.*, No. CV 07-2035 CAS VBKX, 2012 WL 2004173, at *5-6 (C.D. Cal. June 4, 2012); *see also COR Sec. Holdings, Inc. v. Banc of California, N.A.*, No. 817CV01403DOCKESX, 2018 WL 11347736, at *2 (C.D. Cal. Nov. 13, 2018) (discussing granting of a motion to disqualify the defendants'

counsel based on the witness advocate rule where the plaintiffs' counsel
intended to call the defendant's counsel as a necessary witness).[3]

- Plaintiffs contend that their consent to Clarke's representation can
singlehandedly override the advocate-witness rule (Dkt. 635 at 4), but both
the rule itself and case law are clear that disqualification remains appropriate
even after supposed consent where there is "a convincing demonstration of
detriment to the opponent or injury to the integrity of the judicial process."
*Smith, Smith & Kring v. Superior Ct.*, 60 Cal. App. 4th 573, 579 (1997)
(quoting *Lyle*, 122 Cal. App. 3d at 482); *see also* Comment 3 to California
Rule of Professional Conduct 3.7 (acknowledging that "courts retain
discretion to take action, up to and including disqualification of a lawyer who
seeks to both testify and serve as an advocate, to protect the trier of fact from
being misled or the opposing party from being prejudiced"); *Caluori*, 2012
WL 2004173, at *5 ("the Court rejects plaintiff's contention he is
unequivocally entitled to consent to Mr. Dingman serving as his trial attorney
and testifying as a witness").[4]

- Plaintiffs contend that the Pryor Cashman-Represented Defendants have not
demonstrated any "detriment to [themselves] or injury to the integrity of the
judicial process."    On the contrary, the Pryor Cashman-Represented
Defendants have explained Clarke's involvement in the "Fish Market"
registration, the reason his testimony and information concerning the

---

[3] Plaintiffs only case on this point – *Hernandez v. Frazier*, No. SA-11-CA-9-FB, 2011 WL
13136191 (W.D. Tex. Aug. 23, 2011) (which Plaintiffs also cite three other times
elsewhere in their opposition) – is from the Western District of Texas and applies a
different state's and different circuit's law and ethical rules.

[4] Nevertheless, and to be clear, the Pryor Cashman-Represented Defendants would have
no desire to prevent Clarke from representing Plaintiffs so long as Clarke's representation
does not preclude Defendants from taking discovery from Clark and potentially calling
him as a witness at trial (and does not otherwise prejudice Defendants).

7

registration is critical (i.e. the conflicting statements concerning the release of "Fish Market," directly implicate the validity and scope of Plaintiffs' copyright registration and attendant protections), and the fact that Defendants are unable to secure this information from anyone else.  (Dkt. 623 at 8).  Plaintiffs argue that Defendants already have copies of Clarke's communications with the U.S.C.O. and any information that Clarke might have beyond those communications "(1) Mr. Clarke has no personal or unique knowledge of, (2) Defendants can obtain from Plaintiffs, or (3) are plainly privileged." (Dkt. 635 at 4-5).  But the only people with knowledge concerning Clarke's registration of "Fish Market" with the U.S.C.O. are Plaintiffs and Clarke, and Plaintiffs have refused to produce any information or documents on that topic other than the publicly-available correspondence already obtained from the U.S.CO.  Defendants are entitled to discover all of the ***facts*** in Clark's possession or of which he is aware concerning the (diametrically opposite) assertions he made to the U.S.C.O. in order to obtain the registrations at issue, including those facts he may have withheld from the U.S.C.O.[5]

- As for Plaintiffs' invocation of the attorney-client privilege, while privileges may provide a basis to object to certain discovery requests or lines of inquiry,

---

[5] Defendants have also asserted "fraud on the Copyright Office" as an affirmative defense in this case, which goes to the validity of Plaintiffs' copyright.  While that affirmative defense is not currently at issue, it bears noting that Plaintiffs curiously assert that Clark's statements to the U.S.C.O. are somehow irrelevant to that defense because that defense requires Defendants to "show that the registration contains a knowing and material inaccuracy that could cause the U.S.C.O. to refuse registration.  *See* 17 U.S.C. § 411(b)(1)(A).  Here, the U.S.C.O. ***did*** refuse the registration based on the "facts" ***originally*** asserted by Clark, and then granted the registration only after Clark provided a different set of "facts."  One or the other set of "facts" provided by Clark were untrue.  And if it was the latter set of facts that were untrue, then the U.S.C.O. plainly would have refused the registration as it had done previously.

they do not provide a basis for a wholesale preclusion of critical discovery. *See United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) ("[The] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication."). To be clear: Plaintiffs do not, in this instance, propose to respond to the Clarke subpoena and make him available for deposition subject to whatever privileges they might possess and invoke. Rather, Plaintiffs contend that the entirety of the Clarke subpoena is objectionable and should be quashed merely because Plaintiffs have named Clarke as trial counsel. That is an abuse of both Plaintiffs' privileges and Plaintiffs' discretion in choosing their counsel. Moreover, and in any event, certain basic information concerning the grounds for the alleged privilege must be disclosed (e.g. a privilege log for documents or information withheld). Further, privileges also can be waived or overridden, including in cases of fraud (such as implicated by Clarke's conflicting statements to the U.S.C.O.) or where a client asserts advice of counsel as a defense (for instance, if Plaintiffs wanted to blame the conflicting statements to the U.S.C.O. on Clarke rather than face any liability themselves). Plaintiffs cannot simply say the word "privilege" and summarily establish that the Clarke subpoena has no utility to Defendants (such that there would be no harm to permitting Plaintiffs' gambit of naming Clarke to avoid discovery to succeed).

- Plaintiffs try a "you too" argument – claiming that certain of Defendants' litigation attorneys have also filed copyright registration certificates. The argument is nonsense and a red herring. The issue here is not that Clarke filed registrations. It is that he made diametrically opposed representations to the U.S.C.O. in connection with those registrations and now his

9

appearance as trial counsel in this action is being used to prevent critical discovery into those representations.

- Plaintiffs contend that—notwithstanding their active and ongoing representation by Doniger / Burroughs—they have a strong interest in also being represented by Clarke which overrides the grounds for disqualification (Dkt. 635 at 5-6), but this argument likewise is nonsense and a red herring. Clarke can remain part of Plaintiffs' "team of attorneys," "advise" Plaintiffs, review discovery information (including AEO information), and even silently attend hearings, as he apparently has done to date, all without being counsel of record for Plaintiffs in this litigation (which, again, is Plaintiffs' primary basis for seeking to quash the Clarke subpoena). In every case cited by Plaintiffs the attorney against whom disqualification was sought was the party's primary attorney, and one of the principal concerns about disqualification is the time, expense, and prejudice suffered by the represented party if disqualification is granted. Here, disqualifying Clarke would cost Plaintiffs nothing (they would still be represented by Doniger / Burroughs, their actual trial counsel, and still could benefit from Clarke's advice and input), and it would prevent Plaintiffs from using Clarke's belated appointment as counsel in the case to immunize him from discovery. Plaintiffs' "interest" in Clarke's representation is, thus, not overriding in this instance. *See Caluori*, 2012 WL 2004173, at *6 (disqualifying attorney where the represented party already had additional "capable counsel" who "signed every paper that has been filed with the Court" and acknowledging that the disqualified attorney "is not excluded from all further involvement in this lawsuit" and "may continue to serve as an adviser").

- Plaintiffs contend that Clarke is not a necessary witness (Dkt. 635 at 7-13), but this point is, again, primarily based on Plaintiffs' flawed positions that (i)

10

the Pryor Cashman-Represented Defendants should have pursued information about the "Fish Market" registration from Plaintiffs (which the Pryor Cashman-Represented Defendants did, and Plaintiffs have produced virtually nothing), and (ii) Clarke is fully and prophylactically protected from any discovery by the attorney-client privilege (which is not how the privilege works). Plaintiffs also make the point that this is not the appropriate phase for discovery into the "Fish Market" registration, ignoring that the Case Administration Order specifically states that this phase concerns, among other things, "whether Plaintiffs' Claimed Works…are otherwise protectable under copyright law." (Dkt. 143).

- Finally, Plaintiffs contend that the disqualification motion is "purely tactical" because the Pryor Cashman-Represented Defendants are attempting to disqualify Clarke "simply by calling [him] as [a] witness" (Dkt. 635 at 13-14)[6], but, again, Plaintiffs have it exactly backward. To be clear: Clarke did not become counsel until ***after*** the Pryor Cashman-Represented Defendants filed their Answers and served discovery requests that implicated Clarke's actions in registering the copyrights, and the Pryor Cashman-Represented Defendants did not move to disqualify Clarke until ***after*** Plaintiffs refused to let him testify based on his appearance as counsel. It is Plaintiffs, not the Pryor Cashman-Represented Defendants, that have used Clarke's representation as a basis to block critical discovery from Clarke.[7]

---

[6] If this was the Pryor Cashman-Represented Defendants' true aim, they would have presumably sought to disqualify Doniger / Burroughs.

[7] Plaintiffs' implication that the Pryor Cashman-Represented Defendants should have sought to disqualify Clarke as soon as Clarke appeared in this action illustrates Plaintiffs' fundamental misunderstanding of the situation: The Pryor Cashman-Represented Defendants had no reason to seek Clarke's disqualification before Plaintiff implemented their improper immunization gambit.

In sum, none of Plaintiffs' arguments in opposition to disqualification have any validity. Clarke is plainly a percipient and exclusive witness to critical facts concerning the "Fish Market" registration, Plaintiffs lose nothing by Clarke's disqualification, and this motion is made in good faith under circumstances (i.e. Plaintiffs' decision to have Clarke appear and then to use his appearance to deny rightful discovery, which left the Pryor Cashman-Represented Defendants no other choice). If there are other objections to Clarke's disclosure or testimony, or if Clarke ultimately has no relevant discoverable information, the Pryor Cashman-Represented Defendants are entitled to assess and deal with those things through the normal discovery procedures. Plaintiffs should not be permitted to wholly and preemptively foreclose discovery through the artifice of belatedly naming Clarke as counsel in this case.

**B. Sanctions Are Inappropriate**

Even if the Court does not ultimately grant this motion, it is clear that sanctions are not warranted or appropriate. Plaintiffs' request for sanctions (and the entire theory of Plaintiffs' opposition) utterly distorts why this motion was made, and even if Plaintiffs' characterization were remotely valid, Plaintiffs can cite only a single case wherein sanctions were granted for a failed advocate-witness disqualification motion: *Optyl*

*Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045 (9th Cir. 1985).[8] But the circumstances of the sanctions granted in *Optyl* are entirely inapt, not least because the "utterly without merit" disqualification motion in that case was part of an improper effort "to find some way to exclude [] evidence." *Id*. at 1051. Here, the disqualification motion is not "utterly without merit" (indeed, as shown above, it is both meritorious and justified) and, most importantly, it is <u>Plaintiffs</u> that are improperly seeking to exclude and foreclose evidence, <u>not</u> the Pryor Cashman-Represented Defendants. The Pryor Cashman-Represented Defendants' motion to disqualify Clarke in response to Plaintiffs' effort is well-founded and made in good faith.

## III.    CONCLUSION

For the reasons set forth above and in the Pryor Cashman-Represented Defendants' moving papers, the disqualification motion should be granted, Clarke should be disqualified as "counsel of record" in this action (or, in the alternative, should be required to sit for a deposition and to otherwise respond to relevant discovery concerning the "Fish Market" registration), Plaintiffs' request for sanctions should be denied, and the Court should grant such other and further relief as may be just and proper.

---

[8] Plaintiffs also offhandedly cite *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406 (9th Cir. 1990) and *Luck v. OTX Acquisition Corp.*, 2010 WL 11595723 for the notion that sanctions are available and appropriate, but neither case is apposite. In *Adriana,* the disqualification motion was based on a purported conflict of interest (not on the advocate-witness rule) and was one of a series of baseless and frivolous motions for which the court ordered sanctions. *See* 913 F. 2d 1406, 1416 (9th Cir. 1990). In *Luck* (wherein sanctions were not issued but an order to show cause re sanctions was) the disqualification motion was deemed "reckless" and "frivolous" because, among other reasons, the attorney's involvement in the disputed compensation program was refuted by the available record. 2010 WL 11595723, at *4-5. By contrast, here there is no dispute that Clarke was involved in the registration of "Fish Market" and made contradictory statements to the U.S.C.O.— the only dispute is whether (a) Defendants are entitled to obtain critical discovery concerning Clarke's conflicting statements or (b) Plaintiffs should succeed in precluding such discovery merely by pretextually naming Clarke as "counsel of record."

Dated:  December 27, 2024

**PRYOR CASHMAN LLP**

By:    */s/ Benjamin S. Akley*

Donald S. Zakarin (*dzakarin@pryorcashman.com*)
Frank P. Scibilia (*fscibilia@pryorcashman.com*)
James G. Sammataro (*jsammataro@pryorcashman.com*)
Benjamin S. Akley (*bakley@pryorcashman.com*)
Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)

1

### **L.R. 11-6.2. Certificate of Compliance**

2

The undersigned certifies that this memorandum of points and authorities

3

complies with the type-volume limitation of L.R. 11-6.1. This certification is made

4

relying on the word count of the word-processing system used to prepare the

5

document.

6

The undersigned, counsel of record for the Pryor Cashman-Represented

7

Defendants, certifies that this brief contains 2,970 words, which complies with

8

the word limit of L.R. 11-6.

9

10

Dated:  December 27, 2024

11

12

**PRYOR CASHMAN LLP**
By:   */s/ Benjamin S. Akley*

13

Donald S. Zakarin (*dzakarin@pryorcashman.com*)

14

Frank P. Scibilia (*fscibilia@pryorcashman.com*)
James G. Sammataro (*jsammataro@pryorcashman.com*)

15

Benjamin S. Akley (*bakley@pryorcashman.com*)

16

Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)

17

18

19

20

21

22

23

24

25

26

27

28