**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, ET AL.,<br>Plaintiffs,<br>v.<br>RODNEY SEBASTIAN CLARK, ET AL.,<br>Defendants. | No. 2:21-cv-02840-AB-AJR<br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO QUASH SUBPOENA WITHOUT PREJUDICE (DKT. 645)** |

## I.

## INTRODUCTION

This is a copyright dispute brought by four plaintiffs (the "Plaintiffs") alleging direct infringement against 162 defendants (the "Defendants").[1] (Dkt. 305 at 7-32, 36.) Plaintiffs possess copyright ownership and U.S. registrations for the musical works known as the Fish Market composition and sound recording, the Dem Bow composition, and the Pounder sound recordings (and the composition

[1] Plaintiffs' secondary copyright infringement claims were dismissed with leave to amend on May 28, 2024. (Dkt. 421 at 37.) Plaintiffs declined to file a third consolidated amended complaint.

captured thereupon due to the composition being copied from Fish Market). (Id. at 36.) Plaintiffs allege that Defendants are responsible for the creation and exploitation of numerous infringing works which are identified in Exhibit A to the Second Consolidated Amended Complaint (the "Allegedly Infringing Works"). (Id.)

The parties have stipulated to a case administration order that directs this action to proceed in phases. (Dkts. 142, 143.) The case is currently in the "protectability/original authorship" phase, where the parties have agreed that they will engage in "limited fact and expert discovery concerning the common questions of whether Plaintiffs' works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law." (Dkt. 142 at 4; Dkt. 143 at 2-3.) However, the parties have repeatedly disagreed about the meaning of their prior stipulation. Therefore, on October 29, 2024, the Court issued an Order Granting in Part and Denying in Part Motion for Protective Order (the "October 29, 2024 Order"), in which the Court interpreted the parties' stipulation and applied the stipulation to a large set of discovery then in dispute. (Dkt. 619.)

The parties have now raised a new discovery dispute that requires interpretation of the parties' stipulation. Specifically, the parties dispute the appropriateness of a subpoena for documents and testimony served by Defendants on Plaintiffs' counsel of record in this action, Garth A. Clarke. On December 4, 2024, the Court held an informal discovery dispute to discuss this dispute. (Dkt. 632.) At the time of the hearing, Defendant's Motion to Disqualify Mr. Clarke was still pending before the District Judge, with a hearing set for January 10, 2025. (Dkt. 623.) Because the District Judge's ruling on the Motion to Disqualify could have impacted this dispute, the Court directed the parties to wait for a ruling and agreed to revisit this dispute once the District Judge had resolved the Motion to Disqualify. (Dkt. 632.) On January 17, 2025, the District Judge denied the Motion to Disqualify. (Dkt. 641.)

Accordingly, on January 24, 2025, the Court held a further informal discovery conference and set a briefing schedule on Plaintiff's anticipated motion to quash the subpoena directed to Mr. Clarke. (Dkt. 642.) On February 4, 2025, Plaintiffs filed a Motion to Quash Defendants' Subpoena (the "Motion to Quash"). (Dkt. 645.) On February 11, 2025, Defendants filed an Opposition to Plaintiffs' Motion to Quash Subpoena (the "Opposition"). On February 14, 2025, Plaintiffs filed a Reply in Support of the Motion to Quash (the "Reply"). (Dkt. 654.) On February 18, 2025, the Court held a hearing on the Motion to Quash. Having considered the briefing and the arguments of counsel, the Court hereby GRANTS the Motion to Quash WITHOUT PREJUDICE to Defendants seeking to depose Mr. Clarke in a future phase of this litigation after exploring less-intrusive discovery tools. (Dkt. 642.)

## II.
## PROCEDURAL HISTORY

On January 9, 2023, the parties filed a Stipulation Re: Case Administration (the "Stipulation"). (Dkt. 142.) In the Stipulation, the parties agreed that "given the breadth of the case as well as the fact that the matter involves a number of issues (some of which are common threshold issues applicable to all Defendants and some of which are individual to each Defendant), a phased case administration plan will streamline the matter, and make the case more efficient for both the Court and the parties." (Id. at 3.) Specifically, the parties agreed that the operative pleading (then the First Consolidated Amended Complaint) presented "individual issues with respect to the claim that over 1,700 separate works infringe on Plaintiffs' rights in their claimed works which, on an individual basis, depending on the determination of the threshold common questions, may require, *inter alia*, evidence analyzing each work separately and comparing to Plaintiffs' claimed works for purposes of determining the issues of both access by the [D]efendants associated with each individual work and whether each individual work is substantially similar to

Plaintiffs' works." (Id. at 2-3.)

Thus, the parties agreed that this action will proceed in a phased manner as follows: (1) the "service" phase, where Plaintiffs will effectuate service of process; (2) the "amendment" phase, where Plaintiffs will file a Second Consolidated Amended Complaint; (3) the "response" phase, where Defendants will respond to the Second Consolidated Amended Complaint by answer or motion; (4) the "protectability/original authorship" phase (contingent on Plaintiffs' then-operative complaint surviving the "response" phase), where the parties will engage in "(a) limited fact and expert discovery concerning the common questions of whether Plaintiffs' works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law, and (b) limited summary judgment motions solely on these issues"; and (5) further phases as agreed to by the parties should any claim remain at issue after the "response and "protectability/original authorship" phases. (Id. at 3-4.)

With regard to the "protectability/original authorship" phase, the parties agreed that they "shall not engage in additional discovery or make dispositive motions on any other issues during the pendency of this limited discovery and summary judgment phase." (Id. at 4.) With regard to further phases, the parties agreed that if any of Plaintiffs' claims remain at issue after "the response" and "protectability/original authorship" phases, the parties would request that the Court hold a scheduling conference to discuss further phasing "(*e.g.*, standing/chain-of-title, access, substantial similarity, affirmative defenses, and damages phases), *inter alia*, and thereafter issue a Scheduling Order setting, *inter alia*, discovery and motion deadlines on a phase-by-phase basis." (Id. at 5.)

On January 11, 2023, the District Judge issued an Order Granting Stipulation Re: Case Administration (the "Case Administration Order"), which granted the Stipulation as agreed to by the parties. (Dkt. 143.) With regard to the "protectability/original authorship" phase, the Case Administration Order states that

the "parties shall submit a joint report to the Court with proposed cutoff and briefing dates for (a) limited fact and expert discovery concerning whether Plaintiffs' claimed works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law, and (b) limited summary judgment motions solely on these issues." (Id. at 2-3.) The Case Administration Order further states that "[n]o additional discovery or other case activities shall proceed pending the full adjudication of any and all such limited summary judgment motions." (Id. at 3.)

On June 18, 2024, the parties filed a Joint Report and Schedule Re Originality and Protectability Phase Pursuant to Case Administration Order (the "Joint Report"). (Dkt. 426.) In the Joint Report, the parties agreed that as set forth in the Case Administration Order, commencing on August 5, 2024, the parties should "engage in limited fact and expert discovery, including written discovery and depositions, concerning 'whether Plaintiffs' claimed works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law.'" (Id. at 3.) However, the parties articulated different views of the scope of discovery agreed to by the partes in the Case Administration Order. (Id. at 4-8.) Specifically, Plaintiffs stated that they "do not intend to exceed the scope of [this] phase, but they are entitled to question Defendants on why those works are, at least as to those Defendants, important, recognizable, original, and creatively appealing and compelling as compared to other riddims." (Id. at 5.) According to Plaintiffs, "[t]hese lines of inquiry can be explored in this phase without delving into issues to be litigated in later phases, such as substantial similarity, access, and damages." (Id. at 6.) By contrast, Defendants stated that "fact discovery is limited to the scope of the issues in this phase as set forth in the Case Administration Order: 'whether Plaintiffs' claimed works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law.'" (Id.)

Setting the scope issues aside, the parties agreed in the Joint Report to an

initial expert disclosure deadline of December 20, 2024, a rebuttal expert disclosure deadline of February 28, 2025, a fact discovery cutoff of March 28, 2025, a deadline for Defendants to file motions for summary judgment of April 27, 2025, a deadline for Plaintiffs to file oppositions and cross-motions for summary judgment of June 6, 2025, a deadline for Defendants to file replies and oppositions of June 28, 2025, and a deadline for Plaintiffs to file replies to any cross-motion of July 18, 2025. (Id. at 9.) On June 20, 2024, the District Judge issued an Order on Joint Report and Stipulation setting the deadlines agreed to by the parties and directing that, commencing on August 5, 2024, the parties "will engage in discovery as set forth in the Case Administration Order." (Dkt. 427 at 1.)

On October 29, 2024, the Court interpreted the Case Administration Order as limiting discovery in the "protectability/original authorship" phase to a focus on the "Plaintiffs' claimed works," not the Defendants' actions or Defendants' Allegedly Infringing Works. (Dkt. 619 at 10 (quoting Dkt. 143 at 3).) The Court further determined that the discovery must be focused on whether the Plaintiffs' claimed works "possess sufficient originality of authorship and are otherwise protectable under copyright law." (Id.) Based on this interpretation of the Case Administration Order, the Court granted a protective order as to discovery focused on the creation of Defendants' Allegedly Infringing Works and whether Defendants copied Plaintiffs' claimed works when Defendants created one or more of their works. (Id. at 14.)

## III.

## THE DISCOVERY REQUESTS AT ISSUE

On November 11, 2024, Defendants served on Mr. Clarke a subpoena seeking documents, communications, and testimony regarding the registrations covering

Plaintiffs' claimed works.[2] (Dkt. 645-1 at 3, ¶ 12; Dkt. 651 at 6-7.) Specifically, the subpoena seeks "all non-privileged documents and communications regarding" those registrations. (Dkt. 651 at 7.)

## IV.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of non-parties. "The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020, 337 F.R.D. 639, 645 (N.D. Cal. 2020). Rule 26 permits discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1).

The Court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. Proc. 26(b)(2)(C). Rule 45 further provides that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a

[2] The actual subpoena and objections do not appear to be attached to the parties' motions.

person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3)(A). "The moving party bears the burden of persuasion on a motion to quash, but the party issuing the subpoena must demonstrate that the discovery is relevant." In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020, 337 F.R.D. at 645.

Rule 45 states that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. Proc. 45(d)(1). Rule 45 further states that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Id. The Ninth Circuit has explained that courts have discretion to impose sanctions under Rule 45(d)(1). See Legal Voice v. Stormans Inc., 738 F.3d 1178, 1185 (9th Cir. 2013). "Merely losing a motion to compel does not expose a party to Rule 45 sanctions." Id. "Similarly, while failure narrowly to tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." Id. "A court may, however, impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." Id.

## V.

## DISCUSSION

Plaintiffs' Motion to Quash raises two big-picture issues: (1) does the discovery sought of Mr. Clarke fall within the "protectability/original authorship" phase as defined by the Case Administration Order; and (2) if so, should the

subpoena nevertheless be quashed or limited because Mr. Clarke is counsel of record and subjecting him to discovery raises concerns for the protection of attorney-client privilege and attorney work product. For the reasons set forth below, the Court concludes that Plaintiffs' Motion to Quash must be GRANTED because Defendants' subpoena to Mr. Clarke does not seek information relevant to the "protectability/original authorship" phase. Moreover, even if Defendants' subpoena were relevant to the current phase of this litigation, the Court would still grant Plaintiffs' Motion to Quash because Defendants have not sufficiently explored less-intrusive discovery tools prior to seeking to depose Mr. Clarke. Accordingly, Plaintiff's Motion to Quash is GRANTED WITHOUT PREJUDICE to Defendants seeking to depose Mr. Clarke in a future phase of this litigation after exploring less-intrusive discovery tools.

**A. Defendants' Subpoena To Mr. Clarke Does Not Seek Information Relevant To The "Protectability/Original Authorship" Phase.**

As the parties understand, the undersigned U.S. Magistrate Judge does not have the authority to alter or modify the Case Administration Order issued by the District Judge (and stipulated to by the parties). Instead, this Court's role is to apply the Case Administration Order to the instant dispute related to Defendants' subpoena to Mr. Clarke. To the extent the Case Administration Order is unclear, the Court interprets the Case Administration Order based on its written terms to determine the objective intent of the parties when they stipulated to the Order. See, e.g., Operating Engineers' Pension Tr. Fund v. Clark's Welding & Mach., 688 F. Supp. 2d 902, 910 (N.D. Cal. 2010) ("The court's paramount consideration in construing a stipulation is the parties' objective intent when they entered into it. That intent is to be inferred, if possible, solely from the written provisions of the contract." (citation omitted)).

With regard to the "protectability/original authorship" phase, the Case Administration Order states that the "parties shall" engage in "(a) limited fact and

expert discovery concerning whether Plaintiffs' claimed works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law, and (b) limited summary judgment motions solely on these issues." (Dkt. 143 at 2-3.) The Case Administration Order further states that "[n]o additional discovery or other case activities shall proceed pending the full adjudication of any and all such limited summary judgment motions." (Id. at 3.) The Stipulation upon which the Case Administration Order is based states that "[s]hould any claims remain at issue after the 'response' and 'protectability/original authorship' phases[,] . . . the parties agree . . . to discuss further phasing (e.g., standing/chain-of-title, access, substantial similarity, affirmative defenses, and damages phases)." (Dkt. 142 at 4-5.) Thus, the parties expressly agreed that issues related to standing/chain-of-title, access, substantial similarity, affirmative defenses, and damages would not be included in the "protectability/original authorship" phase. (Id.)

Plaintiffs contend that the subpoena seeks information related to Defendants' affirmative defense of fraud on the Copyright Office and therefore is not relevant to the "protectability/original authorship" phase. (Dkt. 645 at 15.) Indeed, Plaintiffs point out that Defendants previously argued in their Motion to Disqualify that Mr. Clarke is "perhaps the most important witness with respect to" Defendants' "affirmative defenses both that Plaintiffs' registration is invalid, and that Plaintiffs had committed fraud on the [Copyright Office]." (Dkt. 623 at 4-5; Dkt. 645 at 16-17.) Defendants further argued that Mr. Clarke's testimony was "genuinely needed" to establish "[t]he validity of, and circumstances under which Plaintiffs obtained, the Purported Fish Market Registrations." (Dkt. 623 at 10; see also id. ("Given the inherent credibility issues raised by Clarke's inconsistent statements – and the prospect that there was a fraud on the Copyright Office – it is crucial that Defendants have adequate and fair opportunity to cross-examine him and obtain complete document production and deposition testimony from him . . . .").)

Defendants acknowledge that their fraud on the Copyright Office theory is an affirmative defense, but seem to argue instead that the discovery sought falls within the "protectability/original authorship" phase because the discovery is relevant to the validity of Plaintiffs' copyright registrations. (Dkt. 651 at 4.) Specifically, Defendants contend that "[i]f Plaintiffs' registration is invalid (for instance, if 'Fish Market' was not first published in the US as Clarke initially and repeatedly insisted) then Plaintiffs have failed to meet the statutory prerequisite for suit as alleged in their [Second Consolidated Amended Complaint], and the issue of what law (if any) 'protects' 'Fish Market' becomes an open question." (Id.) However, Defendants fail to explain (and the Court is unable to discern) how this theory of invalidity is any different than their fraud on the Copyright Office affirmative defense. Indeed, Defendants previously described this theory of invalidity as an affirmative defense based on the exact same correspondence by Mr. Clarke that supports their fraud on the Copyright Office affirmative defense. (Dkt. 623 at 4 ("In light of Clarke's correspondence with the [Copyright Office], Defendants asserted as affirmative defenses both that Plaintiffs' registration is invalid, and that Plaintiffs had committed fraud on the [Copyright Office].").) The Court notes that one of the only things the parties agree on is that affirmative defenses are not included in the "protectability/original authorship" phase. (Dkt. 142 at 4-5.)

Regardless, the validity of a copyright registration is separate and distinct from the issue of whether a work is original and protectable. Indeed, the U.S. Supreme Court has explained that "copyright protection attaches to original works of authorship" and "an owner's rights exist apart from registration." Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, 586 U.S. 296, 301 (2019) (internal quotation marks omitted); see also S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 (9th Cir. 1989) ("Copyright protection subsists from the moment the work is fixed in any tangible medium of expression." (internal quotation marks omitted)). Moreover, the Supreme Court has described registration as "akin to an

administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." Fourth Est. Pub. Benefit Corp, 586 U.S. at 301; see also S.O.S., Inc., 886 F.2d at 1085 ("Registration is not a prerequisite to a valid copyright, although it is a prerequisite to suit.").

Defendants acknowledge that the validity of Plaintiff's copyright registrations is different than the issue of originality, but contend that the validity of the registrations falls within the scope of whether Plaintiff's claimed works are "otherwise protectable under copyright law." (Dkt. 651 at 11 n.8.) The Case Administration Order does not explain what the parties meant by the phrase, "otherwise protectable under copyright law," so the Court looks to the Stipulation and relevant copyright law for guidance. See Operating Engineers' Pension Tr. Fund, 688 F. Supp. 2d at 910. Turning first to the Stipulation, the parties described the "protectability/original authorship" phase in narrow terms and repeatedly emphasized the "limited" scope of this phase. (Dkt. 142 at 4.) Specifically, the parties stipulated that this phase would include "limited fact and expert discovery" on originality and protectability, as well as "limited summary judgment motions solely on these issues." (Id.) The Stipulation emphasizes that "[t]he parties shall not engage in additional discovery or make dispositive motions on any other issues during the pendency of this limited discovery and summary judgment phase." (Id.) Thus, the Court concludes that the parties clearly expressed their objective intent for the "protectability/original authorship" phase to be limited in scope and the Court will therefore interpret the language of the Case Administration Order accordingly.

Turning next to relevant copyright law, the issue of protectability is generally understood as the elements of the work that are protectable and the scope of protection available. See Williams v. Gaye, 895 F.3d 1106, 1120 (9th Cir. 2018). For example, the Ninth Circuit has "distinguished between 'broad' and 'thin' copyright protection based on the 'range of expression' involved." Id. (quoting Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913–14 (9th Cir. 2010)). "If

there's a wide range of expression, then copyright protection is broad and a work will infringe if it's substantially similar to the copyrighted work." Williams, 895 F.3d at 1120 (ellipses and internal quotation marks omitted). "On the other hand, "[i]f there's only a narrow range of expression, then copyright protection is thin and a work must be virtually identical to infringe." Id. (ellipses and internal quotation marks omitted).

The Ninth Circuit has made clear that "[m]usical compositions are not confined to a narrow range of expression." Id. "[M]usic is not capable of ready classification into only five or six constituent elements, but is instead comprised of a large array of elements, some combination of which is protectable by copyright." Id. (internal quotation marks and ellipses omitted). "Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection." Id. (internal quotation marks omitted). Based on this context from relevant copyright law, the Court interprets the Case Administration Order's reference to whether Plaintiff's claimed works "are otherwise protectable under copyright law" as permitting discovery of whether the elements of Plaintiffs' claimed works contain sufficient creative expression to be protectable. (Dkt. 143 at 3.) In other words, the issue of protectability for purposes of the "protectability/original authorship" phase is limited to an analysis of the elements of Plaintiffs' claimed works and whether they contain sufficient creative expression to be protectable.

The Court recognizes that this is a narrow construction of the Case Administration Order, but the parties expressed a clear desire in the Stipulation for the "protectability/original authorship" phase to be limited in scope. (Dkt. 142 at 4.) The Court also notes that this construction of the Case Administration Order appears to be consistent with the position of the parties as expressed in the Joint Report. (Dkt. 426.) Indeed, Plaintiffs described the "protectability/original authorship" phase as including both the originality of the claimed works as well as "the

creativity involved in crafting the musical elements and/or combinations thereof at issue." (Id. at 4-5.) The defendants represented by Pryor Cashman LLP did not specifically respond to Plaintiffs' characterization of the scope of the "protectability/original authorship" phase, but the defendants represented by Mitchell Silberberg & Knupp, Chassman & Seelig, LLP, and Freundlich Law did respond and seemed to agree. (Id. at 8.) Specifically, these defendants described the "protectability/original authorship" phase as including "whether the works were independently created by Plaintiffs and whether those works exhibit a sufficient level of creativity." (Id.) None of the parties described the "protectability/original authorship" phase as including the validity of Plaintiffs' copyright registrations. (Id. at 4-8.)

Thus, the Court concludes that it must GRANT Plaintiffs' Motion to Quash because Defendants' subpoena to Mr. Clarke seeks information not relevant to the current phase of proceedings. See Fed. R. Civ. Proc. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."); Fed. R. Civ. Proc. 26(b)(1) (explaining that discovery must be "relevant to any party's claim or defense and proportional to the needs of the case"). The Court could stop its analysis here, but will address the propriety of Defendants' subpoena to Mr. Clarke as an alternative basis for the Court's ruling and because the parties may choose to renegotiate the phasing of this litigation.

**B. Defendants Have Not Sufficiently Explored Less-Intrusive Discovery Tools Prior To Seeking To Depose Mr. Clarke.**

As set forth above, the Court concludes that Defendants' subpoena to Mr. Clarke seeks information not relevant to the current phase of proceedings and therefore must wait for a future phase of this litigation. However, even if the information sought by Defendants' subpoena were relevant to the current phase, the Court would still grant Plaintiffs' Motion to Quash because Defendants have not

sufficiently explored less-intrusive discovery tools prior to seeking to depose Mr. Clarke. Moreover, even if Defendants ultimately justify Mr. Clarke's deposition, the Court is likely to impose limitations on the scope of the deposition to protect the attorney-client privilege and attorney work product.

Plaintiffs acknowledge that "there is no express prohibition against the taking of attorney depositions." Mass. Mut. Life. Ins. Co. v. Cerf, 177 F.R.D. 472, 478 (N.D. Cal. 1998); (Dkt. 645 at 8.) "Courts, however, have cautioned that attorney depositions should be allowed only where the discovery sought cannot be obtained from another source." Mass. Mut. Life. Ins. Co., 177 F.R.D. at 478. Indeed, "the practice of forcing trial counsel to testify as a witness has long been discouraged and has been recognized as disrupting the adversarial nature of our judicial system." Am. Cas. Co. of Reading, Pa. v. Krieger, 160 F.R.D. 582, 587 (S.D. Cal. 1995) (internal quotation marks omitted).

"The Ninth Circuit has not issued a published decision governing depositions of opposing counsel either in the context of soliciting testimony about a pending case or about a concluded case." ATS Prods., Inc v. Champion Fiberglass, Inc., 2015 WL 3561611, at *5 (N.D. Cal. June 8, 2015). However, in an unpublished decision, the Ninth Circuit followed the three-factor test from Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). See Willer v. Las Vegas Valley Water Dist., 176 F.3d 486 (9th Cir. 1999) (unpublished table opinion). District courts in the Ninth Circuit "and across the country recognize Shelton as the leading case on opposing counsel depositions." See, e.g., ATS Prods., Inc., 2015 WL 3561611, at *3 (citing cases); United States v. HVI Cat Canyon, Inc., 2017 WL 11532929, at *6 (C.D. Cal. Jan. 5, 2017) ("[W]here, as here, a party seeks to depose opposing counsel in pending litigation, the vast majority of district courts in this circuit have adopted the test set forth by the Eighth Circuit in Shelton.").

In Shelton, the Eighth Circuit held that the circumstances where a court orders the deposition of opposing counsel "should be limited to where the party seeking to

take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Shelton, 805 F.2d at 1327 (citation omitted). The Eighth Circuit explained that "the increasing practice of taking opposing counsel's deposition [w]as a negative development in the area of litigation, and one that should be employed in limited circumstances." (Id.) The Eight Circuit observed that "[t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." (Id.) The Eighth Circuit further observed that "the practice of deposing opposing counsel detracts from the quality of client representation" because it creates a "chilling effect" on counsel's ability to have truthful communications with their client. (Id.)

The Eighth Circuit later revisited the three-factor Shelton test in Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (8th Cir. 2002). In Pamida, Inc., the Eighth Circuit explained that "[t]he Shelton test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." Pamida, Inc., 281 F.3d at 730. "But Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." Id. Thus, the Eighth Circuit limited application of Shelton and held that the three-factor test did not apply where a deposition of counsel was sought "primarily seeking information regarding" a concluded case, as opposed to the current case. Id. at 731.

Plaintiffs contend that the Shelton test applies here "[b]ecause Defendants seek documents and testimony from opposing counsel of record regarding the claims being actively litigated in this case." (Dkt. 645 at 10.) By contrast,

Defendants contend that they "have not sought anything relating to Clarke's supposed work on this case" and that "the subpoena is limited to the facts concerning Clarke's sworn statements to the [Copyright Office] concerning 'Fish Market.'" (Dkt. 651 at 3.) In support of this argument, Defendants rely primarily on Laatz v. Zazzle, Inc., 2024 WL 3748434, at *2 (N.D. Cal. Aug. 7, 2024). (Id. at 3-4.)

In Laatz, the U.S. District Court for the Northern District of California held that the Shelton test did not apply where the defendant in a copyright infringement action sought to depose the plaintiff's trial counsel about statements trial counsel made to the Copyright Office to obtain the copyright registration at issue in the case. See Laatz, 2024 WL 3748434, at *3. The Laatz court reasoned that "the more rigorous Shelton rule" did not apply because the defendant sought to depose Plaintiff's trial counsel, not about matters relating to his representation of [the plaintiff] in this litigation, but about communications with the Copyright Office in connection with her registration that occurred more than one year before [the plaintiff] filed this action." Id. Thus, the Laatz court explained that "concerns about adequately protecting attorney-client communications and attorney work product" were "less pronounced" given that "the subject matter of the deposition of opposing counsel [wa]s not his conduct in the pending case but his percipient knowledge of events preceding the litigation." Id. (internal quotation marks omitted). Because the Laatz court found that the deposition was "not just relevant," but "necessary," the court granted permission for the deposition. Id.

However, the Laatz court strictly limited the deposition such that defense counsel could only question Plaintiff's counsel "about his communications with the Copyright Office, . . . including (1) his understanding of the communications from the Copyright [O]ffice, (2) the factual bases for the statements that he made in responding to the Copyright Office's communications, and (3) whether he believed the statements he made to the Copyright Office were truthful and accurate at the

time they were made." Id. The Laatz court further limited the deposition to two hours on the record and directed that defense counsel could not ask Plaintiff's counsel "about his understanding or application of the law, or about the substance of any communications he had with [the plaintiff] or with any other person with whom he had an attorney-client relationship at the time." Id.

As set forth above, the Laatz court concluded that the concerns related to deposing opposing counsel were less pronounced where the subject matter of the deposition was counsel's statements to the Copyright Office to obtain the copyright registration at issue in the litigation. Id. However, the U.S. District Court for the Central District of California reached a different conclusion on similar facts in Eastwood Ins. Servs., Inc. v. Titan Auto Ins. of New Mexico, Inc., 2010 WL 11595846, at *2 (C.D. Cal. Feb. 11, 2010). In Eastwood Ins. Servs., Inc., the defendants sought to depose plaintiff's transactional counsel in a lawsuit claiming fraud in the negotiation of the sale of an insurance business where the transactional counsel had been assisting lead trial counsel "with litigation themes and strategy in th[e] lawsuit." Eastwood Ins. Servs., Inc., 2010 WL 11595846, at *1. The Eastwood Ins. Servs., Inc. court concluded that the concerns related to deposing plaintiff's transactional counsel were still present because the defendants sought testimony about "matters that [we]re relevant to a party's claims and defenses in th[e] lawsuit, not some past concluded litigation matter." Id. at *2. The U.S. District Court for the Southern District of California reached the same conclusion on similar facts in In re Insogna, 2020 WL 85487, at *3 (S.D. Cal. Jan. 3, 2020). The In re Insogna court concluded that the Shelton test applied to a subpoena seeking deposition testimony from the plaintiff's attorney in a patent infringement lawsuit where the defendants sought testimony "about the submissions made to the Patent Office during prosecution, including the facts underlying the arguments [plaintiff's counsel] made that are relevant to [the] [p]laintiff's infringement theory." In re Insogna, 2020 WL 85487, at *2.

Turning to the instant case, Defendants seek testimony from Plaintiffs' counsel of record, Mr. Clarke, regarding his statements to the Copyright Office made in the course of obtaining the registrations at issue in this litigation. (Dkt. 651 at 2.) Mr. Clarke was initially retained by Plaintiffs back in April of 2020 and has advised Plaintiffs on numerous copyright-related matters since that time, including *inter alia*, publishing, estate processing, and registering works. (Dkt. 645-1 at 2.) Mr. Clarke has been counsel of record in this litigation since August 29, 2024. (Dkt. 594.) In connection with this litigation, Mr. Clarke has advised Plaintiffs on his impressions and strategic considerations regarding the claims and defenses at issue, briefed oppositions to Defendants' motions to dismiss and motion for a protective order, drafted outgoing discovery, coordinated with Plaintiffs regarding their pleadings, discovery responses, and document productions, as well as worked with Plaintiffs' experts regarding their disclosures. (Dkt. 645-1 at 2.) Defendants state that they have served "discovery on Plaintiffs concerning, among other things, why Clarke made the statement that 'Fish Market' was first released in Jamaica," but that Plaintiffs have failed to produce any document other than publicly-available Copyright Office correspondence.[3] (Dkt. 651 at 5.) However, Plaintiffs state that "Defendants have not propounded an interrogatory to Plaintiffs seeking the factual basis for the statements made to the U.S. Copyright Office regarding the release of *Fish Market* in the U.S." (Dkt. 645-1 at 3.) Plaintiffs also note that Defendants have not yet deposed any of the Plaintiffs. (Dkt. 645 at 12.)

Based on the unique facts of this case, the Court concludes that Defendants should not be allowed to depose Mr. Clarke at this juncture, regardless of whether the Shelton test applies, because there are other less-intrusive discovery tools available to obtain the information sought. See Eastwood Ins. Servs., Inc., 2010 WL

[3] Defendants did not attach the relevant discovery responses as exhibits to their Opposition. (Dkt. 651.)

11595846, at *3 ("[R]egardless of which test is used, this Court finds Defendants should not be allowed to depose Messrs. Shurtleff and Kim at this juncture because there are other less-intrusive discovery tools available that Defendants can use to determine whether Messrs. Shurtleff and Kim actually witnessed Mr. Gifford make any of the alleged assurances to Ms. Partridge."). Specifically, Defendants have not yet deposed any of the Plaintiffs, (Dkt. 645 at 12), and appear not to have exhausted available written discovery. (Dkt. 645-1 at 3.) Therefore, even assuming that the Shelton test did not apply, the Court would still grant Plaintiffs' Motion to Quash under Rule 26(b)(2)(C)(i) because the discovery sought by the subpoena seeks information that "can be obtained from some other source that is more convenient" and "less burdensome." Fed. R. Civ. Proc. 26(b)(2)(C)(i); see also ATS Prods., Inc., 2015 WL 3561611, at *6 (declining to apply Shelton because the discovery sought related to "a prior concluded litigation," but denying deposition of opposing counsel under Rule 26(b)(2)(C)(i) because there were more convenient and less burdensome discovery tools available, such as deposing the opposing party).

Indeed, the facts here are distinguishable from Laatz because in that case, the defendant had already deposed the plaintiff and her husband regarding the truthfulness of the statements made by the plaintiff's counsel to the Copyright Office, and the Laatz court relied on the fact that nothing in this prior discovery "suggest[ed] that [plaintiff's counsel] was merely passing on verbatim statements from [the plaintiff]." Laatz, 2024 WL 3748434, at *2-3. Thus, the Court concludes that it is not necessary to decide whether the Shelton test applies to resolve Plaintiffs' Motion to Quash.

For purposes of giving guidance to the parties, the Court is not entirely convinced that the concerns related to deposing opposing counsel are less pronounced in this case where Defendants seek to depose Mr. Clarke regarding his statements to the Copyright Office to obtain the copyright registrations at issue in this litigation. See In re Insogna, 2020 WL 85487, at *3 (applying the Shelton test

where defendants sought to depose plaintiff's counsel about statements made to the Patent Office to obtain the patents at issue in the case). Indeed, Plaintiffs' copyright registrations lie at the heart of two of Defendants' affirmative defenses and therefore are a key component of this litigation, not merely some concluded transactional matter that preceded the litigation. (Dkt. 623 at 4.) Therefore, the facts here are unlike Pamida, Inc., where the Eighth Circuit held that the Shelton test did not apply because the deposition of counsel was sought "primarily seeking information regarding" a concluded case, as opposed to the current case. Pamida, Inc., 281 F.3d at 731; see Eastwood Ins. Servs., Inc., 2010 WL 11595846, at *2 ("This Court finds Pamida is inapplicable and distinguishable because Defendants seek to depose Messrs. Shurtleff and Kim in connection with matters that are relevant to a party's claims and defenses in this lawsuit, not some past concluded litigation matter.").

Ultimately, the Court concludes that it must require Defendants to explore less-intrusive discovery tools before it seeks to depose Plaintiffs' counsel of record in this case. These less-intrusive discovery tools include, but are not limited to, written discovery served on Plaintiffs, as well as depositions of Plaintiffs. Defendants could then use the results of these discovery tools to try to justify written discovery served on Mr. Clarke, and ultimately to try to justify Mr. Clarke's deposition. The Court concludes that these efforts are required by Rule 26(b)(2)(C)(i), regardless of whether the Shelton test applies. If Defendants ultimately justify Mr. Clarke's deposition, the Court is likely to impose limitations on the scope of the deposition similar to those adopted in Laatz.

## VI.

## CONCLUSION

Consistent with the foregoing, Plaintiffs' Motion to Quash is GRANTED WITHOUT PREJUDICE to Defendants seeking to depose Mr. Clarke in a future phase of this litigation after exploring less-intrusive discovery tools. Absent a

change to the Case Administration Order, it appears that Mr. Clarke's testimony would be relevant to the phase of this litigation that includes affirmative defenses. (Dkt. 143 at 2-3; Dkt. 142 at 4-5.)

As set forth above, courts have discretion to impose sanctions under Rule 45(d)(1). See Legal Voice, 738 F.3d at 1185. "[W]hile failure narrowly to tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." Id. The Court has essentially concluded that Defendants' subpoena was overbroad by granting Plaintiffs' Motion to Quash. However, the Court exercises its discretion not to impose sanctions under Rule 45 because the scope of the "protectability/original authorship" phase was not entirely clear and Defendants' argument that validity of Plaintiffs' copyright registrations fell within the current phase of the litigation was far from frivolous. The Court similarly concludes that Defendants' arguments as to the merits of the subpoena also were not frivolous. While the Court ultimately disagreed with Defendants for the reasons stated, the Court recognizes that Defendants' arguments have support from a case with a very similar fact pattern in Laatz.

IT IS SO ORDERED.

DATED: February 18, 2025

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE