1  Stephen M. Doniger (SBN 179314)
   stephen@donigerlawfirm.com
2  Scott Alan Burroughs (SBN 235718)
   scott@donigerlawfirm.com
3  Benjamin F. Tookey (SBN 330508)
   btookey@donigerlawfirm.com
4
   DONIGER / BURROUGHS
5  603 Rose Avenue
6  Venice, California 90291
   Telephone: (310) 590-1820
7  *Attorneys for Plaintiffs*
8
9              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
10
11 CLEVELAND CONSTANTINE          Case No. 2:21-cv-02840-AB-AJR
   BROWNE, et al.,                *Hon. Andre Birotte Jr. Presiding*
12
13        Plaintiffs,             **Discovery Matter**:
                                  *Referred to Hon. A. Joel Richlin*
14 v.
                                  **PLAINTIFFS' NOTICE OF
15                                MOTION AND MOTION FOR
   RODNEY SEBASTIAN CLARK         SANCTIONS**
16 DONALDS, et al.,
                                  **[Proposed Order and Burroughs and
17        Defendants.             Tookey Declarations submitted
18                                herewith]**
19
                                  Date: None Set
20                                Time: None Set
21                                Location: None Set
22
23
24
25
26
27
28

TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF
RECORD:

PLEASE TAKE NOTICE that Plaintiffs will and hereby do move this Court for
sanctions under Federal Rules of Civil Procedure 30 and 37 as well as this Court's
inherent authority against defense counsel Donald Zakarin and Kenneth Freundlich for
their gross misconduct during the deposition of key defense expert Dr. Wayne
Marshall. The Court has indicated that it will not set a hearing date unless it believes
one to be warranted.

This motion is based on the below memorandum of points and authorities, the
accompanying documents submitted in support, the record in this case, and such
further and other evidence as may be offered during the hearing on this motion. This
motion is made following the Court' Informal Discovery Conference ("IDC") process
is made with leave of Court. *See* Dkt. 679.

Respectfully submitted,

Date: April 11, 2025              By:        /s/ *Scott Alan Burroughs*
                                             Stephen M. Doniger
                                             Scott Alan Burroughs
                                             Benjamin F. Tookey
                                             DONIGER / BURROUGHS
                                             *Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

"Counsel should never forget that even though the deposition may be taking place far from a real courtroom, with no black-robed overseer peering down upon them, as long as the deposition is conducted under the caption of this court and proceeding under the authority of the rules of this court, counsel are operating as officers of this court." *Hall v. Clifton Precision*, 150 F.R.D. 525, 531 (E.D. Pa. 1993). Defense attorneys Donald Zakarin and Kenneth Freundlich, who hold a combined 80 years of experience as officers of the court, grossly and knowingly transgressed the rules in an effort to obstruct defense expert Dr. Wayne Marshall's deposition.

While a few speaking objections uttered in the heat of the moment are generally not cause for sanction, the misconduct here *far* exceeds what is tolerable. Defense counsel interrupted questions, insisted their own questions be answered before allowing the witness to answer, coached the witness with speaking objections (and speaking without even objecting), supplied testimony themselves and to the witness, and lobbed personal attacks at Plaintiffs' counsel, Benjamin Tookey, all in a calculated and callous attempt to disrupt the more junior attorney's deposition.

Tookey repeatedly requested that defense counsel stop testifying and making speaking objections. They refused and even mocked Tookey, with Zakarin at one point stating he would be "delighted" to have Judge Richlin review his conduct. *See* **Ex. A**, 106:3-107:7. After they forced Plaintiffs' counsel – mid-deposition – to serve an IDC notice advising of this Court's intervention, the speaking objections ceased almost *entirely* for the remainder of the session—a tacit admission of their misconduct. Yet they have since shown indignation, if not outrage, at their behavior being challenged. Defense counsel could have expressed contrition, stipulated that they would refrain from repeating their misconduct in the depositions still to occur, and agreed to certain relief. Instead, and evincing a stunning lack of accountability, they claim that somehow *they* have been aggrieved. Given their experience, defense

counsel should be *more* aware of the need to comply with the rules. But instead they seem to believe they are exempt from said rules as well as basic norms of civility. Strong sanctions should issue to deter future misconduct.

## II.    ARGUMENT

Defense counsel should be sanctioned under Rule 30(d)(2) and the Court's inherent powers. *See Lee v. Pep Boys-Manny Moe & Jack of California*, 2015 WL 9268118, at *3 (N.D. Cal. 2015) (citations omitted) (Rule 30(d)(2) provides for sanctions against one who "impedes, delays or frustrates the fair examination of the deponent"); *Morales v. Zondo, Inc*., 204 F.R.D. 50, 54, 57 (S.D.N.Y. 2001) (courts have inherent power to sanction attorneys for conduct at depositions).

### A.    Zakarin and Freundlich repeatedly violated Rule 30

Zakarin and Freundlich *both* interposed improper objections and statements throughout Marshall's deposition. *Cf. Finjan, Inc. v. Cisco Sys. Inc.*, 2019 WL 7753437, at *2 (N.D. Cal. Sept. 9, 2019) ("[T]he Court will not permit Cisco to have more than one attorney question" the witness); *Applied Telematics, Inc. v. Sprint Corp.*, 1995 WL 79237, at *4-5 (E.D. Pa. 1995) ("only one attorney at a time shall be designated as the 'voice' of counsel at a deposition"). Indeed, at times they made speaking objections at the same time. And those objections were in no way "stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). Rather, they were "argumentative objections, suggestive objections, [] directions to a deponent not to answer [and an] excessive number of objections[.]" *Craig v. St. Anthony's Medical Center,* 384 F. App'x. 531, 533 (8th Cir. 2010). They no doubt violated the Rules.

Rule 30 is designed to stop attorneys from "[c]oaching the witness, interrupting, giving long speeches, arguing with the examining attorney, and other misconduct," as it "prejudices the other side's ability to depose the witness," "substantively interferes with the whole point of a deposition, and "makes the discovery process valueless because it prevents the other side from building its case." *Hardin v. Mendocino Coast*

*Dist. Hosp*., 2019 WL 1855989, at *7 (N.D. Cal. 2019). Courts employ a two-step process when assessing deposition misconduct: (1) "determine whether a person's behavior has impeded, delayed, or frustrated the fair examination of the deponent," and then (2) "impose an appropriate sanction," which courts have wide discretion to do. *See Dunn v. Wal-Mart Stores, Inc*., 2013 WL 5940099, at *1 (D. Nev. 2013). Courts consider both the frequency and severity of the objectionable conduct. *Craig*, 384 F. App'x. at 533. Here, defense counsel repeatedly made lengthy speaking objections, provided answers to the witness by coaching and speaking directly to the witness, and embedded answers within objections.[1] Rule 30 abhors such misconduct.

## 1. Defense counsel provided at least one answer directly to the witness while the question was pending

It should go without saying that defense counsel should not provide an answer to the witness by surreptitiously providing to the witness an answer to a question while that question is pending. But that is *exactly* what defense counsel did. Marshall was answering an important question relating to the instrumental combination at issue. When Marshall failed to identify one such element, the "hi-hat," one of his attorneys—who was in the room with the witness with his own device muted, in *sotto voce* perhaps believing that Plaintiffs' counsel would not be able hear—directed Marshall to add "hi-hat" to his testimony. Marshall did so, tainting the testimony:

Q    So what I'm asking about is if you heard that particular combination in prior music. Not sub-combinations, not elements individually, that particular combination.

A    Okay. So bass and tom on 1 and 3. 4, 4 kick, 3 plus 3 plus 2 snares, clave resembling timbale line. And then what else do we have? [Defense counsel

---

[1] **Exhibit A** is a chart of the primary excerpts from the Marhsall deposition transcript reflecting misconduct. **Exhibit B** is a syllabus reflecting numerous additional instances of misconduct. **Exhibit C** is a certified copy of the transcript from which these excerpts were taken.

quietly states "hi-hat" to Marshall and Marshall repeats that testimony]

The hi-hat . . . .

**Ex. C**, Marshall Dep. at 143:5-11. While plaintiffs' counsel was able to identify this instance of defense counsel providing testimony to the witness, there were likely others.[2] Defense counsel—who were both in the same room as the witness with their speakers muted—failed to keep their cameras on throughout the deposition, meaning there were stretches where defense counsel were not visible while questions were pending *and while they were still objecting*, even after Plaintiffs' counsel notified them that this was improper *See* Burroughs Decl. ¶ 7. And at numerous points during the deposition, Marshall looked off-camera toward his counsel before, during, and after answering questions. Tookey Decl. ¶ 6. While defense counsel blamed the technology, and at one point even the court reporting service, for their camera issues, they were the only participants to do so. Tookey, defense expert Marshall, and the court reporter reported *no* issues with their cameras during the deposition.

### 2. Defense counsel provided answers by speaking on the record

Defense counsel also improperly answered *for the witness on the record* on numerous occasions, despite knowing that a "witness's own counsel should not interpret questions, decide what to answer, or help the witness answer questions." *Luangisa v. Interface Operations*, 2011 WL 6029880, at *7 (D. Nev. 2011), citing *Hall*, 150 F.R.D. at 528. In one instance, when Tookey questioned Marshall about his

---

[2] This is yet another basis for sanction. Zakarin, Freundlich, and Marhsall were all in one room in the Boston Park Plaza hotel—not a conference room, not the witness' office, and not Zakarin's or Freundlich's office. Freundlich appeared for the deposition using his cell phone. And the devices on which Zakarin and Freundlich appeared for the deposition were **<u>muted</u>** during the deposition. That is, the only device in that room through which sound was audible was the witness' computer, meaning Zakarin's and Freundlich's objections were only audible through that device, and only if they spoke loud enough. *See* Tookey Decl. ¶ 4. This allowed for surreptitious communication. Zakarin and Freundlich made the strategic choice to proceed in this manner, and this type of strategy must be deterred.

4

opinion as to whether Steely & Clevie ever heard or copied from a number of songs Marshall cited as purported "prior art," defense counsel interrupted to answer, *for Marshall*, that "he wasn't in the studio." Adopting his counsel's testimony, Marshall then stated, "that is true" and failed to provide a proper response. Marshall Dep. at 125:9-17. In other instances, counsel directly answered pending questions, including the instances set forth below:[3]

| | |
|---|---|
| **F: The bass tones themselves speak for themselves. I don't know what kind of harmonic shift you're indicating. You said there's a B-flat and an occasional foray onto E-flat.** <br> BT: Okay. Ken, if you are -- <br> F: Or -- <br> BT: -- not testifying, you can just say your objection. | 25:17-26:2 |
| BT: And these are the same lines that we just looked at in Figure 6 a moment ago. Right? <br> **F: Objection. They're not the same.** <br> WM: Well, it doesn't include the bass, but the kick, snare, and timbale parts are identical to what we just looked at. | 73:21-74:2 |
| BT: I'm asking is that the basis on which you disregarded the base element as a melodic or a harmonic element? <br> **Z: Is what the basis?** | 183:11-14 |
| BT: So my question is, using that definition, would the opinion you reached be that, yes, there is originality here? <br> **Z: Already testified, Ben, that he wasn't in the studio when Fish Market was created. So he has no way of addressing one portion of your definition.** <br> M: That is true. I cannot speak to independent creation here. <br> BT: Okay. So -- all right. You're adopting your counsel's testimony? <br> M: No, that's by your definition. | 125:9-24 |

### 3. Defense counsel coached the witness with improper speaking objections

It "is inappropriate for counsel to engage in extensive and unnecessary colloquy, assert groundless objections, improperly object, or utilize any opportunity to interrupt and argue with opposing counsel during a deposition." *Luangisa*, 2011 WL

---

[3] "BT" is Tookey, "Z" is Zakarin, "F" is Freundlich, and "WM" is Marshall. For each category of misconduct, the primary examples are set forth in **Exhibit A**. A more lengthy set of additional misconduct examples is set forth in **Exhibit B**.

6029880 at *7. "[T]estimony should be that of the deponent, not a version edited or glossed by the deponent's lawyer through coaching or speaking objections." *Id*. Attorneys thus "are not allowed to make long, argumentative objections, or reframe the question for the witness, or make speeches about the irrelevance of the examining attorney's questions, or get into arguments with the other side." *Hardin*, 2019 WL 1855989 at *7. Defense counsel repeatedly engaged in such misconduct, including the examples set forth below and as catalogued in **Exhibits A** and **B**:

<u>Made lengthy, argumentative objections:</u>

| | |
|---|---|
| **F: Can you rephrase that, please? It's just got too many negatives. And upon negatives, it's very hard to understand what we're trying to get at.**<br>BT: Dr. Marshall, do you understand the question?<br>**Z: I'm going to offer an objection. I think it's an objectionable question because you're asking him if we had the law in Moscow over originality, would this be okay, would this be original. I mean, (indiscernible) ask the question that presumes the law is not what the law is. Are you asking something different than that?** | 128:19-129:6 |

<u>Reframed the questions, including before the witness even responded:</u>

| | |
|---|---|
| **Z: I don't understand the question.**<br>**F: Yeah.**<br>**Z: I'm objecting to that. Don't know the two things you're talking about.**<br>**F: Please restate the question then.** | 78:20-79:9 |

<u>Made speeches about their views of the law and argued with counsel:</u>

| | |
|---|---|
| **Z: Functionally, Ben, you're asking him if the world were different than it is and prior art doesn't matter at all, you know, then would your opinion be different. That's what you're asking him. But the law is not different. The law is the law.**<br>**F: Why is -- why is his opinion different for that matter?**<br>WM: My opinion is not a legal opinion. My opinion is based on musical history. | 124:11-19 |

Each example of defense counsel's misconduct set forth in **Exhibits A and B** violated Rule 30. It is beyond dispute that they go far beyond objections to form. Yet

Zakarin and Freundlich protested in their IDC submissions that they were forced into their misconduct by Tookey's questions. But even if the questions were improper – they were not – rule-complaint conduct would have been to object to form or, if they in good faith believed they had grounds for it, to suspend the deposition to seek a protective order. *See Luangisa*, 2011 WL 6029880, at *10 (even "in the face of irrelevant questions, the proper procedure is to answer the questions, noting them for resolution at pretrial or trial"). Knowing they had no such grounds, defense counsel did neither. They instead lodged what may well be more than **60** speaking objections, which is clearly sanctionable. *See In re Ford Motor Co. DPS6 PowerShift Transmission Prods. Liab. Litig.*, 2019 WL 3815721, at *2 (C.D. Cal. 2019) (awarding sanctions where, "in approximately 60 instances, plaintiff's counsel interposed objections that implicitly instructed [the witness] how to answer," such as "Calls for speculation," "He is not qualified," "To the best of your knowledge," "Don't guess," and "You can answer if you understand"). And, tellingly, defense counsel made only approximately **two** such objections *after* Plaintiffs served their IDC notice.

Simply put, it is improper for a "witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers." *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 526-527 (C.D. Cal. 2008). And this deposition illustrates why. Marshall claimed confusion as to questions in most cases only *after, and based on,* defense counsel's objections, which demonstrates that defense "counsel was shaping his answers" and thereby violating Rule 30(c)(2). *In re Ford Motor Co.,* 2019 WL 3815721, at *3, citing *Luangisa*, 2011 WL 6029880, at *11 ("[O]bjections that result in an incomplete answer or in the witness's adoption of counsel's statement are suggestive"). Sanctions are thus appropriate.

#### 4.  Seasoned defense counsel knowingly violated the civility guidelines

Despite the expectation that counsel not engage in any deposition conduct that would be inappropriate in a judge's presence, Zakarin resorted to petty name-calling—he referenced a "sleaze factor" after Tookey impeached Marshall with Marshall's own prior statement (Marshall Dep. at 158:17-161:18)—as well as other unbecoming conduct, such as speaking over Tookey during questioning and preventing Tookey from asking questions until Tookey answered Zakarin's questions.

Serious sanctions are needed where, as here, "counsel has not displayed any remorse about [their] conduct during" the deposition and indeed insist they have "not done anything wrong." *Holloway v. Cnty. of Orange*, 2021 WL 430697, at *14 (C.D. Cal. 2021). Such a lack of accountability is unacceptable as defense counsel, both of whom are "seasoned" attorneys, are "well aware of what objections are appropriate during a deposition and how to make them[]" and yet demanded on multiple occasions that Plaintiffs' counsel explain, on the record, the relevance of the proffered question. *Luangisa*, 2011 WL 6029880, at *11. Defense counsel know it "is inappropriate to interrogate opposing counsel during the course of a deposition" yet did so anyway, making it worse by raising "suggestive" objections that often resulted "in an incomplete answer or in the witness's adoption of counsel's statement[.]" *Id*. Sanctions are necessary to deter the above misconduct.

### B.  Precluding Marshall from testifying to tainted or interfered-with lines of questioning, monetary sanctions, and serious admonishment are warranted

Given the breadth and depth of the misconduct, defense counsel's experience with the Rules, and the need for deterrence, substantial sanctions are necessary.

#### 1.  Evidentiary sanctions are necessary

Defense counsel impeded and tainted the deposition of their expert witness by providing him testimony, answering for him, and coaching him on the record, all of which interfered with Plaintiffs' investigation of the expert's opinions.

8

1    Evidentiary sanctions are necessary because lesser sanctions such as a second

2    deposition without Freundlich or Zakarian present will not cure the issues. Marshall's

3    testimony was befouled not by instructions not to answer but by his counsel providing

4    answers – directly on and off the record and through speaking objections – and thus a

5    second Marshall deposition will not cure these issues. Defense counsel so thoroughly

6    coached Marshall's testimony regarding prior art and originality that we cannot now

7    unring that bell. The only way to mitigate the resultant prejudice is through

8    evidentiary sanctions.

9    Marshall should thus be precluded from testifying for the defense that

10    Plaintiffs' music is unoriginal and/or as to any prior art's impact on the originality of

11    Plaintiff's music. As set forth above, defense counsel testified for Marshall regarding

12    whether Plaintiffs had access to or copied from any prior art—a key to determining

13    whether such prior art is relevant (*see* 9th Cir. MJI No. 17.14 ("Copyright

14    Infringement—Originality"))—and Marshall adopted his counsel's testimony. Indeed,

15    in terms of originality, prior art is *irrelevant* so long as plaintiff "did not copy the"

16    prior art. *L.A. Printex Indus., Inc. v. Forever 21, Inc*., 2009 WL 10698834, at *3 (C.D.

17    Cal. 2009)(citations omitted). Tookey inquired as to whether Marshall had any

18    opinion as to whether Plaintiffs copied from prior art, defense counsel interrupted to

19    stop Marshall's response and stated that Marshall was not in the studio and thus could

20    not respond. Marshall adopted that testimony. Defense counsel also surreptitiously

21    provided a material portion of Marshall's testimony regarding instrumentation

22    relevant to prior art. These objections, and the others set forth in the Exhibits,

23    irreparably tainted the testimony. *See* **Exs. A; B; C**, Marshall Dep. at 143:5-11, 125:9-

24    17, 25:17-26:2, 192:19-193:11, 187:21-188:10.

25    Defense counsel repeatedly engaged in lengthy speaking (and suggestive)

26    objections, made speeches, and argued with Tookey regarding the legal framework for

27    originality as Tookey was questioning Marshall on the meaning he ascribed to the

28    term, his basis for the same, how he used it throughout his report, and how he applied

it to the elements (and combination of elements) at issue. Defendants should not benefit from this interference and the challenged testimony should be excluded.

### 2. Monetary sanctions are proper

Under Rule 30(d)(2) and Rule 37(a)(5)(A), courts award fees where counsel "engaged in repeated, unnecessary objections that slowed the progress of the examination, impeded the flow of information from the witness, and unnecessarily prolonged the proceedings." *Lee*, 2015 WL 9268118, at *6 (citation omitted); *see also Specht v. Google, Inc.*, 268 F.R.D. 596, 598-599, 603 (N.D. Ill. 2010) (imposing sanctions for speaking objections that obstructed the deposition). Here, monetary sanctions should issue requiring defense counsel to compensate Plaintiffs for the costs and fees incurred in connection with the Marshall deposition and this motion, in an amount to be set after this briefing is complete and Plaintiffs' counsel's billing records are submitted.

### 3. An admonishment is necessary

This motion has already been successful in that defense counsel corrected their behavior immediately after receiving Plaintiffs' IDC notice during Marshall's deposition. But, tellingly, after reforming their conduct for the latter portion of the deposition, they have now strenuously denied any misconduct. See **Exhibit D**. This case is in the initial phase, multiple depositions remain, and defense counsel still apparently believe Rule 30 countenances their conduct. Defense counsel should be admonished that how they comported themselves is unacceptable under Rule 30 and that any "repetition of this performance . . . will lead to sterner sanctions[.]" *Redwood v. Dobson,* 476 F.3d 462, 470 (7th Cir. 2007).

### III.  CONCLUSION

Defense counsel, given their statements at the IDC and legal experience, must be deterred from flagrantly violating the Rules while employing calculated efforts to harass and obstruct a more junior lawyer. Sanctions are needed.

Respectfully submitted,

Dated: April 11, 2025          By:    */s/ Scott Alan Burroughs*
Stephen M. Doniger
Scott Alan Burroughs
Benjamin F. Tookey
DONIGER / BURROUGHS
*Attorneys for Plaintiffs*