**PRYOR CASHMAN LLP**
Benjamin S. Akley (State Bar No. 278506)
*bakley@pryorcashman.com*
Shamar Toms-Anthony (State Bar No. 323246)
*stoms-anthony@pryorcashman.com*
1901 Avenue of the Stars, Ste. 900, Los Angeles, California 90067
Telephone: (310) 683-6900

Donald S. Zakarin (admitted *pro hac vice*)
*dzakarin@pryorcashman.com*
Frank P. Scibilia (admitted *pro hac vice*)
*fscibilia@pryorcashman.com*
7 Times Square, 40th Floor, New York, New York 10036
Telephone: (212) 421-4100

James G. Sammataro (State Bar No. 204882)
*jsammataro@pryorcashman.com*
255 Alhambra Circle, 8th Floor, Miami, Florida 33134
Telephone: (786) 582-3003
*Attorneys for the Pryor Cashman-Represented Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *ET AL.*,<br><br>     Plaintiffs,<br><br>          v.<br><br>RODNEY SEBASTIAN CLARK, an individual, *ET AL.*,<br><br>     Defendants. | Case No.: 2:21-cv-02840-AB-AJR<br>**THE PRYOR CASHMAN DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO ORIGINALITY AND PROTECTABILITY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br>*[Decl. of Benjamin S. Akley, Statement of Uncontroverted Facts, and [Proposed] Judgment filed concurrently]*<br>Date: September 26, 2025<br>Time: 10:00 am<br>Courtroom: 7B |

1

## **NOTICE OF MOTION AND MOTION**

2    TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE that on September 26, 2025, at 10:00 a.m., or as soon

4    thereafter as the matter may be heard in Courtroom 7B of the courthouse located at

5    350 W 1st Street, Los Angeles, California 90012, the Defendants represented by

6    Pryor Cashman LLP ("PC Defendants")[1] will and hereby do move the Court for an

7    order granting summary judgment against plaintiffs Cleveland Constantine

8    Browne; Shea Johnson, as personal representative and executor of the Estate of

9    Wycliffe Johnson, deceased; Steely & Clevie Productions Ltd.; and Carl Gibson,

10   as personal representative and executor of the Estate of Ephraim Barrett

11   ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure ("Rule") 56, on the sole

12   remaining claim (direct copyright infringement)[2] asserted by Plaintiffs in their

13   Second Consolidated Amended Complaint ("SCAC").

14        As explained herein, the Motion should be granted on the ground that the

15   relevant portions of Plaintiffs claimed works are not "original or otherwise

16   protectable under copyright law."  (Administration Order, Dkt. 143.)

17        This Motion is based upon this Notice, the accompanying Memorandum of

18   Points and Authorities and concurrently filed Declaration of Benjamin S. Akley,

19   any reply memorandum, all other pleadings and orders entered in this action, and

20   such other matters as may be presented at or before the hearing.

21                              **L.R. 7-3 Statement of Compliance**

22        This Motion is made following telephonic conference of counsel pursuant to

23   L.R. 7.3, which took place on May 15, 2025.

24

25   ───────────────────

26   [1]  A list of the PC Defendants is available in the attached Appendix A.

27   [2]  The Court previously dismissed Plaintiffs' claim for "vicarious and/or
     contributory copyright infringement." (Dkt. 421.)

28

Respectfully submitted on May 23, 2025

**PRYOR CASHMAN LLP**

By: */s/ Benjamin S. Akley*
Donald S. Zakarin (*dzakarin@pryorcashman.com*)
Frank P. Scibilia (*fscibilia@pryorcashman.com*)
James G. Sammataro (*jsammataro@pryorcashman.com*)
Benjamin S. Akley (*bakley@pryorcashman.com*)
Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)

## APPENDIX A
## Pryor Cashman-Represented Defendants

1.   Abraham Mateo Chamorro p/k/a Abraham Mateo
2.   Alejandro Rengifo p/k/a Cali
3.   Alexander Delgado Hernandez p/k/a Gente De Zona
4.   Andrés Torres
5.   Andy Clay Cruz p/k/a Andy Clay
6.   Antón Álvarez Alfaro p/k/a C. Tangana
7.   Armando Christian Pérez p/k/a Pitbull
8.   Aura Music LLC
9.   BMG Rights Management, LLC
10.  Bryan Lezcano Chaverra p/k/a Chan El Genio (collectively The Rude Boyz)
11.  Carbon Fiber Music, Inc.
12.  Carlos Efrén Reyes Rosado p/k/a Farruko
13.  Carlos Isaías Morales Williams p/k/a Sech
14.  Carlos Ortiz Rivera p/k/a Chris Jeday a/k/a Chris Jedi
15.  Carolina Giraldo Navarro p/k/a Karol G
16.  Christian Mena p/k/a Saga WhiteBlack
17.  Concord Music Group, LLC
18.  Daniel Alejandro Morales Reyes p/k/a Danny Ocean
19.  Danna Paola Rivera Munguía p/k/a Danna Paola
20.  Dimelo Vi, LLC
21.  Duars Entertainment Corp.
22.  Edgar Semper (collectively p/k/a Mambo Kingz)
23.  Edwin Vázquez Vega p/k/a Maldy (erroneously named as "Edwin Vasquez Vega p/k/a Maldy" in the SCAC)
24.  El Cartel Records, Inc.
25.  Energy Music Corp.
26.  Enrique Iglesias
27.  Enrique Martin-Morales p/k/a Ricky Martin
28.  Eric Alberto-Lopez p/k/a Ape Drums
29.  Eric Pérez Rovira p/k/a Eric Duars
30.  Erika María Ender Simões p/k/a Erica Ender
31.  Felix Ortiz Torres p/k/a Zion
32.  Flow La Movie, Inc.
33.  Freddy Montalvo Jr. p/k/a Freddy El Synthethyzer
34.  Gasolina Publishing Co.
35.  Gilberto Marin Espinoza  p/k/a Reik
36.  Glad Empire Live, LLC

i

37.  Greeicy Yeliana Rendon Ceballos p/k/a Greeicy
38.  Hear This Music, LLC
39.  Hipgnosis Songs Group, LLC
40.  Jason Joel Desrouleaux p/k/a Jason Derulo
41.  Javier Alexander Salazar p/k/a Alex Sensation
42.  Jesus Alberto Navarro p/k/a Reik
43.  Jorge Valdes Vasquez p/k/a Dimelo Flow
44.  José Álvaro Osorio Balvín p/k/a J Balvin
45.  Joshua Christian Nanai p/k/a Jawsh 685
46.  Jan Carlos Ozuna Rosado p/k/a Ozuna
47.  Juan Carlos Salinas Jr. p/k/a Play (collectively Play-N-Skillz)
48.  Juan G. Rivera Vásquez p/k/a Gaby Music
49.  Julio Alberto Cruz García p/k/a Casper Mágico
50.  Julio Manuel González Tavárez p/k/a Lenny Tavárez
51.  Julio Ramirez Equia p/k/a Reik
52.  Justin Bieber
53.  Justin Rafael Quiles Rivera p/k/a Justin Quiles a/k/a J Quiles
54.  Kevin Mauricio Jimenez Londono p/k/a Kevin ADG
55.  Kobalt Music Publishing America, Inc.
56.  Kobalt Music Publishing Ltd.
57.  Larissa de Macedo Machado p/k/a Anitta (erroneously named as "Larissa de Marcedo Machado p/k/a Anitta" in the SCAC)
58.  Luian Malavé Nieves p/k/a DJ Luian (erroneously named as "Luian Malave p/k/a DJ Luian" in the SCAC)
59.  Luis Alfonso Rodríguez López-Cepero p/k/a Luis Fonsi
60.  Luis Angel O'Neill Laureano p/k/a O'Neill
61.  Luis Antonio Quiñones García p/k/a Nio Garcia
62.  Mad Decent Protocol LLC
63.  Mad Decent Publishing, LLC
64.  Manuel Turizo Zapata p/k/a Manuel Turizo
65.  Marcos D. Pérez p/k/a Sharo Towers a/k/a Sharo Torres
66.  Marcos Masis p/k/a Tainy
67.  Martha Ivelisse Pesante Rodriguez p/k/a Ivy Queen
68.  Mauricio Alberto Reglero Rodríguez p/k/a Mau (Mau y Ricky)
69.  Mauricio Rengifo p/k/a El Dandee (erroneously named as "Maurivio Rengifo p/k/a El Dandee" in the SCAC)
70.  Michael Egred Mejia p/k/a Mike Bahia
71.  Ricardo Andres Reglero Rodriguez p/k/a Ricky (Mau y Ricky)
72.  Miguel Andrés Martínez Perea p/k/a Slow Mike
73.  Natalia Amapola Alexandra Gutiérrez Batista p/k/a Natti Natasha

74. Nick Rivera Caminero p/k/a Nicky Jam
75. Oladayo Olatunji p/k/a Dyo
76. Orlando Javier Valle Vega p/k/a Chencho Corleone
77. Oscar Edward Salinas p/k/a Skillz (collectively Play-N-Skillz)
78. Pablo Arevalo Llano
79. Paulo Ezequiel Londra Farías p/k/a Paulo Londra
80. Peermusic III, Ltd.
81. Pulse 2.0, LLC (erroneously named as "Pulse Records, Inc." in the SCAC)
82. Ramón Luis Ayala Rodríguez p/k/a Daddy Yankee
83. Raúl Alejandro Ocasio Ruiz p/k/a Rauw Alejandro
84. Randy Malcom Martinez p/k/a Gente De Zona
85. Rebbeca Marie Gomez p/k/a Becky G
86. Rodney Sebastián Clark Donalds p/k/a El Chombo
87. Rosalía Vila Tobella p/k/a Rosalía (erroneously named as "Rosalia Vila I Tobella p/k/a Rosalia" in the SCAC)
88. Salomón Villada Hoyos p/k/a Feid
89. Sebastián Obando Giraldo p/k/a Sebastián Yatra
90. Silvestre Francisco Dangond Corrales p/k/a Silvestre Dangond
91. Solar Music Rights Management Ltd.
92. Sony Music Entertainment d/b/a Ultra Music
93. Sony Music Entertainment US Latin, LLC
94. Sony Music Publishing, LLC
95. Sony/ATV Music Publishing Ltd.
96. Stephanie Victoria Allen p/k/a Stefflon Don
97. The Royalty Network, Inc.
98. Thomas Wesley Pentz p/k/a Diplo
99. Ultra Records, LLC
100. UMG Recordings, Inc. d/b/a Geffen Records d/b/a Machette Records d/b/a UMLE
101. Universal Music Publishing, Inc.
102. Vydia, Inc.
103. Warner Chappell Music Inc.
104. Xavier Semper (collectively p/k/a Mambo Kingz)
105. Isolation Network d/b/a Ingrooves
106. Kemosabe Records, LLC
107. Gabriel Pizarro p/k/a Lennox

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

   I.    INTRODUCTION ..........................................................................1

      A.   Relevant Background................................................................1

      B.   Plaintiffs' Efforts to Expand the Claim In Their SCAC....................4

   II.   LEGAL STANDARD ......................................................................7

   III.  ARGUMENT..............................................................................9

      A.   Plaintiffs' Claimed "Fish Market Elements" are
         Unprotectable as a Matter of Law............................................9

      B.   Legal Framework for the Extrinsic Test ......................................9

      C.   Legal Framework for Originality/Protectability Phase.....................10

      D.   The Claimed "Fish Market Elements" and the Claimed
         Combination of Elements In "Fish Market" are Not
         Original or Protectable ........................................................11

         1.   *"Fish Market Elements" 1 and 2—the primary
            rhythmic elements claimed by Plaintiffs—are a
            commonplace centuries-old habanera rhythm or a
            commonplace "Surf Beat," which in either case long
            predates "Fish Market."*..............................................11

            a.   A habanera rhythm is not original or protectable...................11

            b.   A "Surf Beat" or "Girl Group Beat" is not original
                or protectable ..........................................................13

         2.   *The Hi-Hat, Tom and "Synth Bass" in "Fish Market"
            (Elements 3, 5, and 7) Double the Kick and Are Not
            Additional Rhythmic Elements*....................................14

            a.   "Fish Market Element" 3—A hi-hat playing a one
                bar pattern together with the programmed kick on
                beats one to four is not original or protectable.................15

i

b. "Fish Market Element" 5 – A synthesized tom playing on beats one and three is not original or protectable...................................................................16

c. "Fish Market Element" 7 – A synthesized b-flat bass note on beats one and three of each bar is not original or protectable.................................................16

3. *"Fish Market Elements" 4 and 6—the timbales and tambourine—are auxiliary elements inaccurately described in the SCAC and not part of the prominent drum rhythm*...................................................................17

a. There is no timbales roll in "Fish Market" as described by Plaintiffs (as part of "Fish Market Element" 6) ................18

b. Plaintiffs' ambiguous "combination of 16th notes" played by the timbales (the other part of "Fish Market Element" 6) is not part of the fundamental rhythmic pattern ...................................................................19

c. "Fish Market Element" 4—A tambourine playing through the entire bar with a combination of 8th and 16th notes— is not original or protectable .............................21

4. *The combination of the "Fish Market Elements" is ill-defined, and not original or protectable*...................................23

E. Plaintiffs Have Not Identified a Protectable Selection and Arrangement of "Fish Market Elements" ...........................................25

1. Plaintiffs have neither sufficiently identified the elements in the claimed original "combination," nor demonstrated that any elements were selected and arranged in a way that is original and protectable...................................................................25

2. Even if Plaintiffs had identified a particular selection and arrangement, the elements are not sufficiently numerous and the selection and arrangement is not original enough to be protectable...................................................................27

IV. CONCLUSION...................................................................30

1

# **TABLE OF AUTHORITIES**

2

**PAGE(s)**

3

# **CASES**

4

5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................ 7, 8

6

7

*Apple Comput., Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) .......................................................... 10

8

9

*Banks v. Mortimer*,
   620 F. Supp. 3d 902 (N.D. Cal. 2022) ............................................ 6

10

11

*Beyond Blond Prods., LLC v. Heldman*,
   479 F. Supp. 3d 874 (C.D. Cal. 2020), *aff'd sub nom. Beyond*
   *Blond Prods., LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL
   1101756 (9th Cir. Apr. 13, 2022) .................................................. 29

12

13

*California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*,
   818 F.2d 1466 (9th Cir. 1987) ........................................................ 8

14

15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................ 8

16

17

*Cottrill v. Spears*,
   No. 02-cv-3646 (BMS), 2003 WL 21223846 (E.D. Pa. May 22, 2003),
   *aff'd,* 87 F. App'x 803 (3d Cir. 2004) ........................................... 29

18

19

*Gray v. Hudson*,
   28 F.4th 87 (9th Cir. 2022) ...................................................*passim*

20

21

*Harper v. Wallingford*,
   877 F.2d 728 (9th Cir. 1989) ........................................................... 8

22

23

*Hopkins v. Bonvicino*,
   573 F.3d 752 (9th Cir. 2009) ........................................................... 8

24

25

*Johannsongs-Publ'g Ltd. v. Lovland*,
   No. CV 18-10009-AB (SSX), 2020 WL 2315805 (C.D. Cal. Apr.
   3, 2020) (Birotte, J.), *aff'd*, No. 20-55552, 2021 WL 5564626 (9th
   Cir. Nov. 29, 2021) .......................................................... 2, 10, 15, 26

26

27

28

iii

*Kiewit Power Constructors Co. v. City of Los Angeles by & through*
    *Dep't of Water & Power*,
    No. CV 16-02590-AB, 2018 WL 5902591 (C.D. Cal. May 22, 2018)
    (Birotte, J.)................................................................................................8

*Morrill v. Stefani*,
    338 F. Supp. 3d 1051 (C.D. Cal. 2018)............................................29

*Newton v. Diamond*,
    204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd*, 388 F.3d 1189 (9th
    Cir. 2004)......................................................................................15

*Nichia Corp. v. Feit Elec. Co., Inc.*,
    No. CV 20-359-GW-EX, 2022 WL 18284292 (C.D. Cal. Dec. 9, 2022)............8

*Peters v. West*,
    776 F. Supp. 2d 742 (N.D. Ill. 2011), *aff'd* 692 F.3d 629 (7th Cir. 2012).........29

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018).......................................................9, 10

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020)......................................................*passim*

*Smith v. Weeknd*,
    No. 19-cv-2507 (PA), 2020 WL 4932074 (C.D. Cal. July 22, 2020),
    *aff'd sub nom. Clover v. Tesfaye*, No. 20-55861, 2021 WL 4705512
    (9th Cir. Oct. 8, 2021) ................................................................29

*Structured Asset Sales, LLC v. Sheeran*,
    120 F.4th 1066 (2d Cir. 2024)......................................................28

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006).........................................................6

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018).......................................................1

**<u>STATUTES AND RULES</u>**

Fed. R. Civ. P. Rule 26.............................................................7

Fed. R. Civ. P. Rule 56(a).........................................................7

1

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>[3]

2

   The PC Defendants submit this memorandum of law in support of their motion

3

for summary judgment on the remaining claims in Plaintiffs' SCAC.

4

### I.    <u>INTRODUCTION</u>[4]

5

### A.    Relevant Background

6

   The SCAC claims that some 160 or more Defendants and between 1,821 to

7

3,600 compositions and/or recordings have copied a drum pattern purportedly

8

present in the composition and recording of "Fish Market," the composition of

9

"Dem Bow" and the recording of "Pounder Dub Mix II" ("Pounder") (together,

10

"Plaintiffs' Claimed Works").  (SCAC ¶¶ 187-199, 648.)[5]  As shown below and in

11

the accompanying reports of Defendants' experts, the drum pattern elements

12

claimed by Plaintiffs, individually and in combination, exist in numerous works of

13

prior art (and Plaintiffs' experts were directed to ignore prior art, precisely because

14

it compels dismissal of Plaintiffs' claims).  Once those preexisting elements and

15

combinations are filtered out, as is required, there is nothing remaining that is

16

protectable and summary judgment at this phase is proper.

17

   With thousands of works at issue, each requiring individual evidence and

18

determination of access and wrongful copying—creating a massive burden on the

19

Court—the parties (and the Court) agreed on a case schedule with a common

20

---

21

[3] Unless otherwise noted, all emphases herein are supplied, and all internal citations

22

and quotations are omitted.

[4] The PC Defendants respectfully refer the Court to the concurrently filed Statement

23

of Uncontroverted Facts for a detailed procedural history and factual background.

24

[5] These works were registered for copyright protection nearly 40 years after their

25

creation and decades after Plaintiffs were aware of the alleged infringements they
claim here.  Plaintiffs do not own the "Dem Bow" sound recording or the "Pounder"

26

musical composition.  There is a material difference between copyright protection

27

for musical recordings and compositions, *see, e.g., Williams v. Gaye*, 895 F.3d
1106, 1121 (9th Cir. 2018), but the SCAC conflates the two.

28

1   "gating" issue to be addressed and determined before reaching issues concerning
2   individual Defendant works. (Administration Order, Dkt. 143.) That "gating"
3   issue is essentially the first half of the "extrinsic test." It focuses solely on the
4   elements (or combination of elements) in Plaintiffs' works that Plaintiffs claim
5   have been infringed to assess whether they "are original and protectable under
6   copyright law." (Dkt. 143.)[6] The "gating" issue does not ask whether Plaintiffs'
7   works, as a whole, were "independently created" and have a minimum amount of
8   creativity, a low bar inquiry irrelevant to the "extrinsic test."

9        Instead, as this Court has recognized (and the Ninth Circuit has confirmed), the
10  "gating" inquiry focuses on whether and to what extent the elements or
11  combination of elements Plaintiffs claim are infringed exist in prior art and requires
12  the filtering out of those elements and combinations claimed by Plaintiffs that exist
13  in prior art and/or are commonplace and therefore cannot be claimed exclusively
14  by them. *See Johannsongs-Publ'g Ltd. v. Lovland*, No. CV 18-10009-AB (SSX),
15  2020 WL 2315805, at *3 (C.D. Cal. Apr. 3, 2020) (Birotte, J.) ("filter[ing] out
16  unprotectable prior art elements . . . is the foundation of the extrinsic test"), *aff'd*,
17  No. 20-55552, 2021 WL 5564626 (9th Cir. Nov. 29, 2021) ("filter[ing] out
18  similarities that are attributable to prior art [is] required under the extrinsic test").

19  _____

20  [6] The parties' Stipulation (Dkt. 142), was explicit that the entire purpose of the
21  "phased case administration plan" ultimately adopted by the Court (Dkt. 143) was
    to "streamline the matter, and make the case more efficient for both the Court and
22  the parties" by first considering and determining only the "common threshold
23  question" of "whether the allegedly infringed works (and/or portion(s) thereof) are
    original or otherwise protectable under copyright law." This approach potentially
24  avoids litigating "individual issues with respect to the claim that over 1,700 separate
25  works infringe on Plaintiffs' rights in their claimed works which, on an individual
    basis . . . may require, *inter alia*, evidence analyzing each work separately and
26  comparing to Plaintiffs' claimed works for purposes of determining the issues of
27  both access by the defendants associated with each individual work and whether
    each individual work is substantially similar to Plaintiffs' works."

28

Only if anything remains would the case continue to the next phase, which would focus on only those Defendants' works, if any, which contain elements or combination of elements that can be claimed exclusively by Plaintiffs.

As explained in the PC Defendants' accompanying *Daubert* motions, Plaintiffs previously admitted that the relevant inquiry in this phase requires reference to prior art and distinguishing between protectable and unprotectable elements: "***the originality and protectability inquiries involve looking at works within the implicated musical landscapes in relation to other works within those landscapes to see how the expression at issue is treated***," and "***whether the elements common between the allegedly infringing works and the Subject Works are commonplace, and thus unprotectable as a matter of law***." (Dkt. 609 at 14.)

However, fully aware, as documented in Defendants' expert reports, that the percussive rhythmic pattern they claim to own exists in countless prior works and musical genres, Plaintiffs quickly jettisoned their correct (but now inconvenient to them) identification of the "gating" inquiry in this phase and provided their "experts" with an inapposite definition of "originality" designed to avoid any consideration of prior art. That definition required the experts to opine only as to whether Plaintiffs' Claimed Works were "independently created" and, ***as a whole*** "possess at least some minimal degree of creativity."[7]

Employing the inapposite definition dictated by Plaintiffs' counsel, Plaintiffs' "experts" purposefully ignored prior art and issued opinions concluding that each of Plaintiffs' Claimed Works was "independently created" (an issue as to which

---

[7] Plaintiffs provided their experts with the following definition: "Original, as the term is used in copyright, means only that the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity." (SUF 167.) This definition, noted by this Court, was indeed applicable at the motion to dismiss stage but it is inapplicable to the extrinsic test (or the prong of the extrinsic test) that is applicable in this phase.

they have no personal knowledge) and, as a whole, possesses a "minimal degree of creativity," and is therefore "original." ***Prior art did not enter into their inquiry at all***. In fact, two of Plaintiffs' experts did not examine and/or disclaimed reliance on prior art, and one claimed he had looked for prior art but provided no details about his search (other than it was of his "own memories") or analysis (providing no information about either his methodology or the material he supposedly considered and rejected *in toto*). Plaintiffs' experts pointedly avoided addressing the precise inquiry that Plaintiffs themselves previously admitted was required: ***"whether the elements common between the allegedly infringing works and the Subject Works are commonplace, and thus unprotectable as a matter of law."*** (Dkt. 609 at 14.) They were directed to avoid any examination of prior art as if it were the plague, making their reports utterly useless for this phase of the case.

In contrast, the PC Defendants' experts closely examined prior art and compared it both to the individual elements claimed by Plaintiffs and to the combination of elements. As documented in their reports, the rhythmic elements claimed exclusively by Plaintiffs exist—alone and in combination—in countless works pre-dating Plaintiffs' Claimed Works. Because Plaintiffs' experts were instructed to not consider prior art, their reports (and rebuttal reports) provide nothing to contradict the opinions of the PC Defendants' experts.

**B.    Plaintiffs' Efforts to Expand the Claim In Their SCAC**

The SCAC, which is the governing pleading, claims that Plaintiffs own the following elements, sometimes referred to by Plaintiffs as the "Fish Market Elements," in some unstated combination: (1) a programmed kick playing on beats one to four; (2) a snare pattern containing, among other things, "ghost notes" on the third and eleventh sixteenth notes of each bar; (3) a hi-hat playing the same pattern as the programmed kick (*i.e.*, on beats one to four); (4) a tambourine playing through the entire bar with a combination of 8th and 16th notes; (5) a synthesized

"tom" playing on beats one and three (*i.e.*, duplicating every second note of the kick); (6) timbales that play a roll at the end of every other bar and a combination of 16th notes over the pattern; and (7) a synthesized Bb (b-flat) bass note playing the same pattern as the "tom" (*i.e.*, on beats one and three, and also duplicating every second note of the kick). (SCAC ¶¶ 188, 648.) The SCAC does not claim anything else in Plaintiffs' Claimed Works is original and protectable or infringed by Defendants' works. (SCAC ¶¶ 180, 187-199, 648.)[8]

Although Plaintiffs claim in the SCAC that "all" of the above elements "in the same configuration" are "copied" in Defendants' works (SCAC ¶ 648), for the few works where the SCAC provides transcriptions purporting to identify the alleged similarities in Defendants' works, the only alleged similarities identified are a centuries-old, admittedly generic habanera ("boom-ch-boom chick") rhythm (played on a kick and snare) that has existed in African, Caribbean, and American music long before Plaintiffs' Claimed Works and is considered a musical building block. And even when considering the additional, softer snare hit on the third and eleventh sixteenth notes of each bar in "Fish Market" (Plaintiffs' "ghost note"), the kick and snare pattern remains a generic building block that the PC Defendants' experts and Plaintiffs' experts agree comes from 1960s surf rock/girl group music.

Precisely because prior art confirms that the fundamental rhythm Plaintiffs' claim (whether with or without the "ghost" note) is commonplace, Plaintiffs' experts were also plainly instructed to invent additional "elements" that nowhere are referenced in the SCAC. But Plaintiffs' experts ***cannot even agree on what elements are included in their newly-manufactured "original" "combination,"*** or even on the number of elements included. Indeed, each of them included

---

[8] As discussed below, the supposed "Fish Market Elements" are not all embodied in "Fish Market." Instead, Plaintiffs have mixed and matched elements from the "Pounder" recording with elements in "Fish Market."

elements **that are not elements of a musical composition but only of a sound recording,** specifically claiming that the choice of instrument sounds used (which were primarily produced by a drum machine) or their "timbre" or sound were somehow part of a compositional copyright.  As a matter of law, they are not. *See, e.g., Gray v. Hudson*, 28 F.4th 87, 99 (9th Cir. 2022) ("[T]he choice of a particular instrument [] to play a tune relates to the performance or recording of a work…"). The *post hoc* attempted expansion of Plaintiffs' drum pattern even included elements that appear only in the "Pounder" recording but not in "Fish Market." And in identifying elements of their claimed (but differing) allegedly original "combinations," Plaintiffs' experts relied on "stems" purportedly taken from the "Fish Market" recording which were, in fact, not "stems" from "Fish Market," **but entirely new recordings** made in 2021 by Plaintiffs and misrepresented as "stems." One expert even added as elements amorphous concepts such as "feel" and "Jamaicanness" (which even he could not define).

In opining that all that is original to Plaintiffs' Claimed Works is a "combination" of elements, several of which are nowhere mentioned in the SCAC (and some of which are not compositional elements), Plaintiffs' experts  attempt to unilaterally and improperly "amend" what Plaintiffs have claimed in the SCAC through expert reports or in anticipation of this motion, which the law prohibits. *See, e.g., Banks v. Mortimer*, 620 F. Supp. 3d 902, 917 n.3 (N.D. Cal. 2022) ("It is well-established that plaintiffs must adequately allege the facts underlying their claims and may only add new theories of liability by moving to amend their pleadings. **Summary judgment is simply not the place for new theories**." (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000)); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("The necessary factual averments are required with respect to each material element of the underlying legal theory . . . .  Simply put, summary judgment is not a procedural

second chance to flesh out inadequate pleadings."). Plaintiffs' claim in the SCAC is clearly and unambiguously limited to the drum rhythm in "Fish Market," whether described (as it is in the SCAC) as seven combined rhythmic "elements" (not all of which actually exist in "Fish Market"), or as one single rhythm played primarily on a drum machine rather than an analogue drum "kit."

In any event, even ignoring, for the moment, the impropriety of mixing and matching elements from different works, conflating recordings and compositions, creating fake "stems," and trying to supplement the SCAC with "new" elements, however Plaintiffs' "combination" of elements is characterized, they have submitted **no** evidence to demonstrate that it is protectable, in part because they have studiously ignored prior art.[9]

There is no material dispute that the elements Plaintiffs claim in the SCAC to be original and infringed by Defendants' works are neither original nor protectable, either individually or in combination.  Summary judgment is appropriate.

## II.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(a).  A fact is material when the resolution of the fact might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the

---

[9] Only one of Plaintiffs' proffered experts (Dr. Kenneth Bilby) even mentioned or expressed reliance on having conducted a prior art search in his report.  But as shown in the accompanying *Daubert* motion, Bilby provided no information concerning the recordings he considered or the methodology he used to select for review or to reject or accept (and he accepted none) recordings as prior art, in violation of Rule 26.  And his "search," if he did one, was completely flawed as he required any prior art to "sound like" the "Fish Market" recording (*i.e.*, even if the rhythm was the same, if it was not played on the same instruments with the same timbre, he rejected it).

nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

Courts view the facts in the light most favorable to the nonmoving party. *See Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *id.* at 322 (summary judgment is mandated where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Further, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987); *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989) ("[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.). Importantly, "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment." *Nichia Corp. v. Feit Elec. Co., Inc.*, No. CV 20-359-GW-EX, 2022 WL 18284292, at *3 (C.D. Cal. Dec. 9, 2022); *Kiewit Power Constructors Co. v. City of Los Angeles by & through Dep't of Water & Power*, No. CV 16-02590-AB (GJSx), 2018 WL 5902591, at *4 (C.D. Cal. May 22, 2018) (Birotte, J.) ("[a] conclusory expert declaration, on its own, cannot create an issue of fact to avoid summary judgment.").

# III.   ARGUMENT

## A.   Plaintiffs' Claimed "Fish Market Elements" are Unprotectable as a Matter of Law.

Plaintiffs' copyright infringement claim requires them to show: (1) that they own valid copyrights in Plaintiffs' Claimed Works; and (2) that Defendants copied *protected* aspects of the works.  *See Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).  The sole focus of this phase is on "whether Plaintiffs' Claimed Works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law." (Dkt. 143.)  As discussed herein, the inquiry in this phase involves only the first part of the extrinsic test: are the elements or combination of elements in Plaintiffs' Claimed Works that Plaintiffs claim have been infringed original and protectable, or do they exist in prior art (and/or are they otherwise commonplace or unprotectable) and hence cannot be exclusively owned by Plaintiffs?

## B.   Legal Framework for the Extrinsic Test.

"The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'"  *Skidmore*, 952 F.3d at 1064 (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)).[10]  To prove unlawful appropriation, a plaintiff must show that the similarities between the two works are "substantial" and *involve "protected elements"* in plaintiff's works.  *See Gray*, 28 F.4th at 96; *Skidmore*, 952 F.3d at 1064.

The Ninth Circuit uses both an "extrinsic" and an "intrinsic" test to determine substantial similarity.  *Gray*, 28 F.4th at 97.  "The extrinsic test assesses the objective similarities of the two works, *focusing only on the protectable elements of the plaintiff's expression*."  *Rentmeester*, 883 F.3d at 1118; *Gray*, 28 F.4th at 96

---

[10]  In *Skidmore*, the Ninth Circuit overruled *Rentmeester* solely to the extent *Rentmeester* endorsed the "inverse ratio rule."  *Skidmore*, 952 F.3d at 1066. *Rentmeester* otherwise remains good law.

1    (the test requires "breaking the works down into their constituent elements, and

2    comparing those elements for proof of copying as measured by substantial

3    similarity.  Because the requirement is one of substantial similarity to protected

4    elements of the copyrighted work, *it is essential to distinguish between the*

5    *protected and unprotected material in a plaintiff's work*.").

6    **C.    Legal Framework for Originality/Protectability Phase.**

7        Because the extrinsic test for substantial similarity requires the Court to

8    distinguish between "protected and unprotected material in a plaintiff's work, the

9    threshold issue is what—*if anything*"—about the allegedly infringed portions of

10   Plaintiffs' Claimed Works "qualif[y] as original expression that can serve as the

11   basis for a copyright infringement claim." *See Gray*, 28 F.4th 87 at 97; *Skidmore*,

12   952 F.3d at 1070 (substantial similarity focuses on "the protectible elements,

13   standing alone . . . and disregard[s] the non-protectible elements").

14       To satisfy the portion of the extrinsic test applicable in this phase, Plaintiffs

15   must identify, within their own works, the sources of the alleged similarities

16   between their works and the Defendants' works. *Apple Comput., Inc. v. Microsoft*

17   *Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).  Then, using analytic dissection and

18   expert testimony, the Court must determine whether any of the allegedly similar

19   features are protectable under copyright law. *Id.*; *Rentmeester*, 883 F.3d at 1118

20   (explaining that *before comparing the plaintiff's and defendant's works, "the*

21   *court must 'filter out' the unprotectable elements of the plaintiff's work—*

22   primarily ideas and concepts, material in the public domain, and *scènes à faire*

23   (stock or standard features that are commonly associated with the treatment of a

24   given subject)"); *Johannsongs*, 2020 WL 2315805, at *3 (Birotte, J.).  This phase

25   thus necessarily involves both the examination of prior art to identify what in

26   Plaintiffs' Claimed Works is not protectable, and filtering out what is not

27   protectable.  But that is precisely what Plaintiffs directed their experts ***not*** to do.

28

**D.    The Claimed "Fish Market Elements" and the Claimed Combination of Elements In "Fish Market" are Not Original or Protectable.**

Plaintiffs' seven "Fish Market Elements" individually and in combination, exist in prior art and are not protectible.

**1.    *"Fish Market Elements" 1 and 2—the primary rhythmic elements claimed by Plaintiffs—are a commonplace centuries-old habanera rhythm or a commonplace "Surf Beat," which in either case long predates "Fish Market."***

"Fish Market Elements" 1 and 2 are the most prominent rhythmic elements in the drum pattern.  (SUF 72.)  "Fish Market Element" 1 is a kick drum sound on beats one, two, three, and four—well-known as "four on the floor."[11]  (SUF 73–74.)  "Fish Market Element 2" is a snare with so-called "ghost notes"[12] on the third and eleventh sixteenth notes of each bar, complementing a snare on the fourth, seventh, twelfth, and fifteenth sixteenth beats.  (SUF 76.)

**a.    A habanera rhythm is not original or protectable.**

Plaintiffs' snare pattern (without the "ghost notes") is a commonplace 3+3+2 rhythm, known as a "tresillo."  (SUF 79.)  The combination of the 3+3+2

---

[11] While Plaintiffs refuse to admit that this musical building block is not original to Plaintiffs and is not protectable under copyright law, their proffered experts have admitted that this element is commonplace.  (SUF 75.)  As such, the Court should find that "Fish Market Element" 1 is not protectable standing alone.

[12] A "ghost" note is a quieter beat usually played on the snare drum.  (SUF 47.)  As Plaintiffs' own proffered expert (Finell) testified, playing a note loud or soft (*i.e.*, quieter) is a performance element, not a compositional element.  (SUF 48, 49, 77.)  While the snare pattern in "Fish Market" includes "ghost notes," the snare pattern in the "Pounder" recording does not.  (SUF 78.)  Plaintiffs' intentional mixing and matching of elements that do not appear in all of Plaintiffs' Claimed Works is plainly intended to expand the number of elements they claim are part of their "combination."   But Plaintiffs cannot create a combination by adding together elements contained in disparate works which do not appear together in any of the works.  Regardless, the inclusion or exclusion of the "ghost notes" in the snare pattern is immaterial, as both snare patterns are unoriginal.

snare with the four-on-the-floor kick drum, produces the centuries-old, admittedly-generic, and commonplace "boom-ch-boom-chick" beat which is the most identifiable and fundamental part of the "Fish Market" drum pattern, commonly referred to as a habanera rhythm.   (SUF 80)[13]

The habanera rhythm (which dates back to at least the 19th Century) is one of the most common core rhythmic patterns in Afro-Cuban music.  (SUF 81.)  When modern musicians refer to the "dembow beat," "dembow riddim," or "dembow," it is simply a shorthand reference to (or another name for) a habanera rhythm, played on a kick and snare.  (SUF 82.)    Even Judith Finell (Plaintiffs' sole musicology expert), admitted that, in "Fish Market," "if you drop out the ghost notes, you've got a habanera rhythm."  (SUF 83.)

The habanera rhythm, which is the core rhythmic pattern in "Fish Market," originates from the African continent, and was retained in the musical practices of enslaved Africans in the "New World," including Jamaica.  (SUF 84.)  The rhythm became a significant feature of the music performed during Revivalism/Pocomania ceremonies and in the Pentecostal churches in Jamaica throughout the twentieth century.  (SUF 85.)  In multiple published interviews, Plaintiffs have admitted that "Fish Market" was influenced by Pentecostal revival music and was intended to be Pentecostal revival music "digitized."  (SUF 86-88, 171-177.)  In a 2005 interview, Kenneth Bilby (one of Plaintiffs' retained experts) asked Plaintiff Cleveland Browne whether the "Fish Market" rhythm "ha[d] elements of things that [Browne] heard," and Browne responded: "*It did have elements of things that I heard in church*."  (SUF 87.)  Wycliffe Johnson (his estate is a plaintiff) also told Bilby in that interview that Pentecostal music inspired him in making "Fish Market":

---

[13] Again, this generic "boom ch-boom-chick" habanera is virtually the only similarity that Plaintiffs' SCAC identifies between Plaintiffs' Claimed Works and any of Defendants' works.

I live like near the church that it was taking place. So this thing keep on all night. So I went to Clevie and I said, Clevie, that church next door playing this something. I can't sleep at nighttime, just getting me crazy. I start to get angry. Then I don't know what happened. A voice said to me, say, listen what they're playing. And I started listening. I said what is on that music. *So I run to Clevie and said, Clevie, let us try to create a new thing, a Poco beat.*

(SUF 172.)[14]

There is no dispute that **"Fish Market's"** habanera rhythm exists in extensive prior art (the PC Defendants' experts identified at least twenty, and there are many others) and must be filtered out of Plaintiff's Claimed Works.  (SUF 89-90.)

### b.    A "Surf Beat" or "Girl Group Beat" is not original or protectable.

If one considers the softer snare hits (**"ghost notes"**) as an essential part of the rhythmic pattern of Plaintiffs' Claimed Works, it is simply an **"offbeat"** accent of beats one and three (*i.e.*, the **"third and eleventh"** sixteenth notes of the bar).  (SUF 91.)  Instead of being a commonplace **"habanera,"** the combination of the four-on-the-floor kick and the snare is a commonplace **"oom papa, oom pah"** beat referred to as the **"Surf Beat,"** (or **"Girl Group Beat"**).  (SUF 92.)  As with the **"habanera,"** this **"Surf Beat"** kick/snare combination exists in multiple prior art works and was commonplace in popular music decades before **"Fish Market"** was created.[15]  (SUF 93.)  Indeed, even without examining prior art, Finell knew that

---

[14] That "Fish Market" employed a "Poco beat" is further confirmed by the fact that the vocal version of the track is titled ***"Poco Man Jam."***  (SUF 25.)

[15] As will be shown below, because the tom, hi-hat, and bass duplicate the time-keeping beats of the kick (the hi-hat on all four beats and the tom and bass on beats one and three), while they provide additional instruments, they provide no additional rhythm and are part of the same "habanera" or "surf beat" combination that is unoriginal and unprotectable and must be filtered out.

the kick/snare combination in Plaintiffs' Claimed Works, with or without the ghost note, **"[i]s not original by itself as a rhythm."** (SUF 95.)[16]

Accordingly, considered alone or in combination, the kick and snare elements are commonplace musical building blocks that are unprotectable with or without the **"ghost"** notes and must be excluded from Plaintiffs' claims in this case.

## 2. *The Hi-Hat, Tom and "Synth Bass" in "Fish Market" (Elements 3, 5, and 7) Double the Kick and Are Not Additional Rhythmic Elements*

Knowing that a "selection and arrangement" claim requires "numerosity," Plaintiffs have attempted to add elements by subdividing "elements" by placing different instruments—virtually all of which are just drum machine or other synthesized sounds—on separate staffs. (SUF 96.) They do so even though they know full well that the choice of instruments (or instrument sounds) is not compositional, and that the hi-hat, tom and bass synth sounds simply duplicate (*i.e.*, "double") the rhythm provided by the kick drum sound, providing no additional rhythm. (SUF 97-99.) In fact, Finell, conceded both points. (SUF 100.)

As set forth in the PC Defendants' expert reports, it is musicologically indisputable that "doubling" the hi-hat, tom, and bass (*i.e.*, playing those sounds on beats that are already being played by the kick drum) does not change the commonplace habanera or "Surf Beat" rhythm employed in "Fish Market." (SUF 99.) Again, Finell admits that these instruments (or instrument sounds) ***do not create any different or additional rhythm*** from what is played on the kick and snare. (SUF 100.) And, moreover, the selection of hi-hat, tom and synth bass sounds to "double" the existing rhythm is not a compositional element but, rather,

---

[16] Although playing a note loud or soft is a performance element, not a compositional element, (SUF 77), it bears noting that at least one of Defendants' experts' prior art examples ("Mr. Rebel") admittedly also contains (starting at 0:29) a "surf beat" with softer "ghost" notes in the same place. (SUF 94.)

an element of the performance or the recording of a composition. (*Id.*) *See also, e.g.*, *Gray*, 28 F.4th at 99 ("[T]he choice of a particular instrument [] to play a tune relates to the performance or recording of a work….").

Thus, the hi-hat, tom and bass are ***not*** additional rhythmic "elements" of Plaintiffs' drum pattern (for numerosity purposes, or otherwise).

### a. "Fish Market Element" 3—A hi-hat playing a one bar pattern together with the programmed kick on beats one to four is not original or protectable.

As part of their "subdivision" of elements gambit, Plaintiffs include the hi-hat playing the same four beats as the kick drum. (SUF 101.) But, again, doubling an existing beat with a different instrument may matter for a sound recording copyright (insofar as it potentially changes the sound), but it does not change the rhythm contained in the composition, which remains the same. (SUF 102-103.) *Cf. Newton v. Diamond*, 204 F. Supp. 2d 1244, 1258 (C.D. Cal. 2002), *aff'd*, 388 F.3d 1189 (9th Cir. 2004) (distinguishing between "elements protected by [the plaintiff's] copyright over the musical composition" at issue and "those attributable to his performance of the piece or the sound recording").

Thus, the hi-hat is filtered out as it does not add to or change the rhythm provided by the kick and snare combination. (SUF 104.) In fact, Finell acknowledges that the hi-hat (along with other percussive elements discussed below) is ***"completely duplicative"*** and thus excludes it from her transcription of the "Fish Market" rhythmic pattern. (SUF 105.) Indeed, she testified that she does not consider the hi-hat one of the "essential elements" of the "Fish Market" drum pattern (SUF 106), and Plaintiffs' "expert" (really, friend) Peter Ashbourne-Firman ("PAF") admitted that use of the hi-hat in this pattern is commonplace. (SUF 107.)

Desperate to maximize their "elements," Plaintiffs stubbornly insist that the hi-hat is somehow original to Plaintiffs. (SUF 108.) On the contrary, it is "the

simplest and perhaps the most commonplace musical rhythm possible," with countless examples of prior art.  (SUF 109.)

### b.    "Fish Market Element" 5 – A synthesized tom playing on beats one and three is not original or protectable.

Plaintiffs also try to count the tom as an additional rhythmic element, despite the fact that it simply duplicates the time-keeping rhythm of the kick drum, playing on the one and three (of the four beats). (SUF 110.)  Again, it is simply an additional instrument—it provides no additional rhythmic element. (SUF 111-112.)  Indeed, beats one and three are the strongest beats in popular music and playing on those beats is commonplace.  (SUF 113.)  A tom playing on beats one and three existed in musical works long before Plaintiffs created "Fish Market."  (SUF 114.)

### c.    "Fish Market Element" 7 – A synthesized b-flat bass note on beats one and three of each bar is not original or protectable.

A third "instrument" that doubles the time-keeping beat of the kick drum on beats one and three, which Plaintiffs try to convert into a separate element, is the synth bass (an electronic bass sound).  The bass provides no additional rhythm to that already provided by the kick (and hi-hat and tom). (SUF 115-116.)[17]

As with the tom, a bass hitting on beats one and three is one of the most commonplace and generic choices possible for a bass part.  (SUF 117-118.)  The bass, tom and hi-hat should be filtered out as duplicative of the kick/snare rhythm.

---

[17] Although nowhere claimed in the SCAC, during the deposition of Dr. Wayne Marshall (one of Defendants' experts), Plaintiffs suggested repeatedly that the static pitch of the bass (Bb) might be a harmonic or melodic element.  Dr. Marshall batted this attempt away, noting that a single pitch is rhythmic, not harmonic or melodic, and that it doubled the kick and was not an additional rhythmic element.  (SUF 116.)

### 3. *"Fish Market Elements" 4 and 6—the timbales and tambourine—are auxiliary elements inaccurately described in the SCAC and not part of the prominent drum rhythm.*

Plaintiffs also try to satisfy their numerosity burden by adding two elements that are unconnected and completely auxiliary to the fundamental "Fish Market" rhythm provided by the kick (doubled by the hi-hat, tom and bass) and snare.

One such element is the timbales, which purportedly play both a roll at the end of every other bar and also a combination of 16th notes. But the claimed timbales parts identified in the SCAC do not exist in "Fish Market." Rather, Plaintiffs have pulled the timbales from the "Pounder" recording and combined them with the other elements that exist in "Fish Market" to create a claimed original "combination" that does not exist in any of Plaintiffs' Claimed Works. (SUF 119.) The timbales in "Fish Market" were improvised and are non-repeating. (SUF 120.) As improvised and non-repeating, the timbales are auxiliary to (and not part of) the fundamental "habanera" or "Surf Beat" rhythm of the kick and snare (doubled by the hi-hat, tom and bass). (SUF 121).[18] Plaintiffs are effectively seeking a monopoly over the *idea* of playing *any* auxiliary pattern on a high-frequency percussion instrument over a non-original habanera or "Surf Beat" rhythm. But the

---

[18] Should this case proceed beyond this phase—and, given that the fundamental rhythm is based on only two commonplace elements that are unprotectable, it should not—Plaintiffs are fully aware that virtually *none* of Defendants' works include either the same tambourines or the same improvised timbales parts from "Fish Market." To the extent that those elements were even considered part of a combination claim, Plaintiffs would have to dismiss all, or nearly all, of the Defendants' works (and Defendants) from this case in the next phase.

1  *idea* of playing auxiliary patterns on high-frequency percussion instruments over

2  commonplace rhythms is itself commonplace.  (SUF 123.)[19]

3      The other auxiliary element Plaintiffs claim to be part of their purportedly

4  original rhythmic combination is a tambourine playing a combination of 8th and

5  16th notes.  However, as shown below, in addition to being commonplace, the

6  tambourines in "Fish Market" are so inaudible that Plaintiffs' experts asked for

7  "stems" (tracks lifted from the recording) from "Fish Market" in effort to hear

8  them.  Instead of providing stems taken from the actual "Fish Market" deposit copy

9  (or another publicly available version of that recording), Plaintiffs instead created

10  *new recordings* containing (now audible) tambourine parts and had their experts

11  review and rely on those new recordings, misleadingly labeling them as "stems."

12  (SUF 66-70, 127-129, 146, 150.)  Moreover, the tambourines are so extraneous to

13  the fundamental rhythm of "Fish Market" that they are not included in the

14  "Pounder" recording.   (SUF 130.)  And, in any event, the tambourines are

15  commonplace .  (SUF 152-156.)

16          **a.    There is no timbales roll in "Fish Market" as described by**
               **Plaintiffs (as part of "Fish Market Element" 6)**
17

18      The timbales in "Fish Market" are auxiliary to the fundamental rhythm provided

19  by the kick and snare (doubled by the hi-hat, tom and bass).  (SUF 131.)  Moreover,

20  while Plaintiffs' claim in the SCAC (and their purported transcription) that the

21  combination in "Fish Market" includes timbales that "play a roll at the end of every

22  other bar" (SCAC ¶¶ 180, 188 ("timbale 2")), that is completely false.  (SUF 133.)

23  The deposit copy of "Fish Market" *does not* contain a timbales roll at the end of

24  every other bar.  (SUF 133-134.)  Plaintiffs' claim is limited to what has been

25  ─────────────────
   [19]  One of Plaintiffs' proffered experts, Finell, does not include the timbales in the
26  combination she claims is original in "Fish Market."  Another, Bilby, sometimes
   includes and sometimes excludes the tambourine in his claimed original
27  combination.  (SUF 149.)

28
                                    18

copyrighted.  *Skidmore*, 952 F.3d at 1063 ("The inescapable conclusion is that the scope of the copyright is limited by the deposit copy.").[20]

In fact, Finell admitted there is no timbales roll at the end of every other bar in "Fish Market," instead correctly describing the timbales as "inconsistent" "in where they're placed as well as when they occurred."  (SUF 134.)  And, most importantly, she stated that, ***"because of its inconsistency, [she] didn't feel it was entirely reliable and musicologically honest to include the timbales"*** as part of her transcription of the "Fish Market" drum pattern or her claimed "combination" of "elements" that she opined is original. (SUF 134.)

In other words, Finell agrees that the improvised timbales are ***not*** a part of the fundamental rhythm of "Fish Market" (which again, is the completely commonplace kick/snare combination, doubled by the hi-hat, tom and bass).  As a matter of law, Plaintiffs' combination does not and cannot include a non-existent timbales roll at the end of every other bar.[21]  In any event, even if it existed in "Fish Market" (which it does not), a timbales roll at the end of a bar is completely commonplace and unprotectable. (SUF 137.)

> **b.   Plaintiffs' ambiguous "combination of 16th notes" played by the timbales (the other part of "Fish Market Element" 6) is not part of the fundamental rhythmic pattern**

In addition to the non-existent timbales roll, Plaintiffs also claim that "Fish Market" contains timbales that play "a combination of 16th notes" which is supposedly owned by them. (*See, e.g.*, SCAC ¶ 188 ("timbale 1").)  But again, the

---

[20] Consistent with the (incorrect) SCAC, Plaintiffs' experts also all incorrectly assert that there is a timbales roll at the end of every other bar in "Fish Market" (SUF 132), which is just one of the many flaws warranting exclusion of their testimony.

[21] As noted above, the timbales roll is in the recording of "Pounder"  (SUF 136.) But Plaintiff do not own a compositional copyright in "Pounder."  (SUF 22-23.) Plaintiffs cannot manufacture a combination claim that combines elements from different works, and especially not combining elements in a sound recording with elements in a composition.

SCAC misrepresents the timbales line in "Fish Market" and what they claim to own is entirely generic and unprotectable.

**First**, Plaintiffs do not articulate **when** the timbales supposedly play 16th notes in combination (*i.e.*, they do not identify a particular 16th note timbales rhythm they claim to own), making it an idea instead of an actual element (and, again, the idea of a timbales line is a commonplace element that Plaintiffs cannot claim to own). (SUF 138, 141-143.) **Second**, because the timbales played in "Fish Market" are improvised and varied across the entire work, the transcribed "timbales line 1" in the SCAC is not accurate. (SUF 139-140.) In fact, as Finell admitted, there is no repeating timbales pattern in "Fish Market" as represented in the SCAC. (SUF 140.) **Third**, even the improvised timbales pattern is composed of commonplace idiomatic figures drawn from Caribbean and American Music. (SUF 141.) As Bilby admitted, "Browne [Clevie] decided to play physical timbales live in the studio, improvising various rhythmic phrases and patterns **with a Poco or Jamaican Revival church feel,**" and Bilby acknowledged that he was "not saying that [the timbales] pattern in isolation is necessarily original." (SUF 142.)

In short, the timbales are not accurately represented in the SCAC. Instead, they are improvised and inconsistent. They are not part of a consistent (let alone identified) pattern or combination. Calling the improvised timbales part of the drum pattern is, as Finell admitted, simply not true. Plaintiffs cannot shoehorn the timbales into their claim by substituting the repeating pattern from the "Pounder" recording (as to which Plaintiffs do not own the composition) for the improvised timbales in "Fish Market." At most, the improvised timbales part in "Fish Market" is an idea, not expression, and auxiliary to the fundamental rhythm in Plaintiffs' Claimed Works (which is an unoriginal habanera or "Surf Beat" rhythm).

### c. **"Fish Market Element" 4—A tambourine playing through the entire bar with a combination of 8th and 16th notes—is not original or protectable.**

Plaintiffs claimed tambourine part is also auxiliary to the fundamental rhythm in "Fish Market" (which, again, is an unoriginal habanera or "Surf Beat" rhythm). (SUF 145.)[22]

To begin with, as Finell admitted, the tambourine played in "Fish Market" is virtually inaudible. (SUF 146.)  As a result, Plaintiffs' own experts could not even agree on what the tambourine line in *Fish Market* consists of.  Finell's transcription is different than the transcription in the SCAC (which was apparently prepared by PAF, who is not a musicologist).  (SUF 147.)[23]

Moreover, while the SCAC reflects the tambourine pattern as a sixteenth note pattern that repeats every bar, Finell testified that the pattern expressed in the SCAC is in fact only a "single iteration within a varied tier," *i.e.*, that the pattern does not repeat every bar but varies.[24]  Because Plaintiffs' experts admittedly struggled to hear the tambourines, they were forced to base their opinions (and transcriptions) on "stems" that they requested from Plaintiffs.  (SUF 150, 66-70.)  But they did not get "stems."  They got new, distinct recordings created in 2021 solely for purposes of this litigation by Plaintiff Browne.  (SUF 70.)

---

[22] The auxiliary nature of the tambourine part is confirmed both by Plaintiff's expert Bilby, who sometimes includes and sometimes excludes the tambourine in the combination of elements in "Fish Market" he claims is original," (SUF 149), as well as the fact that they are barely audible.  (SUF 146).  Moreover, and perhaps for that reason, the tambourine part is transcribed inaccurately in the SCAC.  (SUF 144.)

[23] Finell's transcriptions are themselves inconsistent.  (SUF 148.)

[24] Moreover, while Finell's report asserts that the tambourine line (whatever it consists of) exists in all of Plaintiffs' Claimed Works," she conceded at deposition that there are no tambourines in "Pounder."  (SUF 130.)

Plaintiffs' own description of the supposed tambourine pattern is also self-defeating as a claimed element of their compositional "combination."  Plaintiffs allege that "[t]he tambourine has a pattern that includes a unique combination of 16th and 8th beat notes."  (SCAC ¶ 648.)[25] But Plaintiffs' purposefully vague description of the tambourine pattern lacks any identification of *when* the tambourine is supposedly playing the combination of 16th and 8th notes and how it is connected to the fundamental kick and snare rhythm (it is not; it is auxiliary).

In fact, tambourines by their nature almost always play 8th and 16th notes. (SUF 152-154)  Numerous well-known musical works using a tambourine based on 8th and 16th notes existed before "Fish Market." (SUF 152, 155-156.) Further, the generality of Plaintiffs' description of their claimed tambourine pattern, together with their assertion that the pattern is "sometimes played with a substitute high-frequency percussion instrument," indicates that Plaintiffs are claiming that they own rights to the *idea* of playing *any* high-frequency percussion instrument in *any* pattern of 8th or 16th notes.  Plaintiffs cannot possibly exclusively own tambourines (or any other instrument) playing 8th and 16th notes.

---

[25] That same paragraph goes on to allege that this unidentified tambourine pattern "is sometimes played [in the allegedly infringing Defendant Works] with a substitute high-frequency percussion instrument."  (SCAC ¶ 648.)  This again shows the duplicity of Plaintiffs in their claims and theories since it is directly contrary to Plaintiffs' repeated insistence that, for purposes of determining what is "original" in Plaintiffs' Claimed Works, instrument choice purportedly matters. (*See supra*, at p.14.)  Their experts theorized (at least in their reports; Finell later recanted at deposition), contrary to law and music theory, that Steely and Clevie's particular choice of percussion instruments miraculously converted an unoriginal habanera or "Surf Beat" rhythm into something original that they could own and monopolize.  But, for purposes of asserting a claimed infringement, suddenly the instrument choices made by a Defendant do not matter.  Instead, playing *any* 8th or 16th note pattern on *any* "high-frequency percussion instrument" purportedly infringes something that belongs to Plaintiffs.

Plaintiffs' *post hoc* attempt to link this commonplace use of tambourines to the kick and snare combination in effort to satisfy the numerosity requirement cannot create a combination that does not exist in "Fish Market," nor does it entitle Plaintiffs to claim exclusivity over commonplace musical ideas.  The tambourines are an unremarkable auxiliary accompaniment to the "habanera" or "Surf Beat" rhythm of the kick and snare.  It is generic and no different from tambourine patterns found in church music, as well as in gospel, soul, disco, and rock songs that pre-date "Fish Market."  (SUF 156.)

**4.    *The combination of the "Fish Market Elements" is ill-defined, and not original or protectable.***

As discussed above, Plaintiffs have mixed and matched elements from different works in an effort to expand a combination claim that actually consists of two elements only: a time-keeping kick drum (doubled by time-keeping hi-hat, tom and bass) and either a 3+3+2 tresillo snare (which combined with the doubled kick drum, constitutes a commonplace "habanera") or, if the "ghost note" snare hits are considered, an equally commonplace "Surf Beat."

The elements that Plaintiffs claim are: "[1] a programmed kick, [2] snare, and [3] hi-hat playing a one bar pattern; including [4] a tambourine playing through the entire bar, [5] a synthesized 'tom' playing on beats one and three, and [6] timbales that play a roll at the end of every second bar and free improvisation over the pattern for the duration of the song; and [7] a synthesized Bb (b-flat) bass note on beats one and three of each bar, which follows the aforementioned synthesized 'tom' pattern."  (SCAC ¶ 180.)  But because **this supposed combination does not actually exist in any of Plaintiff's Claimed Works**, any claim based thereon should be dismissed on this basis alone.  Plaintiffs cannot advance a combination claim with elements drawn from different works (some compositional and some recordings).

Moreover, Plaintiffs have failed to identify the precise combination they are claiming. In fact, Plaintiffs' own proffered experts disagree about what the claimed original "combination" drum pattern is. PAF opines (largely consistently with the SCAC) that the drum pattern consists of *eight separate instrument parts* (although he testified that he also considered instrument selection as a part of what he considered creative and original about "Fish Market"). (SUF 157.) Bilby contends that the drum pattern consists of *six (sometimes seven) instrument parts* but also, in a *post hoc* attempt to amend the SCAC, adds "timbre" and amorphous concepts such as "feel" and "Jamaicanness" as part of the supposed "combination" (which ignores that most of the sounds in the drum pattern were generated by a drum machine and also improperly conflates the "Fish Market" composition with the "Pounder" recording). (SUF 158). Finell (Plaintiffs' only musicologist) considers *at most, only five instrument parts*—the snare, kick, tom,[26] tambourine, and bass. (SUF 159.) She agrees that the hi-hat is not part of any combination because it merely doubles the kick drum, and that the timbales are not part of any combination because they do not repeat in any pattern, having been improvised (and, as discussed above, there are no "timbales that play a roll at the end of every second bar" and so such non-existent element cannot be part of any combination). But, like Bilby and PAF, Finell conflates the recording and compositional elements by referencing and relying on the timbre of the instruments and includes the bass and tom (which she admits double the kick), in her analysis. (SUF 160.).[27]

Neither PAF nor Finell relied upon any prior art analysis in reaching a conclusion that any of Plaintiffs' Claimed Works or any "combination" of rhythmic elements contained therein is "original," rendering their purported conclusions

---

[26] Finell sometimes refers to the tom as a "bass drum" in her report.

[27] These and other defects in the analyses of Plaintiffs' proffered experts are detailed in the concurrently-filed *Daubert* motions to exclude their testimony.

completely baseless. (SUF 161.) And, while Bilby claimed he conducted some undisclosed non-replicable or testable prior art search, he testified that he purportedly reviewed only some limited and unidentified selection of recordings (drawn from his "own memories") to see whether there was anything that "sounded" like "Fish Market," and that had all or "substantially all" of his ever-shifting list of elements (although his standard as to what constituted "substantially all" was admittedly subjective and not replicable). (SUF 162.) Ultimately, having invented a purported prior art search that it is doubtful he conducted (and which is nowhere explained in his report), he included multiple elements nowhere claimed by Plaintiffs and having nothing to do with the "Fish Market" composition (SUF 163-167), making his "conclusions" also useless.

In sum, Plaintiffs have not, through their experts (or otherwise), even identified a "combination" of the seven "Fish Market Elements" alleged in the SCAC that they claim to be "original," let alone established through any prior art search (which is both musicological standard practice and legally required) that any such "combination" is original or protectable.

**E.  Plaintiffs Have Not Identified a Protectable Selection and Arrangement of "Fish Market Elements"**

**1.   Plaintiffs have neither sufficiently identified the elements in the claimed original "combination," nor demonstrated that any elements were selected and arranged in a way that is original and protectable.**

As set forth above, the "Fish Market Elements" are not individually protectable (and do not appear as such in "Fish Market"). Thus, in this phase of the case, only if the Plaintiffs can identify a particular selection and arrangement of the unprotectable elements that is itself original, in the sense that the combination does

not exist in prior art, can the particular combination provide a basis on which to proceed to the next phase of this case.[28]  *See Gray v. Hudson*, 28 F.4th at 101.

The Ninth Circuit extends copyright protection to "a combination of unprotectable elements . . . only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Skidmore*, 952 F.3d at 1074.  To prevail on a selection and arrangement theory, Plaintiffs are required to demonstrate "how th[e] musical components relate[] to each other to create the overall design, pattern, or synthesis." *Id.*  A selection and arrangement copyright protects only "the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design." *Id.*

As discussed above, in effort to keep their options open as long as possible, Plaintiffs have not identified what their claimed combination consists of. Moreover, none of Plaintiffs' experts offered any opinion as to whether or how any such elements in such combination were selected and arranged in an original manner.  (SUF 169.)  Plaintiffs' failure to consistently or sufficiently identify the elements in their claimed original "combination," let alone to demonstrate that the elements in such "combination" (whatever they are) were selected and arranged in a way that is original and protectable, warrants summary judgment on any purported selection and arrangement theory.  *See, e.g.*, *Johannsongs*, 2020 WL 2315805, at *7 (Birotte, J.) ("A claim based on a selection and arrangement of unprotected elements requires a plaintiff 'to explain how these elements are particularly selected and arranged . . . . .'").

---

[28] If, and only if, this case proceeds to the next phase at all, Plaintiffs should be required to dismiss from this case all of those Defendants' works that do not have an identical or virtually identical combination to whatever combination may be found to exist and is protectable.

As shown above, Plaintiffs have included, in the individual elements listed in the SCAC, elements that do not exist in any one of their Claimed Works. They have conflated elements that appear only in a recording ("Pounder") with compositional elements. They have pointed to tambourines that their own experts could not even hear clearly as an element, and the actual tambourine part that Plaintiffs claim to be original is neither fully nor consistently described or transcribed and is, in any event, not a part of the basic and commonplace "boom-ch-boom-chick" habanera beat (nor the "Surf Beat" if one considers the "ghost" notes). They have pointed to timbales that do not exist in "Fish Market," and the timbales that do exist in "Fish Market" are improvised and not part of the fundamental rhythmic combination played by the kick (doubled by the hi-hat, tom and bass) and snare.

Outside of the unprotectable and commonplace "habanera" or "Surf Beat" combination, Plaintiffs have failed to identify and demonstrate that there is any other selection and arrangement of unprotectable elements in "Fish Market" that forms a coherent pattern, synthesis or design. To the extent that Plaintiffs purport to have a selection and arrangement claim, it is wholly unoriginal and unprotectable. *See Skidmore*, 952 F.3d at 1075 ("Presenting a 'combination of unprotectable elements' without explaining how these elements are particularly selected and arranged amounts to nothing more than trying to copyright commonplace elements.").

    **2.**    **Even if Plaintiffs had identified a particular selection and arrangement, the elements are not sufficiently numerous and the selection and arrangement is not original enough to be protectable.**

Plaintiffs concede that the combination of kick and snare elements is unoriginal, with or without the "ghost" notes. (SUF 95.) Three of the remaining alleged

elements—hi-hat, tom, and synth bass—merely duplicate the kick, hitting on the same beats and do not add any additional rhythmic elements (as opposed to additional instruments).  As Finell admitted, using additional instruments or drums (or in this case, drum sounds) to "double" or duplicate one or more existing beats in a rhythm does not change the rhythm or make it a new or different rhythm. (SUF 98.)

That leaves only the timbales and tambourines.  But for all the reasons discussed above, the improvised timbales and the inaudible tambourines are not a part of the kick/snare combination (and the SCAC does not present the proper timbales, instead pulling the timbales from the "Pounder" recording).

But even if one included one or both of the only two elements that do not double the kick and snare (the tambourines and the improvised timbales) and combined one or both of them with the unoriginal habanera or "Surf Beat" rhythm (of which they are clearly not a part), that would result in a combination of two or, at most, three elements: (i) a core rhythmic pattern (a habanera or "Surf Beat") and (ii) auxiliary high-frequency instruments playing a combination of 8th and 16th notes through a bar.

A combination of two or three elements is not sufficiently numerous or original to warrant copyright protection.  *See, e.g.*, *Structured Asset Sales, LLC v. Sheeran*, 120 F.4th 1066, 1081 (2d Cir. 2024) (finding the plaintiffs' "selection-and-arrangement claim also fails because it risks granting a monopoly over a combination of two fundamental musical building blocks.")  As the Court said in *Sheeran*, "[o]verprotecting such basic elements would threaten to stifle creativity and undermine the purpose of copyright law."  *Id.*

Indeed, the weight of authority is that there must be ***at least*** four or five distinct elements combined together in a coherent, purposeful fashion to qualify for protection.  *See Gray*, 28 F.4th at 102 ("two-note snippet of a descending minor

scale, with some notes repeated" did not qualify); *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 883 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. 2022) (two elements did not qualify); *Smith v. Weeknd*, No. 19-cv-2507 (PA), 2020 WL 4932074, at *7 (C.D. Cal. July 22, 2020), *aff'd sub nom. Clover v. Tesfaye*, No. 20-55861, 2021 WL 4705512 (9th Cir. Oct. 8, 2021) (three elements did not qualify); *Peters v. West*, 776 F. Supp. 2d 742, 751 (N.D. Ill. 2011), *aff'd* 692 F.3d 629 (7th Cir. 2012) (three elements did not qualify); *Cottrill v. Spears*, No. 02-cv-3646 (BMS), 2003 WL 21223846, at *9 (E.D. Pa. May 22, 2003), *aff'd,* 87 F. App'x 803 (3d Cir. 2004) (four elements did not qualify); *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1061 (C.D. Cal. 2018) (five elements did not qualify).

Finally, even if this Court were to conclude that there was some protectable combination sufficient to allow this case to proceed to the next phase, Plaintiffs should be required to dismiss from this case all of Defendants' works that do not include the same combination of elements. For example, allegedly-infringing works including only a kick-snare "habanera" or "Surf Beat" (with or without timekeeping elements that "double" the kick) should be dismissed because they do not contain any protectable elements. Likewise, allegedly-infringing works including only a kick-snare "habanera" or "Surf Beat" plus the timbales line from "Pounder" should be dismissed because again two elements are not numerous and Plaintiffs also have no compositional copyright in the "Pounder" timbales. Allegedly-infringing works including only a kick-snare "habanera" or "Surf Beat" plus a tambourine playing a "combination of 16th and 8th beat notes" should be dismissed because Plaintiffs cannot own the idea of a "high-frequency percussion instrument" playing any such combination and two elements does not satisfy the numerosity requirement. And any of Defendants' works that includes only a kick-snare "habanera" or "Surf Beat" even with the timbales line from "Pounder" and

the tambourines playing a "combination of 16th and 8th beat notes" should be dismissed because the "Pounder" timbales line is not in "Fish Market" and the combination of two or three compositional elements is not numerous.

## IV.    CONCLUSION

For the foregoing reasons the PC Defendants respectfully request that the Court grant the PC Defendants Motion for Summary Judgment and grant the Defendants such other and further relief as may be just and proper.

Respectfully submitted on May 23, 2025

**PRYOR CASHMAN LLP**

By: */s/ Benjamin S. Akley*
Donald S. Zakarin (*dzakarin@pryorcashman.com*)
Frank P. Scibilia (*fscibilia@pryorcashman.com*)
James G. Sammataro (*jsammataro@pryorcashman.com*)
Benjamin S. Akley (*bakley@pryorcashman.com*)
Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)