Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, et al.,<br><br>Plaintiff,<br><br>v.<br><br>RODNEY SEBASTIAN CLARK DONALDS, et al,<br><br>Defendants. | Case No. 2:21-cv-02840-AB-AJR<br>*Hon. André Birotte Jr. Presiding*<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF FACTS**<br><br>Date: September 26, 2025<br>Time: 10:00 AM<br>Courtroom: 7B |

Plaintiffs' response to the Pryor Cashman-Represented Defendants' separate statement of facts is below:

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| 1. | Plaintiffs commenced this action on April 1, 2021, involving two works that allegedly infringed the "Fish Market" composition.<br><br>*See* Central District of California, Case No. 2:21-cv-02840-AB-AFM ("Dem Bow I"). | Undisputed |
| 2. | Plaintiffs commenced a second action on October 19, 2021, involving 10 Luis Fonsi works that allegedly infringed "Fish Market".<br><br>*See* Central District of California, Case No. 2:21-cv-08295-AB-AFM ("Dem Bow II"). | Undisputed |
| 3. | Plaintiffs commenced a third action on May 16, 2022 in the Southern District of New York, involving 44 works that allegedly infringed "Fish Market", but that action was then transferred to this Court as a related case.<br><br>See Central District of California, Case No. 2:22-cv-03827-AB-AFM ("Dem Bow III"). | Undisputed |
| 4. | On July 15, 2022, this Court consolidated the first three Dem Bow actions.<br><br>Order Granting Motion to Consolidate Cases, (Dkt. 93). | Undisputed |
| 5. | On July 15, 2022, this Court ordered Plaintiffs to file a consolidated complaint on or before July 29, 2022.<br><br>Order Granting Motion to Consolidate Cases, (Dkt. 93). | Undisputed |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| 6. | On July 29, 2022, Plaintiffs filed a consolidated complaint.<br><br>Consolidated Complaint, (Dkt. 99). | Undisputed |
| 7. | The Court then authorized Plaintiffs to file an amended consolidated complaint.<br><br>Joint Stipulation to Amend Consolidated Complaint, (Dkt. 112); Order Granting Joint Stipulation, (Dkt. 115). | Undisputed |
| 8. | Plaintiffs filed their First Consolidated Amended Complaint ("FCAC"), which expanded the number of defendants to 163 and the number of allegedly infringing works somewhere between 1,800 and 4,000.<br><br>FCAC, (Dkt. 116). | Undisputed for purposes of this motion that Dkt. 116 is Plaintiffs' previously filed FCAC. Disputed as to characterization "which expanded the number of defendants to 163 and the number of allegedly infringing works somewhere between 1,800 and 4,000" (*see* Dkt. 142), but immaterial. |
| 9. | The parties stipulated to a phased case administration plan due to the number of defendants and number of works, as well as the existence of common issues such as protectability and originality.<br><br>Stipulation for Order for Case Administration Plan, (Dkt. 142). | Undisputed for purposes of this motion that the parties entered a stipulation re: case administration. Disputed as to characterization "due to the number of defendants and number of works, as well as the existence of common issues such as protectability and originality" as immaterial because stipulation speaks for itself. |
| 10. | On January 11, 2023, the Court ordered the phased case administration.<br><br>Order Granting Stipulation Re: Case Administration (the "Administration Order"), (Dkt. 143). | Undisputed. |
| 11. | Pursuant to the Administration Order, the first phase of this case provides for only (a) limited fact and | Undisputed. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | expert discovery concerning whether Plaintiffs' claimed works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law, and (b) limited summary judgment motions solely on these issues.<br><br>Administration Order at 1-2. | |
| 12. | On April 21, 2023, Plaintiffs filed their currently-operative complaint, the Second Consolidated Amended Complaint ("SCAC").<br><br>Second Amended Complaint ("SCAC"), (Dkt. 305). | Undisputed |
| 13. | On May 28, 2024, the Court granted in part Defendants' Motions to Dismiss Plaintiffs' SCAC.<br><br>Order on Motions to Dismiss (Dkt. 421). | Undisputed |
| 14. | By that May 28, 2024 Order, the Court dismissed Plaintiffs' claim for "vicarious and/or contributory copyright infringement," leaving Plaintiffs' claim for direct copyright infringement as the sole remaining claim.<br><br>Order on Motions to Dismiss (Dkt. 421). | Undisputed. |
| | **The Plaintiffs** | |
| 15. | Plaintiffs are Cleveland Constantine Browne; Shea Johnson, in his capacity as the personal representative and executor of Estate of Wycliffe Johnson; Carl Gibson, in his capacity as the personal representative and executor of the Estate of Ephraim Barrett; and Steely & Clevie Productions Ltd. | Undisputed. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | SCAC at ¶¶ 4-7; Order Granting Motion to Substitute Party, (Dkt. 659). | |
| 16. | Cleveland Constantine Browne ("Browne") and Wycliffe Anthony Johnson ("Johnson") are musicians that formed the duo "Steely & Clevie."<br><br>SCAC at ¶¶ 173-175. | Undisputed. |
| 17. | Ephraim Barrett was a producer professionally known as "Count Shelly."<br><br>SCAC at ¶ 177. | Undisputed. |
| 18. | Plaintiff Steely & Clevie Productions Ltd. is the production company of Browne and Johnson.<br><br>SCAC at ¶ 176. | Undisputed. |
| 19. | Plaintiffs claim to own rights in the "Fish Market" musical composition and sound recording.<br><br>SCAC at ¶¶ 4-7, 179-180. | Undisputed. |
| 20. | Plaintiffs claim to own rights in the "Dem Bow" musical composition.<br><br>SCAC at ¶¶ 4-7,181, 189. | Undisputed. |
| 21. | Plaintiffs do not claim to own rights in the "Dem Bow" sound recording.<br><br>SCAC at ¶ 189 ("Plaintiffs possess copyright ownership and U.S. registrations for . . . the Dem Bow composition); (Order on Motions to Dismiss at 4 (Dkt. 421) ("Plaintiffs bring this action against Defendants for infringement of their copyrights in the Fish Market composition, Fish Market sound recording, Dem Bow composition, and Pounder Dub Mix II sound recording.") | Undisputed. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| 22. | Plaintiffs claim to own rights in the "Pounder Dub Mix II" sound recording.<br><br>SCAC at ¶¶ 4-7, 182-184. | Undisputed. |
| 23. | Plaintiffs do not claim to own rights in the "Pounder Dub Mix II" musical composition.<br><br>SCAC at ¶ 189 ("Plaintiffs possess copyright ownership and U.S. registrations for . . . the Pounder sound recording); (Order on Motions to Dismiss at 4 (Dkt. 421) ("Plaintiffs bring this action against Defendants for infringement of their copyrights in the Fish Market composition, Fish Market sound recording, Dem Bow composition, and Pounder Dub Mix II sound recording.") | Disputed as vague; statement not supported by the cited evidence. The *Fish Market* composition is captured in the sound recording of *Pounder Dub Mix II*. |
| 24. | Browne and Johnson claim to have wrote and recorded "Fish Market" in 1989.<br><br>SCAC at ¶¶ 175, 179, 185. | Undisputed. |
| 25. | "Fish Market" is the Side B "version," or underlying instrumental track, to the song "Poco man Jam."<br><br>Declaration of Dr. Wayne Marshall ISO MSJ, Ex. 1 ("Marshall Report") at 5, 10. | Undisputed. |
| 26. | Steely and Clevie produced "Poco man Jam" featuring vocalist Gregory Peck.<br><br>Marshall Report at 9. | Undisputed. |
| 27. | Plaintiffs claim that "Fish Market" includes an original drum pattern.<br><br>SCAC at ¶ 180. | Undisputed. |
| 28. | In 1990, Ephraim Barrett ("Barrett") and Denis Halliburton ("Halliburton") released the sound recording "Pounder (Dub Mix II)" | Disputed. Halliburton created the *Pounder Dub Mix II* sound recording at Barrett's direction. Barrett released the *Pounder Dub* |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | ("Pounder").<br><br>SCAC at ¶ 182; Declaration of Benjamin S. Akley In Support Of Rule 56.1 Statement ("Akley Decl.") Ex. 1, PLAINTIFFS000780-781. | *Mix II* sound recording. *See* Browne Decl. ¶ 17, Ex. 2. |
| 29. | Plaintiffs claim Halliburton copied the "Dem Bow" instrumental, sound, arrangement, and composition, to create "Pounder".<br><br>SCAC at ¶ 183. | Disputed in part as vague as to "instrumental, sound, arrangement, and composition." Halliburton created *Pounder Dub Mix II* by copying from *Dem Bow* the combination of the bassline and kick drum pattern, snare drum pattern, hi-hat pattern, low "tom" drum pattern, and excerpted portions of the timbale pattern. *See* Browne Decl. ¶ 17, Ex. 2.; Browne Decl. ¶ 18, Ex. 2; Tookey Decl. Ex. 105 (W. Marshall Dep. 223:1-3); Ashbourne-Firman Decl. ¶ 10, Ex. 1.; Browne Decl. ¶ 18, Ex. 2; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 156:1-14, 262:3-16), Ex. 101 (Bilby Dep. 234:2-13), Ex. 102 (Browne Dep. 84:6-88:19); Bilby Decl. Ex. 1 at Appendix 5 (Halliburton Decl.); H. Brown Decl. ¶¶ 2-13; Browne Decl. ¶ 18, Ex. 2; Ashbourne-Firman Ex. 2 at 7-9; Finell Decl. Ex. 1 at 4-7; Bilby Decl. Ex. 1 at 29-46; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 94:10-95:14, 214:4-23, 298:13-22), Ex. 104 (Finell Dep. 217:21-218:8). |
| 30. | Plaintiffs claim "Pounder" is virtually identical to "Fish Market." | Undisputed, assuming this is meant to reference the relevant portion of *Pounder Dub Mix II* |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | SCAC at ¶ 183. | (i.e., the *Dem Bow Riddim* combination of the bassline and kick pattern, snare pattern, hi-hat pattern, low "tom" drum pattern, and excerpted portions of the timbale pattern). *See* Browne Decl. ¶ 17, Ex. 2.; Browne Decl. ¶ 18, Ex. 2; Tookey Decl. Ex. 105 (W. Marshall Dep. 223:1-3); Ashbourne-Firman Decl. ¶ 10, Ex. 1.; Browne Decl. ¶ 18, Ex. 2; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 156:1-14, 262:3-16), Ex. 101 (Bilby Dep. 234:2-13), Ex. 102 (Browne Dep. 84:6-88:19); Bilby Decl. Ex. 1 at Appendix 5 (Halliburton Decl.); H. Brown Decl. ¶¶ 2-13; Browne Decl. ¶ 18, Ex. 2; Ashbourne-Firman Ex. 2 at 7-9; Finell Decl. Ex. 1 at 4-7; Bilby Decl. Ex. 1 at 29-46; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 94:10-95:14, 214:4-23, 298:13-22), Ex. 104 (Finell Dep. 217:21-218:8). |
| 31. | "Pounder" is not identical to "Fish Market" because there are no tambourines in "Pounder."<br><br>Akley Decl., Ex. 2, Deposition of Judith Finell ("Finell Dep.") at 99:22-100:3. | Undisputed. |
| 32. | "Pounder" is not identical to "Fish Market" because there is a timbales roll in "Pounder" that does not exist in "Fish Market."<br><br>Marshall Report at 26; Manuel Rebuttal at 26; Akley Decl., Ex. 6, Deposition of Kenneth Bilby ("Bilby Dep.") Bilby Dep. at 232:18-233:1 (Q. Okay. So the timbales part | Disputed. The timbales roll in *Pounder Dub Mix II* exists in and was taken from the timbale pattern in *Fish Market*. *See* Browne Decl. ¶ 11, Ex. 1; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 102 (Browne Dep. 84:6-88:19); Browne Decl. ¶ |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | in Pounder is not the same as the timbales part in Fish Market, right? A. Right); Akley Decl., Ex. 10, Deposition of Cleveland Browne ("Browne Dep.") at 85:11-19. | 18, Ex. 2; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 156:1-14, 262:3-16), Ex. 101 (Bilby Dep. 234:2-13), Ex. 102 (Browne Dep. 84:6-88:19). |
| 33. | Plaintiffs claim "Pounder" is a derivative work of "Dem Bow" and "Fish Market".<br><br>SCAC at ¶ 182. | Undisputed. |
| 34. | Plaintiffs have never claimed Halliburton infringed "Fish Market" for his purported copying of "Dem Bow" to create "Pounder."<br><br>SCAC ¶¶ 182-189. | Outside the scope of this phase. *See* Dkt. 143. No response is warranted. |
| **Musical Compositions and Basic Terminology** | | |
| 35. | A musical composition is comprised of distinct and identifiable elements that can be analyzed separately and in combination.<br><br>Declaration of Lawrence Ferrara ISO MSJ, Ex. 1 ("Ferrara Report") at 5. | Disputed. Cited evidence is non-lawyer purporting to offer legal conclusion on musical compositions that contravenes binding Ninth Circuit authority. *See Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) ("In analyzing musical compositions . . . , we have never announced a uniform set of factors to be used. We will not do so now. Music, like software programs and art objects, is not capable of ready classification into only five or six constituent elements; music is comprised of a large array of elements, some combination of which is protectable by copyright."). No response is warranted. |
| 36. | When analyzing two compositions, some elements are more fundamental than others, namely: (1) structure; (2) harmony; (3) rhythm; and (4) melody; and when present, (5) lyrics. | Disputed. Dr. Marshall testified that melody, lyrics, or harmony are not necessary for a musical composition to be original, and that a rhythmic composition can |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Ferrara Report at 5; Marshall Report at 3; see also Akley Decl., Ex. 3, Finell Dep. at Ex. 98 ("Finell Article") at 3-4. | be protectable without those things. *See* Tookey Decl. Ex. 105 (W. Marshall Dep. 177:17-21). |
| 37. | Similarities or differences in the key, tempo, instrumentation, and style or genre, are less significant insofar as they represent musical building blocks and/or commonplace practices used in countless musical compositions.<br><br>Ferrara Report at 5; Declaration of Peter Manuel ISO MSJ, Ex. 1 ("Manuel Rebuttal") at 3. | Disputed. Cited evidence is non-lawyer purporting to offer legal conclusion on musical compositions that contravenes binding Ninth Circuit authority. *See Swirsky v. Carey*, 376 F.3d 841, 848-49, 851 (9th Cir. 2004) (stating that "no approach can completely divorce pitch sequence and rhythm from harmonic chord progression, tempo, and key"; that "chord progression, key, tempo, rhythm, and genre . . . can be found in a combination of elements, even if those elements are individually unprotected"; and that "Other courts have taken account of additional components of musical compositions, including melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics . . . . timbre, tone, spatial organization, consonance, dissonance, accents, note choice, combinations, interplay of instruments, basslines, and new technological sounds can all be elements of a musical composition"; and reversing district court for disregarding differences "in meter, tempo, or key"). No response is warranted. |
| 38. | The selection of the particular instruments which are used to play the rhythm is not a compositional element but a performance | This is argument, not a fact, that contravenes copyright law and has been rejected by courts. *See* |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | element and not a part of what the musical composition is comprised of.<br><br>Marshall Report at 21; Declaration of Joe Bennett ISO MSJ, Ex. 2 ("Bennett Rebuttal") at 3; Akley Decl., Ex. 4, ("Finell Report") at 4 (instrument choice is not compositional, as she asserts that a vocalization of a rhythmic pattern could be an infringement of an instrumental rhythmic pattern played across multiple instruments); Butler Declaration ISO MSJ, Ex. 2 ("Butler Rebuttal") at 6, 9 n.8; Marshall Declaration ISO MSJ, Ex. 2 ("Marshall Rebuttal") at 8; Akley Decl., Ex. 5, Finell Dep. at Ex. 96 ("Finell Article") at 2; see also Finell Dep. at 73:6-8, 117:10-24 (instrumentation "is considered part of the arrangement and part of the recording performance copyright"), 118:16-120:18, 140:1-23; 142:3-13; 133:10-135:20 | *New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 88 (S.D.N.Y. 2015) ("Defendants provide no legal support for the proposition that instrumentation is not a compositional component to a musical work—a proposition that is contradicted by other authority. *See Swirsky,* 376 F.3d at 849.").<br><br>To the extent this can be construed as a fact to which any response is warranted, Disputed. Defendant Marcos Masis p/k/a "Tainy," Dr. Wayne Marshall, and Dr. Joe Bennett each consider instrumentation to be an element of a musical composition. See Tookey Decl. Ex. 107 (Masis Dep. 11:16-13:16, 17:9-15); Tookey Decl. Ex. 105 (W. Marshall Dep. 76:16-78:16, 79:11-20), Ex. 81 (at time marker 6:05-6:50); Tookey Decl. Ex. 105 (Marshall Dep. 38:13-24), Ex. 70 at Figures 1-6); Tookey Decl. Ex. 113 (Bennett Decl. ¶¶ 21, 24, 30, 34); Tookey Decl. Ex. 104 (Finell Dep. 72:6-74:3). |
| 39. | Structure is the organization of musical units or musical groups, often indicated by the development of the melody and/or lyrics.<br><br>Ferrara Report at 5. | Undisputed for purposes of this motion that "Structure is the organization of musical units or musical groups." Disputed as conclusory and irrelevant as to "often indicated by the development of the melody and/or lyrics." |
| 40. | Harmony refers to the tonal relationship of pitches that sound | Undisputed for purposes of this motion. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | simultaneously. A sequence of chords is referred to as a harmonic or chord progression. Harmonic rhythm is the rate of change of chords.<br><br>Ferrara Report at 6. | |
| 41. | Rhythm refers to the pattern and organization of the time values of sounds and silences as well as the overall rhythmic flow in musical time.<br><br>Ferrara Report at 6; Marshall Report at 3. | Undisputed for purposes of this motion. |
| 42. | Melody is a single line of music that consists primarily of a succession (i.e., a sequence or order) of pitches and the rhythmic durations of those pitches within a melodic phrase structure. "Pitch" is the specific high or low placement of a musical sound, often identified within a musical scale.<br><br>Ferrara Report at 6. | Undisputed for purposes of this motion. |
| 43. | A beat is a single pulse of the music, also known as a quarter note.<br><br>Declaration of Joe Bennett ISO MSJ, Ex. 1 ("Bennett Report"), at 4. | Undisputed for purposes of this motion. |
| 44. | A bar is a group of beats.<br><br>Bennett Report at 4. | Undisputed for purposes of this motion. |
| 45. | An 8th note is half a beat. For every beat, there are two eighth notes.<br><br>Bennett Report at 4; Marshall Report at 4. | Undisputed for purposes of this motion. |
| 46. | A 16th note is a quarter of a beat. For every beat, there are four 16th notes.<br><br>Bennett Report at 4; Marshall Report | Undisputed for purposes of this motion. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | at 4. | |
| 47. | A ghost note is a quieter note usually played on the snare drum.<br><br>Bennett Report at 4; Marshall Report at 27; Marshall Rebuttal at 9; Manuel Rebuttal at 21; Bilby Dep. at 218:4-7; Akley Decl., Ex. 7, Deposition of Peter Ashbourne-Firman ("PAF Dep.") at 272:23-273:12. | Undisputed for purposes of this motion. |
| 48. | "The level of volume of a particular sound in a recording as compared to another sound is a function of the performance, and not a property of the underlying composition."<br><br>Akley Decl., Ex. 8 ("Finell Rebuttal") at ¶ 19(b). | Disputed to the extent this suggests that ghost notes are not compositional elements, a suggestion which contravenes copyright law. *See New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 88–89 (S.D.N.Y. 2015) ("'[A]n accent is a *compositional* element that determines the variation in volume of any note in a song and are notated with a sideways V above the note in a composition.' Defendants again respond, with no legal support, that accents are an element of performance rather than composition. At least one court has come to the contrary conclusion . . . consistent with common experience—anyone who has ever played music knows that accent notations are an integral part of the musical composition."). *See also* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23; Tookey |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Decl. Ex. 105 (W. Marshall Dep. 197:1-198:6, 263:7-11); Ashbourne-Firman Decl. Ex. 3 at 10-11; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 104 (Finell Dep. 74:4-14, 221:7-222:8, 224:15-226:21); Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 206:19-23, 208:2-15, 244:2-245:3); Ashbourne-Firman Decl. Ex. 3 at 8-9, 11. (considering ghost notes as compositional element). |
| 49. | "Low volume, referred to as 'soft notes,' is not a compositional issue but is a performance/arrangement choice."<br><br>Finell Rebuttal at ¶ 33. | Disputed to the extent this suggests that ghost notes are not compositional elements, a suggestion which contravenes copyright law. *See New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 88–89 (S.D.N.Y. 2015) ("'[A]n accent is a *compositional* element that determines the variation in volume of any note in a song and are notated with a sideways V above the note in a composition.' Defendants again respond, with no legal support, that accents are an element of performance rather than composition. At least one court has come to the contrary conclusion . . . consistent with common experience—anyone who has ever played music knows that accent notations are an integral part of the musical composition."). *See also* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23); Tookey Decl. Ex. 105 (W. Marshall Dep. 197:1-198:6, 263:7-11); Ashbourne-Firman Decl. Ex. 3 at 10-11; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 104 (Finell Dep. 74:4-14, 221:7-222:8, 224:15-226:21); Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 206:19-23, 208:2-15, 244:2-245:3); Ashbourne-Firman Decl. Ex. 3 at 8-9, 11. (considering ghost notes as compositional element). |
| 50. | Lyrics are the words or text that are sung or spoken in a song.<br><br>Ferrara Report at 6. | Undisputed. |
| 51. | Duplication of notes in a concurrent instrument is termed "doubled" parts, which refers to the "performance of the same note or notes by two parts."<br><br>Ferrara Report at 12, n.9; Marshall Report at 19, Butler Rebuttal at 9 n.8. | Undisputed. |
| 52. | When a beat in a rhythm is "doubled" – that is, played by two instruments at the same time – then the rhythm is unchanged. It is "the same rhythm" as if were played on one instrument.<br><br>Finell Dep. at 266:13-17, 126:16-23, 131:14-17; Ferrara Report at 3, 12, 13-14, 28. | Undisputed with regard to a horizontal analysis, but disputed in part to the extent it disregards differences in vertical characteristics, differences in instrumentation, differences in each pattern notwithstanding points of rhythmic intersection, and distinction between pitched and non-pitched elements. *See* Finell Decl. Ex. 2 ¶¶ 11, 22; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 136:12- |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 18, 195:10-15), Ex. 104 (Finell Dep. 265:24-266:12); Finell Decl. Ex. 2 ¶¶ 12, 14, 16, 22; Ashbourne-Firman Decl. Ex. 3 at 9-10; Tookey Decl. Ex. 70 (notating as discrete elements rhythmic patterns that occasionally intersect on same beats), Ex. 100 (Ashbourne-Firman Dep. 144:3-145:6); Tookey Decl. Ex. 104 (Finell Dep. 123:7-124:24. |
| 53. | A core rhythmic pattern ("CRP") is a simple rhythmic pattern lasting for two beats, repeating throughout.<br><br>Bennett Report at 3. | Disputed. "Core rhythmic pattern" is an arbitrary label manufactured by Bennett. As explained in the Ashbourne-Firman Decl. Ex. 3 at 9: "core rhythmic pattern," "timekeeping," and "auxiliary" labels, in addition to being subjective perceptions of function, "has no bearing on the existence of these elements in the Fish Market composition, the combination they form together, or determining whether they are sufficiently creative to be original." |
| 54. | Timekeeping beats ("TK") are rhythmic elements that track the time signature of the song, playing the same thing on every beat, repeating throughout.<br><br>Bennett Report at 3. | Disputed. "Timekeeping beats" is an arbitrary label manufactured by Bennett. *See* Resp. to ¶ 53 above. |
| 55. | Auxiliary patterns ("AUX") are supplementary patterns lasting for 1 or 2 bars, played on high frequency instruments and featuring 16th notes and 9th notes.<br><br>Bennett Report at 3. | Disputed. "Auxiliary patterns" is an arbitrary label manufactured by Bennett. *See* Resp. to ¶ 53 above. |
| 56. | Plaintiffs' claims concern only rhythm. | Disputed. *See* Browne Decl. ¶ 10, Ex. 1; Ashbourne-Firman Decl. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Ferrara Report at 6; Marshall Report at 3; Bennett Report at 8; Butler Rebuttal at 9 n.8; Manuel Rebuttal at 5; Finell Dep. At 59:2-8. | Ex. 1. (describing and notating bassline), Finell Decl. Ex. 2 ¶ 22; Tookey Decl. Ex. 105 (W. Marshall Dep. 180:17-25), Ex. 100 (Ashbourne-Firman Dep. 180:19-181:25), Ex. 104 (Finell Dep. 203:8-12), Ex. 101 (Bilby Dep. 252:17-24)(bassline is pitched element within composite pattern), Tookey Decl. Ex. 107 (Masis Dep. 11:16-13:16, 17:9-15) (treating bass as pitched element), Tookey Decl. Ex. 105 (W. Marshall Dep. 69:7-23, 73:16-75:2), Ex. 70 at Figures 1-6), Ex. 73 at 141, Ex. 74 (at March 4, 2009 at 9:02 pm, distinguishing between defining "dembow" as "boom-ch-boom-chick" and defining "dembow" as "a more specific pattern," and stating "You can see/hear the difference I'm describing in the difference between Figure 1 and Figure 6 on this page" referring to Ex. 70) (notating bassline as discrete element), Browne Decl. ¶ 20; Bilby Decl. Ex. 3 at 16-26. (describing bassline as "tonally rich"). |
| 57. | Pitch, timbre, dynamics, tempo, rhythmic stress, and "feel" are not compositional elements of a song.<br><br>Butler Rebuttal at 5-6; Marshall Report at 3; Marshall Rebuttal at 8. | Cited evidence is non-lawyers purporting to offer legal conclusion on musical compositions that contravenes binding Ninth Circuit authority. *See Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) ("[C]ourts have taken account of additional components of musical compositions, including melody, harmony, rhythm, ***pitch***, ***tempo***, |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | phrasing, structure, chord progressions, and lyrics . . . . ***timbre***, tone, spatial organization, consonance, dissonance, ***accents***, note choice, combinations, interplay of instruments, basslines, and new technological sounds can all be elements of a musical composition") (emphasis added). Ferrara has opined that "rhythmic thrust, feel and tempo" are compositional elements. *See New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 89 (S.D.N.Y. 2015) ("That the expert in *Glover* highlighting the similarities in 'rhythmic thrust, feel and tempo' as evidence probative of copying was Dr. Ferrara—Defendants' expert here—further undermines Defendants' argument here that tempo is irrelevant[.]"), citing *Glover v. Austin*, 289 F. App'x 430, 432 (2d Cir. 2008). To the extent any response is warranted, disputed. *See* Resp. to ¶ 49 above (regarding accents, dynamics, rhythmic stress); See also Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23); Tookey Decl. Ex. 105 (W. Marshall Dep. 66:4-67:19), Ex. 70 (contrasting Figure 1 and Figure 4); Tookey Decl. Ex. 113 (Bennett Decl. ¶¶ |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 21, 24, 30, 34) (considering "feel" as distinguishing compositional element) |
| 58. | Pitch, timbre, dynamics, tempo, rhythmic stress, and "feel" are instrumentation and performance elements.<br><br>Butler Rebuttal at 5-7: Marshall Rebuttal at 8-9. | Disputed. *See* Resp. to ¶¶ 37-38 above (regarding instrumentation), 49 above (regarding accents, dynamics, rhythmic stress), 57 above (regarding pitch, timbre, dynamics, tempo, rhythmic stress, and "feel"). |
| 59. | Pitch, timbre, dynamics, tempo, rhythmic stress, and "feel" are not part of Plaintiffs' claim.<br><br>*See generally* SCAC; Butler Rebuttal at 5-6; Marshall Report at 3; Marshall Rebuttal at 8. | Disputed in part. Undisputed that tempo is not part of Plaintiffs' claim. Disputed as to remainder. *See* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23) (feel, dynamics, rhythmic stress), Browne Decl. ¶ 10, Ex. 1; Ashbourne-Firman Decl. Ex. 1; Finell Decl. Ex. 2 ¶ 22; Tookey Decl. Ex. 105 (W. Marshall Dep. 180:17-25), Ex. 100 (Ashbourne-Firman Dep. 180:19-181:25), Ex. 104 (Finell Dep. 203:8-12), Ex. 101 (Bilby Dep. 252:17-24)(pitch), Browne Decl. ¶ 11, Ex. 1; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 102 (Browne Dep. 84:6-88:19)(timbre). |
| | **<u>"Fish Market" Riddim</u>** | |
| 60. | "riddim" is the musical "skeleton" of a song. It is the underpinning of a multi-track recording, and typically consists of drums | Undisputed but incomplete. The Butler Report at 4 states "A 'riddim' is the musical 'skeleton' of a song. In simple terms, it is |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | and the electric bass, which combine to form the basic groove of a song.<br><br>Declaration of Melvin Butler ISO MSJ, Ex. 1 ("Butler Report") at 4; Marshall Report at 4-5. | the underpinning of a multi-track recording, and typically consists of drums and the electric bass, which combine to form the basic groove of a song. In addition to the electric bass, other percussion instruments . . . may be added to contribute to the 'feel' or groove of a song. Riddims are instrumental tracks[.]" |
| 61. | In Jamaica, music riddims are created for the express purpose of being reused, mixed, and matched with other voicings or other musical elements.<br><br>Butler Report at 4; Marshall Report at 5; Manuel Rebuttal at 7-8; PAF Dep. at 293:24-295:4 ("The dancehall was sort of turning that on its head where the accompaniment became something that dozens of people, sometimes hundreds of people, sing on.") | Disputed. The cited evidence does not establish that in Jamaica there is a universal, or even general, agreement among those that create riddims that they may be "reused, mixed, and matched with other voicings or other musical elements" by anyone else without permission. |
| 62. | A "version" refers to a specific composition created from the underlying riddim.<br><br>Marshall Report at 5. | Undisputed for purposes of this motion. |
| 63. | From the 1970s through the early 2000s, reggae singles were commonly issued with a vocal version on Side A (with vocals recorded over the "riddim") and a purely instrumental version of the "riddim" (most commonly simply titled "Version,") on Side B.<br><br>Marshall Report at 5. | Undisputed for purposes of this motion. |
| 64. | The Side B or "version" was for the express purpose of allowing DJs and vocalists to use these Side B instrumentals for DJs to play in a live setting for various performers to | Undisputed for purposes of this motion. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | vocalize over.<br><br>Marshall Report at 5. | |
| 65. | "Fish Market" is the Side B "version" to "Poco man Jam."<br><br>Marshall Report at 5, 10. | Undisputed for purposes of this motion. |
| **Plaintiffs' Experts' Use of Stems in Analysis of Plaintiffs' Claimed Works[1]** | | |
| 66. | A "stem" is a file with elements extracted directly from the original master recording of a musical work.<br><br>Bennett Rebuttal at 13; Declaration of Paul Geluso ISO MSJ, Ex. 1 ("Geluso Rebuttal") at ¶ 18. | Undisputed for purposes of this motion. |
| 67. | Plaintiffs' experts admitted to using and relying upon "stems" in their analysis of "Fish Market."<br><br>Finell Report at 2-3; Finell Report, Ex. A at 3; Finell Dep. at 179:5-181:15; Akley Decl., Ex. 9 (Peter Ashbourne-Firman ("PAF Report")) at 2-3; PAF Dep. at 82:25, 87:2-7. | Disputed in part. Undisputed that two of Plaintiffs' experts listed, in addition to the full recordings of *Fish Market*, *Dem Bow*, and *Pounder Dub Mix II*, files labeled as "stems" as "materials considered." *See* Finell Decl. Ex. 1 at 2-3, Ashbourne-Firman Ex. 2 at 2-3. Otherwise disputed, as analyses and transcriptions were of full recordings. *See* Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 150:10-22, 94:10-95:14, 214:4-23), Ex. 104 (Finell Dep. 181:1-15) |
| 68. | Plaintiffs' experts admitted to using and relying upon "stems" in order to hear portions of "Fish Market" more clearly.<br><br>Finell Dep. at 169:5-170:15; 179:5-181:15; 192:12-193:25; Finell Report, Ex. A at 3 n.7; PAF Dep. at 82:25, 87:2-7. | Disputed in part. Cited evidence does not support proffered fact. "Finell Report, Ex. A at 3 n.7" states "Due to effects processing and frequency distribution of the other instruments, the tambourine part in '***Dame Tu Cosita***' has |

[1] Plaintiffs reproduce Defendants' subheadings for consistency's sake only. Any and all argument incorporated within such subheadings is disputed.

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | limited audibility within the first beat of each bar. An examination of the stems of '***Dame Tu Cosita***' may improve the clarity." (emphasis added). Otherwise *see* Resp. to ¶ 67 above. |
| 69. | The "stems" relied upon by Plaintiffs' experts were not, in fact "stems," but rather recreations of certain aspects of the "Fish Market" sound recording made by Plaintiff Browne.<br><br>Geluso Rebuttal Report at ¶¶ 21-50, Figs. 1-15; Browne Dep. at 182:19- 183:8, 193:16-197:21, 202:8-206:19, 220:13-227:12, 228:24-230:24; Bennett Rebuttal at 13. | Undisputed. |
| 70. | Plaintiff Browne admits that the "stems" are not true stems, as he never found the original master recording from 1989, and created these files labeled as "stems" in 2021.<br><br>Browne Dep. at 210:14-211:22 ("We conducted extensive searches for the master and it still has not been identified."); Browne Dep. at 182:19-183:3, 193:16-194:1, 202:8-11, 220:18-20, 228:20-23. | Undisputed. |
| **Plaintiffs' Claimed "Fish Market" Elements** | | |
| 71. | Plaintiffs describe the allegedly original "Fish Market Elements" as: (1) a programmed kick playing on beats one to four; (2) a snare with ghost notes on the third and eleventh sixteenth notes of each bar, complementing a snare on the fourth, seventh, twelfth, and fifteenth beats of each bar; (3) a hi-hat playing a one bar pattern together with the programmed kick on beats one to four; (4) a tambourine playing through the entire bar with a combination of | Disputed in part. *See* Browne Decl. ¶¶ 8 and 13, Ex. 1; Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23); Tookey Decl. Ex. 105 (W. Marshall Dep. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | 8th and 16th notes; (5) a synthesized tom playing on beats one and three; (6) timbales that play a roll at the end of every other bar and a combination of 16th notes over the pattern; and (7) a synthesized b-flat bass note on beats one and three of each bar, which follows the aforementioned synthesized "tom" pattern.<br><br>SCAC ¶ 648; Akley Decl., Ex. 11 ("Browne's First Resps. to Sony's First Interrog.") Rog. Nos. 8-9; Ferrara Report at 7-11; Marshall Report at 21-28; Bennett Report at 8; Finell Report at 4, 7; PAF Report at 4-5, 8; Butler Report at 1, n.1; Akley Decl., Ex. 12 ("Bilby Report") at 42-43. | 135:12-19), Ex. 100 (Ashbourne-Firman Dep. 174:18-175:21, 178:14-179:10); Browne Decl. ¶ 10, Ex. 1; Ashbourne-Firman Decl. Ex. 1.; Finell Decl. Ex. 2 ¶ 22; Tookey Decl. Ex. 105 (W. Marshall Dep. 180:17-25), Ex. 100 (Ashbourne-Firman Dep. 180:19-181:25), Ex. 104 (Finell Dep. 203:8-12), Ex. 101 (Bilby Dep. 252:17-24); Browne Decl. ¶ 11, Ex. 1; Ashbourne-Firman Decl. Ex. 1; Finell Decl. Ex. 1 at 6; Browne Decl. ¶ 11, Ex. 1; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 102 (Browne Dep. 84:6-88:19); Browne Decl. ¶ 12, Ex. 1; Ashbourne-Firman ¶ 11, Ex. 1, Ex. 2 at 4-5; Finell Decl. Ex. 1 at 4-7, Ex. 2 ¶¶ 10-11; Bilby Decl. Ex. 1 at 19-29; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 219:2-16, 130:2-5), Ex. 104 (Finell Dep. 56:5-23, 63:2-64:4, 103:1-105:11, 131:3-11, 133:2-9, 152:15-24, 270:12-24), Ex. 101 (Bilby Dep. 106:4-9, 121:17-122:12, 236:4-240:25, 244:6-245:25, 252:17-24); Browne Decl. ¶ 18, Ex. 2; Tookey Decl. Ex. 105 (W. Marshall Dep. 223:1-3); Ashbourne-Firman Decl. ¶ 10, Ex. 1; Browne Decl. ¶ 18, Ex. 2; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 156:1-14, 262:3-16), Ex. 101 (Bilby Dep. 234:2-13), Ex. 102 (Browne Dep. 84:6-88:19) (describing and |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | notating original selection and arrangement). |
| **The "Fish Market" Elements are Not Original or Protectable**<br>**1. Fish Market Elements 1 and 2—the primary rhythmic elements claimed by Plaintiffs—are a commonplace centuries-old habanera rhythm or a commonplace "Surf Beat," which in either case long predates "Fish Market.** | | |
| 72. | "Fish Market Elements" 1 and 2, the combined four-on-the-floor kick drum pattern and snare, are the most prominent elements in "Fish Market" are the most prominent rhythmic elements in the drum pattern.<br><br>Ferrara Report at 13 ("The most prominent rhythmic elements in the "Fish Market" drumbeat that form its fundamental rhythm are the combined kick drum and accented snare drum."); Marshall Rebuttal at 3. | This is an opinion and not a fact to which a response is warranted. *See* Tookey Decl. Ex. 107 (Masis Dep. 35:2-19); Tookey Decl. Ex. 106 (Martinez Dep. 18:15-23, 30:23-31:8, 35:12-16, 43:23-45:1); Tookey Decl. Ex. 109 (Pesante Dep. 29:12-24, 72:22-74:16); Tookey Decl. Ex. 97 (at time marker 11:15-12:04), Ex. 99 (certified translation of cited portion of Ex. 97); Tookey Decl. Ex. 105 (W. Marshall Dep. 101:12-102:5, 225:20-226:1); Tookey Decl. Ex. 105 (W. Marshall Dep. 177:17-21); Tookey Decl. Ex. 105 (W. Marshall Dep. 238:1-14, 240:8-241:10), Ex. 83; Tookey Decl. Ex. 105 (W. Marshall Dep. 129:14-131:8); Tookey Decl. Ex. 112 (Veguilla Dep. 29:7-23, 31:9-17); Tookey Decl. Ex. 105 (W. Marshall Dep. 69:7-23, 73:16-75:2), Ex. 70 at Figures 1-6), Ex. 73 at 141, Ex. 74 (at March 4, 2009 at 9:02 pm, distinguishing between defining "dembow" as "boom-ch-boom-chick" and defining "dembow" as "a more specific pattern," and |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | stating "You can see/hear the difference I'm describing in the difference between Figure 1 and Figure 6 on this page" referring to Ex. 70); Tookey Decl. Ex. 105 (W. Marshall Dep. 99:22-101:11, 198:13-201:14)(testifying to significance of elements other than kick and snare); Finell Decl. Ex. 2 ¶¶ 13, 15, 23-24. |
| 73. | "Fish Market Element 1," a kick drum playing on beats 1, 2, 3, and 4, is a generic, metronomic pattern called "four-on-the-floor."<br><br>Marshall Report at 21; Bennett Report at 9; Ferrara Report at 2; Declaration of Lawrence Ferrara ISO MSJ, Ex. 2 ("Ferrara Rebuttal") at 2-3; PAF Report at 7 ("the layer consisting of the kick drum on each beat of the bar, which is used in "Fish Market," is common to many forms of popular music"). | Undisputed for purposes of this motion as a compositional element in isolation. Disputed as an element of the sound recording. |
| 74. | The four-on-the-floor beat appears in countless musical works, dating back centuries, including, perhaps most famously, as an element 1970s disco music.<br><br>Bennett Report at 9; Butler Report at 11,15; Ferrara Report at 2, n.2 ("Countless popular music songs in multiple genres have incorporated the four-on-the-floor musical building block rhythm since at least the 1950's"); Marshall Report at 21 ("This quarter note kick drum figure has been ubiquitous since the early 1970s, appearing not just in most disco songs but the lion's share of house, techno, and EDM productions…") | Undisputed for purposes of this motion as a compositional element in isolation. Disputed as an element of the sound recording. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| 75. | Plaintiffs' experts concede that the four-on-the floor pattern is generic and commonplace.<br><br>PAF Report at 7 ("kick drum on each beat of the bar…is common to many forms of popular music"); Bilby Dep. at 304:18-21; Browne Dep. at 68:25-69:7; Finell Dep. at 65:3-10. | Undisputed for purposes of this motion as a compositional element in isolation. Disputed as an element of the sound recording. |
| 76. | "Fish Market Element" 2 is a snare with so-called "ghost notes" on the third and eleventh sixteenth notes of each bar, complementing a snare on the fourth, seventh, twelfth, and fifteenth beats of each bar.<br><br>SCAC ¶ 648. | Undisputed for purposes of this motion. |
| 77. | Playing a note loud or soft (i.e., quieter) is a performance element, not a compositional element.<br><br>Finell Dep. at 120:19-121:2, 121:3-8, 121:22-122:1; Finell Rebuttal at ¶¶ 19.b, 33. | Disputed in part. Undisputed that any opinion disregarding the tambourine pattern based on a subjective perception that it "is relatively low in volume in the overall mix and does not contribute in any musically meaningful way to rhythmic feel" is irrelevant on this basis. Finell Decl. Ex. 2 ¶ 19(b). Disputed as to suggestion that ghost notes are not compositional elements, a suggestion which contravenes copyright law. *See New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 88–89 (S.D.N.Y. 2015) ("'[A]n accent is a *compositional* element that determines the variation in volume of any note in a song and are notated with a sideways V above the note in a composition.' Defendants again respond, with no legal support, that accents are |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | an element of performance rather than composition. At least one court has come to the contrary conclusion . . . consistent with common experience—anyone who has ever played music knows that accent notations are an integral part of the musical composition."). *See also* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23); Tookey Decl. Ex. 105 (W. Marshall Dep. 197:1-198:6, 263:7-11); Ashbourne-Firman Decl. Ex. 3 at 10-11; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 104 (Finell Dep. 74:4-14, 221:7-222:8, 224:15-226:21)(considering ghost notes as compositional element); Ashbourne-Firman Decl. Ex. 3 at 10-11 (considering ghost notes as compositional element, Bennett report flawed for not doing so); Bilby Decl. Ex. 1 at 43 (considering ghost notes as compositional element) |
| 78. | While the snare pattern in "Fish Market" includes ghost notes, the snare pattern in the "Pounder" recording does not.<br><br>Marshall Report at 20. | Disputed. *See* Tookey Decl. Ex. 105 (W. Marshall Dep. 197:1-198:6, 263:7-11); Ashbourne-Firman Decl. Ex. 3 at 10-11; Bilby Decl. Ex. 1 at 43. |
| 79. | The snare pattern (without the ghost notes) is a 3+3+2 rhythm, sometimes called a "tresillo." | Disputed. *See* Tookey Decl. Ex. 105 (W. Marshall Dep. 99:22-101:11, 198:13-201:14)("you |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Marshall Report at 27. | can't get 3 plus 3 plus 2 without playing on the first beat") |
| 80. | When that 3+3+2 snare rhythm is combined with the four-on-the-floor kick drum, it produces the prominent "boom-ch-boom-chick" beat in the "Fish Market" drum pattern, commonly referred to as a habanera rhythm.<br><br>Bennett Report at 12; Ferrara Report at 13 ("The combination of these elements forms a habanera rhythm, which is the fundamental rhythm of "Fish Market" and is a basic building block in music."); Butler Report at 7 ("The rhythm and its variants have existed for centuries as core musical elements."); Marshall Report at 49; Marshall Rebuttal at 3-4; Manuel Rebuttal at 10; Finell Dep. at 221:9-24. | Disputed in part. Undisputed that, in isolation, a "four-on-the-floor kick drum" with snare strikes only on the fourth, seventh, 12th, and 15th beats of the bar play a rhythm that could be characterized as a "habanera" rhythm. Disputed that such an isolated kick-snare pattern reflects the kick-snare pattern within the overall combination of drum, percussion, and bass elements in *Fish Market*, *Dem Bow*, and *Pounder Dub Mix II*. *See* Tookey Decl. Ex. 105 (W. Marshall Dep. 197:1-198:6, 263:7-11); Ashbourne-Firman Decl. Ex. 3 at 10-11; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 205:20-24)(conceding kick and snare pattern is not "boom-ch-boom-chick") |
| 81. | A habanera rhythm (which dates back to at least the 19th Century) is a basic musical building block, and one of the most common core rhythmic patterns in Afro-Cuban music.<br><br>Bennett Report at 12; Ferrara Report at 13 ("The combination of these elements forms a habanera rhythm, which is the fundamental rhythm of "Fish Market" and is a basic building block in music."); Butler Report at 7 ("The rhythm and its variants have existed for centuries as core musical elements."); Marshall Report at 49; Marshall Rebuttal at 3-4; Manuel Rebuttal at 10. | Undisputed that the idea of "a habanera rhythm" by itself, is a basic musical building block. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| 82. | When modern musicians refer to the "dembow beat," "dembow riddim," or "dembow," it is simply a shorthand reference to (or another name for) a habanera rhythm, played on a kick and snare.<br><br>Bennett Report at 6; Marshall Report at 17. | Disputed. *See* Tookey Decl. Ex. 5-6, Ex. 103 (Clark Dep. 51:6-9, 54:1-20, 55:12-21); Tookey Decl. Ex. 7-8, Ex. 103 (Clark Dep. 59:2-7, 67:5-68:6); Ashbourne-Firman Decl. Ex. 3 (at Ex. 1 to Ashbourne-Firman Rebuttal Report); Tookey Decl. Ex. 107 (Masis Dep. 11:16-13:16, 14:25-15:15, 20:8-22, 21:3-22:8); Tookey Decl. Ex. 107 (Masis Dep. 11:16-13:16, 17:9-15); Tookey Decl. Ex. 107 (Masis Dep. 32:21-33:2); Tookey Decl. Ex. 107 (Masis Dep. 35:2-19); Tookey Decl. Ex. 108 (Montalvo Dep. 13:10-20, 15:3-21); Tookey Decl. Ex. 108 (Montalvo Dep. 21:7-16, 28:1-7), Ex. 87 (at time markers 9:47-10:45 and 32:32-41); Tookey Decl. Ex. 108 (Montalvo Dep. 22:3-9); Tookey Decl. Ex. 112 (Veguilla Dep. 13:12-14:14, 18:10-17, 21:2-4); Tookey Decl. Ex. 112 (Veguilla Dep. 27:11-13, 44:21-45:7); Tookey Decl. Ex. 110 (Reyes Dep. 14:8-10, 22:8-21, 23:6-11); Tookey Decl. Ex. 110 (Reyes Dep. 31:4-32:8); Tookey Decl. Ex. 110 (Reyes Dep. 47:12-50:10); Tookey Decl. Ex. 111 (Rodriguez Dep. 11:11-12:17, 13:14-14:23, 16:19-22); Bouten Decl. Ex. 2.; Tookey Decl. Ex. 111 (Rodriguez Dep. 20:22-21:13, 25:7-26:7), Ex. 93 (at time marker 28:30-29:16), Ex. 94 (certified translation of cited portion of Ex. 93), Ex. 95 (custodian of records declaration |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | for Ex. 93); Tookey Decl. Ex. 106 (Martinez Dep. 14:22-18:13); Tookey Decl. Ex. 106 (Martinez Dep. 18:15-23, 30:23-31:8, 35:12-16, 43:23-45:1); Tookey Decl. Ex. 109 (Pesante Dep. 14:25-15:23, 20:18-21, 21:6-23, 81:6-9); Bouten Decl. Ex. 1.; Tookey Decl. Ex. 96 (at time marker 17:07-42), Ex. 98 (custodian of records declaration for Ex. 96-97); Tookey Decl. Ex. 96 (at time marker 19:29-53); Tookey Decl. Ex. 96 (at time marker 20:46-22:17); Tookey Decl. Ex. 109 (Pesante Dep. 29:12-24, 72:22-74:16); Tookey Decl. Ex. 97 (at time marker 11:15-12:04), Ex. 99 (certified translation of cited portion of Ex. 97); Tookey Decl. Ex. 105 (W. Marshall Dep. 243:11-15), Ex. 84; Tookey Decl. Ex. 105 (W. Marshall Dep. 247:23-248:2, 249:4-250:7), Ex. 84 ("Dem Bow Legacies" post), Ex. 85 (Dr. Marshall's "Dem Bow Mix"); Tookey Decl. Ex. 105 (W. Marshall Dep. 238:1-14, 240:8-241:10), Ex. 83; Tookey Decl. Ex. 105 (W. Marshall Dep. 88:8-89:3, 227:4-13), Ex. 81 (at time markers 23:28-25:28, 25:45-26:06, 26:33-52, 33:50-34:20); Tookey Decl. Ex. 105 (W. Marshall Dep. 159:11-24, 161:6-163:11), Ex. 78; Tookey Decl. Ex. 105 (W. Marshall Dep. 175:14-176:10), Ex. 79; Tookey Decl. Ex. 3-4, Ex. 103 (Clark Dep. 33:5-25); Tookey Decl. Ex. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 112 (Veguilla Dep. 29:7-23, 31:9-17); Tookey Decl. Ex. 105 (W. Marshall Dep. 69:7-23, 73:16-75:2), Ex. 70 at Figures 1-6), Ex. 73 at 141, Ex. 74 (at March 4, 2009 at 9:02 pm, distinguishing between defining "dembow" as "boom-ch-boom-chick" and defining "dembow" as "a more specific pattern," and stating "You can see/hear the difference I'm describing in the difference between Figure 1 and Figure 6 on this page" referring to Ex. 70); Tookey Decl. Ex. 105 (W. Marshall Dep. 76:16-78:16, 79:11-20), Ex. 81 (at time marker 6:05-6:50). |
| 83. | Plaintiffs' experts, including their only retained musicologist, Judith Finell, admit that the kick snare rhythm is not original.<br><br>See Marshall Rebuttal at 3-4 (discussing Bilby Report 14-15); Finell Dep. at 215:5-25 ("Q. Either one. The kick snare combination with the ghost note or the kick snare without the ghost note. You're not opining that any one of those itself apart from the other elements in the combination is original to "Fish Market"; right? A. Is not original by itself as a rhythm."); see also Finell Dep. at 221:23-24 ("[I]f you drop out the ghost notes, you've got a Habanera rhythm."). | Undisputed for purposes of this motion as compositional elements in isolation. Disputed as elements of the sound recording. |
| 84. | The habanera rhythm that underlies the core rhythmic pattern of the claimed "Fish Market" drum beat originates from the African continent, and was retained in the musical practices of enslaved Africans in the "New World," including Jamaica. | Disputed. *See* Finell Decl. Ex. 2 ¶ 30 n.6. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Butler Report at 7-8. | |
| 85. | The rhythm became a significant feature of the music performed during Revivalism/Pocomania ceremonies and in the Pentecostal churches in Jamaica throughout the twentieth century.<br><br>Butler Report at 10. | Disputed. See Bilby Decl. Ex. 3 at 9-27; Tookey Decl. Ex. 101 (Bilby Dep. 283:6-22); Bilby Decl. Ex. 3 at 27-29; Tookey Decl. Ex. 101 (Bilby Dep. 278:20-25)(conflating "Revivalism/Pocomania" as homogeneous musical tradition is flawed, no standardized features, isolated fragments that match rhythmic value of "habanera" rhythm can appear within larger patterns); Bilby Decl. Ex. 3 at 24-27, 29. |
| 86. | Plaintiffs have repeatedly admitted over the years that "Fish Market" was influenced by and intended to be Pentecostal revival music "digitized."<br><br>Butler Report at 18-20; Butler Report at 19 n.13 (citing Taylor, Angus. 2019 "Interview with Cleveland 'Clevie' Browne - Making Music For The Public.,"www.Reggaeville.com., https://www.reggaeville.com/artistdetails/steely- clevie/news/view/interview-withcleveland-clevie-browne-making-musicfor-the-public/ ("…Clevie, let's try a Poco beat….So Poco Man Jam is like a revival beat digitized.")); Akley Decl., Ex. 13, (Interview by Kenneth Bilby with Cleveland Browne and Wycliffe Johnson, in Kingston, Jam. (2005) (transcript available) at 115:11 – 116:12, referenced in Bilby Report at 17 n.22 ("CLEVELAND BROWNE: … While at high school with him, he invited me to come to the church and I played drums there occasionally. And that was the beat that most of the songs - | Undisputed. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | - it was a Pentecostal church. That was the beat and the tambourines and all that. And when Steely mentioned it to me, I said, I know the beat. [...] And I knew exactly what he was talking about because I used to play the same beat, you know …"); see also infra SUF 170-178. | |
| 87. | In a 2005 interview, Kenneth Bilby (Plaintiffs' now-retained expert in this action) asked Cleveland Browne whether the "Fish Market" rhythm "ha[d] elements of things that [Browne] heard," and Browne responded: "It did have elements of things that I heard in church."<br><br>Interview by Kenneth Bilby with Cleveland Browne and Wycliffe Johnson, in Kingston, Jam. (2005) (transcript available) at 113:23-114:4, referenced in Bilby Report at 17 n.22 ("KENNETH BILBY: I want to ask Clevie about this as a drummer, how you thought -- is this a beat that you were familiar with at all, I mean, or not familiar with, but does it have elements of things that you heard? CLEVELAND BROWNE: It did have elements of things that I heard in church.") | Undisputed. |
| 88. | Plaintiff Wycliffe Johnson also told Bilby in that interview that Pentecostal music inspired him in making "Fish Market."<br><br>Browne Dep. at 93:9-13, 94:24-95:10 ("Q. So when you did Fish Market in [sic] Poco Man Jam and when you talked about it with Delphin, you believed that you had used or had been influenced by the Pentecostal beats, the revival beats that you heard in the Pentecostal Church and it was only about two years ago that you realized you were wrong? A. Yeah."), 139:20-25 ("Q. So all of your whole life, from 1989 until 2019, | Undisputed. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | which is, I think 40 years, you believed that Poco Man Jam was taken from or was influenced by or was revival beat digitized, correct? A. Yeah, that's what I thought.") | |
| 89. | The habanera rhythm that is the fundamental rhythm in the "Fish Market" drum beat is not original.<br><br>Bennett Report at 12; Ferrara Report at 13 ("The combination of these elements forms a habanera rhythm, which is the fundamental rhythm of "Fish Market" and is a basic building block in music."); Butler Report at 7 ("The rhythm and its variants have existed for centuries as core musical elements."); Marshall Report at 49; Marshall Rebuttal at 3-4; Manuel Rebuttal at 10. | Disputed that "The habanera rhythm [] is the fundamental rhythm in the 'Fish Market' drum beat[.]" *See* Tookey Decl. Ex. 107 (Masis Dep. 35:2-19); Tookey Decl. Ex. 106 (Martinez Dep. 18:15-23, 30:23-31:8, 35:12-16, 43:23-45:1); Tookey Decl. Ex. 109 (Pesante Dep. 29:12-24, 72:22-74:16); Tookey Decl. Ex. 97 (at time marker 11:15-12:04), Ex. 99 (certified translation of cited portion of Ex. 97); Tookey Decl. Ex. 105 (W. Marshall Dep. 101:12-102:5, 225:20-226:1); Tookey Decl. Ex. 105 (W. Marshall Dep. 177:17-21); Tookey Decl. Ex. 105 (W. Marshall Dep. 238:1-14, 240:8-241:10), Ex. 83; Tookey Decl. Ex. 105 (W. Marshall Dep. 129:14-131:8); Tookey Decl. Ex. 112 (Veguilla Dep. 29:7-23, 31:9-17); Tookey Decl. Ex. 105 (W. Marshall Dep. 69:7-23, 73:16-75:2), Ex. 70 at Figures 1-6), Ex. 73 at 141, Ex. 74 (at March 4, 2009 at 9:02 pm, distinguishing between defining "dembow" as "boom-ch-boom-chick" and defining "dembow" as "a more specific pattern," and stating "You can see/hear the difference I'm<br>describing in the difference between Figure 1 and Figure 6 on this page" referring to Ex. 70) |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | (testifying to significance of elements other than kick and snare), 90 (kick snare pattern is not same as "habanera" rhythm), 100 (testifying that elements other than kick and snare are not same a "habanera" rhythm and "you can't get 3 plus 3 plus 2 without playing on the first beat") |
| 90. | At least twenty prior art works containing the same rhythm present in "Fish Market" were identified by the PC Defendants' experts, but there are countless others.<br><br>Ferrara Report at 14-28; Marshall Report at 32-43; Bennett Report at 11-16, 23-34 and Appendix C; Bennett Rebuttal Report at 8-12; Butler Report at 9-16. | Undisputed that countless works predating *Fish Market* include / contain a habanera rhythm. |
| 91. | If one considers the softer snare hits ("ghost notes") as an essential part of the rhythmic pattern of Plaintiffs' Claimed Works, it is simply an "offbeat" accent of beats one and three (i.e., the "third and eleventh" sixteenth notes of the bar).<br><br>Marshall Report at 28. | Disputed. *See* Tookey Decl. Ex. 105 (W. Marshall Dep. 99:22-101:11, 198:13-201:14). |
| 92. | This offbeat accent of beats one and three (i.e., the "third and eleventh" sixteenth notes of the bar) describes the snare pattern of a commonplace "oom papa, oom pah" beat referred to as the "Surf Beat," (or "Girl Group Beat") when combined with the four-on-the-floor kick drum.<br><br>Bennett Report at 12-15; Bennett Rebuttal Report at 5 ¶ A, 9-12; Finell Report at 6 (showing the kick and snare "tiers" as a Surf Beat); Marshall Report | Disputed in part. Undisputed that, in isolation, a "four-on-the-floor kick drum" with snare strikes on the third, fourth, seventh, 11th, 12th, and 15th beats of the bar, with no ghost notes and a straight eighths feel, is fairly characterized as a "surf beat" rhythm. Disputed that such an isolated kick-snare pattern reflects the kick-snare pattern within the overall combination of drum, percussion, and bass |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | at 28; Marshall Rebuttal at 9-10; Manuel Rebuttal at 21. | elements in *Fish Market*, *Dem Bow*, and *Pounder Dub Mix II*. *See* Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 206:19-23, 208:2-15, 244:2-245:3); Ashbourne-Firman Decl. Ex. 3 at 8-9, 11. |
| 93. | This kick snare pattern is a basic musical building block that was commonplace in popular music decades before "Fish Market" was created.<br><br>Bennett Report at 12-15; Marshall Report at 28; Marshall Rebuttal at 9-10; Manuel Rebuttal at 21. | Undisputed that, in isolation, a "four-on-the-floor kick drum" with snare strikes on the third, fourth, seventh, 11th, 12th, and 15th beats of the bar, with no ghost notes and a straight eighths feel, was commonplace prior to the creation of *Fish Market*. Otherwise disputed: the cited evidence does not establish that purported fact. |
| 94. | Numerous prior art works contain the combination of the four-on the-floor kick drum and snare pattern (with the ghost notes).<br><br>Bennett Report at 12, 15 ("Mr. Rebel"); Marshall Report at 28 ("[T[his rhythm, which suggests more of an "offbeat" accent than a 3+3+2 subdivision (i.e., accenting beats 1&, 2&, 3&, and 4&), shares the same accents where the guitar or keyboard plays in countless traditional reggae songs (e.g., Larry Marshall, "Nanny Goat," 1973) and, as played by snares or hand claps, it was the basic "girl group" beat as heard on countless pop songs in the early 1960s: e.g., the Marvelettes' "Please Postman" (1961), the Angels' "My Boyfriend's Back" (1963) or the Chiffons' "He's So Fine" (1963), to name just a few."); Ferrara Report at 23-27 (including Roy Orbison "Only the Lonely" and drum manual examples); Manuel | Disputed in part. Undisputed that, in isolation, a "four-on-the-floor kick drum" with snare strikes on the third, fourth, seventh, 11th, 12th, and 15th beats of the bar, with no ghost notes and a straight eighths feel, existed before the creation of *Fish Market*. Otherwise disputed. *See* Tookey Decl. Ex. 105 (Marshall Dep. 40:14-41:13), Ex. 70 at Figure 2. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Rebuttal at 21; Finell Dep. at 213:2–214:1; PAF Dep. at 247:15-250:7, 256:14-18. | |
| 95. | Judith Finell testified that the kick snare combination with or without the ghost note "[i]s not original by itself as a rhythm."<br><br>Finell Dep. at 215:5-25 ("Q. Either one. The kick snare combination with the ghost note or the kick snare without the ghost note. You're not opining that any one of those itself apart from the other elements in the combination is original to "Fish Market"; right? A. Is not original by itself as a rhythm.") | Undisputed for purposes of this motion as compositional elements in isolation. Disputed as elements of the sound recording. |
| **2. The Hi-Hat, Tom and "Synth Bass" in "Fish Market" (Elements 3, 5, and 7) Double the Kick and Are Not Additional Rhythmic Elements** | | |
| 96. | Plaintiffs place different instruments playing the rhythm in "Fish Market" on separate staffs.<br><br>SCAC ¶ 188; Ferrara Report at 3, 9-14; Marshall Report at 22-23. | Undisputed that the composite drum, percussion, and bass pattern in *Fish Market*, *Dem Bow*, and *Pounder Dub Mix II* has been notated on separate staffs. |
| 97. | The choice of instruments (or instrument sounds) is not compositional.<br><br>Marshall Report at 21; Bennett Rebuttal at 3; Finell Report at 4 (instrument choice is not compositional, as she asserts that a vocalization of a rhythmic pattern could be an infringement of an instrumental rhythmic pattern played across multiple instruments); Butler Rebuttal at 6, 9 n.8; Marshall Rebuttal at 8; Finell Dep. at Ex. 96; see also Finell Dep. at 73:6-8, 117:10-24 (instrumentation "is considered part of the arrangement and part of the recording performance copyright"),118:16-120:18, 140:1-23; 142:3-13; 133:10-135:20. | Disputed. *See* Resp. to ¶¶ 37-38, 52, 58 above. |
| 98. | The hi-hat, tom and bass synth sounds simply duplicate (i.e., "double") the rhythm | Disputed. The low "tom" and bassline patterns (quarter notes on beats one and three) are not the |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | provided by the kick drum sound, providing no additional rhythm.<br><br>Ferrara Report at 13-14; Butler Report at 5; Marshall Report at 17 ("What the Disputed Works actually share are the four-on-the-floor kick drum with snares creating a 3+3+2 cross rhythm (as well as the doubling of such rhythms by the tom, bass, and hi-hat)."); Marshall Rebuttal at 8; Manuel Rebuttal at 5; Finell Dep. at 100:15-101:14; Marshall Report at 21-22; Butler Rebuttal at 9 (explaining that the tom drum is an aspect that "add[s] no new rhythm to that 'dem bow beat"); Bilby Dep at 214:20-25; Browne Dep. at 80:13-19; Finell Dep. at 266:13-17 ("[I]f they're doubling one another purely, then it's the same rhythm"); Ferrara Report at 12: Marshall Report at 23. | same as the kick and hi-hat patterns (quarter notes on beats one, two, three, and four). *See* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23). Disregards differences in horizontal and vertical characteristics, differences in instrumentation, differences in each pattern notwithstanding points of rhythmic intersection, and distinction between pitched and non-pitched elements. *See* Finell Decl. Ex. 2 ¶¶ 11, 22; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 136:12-18, 195:10-15), Ex. 104 (Finell Dep. 265:24-266:12); Finell Decl. Ex. 2 ¶¶ 12, 14, 16, 22; Ashbourne-Firman Decl. Ex. 3 at 9-10; Tookey Decl. Ex. 70 (notating as discrete elements rhythmic patterns that occasionally intersect on same beats), Ex. 100 (Ashbourne-Firman Dep. 144:3-145:6); Tookey Decl. Ex. 104 (Finell Dep. 123:7-124:24). |
| 99. | It is musicologically indisputable that "doubling" the hi-hat, tom, and bass (i.e., playing those sounds on beats that are already being played by the kick drum) does not change the commonplace habanera or "Surf Beat" rhythm employed in "Fish Market." | Disputed. *See* Resp. to ¶ 98 above; Tookey Decl. Ex. 104 (Finell Dep. 74:4-14, 221:7-222:8, 224:15-226:21); Tookey Decl. Ex. 105 (W. Marshall Dep. 99:22-101:11, 198:13-201:14) (tambourine, timbales, bassline, |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Ferrara Report at 12, 13-14; Finell Dep. at 266:13-17, 126:16-23, 131:14-17. | low "tom" are "not accounted for in the Habanera," "the snare itself isn't fully fleshed out in the Habanera"), 90 (kick and snare pattern is not "habanera" rhythm), 91 (kick and snare pattern is not "surf" beat), 92 (notating discrete compositional elements despite occasional rhythmic intersection) |
| 100. | Finell admits that these instruments (or instrument sounds) do not create any different or additional rhythm from what is played on the kick and snare.<br><br>Finell Dep. at 126:16-23, 131:14-17, 266:13-17 ("[I]f they're doubling one another purely, then it's the same rhythm"). | Disputed. *See* Tookey Decl. Ex. 104 (Finell Dep. 74:4-14, 221:7-222:8, 224:15-226:21). |
| | **a. "Fish Market" Element 3—A hi-hat playing a one bar pattern together with the programmed kick on beats one to four is not original or protectable** | |
| 101. | Plaintiffs include the hi-hat playing the same four beats as the kick drum as a "Fish Market Element."<br><br>SCAC ¶ 648. | Undisputed for purposes of this motion. |
| 102. | The hi-hat duplicates (doubles) the four-on-the-floor kick pattern and the accented snare.<br><br>Ferrara Report at 13-14; Butler Report at 5; Marshall Report at 17 ("What the Disputed Works actually share are the four-on-the-floor kick drum with snares creating a 3+3+2 cross rhythm (as well as the doubling of such rhythms by the tom, bass, and hi-hat)."); Marshall Rebuttal at 8; Manuel Rebuttal at 5; Finell Dep. at 100:15-101:14. | Disputed in part. Undisputed that the kick pattern and hi-hat pattern both play quarter notes on beats one, two, three, and four of the bar. Otherwise disputed, as snare pattern does not play quarter notes nor any strikes on beats one, two, three, or four of the bar. *See* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 177:6-21), Ex. 101 (Bilby Dep. 216:4-23). |
| 103. | Because the hi-hat duplicates or "doubles" the same rhythm that is already present in the kick drum and snare, it does not provide any different or additional rhythm.<br><br>Ferrara Report at 14; Manuel Rebuttal at 5; Bilby Dep. at 304:22-305:1 (Q. Okay. And if I were to use a four on the floor kick pattern and add a hi-hat on all four of those beats, one, two, three, and four, would I have created a new rhythm? A. No.); Browne Dep. at 74:20-25; Dep. at 131:14-19. | Disputed to the extent this "fact" disregards differences in horizontal and vertical characteristics, differences in instrumentation, differences in each pattern notwithstanding points of rhythmic intersection. *See* Finell Decl. Ex. 2 ¶¶ 11, 22; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 136:12-18, 195:10-15), Ex. 104 (Finell Dep. 265:24-266:12); Finell Decl. Ex. 2 ¶¶ 12, 14, 16, 22; Ashbourne-Firman Decl. Ex. 3 at 9-10; Tookey Decl. Ex. 70 (notating as discrete elements rhythmic patterns that occasionally intersect on same beats), Ex. 100 (Ashbourne-Firman Dep. 144:3-145:6); Tookey Decl. Ex. 104 (Finell Dep. 123:7-124:24). |
| 104. | Because the hi-hat duplicates the rhythm played by the kick drum and snare, for purposes of rhythmic analysis, the hi-hat can be filtered out of (i.e., removed from) the transcription of the drum pattern in "Fish Market."<br><br>Ferrara Report at 14; Marshall Report at 22. | Disputed. Hi-hat pattern is not the same as (does not even intersect with) snare pattern. *See* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23). This is a selection and arrangement claim, filtering is factually and legally improper. *See* Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 243:3-23), Ex. 104 (Finell Dep. 279:9-280:16), Tookey Decl. Ex. 116 (Bennett, "We Can Work It Out: Methods in Forensic Musicology," at n.47), Tookey Decl. Ex. 104 (Finell Dep. 245:23-246:10); *Sound & Color, LLC v. Smith*, 2025 WL 1232639, at *1 (9th Cir. Apr. 29, 2025) ("[A] selection-and-arrangement theory is an alternative to filtering . . . our analysis does not filter out the musical elements that would be individually unprotectable"), *citing Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942 (9th Cir. 2023). |
| 105. | Plaintiffs' only expert musicologist, Finell, acknowledges that the hi-hat should be filtered out as she did not include the hi-hat (or other duplicative rhythmic elements) in what she opines is the original combination.<br><br>Finell Dep. at 100:15-101:14 ("[S]ome of the other elements are completely duplicative and not included.") | Disputed. *See* Browne Decl. ¶ 12, Ex. 1; Ashbourne-Firman ¶ 11, Ex. 1, Ex. 2 at 4-5; Finell Decl. Ex. 1 at 4-7, Ex. 2 ¶¶ 10-11; Bilby Decl. Ex. 1 at 19-29; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 219:2-16, 130:2-5), Ex. 104 (Finell Dep. 56:5-23, 63:2-64:4, 103:1-105:11, 131:3-11, 133:2-9, 152:15-24, 270:12-24), Ex. 101 (Bilby Dep. 106:4-9, 121:17-122:12, 236:4-240:25, 244:6-245:25, 252:17-24), Finell Decl. Ex. 2 ¶¶ 11, 22; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 136:12-18, 195:10-15), Ex. 104 (Finell Dep. 265:24-266:12); Finell Decl. Ex. 2 ¶¶ 12, 14, 16, 22; Ashbourne-Firman Decl. Ex. 3 at 9-10; Tookey Decl. Ex. 70 (notating as discrete elements rhythmic patterns that |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | occasionally intersect on same beats), Ex. 100 (Ashbourne-Firman Dep. 144:3-145:6); Tookey Decl. Ex. 104 (Finell Dep. 123:7-124:24); Tookey Decl. Ex. 104 (Finell Dep. 72:6-74:3)(opining combination of elements consists of kick, snare, hi-hat, low "tom," timbale, bassline, and with and without tambourine) |
| 106. | Finell does not consider the hi-hat one of the "essential" elements of the "Fish Market" drum pattern.<br><br>Finell Dep. at 99:13-100:3, 104:15-105:6, 105:19-106:14. | Disputed. *See* Browne Decl. ¶ 12, Ex. 1; Ashbourne-Firman ¶ 11, Ex. 1, Ex. 2 at 4-5; Finell Decl. Ex. 1 at 4-7, Ex. 2 ¶¶ 10-11; Bilby Decl. Ex. 1 at 19-29; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 219:2-16, 130:2-5), Ex. 104 (Finell Dep. 56:5-23, 63:2-64:4, 103:1-105:11, 131:3-11, 133:2-9, 152:15-24, 270:12-24), Ex. 101 (Bilby Dep. 106:4-9, 121:17-122:12, 236:4-240:25, 244:6-245:25, 252:17-24), Finell Decl. Ex. 2 ¶¶ 11, 22; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 136:12-18, 195:10-15), Ex. 104 (Finell Dep. 265:24-266:12); Finell Decl. Ex. 2 ¶¶ 12, 14, 16, 22; Ashbourne-Firman Decl. Ex. 3 at 9-10; Tookey Decl. Ex. 70 (notating as discrete elements rhythmic patterns that occasionally intersect on same beats), Ex. 100 (Ashbourne-Firman Dep. 144:3-145:6); Tookey Decl. Ex. 104 (Finell Dep. 123:7-124:24); Tookey Decl. Ex. 104 (Finell Dep. 72:6-74:3)(opining combination of |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | elements consists of kick, snare, hi-hat, low "tom," timbale, bassline, and with and without tambourine) |
| 107. | Even if the hi-hat was considered in the analysis, the use of a hi-hat cymbal to keep 4/4 time is commonplace.<br><br>Marshall Report at 22; Bennett Report at 16 ("The hi-hat is playing 4 beats to the bar – again, the simplest and perhaps the most commonplace musical rhythm possible."); PAF Dep. at 176:24–177:5; Finell Dep. at 64:5-13 ("Q. Okay. And is it -- is it safe to say that a hi-hat line four to the bar probably is not original to plaintiffs; right**? A. I don't believe it's original to the plaintiffs by itself."**) | Disputed in part that pattern was common at the time Plaintiffs' work was created: the cited evidence does not establish that. *See* Ashbourne-Firman Decl. ¶¶ 12-14; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 112:5-15, 173:3-9, 177:6-20, 174:18-175:21, 178:14-179:10, 180:19-181:25, 185:17-22, 187:21-188:15, 189:7-10, 296:22-297:1, 299:2-11). Otherwise undisputed for purposes of this motion that Plaintiffs do not claim that the hi-hat pattern is an original compositional (as opposed to sound recording) element on its own. |
| 108. | Plaintiffs insist that the hi-hat playing on beats one to four, standing alone, is original to Plaintiffs and protectable.<br><br>Akley Decl., Ex. 14 ("Browne's Responses to Sony's First RFAs") Nos. 21-23. | Disputed in part. Plaintiffs do not claim that the hi-hat pattern is an original compositional (as opposed to sound recording) element on its own. |
| 109. | Examples of well-known songs using a hi-hat to play this pattern that existed before "Fish Market" include: "Down on the Corner (Creedence Clearwater Revival, 1969); "Roxanne" (The Police, 1978); "London Calling" (The Clash, 1979); "Rock Lobster" (The B-52's, 1979), and "Back in Black" (AC/DC, 1980).<br><br>Bennett Report at 16; see also Marshall Report at 43. | Disputed. *See* Tookey Decl. Ex. 105 (W. Marshall Dep. 215:24-216:7)(conceding that "prior art" found for hi-hat pattern was not same hi-hat pattern in *Fish Market*); Ashbourne-Firman Decl. Ex. 3 at 15 n.15 (explaining that "prior art" references in this paragraph "unlike the hi-hat pattern in the Fish Market riddim, (1) are variable, such as including eighth note hi-hat patterns in Down on the Corner, Roxanne, |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | and Back In Black (the hi-hat pattern in Fish Market is consistently quarter notes occurring on each downbeat of a bar); and (2) occur in different pulses, similarly rendering the duration of notes making up the hi-hat pattern different") |
| **b. "Fish Market Element" 5—A synthesized tom playing on beats one and three is not original or protectable** | | |
| 110. | The tom drum (which Finell alternatively refers to as a bass drum) on beats 1 and 3 merely duplicates ("double") the kick drum on the same beats.<br><br>Ferrara Report at 13; Marshall Report at 22; see also Finell Report at 4 n.2. | Disputed. The low "tom" pattern is quarter notes on beats one and three of the bar, whereas the kick pattern is quarter notes on beats one, two, three, and four of the bar. *See* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23); Tookey Decl. Ex. 105 (W. Marshall Dep. 135:12-19), Ex. 100 (Ashbourne-Firman Dep. 174:18-175:21, 178:14-179:10) (conceding "tom" can be notated as discrete compositional element); Finell Decl. Ex. 2 ¶ 16(b) and n.4 (acknowledging inadvertent "discrepancy" of referring to "tom" as "bass drum," explaining why it is "insignificant") |
| 111. | The tom drum does not create any additional rhythm in "Fish Market."<br><br>Ferrara Report at 14; Marshall Report at 21-22; Butler Rebuttal at 9 (explaining that the tom drum is an aspect that "add[s] no new | Disputed. The low "tom" pattern is quarter notes on beats one and three of the bar, whereas the kick pattern is quarter notes on beats one, two, three, and four of the bar. *See* Browne Decl. ¶ 9, Ex. 1; |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | rhythm to that 'dem bow beat"); Bilby Dep at 214:20-25; Browne Dep. at 80:13-19; Finell Dep. at 266:13-17 ("[I]f they're doubling one another purely, then it's the same rhythm.") | Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23), Tookey Decl. Ex. 105 (W. Marshall Dep. 135:12-19), Ex. 100 (Ashbourne-Firman Dep. 174:18-175:21, 178:14-179:10). Disregards differences in horizontal and vertical characteristics, differences in instrumentation, differences in each pattern notwithstanding points of rhythmic intersection. *See* Finell Decl. Ex. 2 ¶¶ 11, 22; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 136:12-18, 195:10-15), Ex. 104 (Finell Dep. 265:24-266:12); Finell Decl. Ex. 2 ¶¶ 12, 14, 16, 22; Ashbourne-Firman Decl. Ex. 3 at 9-10; Tookey Decl. Ex. 70 (notating as discrete elements rhythmic patterns that occasionally intersect on same beats), Ex. 100 (Ashbourne-Firman Dep. 144:3-145:6); Tookey Decl. Ex. 104 (Finell Dep. 123:7-124:24). |
| 112. | Because they duplicate the rhythm played by the kick drum, for purposes of rhythmic analysis, the hi-hat and tom hits (or sounds) can be filtered out of (i.e., removed from) the transcription of the drum pattern in "Fish Market."<br><br>Ferrara Report at 14; Finell Dep. at 100:15-101:10, 127:9-25 . | Disputed. Hi-hat pattern and kick drum pattern are not the same as the low "tom" pattern. *See* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16- |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23). This is a selection and arrangement claim, filtering is factually and legally improper. *See* Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 243:3-23), Ex. 104 (Finell Dep. 279:9-280:16), Tookey Decl. Ex. 108 (Montalvo Dep. 22:3-9), Tookey Decl. Ex. 104 (Finell Dep. 245:23-246:10); *Sound & Color, LLC v. Smith*, 2025 WL 1232639, at *1 (9th Cir. Apr. 29, 2025) ("[A] selection-and-arrangement theory is an alternative to filtering . . . our analysis does not filter out the musical elements that would be individually unprotectable"), *citing Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942 (9th Cir. 2023). |
| 113. | Even if the tom was considered in the analysis, the placement of a low drum (such as the tom) sound on beats 1 and 3 is commonplace in popular music.<br><br>Marshall Report at 22; Bennett Report at 19 ("Beats one and three are the strongest beats in most popular music; a rhythmic instrument playing on beats one and three is one of the most common choices for a bass or drum part.") | Disputed in part that pattern was common. *See* Ashbourne-Firman Decl. ¶¶ 12-14; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 112:5-15, 173:3-9, 177:6-20, 174:18-175:21, 178:14-179:10, 180:19-181:25, 185:17-22, 187:21-188:15, 189:7-10, 296:22-297:1, 299:2-11). Otherwise undisputed for purposes of this motion that Plaintiffs do not claim that the low "tom" pattern is an original compositional (as opposed to sound recording) element on its own. |
| 114. | Examples of well-known musical works using a synthesized tom playing on beats one and three, which existed before "Fish Market," include: "Jealous Guy" (Roxy | Disputed. *See* Ashbourne-Firman Decl. Ex. 3 at 16 n.17 (explaining that none of "prior art" references in this paragraph "include a 'tom' |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Music, 1981); "Dress You Up" (Madonna, 1984); and "The Safety Dance" (Men Without Hats, 1982).<br><br>Bennett Report at 19. | drum playing on beats one and three of the bar") |
| | **c. "Fish Market Element" 7—A synthesized b-flat bass note on beats one and three of each bar, which follows the aforementioned synthesized "tom" pattern is not original or protectable** | |
| 115. | The synth bass not does create an additional rhythm in "Fish Market."<br><br>Ferrara Report at 12; Marshall Report at 23. | Disputed as vague, lacking any reference point as to what the bassline is allegedly not rhythmically adding to. Also disputed as additional rhythm not a requirement to be element within overall combination, especially as bass is the only pitched element. *See* Finell Decl. Ex. 2 ¶ 22. |
| 116. | The synth bass merely doubles (duplicates) beats played by the kick drum and snare.<br><br>Ferrara Report at 12; Marshall Report at 23; (Akley Decl., Ex. 15 ("Marshall Dep.") at 180:22-181:1, 182:7-9. | Disputed. Bassline plays quarter notes on beats one and three of the bar; kick pattern plays quarter notes on beats one, two, three, and four of the bar; and the snare strikes on the third (ghost note), fourth, seventh, 11th (ghost note), 12th, and 15th beats of the bar. *See* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23). |
| 117. | The placement of bass on beats 1 and 3 is commonplace in popular music.<br><br>Marshall Report at 23; Bennett Report at 19 ("Beats one and three are the strongest beats in most popular music; a rhythmic | Disputed in part that pattern was common. *See* Plaintiffs' Finell Decl. Ex. 2 ¶ 11 n.3. Otherwise undisputed for purposes of this motion that Plaintiffs do not claim that the bass pattern is an |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | instrument playing on beats one and three is one of the most common choices for a bass or drum part."); Finell Dep. at 202:16-19 ("And it's not your view that playing a B-flat bass note on beats one and three is itself a form of expression that's original to plaintiffs; right? **A**. No. Not by – not by itself.") | original compositional (as opposed to sound recording) element on its own. |
| 118. | Examples of well-known musical works using a bass playing on beats one and three, which existed before "Fish Market" include: "Canon in D" (Johann Pachelbel, c.1706); "Some Enchanting Evening" (Perry Como, 1949); and "The Long and Winding Road" (The Beatles, 1970).<br><br>Bennett Report at 21. | Disputed. *See* Ashbourne-Firman Decl. Ex. 3 at 16 n.19 (explaining that, in citing the "prior art" references in this paragraph, Dr. Bennett appears to disregard that these bass patterns are largely comprised of minims (among other note durations), not crotchets (as is played in the Fish Market riddim's bass pattern)") |
| 3. "Fish Market Elements" 4 and 6—the timbales and tambourine—are auxiliary elements inaccurately described in the SCAC and not part of the prominent drum rhythm | | |
| 119. | Plaintiffs have pulled the timbales from the "Pounder" recording and combined them with the other elements that exist in "Fish Market" to create a claimed original "combination" that does not exist in any of Plaintiffs' Claimed Works.<br><br>Marshall Report at 26; Manuel Rebuttal at 26; Bilby Dep. at 232:18-233:1 (Q. Okay. So the timbales part in Pounder is not the same as the timbales part in Fish Market, right? A. Right); Browne Dep. at 85:11-19. | Disputed. *Pounder Dub Mix II* features excerpted portions of timbale pattern from *Fish Market*. *See* Browne Decl. ¶ 11, Ex. 1; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 102 (Browne Dep. 84:6-88:19), Browne Decl. ¶ 18, Ex. 2; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 156:1-14, 262:3-16), Ex. 101 (Bilby Dep. 234:2-13), Ex. 102 (Browne Dep. 84:6-88:19). |
| 120. | The timbales in "Fish Market" were improvised and non-repeating.<br><br>Ferrara Report at 14; Bennett Report at 35, n.42 ("the AUX lines are not consistent in FISH89, with the (presumably improvised) timbale in particular varying throughout"); | Disputed in part. Undisputed that the timbale pattern in *Fish Market* was ad-libbed. Otherwise disputed, as *Pounder Dub Mix II* excerpted portions from the full length timbale pattern in *Fish Market* and looped those portions. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Marshall Report at 15, 16-17; Butler Rebuttal at 3 ("Dr. Bilby further states that the timbales parts in "Fish Market" were improvised …); Manuel Rebuttal at 26-27; Bilby Dep. at 189:25-190:2; Browne Dep 85:6-9; Finell Dep. at 100:24-101:14, 197:12-198:4. | Tookey Decl. Ex. 102 (Browne Dep. 84:6-88:19). |
| 121. | As improvised and nonrepeating, the timbales are auxiliary to (and not part of) the fundamental "habanera" or "Surf beat" rhythm of the kick and snare (doubled by the hi-hat, tom and bass).<br><br>Ferrara Report at 14; Bennett Rebuttal Report at 5; Finell Report at 4, PAF Report at 5 (Plaintiffs' experts acknowledge that the timbales in FISH89 are "embellishments"); Finell Report at 6 (does not include timbales in any of her transcriptions of the "four tiers"); PAF Report at 5 (repeatedly subtracts the timbales from FISH89's fundamental rhythmic pattern by describing them as "soloistic" and an "embellishment"); Butler Rebuttal at 2. | Disputed as to "improvised and nonrepeating." *See* Resp. to ¶ 120 above. Disputed as to "auxiliary." *See* Resp. to ¶ 53 above. Undisputed that the timbale pattern is not part of a "habanera" or "surf beat" rhythm and is not part of the rhythm of the kick, snare, hi-hat, tom, or bass patterns. |
| 122. | Because the timbales were improvised and "inconsistent," Finell did not include them in the combination of elements in "Fish Market" she found to be original, and, in fact, believed it would not be "entirely reliable" or "musically honest to include" them.<br><br>Finell Dep. at 197:12-198:14. | Disputed in part. Undisputed that transcription at Finell Decl. Ex. 1 at 6 does not notate timbale pattern from *Fish Market*. Otherwise disputed, as Finell analyzed combination of seven elements (kick, snare, hi-hat, tom, tambourine, timbale, and bass patterns) as well as subset of five (kick, snare, tom, tambourine, bass elements), and opines that both are original. Tookey Decl. Ex. 104 (Finell Dep. 85:16-86:7, 103:1-105:11) |
| 123. | The idea of playing auxiliary patterns on high-frequency percussion instruments over commonplace rhythms is commonplace. | Undisputed for purposes of this motion. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Bennett Report at 17-18, 20, 23-34. | |
| 124. | The tambourines are auxiliary (i.e., supplementary) to the prominent rhythm in the "Fish Market" drum pattern.<br><br>Bennett Report at 17-18. | Disputed as to "auxiliary." *See* Resp. to ¶ 53 above. Disputed as to "the prominent rhythm in the 'Fish Market' drum pattern [.]" *See* Resp. to ¶¶ 89, 99 above. |
| 125. | The tambourine is transcribed inaccurately in the SCAC.<br><br>Bennett Report at 17; Finell Dep. at 53:5-54:48; Finell Rebuttal Report at 1 n.1 (stating that the transcriptions in the SCAC were not created by her and are "not fully consistent with [her] own findings and statements" in her report). | Disputed. The Ashbourne-Firman and Finell transcriptions are not inconsistent, one includes two additional tambourine hits on the fifth and 12th notes of the bar. *See* Ashbourne-Firman Decl. Ex. 2 at 5.n.1; Finell Decl. Ex. 1 at 6. |
| 126. | Nowhere in the SCAC do Plaintiffs identify which sixteenth notes or beats are played on tambourine.<br><br>Bennett Report at 17. | Disputed. *See* Dkt. 305 at 36 (notating tambourine pattern). |
| 127. | The "stems" relied upon by Plaintiffs' experts to hear portions of the work more clearly, including the tambourine, were not in fact stems.<br><br>Bennett Rebuttal at 13 ("As my affirmative report notes (at 41, and also at 20, n.33), these Plaintiff-supplied "stem" files differ audibly from the drum parts we hear in FISH89 itself, and they do not sound like "stems" of FISH89 (i.e. elements of the original master recording) or even sound as if they were recorded in 1989.); Finell Dep. at 184:21-185:11; Browne Dep. at 185:25-186:4 ("Q. So at the very least, the tambourine was not taken from the original recording; is that right? A. No, I couldn't capture it clearly and cleanly enough."). | Undisputed that the sound files labeled "stems" were not from the *Fish Market* master recording. |
| 128. | Plaintiffs' musicological expert admitted she did not transcribe the entirety of the | Undisputed. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | tambourine line, but only a section that was "the most audibly clear."<br><br>Finell Dep. at 192:12-24. | |
| 129. | Plaintiffs' musicological expert admitted she had difficulty hearing the tambourine part in the Fish Market deposit copy recording and so she used the purported "stem" files to hear the tambourine section that she transcribed in her report.<br><br>Finell Dep. at 192:12-24 (she transcribed only one part that was the ***"most audibly clear"*** or "the particular iteration that could be best heard and transcribed," which she then misleadingly transcribed as a repeating pattern),193:16-194:11 ("[B]ut with the stem, of course, it's exposed."); Akley Decl., Ex. 16, Finell Dep. at Ex. 97 ("Plaintiffs' Responses to Information Requests from Finell"); Finell Report at 2-3 ("Materials Considered," which include so-called "stem" files); Finell Report Ex. A, at 3 (Musical Example 2 transcribed from so-called "stem" file); see also supra SUF 66-70. | Disputed in part. Finell's transcriptions were made using the deposit copy recording. *See* Tookey Decl. Ex. 104 (Finell Dep. 181:1-15). |
| 130. | The tambourine is only heard in "Fish Market" and does not appear in "Pounder."<br><br>Marshall Report at 23; Bennett Report at 17; PAF Dep. at 216:22-217:4 ("Q. Well, Pounder doesn't include a tambourine at all, does it? A. Yeah. Oh, yes, they took out the tambourine. That is -- from what I understand, the tambourine, yes."); Browne Dep. at 183:19-184:2; Finell Dep. at 99:22-100:3; 54:24-6 ("Well, actually that was a little bit inexact . . . I don't believe that 'Pounder' actually has a tambourine, so it has three of the four tiers.") | Undisputed that the tambourine element appears in *Fish Market* (it appears in *Dem Bow* as well) but not *Pounder Dub Mix II.* |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | **a. There is no timbales roll in "Fish Market" as described by Plaintiffs (as part of "Fish Market Element" 6)** | |
| 131. | The timbales is an auxiliary percussion element.<br><br>Ferrara Report at 14; Bennett Rebuttal Report at 5; Finell Report at 4; PAF Report at 5 (Plaintiffs' experts acknowledge that the timbales in FISH89 are "embellishments"); Finell Report at 6 (does not include timbales in any of her transcriptions of the "four tiers"); PAF Report at 5 (repeatedly subtracts the timbales from FISH89's fundamental rhythmic pattern by describing them as "soloistic" and an "embellishment"); Butler Rebuttal at 2. | Disputed as to "auxiliary." *See* Resp. to ¶ 53 above. Otherwise undisputed that timbales are a percussion element. |
| 132. | Plaintiffs' experts' reports suggest there is a timbales roll at the end of every other bar in "Fish Market."<br><br>Finell Report at 4, 7; PAF Report at 4, 8. | Disputed. The timbale pattern excerpted from *Fish Market* and *Dem Bow* in *Pounder Dub Mix II* features a roll at the end of every bar. *See* Browne Decl. ¶ 11, Ex. 1; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 102 (Browne Dep. 84:6-88:19); Ashbourne-Firman Decl. Ex. 1, Ex. 2 at 5. |
| 133. | The deposit copy of "Fish Market" does not contain a timbales roll at the end of every other bar.<br><br>Marshall Report at 20, 26; Bennett Report at 20, n.33; Bennett Rebuttal Report at 4-5, 14; Manuel Rebuttal at 26. | Undisputed. |
| 134. | Finell admitted there is no timbales roll in "Fish Market."<br><br>Finell Dep. at 198:5-14. | Disputed. Cited evidence does not support proffered fact. *See* Finell Decl. Ex. 1 at 4 (timbales play rolls in *Fish Market*), Tookey Decl. Ex. 104 (Finell Dep. 197:5-198:4). |
| 135. | The purported "stems" appear to contain a timbales roll at the end of every bar (not at every other bar) but such a roll is not audible | Disputed as to "such a roll is not audible in any publicly released version of 'Fish Market.'" *See* |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | in any publicly released version of "Fish Market."<br><br>Marshall Report at 20; Bennett Report at 20, n.33. | Browne Decl. ¶ 11, Ex. 1; Ashbourne-Firman Decl. Ex. 1; Tookey Decl. Ex. 102 (Browne Dep. 84:6-88:19); Finell Decl. Ex. 1 at 4 (timbales play rolls in *Fish Market*). |
| 136. | Although the timbales roll is not present in "Fish Market," it does exist in "Pounder."<br><br>Marshall Report at 26; Manuel Rebuttal at 26; Bilby Dep. at 232:18-233:1 (Q. Okay. So the timbales part in Pounder is not the same as the timbales part in Fish Market, right? A. Right); Browne Dep. at 85:11-19. | Undisputed that timbale rolls occur in *Pounder Dub Mix II*. Disputed as to remainder, as relevant portions of *Fish Market* were excerpted and copied in *Pounder Dub Mix II*. *See* Tookey Decl. Ex. 102 (Browne Dep. 84:6-88:19) |
| 137. | There is nothing original or protectable about a timbales playing a roll at the end of every other bar.<br><br>Marshall Report at 26-27. | Undisputed for purposes of this motion that Plaintiffs do not claim that a timbale roll is an original compositional (as opposed to sound recording) element on its own. |
| | **b. Plaintiffs' ambiguous "combination of 16th notes" played by the timbales (the other part of "Fish Market Element" 6) is not part of the fundamental rhythmic pattern** | |
| 138. | The description of this timbales element (16th notes in combination) is so nonspecific as to be meaningless—Plaintiffs do not articulate when the timbales supposedly play 16th notes.<br><br>Bennett Report at 17, 20 (explaining that nowhere in the SCAC do Plaintiffs identify which sixteenth notes or beats are played on timbales). | Disputed. *See* Dkt. 305 at 36 (notating timbale pattern). |
| 139. | The timbales vary from bar to bar and are improvised.<br><br>Ferrara Report at 14; Bennett Report at 35, n.42 ("the AUX lines are not consistent in FISH89, with the (presumably improvised) timbale in particular varying throughout"); Marshall Report at 15, 16-17; Butler | Disputed in part. Undisputed that the timbale pattern in *Fish Market* was ad-libbed. Otherwise disputed, as *Pounder Dub Mix II* excerpted portions from the full length timbale pattern in *Fish Market* and looped those portions. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Rebuttal at 3 ("Dr. Bilby further states that the timbales parts in "Fish Market" were improvised …); Manuel Rebuttal at 26-27; Bilby Dep. at 189:25-190:2; Browne Dep 85:6-9; Finell Dep. at 100:24-101:14, 197:12-198:14. | Tookey Decl. Ex. 102 (Browne Dep. 84:6-88:19). |
| 140. | The varied timbales rhythms are not part of the repeating pattern that comprises the rhythmic feel of "Fish Market"<br><br>Ferrara Report at 14; Bennett Rebuttal at 5 ¶ c; Marshall Report at 24; Marshall Rebuttal at 10; Manuel Rebuttal at 26-27; Finell Dep. at 100:24-101:14 ("But the most consistent part of "Fish Market" that I focused on is the four lines. Snare, kick, bass, tambourine, and that's what repeats throughout most of the three minutes or so of "Fish Market," and that's what I focused on. ***The timbales are inconsistent***, and some of the other elements are completely duplicative and not included."), 198:5-14 ("But because of it's [sic] inconsistency, I didn't feel it was entirely reliable and musicologically honest to include it in the four tier -- with the four tiers that I formulated my opinion on.") | Disputed. *See* Tookey Decl. Ex. 96 (at time marker 20:46-22:17); Tookey Decl. Ex. 109 (Pesante Dep. 29:12-24, 72:22-74:16); Tookey Decl. Ex. 97 (at time marker 11:15-12:04), Ex. 99 (certified translation of cited portion of Ex. 97); Tookey Decl. Ex. 105 (W. Marshall Dep. 92:3-94:25, 236:8-237:7), Ex. 75, Ex. 79, Ex. 82, Tookey Decl. Ex. 112 (Veguilla Dep. 29:7-23, 31:9-17); Tookey Decl. Ex. 105 (W. Marshall Dep. 69:7-23, 73:16-75:2), Ex. 70 at Figures 1-6), Ex. 73 at 141, Ex. 74 (at March 4, 2009 at 9:02 pm, distinguishing between defining "dembow" as "boom-ch-boom-chick" and defining "dembow" as "a more specific pattern," and stating "You can see/hear the difference I'm describing in the difference between Figure 1 and Figure 6 on this page" referring to Ex. 70); Tookey Decl. Ex. 105 (W. Marshall Dep. 76:16-78:16, 79:11-20), Ex. 81 (at time marker 6:05-6:50); Tookey Decl. Ex. 105 (W. Marshall Dep. 96:17-23), Ex. 75 (at 39) (treating timbale element as significant and part of what makes composite pattern distinctive). |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| 141. | Even if it were proper to consider the "timbale line 1" (SCAC ¶ 188, the timbales playing the combination of 16th notes), the "timbale line 1" performance is composed of commonplace, idiomatic figures drawn from Caribbean and American music.<br><br>Rebuttal Report at 18, footnote 23 (Bilby concedes that the improvised "timbale 1" part was performed using rhythmic norms that were commonplace in "Poco or Jamaican Revival church" music); Bilby Report at 19 (" Browne decided to play physical timbales live in the studio, improvising various rhythmic phrases and patterns with a Poco or Jamaican Revival church feel (drawing in part on his prior experience playing a drum set in a Revival-influenced Pentecostal church in Kingston)." | Disputed that it is proper to disaggregate a single element in this manner. *See* Tookey Decl. Ex. 116 (Bennett, "We Can Work It Out: Methods in Forensic Musicology," at n.47) (Bennett conceding same).<br><br>But undisputed that Plaintiffs do not claim that "timbale line 1" is an original compositional (as opposed to sound recording) element on its own. |
| 142. | A timbales line playing on 8th and 16th notes is not original to Plaintiffs.<br><br>Bennett Report at 20; Bilby Report at 19; Bilby Dep. at 234:21-235:9 | Undisputed as to the compositional (as opposed to sound recording) element on its own. |
| 143. | Examples of musical works using a timbales based on 8th and 16th notes includes: "Mambo Italiano" (Dean Martin, 1955); "El Fantasma del Combo" (Cachao, 1959); and "Oye Como Va" (Tito Puente, 1962).<br><br>Bennett Report at 20. | Disputed in part. *See* Ashbourne-Firman Ex. 2 at 16 n.18 (explaining that with respect to "prior art" references in this paragraph, "None of these timbale patterns are the same as the timbales pattern in the *Fish Market* riddim. Merely characterizing a pattern as a 'solo' or 'improvised,' or saying that a pattern is based on eighth and sixteenth notes, is not a sufficiently specific analysis.") |
| **c. "Fish Market" Element 4—A tambourine playing through the entire bar with a combination of 8th and 16th notes—is not original or protectable** | | |
| 144. | The tambourine is transcribed inaccurately in the SCAC. | Duplicative of Paragraph 125. *See* Resp. to ¶ 125 above. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Bennett Report at 17, and Appendix B. | |
| 145. | As a musicological matter, the tambourines are an auxiliary element that can be excluded from the analysis.<br><br>Ferrara Report at 14; Bennett Report at 17. | Disputed as to "auxiliary." *See* Resp. to ¶ 53 above. This is a selection and arrangement claim, filtering is factually and legally improper. *See* Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 243:3-23), Ex. 104 (Finell Dep. 279:9-280:16); Tookey Decl. Ex. 116 (Bennett, "We Can Work It Out: Methods in Forensic Musicology," at n.47); Tookey Decl. Ex. 104 (Finell Dep. 245:23-246:10); *Sound & Color, LLC v. Smith*, 2025 WL 1232639, at *1 (9th Cir. Apr. 29, 2025) ("[A] selection-and-arrangement theory is an alternative to filtering . . . our analysis does not filter out the musical elements that would be individually unprotectable"), *citing Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942 (9th Cir. 2023). |
| 146. | Finell admitted the tambourine played in "Fish Market" is virtually inaudible.<br><br>Finell Dep. at 192:12-24. | Disputed. Cited evidence does not support proffered fact. |
| 147. | Finell's transcription is different than the transcription in the SCAC (which was apparently prepared by Plaintiffs' expert PAF, who is not a musicologist).<br><br>Finell Dep. at 53:5-54:8; see also Finell Rebuttal Report at 1 n.1 (stating that the transcriptions in the SCAC were not created by her and are "not fully consistent with [her] own findings and statements" in her report). | Undisputed that the Ashbourne-Firman (SCAC) and Finell transcriptions are not identical—one includes two additional tambourine hits on the fifth and 12th notes of the bar. *See* Ashbourne-Firman Decl. Ex. 2 at 5.n.1; Finell Decl. Ex. 1 at 6. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| 148. | Finell's transcriptions are themselves inconsistent.<br><br>Compare transcription at Finell Report at 6, with transcription at Finell Report, Ex. A at 4 ("Musical Example 4"). | Undisputed that one did and another did not include the ghost notes in the snare pattern. Tookey Decl. Ex. 104 (Finell Dep. 78:9-79:12) |
| 149. | Bilby sometimes includes and sometimes excludes the tambourine in the combination of elements in "Fish Market" he claims is original."<br><br>Bilby Dep. at 236:4-13, 243:14-244:19. | Disputed. He confirms elements that form combination are particular kick, snare, hi-hat, bass, tom, and timbale patterns in *Fish Market*, *Dem Bow*, and *Pounder Dub Mix II*, and same combination with tambourine. Tookey Decl. Ex. 101 (Bilby Dep. 106:4-9, 236:4-240:25, 244:6-19) |
| 150. | Because Plaintiffs' experts admittedly struggled to hear the tambourines, they were forced to base their opinions (and transcriptions) on "stems" that they requested from Plaintiffs.<br><br>*See* supra, SUF 66-70. | Disputed. *See* Resp. to ¶¶ 66-70 above. |
| 151. | But they did not get "stems." They got new, distinct recordings created in 2021 solely for purposes of this litigation by Plaintiff Browne.<br><br>See supra, SUF 66-70 | Undisputed that sound files labeled as "stems" were not from master recording. |
| 152. | Even if the tambourine is not filtered out of the analysis, the tambourine element is generic and found in numerous prior art works.<br><br>Marshall Report at 23; Bennett Report at 17-18. | Disputed in part as to "generic and found in numerous prior art works." *See* Tookey Decl. Ex. 105 (W. Marshall Dep. 219:25-220:23) (no prior art found with same tambourine pattern). Otherwise undisputed for purposes of this motion that Plaintiffs do not claim that the tambourine element is an original compositional (as opposed to |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | sound recording) element on its own. |
| 153. | In rhythmic music, tambourines almost always play 8ths and 16ths because the ergonomics of the instrument lend themselves naturally to these rhythmic values.<br><br>Bennett Report at 17. | Disputed. *See* Ashbourne-Firman Decl. Ex. 3 at 12 (explaining why reference to purported "ergonomics" is flawed). |
| 154. | 1980s drum machines all feature 16 buttons, corresponding to 16 beats to the bar, which further increases the likelihood that any tambourine part on a contemporaneous drum machine would consist of a "combination of 8th and 16th notes."<br><br>Bennett Report at 17. | Disputed. Bennett's assertion about the capabilities of 1980s drum machines is wrong with respect to the specific drum machine used to create part of *Fish Market*. *See* Ashbourne-Firman Decl. Ex. 3 at 13; Tookey Decl. Ex. 104 (Finell Dep. 281:5-282:3) |
| 155. | Examples of well-known musical works using a tambourine based on 8th and 16th notes that existed before "Fish Market," include: "Day Tripper" (The Beatles, 1965); "I'm a Believer" (The Monkees, 1966); and "Dance to the Music" (Sly and the Family Stone, 1968).<br><br>Bennett Report at 17; Marshall Report at 23 ("You can hear similar tambourine parts in many Motown songs, such as the Four Tops' "Reach Out (I'll Be There)" (1967) or in rock songs inspired by them, such as Rare Earth's cover of "Get Ready" (1969) or the Rolling Stones's "Monkey Man" (1969), as well as in countless disco songs, such as Double Exposure's "Ten Percent" (1976)."). | Disputed. *See* Ashbourne-Firman Decl. Ex. 3 at 16 n.16 (explaining with respect to "prior art" references in this paragraph, "Dr. Bennett opines that these tambourine patterns are made up of eighth and sixteenth notes, but none of these citations match the same combination of eighth and sixteenth notes as the tambourine pattern in the *Fish Market* riddim (and, unlike the consistency of the tambourine pattern in the Fish Market riddim, they are variable)"); See also Tookey Decl. Ex. 105 (W. Marshall Dep. 219:25-220:23) (no prior art found with same tambourine pattern) |
| 156. | The steady, 16th-note tambourine accompaniment is generic and essentially indistinguishable from standard tambourine rhythms in church music, as well as in | Disputed in part as to "generic and essentially indistinguishable . . ." *See* Tookey Decl. Ex. 105 (W. Marshall Dep. 219:25-220:23) |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | gospel, soul, disco, and rock songs, especially in the 1960s and 70s.<br><br>Marshall Report at 23; Bennett Report at 17-18. | (no prior art found with same tambourine pattern). Otherwise undisputed for purposes of this motion that Plaintiffs do not claim that the tambourine element is an original compositional (as opposed to sound recording) element on its own. |
| **4.** | **The combination of the "Fish Market" Elements is ill-defined, and not original or protectable** | |
| 157. | PAF opines (largely consistently with the SCAC) that the drum pattern consists of eight separate instrument parts (although he testified that he also considered instrument selection as a part of what he considered creative and original about "Fish Market").<br><br>PAF Report at 5-6; PAF Dep. at 119:23-120:5. | Disputed in part. Ashbourne-Firman opines that the composite drum, percussion, and bass pattern consists of the particular kick, snare, hi-hat, bass, low "tom," timbale, and tambourine elements in *Fish Market* and *Dem Bow*; and the same in *Pounder Dub Mix II* without the tambourine. *See* Browne Decl. ¶ 18, Ex. 2; Ashbourne-Firman Ex. 2 at 7-9; Finell Decl. Ex. 1 at 4-7; Bilby Decl. Ex. 1 at 29-46; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 94:10-95:14, 214:4-23, 298:13-22), Ex. 104 (Finell Dep. 217:21-218:8). |
| 158. | Bilby contends that the drum pattern consists of six (sometimes seven) instrument parts, and adds "timbre" and concepts such as "feel" and "Jamaicanness" as part of the supposed "combination."<br><br>Bilby Dep. at 236:4-9; 240:2-10; 240:11-25; 243:14-245:1; Bilby Report at 14, 15, 41-44. | Disputed in part. Bilby opines that the composite drum, percussion, and bass pattern consists of the particular kick, snare (ghost notes providing distinctive feel), hi-hat, bass, low "tom," timbale, and tambourine timbres and elements in *Fish Market* and *Dem Bow*; and the same in *Pounder Dub Mix II* without the tambourine. *See* Browne Decl. ¶ 12, Ex. 1; Ashbourne-Firman ¶ 11, Ex. 1, Ex. 2 at 4-5; Finell Decl. Ex. 1 at |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 4-7, Ex. 2 ¶¶ 10-11; Bilby Decl. Ex. 1 at 19-29; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 219:2-16, 130:2-5), Ex. 104 (Finell Dep. 56:5-23, 63:2-64:4, 103:1-105:11, 131:3-11, 133:2-9, 152:15-24, 270:12-24), Ex. 101 (Bilby Dep. 106:4-9, 121:17-122:12, 236:4-240:25, 244:6-245:25, 252:17-24). |
| 159. | Finell (Plaintiffs' only musicologist) considers at most, only five instrument parts—the snare, kick, tom, tambourine, and repeating bass note.<br><br>Finell Report at 6, Finell Dep. at 61:20-62:6. | Disputed. Finell analyzed seven elements as well as subset of five, opinion is both are original. Tookey Decl. Ex. 104 (Finell Dep. 85:16-86:7, 103:1-105:11. |
| 160. | Finell conflates the recording and compositional elements by referencing and relying on the timbre of the instruments and includes the bass and tom, which double the kick, in her analysis.<br><br>Finell Report at 5; Finell Report, Ex. A at 2; Finell Dep. at 266:13-17, 126:16-23, 131:14-17. | Disputed as to "the bass and tom . . . which double the kick." *See* Browne Decl. ¶ 9, Ex. 1; Ashbourne-Firman Decl. Ex. 1, Ex. 3 at 10-11; Finell Decl. Ex. 1 at 6; Bilby Decl. Ex. 1 at 43; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 147:16-19), Ex. 104 (Finell Dep. 80:7-10, 177:6-21), Ex. 101 (Bilby Dep. 216:4-23); Tookey Decl. Ex. 105 (W. Marshall Dep. 135:12-19), Ex. 100 (Ashbourne-Firman Dep. 174:18-175:21, 178:14-179:10); Browne Decl. ¶ 10, Ex. 1; Ashbourne-Firman Decl. Ex. 1; Finell Decl. Ex. 2 ¶¶ 11, 22; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 136:12-18, 195:10-15), Ex. 104 (Finell Dep. 265:24-266:12); Finell Decl. Ex. 2 ¶¶ 12, 14, 16, 22; Ashbourne-Firman Decl. Ex. 3 at 9-10; Tookey Decl. Ex. 70 |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | (notating as discrete elements rhythmic patterns that occasionally intersect on same beats), Ex. 100 (Ashbourne-Firman Dep. 144:3-145:6); Tookey Decl. Ex. 104 (Finell Dep. 123:7-124:24). Disputed as to suggestion that timbre and instrumentation are not compositional elements, which contravenes copyright law. *See Swirsky v. Carey*, 376 F.3d 841, 848-49, 851 (9th Cir. 2004) ("***timbre***, tone, spatial organization, consonance, dissonance, ***accents***, note choice, ***combinations***, ***interplay of instruments***, ***basslines***, and new technological sounds can all be elements of a musical composition") (emphasis added). |
| 161. | Neither PAF nor Finell relied upon any prior art analysis in reaching a conclusion that any of Plaintiffs' Claimed Works or any "combination" of rhythmic elements contained therein is "original."<br><br>PAF Report at 3; Finell Report at 3. | Disputed. *See* Ashbourne-Firman Decl. ¶¶ 12-14; Tookey Decl. Ex. 100 (Ashbourne-Firman Dep. 112:5-15, 173:3-9, 177:6-20, 174:18-175:21, 178:14-179:10, 180:19-181:25, 185:17-22, 187:21-188:15, 189:7-10, 296:22-297:1, 299:2-11); Finell Decl. ¶¶ 9-11, 14; Tookey Decl. Ex. 104 (Finell Dep. 23:5-24:23, 26:17-27:23, 29:1-30:21, 66:3-24, 68:13-24, 76:6-77:21, 223:6-12, 257:2-22). |
| 162. | While Bilby claimed he conducted a prior art search, he testified that he was looking only for recordings that "sounded" like "Fish Market," and that had all or "substantially all" of the elements in the combination that he was looking for. | Disputed. *See* Bilby Decl. ¶ 5, Ex. 1 at 7-8, 20-21; Tookey Decl. Ex. 101 (Bilby Dep. 47:16-53:24, 57:23-58:24, 61:1-62:9, 70:13-71:22, 75:7-23, 81:4-25, 113:3-116:15, 205:6-21, 224:22-225:6, 310:10-21); Tookey Decl. Ex. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Bilby Report at 7; Bilby Dep. at 52:7-16; 56:24-57:11; 225:-14-18; 248:11-249:16; Bilby Rebuttal – Marshall at 39 ("And it is true that certain components of ['Fish Market'], when viewed as cells unto themselves isolated from larger musical context and divorced from their musical embodiments, ***can be considered features that occur in other pieces of music***. . . . What is in question is . . . . how the final result sounds.) (Second emphases in original.) | 101 (Bilby Dep. 47:16-53:24, 57:23-58:24, 61:1-62:9, 70:13-71:22, 75:7-23, 81:4-25, 113:3-116:15, 205:6-21, 224:22-225:6, 310:10-21) |
| 163. | Bilby's standard as to what constituted "substantially all" of the elements that he was looking for was admittedly subjective and not replicable.<br><br>Bilby Dep. at 246:1-250:8. | Disputed. Cited evidence does not support proffered fact. *See Bilby Decl. ¶ 5, Ex. 1 at 7-8, 20-21; Tookey Decl. Ex. 101 (Bilby Dep. 47:16-53:24, 57:23-58:24, 61:1-62:9, 70:13-71:22, 75:7-23, 81:4-25, 113:3-116:15, 205:6-21, 224:22-225:6, 310:10-21)*. |
| 164. | The elements that Bilby claimed formed the combination original to "Fish Market" repeatedly shifted.<br><br>Bilby Dep. at 236:4-9, 240:2-10, 240:11-25, 243:14-245:1. | Disputed. He confirms elements that form combination are particular kick, snare, hi-hat, bass, tom, and timbale patterns in *Fish Market*, *Dem Bow*, and *Pounder Dub Mix II*, and same combination with tambourine. Tookey Decl. Ex. 101 (Bilby Dep. 106:4-9, 236:4-240:25, 244:6-19). |
| 165. | Bilby did not disclose any methodology he used in conducting the prior art search he claims to have conducted.<br><br>See *generally* Bilby Report; Bilby Dep. 51:13-52:6. | Disputed. *See Bilby Decl. ¶ 5, Ex. 1 at 7-8, 20-21; Tookey Decl. Ex. 101 (Bilby Dep. 47:16-53:24, 57:23-58:24, 61:1-62:9, 70:13-71:22, 75:7-23, 81:4-25, 113:3-116:15, 205:6-21, 224:22-225:6, 310:10-21)*; Tookey Decl. Ex. 101 (Bilby Dep. 47:16-53:24, 57:23-58:24, 61:1-62:9, 70:13-71:22, 75:7-23, 81:4-25, 113:3- |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 116:15, 205:6-21, 224:22-225:6, 310:10-21) |
| 166. | The universe of recordings from which Bilby selected works to analyze as possible prior art was drawn from his "memories."<br><br>Bilby Dep. at 50:13-23. | Disputed. *See* Bilby Decl. ¶ 5, Ex. 1 at 7-8, 20-21; Tookey Decl. Ex. 101 (Bilby Dep. 47:16-53:24, 57:23-58:24, 61:1-62:9, 70:13-71:22, 75:7-23, 81:4-25, 113:3-116:15, 205:6-21, 224:22-225:6, 310:10-21); Tookey Decl. Ex. 101 (Bilby Dep. 47:16-53:24, 57:23-58:24, 61:1-62:9, 70:13-71:22, 75:7-23, 81:4-25, 113:3-116:15, 205:6-21, 224:22-225:6, 310:10-21) |
| 167. | Bilby included in what he opined to be the original "combination" of elements in "Fish Market" multiple elements nowhere claimed by Plaintiffs and having nothing to do with the "Fish Market" composition.<br><br>Bilby Report at 41-44 (including non-claimed elements such as timbre, feel, and the use of a microphone); Bilby Dep. at 70:24-71:4, 112:17-20. | Disputed. *See* Dkt. 305 ("timbre" and "feel" alleged). Disputed as to suggestion that timbre and feel are not compositional elements, which contravenes copyright law. *See Swirsky v. Carey*, 376 F.3d 841, 848-49, 851 (9th Cir. 2004) ("timbre" is "element[] of a musical composition"). Ferrara has opined that "feel" is a compositional element. *See New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 89 (S.D.N.Y. 2015) ("That the expert in *Glover* highlighting the similarities in 'rhythmic thrust, feel and tempo' as evidence probative of copying was Dr. Ferrara—Defendants' expert here—further undermines Defendants' argument here that tempo is irrelevant[.]"), citing *Glover v. Austin*, 289 F. App'x 430, 432 (2d Cir. 2008). |

**Plaintiffs Have Not Identified a Protectable Selection and Arrangement of <u>"Fish Market Elements"</u>**

| NO. | FACTS | PLAINTIFFS' RESPONSE |
| --- | --- | --- |
| **1.** | **Plaintiffs have neither sufficiently identified the elements in the claimed original "combination," nor demonstrated that any elements were selected and arranged in a way that is original and protectable** | |
| 168. | Plaintiffs provided their experts with the following definition: "Original, as the term is used in copyright, means only that the work was independently created by the author…and that it possesses at least some minimal degree of creativity."<br><br>Finell Report at 4; Bilby Report at 6; PAF Report at 4. | Undisputed. |
| 169. | None of Plaintiffs' experts offered any opinion as to whether or how any of the purported elements in any claimed combination were selected and arranged in an original manner.<br><br>*See generally* Finell Report, Bilby Report, PAF Report. | Disputed. Their transcriptions and narrative descriptions set forth their opinions as to how the composite drum, percussion, and bass pattern in *Fish Market*, *Dem Bow*, and *Pounder Dub Mix II* is original in its selection and arrangement. *See generally* Ashboune-Firm Decl. Ex. 1-3, Bilby Decl. Ex. 1-3, Finell Decl. Ex. 1-2; *see also* Tookey Decl. Ex. 104 (Finell Dep. 91:8-25), Ex. 101 (Bilby Dep. 106:4-9, 244:20-245:25). |
| | **<u>Steely & Clevie's Admitted Use of Revival, Pentecostal or "Poco" Rhythm in "Fish Market"</u>** | |
| 170. | Although the habanera rhythm has an African origin, it was retained in the musical practices of enslaved Africans in the "New World," including Jamaica, and they became a significant feature of the music performed during ceremonies of Revivalism/Pocomania and in Pentecostal churches in Jamaica throughout the twentieth century.<br><br>Butler Report at 10. | Disputed. *See* Resp. to ¶¶ 84-85 above. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| 171. | Browne has previously stated that the habanera beat in "Fish Market" was something he heard in church.<br><br>Interview by Kenneth Bilby with Cleveland Browne and Wycliffe Johnson, in Kingston, Jam. (2005) (transcript available) at 113:23-114:4 ("KENNETH BILBY: I want to ask Clevie about this as a drummer, how you thought -- is this a beat that you were familiar with at all, I mean, or not familiar with, but does it have elements of things that you heard? CLEVELAND BROWNE: It did have elements of things that I heard in church.") | Disputed. Cited evidence does not support proffered fact, the word "habanera" never occurs in the cited interview transcript. *See also* Resp. to ¶ 86 above. |
| 172. | Johnson has recounted creating the "Poco beat" in "Fish Market" after being kept up by a church next door playing that beat.<br><br>Interview by Kenneth Bilby with Cleveland Browne and Wycliffe Johnson, in Kingston, Jam. (2005) (transcript available) at 114:13–115:5 ("WYCLIFFE JOHNSON: But I live like near the church that it was taking place. So this thing keep on all night. So I went to Clevie and I said, Clevie, that church next door playing this something. I can't sleep at nighttime, just getting me crazy. I start to get angry. Then I don't know what happened. A voice said to me, say, listen what they're playing. And I started listening. I said what is on that music. So I run to Clevie and said, Clevie, let us try to create a new thing, a Poco beat.") | So as to not dispute the characterization of the evidence, undisputed for purposes of this motion that the referenced interview transcript includes the language quoted in the evidentiary citation. |
| 173. | Browne recounts that the beat that he heard when he played drums at a friend's church was the same beat that Johnson described was keeping him awake at night. | So as to not dispute the characterization of the evidence, undisputed for purposes of this motion that the referenced interview transcript includes the language quoted in the evidentiary citation. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Interview by Kenneth Bilby with Cleveland Browne and Wycliffe Johnson, in Kingston, Jam. (2005) (transcript available) at 115:11–116:12 ("CLEVELAND BROWNE: … While at high school with him, he invited me to come to the church and I played drums there occasionally. And that was the beat that most of the songs -- it was a Pentecostal church. That was the beat and the tambourines and all that. And when Steely mentioned it to me, I said, I know the beat. [...] And I knew exactly what he was talking about because I used to play the same beat, you know …"). | |
| 174. | Browne has stated that the beat he heard at his friend's church inspired him to make the "Poco Man Jam Riddim" – which is "Fish Market."<br><br>Bilby Report at 17 n.19, Stephane Delphin, Dancehall History: a Clevie Browne Interview from Steely and Clevie — Jamaica, Syncope: The Drums Culture Website (July 21, 2015, 5:09 PM), [http://syncope.be/percussionstambours/index.php/fr/84-musicalstyles/dancehall/209-clevie-browniesteely-and-clevie-interview-13 [https://web.archive.org/web/20160423164129/syncope.be/percussionstambours/index.php/fr/84-musicalstyles/dancehall/209-clevie-browniesteely-and-clevie-interview-13]. | So as to not dispute the characterization of the evidence, undisputed for purposes of this motion that the referenced interview includes the language "He started including some tambourine in the riddims but at the same time I was being inspired by what I was hearing at church." |
| 175. | Browne has repeated the story of Johnson being inspired by Revivalist music to create "Poco Man Jam."<br><br>Butler at 19, Taylor, Angus. 2019. "Interview with Cleveland 'Clevie' Browne - Making Music For The Public.,"www.Reggaeville.com., | *See* Resp. to ¶ 86 above. |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | https://www.reggaeville.com/artistdetails/steelyclevie/news/view/interview-withcleveland-clevie-browne-makingmusic-for-the-public/ ("…Clevie, let's try a Poco beat….So Poco Man Jam is like a revival beat digitized.") | |
| 176. | Browne has repeated the story of Johnson being inspired by the music keeping him up all night next year to create the "Fish Market" riddim.<br><br>Stephane Delphin, Dancehall History: a Clevie Browne Interview from Steely and Clevie — Jamaica, Syncope: The Drums Culture Website (July 21, 2015, 5:09 PM), [http://syncope.be/percussionstambours/index.php/fr/84-musicalstyles/dancehall/209-clevie-browniesteely-and-clevie-interview-13 [https://web.archive.org/web/20160423164129/syncope.be/percussionstambours/index.php/fr/84-musicalstyles/dancehall/209-clevie-browniesteely-and-clevie-interview-13]; Angust Taylor, Interview with Cleveland 'Clevie' Browne - Making Music For The Public, Reggaeville (Dec. 18, 2019), https://www.reggaeville.com/artistdetails/steelyclevie/news/view/interview-withcleveland-clevie-browne-makingmusic-for-the-public/ | *See* Resp. to ¶ 172 above. |
| 177. | Browne also recalls hearing revival music live on a summer holiday, and how that inspired some of the beats he created.<br><br>Stephane Delphin, Dancehall History: a Clevie Browne Interview from Steely and Clevie — Jamaica, Syncope: The Drums Culture Website (July 21, 2015, | Disputed. The referenced summer vacation was after the creation of *Fish Market*. *See* Tookey Decl. Ex. 102 (Browne Dep. 98:11-99:3) |

| NO. | FACTS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | 5:09 PM), [http://syncope.be/percussionstambours/index.php/fr/84-musicalstyles/dancehall/209-clevie-browniesteely-and-clevie-interview-13 [https://web.archive.org/web/20160423164129/syncope.be/percussionstambours/index.php/fr/84-musicalstyles/dancehall/209-clevie-browniesteely-and-clevie-interview-13]; Angust Taylor, Interview with Cleveland 'Clevie' Browne - Making Music For The Public, Reggaeville (Dec. 18, 2019), https://www.reggaeville.com/artistdetails/steelyclevie/news/view/interview-with- cleveland-clevie-browne-makingmusic-for-the-public/ | |
| 178. | Browne has admitted that when he made "Fish Market," he believed that he used or was influenced by beats he heard in the Pentecostal church growing up.<br><br>Browne Dep. at 93:9-13; 94:24-95:10 ("Q. So when you did Fish Market in [sic] Poco Man Jam and when you talked about it with Delphin, you believed that you had used or had been influenced by the Pentecostal beats, the revival beats that you heard in the Pentecostal Church and it was only about two years ago that you realized you were wrong? A. Yeah."); 139:20-25 ("Q. So all of your whole life, from 1989 until 2019, which is, I think 40 years, you believed that Poco Man Jam was taken from or was influenced by or was revival beat digitized, correct? A. Yeah, that's what I thought.") | Disputed. The Pentecostal music Browne was familiar with was different than *Fish Market*. *See* Tookey Decl. Ex. 102 (Browne Dep. 93:9-95:19) |

Respectfully submitted,

Dated: July 3, 2025

By: <u>*/s/ Stephen M. Doniger*</u>
Stephen M. Doniger, Esq.
Scott Alan Burroughs, Esq.
Benjamin F. Tookey, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiffs*