**PRYOR CASHMAN LLP**
Benjamin S. Akley (State Bar No. 278506)
*bakley@pryorcashman.com*
Shamar Toms-Anthony (State Bar No. 323246)
*stoms-anthony@pryorcashman.com*
1901 Avenue of the Stars, Suite 900, Los Angeles, California 90067
Telephone: (310) 683-6900

Donald S. Zakarin (admitted *pro hac vice*)
*dzakarin@pryorcashman.com*
Frank P. Scibilia (admitted *pro hac vice*)
*fscibilia@pryorcashman.com*
7 Times Square, 40th Floor, New York, New York 10036
Telephone: (212) 421-4100

James G. Sammataro (State Bar No. 204882)
*jsammataro@pryorcashman.com*
255 Alhambra Circle, 8th Floor, Miami, Florida 33134
Telephone: (786) 582-3003

*Attorneys for the Pryor Cashman-Represented Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *ET AL.*,<br><br>Plaintiffs,<br>v.<br>RODNEY SEBASTIAN CLARK, an individual, *ET AL.*,<br><br>Defendants. | Case No.: 2:21-cv-02840-AB-AJR<br><br>**REPLY IN FURTHER SUPPORT OF MOTION TO PRECLUDE AND EXCLUDE TESTIMONY AND REPORTS OF PLAINTIFFS' PURPORTED EXPERT KENNETH BILBY [DKT. 709]**<br><br>Date: September 26, 2025<br>Time: 10:00 am<br>Courtroom: 7B |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

    I.   PRELIMINARY STATEMENT ........................................................................ 1

    II.  ARGUMENT ..................................................................................................... 3

        A. Bilby's Reports Must Be Excluded Because He Has Disclosed Nothing About the Purported Prior Art Search He Claims Supports His Opinions ............................................................... 3

        B. Bilby's Failure to Disclose Cannot Be Rectified By His Untimely Declaration ................................................................................ 6

        C. Plaintiffs Concede the Relevance of Prior Art ............................................ 8

        D. Bilby's Originality Conclusions Are Not Supported by Any Other "Well-Established Ethnomusicological Methodology" ................... 13

        E. Bilby's Rebuttal Reports Are Also Unreliable .......................................... 14

        F. Bilby's Failures Go to the Reliability of His Reports and Their Admissibility ................................................................................. 16

    III. CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**PAGE(s)**

**CASES**

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ............................................................................. 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ........................................................................................... 9

*Gable v. Nat'l Broad. Co.*,
  727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd*, 438 Fed. App'x 587
  (9th Cir. 2011) .................................................................................................. 14

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ........................................................................................... 1

*Gray v. Hudson*,
  28 F.4th 87 (9th Cir. 2022) ........................................................................... 9, 14

*Harison v. Dugar*,
  Case No. 2:22-cv-08230-HDV (Ex), 2024 WL 590682 (C.D. Cal. Jan. 2, 2024) .. 13

*in Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir. 1977) ........................................................................... 9

*Jarrow Formulas, Inc. v. Now Health Grp., Inc.*,
  No. CV 1—8301 PSG, 2012 WL 3186576 (C.D. Cal. Aug. 2, 2012), *aff'd*, 579
  Fed. App'x 995 (Fed. Cir. 2014) ........................................................................ 7

*Johannsongs-Publishing Ltd. v. Rolf Lovland* (*"Johannsongs"*),
  No. 18-cv-10009 (AB), 2020 WL 2315805 (C.D. Cal. Apr. 3, 2020) (Birotte, J.),
  *aff'd*, No. 20-55552, 2021 WL 5564626 (9th Cir. 2021) .............................. 3, 11, 15

*North Coast Indus. v. Jason Maxwell, Inc.*,
  972 F.2d 1031 (9th Cir. 1992) ........................................................................... 9

*Plumley v. Mockett*,
  836 F. Supp.2d 1053 (C.D. Cal. 2010) .............................................................. 6

*Rodas v. Porsche Cars N. Am., Inc.*,
  No. CV14-3747 PSG, 2016 WL 6033535 (C.D. Cal. Apr. 4, 2016) ................. 6

*Roth Greeting Cards v. United Card Co.*,
    429 F.2d 1106 (9th Cir. 1970) .................................................................................. 9

*Satava v. Lowry*,
    323 F. 3d 805 (9th Cir. 2003) .................................................................................. 9

*Sitrick v. Dreamworks, LLC*,
    No. CV 03-4265-SVW(AJWX), 2006 WL 6116641 (C.D. Cal. July 20, 2006) ...... 6

*Stone v. Carey*,
    No. 2:23-CV-09216-MRA-JDE, 2025 WL 1190518 (C.D. Cal. Mar. 19, 2025) ... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PRELIMINARY STATEMENT

Unable to rebut Defendants' Motion to Exclude the Testimony of Kenneth Bilby (Dkt. 709, "Motion" or "Mot."), Plaintiffs' opposition (Dkt. 740, "Opp.") instead invents and attacks two strawman arguments: (i) "that an expert must identify and disclose *every instance* of 'prior art' *for each individual element* comprising a musical work's selection and arrangement, *even when those findings are immaterial*;" and (ii) "that the expert must mechanically discard any element that may have existed *in isolation* before assessing the work's overall originality."[1] (Opp. 1.) These arguments wholly ignore the Motion.

***First***, Defendants criticized Bilby for disclosing **nothing at all** about the prior art search and analysis he claims to have conducted (Mot. 1-2), not for failing to disclose "*every instance*" of prior art. Bilby did not disclose any of the recordings he supposedly reviewed, all of which he claims to have rejected as prior art. (*Id.* at 2, 4-8.) He did not disclose the methodology he used in conducting his prior art search. (*Id.* at 2, 8-12.) He simply claimed that he "search[ed] for recorded examples of specific 'prior art' (from Jamaica or elsewhere) from which [*Fish Market*] might be shown to be largely derived," but was "unable to find any evidence of prior art in the public domain (including traditional Jamaican music) from which [*Fish Market*] could be derived." As set forth in the Motion, even assuming Bilby conducted any prior art search, his disclosure is plainly insufficient. (*Id.* at 1, quoting Bilby Report 7, 16); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (*Daubert* bars the admission of "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

***Second***, and relatedly, Bilby did not provide the information required under Rule 26, preventing the Defendants, their experts, and the Court from examining the material

---

[1] Except where otherwise noted, all emphases herein are supplied, and all internal citations and quotations are omitted. Capitalized terms not otherwise defined herein have the same meaning as in the Motion.

1

that Bilby claims he reviewed to test his *ipse dixit* assertion. (Mot. 2, 5-12.) Ignored by Plaintiffs, Bilby admitted violating Rule 26 (*id.* at 5) by failing to disclose all of the materials that he reviewed and considered in forming the opinions in his report; that he "was not instructed to" and did not provide a record of what he reviewed so that his conclusions could be tested (*id.*); that he drew on his "own memories" in deciding which recordings to review as prior art (*id.* at 9-10); and that his standard for rejecting a work as prior art was not "replicable" (*id.* at 2, 11-12). These failures mandate exclusion.

*Third*, Plaintiffs argue Bilby did not need to disclose his prior art "findings" because they are "immaterial" and "irrelevant to the originality analysis." (Opp. 1; *id.* at 10-11 (arguing that because Bilby claims he did not find any prior art, he need not disclose anything about his claimed search and results).) Plaintiffs' argument ignores that Rule 26(a)'s "disclosure obligation extends to any facts or data '*considered* by the expert in forming the opinions to be expressed, *not only those relied upon* by the expert." Advisory Committee Note to 2010 Amendment to Rule 26(a)(2)(B). Bilby affirmatively asserted that his opinion that "Fish Market" is original is supported by his supposed but undisclosed prior art analysis; that he searched for and was "unable to find any evidence of prior art in the public domain from which ["Fish Market"] could be derived;" and that "Fish Market" "was a marked departure" and "substantially different from, prior art and recordings, including anything that was in the musical marketplace at the time Steely and Clevie invented it." (Mot. 1-2, quoting Bilby Report at 1, 20, 74.) Plaintiffs and Bilby cannot simultaneously claim Bilby's opinions are supported by a prior art search and results that he disclosed nothing about and also insist that such purported search and results are "immaterial" and "irrelevant" because he did not "consider" them.

*Fourth*, Defendants' argument is not just that Bilby failed to determine whether any "individual element" in, or "isolated fragments" of, *Fish Market* exists in prior art. Rather, Defendants demonstrated that Bilby failed to support through a disclosed and reliable analysis of prior art that the *combination* or "selection and arrangement" of

elements Plaintiffs claim to own is original and protectable. (Mot. 14-15 (demonstrating that Bilby "did not even identify or note *particular combinations* of elements in the pre-'Fish Market' works he claims to have reviewed that are also present in 'Fish Market'"); *id.* at 13 (demonstrating that Bilby failed to analyze whether those portions "*or combination*" of elements in Plaintiffs' claimed works that are actually at issue in this case "existed in prior art and/or are commonplace musical building blocks"); *id.* at 14 (demonstrating that Bilby only analyzed "Fish Market" as a whole, "which tells the Court nothing about whether or to what extent Plaintiffs can claim exclusivity of the elements *or combination of elements* that are actually at issue").

*Finally,* Plaintiffs' argument that the issues raised in Defendants' Motion are just issues of "weight and not admissibility" (Opp. 1) ignores *Daubert, Kumho*, *Johannsongs*, and the overwhelming authority that guides this Court's "gatekeeping" function in determining whether Plaintiffs satisfied *their burden* to demonstrate that Bilby's opinions and testimony are both relevant and reliable. (Mot. 5-6; *see also* Reply i/s/o Motion to Exclude Testimony and Reports of Peter Ashbourne-Firman ("PAF Daubert Reply") at 2-4 (addressing authorities cited by Plaintiffs in their opposition to this Motion). Bilby's failure to support his opinions through a disclosed prior art search renders his opinions unreliable under FRE 702 (and constitute an abject failure to comply with Rule 26(a), which itself mandates exclusion). (Mot. 2, 4-12.)

## II. ARGUMENT

### A. Bilby's Reports Must Be Excluded Because He Has Disclosed Nothing About the Purported Prior Art Search He Claims Supports His Opinions

Bilby's reports disclose nothing about any prior art search he claims he conducted, his methodology in conducting any such search, or the materials or data (including recordings or musical works) he considered and rejected to reach his conclusion that he was "unable to find" any prior art that included Plaintiffs' claimed combination of "elements" in "Fish Market." He simply says he conducted one (Mot. 1-2, 4-12), thus

3

failing to comply with Rule 26(a), mandating exclusion under Rule 37(c)(1), and rendering such conclusion non-testable and unreliable under FRE 702. (*Id.*)

Plaintiffs acknowledge that Rule 26(a) "requires production of 'facts or data considered by the witness' in forming the opinions expressed." (Opp. 10.) Yet, making nonsense of Rule 26(a)'s requirement that all "facts or data '*considered*' by the expert in forming the opinions to be expressed, not only those *relied upon* by the expert," are to be disclosed, they argue that "[b]ecause Bilby determined that no prior work replicated the protectable combination present in the Dem Bow Riddim, there were no such materials to disclose." (*Id*. at 11.)

This argument is frivolous. Unless Bilby *considered* the works he claims to have searched for, reviewed, determined were "substantially different from" "Fish Market," and rejected as prior art, he could not possibly state, as he does, that he was "unable to find any evidence of prior art in the public domain from which [*Fish Market*] could be derived" (Dkt. 709-2 ("Bilby Report") 16), and that "Fish Market" "was a marked departure" and "substantially different from, prior art and recordings" (*id*. at 20, 74).

This has nothing to do with "prov[ing] a negative." (Opp. 11.) Bilby made conclusory, *affirmative assertions* about the results of a claimed prior art search. (Bilby Report 16, 20, 84.)[2] There are only two possibilities: (i) Bilby made no such search, which renders those assertions and his opinions unreliable (and false) (Mot. 9, 18-19 (citing authorities, including *Johannsongs-Publishing Ltd. v. Rolf Lovland* (*"Johannsongs"*), No. 18-cv-10009 (AB), 2020 WL 2315805, at *5 (C.D. Cal. Apr. 3, 2020) (Birotte, J.), *aff'd*, No. 20-55552, 2021 WL 5564626 (9th Cir. 2021) and *Stone v. Carey,* No. 2:23-CV-09216-MRA-JDE, 2025 WL 1190518, at *9 (C.D. Cal. Mar. 19,

---

[2] Plaintiffs' own characterizations of Bilby's testimony only prove the point. They say Bilby "*determined that no prior work* replicated the protectable combination present in the Dem Bow Riddim" (Opp. 11); *opined* that there is a combination of elements in "Fish Market" that is *not "duplicated in any known prior work"* (*id*. at 4); and "*deemed"* the works he reviewed to be *"non-comparable."* (*Id*. at 10-11.)

4

2025))); or (ii) Bilby made a search but failed to disclose what he reviewed so that Defendants could replicate his analysis and assess whether these unidentified recordings contained the claimed combination, and determine whether his methodology (including the sample size of the recordings he claims to have reviewed) was appropriate and sufficient for him to offer the opinion that he did. (Mot. 7-8.) Either way, his reports and testimony must be excluded.

Bilby's deposition confirmed he did not disclose the materials he considered in forming the opinions in his report, and that he was not instructed to do so. (Mot. 5 (citing Bilby Dep. at 41:7-42:12 ("Q. *[A]re all of the materials that you reviewed and considered in forming your opinions disclosed or identified in [your] reports?* A. *No*."); *see also id*. at 45:20-46:4).). As Plaintiffs elsewhere admit, "[i[f a party fails to provide information as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing or at trial," and that such exclusion is a "self-executing, automatic sanction" that is "mandatory unless the failure was 'substantially justified or harmless.'" (Dkt. 736, Pls.' Mot. Exclude Bennett 18 (citing Rule 37(c) and quoting *Goodman v. Staples The Office Superstore, LLC,* 644 F.3d 817, 826 (9th Cir, 2011)).) Plaintiffs offer no justification or excuse for the non-disclosure. Bilby's report and testimony must be excluded under Rule 26.

Bilby's reports and testimony must also be excluded as unreliable under FRE 702 because his conclusions that he was "unable to find any evidence of prior art" and that "Fish Market" "was a marked departure" and "substantially different from, prior art and recordings" are completely untestable, unverifiable and unreliable. (Mot. 7-12.) Plaintiffs concede that "replicability means that another expert can follow the same cultural-historical analysis, *consult the same sources, and evaluate the same musical features to reach their own conclusions.*" (Opp. 17.)[3] But Bilby's complete non-

---

[3] Plaintiffs' suggestion that "Bilby cites to specific compositions and recordings" that were part of his prior art search (Opp. 17 (citing Bilby Report at 8-13)) is not true. Bilby does not at those pages cite to any "specific compositions and recordings," let alone any

5

disclosure prevents Defendants and their experts from consulting "the same sources" or evaluating "the same musical features to reach their own conclusions" to see whether any of them contain the combination (or "selection and arrangement") of "elements" Plaintiffs claim is original to them and protectable.

### B. **Bilby's Failure to Disclose Cannot Be Rectified By His Untimely Declaration**

Plaintiffs try to retroactively cure the fatal failure of Bilby's reports to disclose the material he considered by submitting a new declaration in support of Plaintiffs' summary judgment motion. (Dkt. 745, Decl. of Kenneth Bilby ("Bilby SJ Declaration")). Bilby's new declaration vaguely describes a "methodology" he supposedly used in conducting a prior art search, and materials he claims to have considered, none of which is in his reports. Bilby cannot retroactively fix or supplement his reports in a declaration containing information nowhere found in his reports concerning his supposed prior art search. *See Sitrick v. Dreamworks, LLC,* No. CV 03-4265-SVW(AJWX), 2006 WL 6116641, at *23-24 (C.D. Cal. July 20, 2006) (striking expert declaration submitted on summary judgment because it was "untimely," "contradicted prior testimony by" the expert," and presented "new testimony not contained in the expert['s initial] report."); *Plumley v. Mockett*, 836 F. Supp.2d 1053, 1062 (C.D. Cal. 2010) (excluding expert declaration submitted on summary judgment which defendant characterized as "supplemental" under Rule 26(e), explaining that Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report'"). If Bilby did a prior art search, the information was known to him when he submitted his report and was required to have been disclosed at that time. He cannot supplement his reports now through the Bilby SJ Declaration, which must be excluded as untimely under Rules 26(a) and 37(c)(1).

Moreover, the Bilby SJ Declaration does not pass muster under Rule 26 even had this information been in his reports and is in fact contrary to the testimony in his report

---

that he asserts he reviewed or considered during his purported prior art review.

6

and must be excluded for that reason as well. *See Rodas v. Porsche Cars N. Am., Inc.*, No. CV14-3747 PSG (MRWX), 2016 WL 6033535, at *7-9 (C.D. Cal. Apr. 4, 2016) (excluding expert declaration submitted on summary judgment because it was untimely and conflicted with expert's initial report); *Jarrow Formulas, Inc. v. Now Health Grp., Inc.*, No. CV 1—8301 PSG (JCx), 2012 WL 3186576, at *14-16 (C.D. Cal. Aug. 2, 2012), *aff'd*, 579 Fed. App'x 995 (Fed. Cir. 2014) (same). Bilby says in paragraph 5 of the Bilby SJ Declaration that he searched for prior art "containing the same or similar elements" that he describes in paragraph 4 of that declaration. But his report only vaguely stated that he searched for prior art from which "Fish Market," which he defined as "The Song," "could be derived". (Bilby Report 16.) His report says nothing about searching for any combination of elements, let alone the combination described at paragraph 4. Nor does his report say that he "filtered out elements that were not part of the particular combination being considered as existing in *Fish Market, Dem Bow* and *Pounder Dub Mix II*." (Bilby SJ Declaration at ¶ 5.) His report says nothing about filtering or filtration.

Bilby's SJ Declaration also purports to identify "categories of musical material" he claims to have considered, which are just a list of countries or territories, and vaguely-described categories such as "Caribbean popular music with interlocking drum set parts" and "increasingly minimalist, and often percussion-based, Jamaican dancehall music from the 1980s." (*Id.*) No such categories are mentioned in his reports and he still does not identify a single recording or item of "musical material" within those "categories" that he claims to have reviewed and rejected. So, again, Defendants have no way to test his conclusion that he was "unable to find any evidence of prior art in the public domain . . . from which 'Fish Market' could be derived." (Bilby Report 7, 16.) Nor are Defendants able to test the conclusion that Plaintiffs now ascribe to Bilby (but that he does not actually assert): that he "determined that no prior work replicated the protectable combination present in the Dem Bow Riddim." (Opp. 11.)

7

In fact, the *only* recordings or material Bilby actually identifies by name or title in his Bilby SJ Declaration are some of the recordings reviewed and considered *by Defendants' experts*. While Bilby asserts his prior art review "included" but was "certainly not limited to" those recordings, he fails to identify a single recording other than those mentioned by Defendants' experts. (Bilby SJ Declaration at ¶ 5.) If he did the search he claims he should have been able to identify at least one recording not mentioned by Defendants' experts.

## C. Plaintiffs Concede the Relevance of Prior Art

Plaintiffs argue (Opp. 3-6) that "the existence of similar elements in prior works is *irrelevant* to the originality inquiry" because this phase requires the Court to determine only whether the combination or "selection and arrangement" of "elements" they claim to "contain sufficient creative expression" and "is the result of Plaintiffs' own original authorship, rather than copied from a prior source." Plaintiffs are wrong.

*First*, Plaintiffs previously acknowledged (correctly) that "the originality and protectability inquiries" in this phase "involve *looking at works within the implicated musical landscapes in relation to other works within those landscapes to see* how the expression at issue is treated," and "*whether the elements common between the allegedly infringing works and the Subject Works are commonplace, and thus unprotectable as a matter of law*." (Dkt. 609, Pls.' Opp. Defs.' Protective Order Mot., 14.) Thus, they agreed that this phase requires performing a prior art search and comparison of the elements or combination of elements in Plaintiffs' Claimed Works that Plaintiffs claim are original, protectable, and copied in the allegedly infringing works (as pled in the SCAC) to the same or similar elements in prior art, to determine whether those elements or combination of elements are "commonplace, and thus unprotectable as a matter of law." This is the first half of the extrinsic test for substantial similarity, and the parties agreed to bifurcate and address the first half of that test in this phase to potentially avoid the need to conduct individual access and substantial similarity comparisons of elements or combinations of elements for thousands of

allegedly infringing works when those elements or combination of elements may be unprotectable. (Dkt. 706, PC Defs.' Mot. Summ. J. ("MSJ") 2-3, 9-10 (citing cases, including *Johannsongs,* 2020 WL 2315805, at *3 ("filer[ing] out unprotectable prior art elements . . . is the foundation of the extrinsic test")).).

***Second*,** Plaintiffs' "originality" definition is the standard for determining whether a work ***as a whole*** is copyrightable,[4] not whether any portion, including any portion that constitutes a "selection and arrangement" of unprotectable elements, is protectable under copyright such that the plaintiff may claim a monopoly over such portion and claim that someone else who has used such portion is an infringer. *See, e.g., Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir. 1994) ("Apple's argument that components should not be tested for originality because its interface as a whole meets the test, *see Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970) ('[T]he originality necessary to support a copyright merely calls for independent creation, not novelty.'), is therefore misplaced."). The latter inquiry is precisely what is at issue in this phase. Plaintiffs' "originality" definition says nothing about protectability, *i.e.*, whether their claimed combination of admittedly unprotectable "elements" are "commonplace," "generic" or musical "building blocks" over which no one may claim a monopoly. *See, e.g., Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 363 (1991) (a "selection and arrangement" is not protectable if it is "universally observed," "commonplace," or "expected as a matter of course"); *Satava v. Lowry,* 323 F. 3d 805, 811-12 (9th Cir. 2003) (a "selection and arrangement" is not protectable if it is "trivial" or "commonplace"); *Gray v. Hudson*, 28 F.4th 87, 101

---

[4] This is shown by several of Plaintiffs' cited cases. In *North Coast Indus. v. Jason Maxwell, Inc.,* 972 F.2d 1031, 1033 (9th Cir. 1992), the court held that the presumption of the validity of plaintiff's copyright afforded to it by its registration certificate was not rebutted by evidence presented by defendant that the work was not sufficiently original. Similarly, *in Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 n. 5 (9th Cir. 1977), the court was addressing originality in the context of "the prerequisites for copyright registration," which are "minimal."

9

(9th Cir. 2022) (a "selection and arrangement" is not protectable if it is "practically inevitable," "in keeping with 'an age-old practice,'" "firmly rooted in tradition" or "utterly" or "manifestly" "conventional.").[5]

Not only did Plaintiffs previously agree that this phase required consideration of prior art (Dkt. 609 at 14), but their Opposition admits it. They assert that prior art "can be relevant in some cases" (Opp. 3), including "[i]n music cases," where it has "become relevant to assess where things are commonplace or generic." (*Id.* at 6.)

***Third***, Plaintiffs' *post hoc* effort to rectify the absence of any prior art search in Bilby's reports is mirrored in their like efforts with their other experts, Finell and Ashbourne-Firman. Just as Bilby now claims his opinions are supported by a prior art search—nowhere addressed in his reports—Finell in her reports disclaimed reliance on prior art, only to try to walk that back at her deposition, claiming she conducted a prior art search that was "inconclusive," about which she disclosed nothing in her reports. (Dkt. 707, ("Finell Daubert Mot.") 2, 8.) Ashbourne-Firman's reports also do not say or disclose anything about prior art, and he admitted at deposition that he did not perform a prior art search, yet in his summary judgment declaration, he contradicts his own admissions, now claiming he did do a prior art search that supports his originality opinion. (Ashbourne-Firman Daubert Reply 11.) Plaintiffs want it both ways: prior art searches are irrelevant but, contrary to their own reports and sworn depositions, they supposedly conducted such searches. It is obvious they did not.

Plaintiffs' argument that Bilby did not need to filter unprotectable elements out of his analysis because Plaintiffs are asserting a "selection and arrangement" claim (*see, e.g.,* Opp. 4, 7-10), is both contrary to law and beside the point.[6] Plaintiffs still need to

---

[5] Here, as detailed in the Defendants' motion for summary judgment and as evidenced by the analyses and opinions of Defendants' experts (who presented dozens of examples of prior art), Plaintiffs' claimed "combination" is a rhythm that is all of the above: universal, commonplace, expected, trivial, inevitable, age-old, rooted in tradition, and manifestly conventional.

[6] For the same reason, Plaintiffs' "support" for that argument, a lengthy footnote in

10

demonstrate ***both*** what that "selection and arrangement" consists of ***and*** that such "selection and arrangement" is itself original and protectable and not a commonplace rhythm consisting of musical building blocks that exists in prior art. Defendants have not "distort[ed] the actual inquiry by isolating constituent parts and demanding filtering for originality in each fragment, rhythm, and musical element." (Opp. 9.) Rather, Defendants' argument is that both originality and protectability need to be shown, through a prior art analysis, even for Plaintiffs' claimed "selection and arrangement," which is itself a well-worn rhythm that is only a part or portion of "Fish Market." As shown in the Motion, Bilby was unable to even say what Plaintiffs' claimed "selection and arrangement" consists of (Mot. 19-24), let alone demonstrate the originality or protectability of any such "selection and arrangement" through a disclosed, replicable and reliable prior art search. (Mot. 14-17.)[7]

In fact, Bilby testified at deposition that when reviewing whatever prior art he claims to have reviewed (about which he disclosed nothing), he would not consider a work to be prior art unless it included a combination that was "substantially similar" to the combination he (and Plaintiffs) refuse to consistently define, that his standard for what was "substantially similar" existed only in his own mind and was concededly non-replicable, and that in addition to such "substantially similar" combination there also

---

which they misrepresent virtually every argument Defendants make concerning Bilby's purported prior art search and conclusions (Opp. 7-8 n. 3) is also irrelevant.

[7] As more fully discussed in Defendants' PAF Daubert Reply (at 6-8), none of the decades-old cases cited by Plaintiffs (Opp. 5-6) that purportedly draw a distinction between originality and novelty supports Plaintiffs' argument that the consideration of prior art and the filtering of unprotectable elements—including the entirety of the claimed "combination" or "selection and arrangement" if it too is not protectable—is not appropriate or required in this phase. Nor can Plaintiffs explain away *Johannsongs* and the multiple other recent cases cited in the PC Defendants' briefs (including *Stone v. Carey*, *Smith v. Weeknd* and *Yonay v. Paramount Pictures Corp.*) which required filtering of unprotectable elements, including those existing in prior art, in addressing claimed combinations.

11

1 needed to be "matches in certain other respects that would account for similarity in
2 sound or expression." (Mot. 16.) He further admitted that he *did* notice "commonplace"
3 rhythms that existed both in "Fish Market" and prior works but felt he did not need to
4 disclose those prior works where the "commonplace rhythms" "did not occur in a
5 context so that they were part of something larger that was original." (Mot. 17-18
6 (citing Bilby Dep. at 286:7-289:1).) This "double-talk" underscores what is obvious
7 from the absence of any prior art analysis in his reports: either Bilby did no prior art
8 search, or he did one and it confirmed that the rhythms claimed by Plaintiffs are not
9 protectable. Either way, his failure to disclose his methodology or the works he
10 reviewed renders his opinions based on such undisclosed search—including any
11 opinion Plaintiffs claim that he made concerning their "selection and arrangement"—
12 untestable, unverifiable and unreliable. His reports should be excluded.

### D. **Bilby's Originality Conclusions Are Not Supported by Any Other "Well-Established Ethnomusicological Methodology"**

Ignoring the distinction between "original" and "protectable," Plaintiffs assert that Bilby's failure to perform or adequately disclose a prior art analysis is of no moment because his testimony "squarely addresses" the issues of independent creation and minimal creativity (which do not address protectability). (Opp. 11.) Bilby was not present when any of Plaintiffs' claimed works were created and is thus incompetent to testify about "independent creation." Nor do Plaintiffs explain how Bilby's report is helpful or necessary on the issue of whether "Fish Market" is sufficiently "creative." Indeed, the testimony they cite on that issue points back to the prior art search Bilby belatedly claims he conducted but disclosed nothing about. (Opp. 13 (asserting Bilby "buttress[es] his opinion, based on his extensive knowledge in the field of ethnomusicology and his review of an expansive collection of resources and materials, that the Dem Bow Riddim is independently made and sufficiently creative: 'The Song . . . does not . . copy the contents of any known prior recording . . . .'").) Plaintiffs assert

12

over and over that Bilby deployed "well-established ethnomusicological methodology" to form opinions concerning independent creation and minimal creativity (Opp. 13, 15-18), but nowhere identify or explain that "methodology" beyond repeating their conclusory assertion that he searched for prior art (without disclosing his prior art methodology, results, or the recordings or data considered). (*See id.*)

Plaintiffs fail to address Defendants' arguments (Mot. 23-25) that the bulk of Bilby's testimony is irrelevant to whether the "Fish Market" composition, or some combination of compositional elements therein, is original and protectable. Bilby devotes 14 pages to the amorphous concept of "feel"—"a cluster of values, practices and tendencies"—which he admitted at deposition was irrelevant to originality and protectability. (Mot. 23.) Plaintiffs ignore Bilby's admission, arguing the vague notion of "feel" is relevant. (Opp. 12-13.) Plaintiffs do not attempt to defend Bilby's assertion that the "cultural context" or the way that listeners hear "Fish Market," or "validate it as something that's important and worthwhile," is relevant to the originality inquiry. (Mot. 23.) Nor do they dispute that Bilby's testimony that the originality of "Fish Market" is shown by its "success," events that took place after the creation of "Fish Market," and where "Fish Market" was released is also irrelevant. (Mot. 24.)

### E. **Bilby's Rebuttal Reports Are Also Unreliable**

Plaintiffs' arguments concerning Bilby's rebuttal reports largely mirror their incorrect arguments regarding his affirmative report. They claim that Bilby properly criticized Marshall and Butler for not discussing what they claim is the correct "legal standard" for "originality," and for not opining about "independent creation" (Opp. 19-20, 21). Again, their "legal standard" is irrelevant to this phase (*see supra* 8-10), no expert would be a percipient witness as to whether "Fish Market" was independently created (*see supra* 12-13), and it is not an expert's role to opine on "legal standards." *See, e.g., Harison v. Dugar,* Case No. 2:22-cv-08230-HDV (Ex), 2024 WL 590682, at *1-2 (C.D. Cal. Jan. 2, 2024) ("[W]hen the purpose of testimony is to direct the jury's

13

1 understanding of the legal standards upon which their verdict must be based, the
2 testimony cannot be allowed. In no instance can a witness be permitted to define the
3 law of the case."); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 835 (C.D. Cal. 2010),
4 *aff'd*, 438 Fed. App'x 587 (9th Cir. 2011), and overruled in part on other grounds ("an
5 expert may not state his or her opinion as to legal standards").

6 Relatedly, Plaintiffs argue that Bilby properly criticized Marshall for "isolat[ing]
7 'constituent rhythms'" and comparing them to prior art, and then reaching a conclusion
8 that what Plaintiffs claim to own is a "commonplace" or "generic" rhythm. (Opp. 20.)
9 But, as shown above and in the Motion (at 12-19), that is precisely what this case phase
10 is about and it is what Bilby did not do, as Bilby did nothing to determine whether the
11 "constituent rhythm" in "Fish Market" that Plaintiffs' claim to own (i.e., their claimed
12 "selection and arrangement") is, in fact, original and protectable and is not a
13 "commonplace" musical "building block" that existed long before "Fish Market." (*Id.*)

14 Bilby admitted that what exists in "Fish Market" is a "***generic***, ***dem bow beat***"
15 (Bilby Report 14-15), but claims such "beat" is "original" due to other "characteristics"
16 that make the "Fish Market" ***recording sound*** the way that it does, such as the
17 instruments on which Steely and Clevie played the rhythm (primarily a drum machine),
18 and the "feel" or "Jamaicanness" with which they played it. (Mot. 16-18; 21-22.) These
19 are not elements of a musical composition. *Gray v. Hudson*, 28 F.4th 87, 99 (9th Cir.
20 2022) ("[T]he choice of a particular instrument (whether acoustic or electronic) to play a
21 tune relates to the performance or recording of a work, which are protected by distinct
22 copyrights."); *id.* ("'timbre' is a way of describing a sound's quality," "[b]ut a copyright
23 to a musical work does not give one the right to assert ownership over the sound of a
24 synthesizer any more than the sound of a trombone or a banjo").

25 As for Bilby's rebuttal of Butler, Plaintiffs attribute to Butler flaws that actually
26 belong to Bilby. They say that Butler "proclaim[s] the existence of prior art but merely
27 asserts similarity based on general rhythmic feel or instrumentation ***without***
28

14

*affirmatively identifying any works.*" (Opp. 21.) But it is Bilby, not Butler, who asserts similarity "based on general feel or instrumentation.," devoting 14 pages in his report to "feel," and incorrectly opining that a commonplace rhythm can be rendered an "original" compositional element by playing it on a different type of drum or instrument (or using a different drum machine sound) than on which it was previously played. (Mot. 3, 14-17.) And Butler, not Bilby, ***identifies, by title, multiple prior art works, and also provides comparative transcriptions*** of several identified works and "Fish Market." (Dkt. 706-30, Butler Report 8-16.)

F. **Bilby's Failures Go to the Reliability of His Reports and Their Admissibility**

Defendants' bases for excluding the reports and testimony of Bilby are not mere "[d]isputes as to the strength of [Bilby's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion." (Opp. 17.) They are based on, *inter alia*, Bilby's failure to provide any information about a prior art search he now claims he conducted or about his assertion that such prior art search did not yield any "evidence of prior art in the public domain from which ["Fish Market"] could be derived, and demonstrates that "Fish Market" "was a marked departure" and "substantially different from, prior art and recordings, including anything that was in the musical marketplace at the time Steely and Clevie invented it." (Bilby Report 16, 20, 74.) This is pure unsupported *ipse dixit* devoid of **any** disclosed and replicable methodology. Bilby's non-disclosures violate Rule 26(a), mandating exclusion, and render his reports "fatally flawed," "unreliable," and "unhelpful" under FRE 702 the Court should "decline[] to consider them." *Johannsongs*, 2020 WL 2315805, at *5-7.

### III.   CONCLUSION

The Court should grant the Motion and exclude all of Bilby's reports and testimony from its consideration of the motions for summary judgment, and grant Defendants such other and further relief as may be just and proper.

Respectfully submitted on August 4, 2025

**PRYOR CASHMAN LLP**

By: */s/ Frank P. Scibilia*

Donald S. Zakarin (*dzakarin@pryorcashman.com*)
Frank P. Scibilia (*fscibilia@pryorcashman.com*)
James G. Sammataro (*jsammataro@pryorcashman.com*)
Benjamin S. Akley (*bakley@pryorcashman.com*)
Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)