Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
Andres Navarro (SBN 358499)
anavarro@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RODNEY SEBASTIAN CLARK DONALDS, *et al.*,<br><br>Defendants. | Case No. 2:21-cv-02840-AB-AJR<br><u>Hon. André Birotte Jr. Presiding</u><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF WAYNE MARSHALL**<br><br>Date:     Sept. 26, 2025<br>Time:     10:00 a.m.<br>Courtroom: 7B |

# **TABLE OF CONTENTS**

I. INTRODUCTION…………………………………………………………………….1

II. ARGUMENT……………………………………………………………………….2

    A. Defendants largely do not dispute that the specified portions of Marshall's testimony are irrelevant…………………………………………….2

        1. Marshall's use of a concededly wrong definition of "original" warrants exclusion…………………………………………………..2

        2. Defendants do not seriously dispute that Marshall failed to analyze the selection and arrangement at issue in its totality, instead employing a "filtering" prohibited by the Ninth Circuit……4

        3. Defendants concede that Marshall analyzes the wrong version of *Dem Bow* and acknowledges the irrelevance of his own testimony……………………………………………………………6

    B. Defendants largely do not dispute that the specified portions of Marshall's testimony are unreliable……………………………………………7

        1. Defendants largely do not dispute Marshall's failure to conduct a full prior art search for the timbale pattern or comparatively notate any prior art reference against the full *Dem Bow* Riddim…...8

        2. Defendants cite no musicological principle supporting Marshall's disregard of the *Dem Bow Riddim*'s bassline as a pitched element…………………………………………………….10

        3. Marshall's "mashups" and third-party social media links are not judicially noticeable for their truth, nor is there evidence that ethnomusicologists rely on such.  Materials in opining on originality……………………………………………………………..11

    C. Defendants largely do not dispute Marshall vouching and making credibility determinations……………………………………………………..13

III. CONCLUSION……………………………………………………………………...15

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Browne v. Clark*,
  2025 WL 819024 (C.D. Cal. Feb. 18, 2025) .................................................. 4
*Browne v. Donalds*,
  2024 WL 3468898 (C.D. Cal. May 28, 2024) ............................................... 2
*City of Pomona v. SQM N. Am. Corp.*,
  750 F.3d 1036 (9th Cir. 2014) ....................................................................... 3
*Cottrill v. Spears*,
  2003 WL 21223846 (E.D. Pa. May 2003) .................................................... 5
*Desire, LLC v. Manna Textiles, Inc.*,
  986 F.3d 1253 (9th Cir. 2021) ....................................................................... 3
*Feuerstein v. Home Depot, U.S.A., Inc.*,
  2014 WL 2557123 (D. Ariz. June 6, 2014) ................................................. 13
*Gray v. Perry*,
  2019 WL 2992007 (C.D. Cal. July 5, 2019) ................................ 5, 11, 12, 13
*Hendricks v. DreamWorks, LLC*,
  2007 WL 9705916 (C.D. Cal. Nov. 20, 2007) ............................................... 3
*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
  340 F. Supp. 3d 934 (N.D. Cal. 2018) ......................................................... 14
*Hynix Semiconductor Inc. v. Rambus Inc.*,
  2008 WL 73689 (N.D. Cal. Jan. 5, 2008) .................................................... 14
*Jelin v. San Ramon Valley Unified Sch. Dist.*,
  2018 WL 11234633 (N.D. Cal. Nov. 5, 2018) ............................................ 14
*Johannsongs-Publ'g Ltd. v. Lovland*,
  2020 WL 2315805 (C.D. Cal. Apr. 3, 2020) ............................................... 10
*K&N Eng'g, Inc. v. Spectre Performance*,
  2011 WL 13131157 (C.D. Cal. May 12, 2011) .......................................... 13
*L.F.M. & M.D.S.M. v. Midwest Exp. Holdings*,
  2010 WL 3860130 (C.D. Cal. May 3, 2010) .............................................. 13
*Mazer v. Stein*,
  347 U.S. 201 (1954) ....................................................................................... 3
*McKenna v. Nassau Cnty.*,
  2023 WL 8455670 (E.D.N.Y. Dec. 6, 2023) ............................................... 11
*Netlist Inc. v. Samsung Elecs. Co.*,
  2021 WL 6103543 (C.D. Cal. Nov. 17, 2021) .............................................. 2
*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ....................................................................... 4
*United States v. Binder.*,
  769 F.2d 595 (9th Cir.1985) ........................................................................ 14

*Virgil v. Poole*,
  2000 WL 35786928 (S.D. Cal. July 18, 2000) .............................................................. 14

*Woodall v. Walt Disney Co.*,
  2024 WL 5337348 (C.D. Cal. Nov. 1, 2024) ................................................................. 11

PLAINTIFFS' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF WAYNE MARSHALL

## I. INTRODUCTION

When all the rhetoric, hyperbole, and distractions are stripped away, Defendants do not truly dispute that significant portions of Dr. Marshall's testimony in this case[1] are irrelevant, unreliable, and otherwise improper. Indeed, their argument amounts to little more than that they believe his opinion is correct. But their desire for Marshall's testimony to be correct does not make it so, or even admissible. And ultimately, it is not, as Defendants largely fail to dispute—and thus concede—the three grounds upon which Marshall's challenged testimony should be excluded.

First, Defendants do not meaningfully dispute that Marshall (1) eschews the relevant definition of originality in favor of an improper "novelty" definition at odds with copyright law; (2) never actually analyzes the selection and arrangement at issue (i.e., the full composite drum, percussion, and bass pattern comprising the *Dem Bow Riddim*) in its totality, or even the deposit copy of *Dem Bow*; and (3) admits that particular portions of his testimony do not pertain to this phase.

Second, Defendants do not meaningfully dispute that Marshall never comparatively notates any "prior art" references against the full *Dem Bow Riddim* as asserted (i.e., the overall combination) and they cite no ethnomusicological principle supporting his (1) treatment and disregard of a concededly pitched element (bassline) as a non-pitched element, (2) reliance on unverifiable third-party social media content, or (3) creation of manipulated and incomplete "mash-ups" in lieu of the musical material as embodied in the deposit copies of *Fish Market*, *Dem Bow*, and *Pounder Dub Mix II*.

And third, Defendants largely do not dispute that Marshall purporting to attest to the truth of other defense experts' opinions, and the lack of truthfulness or trustworthiness of Plaintiffs' experts, are textbook examples of vouching and assessing credibility that are inappropriate.

---

[1] Defendants' argument that Plaintiffs seek to exclude Marshall wholesale is a strawman—Plaintiffs do not. Additionally, Defendants' assertion that Plaintiffs' do not challenge particular paragraphs of Marshall's reports (Dkt. 771 at 3-4) is demonstrably false, as set forth below in Appendix 1 to this motion.

For these reasons, and as set forth in Plaintiffs' motion, this Court should exclude the specified portions of Marshall's testimony.

## II. ARGUMENT

### A. Defendants largely do not dispute that the specified portions of Marshall's testimony are irrelevant

Defendants effectively concede that Marshall's misuse of "original" is improper, and their subjective belief in the correctness of his concededly irrelevant analysis makes no difference. It is irrelevant and thus should be excluded.

#### 1. Marshall's use of a concededly wrong definition of "original" warrants exclusion

Defendants concede that Marshall failed to use "original" consistent with its meaning under copyright law. Instead, since he personally disagrees with the meaning of "originality" under copyright law (he subjectively thinks musical works should be held to a higher standard than other artistic works, and that rhythmic compositions should be held to an even higher standard than other types of musical compositions, because nothing under the sun is new and therefore originality should mean the first to do something)[2] he applied a standard for "original" that *contradicts* the term's meaning under copyright law. *See* 9th Cir. Model Jury Instr. No. 17.14 ("The 'original' part of a work need not be new or novel."); *Browne*, 2024 WL 3468898, at *21 ("[T]he originality necessary to support a copyright merely calls for independent creation, not novelty.").

---

[2] Defendants' argument that "Plaintiffs previously admitted prior art is critical" (Dkt. 771 at 4) mischaracterizes Plaintiffs' prior citation to this Court's Order denying Defendants' motions to dismiss, and specifically this Court's discussion of the law governing **scenes-a-faire**, which Defendants argued at the pleading stage and failed to raise at summary judgment (thus waiving it). *See Browne v. Donalds*, 2024 WL 3468898, at *20 (C.D. Cal. May 28, 2024); *Netlist Inc. v. Samsung Elecs. Co.*, 2021 WL 6103543, at *2 (C.D. Cal. Nov. 17, 2021) (deeming defendant's failure to raise waiver, estoppel, and acquiescence at summary judgment as abandonment). Defendants erroneously mixing and matching distinct copyright concepts does not cure Marshall's rogue definition of "original."

1  Incredibly, Marshall admits that under his definition no drum pattern would be original.
2  *See* Dkt. 737 at 4-6.

3  Defendants attempt to salvage Marshall's use of words like "invent" (e.g.,
4  Marshall claims Plaintiffs did not "invent new rhythms") by arguing it is a synonym for
5  'create.'" Dkt. 771 at 7 n.8. But it is not, and "**copyright protects originality rather than**
6  **novelty or invention**[.]" *Mazer v. Stein*, 347 U.S. 201, 218–19 (1954) (emphasis added).
7  Plus, Defendants' suggestion that "Marshall expressly rejected that 'originality' requires
8  Plaintiffs to have 'invented a new rhythm'" (Dkt. 771 at 6) is untethered from his
9  testimony. *See* Dkt. 706-21 ¶ 21 ("But to accord [Steely & Clevie] credit as having
10 originated or invented new rhythms would be incorrect."); Dkt. 752-38 (Marshall Dep.
11 129:14-131:8) ("They did not originate or invent new rhythms.").

12 Defendants incomprehensibly argue that "the law and [] the Administrative Order
13 (and the extrinsic test)" somehow *require* Marshall to use a definition of "original" *other*
14 *than* its definition under copyright. Dkt. 771 at 5-6, n.6. Their argument fails for at least
15 two reasons.

16 First, Defendants' own cited authority,[3] *Hendricks v. DreamWorks, LLC*, 2007 WL
17 9705916 (C.D. Cal. Nov. 20, 2007), reinforces that Marshall's misuse of a copyright term
18 of art warrants exclusion. There, the court excluded expert testimony that applied a
19 different colloquial, vernacular meaning to a copyright term of art (there, "striking
20 similarity") because experts are precluded "from testifying in the language of . . . legal
21 standards that are at the heart of the case if that language has a separate, distinct, and
22 specialized meaning in the law different from its meaning in the vernacular." *Id*. at *5.
23 That is exactly what Marshall did. And that same misapplication of copyright concepts
24 warranted the exclusion of experts in *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253,

---

[3] Defendants' mischaracterize *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044–45 (9th Cir. 2014). The cited portion of that opinion concerned **scientific methods** in ongoing development, ***not*** legal standards governing the asserted claims. *See id*.

3

PLAINTIFFS' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF WAYNE MARSHALL

1260–61 (9th Cir. 2021), and *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003), neither of which Defendants even attempt to distinguish.

And second, Defendants' argument is untethered from the Case Administration Order. As Judge Richlin clarified six months ago, this phase (and the phrase "otherwise protectable under copyright law") has nothing to do with the extrinsic test: "[T]he issue of protectability for purposes of the 'protectability/original authorship' phase is limited to an analysis of the elements of Plaintiffs' claimed works and whether they contain sufficient creative expression to be protectable[.]" *Browne v. Clark*, 2025 WL 819024, at *5–6 (C.D. Cal. Feb. 18, 2025). Even "**[D]efendants** described the 'protectability/original authorship' phase as including 'whether the works were independently created by Plaintiffs and whether those works exhibit a sufficient level of creativity.'"[4] *Id*. (emphasis added). "Thus, the parties expressly agreed that issues related to . . . **substantial similarity** . . . would not be included in the 'protectability/original authorship' phase." *Id*. at *4 (emphasis added).

### 2. Defendants do not seriously dispute that Marshall failed to analyze the selection and arrangement at issue in its totality, instead employing a "filtering" prohibited by the Ninth Circuit

Defendants spend six pages (Dkt. 771 at 7-12) arguing their belief in the merits of Marshall's testimony without meaningfully addressing the errors Plaintiffs identify—errors that render the challenged testimony irrelevant and improper.

Defendants do not dispute that Marshall's report never analyzes whether the *Dem Bow Riddim* is an original and protectable selection and arrangement in its totality—regardless of whether its constituent elements are individually or in smaller

---

[4] Defendants argue that "if the sole issue to be decided in this phase was the 'originality' of Plaintiffs' works . . . , there would be no need for experts in this phase, as . . . the question of minimal creativity requires no 'scientific, technical, or other specialized knowledge.'" Dkt. 771 at 5 n.5. Setting aside there is no authority supporting this proposition (Defendants cite none), this is a tacit admission that Marshall's testimony is not relevant to this phase.

combinations.[5] *See* Dkt. 706-21 ¶ 35 (separating and isolating one element at a time and assessing whether it is original on its own). Marshall acknowledges the asserted combination consists of a selection and arrangement of seven elements, yet Defendants fail to cite a single paragraph of his report where he conducts an analysis of that selection and arrangement in its totality. *Id*. ¶ 31.

Defendants also do not dispute that Marshall contravened binding Ninth Circuit authority (and fundamental copyright principles) by disregarding compositional elements (*see* Dkt. 737 at 7:18-23) and splintering the single timbale pattern in the combination into even smaller parts (*see id*. at 7:1-17). Again, Defendants' focus on the perceived correctness of Marshall's conclusion that the single timbale pattern is not original on its own simply does not matter, the issue is the irrelevance of that analysis to the asserted claim (which is for a selection and arrangement, not individual elements) and the law (because Marshall's analysis is dually flawed for filtering a selection and arrangement claim and further filtering a single element).

And Defendants do not dispute that Marshall focused on an isolated rhythmic component within the kick and snare to the exclusion of the overall selection and arrangement of elements being asserted (Dkt. 706-21 ¶ 38) and the actual kick and snare pattern within that overall selection and arrangement. *See* Dkt. 737 at 6. Nor do they dispute that he did so based on his subjective view of the subset's (as opposed to the entire selection and arrangement's) recognizability to "the lay listener"—which is speculation and application of the intrinsic test (*see Gray v. Perry*, 2019 WL 2992007, at *18 (C.D. Cal. July 5, 2019) (excluding expert's testimony regarding "lay-listener opinions" because "this testimony invades the province of the jury and precludes Decker from testifying about how the two songs are perceived by lay listeners"), citing *Cottrill v. Spears*, 2003 WL 21223846, at *8 (E.D. Pa. May 2003) (excluding expert testimony

---

[5] As set forth in Plaintiffs' Reply in support of their Motion for Partial Summary Judgment, Plaintiffs have asserted a selection and arrangement claim since the outset.

about how the songs "are aurally perceived by the lay listener"))—and its significance to reggaeton, which Marshall admits "doesn't pertain to this phase."

### 3. Defendants concede that Marshall analyzes the wrong version of *Dem Bow* and acknowledges the irrelevance of his own testimony

Defendants concede that Marshall analyzed the wrong version of *Dem Bow* and failed to analyze the deposit copy. Dkt. 771 at 16. Their other expert, Dr. Bennett, explains that this is an excludable failure. *See* Dkt. 736-2 at Section II.G, p. 3 of 36 ("It is incumbent on any expert musicologist to ensure that any musical work or sound recording that he or she is analyzing is in fact . . . the deposit copy[.]"). And Defendants highlight the significance of the error, arguing: "The Marshall Report notes, for example, that: (i) the tambourine is 'only heard in "Fish Market"' (Dkt. 771 at 10). In fact, it is undisputed that the deposit copy for *Dem Bow* includes the tambourine—a fact that Marshall cannot competently testify to having failed to analyze that deposit.

Defendants also concede that post-1989 musical works are irrelevant, yet Marshall relies on numerous post-1989 works (e.g., "Tougher Than Tough," "Tiger," "T.O.K.," and a 2011 YouTube video in which Marshall identifies no specific, dated source material within the video that predates 1989).

Of course, if, as Defendants argue, Marshall "does not cite or rely on any musical works from 'Tougher Than Tough'" (Dkt. 771 at 15) then Paragraph 18 of his report is irrelevant.[6] And Defendants' purported justification for Marshall's citation to "Tiger," "T.O.K.," and a 2011 YouTube video—that he "does not suggest" they are "prior art, but instead that they are enduring examples of the Kumina and Pocomania influences in Jamaican music" and "the core rhythm of the African American ring shout" (Dkt. 771 at

---

[6] Defendants argue Marshall only cites "liner notes" (*id*.), but their footnote 14 reveals that Marshall is indeed attempting to rely on the musical works from that 1993 album. The "evidence" cited in Defendants' footnote 14 is not in Marshall's report, it is not judicially noticeable, and there is no declaration from anyone attesting to it. Nevertheless, whether he relies on it for its music or its liner notes about the music (a dubious after-the-fact distinction that is not in the report in the first place) does not matter because the material undisputedly post-dates *Fish Market*.

6
PLAINTIFFS' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF WAYNE MARSHALL

15)—is pretextual, as that explanation is attempting a "prior art" justification without the phrase "prior art." Defendants provide no citation to anything in Marshall's report supporting those post-hoc, conclusory justifications for his inclusion of these concededly post-1989 musical works in his report. That is because his report *contradicts* them: they argue that these are "not cited among Marshall's 52 prior art exemplars" (Dkt. 771 at 15), but both "Tiger" and "T.O.K." are cited in the section of Marshall's report titled "Prior Art" (Dkt. 706-21 at Section D, p. 32 of 52).

Other than that, Defendants conclusorily dispute Marshall's testimony disclaiming under oath particular paragraphs of his report (Dkt. 771 at 15-16), but their statement "at most Plaintiffs (erroneously) take issue with portions of five paragraphs" (*id.*) effectively concedes the point. Plus, there is no serious dispute that Marshall unequivocally disclaims the relevance of last three sentences of the last paragraph before Section IV (Dkt. 706-21 at p. 5 of 52), Paragraph 21, and the last paragraph of Paragraph 77 (i.e., the last paragraph before Section VI, at p. 52 of 52) (Dkt. 737-1, Marshall Dep. 189:21–190:1); the relevance of Paragraph 26 (Dkt. 737-1, Marshall Dep. 224:25–225:8); and the relevance of Paragraphs 29 and 38 (Dkt. 737-1, Marshall Dep. 234:12-235:7).

\* \* \*

If Marshall was a prospective juror, he would be stricken for failure to follow the law. There is no reason his designation as a purported expert should warrant a different result. And for all their stridency, Defendants' subjective belief in the correctness of Marshall's conclusions does not make his testimony relevant—especially in light of Marshall's own admissions to the contrary. As a result, the specific portions of Marshall's testimony identified here and in the motion should be stricken as irrelevant.

### B. Defendants largely do not dispute that the specified portions of Marshall's testimony are unreliable

Defendants effectively concede that Marshall's failure to comparatively notate any of his "prior art" references against the composite drum, percussion, and bass pattern comprising the *Dem Bow* Riddim in its totality, and failure to cite *any* evidence that

ethnomusicologists regularly create manipulated and incomplete mash-ups and rely on unverifiable third-party social media content to opine on originality, makes his testimony unreliable. Defendants' subjective belief in the correctness of this undisputedly unreliable analysis makes no difference. This warrants exclusion.

### 1. Defendants largely do not dispute Marshall's failure to conduct a full prior art search for the timbale pattern or comparatively notate any prior art reference against the full *Dem Bow* Riddim

Defendants do not dispute that Marshall conceded he failed to do a full prior art search for the *Dem Bow* Riddim's timbale pattern, or that his testimony that "it probably resembles many, many other timbale performances over the years" and "the oeuvre of Tito Puente alone would have many examples" is speculation about an artist's entire discography without identifying (much less analyzing) any specific works (and thus failing Rule 26's requirement of disclosure of the facts and data considered by an expert in forming their opinions). Nor do Defendants dispute that his "prior art" search was shaped by his own subjective belief about what he "think[s] most people say dembow is" and that he was only looking for "boom-ch-boom-chick," i.e. "the relationship between the kick and the snare," not the overall combination of all asserted elements. Dkt. 737-1, Marshall Dep. 254:21–258:14. Defendants' sole argument is that Marshall purportedly "demonstrated that the timbale pattern . . . is not present in 'Fish Market' and so it cannot possibly be a part of" the *Dem Bow Riddim* (Dkt. 771 at 12-13), but their deflection and belief in the correctness of Marshall's conclusion is simply not responsive to any of the above undisputed errors.

After that, Defendants argue that "TUBS" is an acceptable form of notation (Dkt. 771 at 14), but that is not the issue Plaintiffs raise. Rather, the issue is Marshall's failure to provide *any* comparative notations between *any* "prior art" reference and the total drum, percussion, and bass parts comprising the *Dem Bow Riddim*. Indeed, the paragraphs Defendants cite (Dkt. 771 at 13-14) highlight those omissions:

- **Paragraphs 26 and 32 (Dkt. 706-21 ¶¶ 26, 32)** have nothing to do with "prior art" whatsoever.
- **Paragraph 15 (*id.* ¶ 15)**: This is Marshall's representation of "a pattern which has come to be called 'dembow,'" which by his own words is *not* a notation of all drum, percussion, and bass parts from "Poccomainia Jump," "Revival Time," or "Pocomania Day," and contains *no* comparative notations between those drum, percussion, and bass parts and the full *Dem Bow* Riddim. **Paragraph 27**, the same notation, is devoid of *any* "prior art" references. And **Paragraph 16** is similarly only a representation of an example of an abstracted "3+3+2 pattern."
- And in **Paragraph 35**, Marshall is not even notating the "prior art" he references, much less comparatively notating the drum, percussion, and bass parts in those references (if any) to the full *Dem Bow Riddim*. *See, e.g.*, Dkt. 752-38, Marshall Dep. 220:1-23 ("Q. [I]s your opinion that Reach Out, I'll Be There contains that same combination? A. No. In this case, I'm using that to talk about the tambourine pattern . . . . Q. Okay. And do -- are they the same tambourine pattern as what you notate here in 35E? A. No."). Marshall *admits* that he failed to comparatively notate, and that the level of similarity between his "prior art" references and the *Dem Bow Riddim* was unexpressed in his report and based on his belief about what is or should be obvious or self-evident. *See* Dkt. 737-1, Marshall Dep. 221:19-222:24 ("Q. So I guess what I'm asking is how do I know how similar they are compared to what you're notating here in 35E? A. . . I mean, again, you could listen. I mean, I think a lot of the examples I'm bringing in here are fairly evident and obvious, even to a lay listener . . . You could also transcribe. Q. Well, so that's what I'm getting at. We didn't -- you didn't transcribe the degree of similarity here between tambourine lines, right? A. No, I did not."). There are also zero comparative notations on pp. 35 and 37-38 of Marshall's report (all within Paragraph 35).

Tellingly, Defendants do not cite a *single paragraph* from the section of Marshall's report titled "Prior Art" (Dkt. 706-21 at Section D, p. 32 of 52), tacitly conceding that he fails to notate *any* of the referenced works he cites as "prior art" or their drum, percussion, and bass parts (if any), much less *any* comparative notations between those and all drum, percussion, and bass parts comprising the *Dem Bow Riddim*. This Court previously held that prior art references without "comparative transcriptions . . . to assess the validity and accuracy" of those references should be excluded (*Johannsongs-Publ'g Ltd. v. Lovland*, 2020 WL 2315805, at *6 (C.D. Cal. Apr. 3, 2020)), and Defendants do not even attempt to argue otherwise.

### 2. Defendants cite no musicological principle supporting Marshall's disregard of the *Dem Bow Riddim*'s bassline as a pitched element

Defendants' argument that "Marshall's challenged statement" disregarding the *Dem Bow Riddim*'s bassline "is not even contained in his reports" (Dkt. 771 at 12) is flatly contradicted by Paragraph 14 of his report. Dkt. 706-21 ¶ 14 ("I will focus on elements (i) and (ii) in my analysis to follow," excluding "the synth melodies played and programmed by Steely (i.e., the opening melody, **bassline, bass tones on 1 and 3**, and keyboard chords)") (emphasis added).

Defendants also argue that "Marshall's deposition testimony" disregarding the *Dem Bow Riddim*'s bassline "is obviously correct" (Dkt. 771 at 12), but Defendants' belief in the correctness of this testimony does not make it reliable, especially in light of Defendants' failure to dispute the very errors that make it unreliable—i.e., that Marshall acknowledges that the bassline is a pitched element yet disregards it as a non-pitched element because it only repeats a single note, that neither Defendants nor Marshall offer any citation, theory, or widely accepted musicological principle supporting his phantom distinction between "bassline" and "bass tones" or that an admittedly pitched element playing a single note is a non-pitched element. *See* Dkt. 737 at 11.

### 3. Marshall's "mashups" and third-party social media links are not judicially noticeable for their truth, nor is there evidence that ethnomusicologists rely on such materials in opining on originality

With respect to Marshall's reliance on and citation to third-party videos, Defendants argue that experts "can rely upon inadmissible material" and that YouTube videos and social media posts are subject to "judicial notice" (Dkt. 771 at 16-17), but both miss the mark.

As to the latter argument, as Defendants' own cited authority explains, third-party YouTube videos and social media posts are judicially noticeable at most for the fact of their existence, *not* the truth of their contents (which is the purpose for which Marshall offers them). *See Woodall v. Walt Disney Co.*, 2024 WL 5337348, at *4 (C.D. Cal. Nov. 1, 2024) ("With respect to . . . the YouTube video attached as Exhibit 10 to Botwin's Declaration, the Court takes judicial notice of the existence of the video . . . but not for the truth of the contents therein."); *McKenna v. Nassau Cnty.*, 2023 WL 8455670, at *6 (E.D.N.Y. Dec. 6, 2023) ("I may also properly take judicial notice of the Facebook posts . . . . I am not taking notice of the social media posts for the truth of the matters asserted therein.").

And as to the former argument, as Defendants' own cited authority explains, an expert may only rely upon inadmissible material "if experts in his field would reasonably rely on that data in forming their opinion" (*Gray v. Perry*, 2019 WL 2992007, at *17 (C.D. Cal. July 5, 2019)), and Defendants point to nothing in the record demonstrating that ethnomusicologists (or musicologists of any kind) rely on such social media videos when engaging in a comparative objective analysis of songs to opine on originality. Indeed, the court in *Gray* excluded expert testimony for this very reason. Revealingly, Defendants' cite no authority approving a musicologist of any kind relying on third-party videos without being able (or even attempting) to verify or authenticate the videos, sources, or creators, or whether and the extent to which any content in the videos (or in

the songs themselves) had been altered—which Defendants do not dispute is the case here.

Other than that, Defendants concede that particular "prior art" references linked in Marshall's report are unavailable (identified at Dkt. 737 at 15 n.5) and as a result should be excluded—i.e., since Plaintiffs cannot even listen to these references, much less comparatively notate them (which Marshall failed to do himself).



Defendants attempt to blame Plaintiffs for this (Dkt. 771 at n.16), but it is Defendants' affirmative obligation to provide all facts and data upon which Marshall bases his opinion, and a failure to do so is not Plaintiffs' fault nor Plaintiffs' responsibility to correct.

With respect to Marshall's mash-ups, Defendants argue that he "personally created" them and "preserved the original keys and tempo" (Dkt. 771 at 17-18), but that is not the issue. Rather, the issue is, just as in *Gray*, Marshall "chang[ed] the songs to

make them sound more similar" and thus failed to provide "an accurate representation of either sound recording." 2019 WL 2992007, at *17. Defendants do not dispute, and thus concede, that none of Marshall's mash-ups identified in Plaintiffs' motion are from the deposit copies of *Fish Market*, *Dem Bow*, or *Pounder Dub Mix II*, they are his separate creations; that none feature the asserted combination of elements in totality, they just feature kick and snare (and he admits that the kick and snare shown in the mash-ups does not accurately reflect the kick and snare within the *Dem Bow Riddim*, but rather what he subjectively thinks of as "Dembow" based on his speculation that people say "toom-pa-toom-pa,"); and that his mash-up containing Shabba Ranks' vocals from *Dem Bow*, which are not at issue, is not relevant and the extraction software he used affected the reliability of those isolated, not-at-issue vocals. *See* Dkt. 737 at 13-14.

*   *   *

Defendants do not dispute (either seriously or at all) the myriad errors that render the specified portions of Marshall's testimony unreliable. They cite *Feuerstein v. Home Depot, U.S.A., Inc.*, 2014 WL 2557123 (D. Ariz. June 6, 2014) to argue that these errors are minor, but as in that case, because Marshall's "methodology has not been proven to be generally accepted, and the errors are significant enough to make his entire analysis unreliable," this Court should conclude "that any opinions [Marshall] formed on the basis of his [above-referenced analysis] are inadmissible." *See id.* at *5.

### C. Defendants largely do not dispute Marshall vouching and making credibility determinations

Defendants misunderstand vouching. *See* Dkt. 771 at 19. "[T]he testifying expert cannot vouch for the truth of the other expert's conclusion." *K&N Eng'g, Inc. v. Spectre Performance*, 2011 WL 13131157, at *10 (C.D. Cal. May 12, 2011); *L.F.M. & M.D.S.M. v. Midwest Exp. Holdings*, 2010 WL 3860130, at *1 (C.D. Cal. May 3, 2010) (one expert may not vouch for the truth of another's opinion). Opining that Ferrara's transcriptions are in fact accurate (Dkt. 706-21 ¶ 6.h) is vouching for the truth of Dr. Ferrara's testimony. So is opining as to what Dr. Ferrara's transcriptions in fact show (*id.* ¶ 25).

And so is opining as to what is in fact proven by "prior art" identified by Dr. Ferrara, Dr. Bennett, and Dr. Butler (Dkt. 706-22 ¶ 17). This textbook vouching should be stricken. *See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 73689, at *14 (N.D. Cal. Jan. 5, 2008) ("Dr. Gilbert will not, however, be permitted to spruce up the Manufacturers' other experts' testimony . . . by vouching for its consistency or accuracy."); *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 993 (N.D. Cal. 2018) (striking opinion that "[another expert's] analysis is better designed to ensure a FRAND rate is derived for Huawei and Samsung's SEP portfolios" as vouching, i.e., "intend[ing] to bolster the testimony of another expert").

As for Marshall's improper credibility assessments, Defendants do not address, and thus concede, that the statements that Plaintiffs are purportedly "deliberately conflating" elements of different tracks (Dkt. 706-21 ¶ 35(f)) and that Plaintiffs' inability to find prior art is "untrue" (Dkt. 706-22 ¶ 17) are both improper and should be stricken. Defendants' attempt to rewrite Paragraph 32 (Dkt. 771 at 20) offers them no help. What Marshall *actually* states in Paragraph 32—"[T]hese inaccuracies seem intentional, and the Plaintiffs' own description . . . is likewise obfuscating and evasive"—is clearly speculating about truthfulness (i.e., "intentional") and thus credibility. Defendants' similar attempt to rewrite Paragraph 40 (Dkt. 771 at 20) also fails. Marshall's statement in Paragraph 40 that "I do not believe that Dr. Bilby is a copyright law expert, and this statement seems like another attempt at misdirecton and mis-definition . . . . and is outside the scope of Dr. Bilby's expressed remit" is clearly speculating about intent (i.e., "attempt at misdirection and mis-definition"), truthfulness, and trustworthiness, and thus credibility. *See Virgil v. Poole*, 2000 WL 35786928, at *3 (S.D. Cal. July 18, 2000) (excluding expert testimony on another witness' credibility) (citing *United States v. Binder.* 769 F.2d 595, 602 (9th Cir.1985) (finding district court erred in admitting expert testimony regarding a witness's credibility because such testimony asks the jury to accept the expert's opinion about the witness' truthfulness)); *Jelin v. San Ramon Valley Unified Sch. Dist.*, 2018 WL 11234633, at *2 (N.D. Cal. Nov. 5, 2018) (listing and excluding

expert testimony consisting of "impermissible broadsides against" witness). Marshall clearly overstepped in making these credibility assessments.

### III. CONCLUSION

In the end, Defendants' myopic focus on their belief that Marshall is right does make Marshall's testimony admissible. To the contrary, for all the ink Defendants spill arguing their self-serving view of the merits of his testimony, they largely do not dispute the grounds on which Marshall's testimony is irrelevant, unreliable, and improper (i.e., vouching and assessing credibility). Therefore, this Court should exclude the following portions of Marshall's report and all affirmative testimony Defendants offer from Marshall regarding the same:

- Dkt. 706-21 (Affirmative Report) at pp. 2 n.2, 5, 29, 34 ("From Clave to Dembow"), 37-38, 42-44, 46-47; ¶¶ 4-6(h), 10(b), 17-19, 21, 24-30, 32, 35-38, 40, 42, 45, 47, 49, 51-52, 54, 56-57, 59, 63, 65-69, 74-75, 77; Sections IV.C-D.
- Dkt. 706-22 (Rebuttal Report) at ¶¶ 17, 21-23, 40.

Respectfully submitted,

Dated: August 29, 2025      By:   */s/ Benjamin F. Tookey*
                                 Stephen M. Doniger, Esq.
                                 Scott Alan Burroughs, Esq.
                                 Benjamin F. Tookey, Esq.
                                 DONIGER / BURROUGHS
                                 *Attorneys for Plaintiffs*

### L.R. 11-6.2. Certificate of Compliance

The undersigned, counsel of record for Plaintiffs, certifies that this reply brief contains 4,888 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 29, 2025      By:   */s/ Benjamin F. Tookey*
                                 Benjamin F. Tookey, Esq.

# APPENDIX 1

| ¶ of Dr. Marshall's Reports | Page(s) of Motion Addressing ¶ |
|---|---|
| Affirmative Report (Dkt. 706-21) ¶ 10 | Motion (Dkt. 737) at 8 |
| *Id.* ¶ 17 | *Id.* at 16 |
| *Id.* ¶ 18 | *Id.* at 9 |
| *Id.* ¶ 19 | *Id.* at 8 |
| *Id.* ¶ 21 | *Id.* at 5, 10 |
| *Id.* ¶ 24 | *Id.* at 15 |
| *Id.* ¶ 25 | *Id.* at 16 |
| *Id.* ¶ 26 | *Id.* at 10 |
| *Id.* ¶ 29 | *Id.* at 10 |
| *Id.* ¶ 36 | *Id.* at 14 n.4 |
| *Id.* ¶ 37 | *Id.* at 8 |
| *Id.* ¶ 38 | *Id.* at 6, 10 |
| *Id.* ¶ 40 | *Id.* at 16 |
| *Id.* ¶ 42 | *Id.* at 9, 15, n.6 |
| *Id.* ¶ 45 | *Id.* at 14 n.4 |
| *Id.* ¶ 47 | *Id.* at 14 n.4 |
| *Id.* ¶ 49 | *Id.* at 14 n.4 |
| *Id.* ¶ 51 | *Id.* at 14 n.4 |
| *Id.* ¶ 52 | *Id.* at 15 |
| *Id.* ¶ 54 | *Id.* at 14 n.4, 15 |
| *Id.* ¶ 56 | *Id.* at 15 |
| *Id.* ¶ 57 | *Id.* at 14 n.4, 15 |
| *Id.* ¶ 59 | *Id.* at 14 n.4, 15 |
| *Id.* ¶ 63 | *Id.* at 9, 14 n.4, 15 |
| *Id.* ¶ 65 | *Id.* at 14 n.4 |
| *Id.* ¶ 66 | *Id.* at 15 |
| *Id.* ¶ 67 | *Id.* at 15 |
| *Id.* ¶ 68 | *Id.* at 14 n.4 |
| *Id.* ¶ 69 | *Id.* at 15 |
| *Id.* ¶ 74 | *Id.* at 15, n.6 |
| *Id.* ¶ 75 | *Id.* at 15 |
| *Id.* ¶ 77 | *Id.* at 3, 10, 15, n.6 |
| Rebuttal Report (Dkt. 706-22) ¶ 17 | *Id.* at 16 |
| *Id.* ¶ 21 | *Id.* at 8 |
| *Id.* ¶ 22 | *Id.* at 7 |
| *Id.* ¶ 23 | *Id.* at 5, 7 |
| *Id.* ¶ 40 | *Id.* at 16 |