**PRYOR CASHMAN LLP**
Benjamin S. Akley (State Bar No. 278506)
*bakley@pryorcashman.com*
Shamar Toms-Anthony (State Bar No. 323246)
*stoms-anthony@pryorcashman.com*
1901 Avenue of the Stars, Ste. 900, Los Angeles, California 90067
Telephone: (310) 683-6900

Donald S. Zakarin (admitted *pro hac vice*)
*dzakarin@pryorcashman.com*
Frank P. Scibilia (admitted *pro hac vice*)
*fscibilia@pryorcashman.com*
7 Times Square, 40th Floor, New York, New York 10036
Telephone: (212) 421-4100

James G. Sammataro (State Bar No. 204882)
*jsammataro@pryorcashman.com*
255 Alhambra Circle, 8th Floor, Miami, Florida 33134
Telephone: (786) 582-3003
*Attorneys for the Pryor Cashman-Represented Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *ET AL.*, <br><br> Plaintiffs, <br><br> v. <br><br> RODNEY SEBASTIAN CLARK, an individual, *ET AL.*, <br><br> Defendants. | Case No.: 2:21-cv-02840-AB-AJR <br><br> **PC DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE UNTIMELY AND CONTRADICTORY EXPERT DECLARATIONS PURSUANT TO FED. R. CIV. P. 37(c)** <br><br> Date: November 7, 2025 <br> Time: 10:00 a.m. <br> Courtroom: 7B <br><br> *[Declaration of Shamar Toms-Anthony and [Proposed] Order filed concurrently]* |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 7, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 7B of the courthouse located at 350 West First Street, Los Angeles, California 90012, the Pryor Cashman-Represented Defendants ("PC Defendants") will and hereby do move the Court for an order striking the Summary Judgment Declarations ("SJ Declarations"), or portions thereof, submitted by Plaintiffs' experts Judith Finell, Peter Ashbourne-Firman, and Kenneth Bilby on the grounds that they each contain assertions and disclosures that are untimely and that contradict prior opinions and testimony in their expert reports and depositions in this action in violation of Rules 26 and 37 of the Federal Rules of Civil Procedure. Defendants should also be awarded their fees and costs incurred in bringing this motion (in an amount to be determined by further submission).

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities and concurrently filed Declaration of Shamar Toms-Anthony, any reply memorandum, all other pleadings and orders entered in this action, and such other matters as may be presented at or before the hearing.

### L.R. 7-3 Statement of Compliance

This Motion is made following videoconference of counsel pursuant to Local Rule 7.3, which took place on September 3, 2025.

Respectfully submitted on September 26, 2025

**PRYOR CASHMAN LLP**

By: */s/ Benjamin S. Akley*
Donald S. Zakarin (*dzakarin@pryorcashman.com*)
Frank P. Scibilia (*fscibilia@pryorcashman.com*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James G. Sammataro (*jsammataro@pryorcashman.com)*
Benjamin S. Akley (*bakley@pryorcashman.com*)
Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com)*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES........................................ 1

I.    RELEVANT BACKGROUND .................................................................. 4

    A.  Discovery Deadlines and Disclosures................................................. 4

    B.  Plaintiffs' Prior Discovery Misconduct and Untimely Disclosures .. 4

    C.  Plaintiffs' Improper and Untimely Expert SJ Declarations............... 6

II.   LEGAL STANDARDS ............................................................................. 7

    A.  Rule 26 Disclosure Requirements and Rule 37(c) Sanctions ............ 7

III.  ARGUMENT ............................................................................................. 9

    A.    Rule 37(c) Requires the Exclusion of the SJ Declarations ................ 9

        1.    PAF......................................................................................... 9

        2.    Finell..................................................................................... 11

        3.    Bilby ..................................................................................... 14

    B.  The Untimely Disclosures Were Neither Substantially

        Justified Nor Harmless....................................................................... 15

IV.  CONCLUSION........................................................................................ 16

i

# TABLE OF AUTHORITIES

**CASES**                                                        **PAGE(s)**

*Day v. GEICO Cas. Co.*,
   No. 21-CV-02103-BLF, 2024 WL 251408 (N.D. Cal. Jan. 23, 2024) ................ 8

*Lust v. Animal Logic Ent.*,
   No. LACV1700308JAKAFMX, 2021 WL 6618677
   (C.D. Cal. Aug. 25, 2021) ..................................................................................... 9

*Plumley v. Mocket*,
   836 F. Supp. 2d 1053 (C.D. Cal. 2010)....................................................... 7, 8, 11

*Sitrick v. Dreamworks, LLC*,
   No. CV 03-4265-SVW(AJWX), 2006 WL 6116641
   (C.D. Cal. July 20, 2006)................................................................................. 8, 11

*Torres v. City of Los Angeles*,
   548 F.3d 1197 (9th Cir. 2008).................................................................................. 8

*Wong v. Regents of Univ. of California*,
   410 F.3d 1052 (9th Cir. 2005).................................................................................. 8

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001).................................................................................. 8

**RULES**

Rule 26(a)(2)(B) ........................................................................................................ 4

Rule 26(a)(2)(D) ........................................................................................................ 7

Rule 26(e) ................................................................................................................... 7

Rule 37(c) ............................................................................................................ 8, 15

Rule 37(c)(1)............................................................................................................... 8

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

In opposing Defendants' motion for summary judgment, Plaintiffs submitted three new expert declarations containing "sworn" testimony that is contrary to the previously submitted reports of those very same experts and contrary to their sworn deposition testimony. These highly improper declarations also contain new testimony concerning new supposed supporting facts, new methodological descriptions, new analyses, and, most significantly, new opinions that contradict their reports and sworn deposition testimony. (*See* Dkt. Nos. 743, 749, 745 ("SJ Declarations").) These declarations were submitted months after both the expert disclosure deadline and the discovery cutoff, and long after those experts had been deposed. Plaintiffs and their experts apparently conceive themselves at liberty to alter their own sworn testimony and their own expert reports to suit Plaintiffs' needs of the moment.

Specifically, among other things, Plaintiffs' experts Judith Finell and Peter Ashbourne-Firman ("PAF") both confirmed in their reports that they adopted Plaintiffs' self-serving, inapplicable definition of "originality" that purposefully tries to evade consideration of prior art and, thus, that they were "not opin[ing] on the impact [o]r existence of prior art." But then, perhaps fearing the application of this Court's decision in *Johannsongs* (which among other things disregarded expert testimony because it failed to consider prior art), in their SJ Declarations, Finell and PAF now assert that they purportedly ***did*** conduct prior art searches (nowhere mentioned or disclosed or explained anywhere in their reports or in their sworn deposition testimony, which said the exact opposite) and that they considered the results of such supposed prior art searches in forming their opinions.

Similarly, Kenneth Bilby's SJ Declaration now contradicts the vague prior art search he superficially mentioned in his report. He asserts in his SJ Declaration that he searched for and did not locate any prior art containing the precise

1

combination of seven elements that Plaintiffs (for the first time on summary judgment and nowhere referenced in the SCAC) refer to as the "Dem Bow Riddim," but Bilby never said in his report that he searched for such combination (nor did he say in his deposition that he searched for such combination).

Plaintiffs can never meet their burden to prove that this belated *volte face* is not prejudicial and improper because it concerns a key issue in this case—*i.e.*, whether the ever-shifting elements, and now the belatedly-alleged combinations claimed by Plaintiffs, are original and protectable or are, instead (as Defendants' experts have shown through comprehensive prior art analyses), commonplace musical building blocks that exist, individually and in combination, in prior art. The PC Defendants had no opportunity to investigate (or depose these purported experts) as to the inconsistencies or otherwise respond to the new information in these belated SJ Declarations. Even worse, it is impossible to reconcile how Plaintiffs' experts can swear to statements in these SJ Declarations that are flatly contrary to what they said in their reports and what they swore to in their depositions.

Defendants' summary judgment motion made clear that Defendants' experts did comprehensive prior art searches and found (and documented) that Plaintiffs' claimed musical elements (the "Fish Market Elements" set forth in the SCAC) and the actual combination of these elements (which Plaintiffs in their summary judgment papers have altered yet again from what is alleged in the SCAC) long pre-existed Plaintiffs' claimed works.[1]  Contrary to what they now swear to in their

---

[1] Plaintiffs' motion papers and opposition fabricate a strawman argument that Defendants' experts merely examined prior art for the individual seven "Fish Market Elements" (which, like Plaintiffs' expert reports and their sworn deposition testimony, Plaintiffs have now also jettisoned in preference for the newly adopted "Dem Bow Riddim") and did not examine any combination of these alleged elements.  That argument is demonstrably false, as documented in the Defendants' experts' reports.

declarations, Plaintiffs' experts admitted they did no such prior art search and, thus, there was nothing to contradict the analyses of Defendants' experts.

That Plaintiffs belatedly (and unilaterally) recognized they had a gaping evidentiary hole they needed to fill does not entitle them to submit false declarations from their experts with "opinions" and alleged analyses that are nowhere contained in their reports but instead are contrary to their reports. Plaintiffs are not entitled to support their summary judgment motion or oppose Defendants' summary judgment motion with expert declarations replete with statements that are contrary to the same experts' prior testimony and evidence.

This purposeful disregard for the Federal Rules and Orders of this Court is by no means unusual for Plaintiffs. On the contrary, they have already been sanctioned by Magistrate Judge Richlin for their purposeful concealment of witnesses until the eve of the discovery cut-off and for purporting to identify "experts" long after the expert disclosure deadline. (*See* Dkt. No. 705 ("Sanctions Order") (excluding a fact witness and purported expert testimony because Plaintiffs waited until the week before the discovery cut-off to make the disclosures).)

But Plaintiffs' latest ploy—submitting declarations containing new testimony that is not only untimely, but materially different from (and in many cases directly contrary to) the opinions and assertions expressed in the very same experts' previous reports and deposition testimony—far exceeds Plaintiffs' prior transgressions. Plaintiffs' experts' reports and deposition testimony, on the one hand, and contrary SJ Declarations, on the other, cannot both be truthful. One or the other (or both) has to be false. And submitting such declarations in opposition to Defendants' summary judgment motion is an intentional perversion of the judicial process.

Like Magistrate Judge Richlin, this Court should sanction Plaintiffs by striking the untimely disclosed, inconsistent, and prejudicial new testimony in

Plaintiffs' experts' SJ Declarations.  Defendants should also be awarded their fees and costs incurred in bringing this motion to further deter Plaintiffs from engaging in such manifestly improper and prejudicial behavior.

## I.    RELEVANT BACKGROUND

### A.    Discovery Deadlines and Disclosures

On June 20, 2024, pursuant to the parties' stipulation (and the Court's January 2023 Order Granting Case Administration Stipulation, Dkt. No. 143), the Court ordered that "limited fact and expert discovery concerning whether Plaintiffs' claimed works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law" would commence on August 5, 2024.  The Order provided for expert reports to be exchanged on December 20, 2024 and rebuttal reports on February 28, 2025, with the close of discovery on March 28, 2025.  (Dkt. Nos. 143, 427.)  At Plaintiffs' request, the exchange of initial expert reports subsequently was deferred to January 10, 2025. (Dkt. No. 427.)

### B.    Plaintiffs' Prior Discovery Misconduct and Untimely Disclosures[2]

On January 10, 2025, as ordered by this Court, Plaintiffs disclosed three, and Defendants disclosed five, retained experts pursuant to Federal Rule of Civil Procedure ("Rule") 26(a)(2)(B).  (Sanctions Order at 3.)  ***Three days after the deadline***, Plaintiffs purported to disclose (via a document captioned "Plaintiffs Rule 26(a)(2) Expert Disclosures") two additional, "non-retained" experts: Plaintiff Browne and Lynford Marshall.  (*Id.*)  Plaintiffs' untimely initial disclosure of these supposed "non-retained" experts contained none of the information required by Rule 26 and was therefore indisputably non-compliant with Rule 26(a)(2)(B).  Presumably, to correct that defect, a month later, Plaintiffs served a document

---

[2] The PC Defendants incorporate in part the facts as outlined in Magistrate Judge Richlin's Sanctions Order.

4

denominated "Supplemental Rule 26(a)(2) Expert Disclosures" that provided some additional (but still inadequate) information that did not comply with Rule 26 requirements. (*Id.* at 4.)

Plaintiffs claimed their late disclosure was an innocent mistake—which, with a documented record of Plaintiffs' repetitive disregard for the Federal Rules and Orders of this Court, lacks credibility—and that the case schedule allowed time for Defendants to depose these supposed "experts." As such, Magistrate Judge Richlin relieved them of their failure to comply with Rule 26 and this Court's Order. (Toms-Anthony Decl., Ex. 7, Feb. 18, 2025 Hearing Tr. at 73 (discussing Plaintiffs: "[T]hey made a mistake. They recognized it. I think that's obvious. I think they've corrected it. They corrected it late. But at least they did it in time where I don't see an obvious prejudice to [Defendants]. If there was one, I would try to fix it.").)

Unfortunately, Plaintiffs drew the exact wrong lesson from having dodged any sanction for their violation of Rule 26 and the Court's Orders: at 7:00pm on Friday, March 21, 2025—eight months after discovery opened, nearly three months after the expert disclosure deadline, three weeks after rebuttal reports were due, and only ***seven days before the discovery cut-off for this phase of the case***—Plaintiffs served a document captioned "Plaintiffs' Second Supplemental Rule 26(a)(2) Expert Disclosures" by which they purported to also name Shaun Pizzonia, Hopeton Overton Brown, and Donovan Thompson as additional "non-retained" experts. (Sanctions Order 4.) That same day, Plaintiffs also served a document captioned "Plaintiffs' Supplemental Initial Disclosures," identifying—for the first time ever—Hopeton Brown and Thompson as supposed fact witnesses who have personal knowledge relevant to this phase. (*Id.*)

This time, in response to the PC Defendants' Motion to Exclude Hopeton Brown, Donovan Thompson and the Expert Testimony of Shaun Pizzonia (Dkt.

No. 680), Judge Richlin "largely granted" the PC Defendants' Motion, finding that Plaintiffs failed to timely disclose Pizzonia and Thompson, and that Plaintiffs' untimely disclosures were not substantially justified or harmless.  Judge Richlin thus precluded Plaintiffs from using any "expert" testimony from Shaun Pizzonia, entirely excluded Hopeton Brown's testimony, and "exercise[d] its discretion to award Defendants reasonable expenses incurred to bring the Motion."  (Sanctions Order 16.)

This then forms the backdrop to Plaintiffs' current gambit of submitting declarations made by their three experts months after their reports were submitted, months after they were deposed as to the reports they submitted, and which flatly contradict their reports and their sworn deposition testimony.   These SJ Declarations are flagrantly in violation of the requirements of Rule 26.

## C.  Plaintiffs' Improper and Untimely Expert SJ Declarations

In response to the PC Defendants' Motion for Summary Judgment and *Daubert* Motions, on July 3, 2025 (six months after the initial expert disclosure deadline and over three months after the close of discovery), Plaintiffs filed sworn SJ Declarations from PAF, Finell, and Bilby.  As detailed below, each of these declarations includes statements and opinions nowhere contained in their reports submitted by the January 10, 2025 deadline for expert reports, nor in their rebuttal reports submitted at the end of February, nor otherwise provided by the close of discovery.

But not only do these declarations contain statements and opinions not previously disclosed by these experts, each of these declarations also contradicts the statements and opinions contained in their respective expert reports and their testimony during their respective depositions.  That Plaintiffs felt constrained to engage in a *post hoc* attempt to remedy the patent deficiencies of their expert reports or change their position in effort to avoid the exclusion of their experts

1   (dictated by applicable case law, including *Johannsongs*) does not legitimize what
2   Plaintiffs have done.  It is extraordinarily improper and prejudicial.  It is a flagrant
3   disregard of the Federal Rules and the Orders of this Court.

4   In light of these improprieties and defects, the PC Defendants requested that
5   Plaintiffs voluntarily withdraw the SJ Declarations.  Plaintiffs' counsel refused and
6   expressed the view that these SJ Declarations do not violate the Rules or this
7   Court's Scheduling Order.[3]

## II.   LEGAL STANDARDS

### A.   Rule 26 Disclosure Requirements and Rule 37(c) Sanctions

10  Rule 26(a)(2)(D) requires parties to disclose expert testimony "at the times
11  and in the sequence that the court orders."  Rule 26(e) requires experts to
12  "supplement or correct" prior disclosures upon information later acquired, however,
13  "this does not give license to sandbag one's opponent with claims and issues which
14  should have been included in the expert witness' report. . . .   To rule otherwise
15  would create a system where preliminary reports could be followed by
16  supplementary reports and there would be no finality to expert reports." *Plumley v.*
17  *Mocket*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010).

---

19  [3] The PC Defendants will separately be addressing the fact that Plaintiffs also
20  submitted purported *Daubert* motions seeking to exclude Defendants' experts that
21  contained multiple alleged "quotes" from the Defendants' expert reports, including
    pin cites, ***that are entirely fabricated***.  Either this was purposeful or a function of
22  AI hallucinations but, regardless of why it occurred, its impropriety and distortion
    of the proper conduct of counsel is shocking.  After first refusing to withdraw any
23  of these motions (and professing they did not know how the fabricated quotes came
24  to be cited in their motions—which itself is completely incredible) Plaintiffs have,
    belatedly, as of the date of this motion, withdrawn two of their *Daubert* motions to
25  exclude, presumably in the hope that their conduct would not be brought to the
26  attention of this Court.  Yet the motion containing the most egregious fabricated
    quotes—the motion addressed to Dr. Ferrara—has yet to be withdrawn and will be
27  addressed by Defendants in a separate sanctions motion.

Rule 37(c)(1) "gives teeth" to the Rule 26(a) and (e) disclosure requirements by forbidding the use of any improperly disclosed information in a motion, at a hearing, or at trial. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), ***the party is not allowed to use that information or witness . . . .***"). Rule 37(c) is intended to be a "self-executing" and "automatic" sanction to "provide [] a strong inducement for disclosure of material." Fed. R. Civ. P. 37. Advisory Committee notes (1993); *accord Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence."). "In determining whether [exclusion] should be imposed, the burden is on the party facing the sanction . . . to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).

Accordingly, courts in this Circuit routinely strike expert declarations in whole or in part when they are untimely or present new testimony not contained in the expert's report. *See, e.g.*, *Sitrick v. Dreamworks, LLC*, No. CV 03-4265-SVW(AJWX), 2006 WL 6116641, at *23 (C.D. Cal. July 20, 2006) (striking untimely expert declaration that contradicted prior testimony in part because "Defendants' motion for summary judgment could not have taken into account any new testimony" by the expert); *Plumley*, 836 F. Supp. 2d at 1062 (excluding from evidence expert opinions submitted after the initial expert disclosure deadline which contained opinions that "depart[ed] substantially from the ones he submitted within the Court's time frame for expert discovery."); *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2024 WL 251408, at *3 (N.D. Cal. Jan. 23, 2024) (striking "supplemental" expert declaration produced after the deadline for expert

discovery); *Lust v. Animal Logic Ent.*, No. LACV1700308JAKAFMX, 2021 WL 6618677, at *3 (C.D. Cal. Aug. 25, 2021) (refusing to consider paragraphs of expert declaration that included opinions not disclosed in initial report).

## III.   ARGUMENT

### A.   Rule 37(c) Requires the Exclusion of the SJ Declarations

#### 1.   PAF

PAF's initial expert report was unambiguous and unequivocal in stating that he did not review, consider, or "opine on the impact [o]r existence of prior art, if any." (Toms-Anthony Decl., Ex. 2 ("PAF Report") 3.) Because he expressly disclaimed reliance on any prior art search, his report did not identify any methodology used to conduct any prior art search, or any recordings, musical works or other data that he considered in conducting any prior art search, as would be required under Rule 26 had he in fact conducted a prior art search. (*See* PAF Report, *passim*.) PAF also repeatedly affirmed several months later, ***under oath***, in his deposition that he did not conduct a prior art search:

> Q: So did you look for any prior art before making this
>
>    report and reaching your opinions in this case?
>
> A: No.

(Toms-Anthony Decl., Ex. 3 ("PAF Dep.") at 112:5-8; *see also id.* at 113:11-16, 136:3-5, 300:21–301:10 (PAF reaffirming that he did not conduct a prior art search in reaching his affirmative opinions in this case).)

Yet, in his untimely SJ Declaration (which seemingly recognizes and seeks to remedy that his failure to conduct a prior art search renders his opinions unhelpful and inadmissible), PAF now claims that "[p]rior to reaching [his] conclusion, [he] searched for musical works preexisting *Fish Market* that included the same or very similar combination of the same elements expressed in the same or very similar ways," and that "[he] found none." (Dkt. No. 743 ("PAF SJ

9

Declaration") ¶ 12.)  He also purports to provide new findings and details (but no methodology) of this purported "search" (*see id.* at ¶ 13), a search he explicitly stated in his report and swore in his deposition he had never conducted.  Both cannot be true.  One is a lie.

Moreover, consistent with Plaintiffs' broader strategy of repeatedly changing what it is they claim is original and protectable to them, in his SJ Declaration PAF also does an about-face regarding his opinions as to the correlation between Plaintiffs' Claimed Works and which musical elements are supposedly essential to the combination of elements that Plaintiffs only now claim is original to them.[4]  Initially, PAF emphatically asserted in his expert report that the three works ("Fish Market," "Dem Bow," and "Pounder Dub Mix II") are the same and "contain the same shared musical elements [] as those found in 'Fish Market.'"  (PAF Report 7.)  Yet, in his SJ Declaration he concedes (for the first time) that the three works are not the same; namely, that "*Pounder Dub Mix II* does not include the tambourine pattern," and that "the entirety of the timbale pattern in *Fish Market* is not the same as the entirety of the timbale pattern in *Pounder Dub Mix II*."  (PAF SJ Declaration ¶ 10.)  With respect to the musical elements that are relevant to Plaintiffs' now belatedly-claimed selection and arrangement, PAF opined in his expert report that the tambourine is "core" to the "essential expression" of "Fish Market."  (*Id.* at 5.)  But in his SJ Declaration, he claims that

---

[4] To be clear, until Plaintiffs submitted their summary judgment motion and their opposition to Defendants' motion, they refused to be pinned down to a "selection and arrangement" claim, which was nowhere pled in their SCAC.  Indeed, in response to the argument of the PC Defendants' counsel on the motion to dismiss, noting that, for the first time, in their argument against dismissal, Plaintiffs seemed to be moving towards a "selection and arrangement" claim nowhere pled in the SCAC, Plaintiffs' counsel, Mr. Burroughs, refused to admit that Plaintiffs were making a combination claim.  (*See* Dkt. No. 417, Oct. 20, 2023 Hearing Transcript Re: PC Defs.' MTD at 34:18-25, 42:14-16, 45:23-46:1, 55:10-15.)

"the [] particular combination of elements featured in *Fish Market*, *Dem Bow*, and *Pounder Dub Mix II* is original in its selection and arrangement" "***with and without the inclusion of the tambourine pattern***" and "***notwithstanding the lack of total congruence*** between" Plaintiffs' Claimed Works.   (PAF SJ Declaration ¶ 11 (emphasis added).)[5]

The Court should not accept or consider this unbelievable, untimely and wholly inconsistent testimony.   *See, e.g.*, *Sitrick*, 2006 WL 6116641, at *23 (striking portions of expert's untimely declarations which included "newly introduced" information that was "never before mentioned" by the expert); *Plumley*, 836 F. Supp. 2d at 1062 ("[e]nabling this pattern of behavior would surely circumvent the full disclosure requirement implicit in Rule 26.") (quotations omitted).

Accordingly, the Court should strike all references to PAF's newly disclosed "prior art search" and inconsistent testimony contained in paragraphs 11–14 of the PAF SJ Declaration and all the transcriptions contained in Exhibit 1 and paragraphs 8, 9 and 10 of the PAF SJ Declaration.

### 2.   Finell

Like PAF, Finell's expert report was equally unambiguous and unequivocal that she did not consider, or "opine on the impact [o]r existence of prior art, if any." (Toms-Anthony Decl., Ex. 4 ("Finell Report").)   And like PAF, her expert report does not disclose any methodology for conducting a prior art search or any recordings, musical works or other data that she considered in conducting any prior art search (because she admitted she did none), as would be required under Rule 26.

---

[5] PAF also attaches and includes numerous purported transcriptions (¶ 7 at Exhibit 1; ¶¶ 8–10), in his SJ Declaration which were ***not included*** in his affirmative report, in further violation of Rule 26 and this Court's scheduling Order.

Contrary to her report, at her deposition, Finell, for the first time, claimed she supposedly conducted a prior art search that she did not mention in her report, which search she claimed was "inconclusive." (Toms-Anthony Decl., Ex. 5 ("Finell Dep.") at 26:15-22).  This testimony, of course, was directly inconsistent with her report (in violation of Rule 26) and also did not provide any information regarding her supposed prior art search, the results of which she testified were "inconclusive," making such "search," assuming she actually had done one, completely useless under Rule 26.

But now, in her SJ Declaration, Finell has completely changed from both her report *and* her deposition testimony.  She now inconsistently asserts that her supposed prior art search (which she previously admitted she had not done) yielded "no results."  (Dkt. No. 749 ("Finell SJ Declaration") at ¶¶ 9-10.)  Further, Finell's SJ declaration purports to provide details of a methodology that are nowhere found and not disclosed in her expert report and also were nowhere mentioned in her deposition testimony.  (*Id.* at ¶¶ 9-11, 14.)

Through her SJ Declaration, Finell also attempts to retroactively and improperly alter the opinions in her expert report regarding the number of "interlocking" "Fish Market" tiers that she supposedly considers "creative and distinctive" and which "occur throughout the majority of each" of Plaintiffs' Claimed Works.  (*See* Finell Report 6.)  In her report, Finell opined that a combination of "***four tiers***" or musical elements (consisting of the kick, snare, bass

or "tom" drum, and tambourines) is "distinctive" and original.[6]  (*Id.*)  Finell then testified at her deposition, under oath, that she did not consider the timbales part of the combination or one of the tiers that was original to Plaintiffs because the timbales line varied and was "inconsistent" so ***it would not be "reliable and musicologically honest to include" the timbales***.  (Finell Dep. at 197:12-198:14.) Finell also excluded the hi-hat from the combination of elements she considered original to Plaintiffs' Claimed Works because it "duplicated" hits played by other drum sounds.  (*Id.* at 100:15-101:14, 127:9-25.)[7]

Yet, Finell now claims in her SJ Declaration (at ¶¶ 9, 14, 16)—in service of Plaintiffs' newly concocted "Dem Bow Riddim" combination—that she analyzed and found original a combination of seven elements, including the hi-hat, which she previously swore could not be considered as an element because it merely duplicated the rhythmic hits played by the kick, and also including the timbales, which she previously swore would not be "musicologically honest" to include. Moreover, she now claims in her SJ Declaration, (*id.* at 10) that, in conducting the claimed prior art search – a search she previously admitted she had not conducted – she looked for works with the same snare drum pattern as in "Fish Market."  Yet,

---

[6] The supposed important tambourines were so indistinct in the recordings at issue that Finell in 2021 requested from Plaintiffs stems from the original recordings that isolated the tambourines so that she could hear them more clearly.  Rather than provide Finell with such stems, Plaintiffs created new recordings in 2021 falsely labeling them as "stems" from the original 1989 "Fish Market" recording (including purported "stems" of the purported but indistinct tambourine part), and Finell relied upon these fake "stems" that were actually new, 2021 recordings, and not found in the deposit copy, in her transcriptions and in providing her opinions in her report. (Finell Report 2-3, *passim*.)

[7] Defendants' experts also found that the "tom" and the bass, which duplicated the kick drum on beats one and three, also provide no additional rhythmic elements and therefore cannot be considered additional elements of a compositional rhythmic combination.

13

she admitted at her deposition that at the time of her claimed prior art search she was unaware of the "ghost note" snare hit and so did not look for works with the "ghost note" snare hit in conducting her claimed search.    (Finell Dep. at 77:10-81:11; *see also* Finell Report Ex. A at 3 (transcribing "Fish Market" without the "ghost note").)

No expert can alter their reports and testimony simply because it suits the needs of their client at the moment.  It is disingenuous and highly improper (as well as being utterly dishonest).  The Court should strike from evidence the portions of the Finell SJ Declaration detailing the untimely disclosed methodology (*id.* at ¶¶ 10, 13, 14) and the contradictory statements regarding the conclusions of her untimely disclosed supposed prior art search (that she previously said she had not conducted) and the number of musical "tiers" original to Plaintiffs.  (*Id.* at ¶¶ 9, 10, 11, 16.)  The proper time to disclose this information (had it been true, which it plainly was not) was January 10, 2025—not months after the close of discovery in response to a summary judgment motion.

### 3.    Bilby

Finally, while Bilby's initial report vaguely claimed, without any of the information required by Rule 26, that he searched for prior art from which "Fish Market" "could be derived" in reaching his conclusion (Toms-Anthony Decl., Ex. 6 ("Bilby Report") 16), Bilby's SJ Declaration flatly contradicts his report (and his sworn deposition testimony) because Bilby belatedly now asserts that he searched for prior art "containing the same or similar elements" as those he purports in his untimely declaration to identify in "Fish Market."   (Dkt. No. 745 ("Bilby SJ Declaration") at ¶¶ 4-5.)  The problem is that Bilby's report says ***nothing*** about searching for any combination of elements, let alone the combination described at paragraph 4 in his SJ Declaration.  Nor does his report say that he "filtered out elements that were not part of the particular combination being considered as

existing in Fish Market, Dem Bow and Pounder Dub Mix II."   (Bilby SJ Declaration at ¶ 5.)   His report says nothing about filtering or filtration.   Two contradictory statements cannot be true at the same time.   Plaintiffs have simply submitted false declarations out of need, not out of truth or honesty.

Bilby's late-disclosed and inconsistent testimony (*id.* at ¶¶ 4-5) likewise should be stricken from evidence.

## B.   The Untimely Disclosures Were Neither Substantially Justified Nor Harmless

As set forth above, Plaintiffs cannot meet their burden to demonstrate that their late disclosure of their experts' untimely, inconsistent, and arguably perjurious testimony is harmless or substantially justified.  *See* Rule 37(c).

*First*, Plaintiffs' untimely disclosure was not harmless.   Given that discovery has been closed for months and the summary judgment papers have been filed, Defendants have been prevented from investigating or deposing these witnesses on these new claims and positions (or from otherwise addressing the contradictory information in the SJ Declarations) and have been prevented from fully considering and incorporating these new claims and positions into their summary judgment strategy.   Moreover, Defendants' own experts had no opportunity to rebut any of the new (contradictory and inconsistent) conclusions set forth by Plaintiffs' experts. Rule 26 and Rule 37 bar (and, indeed, punish) exactly the gambit engaged in by Plaintiffs for exactly these reasons.

*Second*, there is no justification for the disclosure of expert testimony months after the close of discovery and only in response to summary judgment motions seeking to dismiss Plaintiffs' ever-changing claims.

The appropriate remedy for Plaintiffs' repeated violations of the Rules and disregard for the deadlines in this action is, at the least, the exclusion of all the untimely and contradictory testimony set forth in the SJ Declarations.[8]

## IV.   CONCLUSION

For the foregoing reasons the PC Defendants respectfully request that the Court: (1) strike from evidence all references to PAF's newly disclosed "prior art search" in paragraphs 11–14 of the PAF SJ Declaration and all the transcriptions contained in Exhibit 1 and paragraphs 8–10 of the PAF SJ Declaration; (2) strike from evidence the portions of the Finell SJ Declaration detailing her untimely disclosed "methodology" (Finell SJ Declaration at ¶¶ 10, 13, 14) and the contradictory statements regarding the conclusions of her untimely disclosed prior art search and the "tiers" original to Plaintiffs (*id.* at ¶¶ 9, 10, 11, 16); (3) strike from evidence the portions of the Bilby SJ Declaration presenting inconsistent testimony regarding Bilby's supposed prior art search (Bilby SJ Declaration at ¶¶ 4-5); (4) grant the PC Defendants monetary sanctions for being forced to make this motion; and (5) grant the PC Defendants and/or other affected parties such other and further relief as may be just and proper.

Respectfully submitted on September 26, 2025

**PRYOR CASHMAN LLP**

By: */s/ Benjamin S. Akley*
Donald S. Zakarin (*dzakarin@pryorcashman.com)*
Frank P. Scibilia (*fscibilia@pryorcashman.com)*
James G. Sammataro (*jsammataro@pryorcashman.com)*
Benjamin S. Akley (*bakley@pryorcashman.com*)
Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com)*

---

[8] The entire testimony, opinions, and reports from these experts should also be excluded for the reasons set forth in Defendants' pending *Daubert* motions.

16