**PRYOR CASHMAN LLP**
Benjamin S. Akley (State Bar No. 278506)
*bakley@pryorcashman.com*
Shamar Toms-Anthony (State Bar No. 323246)
*stoms-anthony@pryorcashman.com*
1901 Avenue of the Stars, Ste. 900, Los Angeles, California 90067
Telephone: (310) 683-6900

Donald S. Zakarin (admitted *pro hac vice*)
*dzakarin@pryorcashman.com*
Frank P. Scibilia (admitted *pro hac vice*)
*fscibilia@pryorcashman.com*
7 Times Square, 40th Floor, New York, New York 10036
Telephone: (212) 421-4100

James G. Sammataro (State Bar No. 204882)
*jsammataro@pryorcashman.com*
255 Alhambra Circle, 8th Floor, Miami, Florida 33134
Telephone: (786) 582-3003

*Attorneys for the Pryor Cashman-Represented Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *ET AL.*, <br><br> Plaintiffs, <br><br> v. <br><br> RODNEY SEBASTIAN CLARK, an individual, *ET AL.*, <br><br> Defendants. | Case No.: 2:21-cv-02840-AB-AJR <br><br> **PC DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY; MEMORANDUM AND POINTS OF AUTHORITY** <br> *(Declaration of Benjamin S. Akley and [Proposed] Order filed concurrently)* <br> Date: November 7, 2025 <br> Time: 10:00 am <br> Courtroom: 7B |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 7, 2025, or as soon thereafter as the matter may be heard in Courtroom 7B of the courthouse located at 350 West First Street, Los Angeles, 90012 the PC Defendants will and hereby do move the Court pursuant to 28 U.S.C. § 1927 and under its inherent authority for an award of monetary sanctions against Plaintiffs' attorneys Stephen Doniger, Scott Burroughs, and Benjamin Tookey ("Doniger/Burroughs") in the amount of $127,024.90.

As explained herein, this motion should be granted on two separate grounds. First, Doniger/Burroughs multiplied the proceedings by: (i) asserting, in their SCAC, a knowingly baseless theory that all of their seven so-called "Fish Market Elements" (not all of which elements even exist within "Fish Market") are individually original and protectable; (ii) thereby forcing Defendants and their experts to spend significant time and money to address and debunk that theory; (iii) only to then abandon the theory in opposition to Defendants' motion for summary judgment (and in support of their own motion); and (iv) then feigning that they had never posited the theory in the first place.  In their cynical finale, Plaintiffs then pretended that Defendants "wasted" time by addressing a theory that Plaintiffs did not abandon until ***after Defendants had been compelled to address and debunk this theory.***

Second, and similar to their *post hoc* abandonment of their claim that seven musical elements supposedly contained in "Fish Market" (some of which are not actually in "Fish Market") are individually original and protectable, Doniger/Burroughs further multiplied the proceedings by misrepresenting to their experts (and to Defendants) that various audio files provided to, and relied on by, their experts were supposedly "stems" (*i.e.*, isolated tracks) from the deposit copies of the master recordings of Plaintiffs' Claimed Works.  The Plaintiffs' experts

stated in their reports that they considered and relied upon these supposed "stems" provided to them by counsel in formulating their opinions concerning the "originality" of Plaintiffs' Claimed Works (employing the inapposite definition of "originality" provided to them by Plaintiffs' counsel). The PC Defendants were thus compelled to spend significant time and expense obtaining an audio expert to examine these supposed "stems" in order to determine, and then ultimately to prove, that the audio files are not, in fact, "stems" taken from the deposit copy. Only after the submission of the PC Defendants' audio expert's rebuttal report conclusively proved they were not stems did Plaintiffs belatedly admit that the audio files they had claimed were "stems" were not in fact "stems" but *post hoc* newly created recordings made solely for the purposes of this litigation (because Plaintiffs' experts admitted they could not clearly hear certain of the percussive rhythmic elements, in part because those elements duplicated other percussive rhythmic elements). And then in the height of cynicism, Plaintiffs moved to exclude the PC Defendants' audio expert, who documented that the audio files were not "stems," falsely professing that they had never claimed the audio files were "stems."

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Benjamin S. Akley ("Akley Decl."), the exhibits annexed thereto, and any and all additional submissions, evidence, and/or argument, including any reply briefing, as may be presented at or before the hearing on this motion.

## **L.R. 7-3 Statement of Compliance**

This Motion is made following the videoconference of counsel pursuant to Local Rule 7.3, which took place on September 3, 2025.

Respectfully submitted on September 26, 2025

**PRYOR CASHMAN LLP**

By: */s/ Benjamin S. Akley*
Donald S. Zakarin (*dzakarin@pryorcashman.com*)
Frank P. Scibilia (*fscibilia@pryorcashman.com*)
James G. Sammataro (*jsammataro@pryorcashman.com*)
Benjamin S. Akley (*bakley@pryorcashman.com*)
Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com*)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................ 6

    A. Individual Protectability of the "Fish Market Elements" ......................... 6

       1.  Plaintiffs Make Clear That They Are Asserting That The "Fish Market Elements" Are Individually Protectable ........................ 6

       2.  The PC Defendants Were Forced To Deal With Each Individual Element ....................................................................................... 8

       3.  Plaintiffs' Opposition to the PC Defendants' MSJ .............................. 8

    B. Fake "Stems" .......................................................................................... 9

       1.  Plaintiffs' Experts Treat The Files As Stems ..................................... 10

       2.  The PC Defendants Analyze the Audio Files...................................... 10

       3.  Plaintiffs' and Plaintiffs' Experts' Testimony Regarding the Audio Files ............................................................................................... 12

       4.  Even Now, Doniger/Burroughs Still Refer to the Files as Stems, But Blame the PC Defendants for Addressing the Alleged Stems Through Expert Analysis ................................................................................. 13

III.  LEGAL STANDARD........................................................................................ 13

IV.  ARGUMENT .................................................................................................... 15

    A.     Sanctions Should Be Ordered Based On Doniger/Burroughs' Violation Of Section 1927 By Multiplying The Proceedings By Advancing And Then Abandoning The Theory That The "Fish Market Elements" Are Individually Original And Protectable ............................................... 15

B.    Sanctions Should Be Ordered Based On Doniger/Burroughs Violation
Of Section 1927 By Multiplying The Proceedings Through Their
Misrepresentations Regarding "Stems" ............................................... 18

V.    CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE(s)**

*Adriana Int'l Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990) ............................................................. 15

*Eric Hodgson v. Randle Roper*,
   No. 2:20-CV-00650-KJM-DB, 2022 WL 297089 (E.D. Cal. Feb. 1, 2022) ..... 17

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ....................................................... 13, 14

*In re Girardi*,
   611 F.3d 1027 (9th Cir. 2010) ................................................. 14, 17, 19

*Jolly Grp., Ltd. v. Medline Indus., Inc.*,
   435 F.3d 717 (7th Cir. 2006) ............................................................. 17

*In re Keegan Mgmt. Co., Sec. Litig.*,
   78 F.3d 431 (9th Cir. 1996) ............................................................. 14

*Larin Corp. v. Alltrade*, *Inc.*,
   No. EDCV 06-1394 ODW OPX, 2008 WL 2745881 (C.D.
   Cal. July 11, 2008), *aff'd sub nom. Larin Corp. v. Mueller*,
   364 F. App'x 380 (9th Cir. 2010) ....................................................... 16

*Lee v. First Lenders Ins. Servs., Inc.*,
   236 F.3d 443 (2001) ..................................................................... 17

*In re Luxury Imps. of Sacrament, Inc.*,
   No. 2:11-CV-03324-MCE, 2012 WL 1608348
   (E.D. Cal. May 8, 2012) ................................................................. 17

*New Alaska Dev. Corp. v. Guetschow*,
   869 F.2d 1298 (9th Cir. 1989) ........................................................... 14

*U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*,
   857 F.2d 600 (9th Cir. 1988) ............................................................. 15

*Wages v. I.R.S.*,
   915 F.2d 1230 (9th Cir. 1990) ........................................................... 14

*In re Yagman*,
    796 F.2d 1165 (9th Cir. 1986).............................................................................. 14

**STATUTE**

28 U.S.C. § 1927...............................................................................................*passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

28 U.S.C. § 1927 provides the Court with the power (which it also has pursuant to its inherent authority to manage the cases before it) to sanction attorneys for advancing, in bad faith, patently false or frivolous positions that have resulted in needless costs, expenses, and attorneys' fees, and that have unnecessarily and vexatiously multiplied proceedings.

As detailed below and in the accompanying Declaration of Benjamin Akley, Doniger/Burroughs have engaged in bad faith tactics, including advancing ***patently frivolous positions and making misrepresentations that Defendants were required to disprove***, only to then abandon the positions in response to Defendants' summary judgment motion.  Plaintiffs' shifting positions were designed precisely to cause Defendants to have to unnecessarily spend time and money and to multiply the volume of paper submitted to this Court (unquestionably intended to distract this Court from the narrow issues before it on summary judgment).

It bears noting initially that Doniger/Burroughs' bad faith is not limited to the misconduct addressed in this motion.  As addressed in separate Rule 11 and Rule 37 motions, Doniger/Burroughs have filed *Daubert* motions that are filled with fabricated quotes and citations and submitted summary judgment declarations from their experts that contain statements that are completely contrary to the reports of those same experts and the sworn deposition testimony of those same experts.

At least two of Plaintiffs' *Daubert* motions, directed at Drs. Butler and Ferrara, contain multiple quotations, supposedly contained in those experts' reports, with pin cites.  But those quotations nowhere exist in those experts' reports (or any reports)—not at the fake pin cites, not as quoted, and in many cases not even in substance.  Whether this fabrication of quotations was the product of purposeful misrepresentations or AI hallucinations (and Doniger/Burroughs

incredibly has professed not to know how these multiple fabricated quotations from multiple reports found their way into multiple motions), it does not matter because it is outrageous and sanctionable conduct.[1]

Tellingly, Doniger/Burroughs belatedly withdrew two of their *Daubert* motions (directed to Drs. Butler and Bennett, but, inexplicably, not the motion directed to Dr. Ferrara, which was largely based on claims that the multiple fabricated quotes falsely attributed to him render his report "irrelevant" and "cumulative"). But Doniger/Burroughs withdrew these two motions only after initially refusing to do so and only after the PC Defendants had identified the fabrications in their oppositions (filed on August 4) and then threatened a Rule 11 motion.[2] But the withdrawal does not excuse their misconduct, which, as shown in the accompanying sanctions motions addressed to their experts' falsified declarations and to the falsified quotations in the *Daubert* motion directed to Dr. Ferrara, appears to be standard operating procedure for Doniger/Burroughs and thus remains relevant to the present motion.

This motion is based on two specific purposeful after-the-fact changes in position by Plaintiffs. ***First***, Doniger/Burroughs, for years and in multiple versions of their complaint, including the existing SCAC, insisted that each of the seven

---

[1] It is not credible that Doniger/Burroughs cannot determine how multiple false quotations from multiple reports found their way into multiple motions. Word processing tracks edits to documents and who did the editing. There is an evidentiary trail. The fact that Doniger/Burroughs has chosen not to examine this trail suggests that the false quotations was either purposeful or the product of unreviewed AI hallucinations. They should be required to explain how it happened.

[2] After the PC Defendants threatened a Rule 11 motion, Doniger/Burroughs unilaterally filed what they labeled "Notices of Errata," eliminating the fabricated quotations the PC Defendants had identified over a month earlier in their opposition to Plaintiffs' *Daubert* motions. Notices of errata may be appropriate for correcting typographical errors. They are not a means of correcting/covering up the widespread fabrication of non-existent quotations.

"Fish Market Elements" (a term and concept they invented and presented to Defendants, including in discovery requests and responses) is individually original and protectable (including such patently unoriginal and unprotectable elements such as a "four on the floor" kick drum pattern, *i.e.*, a drum playing four beats to the bar and a snare, with or without "ghost" notes playing across the kick drum in what is either a commonplace "surf beat" or habanera).

Only after forcing the PC Defendants to disprove this reckless and frivolous claim of originality and protectability as to each individual element —an extremely expensive and time-consuming task—and only after the PC Defendants' motion for summary judgment conclusively demonstrated (through their experts) that the alleged "Fish Market Elements" (individually and in combination) pre-existed "Fish Market" in multiple works and genres of works, did Doniger/Burroughs belatedly abandon their position and admit that the individual elements are unprotectable and that their claims are limited solely to a "selection and arrangement" of (ever changing) elements.[3]  Moreover, after abandoning their long-held position, Doniger/Burroughs pretended that they had never claimed otherwise, professing to excoriate the PC Defendants for conducting an analysis of and disproving the protectability of the individual elements—an analysis and proof

---

[3] While the SCAC nowhere asserts a "selection and arrangement" claim (instead insisting that the supposed "Fish Market Elements" are individually original and protectable), at argument on Defendants' motion to dismiss, in response to Mr. Zakarin's assertion that it appeared as if Plaintiffs were, for the first time, admitting their claim was a "selection and arrangement" claim nowhere pled in the SCAC, Mr. Burroughs refused to acknowledge that Plaintiffs were asserting a "selection and arrangement" claim. (*See* Akley Decl., Ex. 1, Oct. 20, 2023 Hearing Transcript Re: PC Defs.' MTD at 34:18-25, 42:14-16, 45:23-46:1, 55:10-15.)

1   that was required only due to Plaintiffs' prior and continuous assertions that each

2   of the individual elements is itself individual and protectable.[4]

3       **Second**, Doniger/Burroughs misrepresented various audio files as "stems"

4   from the master recordings of Plaintiffs' Claimed Works (*i.e.*, isolated portions

5   taken directly from the deposit copies or other publicly available copies of those

6   works) and induced their experts to rely on those files as stems in their analyses.

7   Then, only after the PC Defendants spent significant amounts, retaining an audio

8   expert to examine the "stems" to prove that the files are not stems, did

9   Doniger/Burroughs concede that what they had represented to their experts were

10  "stems" (and which their experts asserted in their reports were "stems") are not

11  stems at all, but were new recordings created after this litigation commenced and

12  which were never released to the public (and thus could not have been copied by

13  any Defendant and are not in the deposit copies).  And, consistent with their view

14  that they may take and then abandon positions at will, Doniger/Burroughs again

15  "blamed the victim," arguing that Defendants were unreasonable for having taken

16  their prior position seriously, and even seeking to exclude Paul Geluso, the audio

17  expert, as being irrelevant.

18

---

19  [4] Plaintiffs' belated admission that the individual elements are not "original" and

20  "protectable" (because they indisputably exist in multiple prior art works popularly

21  known as "surf beats" or "habaneras") cannot be squared with their insistence that

     they only need to show that their works were "independently created" and have a

22  modicum of creativity and that prior art is irrelevant.  On the contrary, their

23  admission that they do not and cannot claim exclusive ownership of the supposed

     "Fish Market" elements, because they exist in prior art, confirms that the proper

24  inquiry in this phase of the case is the first half of the extrinsic test: do the elements

25  and combination(s) claimed by Plaintiffs exist in prior art such that they cannot be

     exclusively owned by Plaintiffs?  That is precisely the inquiry conducted by

26  Defendants' experts and it is precisely the inquiry that Plaintiffs' experts were

27  instructed ***not*** to pursue (and that they swore in their depositions they did not

     pursue).

28

At any point during litigation, Doniger/Burroughs could have clearly and unequivocally advised the PC Defendants that they are not relying on the individual protectability of the seven "Fish Market Elements" and that the audio files relied on by Plaintiffs' experts were not in fact stems.  Doniger/Burroughs never did so until opposing summary judgment.  Doniger/Burroughs' actions required the PC Defendants to address the issues and rebut Plaintiffs' reckless and misrepresentative positions through their experts and in their motion for summary judgment.

Treating their own SCAC and their expressed positions as if they could be discarded when inconvenient, Doniger/Burroughs only abandoned them in response to Defendants' summary judgment motion (after months of deliberately misleading silence).  None of this is an accident.  It is, instead, the very conduct Section 1927 was designed to deter.  Recklessness and bad faith are evident in Doniger/Burroughs' disregard for the truth and willingness to unnecessarily drive up Defendants' expense, which, again, as exemplified by their as yet unexplained submission of multiple *Daubert* motions filled with fabricated quotations and their filing expert declarations on summary judgment that are filled with statements nowhere found in their expert reports and contrary to the same experts' sworn deposition testimony, is all part of a broader pattern of vexatiousness, a desire to multiply the proceedings and to shift positions as the need may dictate at any moment, regardless of whether the new position is contrary to their prior position or even contrary to the SCAC.

This Motion seeks an appropriate sanction to at least partially compensate the PC Defendants for the unnecessary expenses caused by Doniger/Burroughs' conduct and to deter such conduct going forward.

5

## II.  FACTUAL BACKGROUND[5]

**A.  Individual Protectability of the "Fish Market Elements"**

### 1.  Plaintiffs Make Clear That They Are Asserting That The "Fish Market Elements" Are Individually Protectable

Doniger/Burroughs' SCAC, (Dkt. No. 305), asserts that Plaintiffs' claim in this action is that each of the claimed "elements" of "Fish Market" (which supposedly are copied in "Dem Bow" and "interpolated" in "Pounder") are individually protectable and that Plaintiffs are seeking to assert and enforce supposed exclusive rights in each:

- The SCAC contains a supposed transcription of these "elements" which breaks them into their own lines (and further breaks the timbale into two separate lines).  (*See* SCAC ¶ 188.)

- Plaintiffs allege that "Defendants never sought or obtained a license, authorization, or consent from Plaintiffs to use or copy the any [sic] elements, portions, or versions of *Fish Market, Dem Bow, Pounder*, or the other derivatives in which Plaintiffs own copyrights, in connection with any of the Infringing Works."  (*Id*. at ¶ 191.)

- The SCAC includes allegations that certain alleged infringing works copy "original elements of the *Fish Market* rhythm section," which supposedly "purloined elements include, without limitation, the kick, snare, and hi-hat patterns, and the sixteenth notes on the 'and' of beat one from a snare sound." (*Id*. at ¶¶ 221–225, 227–229, 279–296.)

- Plaintiffs further allege that "all of the patterns of the hi hat, tambourines, timbales, tom, snare and kick, in the same configuration with respect to each other are copied in the Infringing Works.  The bass of the *Fish Market* work,

---

[5] Unless otherwise stated, all emphases herein are supplied, and all internal citations and quotations are omitted.

which anchors on one and three, is also copied in the Infringing Works." (*Id.*
at ¶ 648.)

At oral argument, after Defendants' counsel noted that, contrary to the claims
asserted in the SCAC, Plaintiffs appeared to be morphing their claim into a
"selection and arrangement" claim, Mr. Burroughs refused to acknowledge that
Plaintiffs were in fact deviating from their SCAC, specifically stating that Plaintiffs
are "not delineating a single note or selection and arrangement." (Akley Decl.,
Ex. 1, Oct. 20, 2023 Hearing Transcript Re: PC Defs.' MTD at 55:12-13.)

Then, in discovery, Doniger/Burroughs served discovery requests on
Defendants wherein Doniger/Burroughs ***created*** the concept of and enumerated the
seven "Fish Market Elements," and specifically requested that Defendants admit
the "minimal degree of creativity" (which along with "independent creation,"
Doniger/Burroughs incorrectly contends is the sole inquiry in this phase of the case,
without any consideration of whether the claimed "elements" or combinations
thereof pre-exist in prior art and are commonplace musical building blocks) of each
of the seven elements separately and individually. (Akley Decl., Ex. 2, Plaintiff's
RFAs Nos. 18-24.)[6]

Subsequently, in order to be absolutely clear about Plaintiffs' position, the
PC Defendants served discovery asking Plaintiffs to admit (in three separate
requests for admission addressed to each of the individual "Fish Market Elements")

---

[6] Again, as noted above in footnote 4, Plaintiffs have, *sub silentio,* admitted that
their idiosyncratic "originality" definition, which pointedly ignores prior art and
the extrinsic test of the Ninth Circuit, is a sham.  They cannot, at one and the same
time, admit that the "Fish Market" elements are not "original" and "protectable"
because they exist in prior art (surf beats and habaneras) while disclaiming any
need to examine prior art because supposedly all that matters is whether their works
were "independently created" and have a modicum of creativity.  That definition
may apply to copyrightability but not to exclusivity or protectability in accordance
with the extrinsic test.

that each element is not original and protectable and that Plaintiffs do not have exclusive rights in each. (Akley Decl., Ex. 3, Plaintiff's Responses to Sony's RFAs Nos. 2-3, 10-13, 20-23, 30-33, 40-43, 50-53, 60-63, 70.) Plaintiffs ***denied all 27 of those requests for admission***, finally and affirmatively confirming their position that each individual element is original and protectable and that Plaintiffs have exclusive rights in each. (*Id*.) This is the exact position that Plaintiffs have, on summary judgment, abandoned (claiming that Defendants have fabricated the assertion that this ever was Plaintiffs' position).

## 2. The PC Defendants Were Forced To Deal With Each Individual Element

In addition to drafting and serving discovery requests so that Plaintiffs could not shift positions as this case proceeded (or at least so that any such shift could be readily identified for the Court), the PC Defendants also had to incur the expense of having their experts examine prior art in order to analyze and opine on each individual element and discuss and disprove the originality of each, and also had to extensively discuss and disprove the originality and protectability of each individual element in their moving summary judgment papers. (*See* Dkt. No. 706; *see also* Dkt. 706-24 at 8–36.)[7]

## 3. Plaintiffs' Opposition to the PC Defendants' MSJ

Having litigated this case for years based on Plaintiffs' contention that they exclusively owned each individual "Fish Market Element," in opposition to the PC Defendants' summary judgment motion, Doniger/Burroughs abruptly jettisoned

---

[7] To be clear, contrary to Plaintiffs' pretense that Defendants' experts did not examine the elements in combination (while eliminating as separate elements those that merely duplicated the same rhythm of main elements of a kick drum and snare and also eliminating those "elements" that were clearly not a part of the rhythmic combination in Plaintiffs Claimed Works), Defendants' experts' reports examined the combination(s) and found them unoriginal and unprotectable, as they exist in multiple prior art works and genres.

the claim in the SCAC, effectively unilaterally and improperly amending the complaint in response to a summary judgment motion, and for the first time expressly conceded that the individual elements are unprotectable:

> All of Defendants' experts, on the other hand, failed to analyze whether the particular selection and arrangement of kick, snare, hi-hat, bass, low "tom," tambourine, and timbale elements in Fish Market and Dem Bow, or the same in Pounder Dub Mix II without the tambourine, was original, even if each such element was not original on its own. SUF 130, 133, 140-41, 143. ***They analyzed and "filtered" out individual elements they thought were individually unprotectable even though this is a selection and arrangement claim***."

(Dkt. No. 742 at 12.)  Not content to unilaterally (and improperly) "amend" the SCAC and jettison the position they had taken for years, Doniger/Burroughs had the temerity in their motion for summary judgment and opposition to criticize the PC Defendants for arguing that the individual elements are not protectable. (*See id*. at 25, 26) ("they have not even been able to identify any prior work that has the seven elements that ***they exhaustively argue*** are not individually protectable from which it could have been copied."; "they ***wasted pages*** arguing [the elements] were individually unprotectable.").)

**B.    Fake "Stems"**

On or about November 25, 2024, Plaintiffs produced in discovery approximately two dozen audio files without any explanation. (*See* Akley Decl. at ¶ 6.)[8]

---

[8] Plaintiffs contend that they had previously provided certain of the audio files in June 2022, before their three separate actions were consolidated into the present action.  Whether the PC Defendants first received the files from Plaintiffs in June 2022 or November 2024 is immaterial. It was not until Plaintiffs' expert reports labeled the files as "stems" that their provenance became relevant.

### 1. Plaintiffs' Experts Treat The Files As Stems

On January 10, 2025, Plaintiffs' experts Finell and PAF both served affirmative expert reports in which they each denominated, cited, heavily relied on, and treated five of the audio files produced by Plaintiffs as "stems" of "Fish Market":

> **IV. MATERIALS CONSIDERED**
> In preparing my Report I have based my opinions herein on the recordings, opinions, evidence, and material set forth or referenced in the Report. These materials include without limitation . . . d. "16 Bars Slam on beats 1&3, Hat, Tambourine.mp3" ("Fish Market" stems), e. "Fish Market 16 Bars Kick and Bass .mp3" (stems), f. "Fish Market 16 Bars Snare, Hi Hat, Tambourine.mp3" (stems), g. "Fish Market 16 Bars Timbales, Hi Hat, Tambourine.mp3" (stems), h. "Fish Market Intro and 16 Bars Full Track Sample.mp3" (stems).

(Dkt. No. 707-2 ("Finell Report") at 2-3; Dkt. No. 711-2 ("PAF Report") at 2-3).)

Indeed, Finell admits multiple times in her affirmative report that she relied on "the 'Fish Market' recording stems provided for enhanced audibility" when making her various transcriptions of "Fish Market." (Finell Report Ex. A at 4 n. 10; *id*. at 3 (transcribing tambourine part "from stem").)

### 2. The PC Defendants Analyze the Audio Files

Because the Finell and PAF Reports specifically stated that they had relied on these supposed "stems," the PC Defendants were required to assess whether or not the audio files on which they relied were in fact, stems taken from the deposit copy of the recording of "Fish Market." (Akley Decl. at ¶ 7.) To that end, on or about January 24, 2025, the PC Defendants served Plaintiffs with interrogatories designed to obtain information about the audio files produced by Plaintiffs (including the five purported "stem" files). (*Id*. at ¶ 8.) At the same time, the PC Defendants retained Paul Geluso, Assistant Professor of Music and Program Director of the Music Technology Department at New York University, to employ

his expertise to compare the "stem" audio files produced by Plaintiffs both to each other and to the deposit copy and publicly-available and original-vinyl versions of Plaintiffs' Claimed Works.  (*Id.* at ¶ 9.)

On February 24, 2025, four days before the rebuttal expert disclosure deadline, Plaintiffs served unsworn responses by Plaintiff Browne to the PC Defendants' audio file interrogatories.  (*See* Akley Decl., Ex. 4, Plaintiffs' Responses to BMG's Interrogatories.)[9]  With respect to the question of whether the "stem" files are actual stems, Plaintiffs' responses were inconclusive and ambiguous.  Some seemed to indicate that the files are ***not*** stems (*e.g.*, responses to Interrogatory Nos. 3, 4, and 10 (stating that the "stem" files are "recreations" of "elements of 'Fish Market'" made in 2021)), and some seemed to indicate that they ***are*** (*e.g.*, responses to Interrogatory Nos. 6 and 7 (stating that the "composition of the audio" in the "stem" files "was created in 1989" for the purpose of "creat[ing]" various "elements of 'Fish Market'")).

Regardless, by the time Doniger/Burroughs served Browne's unsworn and vaguely worded responses, Mr. Geluso's work was largely complete.  Accordingly, on February 28, 2025, the PC Defendants served Mr. Geluso's rebuttal report which specifically responded to (and refuted) the assertions in both the Finell and PAF reports that they had relied on "stems."  (Dkt. No. 735-1, Geluso Rebuttal.)[10]

---

[9] To this day, Mr. Browne has yet to provide sworn verification of his interrogatory responses.

[10] Ignoring their own expert reports claiming that the audio files were stems, Plaintiffs have made a *Daubert* motion against Geluso claiming that his report rebuts nothing.  On the contrary, his rebuttal report rebuts the assertion in Plaintiffs' expert reports that the audio files they relied on were "stems."

### 3. Plaintiffs' and Plaintiffs' Experts' Testimony Regarding the Audio Files

On March 18, 2025, Plaintiff Browne was deposed, and at his deposition he admitted (after a fair amount of pushback and equivocation) that the "stems" relied on by Finell and PAF were not, in fact, stems, but, rather, were purported recreations of certain portions or aspects of "Fish Market" made by Browne and his son in 2021 (*i.e.*, over 30 years after "Fish Market" was created). (Akley Decl., Exhibit 5, ("Browne Dep.") at 182:19-183:18, 193:16-197:21, 202:8-206:19, 220:13-227:12, 228:24-230:24.)   Indeed, Browne admitted that the tambourines were completely re-recorded and the tom and hi-hat were put through Pro Tools because the experts could not hear them as they hit on the same beat as the kick. (*Id.* at 178:22-190:22; 191:7-197:21; 200:7-206:25).[11]   Browne also admitted that, in creating the new recordings provided to his experts (which, again, were not stems of original recordings) he also modified the tempo because he was working from a released recording, not the original master, and there was a variable tempo in the recording. (*Id.* at 207:12-218:13.)   In short, the recordings Plaintiffs' experts relied on were not the same as the deposit copy recording.

Despite Browne's admissions, two days later PAF was deposed and he reiterated his understanding that the same-said audio files are, in fact, stems, and even testified that he purportedly confirmed as much through his own analysis. (Akley Decl., Exhibit 6, ("PAF Dep.") at 82:9-83:16, 85:19-86:16, 87:2-7, 88:9-13, 89:13-20, 139:2-4.)

---

[11] One of the points made by the PC Defendants' experts is that because the "tom," the bass and the hi-hat hit on the same beats as the kick drum (the hi-hat on all four beats and the "tom" and the bass on beats one and three), these instruments do not provide any additional rhythmic elements but simply duplicate the kick.  In this Circuit, "selection and arrangement" claims require "numerosity."  Duplicative rhythmic elements are not separate elements in considering compositional numerosity.

At Finell's deposition (taken after PAF's) she claimed that she knew that the files were not stems when she made her January 2025 affirmative report and that she only called the files "stems" in that report because "that was how they were named when I received them from the Doniger law firm." (Akley Decl., Ex. 7, ("Finell Dep.") at 182:5-12.)  But the files received by the PC Defendants from Plaintiffs did not have the word "stem" in the file name, and the language of Finell's affirmative report (as well as PAF's) indicates that the files also did not have the word "stem" in the file name.

### 4. Even Now, Doniger/Burroughs Still Refer to the Files as Stems, But Blame the PC Defendants for Addressing the Alleged Stems Through Expert Analysis

Instead of clarifying this issue, Doniger/Burroughs made a *Daubert* Motion against Geluso, where they absurdly state that Geluso is opining "on a topic that is ultimately not even in dispute: *i.e.*, whether certain sound files produced in discovery are the original "stems" from a master recording (they are not)."  (Dkt. No. 735 at 1.)

However, contrary to their assertion, and continuing and aggravating the misrepresentation, Doniger/Burroughs still sometimes refer to the files as "stems." (*Id*. ("Initial expert disclosures in this phase of the case were due on January 10, 2025—two and a half years after Plaintiff initially provided Defendants with those stems.")).

## III.   LEGAL STANDARD

The law is clear that "an attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

Sanctions may be awarded under Section 1927 when an attorney behaves recklessly and frivolously.  *See Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).

"[I]n the contexts of § 1927, frivolousness should be understood as referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose." *In re Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010).

"[D]amages under section 1927 are appropriate where there is no obvious violation of the technical rules, but where, within the rules, the proceeding is conducted in bad faith for the purpose of delay or increasing costs." *In re Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986). The statute applies to "unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id*. (citations omitted). "Tactics undertaken with the intent to increase expenses, or delay, may also support a finding of bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989) (internal citations omitted). The decision to sanction a party under section 1927 rests in the sound discretion of the district court. *Wages v. I.R.S.*, 915 F.2d 1230, 1235 (9th Cir. 1990) (noting district court's award of sanctions pursuant to Section 1927 is reviewed for abuse of discretion).

Apart from Section 1927, district courts also have "the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink*, 239 F.3d at 992. Sanctions pursuant to the Court's inherent authority "are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id*. at 994. However, these sanctions are available "if the court specifically finds bad faith or conduct tantamount to bad faith." *Id*.

"In evaluating the propriety of sanctions, we look at all incidents of a party's misconduct." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990)

(finding that the district court correctly considered all discovery conduct in determining whether sanctions were proper pursuant to F.R.C.P. 37); *see, e.g., U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.,* 857 F.2d 600, 601-602 (9th Cir. 1988) (court looked to five separate acts of discovery misconduct in deciding F.R.C.P. 37 sanctions motion).  "A court may consider prior misconduct when weighing a subsequent sanction motion."  *Adriana Int'l Corp.,* 913 F.2d at 1411.[12]

# IV.   <u>ARGUMENT</u>

Sanctions under Section 1927 and/or the Court's inherent authority are warranted and necessary in this instance.  Doniger/Burroughs' conduct as it relates to both what it is claiming in this case (the seven alleged individual "Fish Market Elements" of the SCAC, which they recklessly and frivolously claimed were individually protectable and have now admitted are not, and their misrepresentations concerning the "stems") reflects a clear pattern where they assert certain positions, force the PC Defendants to disprove them, abandon those positions only after the PC Defendants have incurred the costs to disprove them, and then express incredulity that the PC Defendants would bother addressing the positions they took in the first place.  Doniger/Burroughs' behavior is clearly purposeful, wrongful and sanctionable.

**A.**   <u>**Sanctions Should Be Ordered Based On Doniger/Burroughs' Violation Of Section 1927 By Multiplying The Proceedings By Advancing And Then Abandoning The Theory That The "Fish Market Elements" Are Individually Original And Protectable**</u>

From the outset, Doniger/Burroughs advanced the reckless and frivolous claim that their so-called "Fish Market Elements" were individually protectable, which they then repeatedly reaffirmed during discovery, while also rejecting

---

[12] Doniger/Burroughs has previously been sanctioned for discovery violations related to the untimely disclosures of certain witnesses.  (Dkt. No. 705.)

Defendants' counsel's observation that it appeared that Plaintiffs were morphing their claims from the SCAC's individual "Fish Market" elements to a selection and arrangement claim, asserting that this is not a "selection and arrangement" case. The PC Defendants thus had no choice but to assemble expert testimony and briefing to prove what should have been obvious to Doniger/Burroughs (who claim to be well-versed in copyright law): the individual "Fish Market Elements" were commonplace and unprotectable.[13]

Only after the PC Defendants spent months and incurred significant financial costs to dismantle the very claim advanced by Doniger/Burroughs in the SCAC, did Doniger/Burroughs unilaterally (and improperly) "amend" the SCAC and adopt a totally different position in response to the PC Defendants' summary judgment motion. For the first time, in opposition to summary judgment, they admitted that the "Fish Market Elements" are individually unprotectable (which is directly contrary to their position during discovery), even admitting they exist in "surf beats" and habaneras—prior art—while simultaneously criticizing the PC Defendants' for their exhaustive briefing on the individual elements.

Courts have routinely found that prolonging litigation and wasting resources in this manner is precisely what Section 1927 forbids. *See Larin Corp. v. Alltrade*, Inc., No. EDCV 06-1394 ODW OPX, 2008 WL 2745881, at *5 (C.D. Cal. July 11, 2008), *aff'd sub nom. Larin Corp. v. Mueller*, 364 F. App'x 380 (9th Cir. 2010) (granting motion for attorneys' fees pursuant to section 1927 where counsel switched case theory and "tactics directly prolonged litigation and forced [Defendant] to defend against a theory of trade dress infringement when [counsel] had specifically noted previously that he was not going forward with a trade dress

---

[13] That Doniger/Burroughs clearly understand that they cannot simultaneously admit that the individual elements are not protectable because they exist in prior art and also argue that prior art is irrelevant, underscores the impropriety of their conduct.

claim."); *Lee v. First Lenders Ins. Servs., Inc*., 236 F.3d 443, 445 (2001) (upholding the district court's imposition of sanctions because the attorney unreasonably and vexatiously multiplied the proceedings by permitting the action to continue with discovery and motion practice for over a year and a half before abandoning class claims without any explanation); *see also, e.g.*, *Eric Hodgson v. Randle Roper*, No. 2:20-CV-00650-KJM-DB, 2022 WL 297089, at \*14 (E.D. Cal. Feb. 1, 2022) (finding sanctions warranted where the counsel unnecessarily complicated the litigation by advancing an "unlikely" legal theory in violation of Section 1927); *In re Girardi*, 611 F.3d at 1064 (explaining that Section 1927 imposes an affirmative "duty to correct or withdraw litigation positions after it becomes obvious that they are meritless" and noting that courts have "affirm[ed] [S]ection 1927 sanctions for the 'willful continuation of a suit known to be meritless'") (citations omitted); *see also In re Luxury Imps. of Sacrament, Inc.,* No. 2:11-CV-03324-MCE, 2012 WL 1608348, at \*1 (E.D. Cal. May 8, 2012) ("Section 1927 imposes a continuing duty upon attorneys to dismiss claims that are no longer viable") (citing *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006)).

Here, Doniger/Burroughs' opportunistic (and highly improper) revisionist history cannot evade the indisputable fact that they repeatedly confirmed, at least until the PC Defendants' summary judgment motion, that the individual "Fish Market Elements" are individually protectable and that Defendants would need to assess the protectability of each. That effort, which Doniger/Burroughs now admits was unnecessary, significantly drove up the cost of litigation for the PC Defendants (and multiplied the papers before this Court). And Doniger/Burroughs' accusation that PC Defendants somehow erred by addressing a position so repeatedly taken confirms that their conduct is not zealous advocacy, it is bad faith litigation by bait and switch.

The PC Defendants had no choice but to rely on Doniger/Burroughs' express positions.  To now suggest that reliance was misplaced is to gaslight both the Court and the PC Defendants.  The harm is not abstract.  The PC Defendants' experts spent countless hours analyzing each element and examining prior art.[14]  The PC Defendants' MSJ briefing had to address each element one by one.  The Court itself now has to spend time parsing claims Doniger/Burroughs has belatedly jettisoned in its highly improper unilateral amendment of the complaint in this case.

Because Doniger/Burroughs needlessly amplified the scope of costs of this litigation and wasted years of effort and vast resources, they should be sanctioned.

**B.** **Sanctions Should Be Ordered Based On Doniger/Burroughs Violation Of Section 1927 By Multiplying The Proceedings Through Their Misrepresentations Regarding "Stems"**

The saga surrounding the fake "stems" is also a textbook example of vexatious multiplication of the proceedings.  Doniger/Burroughs produced audio files without context, submitted expert reports which claimed these audio files (on which the experts expressly relied in forming their opinions) were "stems" and then forced the PC Defendants to spend tens of thousands of dollars proving they were not.  When confronted with the truth, Plaintiffs equivocated.  And only after the submission of the Geluso report left them with no avenue of retreat, Plaintiff Browne was forced to admit, at his deposition, that the files were recreations, not stems.  Yet, Plaintiffs' expert PAF continued to testify otherwise.  And instead of being candid with the Court, Doniger/Burroughs has misled the Court by asserting that the "stems" issue was always undisputed.  This tactic was frivolous, vexatious, dishonest, and in bad faith.  It forced the PC Defendants to spend heavily on

---

[14] Again, as noted above, contrary to Plaintiffs' assertion, the PC Defendants' experts also examined the actual combination of elements (after filtering out duplicative elements and the timbale in "Fish Market," which is improvised and not a part of the rhythmic pattern at issue), which also is commonplace in prior art.

discovery, expert analysis and motion practice over an issue that Doniger/Burroughs could have, and should have, resolved at the outset.

Doniger/Burroughs stayed silent while the PC Defendants incurred significant costs and fees to analyze the files. Even then, Doniger/Burroughs tried to flip the narrative in their *Daubert* Motion to Exclude Geluso by suggesting the issue was undisputed and acting as though the PC Defendants were somehow in the wrong for even attempting to address the issue. This further reveals Doniger/Burroughs' intent not to litigate honestly and ethically, but to instead entangle the PC Defendants in distractions and needless expense (and increase the volume of paper before this Court, undoubtedly hoping that this Court will be overwhelmed by the welter of paper and deny summary judgment). The Ninth Circuit has held that "recklessly or intentionally misrepresenting facts constitutes 'the requisite bad faith and intentional misconduct for which sanctions under § 1927 are appropriate.'" *In re Girardi*, 611 F.3d at 1061. Here, Doniger/Burroughs' misrepresentation that the audio files were not a disputed issue (after previously misrepresenting that they were "stems" when they were not) is an egregious misstatement of fact.

Doniger/Burroughs' decision to persist with the claim that the files were "stems," rather than correct the record or inform the PC Defendants, and then subsequently misrepresent to the Court that the issue was undisputed, provides a strong a basis for sanctions.

## V.    CONCLUSION

For the foregoing reasons, the PC Defendants respectfully request (i) an award of appropriate sanctions against Doniger/Burroughs pursuant to Section 1927 and the Court's inherent authority in the amount of $127,024.90 (as detailed and evidenced in the accompanying Akley Declaration); and (ii) such other and further relief as the Court deems just and proper.

1

Respectfully submitted on September 26, 2025

2

3

**PRYOR CASHMAN LLP**

4

By: */s/ Benjamin S. Akley*

Donald S. Zakarin (*dzakarin@pryorcashman.com)*

5

Frank P. Scibilia (*fscibilia@pryorcashman.com)*

6

James G. Sammataro (*jsammataro@pryorcashman.com)*

Benjamin S. Akley (*bakley@pryorcashman.com*)

7

Shamar Toms-Anthony (*stoms-anthony@pryorcashman.com)*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28