Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
Andres Navarro (SBN 358499)
anavarro@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLEVELAND CONSTANTINE BROWNE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RODNEY SEBASTIAN CLARK DONALDS, *et al.*<br><br>Defendants. | Case No. 2:21-cv-02840-AB- AJR<br>*Hon. André Birotte Jr. Presiding*<br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION OR CLARIFICATION**<br><br>Date: October 23, 2026<br>Time: 10:00 a.m.<br>Courtroom: 7B |

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 23, 2026, at 10:00 a.m., or as soon thereafter as this Court may hear this matter, in Courtroom 7B at 350 West First Street, Los Angeles, CA 90012, Plaintiffs Cleveland Constantine Browne; Shea Johnson, as personal representative and executor of the Estate of Wycliffe Johnson, deceased; Steely & Clevie Productions Ltd.; and Carl Gibson, as personal representative and executor of the Estate of Ephraim Barrett ("Plaintiffs") will and hereby do move the Court to reconsider and vacate its previous Reconsideration Order (Dkt. 866) (the "Order") and reinstate the initial Summary Judgment Order (Dkt. 841). In the alternative, or in addition, Plaintiffs request that the Order be clarified to reflect the questions at issue during this phase, as set forth in the Bifurcation Order.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the evidence filed in support, the Reply memorandum, the record in this case, and all other matters as may be presented at or before the hearing.

This Motion is made following telephonic conference of counsel pursuant to L.R. 7-3, which took place on September 8, 2026 and during which no resolution was reached.

Respectfully submitted,

Dated: September 15, 2026 By: <u>*/s/ Scott Alan Burroughs*</u>
Scott Alan Burroughs, Esq.
Stephen M. Doniger, Esq.
Andres Navarro, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS


I. INTRODUCTION AND RELEVANT FACTS……………………………………1

II. LEGAL STANDARD……………………………………………………...6

III. ARGUMENT………………………………………………………………6

A. The deposit copy, and not the parties' various characterizations of the work, controls and sets the contours of the work at issue…………………...7

B. The SCAC identified the *Fish Market* combinations and law of the case controls this issue……………………………………………………..10

C. Browne, Ashbourne-Firman, and the other experts all confirmed the *Fish Market* elemental combination at issue……………………………………12

1. Ashbourne-Firman…………………………………………...12

2. Browne……………………………………………………14

3. Finell and Bilby……………………………………………16

4. Defense Experts……………………………………………16

D. Plaintiffs identified *Fish Market* as the composition at issue throughout this case……………………………………………………………17

1. Written discovery and depositions……………………………...18

2. Oral arguments…………………………………………………19

E. Plaintiffs have not combined works……………………… ………………19

F. Defense counsel conceded their knowledge of the combination at issue…..23

G. Determining the specific elemental combination at issue presents a classic jury question……………………………………………………..23

IV. CONCLUSION……………………………………………………...24

# TABLE OF AUTHORITIES

**Cases:** **Page(s):**

*Arizona v. California*,
460 U.S. 605 (1983) ........ 12

*Browne v. Clark*,
2026 WL 2243201 (C.D. Cal. 2026) ........ 1, 13, 18, 21, 23

*Browne v. Donalds*,
2024 WL 3468898 (C.D. Cal. May 28, 2024) ........ 3, 11

*Cnty. of Santa Clara v. Trump*,
267 F. Supp. 3d 1201 (N.D. Cal. 2017) ........ 6

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
36 F.3d 1147 (1st Cir. 1994) ........ 8

*DC Comics v. Towle*,
802 F.3d 1012 (9th Cir. 2015) ........ 22

*Hanagami v. Epic Games, Inc.*,
85 F.4th 931 (9th Cir. 2023) ........ 24

*In re Flashcom, Inc.*,
503 B.R. 99 (C.D. Cal. 2013) ........ 10

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
676 F.3d 841 (9th Cir. 2012) ........ 8

*Merrell v. Tice*,
104 U.S. 557, 26 L.Ed. 854 (1881) ........ 9

*Parker v. Hinton*,
No. 22-5348, 2023 WL 370910 (6th Cir. Jan. 24, 2023) ........ 8

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) ........ 8

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) ........................................6

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) ........................................8, 9, 20

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ........................................3, 11

*United States v. Gartenlaub*,
No. 22-55799, 2024 WL 4987258 (9th Cir. Dec. 5, 2024)........................................10

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) ........................................3, 24

**<u>Statutes</u>:**

17 U.S.C. § 106(2)........................................13

**<u>Other Authorities</u>:**

Report of the Register of Copyrights on the General Revision of the Copyright Law 71 (1961)........................................8

L.R. 7-3........................................ii

L.R. 7-18(c) ........................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND RELEVANT FACTS

Plaintiffs respectfully request that the Reconsideration Order (Dkt. 866) (the "Order") be vacated and the initial Summary Judgment Order (Dkt. 841) be reinstated. In the alternative, Plaintiffs request that the Order be clarified to address the questions at issue during this phase, as set forth in the Bifurcation Order. *See* Dkts. 426, 9:4-7, 427. Good cause exists for this relief. Defendants sought reconsideration by claiming to lack notice as to what musical combination is at issue in this case but Defendants had notice of this world-famous combination going all the way back to the pleadings, or earlier, when they copied the beat, and any claimed confusion presents factual issues at a minimum.

Plaintiffs' Second Consolidated Amended Complaint ("SCAC") alleged infringement of the composition underlying their *Fish Market* sound recording, identifying the relevant elemental combination as: "a programmed kick, snare, and hi-hat playing a one bar pattern; percussion instruments, including a tambourine playing through the entire bar, a synthesized 'tom' playing on beats one and three, and timbales that play a roll at the end of every second bar and free improvisation over the pattern for the duration of the song; and a synthesized Bb (b-flat) bass note on beats one and three of each bar, which follows the aforementioned synthesized 'tom' pattern." SCAC ¶ 180.

And at the motion to dismiss phase this Court found, *inter alia*, that those elements, taken together, were alleged and could be sufficiently original to garner protection under the Copyright Act. Then, after two years of discovery and briefing *supported by expert transcriptions and testimony that the claimed elements were in fact in the Fish Market recording and were original*, this Court entered a well-reasoned and thorough Summary Judgment Order finding there to be triable issues of fact as to "the identification, characterization, and protectability of the claimed combination, known as the Fish Market Elements," and whether those elements "form a coherent and protectable selection and arrangement." *Browne v. Clark*, 2026 WL 2243201, at *24 (C.D. Cal.

2026). The Order specifically refers to them as the "asserted Fish Market Elements" yet Defendants claim not to know what song has the asserted elements. Id. at *3.

The Court, though, vacated its thorough Order based on this falsehood. The reversal was based not on a finding that the Fish Market Elements are insufficiently original or that it is unclear what those elements are, but rather on the basis that Plaintiffs failed to sufficiently assert what one copyrighted work encompassed those elements. But Plaintiffs did so, by identifying the relevant portion of the *Fish Market* composition in the operative complaint, in expert reports, and in the full compositional transcription of *Fish Market* presented by Peter Ashbourne-Firman, in Cleveland Browne's Declaration, and in its summary judgment briefing. And, of course, the elements are all embodied in the sound recording for *Fish Market* that Plaintiffs registered with the Copyright Office and included with their motion papers.

Plaintiffs respectfully request that the Court revisit that evidence and reconsider its Order on Defendants' Motion for Reconsideration for at least six reasons:

**First**, notwithstanding the recent confusion sown by Defendants, this Court understood Plaintiffs' claims at the Rule 12 stage and found that Plaintiffs properly alleged a protectable selection and arrangement in *Fish Market*. The Court at that time wrote:

> Plaintiffs allege that Fish Market has a drum pattern that differentiates it from prior works, and features, inter alia, "a programmed kick, snare, and hi-hat playing a one bar pattern; percussion instruments, including a tambourine playing through the entire bar, a synthesized 'tom' playing on beats one and three, and timbales that play a roll at the end of every second bar and free improvisation over the pattern for the duration of the song; and a synthesized Bb (b-flat) bass note on beats one and three of each bar, which follows the aforementioned synthesized 'tom' pattern." SCAC ¶ 180. Plaintiffs contend that the combination of these elements is original. Id. Plaintiffs further allege that Dem Bow's instrumental is "an alternative mix of Fish Market." *Id.* ¶ 181. Pounder Riddim is a derivative work created from Dem Bow's instrumental, "copied Dem Bow's instrumental, sound, arrangement, and composition, including the drum pattern, the drum components, including the kick, snare, hi-hat, tom and timbales as well as the full bassline," and the composition is "virtually identical to Fish Market." *See id.* ¶¶ 182–83. Pounder Riddim "was then used to create the sound recording" of Pounder Dub Mix II. *See id.* ¶ 182.

*Browne v. Donalds*, 2024 WL 3468898, at *19 (C.D. Cal. May 28, 2024).

Reviewing those allegations, the Court concluded that "as Plaintiffs point out, even if the individual elements of *Fish Market* are ultimately unprotectable, they have alleged that the combination of the elements is protectable." *Id.* at *20, citing MTD 4 Opp'n at 9–13; *see also Williams v. Gaye*, 895 F.3d 1106, 1119–20 (9th Cir. 2018) ("[S]ubstantial similarity can be found in a combination of elements, even if those elements are individually unprotected.") And thus "Plaintiffs have sufficiently alleged the protectability of the drum pattern, interplay of compositional elements, or the combination of these elements." *Id.* at *21, citing *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004). This conclusion should have settled the issue and set the stage to test whether that combination was protectable. While the Rule 12(b)(6) standard addresses only whether the allegations are sufficient, Defendants now argue that Plaintiffs never alleged the combination at issue or where it was embodied. This is false per the Court's 2024 ruling.

**Second**, Plaintiffs presented unequivocal percipient and expert testimony confirming the elements of the *Fish Market* composition, including a full transcription of that composition by Ashbourne-Firman (*see* Dkts. 743 ¶ 7, 743-1), that establish that "*Fish Market* contains a composite rhythmic and harmonic elements of multiple instrumental timbres: a kick drum pattern, a snare pattern, a hi-hat pattern, a low 'tom' drum pattern, a tambourine pattern, a timbales pattern, and a bass pattern[.]" *Id.* at ¶¶ 8-9. Browne provided a clear Declaration further establishing the combination at issue, and exactly where the timbale portion appears in the *Fish Market* recording, as discussed below. *See* Dkt. 750, ¶ 11. The Ashbourne-Firman transcription is cited throughout the summary judgment briefing and referenced by both parties' experts. Browne's Declaration, at Dkt. 750, buttresses this notice and makes clear what is claimed.

In other words, Plaintiffs' compositional claims have always rested on one work, *Fish Market,* which includes the elemental combination identified in the SCAC and

broken down in the expert reports. Defendants' "Frankenstein theory" refutes an argument Plaintiffs never made, a fact that was made clear at oral argument:

- (Court) "If it is the "Fish Market" composition, where in that copy does -- does -- the complete two-bar pattern, where is that depicted in 188? Where in the composition?" … (Tookey) "So Docket 743-1 at pages 3 to 4 of 83 shows, measures 2 to 3 of the full "Fish Market" composition." Aug. 14, 2026 Hr'g Tr. at 5:25-6:15.
- (Doniger): "So we -- I think we clarify that in our brief. It's not really true that there's no work that has all of the elements. "Fish Market" has all of the elements. "Dem Bow" uses "Fish Market". And then what "Pounder" does is "Pounder" recreates "Fish Market", except instead of using the full variable timbale loop, it uses a -- it takes two bars of that and repeats it and then it drops the tambourine."
Dkt. 839 ("Dec. 19, 2025 Hr'g Tr.") at 11:20-12:1.

**Third**, the grounds for that reconsideration request were an argument that had been briefed extensively and directly addressed at the oral arguments for the summary judgment motion:

- (Burroughs): "So what's important beyond just Mr. Marshall agreeing that our work is original is that Mr. Marshall and all of the other defense experts . . . surveyed the globe, and they could not find a single piece of prior art containing all the elements. You heard an attempt to get around that by defense counsel saying, well, you know, we don't know what the elements are, this and that. That's ridiculous. **The copyright registration included a deposit -- and I heard Mr. Freundlich say they don't know what we're claiming. We gave them the copyright registration. We gave them the deposit. That includes the work. This is a case involving music. The elements of the music are reflected in the music, a copy of which we have given to them and they have had for this entire case. . . . We provided them with the sound recordings for each of these works. They know exactly what we're claiming**."
Dec. 19, 2025 Hr'g Tr. at 49:17-51:5.

**Fourth**, defense counsel explicitly acknowledged their knowledge of the elemental combination at issue during oral arguments:

- (Akley): "What is it that plaintiffs are saying they own? **They're saying they own seven instrument sounds playing these exact patterns over a**

**two-measure contiguous portion of a song**." (emphasis added). Dec. 19, 2025 Hr'g Tr. at 35:16-18

- Similarly, (Akley): "Mr. Tookey made it very clear in his presentation . . . it's these seven different instrument sounds playing these exact patterns, that's what they're claiming." *Id.* at 66:22-67:4.
- (Akley): "There's no dispute about these facts, by the way. "Fish Market" and "Dem Bow" have the same composition. . . . "Pounder" is a re-creation of some elements of "Dem Bow" is my understanding. I think this is what the record reflects. Now, "Pounder" doesn't include the tambourine. There's no dispute about that. And, again, there's no dispute that the timbale part in "Pounder" is looped." *Id.* at 37:13-38:4.

**Fifth**, the Order itself makes clear that there was proper identification of the elements and no improper element consolidation. It identifies the compositional selection-and-arrangement and even recognizes that Plaintiffs allege it is included in *Fish Market*, while acknowledging that this analysis was included in the operative complaint. While there are derivative works that incorporate *Fish Market*, that does not create any confusion as to what comprises *Fish Market*.

**Finally**, the entire motion for reconsideration was a red herring for two reasons. First, the Ninth Circuit has made clear that it is the "deposit copy" of a song submitted to the Copyright Office, and not the parties' characterization of a song that provides notice of what is at issue. It is undisputed that the record includes the deposit *Fish Market* recording deposit, and that the contents of that recording provide concrete notice of the combination at issue, not any transcription.

Second, even assuming *arguendo* the Ashbourne-Firman transcription of *Fish Market* were somehow wrong such that the relevant two bars of the timbales were not next to each other in that work (they are and no expert has ever testified otherwise), Defendants' position still fails because no one disputes that *Fish Market* in fact includes a concurrent combination of the seven elements that this Court already found to be sufficiently original. Defendants can only argue otherwise by taking the absurd position that a combination of the seven elements including the repeating two-bar timbale pattern found in *Pounder Dub Mix II* could be original, but a combination of the seven elements in *Fish Market* that included a slightly different two-bar timbale pattern, could not be as a

matter of law. The *only* question before the Court at summary judgment was whether Plaintiffs' claimed work was sufficiently original to be entitled to copyright protection. On that question, Defendants have at best created a question of fact through competing expert testimony. Plaintiffs respectfully request that the initial order be reinstated or in the alternative that the Order be clarified as set forth below.

## II. LEGAL STANDARD

Under Local Rule 7-18(c), reconsideration is appropriate upon "a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." Motions for reconsideration should be granted "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law." *Cnty. of Santa Clara v. Trump,* 267 F. Supp. 3d 1201, 1207–08 (N.D. Cal. 2017), quoting *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). These elements are met here as the order vacating the Summary Judgment Order contained clear legal and factual errors and resulted in a manifestly unjust outcome, as discussed below.

## III. ARGUMENT

As this Court is aware, summary judgment is only properly granted where there exists no triable issue of fact. Here, the Court initially weighed the competing evidence, including the deposit and transcriptions, all of which included the *Fish Market* elemental combination at issue, and found a jury question. Then, based on *no* new evidence or change in the law, in a seemingly contradictory decision, it reversed that ruling. The reversal was based entirely on Defendants' efforts to sow confusion and it is respectfully requested that the initial order be reinstated.

The Order notes that Plaintiffs addressed this issue at oral arguments in August of this year but incorrectly asserts that this was the first time Plaintiffs did so. In fact, Plaintiffs identified the entire seven element selection-and arrangement at issue, alternatively referred to throughout this case as the *Dem Bow Riddim* and the Fish Market

Elements, as embodied in *Fish Market,* throughout discovery and motion practice, and Defendants effectively admitted this on numerous occasions.

This phase of the case addressed "whether Plaintiffs' claimed works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law[.]" Dkt. 426, 9:4-7, 427. *Fish Market* is of course the original work claimed in the SCAC that was addressed by the Court's Rule 12(b) ruling, and its composition and sound recording, as well as the composition for *Dem Bow*, and the sound recording for *Pounder Dub Mix II*, have at all times been the plural "works" referenced in the Bifurcation Order. *Id.* There was no ambiguity and the clearest notice as to the relevant elemental combinations are the works themselves, as deposited with the Copyright Office, and provided to Defendants. Defendants, though, after acknowledging that *Fish Market* is the original work underlying Plaintiffs' claims and that *Dem Bow* and *Pounder Dub Mix II* are derivatives thereof, now claim they cannot identify what is at issue, while asserting that Plaintiffs' claims fail because there are multiple works at issue. But this is simply false. The Court's well-reasoned original holding on summary judgment should be reinstated.

### A. The deposit copy, and not the parties' various characterizations of the work, controls and sets the contours of the work at issue

The Order does not address a primary argument made during the December oral arguments. Plaintiffs argued then, without any competent response, that the Copyright Office *deposit copy* for *Fish Market*, submitted during the copyright registration process, and included as **Exhibit 1** to Plaintiff's summary judgment motion, provided notice to Defendants and establishes what is at issue in this case. *See* Dkt. 750, ¶ 13; 750-1

Settled law in this Circuit mandates that the deposit copy provides notice of the musical work at issue. Any "confusion" as to what comprises *Fish Market* or what is at issue in this case can be cleared up by listening to that recording, which naturally includes the elemental combination. Any disagreement as to what compositional elements are in that recording are questions of fact for the jury.

Indeed, the "purpose of the deposit is to make a record of the claimed copyright, provide notice to third parties, and **prevent confusion about the scope of the copyright."** *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1062–63 (9th Cir. 2020)(emphasis added), citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir. 1994) (deposit requirement provides the "Copyright Office with sufficient material to identify the work in which the registrant claims a copyright ... [and] prevent[s] confusion about which work the author is attempting to register"), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010); Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law 71 (1961) (one of the purposes of the deposit is "to identify the work" being registered).

For this reason, "both the 1909 and 1976 Acts require authors to deposit "complete" copies of the work to provide the "Copyright Office with sufficient material to identify the work in which the registrant claims a copyright ... [and] prevent confusion about which work the author is attempting to register." *Parker v. Hinton*, No. 22-5348, 2023 WL 370910, at *4 (6th Cir. Jan. 24, 2023) (citations omitted).

To the extent that Defendants were confused as to the elements of one of the world's most famous musical works, such confusion was easily addressed by **Exhibit 1** to Plaintiffs' motion for summary judgment, the deposit copy. *See L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 851, n. 3 (9th Cir. 2012), as amended on denial of reh'g and reh'g en banc (June 13, 2012)(at the summary judgment stage "[w]e compare Defendants' design to the deposit copy of C30020.")

This recording provides clear notice as to what elemental combination is at issue. To make matters more pellucid, Plaintiff's expert Judith Finell identified where the *Fish Market* Elements on the recording began: "In my own transcriptions, I have indicated exactly where that is located. It's at two seconds into it. It's basically the first iteration of the four tiers." Dkt. 790-16, Ex. 132, 52:14-17. Defendants thus had the *Fish Market* recording and were advised where to find the *Fish Market* combination. This suffices.

This argument was squarely before the Court and seemed to fully address the issue before the Defendants raised the exact same argument with no new evidence as part of its reconsideration motion. During December's oral arguments, the below exchange occurred at the tail end of the proceedings:

> (Burroughs): "So what's important beyond just Mr. Marshall agreeing that our work is original is that Mr. Marshall and all of the other defense experts . . . surveyed the globe, and they could not find a single piece of prior art containing all the elements. You heard an attempt to get around that by defense counsel saying, well, you know, we don't know what the elements are, this and that. That's ridiculous. **The copyright registration included a deposit -- and I heard Mr. Freundlich say they don't know what we're claiming. We gave them the copyright registration. We gave them the deposit. That includes the work. This is a case involving music. The elements of the music are reflected in the music, a copy of which we have given to them and they have had for this entire case. . . . We provided them with the sound recordings for each of these works. They know exactly what we're claiming.**"

Dec. 19, 2025 Hr'g Tr. at 49:17-51:5.

Defense counsel had no response to this in December, and the Court thereafter ruled that Defendants were on notice as to the *Fish Market* selection-and-arrangement at issue. But defense counsel then made the *exact same argument* in a Motion for Reconsideration, again failing to account for the notice provided by the deposit copy, and this time the motion was granted.

Parties in music litigation regularly feign confusion as to what composition is at issue and the Ninth Circuit has a solution for that: the deposit copy provides clarity. Going back to the 1800s, courts have recognized that the purpose of the "deposit was to permit inspection by other authors "to ascertain precisely what was the subject of copyright."" *Skidmore*, 952 F.3d at 1063, quoting *Merrell v. Tice*, 104 U.S. 557, 561, 26 L.Ed. 854 (1881). As such, "the deposit copy defines the scope of the [*Fish Market*] copyright." *Id.* at 1061. This is particularly true in situations where the one party claims confusion but the "experts for both sides were confident in their analysis" of *Fish Market*. *See id.* at 1063 (rejecting claim that deposit did not control).

Here, if there remained any ambiguity after defense experts Wayne Marshall, Lawrence Ferrara, and Joe Bennett each analyzed in excruciating detail the exact musical combination at issue, and made their own confident transcriptions, Defendants needed only look to the deposit copy, which they have had for years. Yet, they completely ignore the deposit copy when arguing that they cannot understand what elemental combination is the subject of this litigation.

Crucially, the deposit also wholly addresses the Court's concerns regarding the two-bar transcription included in the SCAC. The Order appears to at least partially rely on the assertion that the record does not show this exact transcription in the *Fish Market* composition, but even if that were true it is the recording and not this specific transcription, or indeed any specific transcription, that identifies the work at issue. As the Court itself notes, it is the complete selection-and-arrangement of the elements therein at issue in this case, and that selection-and-arrangement is undeniably encompassed in the *Fish Market* recording. This is only logical and is why the many learned experts on both sides created different transcriptions, but all of the transcriptions arose from the deposit copy of *Fish Market*, which fully embodies and reflects the combination at issue.

Defendants have thrice made – and now prevailed on – the exact argument that the Ninth Circuit has rejected. The deposit-copy rule is settled, and with good reason: it avoids the massive confusion that Defendants have successfully sown here. It is respectfully requested that the Order be reconsidered.

### B. The SCAC identified the *Fish Market* combination and law of the case controls this issue

It has been law of the case since May of 2024 that *Fish Market*'s composition includes the selection-and-arrangement of elements at issue. Per the "'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Gartenlaub*, No. 22-55799, 2024 WL 4987258, at *1 (9th Cir. Dec. 5, 2024). This applies to issues decided both "explicitly or by necessary implication in the previous disposition[,]" (*id.* (citation

omitted)) and to both "factual or legal issue[s]." *In re Flashcom, Inc.*, 503 B.R. 99, 127 (C.D. Cal. 2013), aff'd, 647 F. App'x 689 (9th Cir. 2016).

The grant of Defendants' motion for reconsideration contradicts the law of the case because this Court previously reviewed the alleged *Fish Market* combination, confirmed that Plaintiffs identified *Fish Market* as the work containing the whole selection and arrangement at issue, and the other works as derivatives of *Fish Market*. Defendants made the same argument as they make now in multiple motions to dismiss, but the Court rejected these motions, confirming that Plaintiffs plausibly alleged that "Fish Market is the progenitor of these derivative works, and these works all capture original elements of the *Fish Market* composition that Plaintiffs have specified in the SCAC." *Browne*, 2024 WL 3468898, at *12.

The Court further found that "even if the individual elements of Fish Market are ultimately unprotectable, [Plaintiffs] have alleged that the combination of the elements is protectable." *Id.* at *20. And "Plaintiffs have sufficiently alleged the protectability of the drum pattern, interplay of compositional elements, or the combination of these elements." *Id.* at *21 (emphasis added), citing *Swirsky*, 376 F.3d at 849. Plaintiffs addressed the Court's prior ruling and the same combination theory in response to Defendants advancing the same arguments on summary judgment as they did in their motion. *See* Dkt. 790, p. 4. It is thus the law of the case that Plaintiffs identified *Fish Market* as the original work containing the selection-and-arrangement of elements at issue and reproduced in the SCAC, and that *Dem Bow* and *Pounder Dub Mix II* are derivative works incorporating *Fish Market*'s original composition of elements.

To be sure, at summary judgment Defendants were free to try to establish as a factual matter that the elemental combination was not original or not in *Fish Market*, but they entirely failed to do so. Not a single defense expert or witness took that position. They instead acknowledged the elemental combination at issue and conceded that they were unaware of it existing in any prior work.

While Defendants can argue that those elements are wrongly transcribed or may differ somewhat between *Fish Market* and its derivatives, they *cannot* argue that they were not provided notice of the selection-and-arrangement at issue, as this was established in 2024. And any dispute as to the transcription or elemental combination can be settled by the contents of the *Fish Market* deposit.

Given that the Court previously found that Plaintiffs have identified and alleged the composition containing all the elements giving rise to their selection and arrangement theory, it should not conclude differently now. *See Arizona v. California*, 460 U.S. 605, 618 (1983) (a judicial determination at one stage of a proceeding "should continue to govern the same issues in subsequent stages in the same case"). Plaintiffs respectfully request that the initial order be reinstated.

### C. Browne, Ashbourne-Firman, and the other experts all confirmed the *Fish Market* elemental combination at issue

The allegations in the SCAC as to the combination were established and buttressed by expert testimony from Ashbourne-Firman, Browne, and others, all of which identified the *Fish Market* combination at issue. The experts and Browne were abundantly clear that their analysis of the originality of Plaintiffs' work centered on *Fish Market*, and that the original composition and elements therein laid the basis for the other derivative works at issue in this case.

#### 1. Ashbourne-Firman

In his expert report, Peter Ashbourne-Firman reviewed *Fish Market* and went into detail on the original elements embodied within:

> My review reveals that the core of the "Fish Market" composition features at least the following elements, which, together, form an original and creative work: a programmed kick drum, snare drum, and hi-hat playing a one bar pattern (as transcribed in 4/4 meter); percussion instruments, including a tambourine playing a repeated pattern through the entire bar, a synthesized low 'tom' playing on beats one and three, and timbales that play a roll at the end of every second bar in most iterations of the interlocking components described above. In "Fish Market," additionally, timbales play further,

> soloistic embellishments over the pattern for much of the song. A synthesized Bb (b-flat) pitch also occurs on beats one and three of each bar.
> Dkt. 743-2, Ex. 2, p. 4.

He went on to provide further analysis and transcriptions of the elements as they appear in *Fish Market* and expressly identified the Fish Market Elements as the basis of Plaintiffs' selection and arrangement theory, stating "I also understand that the plaintiffs contend that the combination of these elements is original." *Id.* at 8. And he identifies the two-bar combination in his *Fish Market* transcription he references in his report. See Dkt. 743-1, pp. 3-4. The Court even recognized Ashbourne-Firman's work on summary judgment, confirming that he "used transcriptions and audio recordings to isolate instrumental components and analyze the Fish Market Elements" and "identifie[d] specific musical features, including pitched bass lines, layered rhythms, and syncopated percussion." *Browne*, 2026 WL 2243201, at *11.

Ashbourne-Firman also confirmed the relationship between *Fish Market* and the other works at issue, though the Order states otherwise. The Order indicated that it is unclear whether *Dem Bow* and *Pounder* are independent sources for the selection and arrangement at issue, but Ashbourne-Firman confirmed that these works are not and simply "contain the same shared musical elements discussed herein as those found in 'Fish Market.'" Dkt. 743-2 at 7. He concludes that "based on my study of the Songs, 'Dem Bow' is derivative of 'Fish Market,' and 'Pounder' is a further derivative that contains the 'Dem Bow' instrumental composition[.]" *Id.* at 8-9. In other words, all the elements are in *Fish Market* and the other two works are simply derivatives of *Fish Market* and in which Plaintiffs hold rights under 17 U.S.C. § 106(2), which provides an author with protection for not only his original work, but derivatives created therefrom.

Ashbourne-Firman also testified consistently with his report and further confirmed the combination at issue:

> Q. So your testimony is that your understanding is that these five stem files came from Fish Market, the recording; is that right?
> A. Yes, I'm almost sure. I mean, Dem Bow is Fish Market with a vocal on it.
> Ashbourne-Firman Dep. Tr. at 89:6-10.

> Q.· Okay. You say next, "My review of the songs based on my musical comparison and the chronology set forth by the plaintiffs reveals that Dem Bow derives from Fish Market and that Pounder incorporates the Fish Market composition." Do you see that?
> A. Yes.
> Q. What is a musical comparison?
> A. All right. Fish Market is the piece of -- is a piece of music; right? And Dem Bow is a vocal composition that has been -- that has with it – the composition has been made from Fish Market, the vocal composition. In other words, a vocal line has been derived from Fish Market, the accompaniment. Now, Pounder is a remake of most of the components of Fish Market. There are some differences. It's a literal remake, but there are some slight differences in the details.
> *Id.* at 94:3-20.
> Q. Got it. So your point in this report is that all of these eight elements, I think you called them tiers, that are depicted in this transcription in front of us right now, all of the combination of all of these elements, that is what is original to Fish Market; right?
> A. Yes.
> *Id.* at 135:21-136:2.

Similar discussion of *Fish Market*'s role in this case and the two-bar transcription identified in the SCAC arising from *Fish Market* took place in the Finell deposition:

> Q. Okay. So paragraph 19 says the following transcription of the drums, percussions, and synth bass in "Fish Market" is proffered on page 36 of plaintiff's second consolidated amended complaint dated April 22,
> 2023. Do you see that?
> A. Yes.
> Finell Dep. Tr. at 47:19-48:2.
> Q. So it's your understanding that what plaintiffs claim is original in "Fish Market" is the combination of the specific elements in the drum pattern identified in the second paragraph of page 7 of your report; right?
> A. It's more than drum patterns. It's percussion patterns. But, yes.
> Q. Okay. And so it's your opinion that it is that combination of those specific elements that is what is original in "Fish Market"; right?
> *Id.* at 59:2-11.

**2. Browne**

Browne stated in excruciating detail the elemental combination that he and his collaborator created and captured in the *Fish Market* recording:

9. First, I composed the kick drum, snare drum, hi-hat, and low "tom" drum patterns on an E-mu Systems SP-1200 drum machine loaded with my custom sample set. The kick drum pattern consists of quarter notes on each beat of the measure. The hi-hat pattern also consists of quarter notes on each beat of the measure. The low "tom" drum pattern consists of quarter notes on beats one and three of each measure. And the snare pattern plays on the third (ghost note), fourth, seventh, 11th (ghost note), 12th, and 15th beats of the measure. The ghost notes are played softer (hence the name "ghost") and help establish the accents on the snare strikes that immediately follow as well as the underlying 16th note feel of the overall combination.

10. Then, Steely composed Fish Market's bassline along with its other melodic and harmonic elements (e.g., the piano and synthesizer parts). Fish Market's bassline, other than one section, consists of Bb2 (B flat) played in quarter notes on beats one and three of the measure. The other section of the bassline features a pattern of Eb (quarter note) – Eb (eighth note) – Bb (eighth note) that repeats.

11. After that, I supplemented the kick, snare, hi-hat, and low "tom" drum patterns with a timbale pattern and a tambourine pattern. The tambourine pattern generally consists of four to five 16th notes, followed by an 8th or 16th rest, followed by six to seven 16th notes, followed by an 8th or 16th rest, followed by two 16th notes per measure. The relevant portion of the timbale pattern generally consists of two measures: (1) in the first measure of the relevant portion, a dotted eighth rest, followed by a 16th note, followed by a 16th rest, followed by a 16th note and eighth note, followed by an eighth rest, followed by two 16th notes and an eighth note, followed by an eighth rest, followed by four 32nd notes (which can also be called a 32nd-note roll); and (2) in the second measure of the relevant portion, a dotted eighth rest, followed by a 16th note, followed by a 16th rest, followed by three 16th notes, followed by a 16th rest, followed by a 16th note and two eighth notes, followed by an eighth rest, followed by four 32nd notes (again, which can also be called a 32nd-note roll). […]

12. Thus, Fish Market contains interlocking tiers of instruments, timbres, and pitched (bassline) and non-pitched (kick, snare, low "tom" drum, hi-hat, timbale, and tambourine patterns) elements, repeated throughout essentially Fish Market's entirety, and, as combined, form a composite that is original to Fish Market. We independently created each pattern and decided how to select and arrange the patterns to form the overall combination.

Dkt. 750, ¶¶ 9-12.

If anything remained unclear, Browne advised Defendants exactly where they could hear the elemental combination with the timbales: "The relevant portions of Fish Market's timbale pattern occur at approximately time markers 0:02-0:07, 0:30-0:35, 1:18-

1:23, and 2:06-2:11 of Fish Market." *Id.* at ¶ 11. This is a contiguous combination – it plays throughout *Fish Market* and the combination not taken from any other song. This information was all before the Court on summary judgment and provided ample notice.

**3. Finell and Bilby**

Plaintiffs' expert Judith Finell likewise reviewed, analyzed, and transcribed the Fish Market Elements as they appeared in *Fish Market* while addressing that Plaintiffs' selection and arrangement argument stems from that original composition. *See* Dkt. 749-1. Finell and Ashbourne-Firman produced these reports during discovery and well before oral arguments on summary judgment.

Plaintiffs' expert Kenneth Bilby opined similarly, beginning his report by confirming that "this case centers on the alleged infringement of Plaintiffs' copyrighted work *Fish Market*" and expounds on the creation and proliferation of the Fish Market Elements in exhaustive detail to opine that "this understanding of 'Fish Market,' viewed as a whole, as an original piece of music leads to the conclusion that not just the entire piece, but also isolated sections or even brief extracts from it, whether sampled or otherwise copied, may be protectable under current copyright law." Dkt. 745-1.

**4. Defense experts**

Defendants' own experts also recognized the centrality of *Fish Market* in this case, analyzing and transcribing *Fish Market* in their own reports. Defendants' expert Joe Bennett expressly focused his analysis on *Fish Market* and the "Fish Market Elements," and confirmed his understanding that "Plaintiffs claim that various defendants have copied certain rhythmic elements from FISH89 across multiple infringing works." *See* Dkt. 736-1, p. 9. He then created his own transcription based on the deposit copy of *Fish Market*. *See id.* at 39-41. Far from being unable to identify the work at issue, Bennett's report thus confirms that he and Defendants understood the selection-and-arrangement at issue is embodied in *Fish Market*.

Defendants' expert Lawrence Ferrara also confirmed he had been retained to conduct "musicological analyses in connection with the rhythmic elements of the

composition 'Fish Market.'" Dkt. 741-1 at 2. He separately identified the drums and percussion in *Fish Market* as the hi-hat, snare, tom-tom, kick, timbales, and tambourine, and stated that his transcription included those six elements "as well as the pitched synth bass." *Id.* at 7. Given that their expert's entire reportage was based on reviewing the elemental combination in *Fish Market* for originality, Defendants cannot credibly claim that they did not have notice of *Fish Market* combination at issue.

All of these expert reports were part of the summary judgment briefing and December 2025 oral arguments. Both sides' experts repeatedly and thoroughly analyzed the selection-and arrangement of elements in *Fish Market*, acknowledging such as the basis of Plaintiffs' claims, with no confusion. These experts also confirmed that the other works at issue are relevant because they are derivatives incorporating virtually the same Fish Market Elements, which addresses any claim that Plaintiffs improperly reference multiple works.[1] This motion should be granted.

### D. Plaintiffs identified *Fish Market* as the composition at issue throughout this case

While the Order states that, at the August 14, 2026 hearing, Plaintiffs "for the first time more definitively represented that the complete two-bar pattern identified in the SCAC exists in Fish Market" (Order, p. 8), the record reflects notice in the SCAC, the *Fish Market* deposit, the Rule 12(b)(6) motion briefing, expert discovery and the summary judgment briefing. Both parties have repeatedly acknowledged this fact throughout the case. Copious expert opinion and testimony on both sides has addressed the issue and made clear that the *Fish Market* combination is at issue.

Plaintiffs' summary judgment motion established the combination at issue at the outset:

[1] The Stipulation re the Bifurcation Order itself references more than one work, noting that this phase would address "Plaintiffs' claimed **works** and/or portions thereof[.]" Dkt. 426, 9:4-7(emphasis added).

> The relevant portions of Fish Market consist of an original combination of interlocking tiers of instruments, timbres, and pitched (bassline) and non-pitched (kick, snare, low "tom" drum, hi-hat, timbale, and tambourine patterns) elements. SUF 11. This composite pattern of drum, percussion, and bass elements is referred to in this motion as the Dem Bow Riddim[.]
> Dkt. 742, p. 3.

Plaintiffs then explained in detail how the combination is an original selection-and-arrangement of individual elements, setting forth those elements precisely and citing ample supporting evidence in the record. Plaintiffs exactingly identified *Fish Market* as the combination at issue well before oral argument this summer. The Court acknowledged as much in its original Summary Judgment Order, noting that "Plaintiffs describe the "Fish Market" composition as incorporating a combination of drum, bass, and additional percussion elements that together form the instrumental backing of the work." *Browne*, 2026 WL 2243201, at *23.

Moreover, throughout fact and expert discovery, Plaintiffs repeatedly explained that the originality of the selection-and-arrangement of elements in *Fish Market* is at issue, as set forth below:

**1. Written discovery and depositions**

The parties engaged in extensive written discovery regarding the compositional elements at issue and their presence in *Fish Market*. Indeed, Plaintiffs addressed this question in response to Defendants' first set of interrogatories as early as December of 2024. There, Defendants acknowledged that Plaintiffs alleged that *Fish Market* contained the original selection and arrangement at issue and asked Plaintiffs to identify the elements in *Fish Market*, to which Plaintiffs responded:

> Fish Market contains interlocking tiers of instruments, timbres, and harmonic (bass) and rhythmic (kick, snare, and 'tom' drums; hi-hats; timbales; and tambourine) elements repeated throughout essentially the song's entirety. The hi-hat and kick play together on beats one to four… These tiers form a composite that is original to Fish Market.
>
> Dkt. 790-10 at 4.

And Plaintiffs discussed and attached this written discovery to their summary judgment briefing. Because written discovery in this case, from its infancy, included identification of the *Fish Market* combination as the protected elemental combination at issue, there was no basis for reconsideration.

**2. Oral arguments**

The record is replete with the parties addressing this precise issue at oral arguments in December 2025 and August 2026. The Order acknowledges as much, noting that Plaintiffs' counsel confirmed at the oral arguments on August 14, 2026, that the *Fish Market* composition "embodies the complete selection and arrangement that's alleged in the Second Amended Complaint." August 14, 2026 Hr'g Tr. at 5:12-24. While this alone is significant, it was not, as the Order states, the first time Plaintiffs explained this.

Beyond the repeated expressions of same in discovery and in the SCAC itself as set forth above, Plaintiffs' counsel also explained this at separate oral arguments nearly nine months earlier. At the oral arguments held on December 19, 2025, Defendants again argued that they could not identify any single work containing the Fish Market Elements, but Plaintiffs' counsel immediately addressed this:

> MR. DONIGER: So we -- I think we clarify that in our brief. It's not really true that there's no work that has all of the elements. "Fish Market" has all of the elements. "Dem Bow" uses "Fish Market". And then what "Pounder" does is "Pounder" recreates "Fish Market", except instead of using the full variable timbale loop, it uses a -- it takes two bars of that and repeats it and then it drops the tambourine.
>
> Dkt. 839, 11:20-12:1.

This is a clear confirmation of what has been at issue since the SCAC, which became law of the case upon the Court's rejection of the Rule 12(b) motions, and confirmed in discovery and by the experts on both sides.

**E. Plaintiffs have not combined works**

The Court seems to conclude that Plaintiffs have taken "elements from a single work, isolate[d] them from their original context, and rearrange[d] or reconstitute[d] them into a new combination that becomes the claimed selection and arrangement." Order, p.

9. Nothing could be further from the truth. Plaintiffs plainly identified, and their experts corroborated, that all Fish Market Elements exist together as a combined compositional unit at the same points within the *Fish Market* composition itself. Indeed, this Court's Order itself concludes that "Plaintiffs allege that *Fish Market* contains an original combination of *all* of these rhythmic and instrumental elements, including a programmed kick, snare, hi-hat, tambourine, synthesized tom, timbales, and synthesized bass pattern." Order, p. 7, citing SCAC ¶ 180. And the Order incorporates the transcription *under the title* "*Fish Market*" which can only be read as an allegation that the transcription reflects the combination of elements in *Fish Market*:




Order, p. 7. But the Order then concludes to the contrary, finding Plaintiffs did not allege the elemental combination in the *Fish Market* composition, which cannot be squared.

Contrary to the Court's conclusion, Plaintiffs have *not* isolated elements from disparate, non-adjacent portions of *Fish Market* and reconstituted them into a new combination invented for this litigation, the precise concern underlying *Skidmore*, cited in the Order. *See Skidmore*, 952 F.3d at 1074–76. Rather, every element comprising the claimed selection-and-arrangement exists contiguously in the *Fish Market* composition,

exactly as Browne and Steely wrote and recorded them. Browne created the kick, snare, hi-hat, and low "tom" drum patterns (Dkt. 750 ¶ 9); Steely composed the bassline (*Id.* at ¶ 10); and Browne then added the timbale and tambourine patterns to create the "interlocking tiers" of instrumentation comprising the combined Fish Market Elements appearing at various points during the overall composition. *Id.* at ¶¶ 11-12. These coexisting elements are independently corroborated by Ashbourne-Firman's complete transcription, which transcribes all seven elements sounding together within the same musical unit that appears repeatedly, though not continuously, in *Fish Market*. Dkt. 743-1, pp. 3-4; Dkt. 743-2, Ex. 2, pp. 4-9. Indeed, Plaintiffs explained on summary judgment that these elements are not disparate but "together form the instrumental backing of the work." *Browne*, 2026 WL 2243201, at *23.

The Order goes on to state that Plaintiffs first identified that *Fish Market* contains this selection and arrangement of elements at the oral arguments on August 14, 2026, but this is also inaccurate. As set forth *supra*, Plaintiffs established the particular selection and arrangement of elements existed within *Fish Market* in the SCAC at the outset of this case; in expert reports produced in January 2024 and February 2025, including the Ashbourne-Firman report; in written discovery as early as December 2024; in Cleveland Browne's July 2025 declaration and contemporaneous summary judgment briefing; and again at oral argument in December 2025.

The arguments on August 14 were merely the latest instance of Plaintiffs reiterating what has been asserted all along: that *Fish Market* is the work embodying the entire original selection-and-arrangement of elements at issue.

Despite this, the Order cites difficulty in determining from the record that *Fish Market* is the work embodying the protectable selection-and-arrangement because Plaintiffs "allege ownership of multiple different works" or make references to *Dem Bow* and *Pounder* throughout this litigation. But, as discussed above, this is entirely proper because this phase was structured to address *Fish Market* and the derivatives created therefrom, namely the *Dem Bow* composition and the *Pounder Dub Mix II* sound

recording. Defendants, though, failed to challenge any of the works in full and only challenged the combination that first appears in full in *Fish Market.* This is not a failure of notice by any means.

The Order, at Defendants' urging, mischaracterizes the role of the compositions and sound recordings that are derivative of *Fish Market*, none of which contradicts Plaintiffs' consistent claim that the selection-and-arrangement of elements in *Fish Market* is original and protectable. A derivative work is a "work based upon one or more preexisting works that recasts, transforms, or adapts the preexisting work[.]" *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015)(citations omitted). Because a derivative work inherently incorporates elements of a prior original work, "if a third party copies a derivative work without authorization, it infringes the original copyright owner's copyright in the underlying work to the extent the unauthorized copy of the derivative work also copies the underlying work." *Id.* As ventilated above and throughout this litigation, there is a clear relationship between the works at issue such that *Fish Market* embodies the selection-and-arrangement at issue, while also serving as the basis for later derivative songs.

As Plaintiffs explain, Cleveland Browne and Wycliffe "Steely" Johnson created *Fish Market*, which contains the particular elemental combination at issue, and is not combined with any other work. Dkt. 750, ¶ 12. The other works at issue, *Dem Bow* and *Pounder Dub Mix II* **were not** used to contribute elements to *Fish Market*'s composition. Rather, they are derivative of *Fish Market* and incorporate its same composition. Specifically, *Dem Bow* uses the actual *Fish Market* composition with Shabba Ranks' vocals. *Id.* ¶¶ 15-16. And *Pounder Dub Mix II* is a later replay of *Dem Bow* that, by virtue of using *Dem Bow*, "copies Fish Market's selection and arrangement" of the majority of the elements making up the *Fish Market* composition. *Id.* ¶ 18.

Accordingly, the *Fish Market* combination is at issue*, Dem Bow* is built on that combination*,* and *Pounder Dub Mix II* is a derivative replay. Dkt. 749-1, p. 7. Indeed, the Court confirmed that "[t]he record reflects" both that ""Dem Bow" utilizes the same

multitrack instrumental recording as "Fish Market," and ""Pounder (Dub Mix II)" is a replay or cover of the instrumental associated with "Dem Bow." *Browne*, 2026 WL 2243201, at *23.

That Plaintiffs discuss the infringement of all three works creates no inconsistency with their allegation that the *Fish Market* combination is original, it was the literal task for this phase. The elemental combination at issue is found in *Fish Market* and presents a triable issue. The other works must be found original as they were not challenged.

**F. Defense counsel conceded their knowledge of the combination at issue**

Defense counsel's feigned ignorance of the elemental combination at issue has been belied numerous times throughout this litigation. At the December oral arguments for the summary judgment motions, Defendants' counsel repeatedly identified (and attacked, as is their right) the selection-and-arrangement of elements embodied in *Fish Market* as the work at issue, stating: "What is it that plaintiffs are saying they own? **They're saying they own seven instrument sounds playing these exact patterns over a two-measure contiguous portion of a song**." Dkt. 839, 35:16-36:3 (emphasis added). He went on to confirm Defendant's knowledge of the interplay between the multiple copyrighted works at issue, originating from *Fish Market*: "There's no dispute about these facts, by the way. "Fish Market" and "Dem Bow" have the same composition. . . . "Pounder" is a re-creation of some elements of "Dem Bow" is my understanding. **I think this is what the record reflects**." *Id.*, 37:13-38:8 (emphasis added).

Defendants acknowledged the *exact* selection and arrangement of elements that they now claim not to know, while also admitting their understanding of how the combination at issue originates in *Fish Market*, is copied in *Dem Bow*, and is recreated in *Pounder*. Reconsideration was error.

**G. Determining the specific elemental combination at issue presents a classic jury question**

The deposit provides notice as to the *Fish Market* selection-and-arrangement and the parties' and their experts' disagreements as to what comprises that selection-and-

arrangement is essentially routine and is a classic jury question unfit for summary adjudication. Indeed, at trial the jury will hear "testimony from one or more witnesses from each side about what each thinks is shown on the deposit copy for [the *Fish Market*] composition[.]" *Gaye*, 895 F.3d at 1125. And the "question of whose interpretation of the deposit copy to credit [is] a question properly left for the jury to resolve." *Id.*, 895 F.3d at 1126.[2]

The jury should thus decide whether they agree with what Plaintiffs alleged in the SCAC and clearly elucidated in the Ashbourne-Firman transcription, or whether they accept Defendants' view as espoused by their various experts. And if Defendants believe that Browne incorrectly interpreted, or testified inconsistent with, the Ashbourne-Firman transcription, they can raise that with the jury. At the end of the day, the "experts' quarrel over what [is] in the deposit copy [is] a factual dispute for the jury to decide." *Gaye*, 895 F.3d at 1124. Because, to be sure, the review of a work's selection-and-arrangement is for the "the ordinary observer[.]" *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 943 (9th Cir. 2023) (citations omitted). Here, the jury should act as the ordinary observer, listen to the *Fish Market* deposit copy, and decide whether it is sufficiently original.

## IV. CONCLUSION

After the Court spent considerable time crafting thorough, thoughtful decisions on the Rule 12 and summary judgment motions, it issued an inconsistent reconsideration ruling which purports to reject a "Frankenstein" theory Plaintiffs have never advanced while essentially overlooking the argument and evidence they proffered, arguments and evidence that were squarely before and previously acknowledged by the Court in its initial summary judgment ruling and Rule 123 rulings.

To the extent Defendants continue to claim confusion, we are required by binding Ninth Circuit precedent to conclude that the *Fish Market* deposit copy provides notice as

[2] The issue in *Gaye* is similar and even involves an overlap of experts. There the parties disputed whether a "descending bass line" and "keyboard parts" were at issue in the case and the Court found that factual question to be one for the jury. *Gaye*, 895 F.3d at 1124. The same should be true here.

to the elemental combination at issue. Indeed, at trial, the parties will play this deposit copy for the jury and while they may also offer competing transcriptions of varying detail, the jury will be instructed that the deposited recording – not what they see but what they hear – controls. Plaintiffs respectfully submit that the initial Summary Judgment Order should be reinstated.

In the alternative, or in addition, it is respectfully requested that the Court clarify how its decision affects the issue before the Court, namely, "whether Plaintiffs' claimed works and/or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law[.]" Dkt. 426, 9:4-7, 427. The parties need clarification that "Plaintiffs' claimed works," namely the *Fish Market* sound recording and composition, the *Dem Bow* composition, and the *Pounder Dub Mix II* sound recording present a triable issue of fact as to originality. And to the extent that the Court concludes that the *Fish Market* selection-and-arrangement is not protectable or adequately alleged, it is respectfully requested that the Court clarify that the *full* deposit copy for *Fish Market* continues to present a triable issue of fact as to originality.

Plaintiffs understand the Court carries an onerous workload and would not make this motion but for the fact that the Order is so unjust and deprives the Plaintiffs of their day in Court based on a blatant falsehood. It is respectfully requested that the Summary Judgment Order be reinstated and clarification provided.

Respectfully submitted,

Dated: September 15, 2026 By: /s/ *Scott Alan Burroughs*

Scott Alan Burroughs, Esq.
Stephen M. Doniger, Esq.
Andres Navarro, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiffs*

**CERTIFICATION**

The undersigned counsel of record for Plaintiffs certifies that this brief does not exceed twenty-five pages in length, which complies with the page-limit of this Court's Standing Order (Dkt. 11).

Dated: September 15, 2026 By: *<u>/s/ Scott Alan Burroughs</u>*
Scott Alan Burroughs, Esq.